

July 7, 2014

**VIA ELECTRONIC FILING**

Hon. Jesse M. Furman
United States District Court
Southern District of New York
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

        RE:    *In Re: General Motors LLC Ignition Switch Litigation*
                  14-MD-2543 (JMF); 14-MC-2543

Your Honor:

       The undersigned Temporary Lead Counsel have conferred with Plaintiffs' Counsel and submit this joint letter pursuant to Section IX of Order No. 1 in this multidistrict litigation, to report and make our recommendations on the matters specified in Section IX.B. This letter represents a broad consensus of the views of over 95% of Plaintiffs' Counsel on (1) the necessity and desirability of lead and liaison counsel; (2) the necessity, desirability, size, composition, and scope of an Executive Committee and function-specific sub-committees; (3) a proposed leadership structure; (4) a proposed methodology and schedule for the Court to appoint the recommended leadership structure; and (5) the timing of appointments, which Plaintiffs' Counsel submit should proceed now, without awaiting a Bankruptcy Court issue.

       Promptly after receipt of Order No. 1, we met in person and by telephone with the majority of Plaintiffs' Counsel. We notified all Plaintiffs' Counsel of record of the date, time, location, and call-in information for this conference, attached Order No. 1, and included a conference agenda that tracked it. The conference took place on July 1, 2014. Over 70 counsel participated in this meeting in person or by telephone. Additional counsel communicated their suggestions and insights by letter, email, and telephone. A draft of this letter was emailed to all Plaintiffs' counsel on July 3, 2014. We greatly appreciate the participation of the vast majority of Plaintiffs' Counsel. A broad consensus proposal emerged from these discussions, which we present below.

       **(1)    The Proposed Plaintiffs' Leadership Structure**

       Proposed structures suggested by a variety of counsel converged on four key points of consensus:

         a.  a three-person Lead Counsel, one-person Liaison Counsel structure;
         b.  an Executive Committee of 10 additional counsel (*see Manual for Complex Litigation (4th Ed. 2004)* ("MCL 4th"), § 10.221);

Hon. Jesse M. Furman
July 7, 2014
Page 2

      c.  specific sub-committees to be appointed by Lead Counsel at their discretion focusing on substantive areas such as class certification, defect and economic experts, RICO, trial, discovery (including GM, suppliers, and third-party discovery), dealer and wholesaler claims, death/injury claims, bankruptcy, and any other issues that Lead Counsel deem necessary as the case progresses; and

      d.  Federal/State Liaison counsel.[1]

**(2)    Lead and Liaison Counsel**

The Court has asked for the parties' views on whether a single set of Lead Counsel and Liaison Counsel should be appointed for all Plaintiffs, or whether multiple sets (for example, in light of differences in state law or differences between vehicles) are necessary or prudent.  Plaintiffs believe that a leadership structure headed by a single set of Lead Counsel, with responsibilities as outlined in the MCL 4th, § 10.221, is both necessary and desirable. Plaintiffs do not believe that the leadership structure should be based upon differences between vehicles or differences in state law.  While there are differences among the vehicles involved and in the laws of the various jurisdictions in which the actions were filed, there is a sufficient identity and commonality of core liability issues and evidence to make any leadership division based upon state law or vehicle type both unnecessary and impractical.  This principle was followed in the *Toyota Unintended Acceleration* case (MDL No. 2151), where Judge Selna found (as have other courts) that differences between types of plaintiffs did not create any conflicts among counsel and recognized that courts have regularly permitted counsel to represent different types of claimants within a class or through subclasses.  *See*, *e.g.*, *In re Toyota Motor Corp. Unintended Accel. Mktg., Sales Pracs., & Prods. Liab. Litig.*, C.D. Cal. Case No. 8:10ML02151 JVS, Order No. 2:  Adoption of Organization Plan and Appointment of Counsel (Dkt. No. 169); *In re Medtronic, Inc.*, 2008 WL 3895933 at *3 (D. Minn. Aug. 15, 2008) (MDL 1726); *Moreno v. Autozone, Inc.*, 251 F.R.D. 417, 425 (N.D. Cal. 2008); *In re Serzone Products Liability Litigation*, 231 F.R.D. 221, 238 (S.D. W.Va. 2005) (MDL 1477).

