LAW OFFICES OF

# PRIBANIC & PRIBANIC

A LIMITED LIABILITY CORPORATION

| | |
|---|---|
| 513 COURT PLACE<br>PITTSBURGH, PENNSYLVANIA 15219 | WHITE OAK OFFICE<br>1735 LINCOLN WAY<br>WHITE OAK, PA  15131 |
| 412/281-8844<br>FAX 412/281-4740 | 412/672-5444<br>FAX 412/672-3715 |

July 28, 2014

Hon. Jesse M. Furman
United States District Judge
United States District Court
Southern District of New York
Via ECF

      Re: *Estate of Yingling v. General Motors, LLC*, 14-cv-05336-JFM
          *In re: General Motors LLC Ignition Switch Litigation*, 14-md-02543-JFM
          Application for Lead Counsel or Executive Committee Position

Dear Judge Furman:

      Our firm represents the estate of James E. Yingling, III in the above-referenced case. We submit this application for a position as Lead Counsel or on the Executive Committee pursuant to Order No. 5.

      In MDL practice, it is sometimes easy to get caught up in the complexity of the litigation and lose sight of the stories that our cases tell. We, therefore, seek the Court's indulgence in us preceding our application with five short paragraphs about our client rather than us.

      James Yingling was driving a 2006 Saturn Ion on November 21, 2013. The Saturn failed to navigate a routine right turn and it ran off the road, crashing into a culvert. The airbags did not deploy.

      James suffered massive head trauma. After 17 agonizing days, he died of respiratory failure due to the injuries he sustained in the crash.

      James left behind a beautiful widow and five dependant children.

      Not even *five* months after James died, GM recalled the vehicle he was driving. Of course, we know now that GM was aware of the defects in the ignition switch as far back as 2004 or 2005. But if GM executives, attorneys, and employees would have come clean about the problems with the switch as little as *five* months earlier, James would still be alive and five children would still have their father.

The car James was driving when he crashed is preserved. An engineer has examined the black box and found data consistent with the engine being inappropriately keyed off about 4 seconds before the collision.

*Attorneys Handling Injury and Death Cases Must Have MDL Leadership Positions*

We set forth the factual allegations of our case against GM to underscore how important it is that we be permitted to take a leadership role in this litigation. We recognize that the MDL into which the JPML has consolidated this case is largely comprised of "loss-of-value" cases, alleging that the recall has diminished potential sale price of the vehicles involved. We further recognize that many of the attorneys we will be competing with for MDL leadership positions represent vast quantities of clients with these loss-of-value cases.

GM, itself, makes this point explicitly clear. It states "at present there are only nine actions in the MDL alleging claims for personal injury or wrongful death relating to the ignition switch." (14-MD-2543, Docket No. 73 at 6.) GM further claims that the remaining 89% of the actions in this MDL allege only economic damage claims. (*Id.* at 2.)

However, cases such as James', which assert wrongful death and survival actions, are about as factually and legally different than the loss-of-value cases as they could be. The interests of the two types of cases will be different. Namely, attorneys working on the loss-of-value cases will be immediately focused on surviving GM's Economic Loss Motion to Enforce. Meanwhile, attorneys on the death cases will be addressing the Feinberg Protocol and moving to discovery practice forthwith.

GM again sums up the distinct interests between the two types of cases: "most, *if not all*, of the claims alleged in plaintiffs' complaints … can be resolved by threshold motions such as motions to dismiss or for judgment on the pleadings." (14-MD-2543, Docket No. 73 at 9, emphasis added.) This statement is utterly dismissive of the cases—like *Yingling*— that are subject to neither GM's Economic Loss Motion to Enforce, Non-Ignition Switch Motion to Enforce, nor Pre-Closing Accident Motion to Enforce.

Furthermore, GM is seeking to use the Bankruptcy Court to delay discovery in *Melton, et al. v. General Motors LLC*, an injury case that is unlikely to involve Bankruptcy rulings. (*Id.* at 7.) This tactic illustrates the point that if the focus of this litigation is permitted to remain solely on the loss-of-value cases, death cases like James', will be delayed in getting the justice they deserve. And the American lawmakers, press, and public have already shown that this is one case where justice delayed truly will be justice denied.

The only way to ensure that the interests of the death and injury cases remain at the forefront of this litigation is to place attorneys representing *solely* death and injury clients in leadership positions. It seems reasonable that one of the three members of the Lead Counsel Committee represent *solely* injury/wrongful death clients, one member represent solely economic loss clients, and the third member represent both types of clients.

We urge the Court to similarly fill three of the ten seats on the Executive Committee with attorneys who represent injury/wrongful death clients.

### *Pribanic & Pribanic's Qualifications For An MDL Leadership Position*

Having hopefully convinced the Court of the importance of placing attorneys representing solely injury/wrongful death clients in leadership positions, we turn to our qualifications and commitment to serve.

### *Knowledge And Experience In Prosecuting Complex Litigation*

Complex litigation and mass torts are nothing new to our firm. We have been involved in many MDL cases, including Chantix, transvaginal mesh, and metal-on-metal hips. Our client in the Chantix MDL was a paragon of the claims against the manufacturer and our persistent representation resulted in an outcome that many other member-cases would have envied.

