# DONOVAN AXLER, LLC
ATTORNEYS AT LAW
1845 WALNUT STREET
SUITE 1100
PHILADELPHIA, PA 19103
(215) 732-6067
FAX (215) 732-8060
www.donovanaxler.com

MICHAEL D. DONOVAN
mdonovan@donovanaxler.com

July 28, 2014

**VIA ELECTRONIC FILING**

Hon. Jesse M. Furman
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

RE: *In Re: General Motors LLC Ignition Switch Litigation*, 14-MD-2543 (JMF)

Dear Judge Furman:

    This Firm is one of the co-counsel in the case of *DePalma et al. v. General Motors LLC et al*, No. 14-cv-05501-JMF, transferred to the MDL from the Middle District of Pennsylvania. We submit this letter in accordance with section II of the Court's Order No. 5 entered on July 18, 2014. As set forth below, this Firm is fully committed to this litigation and well qualified for an appropriate leadership role in the MDL. We request the opportunity to address the Court briefly at the August 11, 2014 Initial Conference.

### 1. *Knowledge and Experience*

    Although many (if not all) of the lawyers in the present MDL have extensive experience in complex class actions, only a handful have actually tried a class action to verdict before a jury. The undersigned successfully has tried three (3) complex class actions to verdict before juries in Pennsylvania and New Jersey – two involving defective brake systems on Kia model cars and one involving unpaid wages against Wal-Mart Stores. Mr. Donovan also tried a complex shareholder injunctive action to the court in 2009. Each of these trials (and pertinent appeals) is summarized below.

    Individually and in the aggregate, this trial and appellate experience – together with over 25 years of complex class action experience in hundreds of other cases, including multiple MDLs – will provide an essential resource to the plaintiffs in this MDL. In particular, Managing Partner Michael Donovan has obtained and defended class certifications in multiple car defect class actions, developing appropriate economic damages theories for the loss of warranty value (as distinct from diminished vehicle value) where a warranty (including a certified pre-owned warranty), as here, has "failed of its essential purpose" within the meaning of UCC 2-719.  This hands-on experience also includes detailed familiarity with current expert and academic research concerning warranty economics, the Magnuson-Moss Act, the similarities and dissimilarities

1

among different states' warranty, product liability and consumer protection laws, applicable jury instructions, model jury verdict forms and trial plans (frequently required at class certification). Mr. Donovan is and has been a member of the bar of this Court since 1987, and has argued in class actions before the Supreme Court of the United States and multiple federal courts of appeal, including the Second Circuit.

In May 2005, Mr. Donovan tried to jury verdict a Pennsylvania statewide consumer class action against Kia Motors America, Inc., concerning the defective brake system on the 1997-2000 models of the Kia Sephia automobile. After a two-week trial, the jury returned a verdict of $600 per class member, for an aggregate class-wide verdict of $5.4 million. *Samuel-Bassett v. Kia Motors America, Inc.*, 2006 WL 3949458 (Pa. Com. Pl. Dec. 28, 2006) (denying post-trial motions of defendant). In October 2007, the Pennsylvania Superior Court affirmed. In December 2011, the Pennsylvania Supreme Court also affirmed, and the Supreme Court of the United States thereafter denied *certiorari*. *Samuel-Bassett v. Kia Motors America, Inc.*, 34 A.3d 1 (Pa. 2011), *cert. denied*, 133 S. Ct. 51 (2012). Mr. Donovan briefed and argued both of the appeals. The published opinion in the case provides extensive discussion about class certification and expert theories that will have an important bearing on the issues in this MDL.

In September and October 2006, Mr. Donovan tried to jury verdict a Pennsylvania statewide employee class action against Wal-Mart Stores, Inc., concerning Wal-Mart's failure to pay its hourly employees for missed breaks and off-the-clock work. After a six-week trial, the jury returned a verdict for the Class in the amount of $78.4 million. In October 2007, the trial court awarded an additional $62 million in liquidated damages under the Pennsylvania Wage Payment and Collection Law, $10.2 million in prejudgment interest and approximately $46 million in attorney fees and costs. *See Braun v. Wal-Mart Stores, Inc.*, 2005 WL 3623389 (Pa. Com. Pl. Dec. 27, 2005) (opinion certifying class). In June 2011, the Pennsylvania Superior Court affirmed the class judgment in a 200 page slip opinion that again discusses class certification and expert issues. *Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875 (Pa. Super. 2011), *appeal pending*, No. 32 EAP 2012 (Pa. argued May 8, 2013). Mr. Donovan also briefed and argued the appeals on behalf of the class.

