UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
IN RE:                                                                            14-MD-2543 (JMF)

GENERAL MOTORS LLC IGNITION SWITCH LITIGATION                **ORAL ARGUMENT REQUESTED**

*This Document Relates To All Actions*
------------------------------------------------------------------------x

### APPLICATION FOR APPOINTMENT OF WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP AS INTERIM CO-LEAD OR LIAISON COUNSEL OR, ALTERNATIVELY, AS AN EXECUTIVE COMMITTEE MEMBER REPRESENTING THE INTERESTS OF THE ORIGINAL IGNITION SWITCH CLASS MEMBERS

Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein" or the "Firm"),[1] respectfully applies, pursuant to the Court's Order No. 5 [Doc. 70], for appointment as Plaintiffs' Interim Co-Lead Counsel or Liaison Counsel.  Alternatively, Wolf Haldenstein requests appointment to the Executive Committee to represent the "specific interests" [Doc. 70, at 5] of the original economic loss Plaintiffs in this MDL (the "Ignition Switch Plaintiffs").[2]

Ignition Switch Plaintiffs were the *only* Plaintiffs in these cases when they were considered by the JPML on May 29, 2014 and transferred to this Court on June 9.  GM's recent status report reveals that, as of July 21, **356 of the 358 named Plaintiffs** in 99 of the 101 transferred actions allege ISDs in Affected Vehicles (including in 10 personal injury/wrongful death actions).  [*See* Doc. 73, at 1, 5 & nn. 2, 7 & Ex. A.]  Only *two* Plaintiffs in *two* actions allege other types of defects (and for economic loss only).  *Id.*  One of those cases is *Andrews v. General Motors LLC*, No. 1:14-cv-5351-JMF, which, as we have previously stated, is a radically different case brought on behalf of a different, much larger class under a different legal theory.  [*See* Doc. 40, at 3.]  *Andrews* alleges **35 unrelated defects** in numerous GM models and seeks damages for *every single GM vehicle sold over nearly*

---

[1] The Firm's extensive role in these cases to date, in the Bankruptcy Court and otherwise, was summarized in our July 10, 2014 letter to the Court.  [Doc. 40, at 1.]

[2] Specifically, the 2.5 million owners and lessors of 2005-2010 Chevrolet Cobalts, 2005-2011 Chevrolet HHRs, 2007-2010 Pontiac G5s, 2003-2007 Saturn Ions, and 2007-2010 Saturn Skys (the "Affected Vehicles"), whose cars were recalled earlier this year for an Ignition Switch Defect ("ISD") common to those vehicles.

*five years* between July 2009 and April 2014, based on the novel theory that GM's spate of recent recalls has devalued the "GM brand." [*See Andrews*, 1:14-cv-5351-JMF, Doc. 13 (First Amended Class Action Complaint), at ¶¶ 1-27, 226-230, https://ecf.nysd.uscourts.gov/doc1/127114500130.]³

The Court should not consolidate the cases or appoint the same lead counsel in both cases. Based on this Firm's 40-years of experience litigating complex MDLs and class actions, we are certain that if consolidated, *Andrews* would *overwhelm* the cases brought by 99% of the Plaintiffs and require *years* of additional motion practice and burdensome and ***exorbitantly costly*** fact and expert discovery. It would also disserve the Ignition Switch Plaintiffs by making their cases much more difficult to settle, certify as class actions or try. The vast record created by the Congressional and NHTSA investigations relates almost entirely to the ISD in the six Affected Vehicles, as do the revelations in the Valukas Report. There is no such record as to the other 34 defects alleged in *Andrews*. And while GM has publically accepted responsibility for its prolonged failure to take appropriate action as to the ISD, its CEO testified that GM views its other recent recalls very differently (even those involving different ignition switches in other vehicles), signaling that GM will vigorously contest liability as to 34 of the 35 defects alleged in *Andrews*. See http://www.c-span.org/video/?320418-1/hearing-gm-recalls-corporate-culture-resumes-shortly, at 2:33:35-2:35:25.

