UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------X
IN RE:
GENERAL MOTORS LLC IGNITION SWITCH LITIGATION          14-MD-2543

*This Document Relates To All Actions*
--------------------------------------------------------------------------X

<u>EXECUTIVE COMMITTEE APPLICATION OF JEFFREY C. BLOCK</u>

**(Applicant Wishes To Address The Court At The August 11 Initial Conference)**

The Court should appoint a member to the Executive Committee whose charge is to represent the interests of economic-loss plaintiffs who purchased[1] the affected General Motors vehicles after the 363 Sale closed on July 10, 2009.  As we discuss below, post-bankruptcy purchasers may be in a stronger legal position than pre-bankruptcy purchasers.  Block & Leviton LLP ("B&L") and Finkelstein, Blankinship, Frei-Pearson & Garber ("FBFG"), represent plaintiffs in *Phaneuf v. General Motors LLC*, No. 1:14-cv-3298 (S.D.N.Y.), one of the consolidated actions in the above-captioned multi-district litigation. The *Phaneuf* Plaintiffs all purchased their General Motors vehicles after the 363 Sale closed on July 10, 2009; they assert economic-loss claims on their own behalf and on behalf of other post-bankruptcy purchasers. Pursuant to Order No. 5, Jeffrey Block asks the Court to appoint him to the Executive Committee[2] as a representative of post-bankruptcy purchasers who assert economic-loss claims. Counsel in *Silvas v. General Motors LLC*, No. 2:14-00089 (S.D. Tex.), the only other case to file claims on behalf of only post-bankruptcy purchasers, have indicated their support for Mr. Block to be appointed to the Executive Committee for post-bankruptcy purchasers.

**I.     POST-BANKRUPTCY PURCHASERS SHOULD HAVE A REPRESENTATIVE**

The Executive Committee should include independent counsel for post-bankruptcy purchasers. "[I]ndependent counsel" is necessary where subgroups have claims "of different

---

[1] Any reference herein to "purchasers" should be read to include both buyers and lessees.
[2] Mr. Block would be assisted by his colleagues at B&L as well as his co-counsel at FBFG.

strength [which] … command[] a different settlement value." *In re Literary Works in Electronic Databases*, 654 F.3d 242, 254 (2d Cir. 2011).[3]

Here, as the Court noted in Order No. 5, the interests of plaintiffs who purchased their vehicles after GM's bankruptcy may be distinct from those who purchased before the bankruptcy. *See id.* n.1.  The primary economic-loss injuries in this case occurred at the point of sale: consumers paid more for their GM vehicles than they would have under conditions of full disclosure.[4] Thus, some purchasers were injured before the Sale Order; others were injured after the Sale Order.

This distinction significantly strengthens the post-bankruptcy purchasers' position relative to pre-bankruptcy purchasers. Post-bankruptcy purchasers are future claimants who—by definition—cannot have been on notice of their claims at the time of GM's bankruptcy because their claims did not yet exist. Thus, their claims cannot be stayed and were not released by the Sale Order. *See, e.g.*, *In re Grumman Olson Industries*, 467 B.R. 694, 707 (2012) ("[t]he [plaintiffs] did not receive adequate notice of their potential claim in the … bankruptcy proceedings because, at the time of the bankruptcy, there was no way for anyone to know that the [plaintiffs] ever would have a claim.") *aff'd* 467 B.R. 694 (S.D.N.Y. 2012); *In re Chateaugay Corp.*, 944 F.2d 997, 1003 (2d Cir. 1991) ("To expect 'claims' to be filed by those who have not yet had any contact whatever with the tort-feasor has been characterized as 'absurd.'").

Further demonstrating the need for an Executive Committee position for post-bankruptcy purchasers, the July 21, 2014 status letter that Temporary Lead Counsel submitted to the Court focused on the Due Process argument of *pre*-bankruptcy purchasers. Dkt. 72 at 1 ("[A]s a matter

---

[3] *See also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856-57 (1999) ("separate representation" held necessary where "[p]re-1959 claimants … had more valuable claims than post[-]1959 claimants[.]").

