

DALLAS    |    AUSTIN    |    LOS ANGELES    |    BATON ROUGE

ENCINO PLAZA
800.887.6989    15910 VENTURA BLVD.
TEL 818.839.2333    SUITE 1600
FAX 818.986.9698    ENCINO, CA  91436

JULY 28, 2014

VIA ECF FILING

Hon. Jesse M. Furman
United States District Court
Southern District of New York
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, New York 10007

    Re:    **In Re: General Motors LLC Ignition Switch Litigation**
            Case No. 14-MD-2543 (JMF)

Dear Judge Furman:

    Pursuant to this Court's Order No. 5, I make this application for appointment to the Executive Committee in this MDL. To that end, I also request the opportunity to briefly address the Court in person at the August 11, 2014 Initial Conference.

    As the Court is aware, many of the finest plaintiffs' firms in the country have filed cases in this MDL. Undoubtedly, all the applications will be made by counsel who have stellar experience prosecuting complex class actions and whose firms have ample financial resources. This case, however, is somewhat unique because it has already involved protracted parallel proceedings before the Bankruptcy Court, the National Highway Traffic Safety Administration ("NHTSA"), and the United States Congress, as well as an internal investigation initiated by General Motors ("GM"). My law firm, Baron & Budd, P.C., along with the law firms led by Temporary Lead Counsel, Steve Berman, Elizabeth Cabraser, and Mark Robinson, were among only a handful of firms who have spent considerable time and expense analyzing and addressing such proceedings, all for the benefit of the plaintiffs' group at large.

    I believe such efforts reflect a meaningful commitment to this case and they demonstrate a genuine willingness and ability to contribute the professional and financial resources necessary to effectively litigate this case. Therefore, I respectfully suggest that such efforts should be a distinguishing factor in Court's analysis. Accordingly, below, I emphasize my work in helping to identify, investigate, and prosecute the potential class claims, followed by the other criteria requested by the Court.

    **(1)**    **The Work Counsel Has Done in Identifying, Investigating, or Prosecuting Potential Claims in the Action.**

        **(a)**    **Development of the Class Claims**

    At the outset of the case, my firm, along with co-counsel Adam Levitt of Grant & Eisenhofer and Lance Cooper of the Cooper Firm, retained Mark Hood of McSwain Engineering. Mr. Hood is widely known as the engineer who first exposed the ignition switch defect during the *Melton v. General Motors* personal injury lawsuit. Following our consultations with Mr. Hood, we filed two of the earliest class action cases, one in the Northern District of California (*Maciel, et al. v. General Motors, LLC*) and one in the Central District of California (*Saclo, et al. v. General Motors, LLC and Continental Automotive Systems*

*US, Inc.*) on behalf of 38 plaintiffs asserting federal, state and common law claims. Such claims were asserted on behalf of a nationwide class and 29 separate state sub-classes.

Notably, *Maciel* was the *first* case that (1) defined the core factual issue as a "key system" defect, not simply an "ignition switch" defect, to address the defective placement of the key position on the steering column and the use of an ignition key with a slot, and (2) broadly defined the affected vehicle class to include the 2008-10 Chevrolet Cobalts, some of which were manufactured by "New GM," but *none* of which were part of GM's original February 25, 2014 recall. Indeed, on March 28, 2014, four days *after* the *Maciel* complaint was filed, GM *expanded* its recall to include the 2008-10 Chevrolet Cobalts, which are the subject of the *Maciel* complaint.

Additionally, in *Saclo* we included Defendant Continental Automotive Systems US, Inc., the manufacturer of the airbags in the defective GM vehicles. Evidence uncovered during GM's internal investigation and the Congressional hearings reflects Continental's knowledge of the key system defect and the concomitant non-deployment of the airbags during accidents.

On April 7, 2014, in the *Maciel* case, we filed a motion seeking expedited discovery from GM to confirm whether it had taken sufficient steps to protect public safety, whether certain non-recalled GM vehicles were safe to drive, and whether injunctive relief against GM was appropriate, including requiring GM to provide public disclosures about the safety of its vehicles, and to expand its recall. The motion was accompanied by evidence and testimony obtained from various sources including the House Committee on Energy and Commerce. We also provided the Court with a declaration from Mr. Allan Kam, a retired attorney formerly employed by NHTSA's Office of the Chief Counsel's Litigation and Enforcement Division, who opined on NHTSA procedures with respect to safety-defect recalls and owner notification letters. Notably, on April 9 and again on June 30, GM expanded its recall to include additional vehicles that were plagued with the same key system defect, and made loaner cars available.

Finally, in May 2014, we learned that GM dealers were removing defective parts from the recalled vehicles and sending them to GM. We immediately provided written notice to GM that such parts constitute important and relevant evidence and must be preserved for litigation.

