

**Patrick J. Stueve**                                                                 Phone: (816) 714-7110
stueve@stuevesiegel.com                                                        Fax:  (816) 714-7101
                                       460 Nichols Road, Suite 200
                                       Kansas City, Missouri 64112

July 28, 2014

**VIA ECF**                                                            **TO BE FILED IN CASE NO. 14-MD-2543**

The Honorable Jesse M. Furman
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

>       *Re:     In re:  General Motors LLC Ignition Switch Litigation,*
>               *14-MD-2543 (JMF); 14-MC-2543*

Dear Judge Furman:

On behalf of Stueve Siegel Hanson LLP ("SSH") I respectfully request appointment to serve as a member of the Executive Committee[1] for this MDL. I am counsel of record in *Cox v. General Motors LLC et al.*, Case No. 14-02608, and *Witherspoon v. General Motors LLC et al.*, Case No. 14-00425. As explained below, my firm has a long and successful history of prosecuting large-scale auto defect class actions on behalf of consumers nationwide and has been substantively involved in this case since the GM ignition switch defects were first brought to light.

## Background

SSH is an AV rated Missouri-based law firm with 29 lawyers in offices in Kansas City and San Diego, with a new office in New York slated to open next month. All of the firm's lawyers are dedicated to the practice of litigation full time, making the firm one of the largest litigation-only firms based in the Midwest. Norman Siegel and I left partnerships at large defense firms in 2001 to start SSH for the purpose of pursuing complex cases primarily representing plaintiffs on a contingency basis. Since then, the firm has attracted a stellar roster of trial lawyers that have served at high levels of government and public service to represent consumers nationwide like those impacted by this litigation. My partners working alongside me in this litigation will include Mr. Siegel,[2] who has been appointed lead counsel in several auto defect class actions across the country, and Steve Six, the former Attorney General for the State of Kansas, and a former Kansas district court judge. The firm intends to call upon a deep bench of experienced partners and associates, many of whom are former state or federal law clerks including four former United States Circuit Court of Appeals clerks, five former United States District Court clerks, two former state supreme court clerks, and two former state court of appeals clerks. The result of cultivating attorneys with diverse, quality experience is a consistently top-notch work product, respect from our opponents,

---

[1] SSH supports the expected applications of Temporary Lead Counsel to serve as Lead Counsel for the litigation. If Temporary Lead Counsel do not wish to serve or are not selected as Lead Counsel, SSH respectfully requests consideration to serve as Lead Counsel and is qualified to act as Lead Counsel in this litigation.

[2] Mr. Siegel will be mediating on behalf of the plaintiffs in *In re: Target Corp. Customer Data Security Breach Litig.*, MDL No. 2522 (D. Minn.) on August 11 and will therefore not be able to appear in New York on that date.



July 28, 2014
Page 2

and accolades from our peers. More information regarding the firm, the scope of its practice, and its honors is available at www.stuevesiegel.com.

**SSH is uniquely qualified to serve on the Executive Committee**

Pursuant to the Court's Order No. 5, SSH respectfully submits the following information addressing the criteria the Court will consider in reviewing applications:

**1.     SSH is knowledgeable and experienced in prosecuting complex litigation, including MDLs and class actions.**

SSH and its attorneys have been appointed to the leadership of multi-district proceedings or appointed lead counsel pursuant to Rule 23(g) in federal actions coast-to-coast.[3] Courts have found that "'[t]he experience, reputation, and ability of [C]lass counsel is outstanding,'" and have found SSH attorneys to be "extremely knowledgeable," "highly experienced," "highly capable," and to enjoy "an excellent reputation."[4] The firm has taken several collective actions to trial[5] and recently successfully tried a class action certified under Rule 23 to verdict in the District of Kansas.[6] The firm also has a long and successful history trying other complex cases to verdict that have burnished the firm's reputation as a trial firm second to none.

