

September 12, 2014

*Via Electronic Court Filing*

The Honorable Jesse M. Furman
United States District Court
Southern District of New York

Re:     *In re: General Motors LLC Ignition Switch Litig.*, 14-MD-2543 (JMF), 14-MC-2543
         Coordination with Related Cases (Melton)

Dear Judge Furman:

Plaintiffs' Co-Lead Counsel, in consultation with Executive Committee Member Lance Cooper and Plaintiffs' Federal/State Liaison Counsel Dawn Barrios ("Plaintiffs"), submit this letter brief on MDL/Related Case Coordination in further follow-up to CMO No. 8 § V, the parties' letter brief of August 29, 2014 [Dkt. No. 273], and Your Honor's direction at the September 4, 2014 conference. An updated (proposed) Coordination Order is attached as Exhibit 1, incorporating the Court's suggestions, and a red-line showing the substantive areas of dispute between Plaintiffs' (proposed) Coordination Order and Defendants' is attached as Exhibit 2.

At the September 4, 2014 status conference, this Court directed the parties to brief issues relating to (a) New GM's request to stop discovery in the *Melton* case and the injunctive powers of the Court; and (b) the parties' disputes in their respective coordination orders. Tr. at 66-67.

With respect to the first issue, Plaintiffs respectfully submit that Your Honor's statement that the Court was not "going to start issuing injunction[s] to the state courts," and would instead reach out to judges in Related Cases to discuss coordination issues, Tr. at 58:1-8,[1] is fully supported by the case law, the MANUAL FOR COMPLEX LITIGATION, FOURTH ("MCL") and remains a contemporary MDL best practice. *See*, e.g., The Duke Law Center For Judicial Studies' "MDL Standards and Best Practices (2014) Revised 9-10-14, available online at https://law.duke.edu/sites/default/files/centers/judicialstudies/MDL_Standards_and_Best_Practices_2014-REVISED.pdf, and *Appendix*, available online at https://law.duke.edu/sites/default/files/centers/judicialstudies/MDL_SBP_Appendix_2014.pdf. These new proposed standards, based on judicial and practitioner experiences since the issuance of the MCL, bear out that the diplomatic approach in the spirit of comity appears to be the best course to assure congenial cooperation with independently minded state court benches.

---

[1] Plaintiffs are also mindful of the fact that the Court has likely already spoken with the judges in the Related Cases.

September 12, 2014
Page 2

The best practices set forth in the MCL, and now in the developing Duke Standards, address precisely these issues. Parallel federal and state actions naturally create jurisdictional complexities and scheduling tensions, and it is within the powers and discretion of the Transferee Court to ensure cooperation and coordination. Invoking the All Writs Act[2] or the Anti-Injunction Act[3] should be a last resort, utilized, "if at all," after all attempts at voluntary coordination have failed. MCL §20.32. As an initial matter, the Supreme Court has held that "[any] doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state court to proceed in an orderly fashion to finally determine the controversy." *In re Visa Check/Mastermoney Antitrust Litig.*, No. 96-CV-5238, 2005 U.S. Dist. LEXIS 18693, at *7 (E.D.N.Y. Aug. 31, 2005) (quoting *Atl. Coast Line R.R. Co., v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 297 (1970)).

More recent authority is in accord as well. *See Wyly v. Weiss*, 697 F.3d 131, 139 (2d Cir. 2012) (declining to apply the "in aid of jurisdiction" exception to the Anti-Injunction Act and observing that "we have never held that a district court's involvement in complex litigation justifies, without more, issuance of an injunction"); *Hinds Cnty. v. Wachovia Bank N.A.*, 790 F. Supp. 2d 125 (S.D.N.Y. 2011) (refusing to issue an injunction when, among other reasons, the federal case had not been certified as a class action and only one defendant had settled); *cf. In re Baldwin-United Corp.*, 770 F.2d 328, 337 (2d Cir. 1985) (issuing injunction against state court actions given that "the district court had before it a class action proceeding so far advanced that it was the virtual equivalent of a *res* over which the district judge required full control" and two years of court-supervised settlement discussions among the parties). Notably, in the case Defendants cited in their August 29, 2014 letter, *In re Ford Motor Co. Crown Victoria Police Interceptor Products Liability Litig.*, 2003 WL 22331286, at *1 (N.D. Ohio May 21, 2003), the request for an injunction was unopposed.

An injunction against a state court proceeding might solve an initial scheduling issue, but may be detrimental to all further efforts at coordination throughout the tenure of the MDL. *See* MCL, § 20.32. Thus, even if the Court could properly issue an injunction in this circumstance, such an injunction may very well have the least-desired consequence: it may be the death knell for any real coordination, and insure the very duplication of discovery that all parties are striving to minimize.

