

September 29, 2014

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 09/30/2014
```

*Via Electronic Court Filing*

The Honorable Jesse M. Furman
United States District Court for the
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:   *In re: General Motors LLC Ignition Switch Litigation,*
            14-MD-2543 (JMF); 14-MC-2543

Dear Judge Furman:

      Pursuant to this Court's Order No. 8 § IV.B, Lead Counsel and counsel for General Motors LLC ("New GM") – having met and conferred on multiple occasions with each other as well as with counsel for Delphi Automotive Systems, LLC ("Delphi"), Delphi Automotive PLC, Don McCue Chevrolet, Inc., Continental Automotive Systems, Inc., AutoFair Chevrolet, LLC, and Stoneridge, Inc. – submit this joint letter setting forth the parties' tentative agenda for the October 2, 2014 Status Conference and the parties' proposals on the issues described in Order No. 12 (§§ II, IV, VII, VIII, and XIV), Order No. 14, and Order No. 16.  The parties do not believe the Court should allot more than three hours for the Status Conference.

      **1.**    **Creation of a Single Document Depository for this MDL and Related Cases.**

      Lead Counsel, charged under the MCL and Order No. 13 to be perpetually conscious of cost-efficiency, respectfully submit that the parties had agreed to use ShareVault as the single electronic document depository for this MDL and related state and federal court actions (the "MDL 2543 Document Depository"), **subject to** GM providing Lead Counsel with information on how much ShareVault would cost.  On September 22nd for the first time (and after the issuance of Orders Nos. 8, 11, and 12), New GM advised Lead Counsel:

> Per MDL 2543 Order No. 12 ¶ II, New GM has contracted with ShareVault to serve as the single electronic document depository for both the MDL and all related state and federal court actions. The contract provides that ShareVault will store up to two (2) terabytes of data accessible to approximately 300 users. For the first six months, the fee is $245,480, and New GM can add additional data at 100 GB increments for $12,274 per

The Honorable Jesse M. Furman
September 29, 2014
Page 2

> month. New GM can extend the contract for another six months for $220,932 (a twelve-month total of $466,412), and it can add additional data at 100 GB increments for $11,046.60. After the first twelve months, the contract can be renewed on a month-to-month basis for $42,750 per month. We propose that Plaintiffs and Defendants each bear half the ShareVault cost, with each side paying $233,206 for the first twelve months, and each side paying $21,375 per month thereafter.

Lead Counsel immediately raised concerns regarding both functionality and cost. At $233,206.00 up front for one year, then an additional $21,375.00 per month, the cost of ShareVault is unreasonably high for what it offers: only the most basic search functionality and virtually no analytics. ShareVault is basically a simple drop box. Plaintiffs are consulting with their own vendor regarding a system with the necessary capabilities (including sophisticated search and analysis) for a similar amount of money. New GM's position would require plaintiffs to pay approximately $500,000.00 (ShareVault plus plaintiffs' vendor) in the first year, plus, for ShareVault alone, an additional $256,500.00 per year (before adding in Plaintiffs' chosen vendor's charges). Accordingly, Plaintiffs propose that Defendants either produce to, and pay for ShareVault; or produce their documents directly to Plaintiffs' vendor. In the former event, Plaintiffs would produce their documents to ShareVault also. In the latter event, Plaintiffs' vendor would substitute for ShareVault to serve as the MDL 2543 Document Depository in the federal/ state proceedings. This would eliminate the cost duplication and delay caused by the limitations and expense of the ShareVault system. We will continue to confer with New GM.

Defendants' position is that the Court ordered the parties to meet and confer regarding "[a] proposal and plan to create a single electronic document depository that will be used in both this MDL and related state and federal cases")." (*See* Order No. 8 § IV.B.3.) Lead Counsel agreed with Defendants at the parties' August 21 meet and confer that the parties would create a ShareVault-type depository where all documents produced in this litigation and related litigation would be posted and accessed according to the terms of the MDL Order Protecting Confidentiality and Privileged Materials and the ESI order, with each party responsible for accessing the documents from ShareVault to download into the review tool of their own choice. Order No. 11 § 19 provides that "[t]he parties shall share the cost of the MDL 2543 Document Depository." Order No. 12 § 12 specifically memorializes the parties' agreement to "use ShareVault as the single electronic document depository for both this MDL and all related state and federal actions." Based on these orders and the parties' agreement to use ShareVault, New GM entered into a contract with ShareVault to serve as the MDL 2543 Document Depository.

