# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

Andrew B. Bloomer, P.C.
To Call Writer Directly:
(312) 862-2482
andrew.bloomer@kirkland.com

300 North LaSalle
Chicago, Illinois  60654

(312) 862-2000

www.kirkland.com

Facsimile:
(312) 862-2200

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  11/03/2014

October 31, 2014

The Honorable Jesse M. Furman
United States District Court for the
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:    **MDL 2543 -** *In re General Motors LLC Ignition Switch Litigation*
14-MD-2543 (JMF); 14-MC-2543

Dear Judge Furman:

In accordance with Order No. 18 § VI, counsel for General Motors LLC ("New GM") submit this letter brief in support of Defendants' proposed order for the selection and scheduling of personal injury and wrongful death bellwether trials.  (*See* Defendants' proposed Bellwether Order (Exhibit A).)  Although Defendants and Lead Counsel agree that bellwether trials are an important tool in multidistrict litigation, the parties disagree on six critical issues:

1. Scope of the Bellwether Trials and Categories of Claims

    a. Defendants propose the initial pool of potential bellwether cases (the "Initial Discovery Pool") include only ignition switch claims related to six vehicles that are the source of most claims in this MDL (and in related state court actions), and group those claims into representative categories.

    b. Lead Counsel propose the bellwether trial plan include ignition switch claims related to *any* vehicle involved in this MDL no matter how few claims are connected to the specific type of vehicle.  Further, they want to categorize the claims in a way that does not accurately reflect the composition of claims in this litigation.

Beijing    Chicago    Hong Kong    Houston    London    Munich    New York    Palo Alto    San Francisco    Shanghai    Washington, D.C.

# KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
October 31, 2014
Page 2

2.  Completion and Submission of Plaintiffs' Fact Sheets

    a.  Defendants recommend the Court require *all* personal injury and wrongful death
        plaintiffs to submit comprehensive Fact Sheets in the next 60 days so that the data can be
        used when selecting the Initial Discovery Pool.

    b.  Lead Counsel propose only those plaintiffs selected for inclusion in the Initial Discovery
        Pool should be required to provide detailed information about their accident and claim.

3.  Selection of the Initial Discovery Pool

    a.  Defendants propose *both* Lead Counsel *and* Defendants be equally involved in selecting
        the Initial Discovery Pool, which would be consistent with common practice in other
        similar MDL proceedings.

    b.  Lead Counsel propose that only they should select the Initial Discovery Pool, excluding
        Defendants from the selection process entirely.

4.  Size of the Trial Pool

    a.  Defendants propose that the trial pool should be composed of a subset of the Initial
        Discovery Pool cases so that (i) each side has the opportunity to select an equal number
        of trial candidates; and (ii) based on case-specific discovery, only cases deemed to be
        representative of the MDL pool are included in the trial pool.

    b.  Lead Counsel propose that the trial pool potentially include all eighteen cases, *i.e.* the
        entire Initial Discovery Pool.

5.  Timing of the First Bellwether Trial

    a.  Defendants propose a reasonable but aggressive schedule, complete with proposed
        deadlines, which would facilitate the Court trying the first MDL bellwether claim as early
        as July 2016.

    b.  Lead Counsel propose the first bellwether trial be scheduled for October 2015, giving the
        parties fewer than 12 months to complete all pretrial activities, including fact discovery,
        expert discovery, dispositive motion practice, and *Daubert* motion practice–but Lead
        Counsel's proposal does not outline how all of these activities can be reasonably
        completed in time for a trial next fall.

## KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
October 31, 2014
Page 3

6.  <u>Bellwether Trial Sequencing</u>

a.  Defendants propose the Court determine the sequencing of the bellwether trials, with input from the parties, at the conclusion of fact discovery and expert disclosures.

b.  Lead Counsel propose they select the first case for trial, with the trial order of the remaining cases alternating between selections by Defendants and Lead Counsel.

Each of these issues is addressed in turn below.