Plaintiffs therefore propose that the Court appoint three (3) Co-Lead Counsel, responsible for all cases that may be filed in or transferred to this Court, including class actions and individual actions, regardless of whether the claimants are seeking solely economic losses or damages for personal injury or wrongful death.  As suggested by § 10.221 of the MCL 4th, the Co-Lead Counsel would be charged with formulating (in consultation with other counsel) and presenting positions on substantive and procedural issues during the litigation.  They would act for the group—either personally or by coordinating the efforts of others—in presenting written and oral arguments and suggestions to the Court, limiting the number of plaintiffs' counsel who appear at hearings, working with opposing counsel in developing and implementing a litigation plan, initiating and organizing discovery requests and responses, conducting the principal examination of deponents, retaining experts, arranging for support services, and seeing that schedules are met.  We propose that the Court also appoint a Plaintiff Liaison Counsel, who has offices in New York.  The three Co-Lead Counsel would have the duties described in MCL 4th

---

[1] Several counsel have suggested variations of this structure, and all have been considered in developing the proposals in this letter.

§ 10.221; and the Liaison Counsel would facilitate communications with the Court and Counsel, and the Bankruptcy proceedings. An Executive Committee of ten (10) persons would assist Co-Lead Counsel in performing their duties. Plaintiffs' counsel reported positive experience with a multiple Co-Lead structure, and recommend it as appropriate given the size, scope, and complexity of this litigation. Many plaintiffs' counsel commented that the Court's designation of the three Temporary Leads reflected an optimal ongoing Lead Counsel structure.

### (3) Plaintiffs' Executive Committee

With Co-Lead Counsel, Executive Committee members will be responsible for:

a. consolidated pleadings and motion practice;
b. document management and review;
c. electronic discovery issues;
d. GM supplier, and third-party discovery;
e. depositions;
f. liaising with government actions and proceedings;
g. expert witnesses;
h. damages;
i. bankruptcy coordination;
j. communication with class members and coordination with personal injury/wrongful death actions;
k. trial; and
l. other issues as the need arises.

Plaintiffs propose that the Court also appoint Federal/State Liaison Counsel, who would be charged with communications between the Court and other counsel with similar actions pending in state courts, advising parties of developments, and otherwise assisting in the coordination of Federal/State activities. *See* MCL 4th, § 20.313.

The GM class action litigation is large, complex, and dynamic. At the present time, there are over 95 cases. More cases are constantly being filed in connection with the ignition system defects that are the subject of the centralized actions. New GM continues to recall even more vehicles for defects involving the ignition system and new facts and contentions regarding its conduct continue to be revealed by New GM itself, or through investigation.

Consumer complaints regarding the pace and progress of the recalls is widespread. Public safety is impacted on a daily basis. The MDL discovery must be intensive, multi-tracked, efficient, and comprehensive. Scores of pleadings involving the consumer and warranty laws of at least 47 states, and federal RICO and Magnuson-Moss claims, must be organized into a set of manageable, comprehensive master pleadings.

In the time that Anton Valukas conducted the internal GM investigation (approximately 70 days), he and his team interviewed approximately 230 witnesses and were given access to over 40 million documents. There are important issues encompassed by the instant litigation that the Valukas investigation did not reach.

Hon. Jesse M. Furman
July 7, 2014
Page 4

GM is under investigation by the Justice Department, at least two state Attorneys General (New York and Florida as of now), the District Attorney of Orange County, California, and NHTSA. As with other recent MDLs, the need for cooperation among government agencies, civil enforcement attorneys, prosecutors, and the plaintiffs' leadership is vitally important.

Further, this litigation is truly national in scope. It has captured the interest of the public. Class members live in all states, and the cases centralized here came from around the country. The leadership structure should be large and inclusive enough to reflect this diversity, including geographical diversity, and to deploy the array of expertise in class actions, discovery, auto defects, consumer issues, and trial skills essential to its effective conduct. The resources necessary to litigate this case, both financial and personnel, will be very large. The leadership of this MDL should be of a sufficient size and breadth of experience to handle the myriad issues the GM litigation will involve, while simultaneously remaining streamlined and manageable. In our experience, a leadership structure comprised of too many formal levels can inhibit effective management and swift adjudication or resolution of the litigation, and generate waste rather than economy. Hence, the consensus around a leadership structure that is flexible at the sub-committee level: form follows function. We believe that the proposal herein avoids the disadvantages of an overly elaborate infrastructure, provides ample resources for vigorous prosecution, and delivers the strong leadership that the Court expects.