However, the clearest illustration of our firm's knowledge and experience in prosecuting complex litigation comes from our ongoing work in the Cellphone Litigation. Consolidated in Superior Court in Washington DC, the Cellphone Litigation is a series of cases filed against the manufacturers of cellular telephones, cell phone carriers, and the trade industry that represents the group's collective interests. The defendants in these cases include AT&T, Sprint, and Cricket, along with Motorola, Apple, and Samsung. The scope is massive.

The claims involved are that cellular telephones cause cancer, a fact which has been hidden by the entire cellular telephone industry for years. While this litigation may sound like something out of *Skeptic Magazine*, it is a very real concern that is shared by experts from around the world. The risk litigated in these cases is whether cellular telephones are the largest public health crisis since the bubonic plague.

We sit on the leadership committee of this litigation. To that end, attorneys from our firm have traveled as far as Stockholm, Sweden to interview experts. We were on the discovery sub-committee, coordinating a massive e-discovery campaign. We participated hands-on in the preparation of *nine* expert reports. In December, we appeared at a three-week *Frye* hearing, where we were responsible for the direct examination of a Russian biophysist.

To say that this litigation is "complex" is an understatement. Indeed, it has given us first-rate knowledge of the challenges faced in complex litigation. Both Victor Pribanic and Matthew Doebler have been intimately involved in the DC Cell Phone Litigation.

*Willingness And Ability To Commit To A Time-Consuming Process*

Our commitment to James Yingling's family in this case is unparalleled. Whether prosecuting this matter as a one-plaintiff-one-defendant case or working on behalf of MDL leadership, we are willing to spend whatever time is necessary to bring GM to justice.

If appointed to a leadership position, Matthew Doebler's existing caseload would be cut back to the bare minimum to permit him the opportunity to focus almost exclusively on this case.

*Willingness And Ability To Work Cooperatively With Others*

Matthew Doebler is a wizard with digital communications. Whether website design—and maintenance—or digital video, Matthew has the skills and ideas to collaboratively pool the efforts of lawyers who are geographically scattered.

While himself not a luddite, Victor Pribanic brings the interpersonal skills of a 30-year plaintiff's attorney with hundreds of jury trials under his belt. Victor is one of those lawyers who manages to confront the most complicated situations without offending anybody.

We recognize that this must be a team effort. Our firm can contribute unique talents that will make the Plaintiffs' team nimble, adaptive, and organized.

*Access To Resources To Prosecute The Litigation In A Timely Manner*

We again point to the DC Cell Phone litigation to illustrate our firm's willingness to literally put our money where our mouth is. Trips to Sweden, nine experts, and living in a hotel in Washington for 3 weeks do not come cheap. We have the cash flow and the willingness to use that cash to finance complex litigation. Obviously, we intend to recoup costs advanced on behalf of the MDL, but we are willing to participate in the financing of this case.

*Work Done In Identifying, Investigating, Or Prosecuting Potential Claims*

Other than our case, we have done nothing to identify additional potential claims and we see this as a strength. If appointed, we will represent the interests of injury and death victims. We are not interested in chasing after hundreds of potential clients who might each have a few hundred dollars worth of a claim. We will represent Mr. Yingling's interests and in so doing will similarly represent other similarly situated victims.

*Knowledge Of Applicable Law*

As mentioned above, Victor Pribanic has had a long career as a trial attorney with countless verdicts under his belt. He is regularly featured on the magazine *Best Lawyers in Pittsburgh* and was named Lawyer of the Year in 2014 for medical malpractice in

Pittsburgh. He has handled automobile defect cases and recovered large sums for our clients. While no lawyer could be trusted to say they know everything, there is little Victor has not seen.

*Geographic Diversity*

We consider our location in Pittsburgh to be a significant strength. New York and California should not be permitted to dominate MDL leadership. Pittsburgh, on the other hand, is centrally located and within a manageable drive to 500 Pearl Street. To the extent that we need to host other plaintiff's attorneys, Pittsburgh is easy to reach and offers many amenities.

*Conclusion*

GM's abhorrent conduct has guaranteed that this MDL will have the eyes of the nation. It is vitally important that *all* types of consolidated cases be represented. Careful attention must be paid to what will remain of the MDL leadership if GM is successful in its efforts to eliminate the economic loss cases. Injury and death cases must, therefore, be represented in all aspects of the MDL leadership.

Pribanic & Pribanic has the experience, skills, and resources to make a strong contribution to the plaintiff's leadership team. We bring a well-rounded balance of abilities and interests. But most of all, we are committed to faithfully representing the interests of our client and know that our service to the Yingling family would extend to every other victim who has been injured by GM's despicable behavior.

We thank the court for consideration of our firm for a position as Lead Counsel or on the Executive Committee and would appreciate the opportunity to address the court in person at the August 11, 2014 Initial Conference.

Very truly yours,

/s/ Matthew Doebler                                    /s/ Victor Pribanic
Matthew Doebler                                        Victor Pribanic