In May and June 2008, Mr. Donovan tried to jury verdict a New Jersey statewide class action against Kia Motors America, Inc., concerning the defective brake system on the 1997-2000 models of the Kia Sephia automobile. After a five-week trial, the jury returned a verdict of $750 per class member, for an aggregate class-wide verdict of approximately $6.0 million. *Little v. Kia Motors America, Inc.*, No. UNN-L-0800-01006 (N.J. Super. (Union Cty.) verdict entered June 6, 2008). In post-trial proceedings, the trial court sustained the liability verdict for the class but vacated the damages award and ordered class member claims proceedings.

In January 2009, Mr. Donovan tried to the Court a consolidated shareholder derivative and class action challenging the proposed merger of Banco Santander, S.A. and Sovereign Bancorp, Inc., *In re Sovereign Bancorp, Inc. Shareholders Litigation*, No. 110802587 (Phila. C.P. filed 2008). After the nearly two-week trial, the parties agreed to a substantial settlement that modified the terms of the proposed acquisition. The class action and derivative settlement was finally approved by the Court in April 2009.

Mr. Donovan has provided testimony before the United States Senate Committee on Banking, Housing and Urban Affairs (Jan. 25, 2007) concerning the CARD Act and before the House of Representatives Subcommittee on Commercial and Administrative Law, Committee on the Judiciary, concerning the Arbitration Fairness Act (Apr. 29, 2009). He also has appeared as a panel speaker and presenter at the American Bar Association's National Class Action Institute, the Pennsylvania Bar Institute's Banking Law Update, the Practicing Law Institute's Financial Services Litigation Forum, the Consumer Credit Regulation Forum of the New Jersey Bar Association, and the National Consumer Rights Litigation Conference sponsored by the National Consumer Law Center. Mr. Donovan is a member of the American Bar Association (Litigation and Business Law Sections), the Philadelphia Bar Association, the New York Bar Association, and the District of Columbia Bar Association. He is the Chair of the Consumer Law Subcommittee of the ABA Litigation Section's Class Actions and Derivative Suits Committee. He is also the former Vice Chair of the National Association of Consumer Advocates and an active member of Public Justice. He received the 2009 Vern Countryman Award for Excellence in Consumer Law awarded by the National Consumer Law Center and was a 2007 Trial Lawyer of the Year Finalist recognized by Public Justice.

### 2. *Willingness and Ability to Commit*

Having tried and defended on appeal multiple class actions, this Firm is well aware of the time commitment required for successful results. The Firm is ready, willing and able to devote that time to this MDL. We have attended conference calls related to the bankruptcy court proceedings. We also attended the JPML hearing and participated in various conference calls and meetings concerning the MDL and this Court's organizational instructions. It has been the undersigned's experience that trial counsel himself must be immersed in the facts, details, documents and theories to frame and argue the case in the best possible manner for the clients. As a result, Michael Donovan will be the lawyer responsible for the leadership role, if any, assigned in this MDL.

### 3. *Willingness and Ability to Work Cooperatively*

Michael Donovan is personally familiar with two of the Temporary Lead Counsel (Steve Berman and Elizabeth Cabraser) and with many of the other lawyers and law firms who are involved in the MDL. He and his Firm have worked with many of the lawyers on other matters and are confident they can and will work with all counsel in a cooperative and productive manner to obtain the best possible results for all clients and all classes and subclasses of consumers in this case. We are unaware of any conflicts or impediments that might otherwise infect a working relationship in this case.

### 4. *Access to Resources*

This Firm (and its predecessors), though relatively small, has obtained many millions of dollars in recoveries for consumers, workers, shareholders and investors in the 25 years in which Michael Donovan and his partners have been prosecuting class actions. The Firm has more than adequate resources – including very significant and undrawn bank credit lines – to devote to this case. While the Firm can and will add associate attorneys to this case if necessary, given the

number of firms already involved and the very important benefit that comes from dispersing work among non-lead firms, it is very unlikely additional associate support should be required. In each of the four trials set forth above, associate attorneys were supplied by co-counsel in the case, which boosted cooperation and camaraderie among all plaintiffs' counsel.