Thus, the Ignition Switch Plaintiffs should be able to try or mediate their cases against GM relatively quickly, but not if their cases are coupled with *Andrews*. That, in all likelihood, would

---

³ The *Andrews* complaint (at ¶ 10) alleges the ignition switch defect as only one of 35 different defects:

> 10. The array of defects is astounding and includes: (1) ignition switch defect, (2) power steering defect, (3) airbag defect (4) brake light defect, (5) shift cable defect, (6) safety belt defect, (7) ignition lock cylinder defect, (8) key design defect, (9) ignition key defect, (10) transmission oil cooler line defect, (11) power management mode software defect, (12) substandard front passenger airbags, (13) light control module defect, (14) front axle shaft defect, (15) brake boost defect, (16) low-beam headlight defect, (17) vacuum line brake booster defect, (18) fuel gauge defect, (19) acceleration defect, (20) flexible flat cable airbag defect, (21) windshield wiper defect, (22) brake rotor defect, (23) passenger-side airbag defect, (24) electronic stability control defect, (25) steering tie-rod defect, (26) automatic transmission shift cable adjuster, (27) fuse block defect, (28) diesel transfer pump defect, (29) base radio defect, (30) shorting bar defect, (31) front passenger airbag end cap defect, (32) sensing and diagnostic module ("SDM") defect, (33) sonic turbine shaft, (34) electrical system defect, and (35) seatbelt tensioning system defect.

materially delay the Ignition Switch Plaintiffs' remedy (and could jeopardize it altogether), and it would substantially dilute their recovery given the huge cost of prosecuting the *Andrews* claims. There is tension between the two competing classes respecting their recoveries, and the far less discovery needed in the Ignition Switch cases will enable counsel to charge less than this District's typical 25% fee. (We propose a sliding scale between 12.5% and 5%, depending on the recovery.)

Despite these facts, all three Temporary Lead Counsel, *see* their July 21 letter [Doc. 72], appear intent on filing a single consolidated complaint. Consequently, it is imperative for the Court to appoint at least one Interim Co-Lead firm that will ensure that the *Andrews* consolidation issue is fully vetted, and the interests of the Ignition Switch Plaintiffs are safeguarded. We greatly respect the Hagens Berman and Robinson Calcagnie firms. Those firms and their lawyers are and will continue to be invaluable to Plaintiffs in this action. Because they also represent the *Andrews* class, however, and are duty bound to pursue that class's ***truly distinct*** interests while prosecuting or mediating this case, the Court should appoint three Lead Counsel who represent Ignition Switch Plaintiffs only.[4]

Wolf Haldenstein applies to serve as Co-Lead or Liaison counsel, or to represent the Ignition Switch Plaintiffs' interests on the Executive Committee. The Firm should be appointed because:

1. <u>Wolf Haldenstein has vast knowledge and experience in complex MDLs and class actions, including complex consumer fraud and products liability litigation.</u> Wolf Haldenstein is one of the country's leading class action firms. It has recovered almost seven billion dollars for its clients. *See* http://www.whafh.com/modules/publication/docs/4512_cid_7_Firm%20Resume%20Full.pdf. The

---

[4] Because the Court has not had the benefit of full briefing on this important issue, we note that a number of decisions that were not cited in footnote 1 of Order No. 5 counsel in favor of appointing different lead counsel for the Ignition Switch and *Andrews* plaintiffs. *E.g.*, *Kuper v. Quantum Chem. Corp.*, 145 F.R.D. 80, 83 (S.D. Ohio 1992) ("counsel's obligation to zealously represent other class interests" creates "very real possibility of impairing this class['s] ability to recover"); *Sullivan v. Chase Inv. Servs.*, 79 F.R.D. 246, 258 (N.D. Cal. 1978) (even "appearance of divided loyalties" not permitted). The potential for conflict, which this Court recognized may arise at the damages phase, exists equally at the mediation phase, which may be reasonably close at hand, certainly when both classes seek billions of dollars. Most importantly, in this case, it arises immediately because it affects the content of the consolidated complaint, which *will dictate the entire scope, length and expense* of this litigation. The critical judgment as to whether to pursue the Ignition Switch and *Andrews* cases separately or as one action, very simply, should not be made by counsel who are lead lawyers in both cases.

3

Firm has 60 attorneys in its main office in New York, with seven class action litigators in Chicago and San Diego. Wolf Haldenstein is the largest New York class action firm involved in this MDL, which weighs heavily in favor of its appointment by the Court. *See, e.g., In re: Gold Fixing Antitrust and Commod. Exch. Act Litig.*, No. 1:14-cv-1638-VEC (S.D.N.Y. July 22, 2014) [Doc. 11 (Slip op. at 5)]. The Firm has frequently earned judicial praise for its work as lead counsel.[5] Wolf Haldenstein's litigation department chair, Daniel Krasner, has been practicing in the class action field for almost 50 years, virtually since inception of Rule 23. His unparalleled knowledge of class action practice will greatly benefit the class. Mr. Krasner has led or co-led many MDLs, class and derivative actions. *See* http://www.whafh.com/modules/attorney/index.php?action=view&id=69.