[4] *Compare In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1168-69 (C.D. Cal. 2010) (denying motion to dismiss as to plaintiffs who alleged that they "overpaid for their vehicles" or "made lease payments that were too high").

of due process, the Sale Order and the anti-suit injunction in the Sale Order cannot be applied to the ignition switch claimants because Old GM failed to provide class members with notice of their claims."). The status letter did not clearly explain the stronger Due Process arguments of post-bankruptcy purchasers, which are set out above.  To ensure that those arguments are advanced, an independent voice should be appointed.

## II.    MR. BLOCK SHOULD BE APPOINTED TO THE EXECUTIVE COMMITTEE TO REPRESENT POST-BANKRUPTCY PURCHASERS

Mr. Block asks the Court to appoint him to the Executive Committee as an independent representative of post-bankruptcy purchasers. Unlike almost every other firm participating in the litigation, B&L and FBFG represent only people who purchased their GM vehicles after the July 5, 2009 Sale Order (and after the 363 Sale closed on July 10, 2009).[5]

These firms have already taken a lead role in zealously representing the interests of post-bankruptcy purchasers. On May 27, 2014, the *Phaneuf* Plaintiffs filed a No Stay Pleading with the Bankruptcy Court asserting that their claims were neither stayed nor enjoined by the Sale Order because they were future claimants who could not have received notice at the time of the Sale Order.[6] *See id*. At the time, the *Phaneuf* plaintiffs were the only plaintiffs in any of the consolidated actions to do so.[7] Every other plaintiff—almost all of whom are represented by counsel who represent both pre- and post-bankruptcy purchasers—agreed to voluntary stay

---

[5] The *Phaneuf* plaintiffs are geographically diverse, having purchased their vehicles in California, Massachusetts, New Jersey, New Mexico, Pennsylvania, and Washington. B&L is located in Boston. FBFG is in New York.

[6] In a July 2 order, the Bankruptcy Court stated that it would deny the relief sought in the *Phaneuf* Plaintiffs' No Stay Pleading, holding that their due process arguments should be resolved on the same timeframe as other purchasers. The Bankruptcy Court stated that it would enter its order upon drafting a written opinion.  When the order is entered, the decision should be appealed as we believe it is in error.  At this time, however, the Court need not decide whether pre- and post-bankruptcy purchasers' claims should, in fact, be resolved on the same timeframe. The point is merely that counsel should be appointed to focus on the claims of post-bankruptcy purchasers.

[7] One other No Stay Pleading has since been filed by the plaintiffs in *Elliott v. General Motors LLC*, No. 1:14-cv-00691 (D.D.C. Apr. 23, 2014), who are represented by Professor Gary Peller of Georgetown University Law Center. *See In re Motors Liquidation Company*, 09-50026, Dkt. 12772 (Bankr. S.D.N.Y. July 11, 2014).  We understand that the Bankruptcy Court is scheduled to hear their motion on August 5, 2014.  We also understand that the Elliott Plaintiffs support an Executive Committee position to represent post-bankruptcy purchasers and support the application by Mr. Block.

stipulations with GM. As a result of these stipulations, post-bankruptcy purchasers will have to wait[8] while the Bankruptcy Court addresses a host of complicated issues relating to pre-bankruptcy purchasers—none of which are necessary to resolve the simple due process argument of post-bankruptcy purchasers.

Mr. Block is otherwise well-qualified to join the Executive Committee with the support of B&L and FBFG.  Mr. Block is the co-founding partner of B&L and has almost thirty years of experience in complex, class-action litigation at elite, plaintiff-side firms. Mr. Block has led, or played a significant role in achieving multiple settlements worth in excess of $100 million (with a combined value of billions of dollars).[9]

His work has been praised by federal judges. In *In re Philip Services Corp. Sec. Litig.*, 98-cv-835 (S.D.N.Y.), for example, Judge Hellerstein noted that Mr. Block and co-counsel "pursued this fact-intensive and legally complex litigation vigorously over a nine-year period, … persisted, notwithstanding an adverse decision of the district court … and through multiple stages of the appellate process. … Co-Lead Counsel had to overcome the disclaimers and uncertainties of insurance coverage, and vigorous advocacy of extremely able and deeply-staffed defense counsel. … And they did their work efficiently, with minimal duplication, and maximum effectiveness … [and] achieved fair and substantial results for [those] benefiting from the [$79.5 million] settlement."[10]