More recently, on June 26, 2014, Baron & Budd, together with Lieff Cabraser Heimann & Bernstein, Grant & Eisenhofer, Weitz & Luxenberg and The Cooper Firm, among others, filed the action known as *Sauer v. General Motors LLC* in the District of New Jersey. The case involves 2010-2014 Chevrolet Camaro vehicles, which were also recalled by GM on June 19, 2014.

In addition to prosecuting the three class cases described above, I have worked collaboratively with the Temporary Lead Counsel and other counsel to share information and help organize the leadership structure. I, along with my partner Russell Budd, attended a July 1, 2014 meeting of plaintiffs' counsel where Temporary Lead Counsel solicited input concerning an appropriate leadership structure and application process. During that meeting, I, along with my co-counsel Adam Levitt, circulated a proposed leadership organization chart to the meeting attendees, which we prepared for discussion purposes, and we offered our input regarding the leadership structure and selection process.

**(b)     Efforts in the Bankruptcy Court**

Baron & Budd has spent considerable attorney time and financial resources addressing GM's Bankruptcy Court proceedings. At the outset of the filing of GM's motion to enforce the Sale Order injunction, my firm retained the bankruptcy law firm of Stutzman, Bromberg, Esserman & Plifka, P.C. We selected that firm because of its unique understanding of "Old GM's" bankruptcy case, and its prior participation in that case on behalf of a group of claimants. Temporary Lead Counsel also retained separate bankruptcy counsel. After providing all parties with an opportunity to be heard, Judge Gerber appointed three firms as "Designated Counsel" to represent Plaintiffs' positions in the Bankruptcy Court. Baron & Budd's bankruptcy counsel was one of the three "Designated Counsel" firms selected by Judge Gerber, together with the two bankruptcy firms retained by Temporary Lead Counsel.

Thereafter, I worked closely with the Designated Counsel, and in collaboration with the Temporary Lead Counsel, to develop the so-called "threshold" legal issues to be decided by Judge Gerber. Much debate was had concerning the appropriate scope of such issues and our desire to avoid a protracted discovery battle in the Bankruptcy Court. To that end, I attended Bankruptcy Court hearings and meetings with GM's counsel and plaintiffs' counsel to develop the body of stipulated evidence necessary to adjudicate GM's pending motion. In that regard, I reviewed several transcripts of depositions taken in the *Melton v. General Motors* case, the Congressional record and the internal investigation report prepared by Anton Valukas. I also drafted proposed stipulations of fact and attended meetings amongst the Designated Counsel and GM's counsel to address the development of such fact stipulations. That work continues to this day.

**(c)     Assistance in Developing GM's Victim Fund Protocol**

Baron & Budd also was one of only a few firms contacted directly by Kenneth Feinberg, the lawyer hired by GM to administer the compensation fund established for victims who were killed or injured in accidents caused by the key system defect. I provided Mr. Feinberg with information and insight on the breadth and scope of the defect, the nature of the injuries suffered by personal injury victims, some of whom we represent, and the appropriate structure and amount of compensation.

**(d)     Sharing Litigation Information with Other Counsel**

Throughout the past several months, I have worked collaboratively with Temporary Lead Counsel, and a number of other plaintiffs' firms, to share information and developments in the case. In that regard, I, along with my co-counsel Adam Levitt of Grant & Eisenhofer and Lance Cooper of The Cooper Firm, created, organized and Co-Chaired the General Motors Ignition Switch Litigation Group among the members of the American Association for Justice, formerly known as the Association of Trial Lawyers of America, the largest plaintiffs' counsel bar in the country. The purpose of the group is to encourage the exchange of information among members concerning this case and to provide educational programs relating to the GM litigation. I also provided various GM-related media interviews, including: "Meet the Dogged Attorneys Behind the GM Recall Suits" April 25, 2014 Law360, "GM Supplier Knew Ignition Defects Affected Airbags, Suit Says" April 18, 2014 Law360, "GM Drivers Say Defect More Widespread Than Thought" March 25, 2014 Law360, and "Suit alleges second ignition defect in GM recall," March 24, 2014 USA Today.

**(2)   Knowledge and Experience in Prosecuting Complex Litigation, Including MDLs and Class Actions, and Counsel's Knowledge of Applicable Law.**

My firm and I are extremely well suited to serve on the Executive Committee because of our leadership role and extensive experience in numerous multi-state, complex class action cases, including several automotive defect class cases, involving federal claims, common law claims and the laws of many different states.  A representative sample of such cases includes:

- Co-lead counsel in *In Re MyFord Touch Consumer Litigation*, a class action involving more than 10 million vehicles equipped with a defective "infotainment system" known as MyFord Touch.