**2.     SSH will commit to a time-consuming process.**

SSH is willing and able to commit to the litigation, however long it takes to resolve. Few of the firm's cases resolve quickly, and SSH is accustomed to cases that require multi-year investments and significant labor. The firm is uniquely structured to respond to the demands of multi-district, complex litigation because all cases are firm cases and partners collectively dedicate whatever resources are necessary to prosecute the action, regardless of which lawyer is running or ultimately "responsible" for the case. This flexible, collaborative model allows the firm to move resources to wherever they are presently needed, without having to consider "firm politics." As a

---

[3] Recent appointments include: *In re: Target Corp. Customer Data Security Breach Litig.*, MDL No. 2522 (D. Minn.); *In re: Simply Orange Juice Mktg. and Sales Practices Litig.*, MDL No. 2361 (W.D. Mo.); *In re: Peregrine Financial Group Customer Litig.*, Case No. 12-cv-5546 (N.D. Ill.); *Leiszler, et al v. Align Technologies,* Case No. 3:10-CV-2010-MMC (N.D. Cal.); *In re Aftermarket Automotive Lighting Prods. Antitrust Litig.,* Case No. 2:09-ML-2007-GHW (C.D. Cal.); *Roy v. Hyundai Motor America.*, Case No. 05-483-AHS (C.D. Cal.); *Zeismer, et al. v. Linens-N-Things,* Case No. 06-CV-1194-BTM (S.D. Cal.); *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, Case No. 1:05-MD-1720-JG (E.D.N.Y.); *Fond du Lac Bumper, et al. v. Gordon, et al.,* Case No. 2:09-CV-0852 (E.D. Wis.); *In Re: H&R Block, Inc., Express IRA Mktg. Litig.*, Case No. 4:06-MD-01786-RED (W.D. Mo.); *In Re: Pre-Filled Propane Tank Mktg. and Sales Practices Litig.*, Case No. 4:09-MD-02086-GAF (W.D. Mo.); *Khaliki v. Helzberg Diamond Shops*, Case No. 4:11-CV-00010-NKL (W.D. Mo.) and *In re Urethane Antitrust Litig.,* Case No. 2:04-MD-1616-JWL (D. Kan.).

[4] *Berry v. Volkswagen Grp. of Am., Inc.*, 397 S.W.3d 425, 432 (Mo. 2013) (quoting trial court); *Bruner v. Sprint/United Mgmt.*, Nos. 07-2164-KHV, 08-2133-KHV, 08-2149-KHV, 2009 WL 2058762, at *7-8 (D. Kan. July 14, 2009); *see also Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1175 (C.D. Cal. 2010) ("counsel was skilled at navigating the complexities of the case [a nationwide consumer class action]."); *Roy v. Hyundai Motor Am., Inc.*, No 05-00483-AHS, Dkt. No. 87, at 2 (C.D. Cal. Apr. 10, 2006) ("Plaintiff's counsel skillfully presented Class members' claims while opposed by a large and sophisticated company represented by experienced litigators.").

[5] *Sanchez, et al., v. Echosphere LLC, et al.*, Case No. 71 160 00443 09 (AAA); *De La Cruz, et al. v. Masco Retail Cabinet Grp., LLC*, Case No. 11 152 01156 08 (AAA).

[6] *Adelina Garcia, et al. v. Tyson Foods, Inc.,* Case No. 06-2198-JWL (D. Kan).

Stueve · Siegel · Hanson LLP

July 28, 2014
Page 3

result, SSH is committed and able to staff this litigation from its resource-rich pool of 29 attorneys and 15 professional staff members as needed to keep the case moving forward.

Although the firm is committed to efficient resolution of all disputes, it is not unusual for SSH to invest thousands of hours in its cases in pursuit of a positive result for its clients. Just in the past few years the firm has spent nearly 30,000 hours litigating a complex, multi-party antitrust suit on behalf of grocers and wholesalers against egg producers and industry trade groups; nearly 25,000 hours litigating a consumer class case for economic damages against a pharmaceutical company; and over 15,000 hours litigating a multi-district collective action under 29 U.S.C. § 216(b) against a national bank. All of these cases were successfully resolved through the hard work and dedication of our lawyers and staff, while working cooperatively with opposing counsel and the Court to manage the complexities inherent in such litigation.

**3.     SSH will work cooperatively with others.**

As with most MDLs, SSH's leadership appointments referenced in footnote 2 have included other qualified firms from around the country. In every instance SSH has cooperated effectively and efficiently with co-counsel. In nearly 15 years of litigating MDLs and class actions, SSH has never had to burden a court with a disagreement among co-counsel. The firm prizes its working relationships with co-counsel, including the three firms designated as Temporary Lead Counsel, and has a proud history of cooperatively litigating cases in the spirit of Fed. R. Civ. P. 1 and the guidelines set forth in the Manual for Complex Litigation.