As the MCL suggests, "Coordination could involve inviting state judges to participate in a coordinated national discovery program while retaining control of local discovery. Depending on the progress of the state litigation, some aspects of discovery in state cases may in some instances serve as the basis for national discovery." MCL, § 20.313. There is no authority to enjoin a Related Action from permitting depositions, and Defendants have not cited any to date. In fact, the situation where (as here) discovery in a Related Action is ahead of the discovery in the MDL is a paradigmatic example of how the federal court can benefit from the state court discovery. In the *Vioxx* litigation, for example, the New Jersey and Texas state actions were ahead of the MDL; Judge Fallon reached out to the state court judges, and the state court proceedings coordinated their schedules to avoid conflicting trial dates, and joint depositions and shared discovery. In *Vioxx* and

---

[2] 28 U.S.C. § 1651(a).
[3] 28 U.S.C. § 2283.

September 12, 2014
Page 3

more recently in the *Actos* MDL, bellwether personal injury/wrongful death trials were conducted in both the MDL and state courts. Here, even assuming that this Court will, as indicated, and as appropriate, issue a Coordination Order, this need not and does not preclude (and should facilitate) potential use of Related Action's discovery in this MDL, and a Related Action could serve as one of the bellwether trials. There is no basis, let alone ex ante, for an injunction. *See* August 29, 2014 Ltr. [Dkt. No. 273], at Exs. E, G.

     For these reasons, Plaintiffs believe that Your Honor has taken the correct approach by reaching out to the judges with Related Actions to discuss voluntary coordination, and that Your Honor should not enjoin the progress of the Related Actions, or the ability of a lawyer to prosecute his client's case in a different forum. Indeed, Plaintiffs submit that Defendants' attempt to draw a distinction in this context between enjoining lawyers in the MDL and enjoining the Related Action is illusory and is an end run around the best practices of an MDL, and an unsuccessful effort to ignore the practical unworkability of the injunction GM seeks.

     Notably, the MCL expressly endorses having lawyers in state-court cases involved in the MDL. *See* MCL § 20.311 ("In appointing lead or liaison counsel or otherwise organizing counsel . . . consider including attorneys from jurisdictions with cases that may need to be coordinated with either class action or multidistrict litigation"). That very situation has occurred here. Your Honor appointed counsel with state court cases in leadership positions. Those appointments were made to facilitate coordination and accommodation, not to prevent it, as the Defendants advocate here.

     Specifically, to solve its purported "lawyer problem," the Defendants seek a protective order/injunction preventing the Meltons' attorney (Lance Cooper) from proceeding with scheduled depositions later in the fall. Defendants have presented no authority to support an injunction against a state court attorney from pursuing his client's case. Even if this Court could enjoin the upcoming depositions, this would not serve the interests of the MDL, and could prejudice the orderly proceeding of the *Melton* case. Communication between the Court and the *Melton* court can address and achieve scheduling coordination, which should be a joint judicial decision, far better than an injunction.

     Mr. Cooper explains the factual background and his deposition requests in the *Melton* case as follows, stating:

     Although we are working with GM's counsel to coordinate discovery to the extent practicable, there are unique issues in *Melton*. As this Court recognizes, *Melton* is the case furthest along as far as discovery is concerned. In fact, because of the discovery obtained in the underlying case, the Meltons have all of the evidence they need to prove defect, causation, and damages, including punitive damages. Discovery was over and the trial was just a month away when the underlying case settled.

     In the *Melton* case discovery centers on the rescission of the settlement claim. Under Georgia law, the Meltons must prove that GM fraudulently concealed evidence from them in order to induce them to settle their case. The *Melton* discovery is focused on obtaining evidence relating to GM's

September 12, 2014
Page 4

concealment. The Meltons intend to present evidence to a jury that GM's concealment of evidence was part of a concerted effort to settle the case without the Meltons or Judge Tanksley knowing what GM knew.

At the September 9, 2014, meet and confer, we informed GM's counsel that the following categories of documents were relevant to the fraudulent concealment claim:

- Documents that were ordered to be produced by Judge Tanksley that were not produced;

- Documents that show GM concealed what it knew about the defects from the Meltons and Judge Tanksley;

- Documents that show GM's suborned perjury in *Melton*; and

- Documents that show that GM obstructed justice in *Melton*.

The Meltons also intend to begin deposing witnesses as soon as possible. The depositions will be focused on GM's concealment of evidence from the Meltons and Judge Tanksley, as well as GM's subornation of perjury and obstruction of justice. These depositions will not be ordinary discovery depositions of the kind which were taken in the previously filed case to prove that a defect caused Brooke Melton's accident. They will be targeted evidentiary depositions for use at trial and will be focused on GM's fraudulent concealment.

The Meltons will suffer prejudice by significant delay in the taking of these depositions. Judge Tanksley has asked the parties to submit a scheduling order by September 30, 2014. The Meltons sent a proposed scheduling order to GM's counsel which, consistent with Georgia law, provides for a six-month discovery period, ending in January 2015. The anticipated trial date would be in the spring of 2015. GM does not want depositions to begin, if at all, until after Judge Gerber rules on the threshold issues which, according to the present schedule, will not be fully briefed and submitted to Judge Gerber until February 16, 2015, at the earliest. Succinctly stated, GM wants to delay taking of depositions which will push discovery back and delay the *Melton* trial.