Defendants respectfully submit that Plaintiffs should bear half the cost of the MDL 2543 Document Depository, and that Lead Counsel's refusal to contribute anything toward the cost of ShareVault is unreasonable. The basis for ShareVault's cost is that New GM is producing terabytes of data that Lead Counsel have requested. Lead Counsel have admitted that they previously agreed to use ShareVault and to negotiate in good faith with regard to cost-sharing. Plaintiffs' current position conflates the function of the MDL 2543 Document Depository— which is to serve as a secure platform for all parties to this litigation and Coordinated Cases to

The Honorable Jesse M. Furman
September 29, 2014
Page 3

have access to document productions—with a review tool for analyzing documents, which is something that both sides will necessarily (and separately) need to utilize. Defendants have asked Lead Counsel to propose a reasonable percentage of the cost of ShareVault that Lead Counsel believe Plaintiffs should bear. Defendants cannot agree to Lead Counsel's proposal to substitute Plaintiffs' review vendor for ShareVault, especially where Lead Counsel have disclosed no information regarding this vendor, how this proposal would work in practice, or whether such an arrangement has ever been successfully used in a large MDL such as this one.

   2.   **Third-Party Document Discovery and Preservation.**

The parties continue to meet and confer with respect to taking reasonable steps to ensure that third parties are preserving evidence that could ultimately be within the scope of document requests in this MDL.

   3.   **Additional Preservation Protocols.**

The parties continue to discuss additional preservation issues, including Plaintiffs' concerns about preservation of relevant documents in the possession of third-party GM dealers.

   4.   **Protocol for Inspection of Plaintiffs' Vehicles.**

The parties have submitted to the Court an agreed-upon proposed Order No. 17 (Regarding the Vehicle Inspection Protocol).

   5.   **The Potential Need for a Discovery Master, Privilege Master or Magistrate Judge.**

The parties agree that a Magistrate Judge would be a suitable appointment if the Court were inclined to assign a special master to oversee any discovery disputes.

   6.   **Proposed Bellwether Order for Injury Cases.**

Lead Counsel's position is that the parties should endeavor to come to an agreement regarding a procedure for choosing personal injury and wrongful death bellwether cases and to place them on a track to trial. To that extent, Lead Counsel provided Defendants with a proposed order on September 22, 2014. Plaintiffs' bellwether proposal provides for the selection of a pool of cases (*e.g.*, 15) in which full case-specific fact discovery would proceed. At the close of fact discovery, New GM would select several bellwether plaintiffs from this pool, Plaintiffs would have the ability to veto or strike a percentage of the selections, both sides would select their first preferences for bellwether trials, and the Court would set bellwether trials on a rotating basis, starting with the Plaintiff's selection. The proposal, which is subject to further discussion, gives each side, and the Court, a role in the selection of bellwether cases for trial, based upon case-specific information. This bellwether proposal is based on and adapts bellwether selection orders from other recent MDLs, and is subject to discussion by the parties.

The Honorable Jesse M. Furman
September 29, 2014
Page 4

Lead Counsel also provided Defendants with a proposed Plaintiff Fact Sheet (*see* Section 8 below). Lead Counsel have discussed with Defendants beginning the first bellwether trial within 12 months.

Defendants believe that additional case specific information is needed from Plaintiffs before informed decisions can be made about: (a) the appropriate number of representative cases that should be selected for case specific discovery; (b) which cases should be in the initial discovery pool; and (c) the appropriate structure for a bellwether trial protocol; and (d) the proper timing for both implementation of a bellwether trial protocol and the initiation of any bellwether trials.  As a point of reference, the first bellwether order was not entered in the *Toyota* MDL for nearly nine months, and the first bellwether trial was scheduled for the first quarter of 2013, nearly three years out from the creation of the MDL.  The parties plan on meeting and conferring regarding Lead Counsel's proposed bellwether order for injury cases and updating the Court on the progress of the discussions at the November 6, 2014 Status Conference.

### 7.     The Consolidated Complaints and Motion Practice.

The putative class action Plaintiffs intend to file two consolidated complaints: one pertaining to vehicles purchased pre-Sale and the other involving vehicles purchased post-Sale. Each complaint will assert claims based on the laws of fifty states.  After the consolidated complaints are filed, the parties plan to meet and confer regarding: (a) Lead Counsel's proposal to establish a process to test the consolidated complaints using bellwether motions involving the laws of select states to be agreed-upon by the parties or selected by the Court; and (b) proposed timing and page limits for motion practice related to the consolidated complaints.

The parties plan to either submit an agreed-upon proposal to the Court regarding motion practice for the consolidated complaints or to raise disagreements regarding the same by the November 6, 2014 Status Conference.  New GM also reserves the right to challenge whether any motion practice on a pre-Sale complaint is necessary or appropriate prior to a final determination by the Bankruptcy Court with respect to New GM's pending Motions to Enforce.