**A.     The Scope of the Bellwether Trials and Categories of Claims Should Be Representative of this MDL.**

Bellwether trials provide meaningful information to the parties regarding how juries view different categories of cases, but only to the extent that those bellwether trials are representative. *See generally* Fallon, *et al.*, *Bellwether Trials in Multidistrict Litigation*, 82 Tul. L. Rev. 2323 (2008).  Lead Counsel claim that the scope of this bellwether trial plan should cover all wrongful death and personal injury claims arising from *any* alleged defect in the ignition switch of *any* vehicle involved in this MDL, even if the number of vehicles at issue is small.  Put simply, this proposal will not help fulfill the purpose of having bellwether trials in the first place.

In contrast, Defendants propose the bellwether trial plan cover only claims relating to ignition switches in the following vehicles:  (1) Chevrolet Cobalt (MY 2005-2007); (2) Pontiac G5 (MY 2007); (3) Saturn Ion (MY 2003-2007); (4) Pontiac Solstice (MY 2006-2007); (5) Chevrolet HHR (MY 2006-2007); and (6) Saturn Sky (MY 2007).  (*See* Ex. A at ¶7(c).) Limiting the Initial Discovery Pool in this manner furthers the objectives of this MDL and is consistent with this Court's initial document discovery schedule.  First, the vast majority of the personal injury claims in this MDL (and in related state court actions) concern these model and model year vehicles.  Second, document discovery regarding these vehicles is well underway. Indeed, four million pages of documents relating to these vehicles are already in the MDL 2543 Document Depository.  On the other hand, claims involving vehicles subject to different recall campaigns are fewer in number, and discovery has just begun.

In addition to the vehicles at issue, the categorization of claims is also extremely important to the bellwether process because these categories "act as guideposts, focusing the attorneys on the most predominant and important issues in the litigation."  Fallon, *et al.*, 82 Tul. L. Rev. at 2345.  Defendants suggest the trial pool should be divided into the following six categories:

KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
October 31, 2014
Page 4

1.  Wrongful death claims involving frontal impact where there is a claim of airbag non-deployment, and the vehicle and EDR[1] are still available;

2.  Wrongful death claims involving frontal impact where there is a claim of airbag non-deployment, and the vehicle and EDR are no longer available to plaintiff or Defendants;

3.  Wrongful death claims involving loss of vehicular control before accident where there is no claim of airbag non-deployment, and the vehicle and EDR are still available;

4.  Personal injury claims involving frontal impact where there is a claim of airbag non-deployment, and the vehicle and EDR are still available;

5.  Personal injury claims involving frontal impact where there is a claim of airbag non-deployment, and the vehicle and EDR are no longer available to plaintiff or Defendants; and

6.  Personal injury claims involving loss of vehicular control before accident where there is no claim of airbag non-deployment, and the vehicle and EDR are still available.

(*See* Ex. A at ¶13.)  The categories (1) include both wrongful death and personal injury claims, each of which have different damages elements; (2) include airbag non-deployment claims and claims related only to loss of vehicular control; and (3) take into consideration the availability of the vehicle and the EDR.  Thus, in Defendants' view, these proposed categories reflect the most significant variables in these cases.

**B.      Plaintiffs Should Submit Fact Sheets *Before* Bellwether Plaintiffs Are Selected.**

One of the first steps in a bellwether trial program is to identify those cases that will populate the Initial Discovery Pool.  This population of cases will undergo case-specific fact discovery and serve as the pool out of which a subset of cases will be selected for trial.  The primary purpose of a Plaintiff Fact Sheet is to aid the Court and the parties in *identifying* representative claims for inclusion in the Initial Discovery Pool.[2]  Roth, *Coordination of Litigation in State and Federal Courts*, 2 Bus. & Com. Litig. Fed. Cts. § 15:29 (3d ed.) (noting that Fact Sheets "provide the information necessary to establish the respective trial groups, and

---

[1]   An event data recorder ("EDR") records data about how a vehicle's systems performed immediately before and during an event such as a crash or collision.