### (4)   Method and Schedule for Appointment

A broad consensus has developed for what is called a "hybrid" process that combines nominations by the Temporary Lead Counsel and an open application process. Under this process, the Temporary Lead Counsel would submit their own applications; would nominate Liaison Counsel and six (6) of the ten (10) Executive Committee members; and Lead Counsel would appoint specific sub-committee members as the case progresses. Nominees would be required to submit their qualifications and commitment to serve to the Court in a five page submission. In addition, the Court would invite additional attorneys to submit similar applications to serve on the Executive Committee, and each such applicant would submit the same information to the Court as the nominated applicants (with succinct oral presentation as well if the Court wishes to hear from each applicant). We propose that all applications be filed on July 21, 2014, so that the Court may consider all applicants and appoint permanent leadership at (or shortly after) the Initial Conference. We will submit a proposed order, for the Court's convenience, forthwith upon request.

Plaintiffs believe that the best process for selecting lead and liaison counsel is one that provides all interested counsel an opportunity to submit applications in writing, as well as an opportunity, if requested, to address the Court in person at an open hearing. Again, Plaintiffs believe the *Toyota* MDL Litigation provides an example of a fair, productive, and efficient process which included the recommendations of interim lead counsel, permitted all applicants an opportunity to be considered, and allowed the MDL Court to make informed decisions.

In the *Toyota* MDL Litigation, Transferee Judge Selna's "main criteria" for leadership appointments were "(1) knowledge and experience in prosecuting complex litigation, including class actions; (2) willingness and ability to commit to a time-consuming process;

Hon. Jesse M. Furman
July 7, 2014
Page 5

(3) ability to work cooperatively with others; and (4) access to sufficient resources to prosecute the litigation in a timely manner." (4/14/10 Order)  We recommend the same criteria here, and, because this litigation is comprised primarily of cases brought as proposed class actions, we would add two additional factors from Fed. R. Civ. P. 23(g):  (1) the work counsel has done in identifying or investigating potential claims in the action, and (2) counsel's knowledge of the applicable law.

### (5)  Timing of Appointments

The broad consensus among MDL Plaintiffs' Counsel is that this Court should proceed now to appoint counsel and commence common discovery, which primarily involves GM's post-bankruptcy conduct, rather than awaiting a ruling by the Bankruptcy Court.  As noted by Judge Gerber at his July 2, 2014 scheduling conference, the bankruptcy court is committed to coordination with this MDL Court, while proceeding on issues that do not currently involve fact discovery.  Temporary Lead Counsel, with other counsel, have retained the firms designated by the bankruptcy court to present plaintiffs' positions, and we are coordinating the response in bankruptcy court on pending issues.  The sooner we can tell Judge Gerber that leadership is in place, the better off that process will be.  Meanwhile, the post-bankruptcy conduct of New GM regarding its ever-expanding recalls is on center stage in the MDL proceedings, and has come into even sharper focus in the more recently-filed and more comprehensive class action complaints.  This Article III Court has been charged with the management of the common discovery effort under 28 U.S.C. § 1407.  This discovery will involve what New GM recently acknowledged in the NHTSA consent decree is a safety issue and a matter of pressing concern, to literally millions of GM owners, regardless of the vintage of their vehicles, and to the travelling public at large.  Delay will not improve the situation or serve the purposes of the MDL statute.

The beginning stage of this litigation has been marked by a high degree of communication and informal cooperation among counsel.  We respectfully submit that formal leadership is now necessary and desirable to enable coordinated discovery and pretrial activities to go forward with dispatch.

Respectfully,

| | | |
|---|---|---|
| Steve W. Berman | Elizabeth J. Cabraser | Mark P. Robinson, Jr. |
| **Hagens Berman Sobol Shapiro LLP** | **Lieff Cabraser Heimann & Bernstein, LLP** | **Robinson Calcagnie Robinson Shapiro Davis, Inc.** |
| 1918 Eighth Ave. | 275 Battery Street | 19 Corporate Plaza Drive |
| Suite 3300 | 29th Floor | Newport Beach, CA  92660 |
| Seattle, WA  98101 | San Francisco, CA  94111-3339 | |
| -and- | -and- | -and- |
| 555 Fifth Avenue | 250 Hudson Street | Seven Times Square |
| Suite 1700 | 8th Floor | 47th Floor |
| New York, NY 10017 | New York, NY  10013-1413 | New York NY  10036 |

1184039.2