### 5. Work Done to Identify, Investigate or Prosecute Potential Claims

The class action complaint filed in Pennsylvania by plaintiffs DePalma, McCann and Pollastro demonstrates that counsel here have been scrupulous and thoughtful about the facts, claims and theories that will support and sustain a consumer class action regardless of the ultimate decisions by the bankruptcy court in this case.

For example, the McCanns purchased their 2006 Cobalt new from an authorized GM dealer with an express, written extended warranty that covered the car through November 2011. According to the 2009 bankruptcy sale, New GM assumed "all Liabilities arising under express written warranties of [Old GM] that are specifically identified as warranties and delivered in connection with the sale of new, certified used or pre-owned vehicles . . . ." Because the McCanns, like many others, presented their car for ignition switch problems during this warranty period (three separate times), and because GM failed to make good on its warranty promise when the McCanns sought contractual relief, the McCanns have very strong claims for breach of express and implied warranties, failure of essential purpose, violation of the Magnuson-Moss Act (the federal lemon law), and other related claims against New GM directly.

Similarly, Mr. Pollastro purchased a "certified pre-owned" warranty from New GM when he bought a 2007 Cobalt in 2010. He too was denied warranted repairs to the ignition switch when he brought the car back to the GM dealer after purchase. And, while Mr. DePalma did not purchase an extended warranty when he acquired his Cobalt in 2011, his car was purchased when New GM certainly knew about the ignition switch defect without recalling the car. Mr. DePalma was in three separate front-impact crashes after his car stalled due to the defect.

Counsel herein could have filed multiple separate class action complaints with different plaintiffs and in different jurisdictions. Instead, they concentrated on appropriate representative plaintiffs who could advance common, typical and predominating claims that would endure any adverse bankruptcy decisions, the rigors of a contested class certification proceeding and the many factual and legal challenges that lead up to and continue through trial and appeal.

In this respect, counsel firmly believe that coherent damages theories are essential to the class cases in this MDL. While one theory – loss of promised repair and replacement in a timely manner – will certainly be advanced, *see In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768, 815-817 (3d Cir. 1995) (holding that the cost of repairs and replacements in the ordinary course of events is a proper measure of class damages), other theories may be necessary to maintain class coherence. From past experience, counsel know that the short-hand diminution-in-vehicle-value theory is fraught with pitfalls and expert challenges. Economic studies and academic analyses, however, firmly support a warranty investment value theory – that a product warranty has a measurable component value embedded in the price of the product – that would provide a common, calculable, persuasive and compelling damages amount

for all consumers who, as here, failed to receive the promised benefit of a timely warranty repair or replacement through recall or otherwise. *See, e.g.,* Priest, *A Theory of the Consumer Product Warranty*, 90 Yale L.J. 1297 (1981). Manufacturers themselves employ a version of this theory, *see Abraham v. Volkswagen of America, Inc.*, 795 F.2d 238, 249-50 (2d Cir. 1986) ("Manufacturers always have knowledge regarding the effective life of particular parts and the likelihood of their failing within a particular period of time"), so that proof of GM's knowledge here will establish that GM never intended to comply with any of its warranty promises when it sold the subject cars. In other words, all class members were deprived of the investment-value of the GM express and implied warranties, including extended warranties (calculated as a component percentage of each car's price) at the time they purchased the cars.

### 6. *Knowledge of Applicable Law*

As the foregoing indicates, the undersigned has extensive working and appellate knowledge of all of the central laws, procedures, theories and processes that are likely to arise in this MDL.

### 7. *Geographic Diversity*

While geographic diversity should be a factor in assigning some leadership roles, the undersigned submits that it should have less weight than all of the other factors set out above.

### 8. *Specific Executive Committee Assignments Requested*

In accordance with Order No. 5, Michael Donovan respectfully applies for an Executive Committee leadership position involving Trial, Damages or Expert Witnesses, in that order of preference.

Counsel will be available at the August 11, 2014 Initial Conference to answer any questions the Court may have. Counsel reiterates the request to address the Court briefly in person at the Initial Conference.

Respectfully,

*/s/ Michael D. Donovan*

Michael D. Donovan

cc.   This submission has been served on all counsel through the ECF system.