The Firm has been appointed to lead roles in many consumer fraud and product liability cases.[6] Alexander Schmidt, the Firm's lead attorney on this case, has practiced complex litigation for 29 years. His ten years with a leading national defense firm and a premier litigation boutique provided him valuable insight into how defendants approach class actions. Mr. Schmidt was the lead plaintiffs' lawyer in the recent landmark *Roberts v. Tishman-Speyer* litigation, securing a $173 million settlement for a class of 20,000 tenants without a single objection being filed and only five tenants opting out. *See* http://www.whafh.com/modules/attorney/index.php?action=view&id=75.

2. <u>Wolf Haldenstein has performed extensive and valuable work in this case, working cooperatively with Temporary Lead Counsel and others.</u> Since mid-March, Wolf Haldenstein has

---

[5] *See, e.g., K.J. Egleston L.P. v. Heartland Industrial Partners, et al.*, 2:06-13555 (E.D. Mich. June 10, 2010) (Firm did "an outstanding job of representing [its] clients" and all counsel "deserve the national recognition they enjoy"); *In re Comdisco Sec. Litig.*, 01 C 2110 (N.D. Ill. July 14, 2005) (Firm's "exemplary" efforts "reflected the kind of professionalism that the critics of class actions … are never willing to recognize. … I really cannot speak too highly of the services rendered by class counsel in an extraordinary difficult situation."); *Roberts v. Tishman Speyer Prop., L.P.*, No. 100956/2007 (Sup. Ct. N.Y Co. April 9, 2013) ("[W]hen you have challenging cases, the one thing you like to ask for is that the legal representation on both sides rise to that level" which Wolf Haldenstein and defense counsel achieved).

[6] *E.g., Halberstam v. NJOY, Inc.*, No. CV 14-00428-MMM (C.D. Ca.); *Rosales v. FitFlop USA, Inc.*, No. 11 CV-937-W (S.D. Ca.); *In re: Genetically Modified Rice Litig.*, MDL 1811 (E.D. Mo.); *Correa v. Sensa Products, LLC*, No. BC476808 (L.A. Co. Super. Ct.); *In re Starlink Corn Products Liability Litig.*, (N.D. Ill.).

spent nearly 2,000 hours investigating and prosecuting these claims. Along with our co-counsel, Golenbock Eiseman Assor Bell & Peskoe LLP, we have uncovered much critical evidence needed to prove that GM violated Plaintiffs' due process rights during its 2009 bankruptcy and fraudulently concealed the ISD from both the Bankruptcy Court and the class. Attorneys with Designated Counsel have acknowledged that our Amended Adversary Complaint and many sets of Proposed Stipulations of Fact served on behalf of the Groman Plaintiffs have included new evidence-based facts that have materially advanced Plaintiffs' cause. We have attended every Plaintiffs' counsel meeting to which we have been invited and have freely shared our legal and tactical thinking with other counsel. At the outset of the bankruptcy proceedings, we proposed working cooperatively with Temporary Lead Counsel, and we and our co-counsel have sought to coordinate with Designated Counsel at every critical juncture. We have at all times addressed issues courteously and professionally, and have been thanked for doing so. We have responded quickly and ably to every task we have been called upon by the Bankruptcy Court or other counsel to perform.

3. <u>Wolf Haldenstein has been, and continues to be, willing and able to commit the time and resources needed to timely and effectively prosecute this action</u>. Wolf Haldenstein has in past cases devoted millions of dollars (or more), and tens of millions of dollars of time, if necessary for the successful prosecution of a case, and it is committed to doing so here. The Firm is able and ready to devote virtually full-time to this matter if appointed.[7] The Firm's substantial work-product developed in other cases will enable it to help streamline the litigation and create efficiencies. Wolf Haldenstein is dedicated to avoiding the needless duplication of effort and waste that sometimes accompany class actions to the detriment of the class. We relish our role as a public servant, and can be relied upon with constancy to pursue exclusively our clients' and the class's interests, in every sense of that term.

---

[7] While Mr. Schmidt serves as co-lead counsel in *Frankel v. Citicorp Insur. Servs., Inc.*, No. 11-cv-2293 (NGG) (RER) (E.D.N.Y.) (consumer fraud); *In re: Long Island Power Authority Hurricane Sandy Litig.*, No. 601434/2013 (Nass. Co. Sup. Ct.); and *In re: Apple iPhone Antitrust Litig.*, No. C 11-6714-YGR (N.D. Ca.), he has delegated, and can continue to delegate, most of the work in those cases to other partners or co-counsel.

Dated: July 28, 2014
New York, New York

WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP

By: _____
Alexander H. Schmidt

Stacey Kelly Breen
Malcolm T. Brown
270 Madison Avenue
New York, New York 10016
(212) 545-4600
schmidt@whafh.com

*Co-counsel for the "Groman Plaintiffs"*