---

[8] In its July 28, 2014 letter to the Court, GM pointed to the stay stipulations to argue that plaintiffs have already agreed that no proceedings should take place before this Court until the Bankruptcy Court has resolved GM's Motion to Enforce. *See* Docket No. 114 at 3-4,

[9] *In re Google Class C Shareholder Litig.*, C.A. No. 7469-CS (Del. Ch.) (settlement valued as high as $7.5 billion); *In re Xerox Corp. Sec. Litig.*, 3:00-cv-01621 (D. Conn.) (settled for $750 million); *In re Bristol Myers Squibb Sec. Litig.*, 02-cv-2251 (S.D.N.Y.) (settled for $300 million); *In re Lernout & Hauspie Sec. Litig.*, 1:00-cv-11589 (D. Mass.) (settled for $180 million); *In re Symbol Technologies Sec. Litig.*, 2:02-cv-1383 (E.D.N.Y.) (settled for $127 million); and *In re Prison Realty Corp. Sec. Litig.*, 3:99-cv-0452 (M.D. Tenn.) (settled for over $100 million).

[10] Similarly, in approving the $24 million settlement in *In re Force Protection Sec. Litig.*, 2:08-cv-845 CWH (D.S.C.), the court said that "I have … been involved in the selection of the attorneys and, in that process, I was careful to choose attorneys who have great ability [and] great reputation … And I think you've [Jeffrey Block]

Mr. Block and his colleagues have a demonstrable willingness and ability to commit the resources necessary to succeed in time-consuming, complex litigation. B&L is currently representing the Ohio Pension Funds, which are co-lead plaintiffs in *In Re BP Securities Litigation*, 4:10-MD-02185 (S.D. Tex), a massive litigation with extensive expert evidence that is entering its fourth year.  In one of the first cases it filed, B&L acted as co-lead counsel in the *Google Class C* litigation, which settled just two days before the start of trial and only after the firm deposed every member of Google's Board of Directors and its financial advisors, concluded expert discovery, and filed pretrial briefs. Mr. Block's colleagues at B&L have extensive experience with complex class actions—including consumer class actions—at elite law firms across the country (among others: Cohen Milstein, Pillsbury Winthrop, WilmerHale, and Jones Day) and are graduates of top law schools (including Harvard, Virginia, Georgetown, and the University of Pennsylvania).[11]

Mr. Block can and will work cooperatively with whomever the Court appoints as Lead Counsel and to the Executive Committee. B&L and FBFG have strong relationships and have had productive discussions with other firms participating in the litigation.

Respectfully submitted,                              July 28, 2014

**BLOCK & LEVITON LLP**

/Jeffrey C. Block
Jeffrey C. Block

---

undertaken the representation of these people, you've done an excellent job, you've reached a settlement that I think is fair and in their benefit …"
[11] Similarly, lawyers of FBFG have successfully litigated complex class actions in federal and state courts all across the country, and have obtained successful results for clients against some of the world's largest corporations. Among other cases, FBFG is currently co-lead counsel in *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, No. 13-3073 (S.D.N.Y.), a consumer class action alleging deceptive labeling in connection with Defendant's Aveeno Naturals brand of personal care products.  Lawyers at FBFG, have also acted as counsel for the New York City Pension Funds in *In re Juniper Networks, Inc. Sec. Litig.*, No. C-06-04327 (N.D. Cal 2010), helping achieve a settlement of $169.5 million, one of the largest settlements in an options backdating case, after more than three years of hard-fought litigation.  FBFG fully supports Mr. Block's application for a position on the Executive Committee.

Jason M. Leviton
Joel A. Fleming
155 Federal Street
Boston, Massachusetts 02110
Tel: (617) 398-5600
Fax: (617) 507-6020
Jeff@blockesq.com
Jason@blockesq.com
Joel@blockesq.com

FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP
D. Greg Blankinship
Todd S. Garber
1311 Mamaroneck Avenue
White Plains, New York 10605
Tel: (914) 298-3281
Fax: (914) 824-1561
gblankinship@fbfglaw.com
tgarber@fbfglaw.com

*Counsel for Plaintiffs in Phaneuf v. General Motors LLC, No. 1:14-cv-3298 (S.D.N.Y.)*