- Co-lead counsel in *Falco v. Nissan North America, Inc.*, a class action involving more than 2 million vehicles containing a defective timing chain system.

- Co-lead counsel in *Aarons v. BMW*, a class action involving a defective continuously variable automatic transmission.

- Co-counsel in *Philips v. Ford Motor Company*, a class action involving a defective Electric Power-Assisted Steering system.

- One of only four firms chosen to serve on both the Plaintiffs' Executive Committee and Steering Committee of the Gulf Oil Spill MDL case.

- Served on the Plaintiffs' Steering Committee in a multi-state class action concerning the manipulation of bank overdraft fees.  We helped achieve a $410 million settlement with Bank of America and was co-lead counsel in negotiations that resulted in a $110 million settlement with JPMorgan Chase.

- One of a handful of firms who achieved a landmark nationwide settlement involving the manufacture and sale of defective Chinese drywall, valued at between $800 million and $1 billion.

- Represented the states of Mississippi, Maryland, Kentucky, West Virginia, South Carolina, Utah and New Mexico in lawsuits against GlaxoSmithKline arising out of the fraudulent marketing of the drug Avandia that resulted in a $177 million settlement.

Additionally, before joining Baron & Budd, I practiced with the international law firms of Bingham McCutchen LLP and Milbank, Tweed, Hadley & McCloy LLP, where I litigated complex cases on behalf of plaintiffs and defendants.  There, I tried several multi-million dollar cases to verdict.

**(3)   Willingness and Ability to Commit to a Time-Consuming Process.**

Baron & Budd's involvement in this case will be a team effort, led by me and other key members of the firm, including its co-founder Russell Budd.  We will commit the time, energy, and financial resources to this case, making it a matter of our highest priority.  My firm is one of the oldest and most successful plaintiff's firms in the country.  Our practice is dedicated to cases like this.  We have 40 lawyers and 126 support staff, including paralegals and technical support personnel, in offices in Dallas, Austin, Baton Rouge and Los Angeles, which I co-manage.

Since the firm's founding almost 40 years ago, it has garnered national acclaim for its willingness and ability to take on complex litigation work on behalf of plaintiffs in cases like this. A representative sample of the firm's noteworthy accolades include the following:

- Repeatedly named to the *National Law Journal's* "Plaintiffs' Hot List" of exemplary plaintiffs' firms in the United States.

- Won Public Justice Foundation's Trial Lawyer of the Year Award for its representation of Arizona residents impacted by groundwater contamination.

- Finalist for Public Justice Foundation's Trial Lawyer of the Year Award for the recovery of more than $400 million in product liability case filed on behalf of 150 municipalities from 17 states and for its bank overdraft fee class action litigation.

- Selected by *American Lawyer* as one of the sixteen most successful plaintiffs' firms in the country and repeatedly selected by The Legal 500 as one of the country's premier law firms in mass tort and class action litigation.

Additionally, I have been fortunate to receive accolades for my willingness and ability to take on complex litigation cases. For example, I received commendation from the Department of Justice for my assistance in the successful prosecution of a $120 million foreign currency Ponzi scheme. And, this year, I was named among the *Best Lawyers In America* for my work in complex litigation. I also was elected to serve on the Board of Governors of the Association of Business Trial Lawyers, and appointed to serve as a Lawyer Representative to the Ninth Circuit Judicial Conference, where I chair the Central District of California's Attorney Settlement Officer Panel Committee. Along the way, I also have committed my time to the legal profession, including providing pro-bono representation of indigent clients and mentoring young lawyers in association with the South Asian Bar Association.

**(4)    Willingness and Ability to Work Cooperatively With Others.**

Throughout my firm's 40-year history, we have been fortunate to serve on the leadership committees of numerous challenging cases. A common thread in achieving success in such cases is a well-managed leadership structure populated by talented lawyers committed to efficiency, communication and collaboration. To that end, we commit to working with any group of lawyers selected by this Court to achieve the best possible outcome for the class.

**(5)    Access to Resources to Prosecute the Litigation in a Timely Manner.**

My firm and I have a proven track record of achieving success in class action cases like this one. We have the talent pool and financial resources to fully participate in every aspect of the case. Indeed, our efforts in the past several months are indicative of our dedication to the prosecution of this case in a timely manner. We retained leading automotive experts, we filed some of the earliest complaints, we expanded the scope of the defective vehicles, the nature of the defect and the pool of defendants, we possess a wealth of experience in automotive product liability class-action litigation, and we have been working diligently in the Bankruptcy Court, investigating the facts, and developing the legal theories. This work has endowed us with an unsurpassed base of knowledge, and we stand ready to prosecute the case without delay.

Respectfully submitted,

*/s/ Roland Tellis*