**4.     SSH has the resources to prosecute the litigation in a timely manner.**

SSH has ample human, financial, and other resources to advance the litigation in a timely and efficient manner. Backed by the firm's dedicated GM-litigation team that brings more than 50 years combined experience litigating auto defect cases, as well as the firm's 29 well-credentialed trial attorneys, the firm has the ability to meet anticipated needs as well as to confront any unforeseen contingencies. Additional resources set SSH apart: Among its staff, SSH employs two full-time information-technology specialists (between them with over 55 years of experience) and a dedicated e-discovery attorney. SSH has a sophisticated, onsite, enterprise-level document management and e-discovery system, and has invested in technology and software comparable to or more advanced than that of most large national law firms. The firm regularly handles cases where millions of documents are exchanged. And the firm is no stranger to advancing significant costs to prosecute a case. In just the last few years, the firm has advanced (and recovered) litigation costs in excess of $4,000,000 in the prosecution of large class or multi-party cases, on a pure contingency basis.

**5.     SSH has done extensive work identifying, investigating, and prosecuting potential claims in the action.**

SSH has taken an active role in identifying and investigating the potential claims against GM arising from its defective ignition switches. SSH has spent hundreds of hours investigating the allegations and legal theories in the *Cox* and *Witherspoon* complaints, including researching and crafting legal theories and litigation strategy, drafting the complaints, and coordinating with the named plaintiffs to file the cases. SSH also retained bankruptcy counsel, who has been working with other bankruptcy counsel in representing putative class members' interests in the GM bankruptcy proceedings.



July 28, 2014
Page 4

### 6. SSH has extensive knowledge of the applicable law.

As summarized in the footnotes that follow below, SSH has been litigating auto-defect consumer class actions for nearly 15 years. Thus, on a purely objective basis, it is unlikely that many applicants for lead counsel have SSH's experience prosecuting and successfully resolving large-scale auto-defect class actions. In just the last several years, the firm has successfully litigated cases alleging wheel rim defects in Chrysler and Mitsubishi vehicles;[7] overstatements of horsepower in Hyundai vehicles;[8] window regulator defects in Volkswagen vehicles;[9] flywheel[10] and airbag[11] defects in Kia and Hyundai vehicles; and, perhaps most relevant here, defective coolant in millions of GM cars against the same defense team assembled to represent GM in this case.[12] The firm will bring to bear all of this experience from this vast array of vehicle defect cases if selected as a member of the Executive Committee.

### 7. The appointment of SSH will support geographic diversity in the litigation.

SSH's appointment will ensure a presence in the central United States with a close geographic tie to a substantial portion of the population impacted by the allegations in this case.

---

[7] *Tadken, et al. v. Mitsubishi Motor Sales of America, Daily v. Daimler Chrysler Motors Corp.*, Case No. 03CC00484 (Jackson County, MO). SSH was appointed lead class counsel as part of a nationwide settlement valued at $33 million resolving deceptive trade practices claims arising out of alleged defective wheel rims installed on approximately 350,000 on Chrysler Avenger and Sebring Coupes, and Mitsubishi Eclipse and Spyder vehicles.

[8] *In re: Hyundai Horsepower Litigation*, Case No. 02CC00303 (Orange County, CA). The nationwide litigation began in September 2002 when Hyundai announced it had overstated horsepower ratings in more than one million vehicles sold in the United States over a 10-year period. SSH was instrumental in achieving a settlement valued at over $75 million.

[9] *Berry, et al. v. Volkswagen of America, Inc.*, Case No. 0516-CV01171 (Jackson County, MO); *Lewin, et al. v. Volkswagen of America, Inc.*, Case No. L-3562-02 (Atlantic County, NJ). These cases alleged defective window regulators and plastic window clamps in VW vehicles. In *Berry*, a statewide class was certified and SSH was appointed Lead Counsel. SSH negotiated a settlement whereby VW agreed to reimburse all expenses associated with the repair and replacement the defective window regulators plus $75 for each documented incident or workshop visit. In *Lewin*, SSH was co-lead counsel in a nationwide class action against Volkswagen for defective window regulators installed on nearly 1 million vehicles. Under the settlement agreement, VW agreed to (1) reimburse all expenses incurred by VW owners in the past related to replacing the defective window regulators, (2) install a redesigned metal window regulator replacing any failed window regulators (which used plastic components) under an extended warranty, (3) extend the warranty for all four window regulators at issue to seven years from the date of the car purchase.