Mr. Cooper concludes: "Pursuant to O.C.G.A. § 9-11-1, the Meltons are entitled to a "just, speedy, and inexpensive determination of every action [trial]." Delaying discovery per GM's request would be unjust, lengthy, and expensive to the Meltons. Respectfully, Judge Tanksley presided over the underlying pre-trial matters, the settlement and the rescission of the settlement, and is in the most knowledgeable position regarding the instant matter. She should be consulted to give due consideration to all parties interests as the case proceeds."

Co-lead Counsel are charged to expedite discovery, including depositions of New GM involving fraudulent concealment, a key issue in the MDL actions, for the common benefit of all plaintiffs. Plaintiffs' Co-Lead Counsel respectfully observe that the MDL is the center of activity on claims arising from New GM's serial ignition system recalls, and on claims arising from the post-Sale crashes that implicate these defects. All of the economic loss/injunctive relief class actions, and

September 12, 2014
Page 5

the vast majority of individual crash claims (over 600 to date), are here. Most of the general discovery and most of the bellwether trials, including early bellwether trials, should accordingly be scheduled and conducted here. Discovery should advance without delay; as Plaintiffs will demonstrate by separate letter brief, time is of the essence, as the safety of millions of class members is at risk. Expediting discovery, rather than enjoining or delaying it, can save not only time, but lives.

For these reasons, we believe scheduling in *Melton* should be decided by the MDL Court and the *Melton* court, collaboratively, and in no event should the discovery clock be stopped, or run backward. Depositions that assist the *Melton* trial preparation (including case-specific testimony) can be taken in the MDL, since the concealment issues cut across all cases, without irreparably delaying either the *Melton* trial or the commencement of depositions in the MDL, and the MDL Leadership (including *Melton* counsel) has no objection to coordination and reasonable accommodations in scheduling between the courts.

Such coordination may also properly involve scheduling adjustments in *Melton* to enable the MDL to catch up, and thus reduce duplication, and Plaintiffs are committed to a running start. GM's discovery letter brief of September 10, 2014 makes no such commitment. GM's position that state court discovery should be stopped in deference to the MDL is fundamentally at odds with the position GM takes in its discovery letter brief of September 10, 2014; if this court is to be the hub of discovery activity, such activity should commence now and proceed briskly. There is no reason that general depositions of New GM witnesses cannot be scheduled with due regard (including reasonable adjustments) to the *Melton* schedule, and that case-specific questions, tailored to that trial, cannot be asked by *Melton* counsel in the course of such depositions, without either prejudicially delaying *Melton*, or resulting in duplicate depositions.

Finally, Plaintiffs briefly address the parties' differences in the proposed Coordination Order relating to on whose shoulders the burden rests to obtain discovery in Related Actions. Plaintiffs, as did the Court, advocate comity between this Court and the Related Actions with respect to discovery and pre-trial coordination. There should not be onerous, ambiguous and unnecessary requirements as preconditions to taking discovery in the Related Actions. The Defendants advocate that any discovery requested in a Related Action "*only upon leave in the state court on noticed motion for good cause shown, including why the discovery could not have been obtained in the MDL*". This high burden will invite inefficient interminable arguments over the relatively vague and somewhat abstract (in context) question of what could have been obtained in the MDL and foster potential reactive orders from strong-minded State court judges. GM's suggested course, forcing state courts to hear these motions is a strong armed approach designed to prevent legitimate State court discovery, and is not comity. Though, preventing unnecessarily duplicative discovery is the goal, the means depend on context and there is no one-size-fits all model. Under Plaintiffs' proposal, Defendants in Related Action cases do not waive their rights to seek protective orders under the applicable rules and will have their day in court. However, Defendants may not enjoy the unfair advantage of broad *ex ante* restrictions which would engender endless arguments on what could occur in MDL discovery.

September 12, 2014
Page 6


      The law, all parties' stated goal of coordination, the principles of comity, and the procedural posture of this MDL do not support any departure from established MDL best practices set forth in the MCL, or the injunction which Defendants advocate.

Respectfully,

| | | |
|---|---|---|
| Steve W. Berman | Elizabeth J. Cabraser | Robert C. Hilliard |
| **Hagens Berman Sobol Shapiro LLP** | **Lieff Cabraser Heimann & Bernstein, LLP** | **Hilliard Muñoz Gonzales L.L.P.** |
| 1918 Eighth Ave. | 275 Battery Street | 719 S Shoreline Blvd, # 500 |
| Suite 3300 | 29th Floor | Corpus Christi, TX 78401 |
| Seattle, WA  98101 | San Francisco, CA  94111-3339 | |
|     -and- |     -and- | |
| 555 Fifth Avenue | 250 Hudson Street | |
| Suite 1700 | 8th Floor | |
| New York, NY 10017 | New York, NY  10013-1413 | |
| | | |
| Lance Cooper | Dawn M. Barrios, Esq. | |
| **The Cooper Firm** | **Barrios, Kingsdorf & Casteix, LLP** | |
| 531 Roselane Street | 701 Poydras St., Suite 3650 | |
| Suite 200 | New Orleans, LA 70139 | |
| Marietta, GA 30060 | | |