### 8.     Document Discovery.

Pursuant to Order No. 14 the parties have begun to meet and confer in an effort to agree on a "reasonable but aggressive schedule for discovery" for "personal injury claims involving post-Sale accidents and economic loss claims involving post-Sale [New GM] vehicles that are not the subject of New GM's Motions to Enforce."  On September 23, 2014, Lead Counsel served New GM with 415 Requests for Production involving personal injury claims.  New GM is reviewing Lead Counsel's requests but, given their volume, scope, and substance, the parties will not be in a position to agree on a discovery schedule prior to the October 2, 2014 Status Conference.  The parties intend to meet and confer regarding Lead Counsel's requests with the intention of either submitting to the Court an agreed-upon Phase I Discovery Plan (including timing for New GM's written responses to Lead Counsel's RFPs if appropriate) or disagreements regarding the same by the November 6, 2014 Status Conference.

The Honorable Jesse M. Furman
September 29, 2014
Page 5

One of Lead Counsel's RFPs (No. 415), requests that New GM provide, for each of 620 vehicles, (a) "[a]ny and all warranty documents pertaining to the vehicle in question;" (b) "[a]ny and all repair documents pertaining to the vehicle in question;" (c) "[a]ny and all customer complaints pertaining to the vehicle in question;" (d) "[a]ny and all investigation material pertaining to the vehicle and/or incident in question;" (e) "[i]f the ignition switch has been preserved, please provide the log, number, location and date on which GM obtained the part;" and (f) "[a]ny proof that a defective replacement part was installed in the vehicle." New GM has agreed that, subject to clarification with Lead Counsel on certain subparts of this Request, it will use its best efforts to collect and produce, on a rolling basis over the next 60-90 days, the non-privileged documents in its possession, custody, and control that are responsive to Lead Counsel's RFP No. 415 for vehicles for which Plaintiffs have provided New GM a valid Vehicle Identification Number ("VIN").

Lead Counsel will serve their requests for production for "economic loss claims involving post-Sale [New GM] vehicles that are not the subject of New GM's Motions to Enforce" prior to the October 2, 2014 Status Conference. The parties intend to meet and confer regarding the substance and timing of responding to these document requests as part of their discussions regarding Phased discovery.

On September 22, 2014, Lead Counsel also provided to Defendants a proposed Plaintiff Fact Sheet for personal injury and wrongful death Plaintiffs. The parties are meeting and conferring about the content of the proposed fact sheet, as well as the use of modern technology to ensure that Plaintiff Fact Sheets (a) are provided to Defendants in digital format with extracted text; and (b) have built in mechanisms to prevent errors in VIN, Social Security Number, and other personal information. The parties plan to either submit to the Court agreed-upon proposed Plaintiff Fact Sheets for economic loss, personal injury and wrongful death Plaintiffs or to raise disagreements regarding the same by the November 6, 2014 Status Conference.

9. **Distinction between Class and Merits Discovery.**

The parties continue to meet and confer regarding whether any distinction should be made between class-related discovery versus merits discovery and will either submit to the Court an agreed-upon joint proposal or raise disagreements regarding the same by the November 6, 2014 Status Conference.

10. **The Need for a Separate Coordination Order.**

Lead Counsel, the Federal/State Liaison Counsel, and counsel for New GM are proceeding promptly to submit this Court's Coordination Order to courts in the Related Actions, and will report to this Court on the outcome of those efforts. At this time the parties do not believe there is a need at present to enter a separate order governing coordination in "related" ignition switch securities and shareholder derivative actions or in "unrelated" actions seeking ignition switch-related discovery, but we will advise the Court if this changes.

The Honorable Jesse M. Furman
September 29, 2014
Page 6

Respectfully Submitted,

| Steve W. Berman | Elizabeth J. Cabraser | Robert C. Hilliard |
|---|---|---|
| **Hagens Berman Sobol Shapiro LLP** | **Lieff Cabraser Heimann & Bernstein, LLP** | **Hilliard Muñoz Gonzales L.L.P.** |
| 1918 Eighth Ave. | 275 Battery Street | 719 S Shoreline Blvd. |
| Suite 3300 | 29th Floor | Suite 500 |
| Seattle, WA  98101 | San Francisco, CA  94111-3339 | Corpus Christi, TX 78401 |
| -and- | -and- | |
| 555 Fifth Avenue | 250 Hudson Street | |
| Suite 1700 | 8th Floor | |
| New York, NY 10017 | New York, NY  10013-1413 | |

cc:	Counsel of Record for the Defendants


Counsel should be prepared to address, and/or update the Court with respect to, each of the issues discussed above at the October 2, 2014 status conference.  In addition, counsel should be prepared to address: (1) Plaintiffs' request for discovery regarding ongoing safety issues, which is now fully briefed; and (2) whether there is a need for supplemental briefing with respect to the impact of Second Circuit law on the Motion to Remand filed by Plaintiff in California v. General Motors LLC, 14-CV-7787 (JMF), and, if so, an appropriate schedule for such briefing.

SO ORDERED.

September 30, 2014