[2]   Lead Counsel have agreed to create an electronic database to organize and store data from Plaintiffs' Fact Sheet submissions.  This database will permit the efficient review of claim information before selection of the Initial Discovery Pool.

## KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
October 31, 2014
Page 5

those responses will help define the trial groups and inform the direction of pretrial discovery"); *see also In re Phenylpropanolamine (PPA) Products Liability Litigation*, 460 F.3d 1217, 1234 (9th Cir. 2006) (explaining that "the purpose of the Plaintiff's Fact Sheet [i]s to give each defendant the specific information necessary to defend the case against it, and that without this device, a defendant [i]s unable to mount its defense because it ha[s] no information about the plaintiff or the plaintiff's injuries outside the allegations of the complaint.").

For this reason, it is typical for MDL courts to permit only those plaintiffs who have submitted Fact Sheets to be eligible for inclusion in an initial discovery pool. (*See e.g.*, Ex. B, *In re Actos (Pioglitazone) Prods. Liab. Litig.*, scheduling order at pg. 2 ("The only plaintiffs eligible to be included in the discovery pool will be plaintiffs who submitted Plaintiff Fact Sheets to the Defendants" by certain dates); Ex. C, *In re Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*, amended case management order no. 28 at 3 (same).)

Under Lead Counsel's proposal, plaintiffs can be selected for inclusion in the Initial Discovery Pool *before* completing *any* type of Plaintiff Fact Sheet—a concept that is plainly at odds with contemporary MDL procedures. Perhaps equally perplexing is Lead Counsel's proposed unconventional two-tiered approach to the submission of Plaintiff Fact Sheets. They propose almost all of the MDL personal injury and wrongful death plaintiffs submit sparse and inadequate fact sheets—a fact sheet that collects limited information about each plaintiff and his or her claim (the "Short-Form Fact Sheet"). (*See* Lead Counsel's Proposed Short-Form Fact Sheet, Ex. O; *see also* Lead Counsel's proposed order at ¶6.) Lead Counsel then suggest that only the Initial Discovery Pool plaintiffs be required to submit a more comprehensive (and typical) Fact Sheet (the "Standard Fact Sheet") that requests detailed information such as plaintiffs' medical condition and medical expenses; vehicle availability; the circumstances surrounding the alleged ignition switch related accident; and alleged damages. (*See* Defendants' Proposed Fact Sheet, Ex. P; *see also* Lead Counsel's proposed order at ¶5.)

Lead Counsel's two-tiered approach is inconsistent with the purpose of bellwether trials and is unreasonable. As explained below, Lead Counsel and Defendants should each be permitted to select an equal number of bellwether plaintiffs, and it will be necessary for Defendants to review the Standard Fact Sheets to be able to make meaningful selections for the Initial Discovery Pool. In support of their position, Lead Counsel argue that requiring all of the MDL plaintiffs to complete the Standard Fact Sheet before selection as a potential bellwether plaintiff is too time consuming and overly burdensome. Not so. The length of the Standard Fact Sheet and types of questions contained therein are comparable to those used in other MDL proceedings. Notably, Lead Counsel is currently in the process of requesting extensive discovery from Defendants–including serving more than 1,450 document requests on New GM alone. Thus, it is, frankly, hypocritical for Lead Counsel to claim that it is too burdensome for

## KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
October 31, 2014
Page 6

all plaintiffs to provide detailed information about claims **they have opted to bring** in this litigation.

Moreover, under Lead Counsel's two-tiered approach, plaintiffs who fail to become part of the Initial Discovery Pool would *never* complete the Standard Fact Sheets. This is especially problematic because one of the goals of the bellwether process is to enhance the possibility of global resolutions by "providing guidance on how similar claims may fare before subsequent juries." Fallon, *et al*., 82 Tul. L. Rev. at 2338. Without relevant information about the non-bellwether plaintiffs, the parties will not be able to extrapolate the results of the bellwether trials to the MDL proceeding as a whole, thereby stripping the bellwether process of its value.