[10] *Parkinson, et al. v. Hyundai Motor America, Inc.,* Case No. 8:06-cv-345-AHS (C.D. Cal.) SSH was appointed co-lead counsel in a consumer class action against Hyundai Motor America alleging that Hyundai marketed and sold vehicles with defective flywheel systems. Following a contested class certification hearing argued by SSH partner Norman Siegel, the Court certified the class and the case was favorably settled in June 2010. Eligible class members received cash reimbursements for money spent on certain flywheel/clutch parts repairs to their 2003 Hyundai Tiburons.

[11] *Roy v. Hyundai Motor America, Inc.*, Case No. 8:05-cv-483-AHS (C.D. Cal.) SSH was appointed co-lead counsel in this case representing a nationwide class claiming the front passenger airbags in Hyundai Elantra vehicles would not activate when occupied by small stature adults. The case was mediated early and resulted in Hyundai recalibrating the airbag system of impacted vehicles and a settlement that the Hon. Alicemarie Stotler called a "win-win."

[12] *Gutzler, et al. v. General Motors*, Case No. 03CV208786 (Circuit Court of Jackson County, MO) SSH worked with California co-counsel on behalf of consumers who purchased or leased certain GM vehicles that were factory filled with Dexcool, GM's Organic Acid Technology Long Life Engine Coolant. Plaintiffs alleged that the engine coolant caused sludging leading to manifold gasket failures. The court certified the case as a class action and SSH was appointed co-lead counsel. Shortly before trial, SSH helped negotiate a nationwide class action settlement in the case.



July 28, 2014
Page 5

Moreover, appointment of SSH would facilitate the prosecution of claims under Missouri law (if a nationwide claim proves untenable), which is unique among consumer protection statutes across this country. Indeed, the Missouri Merchandising Practices Act (MMPA) has been cited as a model for expansive enforcement of consumer claims, and the statute is often distinguished from more restrictive state statutes.[13] SSH's representation of consumers has literally shaped the current law under this statute,[14] and many of the cases cited above included successful claims under the MMPA. The rising tide of a Missouri firm versed in Missouri law will raise all ships in the litigation and SSH's participation as a member of the Executive Committee will ensure that a thorough discussion – informed by experience – can enable leadership to make effective decisions regarding the course of the litigation.

## Conclusion

SSH respectfully requests appointment to the Executive Committee for this MDL. With its resource-rich team of high-caliber attorneys and litigation professionals, its unique and adaptive firm structure, its financial and technological wherewithal, and its record of effective collaboration in similar complex class actions involving similar claims, SSH is confident it can lead this litigation in the spirit of Rule 1 and the dictates of the Manual for Complex Litigation. I respectfully request to appear at the Court's Initial Conference on August 11, 2014, and to address the Court regarding my qualifications and suitability to serve on the Executive Committee.

Respectfully submitted,

Patrick J. Stueve

---

[13] *See In re Sony Gaming Networks and Customer Data Security Breach Litig.*, __ F. Supp. 2d __, MDL No. 11md2258 AJB (MDD) (S.D. Cal. 2014) (dismissing claims for actual damages of multi-district putative consumer class under, *inter alia*, consumer protection statutes of California, Florida, Michigan, New Hampshire, New York, Ohio, and Texas; only Missouri claim for actual damages survived based on analysis of unique features of Missouri law); *In re Celexa and Lexapro Mktg. and Sales Practices Litig.*, MDL No. 09-2067-NMG, 2014 WL 108197 (D. Mass. Jan. 10, 2014) (certifying class under MMPA to proceed on plaintiff's "informed consent" theory; denying certification of Illinois and New York classes, noting absence of reliance or causation requirements under MMPA).

[14] In *Plubell, et al. v. Merck & Co., Inc.*, Case No. 04CV235817 (Circuit Court of Jackson County, Missouri), SSH brought a Missouri statewide class action on behalf of all Missouri purchasers of Vioxx, the Cox-2 pain reliever that Merck pulled off the market after the FDA identified several misleading sales practices used by Merck to market the product. The case was certified as one of the only class actions anywhere in the country and SSH was appointed co-lead class counsel. Under the October 2012 settlement terms, Missouri purchasers of Vioxx were eligible to receive full reimbursement for their Vioxx purchases, including either: (1) a one-time cash payment of $180 if claimant chose not to provide documentary proof of payment; or (2) $90 for each month of Vioxx purchases supported by a declaration under oath with documentary proof of payments, such as a letter from the prescribing physician. The Missouri settlement was valued at $220 million exclusive of attorney's fees and costs.