**C.      Lead Counsel and Defendants Should Have Shared Responsibility for Selecting Plaintiffs for the Initial Discovery Pool.**

Although there are several ways to fill the bellwether discovery pool—random selection, selection by the transferee court, and selection by the attorneys—the latter is highly favored in modern MDL jurisprudence. *See* Fallon, *et al.*, 82 Tul. L. Rev. at 2349 ("allowing the attorneys to fill the trial-selection pool will likely be the best, if not the only feasible option").

While both Lead Counsel and Defendants agree that allowing the attorneys to fill the Initial Discovery Pool is the best option, they disagree on *which* attorneys should make the selections. Lead Counsel want the Court to allow them to select *all* of the plaintiffs for the Initial Discovery Pool, which means all the plaintiffs in the trial pool. *See* Lead Counsel's proposed order at ¶1. But "in permitting only one side to fill the entire [initial discovery] pool, the transferee court opens the door for the inequitable stacking of overtly unfavorable and possibly unrepresentative cases, as well as creating an atmosphere of antagonism." Fallon, *et al*., 82 Tul. L. Rev. at 2350. This would not serve the objective of the bellwether process to enhance the possibility of global resolution.

For this reason, Defendants propose the Court permit each side to choose an equal number of plaintiffs to populate the Initial Discovery Pool, consistent with the substantial weight of MDL authority. For example:

- Ex. B, *In re Actos Prods. Liab. Litig.*, MDL No. 2299, scheduling order at pg. 2 ("[e]ach side will nominate 5 plaintiffs");

- Ex. C, *In re Pradaxa Prods. Liab. Litig.*, MDL No. 2385, amended case management order no. 28 at 6 ("a designee from [each side] shall each exchange lists of eight (8) Plaintiffs");

# KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
October 31, 2014
Page 7

- Ex. D, *See In re Wright Medical Technology, Inc. Conserve Hip Implant Prods. Liab. Litig.*, MDL No. 2329, scheduling order at 2 ("both parties each selected one case per ten (10) categories");

- Ex. E, *In re Hydroxycut Marketing and Sales Practice Litig.*, MDL No. 2087, joint bellwether plan at 2-3 ("[t]he PSC shall pick four (4) 'bellwether cases' . . . The Defendants shall pick four (4) 'bellwether cases'");

- Ex. F, *In re Pelvic Mesh/Gynecare Litig.*, MDL No. 6341-10, initial bellwether scheduling order at 1 ("[e]ach side may select seven (7) cases");

- Ex. G, *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Prods. Liab. Litig.*, MDL No. 2151, order no. 12 at 1 ("[e]ach side may propose up to three personal injury/wrongful death cases");

- Ex. H, *In re Yasmin and Yaz Marketing, Sales Practices and Prods. Liab. Litig.*, MDL No. 2100, amended case management order no. 24 at ¶5 ("[t]welve (12) Plaintiffs will be selected by each side");

- *See* Ex. I, *In re Nuvaring Prods. Liab. Litig.*, 4:08-MDL-1964, defendants' proposed scheduling order at pg. 1 ("[a]s this Court directed, Plaintiffs and Defendants each have selected 13 cases");

- *See* Ex. J, *In re Gadolinium-Based Contrast Agents Prods. Liab. Litig.*, MDL No. 1909, case management order no. 12 at 1 ("The PSC and Defendants collectively shall each strike 5 cases from the opposing parties' 10 Eligible Trial Pool cases");

- Ex. K, *In re Fosamax Prods. Liab. Litig.*, MDL No. 1789, case management order no. 9 at 2 ("each side . . . will send the other and the Court . . . its list of twelve proposed []cases"); and

- Ex. L, *In re Guidant Defibrillators Prods. Liab. Litig.*, MDL No. 05-1708, pretrial order no. 9 at 2 ("Plaintiffs and Defendants will each be allowed to select twenty (20) [] cases").

All of these cases have expressly or impliedly recognized that joint selection of an initial discovery pool maximizes the likelihood that the bellwether trial results are as fair and representative as possible, thereby enhancing the prospect of reaching a global resolution.  Ex. H, *In re Yasmin & Yaz (Drospirenone) Marketing, Sales Practices & Prods. Liab. Litig.*, amended case management order no. 24 at ¶4 ("The Court finds that the process that will provide the best sampling of cases will be one that allows both sides of this litigation to have a role in selecting cases."); *see also In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09-md-2087 BTM (KSC),

KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
October 31, 2014
Page 8

2012 U.S. Dist. LEXIS 118980, at *56 (S.D. Cal. Aug. 21, 2012) ("The bellwether cases should be representative cases that will best produce information regarding value ascertainment for settlement purposes or to answer causation or liability issues common to the universe of plaintiffs."). Here, Lead Counsel and Defendants should each select half of the plaintiffs for inclusion in the Initial Discovery Pool. *See* Ex. A at ¶15.

**D.      The Trial Pool Should Contain a Subset of Cases from the Initial Discovery Pool.**

As United States District Court Judge Eldon Fallon—who presided over the *Vioxx* and *Propulsid* MDLs[3]—notes, courts should be wary of "inadvertently commingl[ing] aspects of the second step (selecting cases to fill the [initial discovery] pool) and third step (selecting cases from the [initial discovery] pool to be tried)." Fallon, *et al.*, 82 Tul. L. Rev. at 2347. Lead Counsel's proposal suffers from this exact problem, as it inappropriately suggests that each and every case in the Pool should proceed to trial. (*See* Lead Counsel's proposed order at ¶¶9-12.)

As a starting point, trying 18 cases is both unnecessary and overly burdensome on the parties and the Court. But more significantly, "a case that appears to be favorable or representative early in the litigation process (when the pool is initially filled) may be eventually determined to be unrepresentative or grossly unfavorable once case-specific discovery is complete." Fallon, e*t al.*, 82 Tul. L. Rev. at 2347. As a result, and consistent with Defendants' proposal, the trial pool should be composed of a subset of cases in the Initial Discovery Pool, with each side being allowed to select an equal number of candidates, as well as to exercise a limited number of vetoes. (*See e.g.*, Ex. H, *In re Yasmin & Yaz (Drospirenone) Marketing, Sales Practices & Prods. Liab. Litig.*, amended case management order no. 24 at ¶ 4 (implementing a veto process "in case advocacy has trumped altruism and both sides have decided to ignore [the court's] efforts at objectivity").)

**E.      The First Bellwether Trial Should Occur in July 2016.**

Lead Counsel and Defendants also disagree on the scheduling of the first bellwether trial and the selection process for subsequent trials. Defendants propose that the first personal injury or wrongful death bellwether trial be held in July 2016. A survey of 10 MDL proceedings from the past decade shows that the average time between the initiation of an MDL proceeding and the first scheduled MDL trial is approximately 31 months.[4] In the *In re Toyota Motor Corp.*

---

[3]      *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657; *In re Propulsid Prods. Liab. Litig.*, MDL No. 1355.

[4]      This is based on data from the following 10 MDL proceedings: MDL No. 2329, *In re Wright Medical Technology, Inc. Conserve Hip Implant Prods. Liab. Litig.*; MDL No. 13-244, *In re Stryker rejuvenate and ABG II Hip Implant Prods. Liab. Litig.*; MDL No. 2385, *In re Pradaxa Prods. Liab. Litig.*; MDL No. 2299, *In re Actos Prods. Liab. Litig.*; MDL No. 2151, *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales*

## KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
October 31, 2014
Page 9

*Unintended Acceleration* proceeding, the first bellwether trial was scheduled 34 months after the MDL was created.  (*See* Ex. M, *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Prods. Liab. Litig.*, MDL No. 2151, order no. 1 (transfer order); *See* Ex. N, *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Prods. Liab. Litig.*, MDL No. 2151, order no. 14 at 2 (first scheduled trial date).)  Here, under Defendants' proposal, the first bellwether trial would occur approximately 25 months from when the Judicial Panel on Multidistrict Litigation created this MDL, almost a year earlier than in *Toyota*. Defendants believe that this period of time is minimally necessary for plaintiffs to complete and submit Plaintiff Fact Sheets, for each side to select plaintiffs for the Initial Discovery Pool, for fact discovery to be completed on the Initial Discovery Pool plaintiffs, and for trial pool candidates to be selected and prepared for trial, including expert discovery.  Defendants' proposal contains various intermediate deadlines and schedules—information that also demonstrates how reasonable, but aggressive, the plan is.  (*See e.g.*, Ex. A at ¶¶26-30.)

In contrast, Lead Counsel contend the first bellwether trial should be set for October 5, 2015, just over 11 months from now.  (*See* Lead Counsel's proposed order at ¶10.)  While Lead Counsel proposes an early date for the first trial, they fail to show how that date would be reasonable or practical given the number of intermediate steps that must be first completed, as set out above.  Simply put, Lead Counsel have set forth an aggressive goal with no real plan to accomplish it.

Finally, Lead Counsel suggest they be permitted to select the first case to be tried, Defendants select the second case, and thereafter the parties will continue to choose their preferred bellwether cases on a rotating basis.  (*See* Lead Counsel's proposed order at ¶¶7-9.) While Defendants do not strongly oppose the use of alternating selections, they believe that a better process is for the Court to select the sequence after fact discovery is completed and expert witness reports have been disclosed.  At that time, the parties can submit letter briefs proposing the order of trials and setting forth the parties' supporting rationale.  (*See* Ex. A at ¶28.)  The Court would then designate the sequence of trials that it deems most appropriate.

---

*Practices, and Prods. Liab. Litig.*; MDL No. 2100, *In re Yasmin and Yaz Marketing, Sales Practices and Prods. Liab.*; 4:08-MDL-1964, *In re Nuvaring Prods. Liab. Litig.*; MDL No. 1909, *In re Gadolinium-Based Contrast Agents Prods. Liab. Litig.*; MDL No. 1789, *In re Fosamax Prods. Liab. Litig.*; and MDL No. 1708, *In re Guidant Defibrillators Prods. Liab. Litig.*

## KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
October 31, 2014
Page 10

### **CONCLUSION**

For all of the foregoing reasons, Defendants respectfully request that the Court enter an Order consistent with the relief requested herein and set forth in the attached proposed order.


Respectfully submitted,



Richard C. Godfrey, P.C.
Andrew B. Bloomer, P.C.

*Counsel for Defendant General Motors LLC*

cc:   Lead Counsel for Plaintiffs
      Counsel of Record for Defendants


To assist the Court in resolving the parties' dispute over which cases should be included in the pool from which cases are selected for bellwether trials, Lead Counsel and counsel for New GM are directed to confer and submit, no later than November 5, 2014, a chart with four columns labeled (1) NHTSA Recall Number; (2) Defect(s); (3) Type and Number of Vehicle(s); and (4) Number of Plaintiffs, and the relevant up-to-date data.  (The data should be subdivided as appropriate -- e.g., the Court should be able to determine how many Plaintiffs there are per vehicle type and defect, even where a recall covered more than one vehicle and/or defect.)  If the relevant data is available without unreasonable effort, the parties should include an additional column indicating the number of cases in each category for which the EDR and vehicle are no longer available versus the number of cases in each category for which the EDR and/or the vehicle are available.

The Clerk of Court is directed to file this endorsed letter in both 14-MD-2543 and 14-MC-2543.

SO ORDERED.

November 3, 2014