# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| IN RE: | ) | MDL NO. 2543 |
| GENERAL MOTORS LLC IGNITION | ) | 1:14-md-2543 (JMF) |
| SWITCH LITIGATION | ) | |
| ——————————————— | ) | HON. JESSE M. FURMAN |
| | ) | |
| THIS DOCUMENT RELATES TO: | ) | Fed. R. Civ. Pro. 41(b); and 42; |
| *Elliott, et al. v.. General Motors LLC, et al.* | ) | Local Rule 6.3; |
| 1:14-cv-8382-JMF | ) | 28 U.S.C. §1407 |
| *Sesay et al. v. General Motors LLC et al.,* | ) | |
| 1:14-cv- 0618-JMF, and | ) | |
| *Bledsoe et al. v. General Motors LLC,* | ) | |
| 1:14-cv-7631-JMF | ) | |
| ——————————————— | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF RECONSIDERATION
## OF ORDER NO. 29 BY THE *ELLIOTT, SESAY,* AND *BLEDSOE* PLAINTIFFS

i

# Table of Contents

I.      INTRODUCTION……………………………………………………1

II.     BACKGROUND………………………………………………….6

   A.   The Broadened Scope of this Multidistrict Proceeding………………...6

   B.   The Claims of Certain Plaintiffs……………………………..………..8

   C.   The Consolidated Complaints…………………………………….12

        1.   The Pre-Sale Consolidated Complaint…………………………...13

        2.   The Post-Sale Consolidated Complaint…………………….......15

   D.   Order No. 29……………………………………………...….…..16

III.    ARGUMENT…………………………………………………………18

        A.   There Are No Grounds for Involuntary
             Dismissal of Plaintiffs' Claims……………………………………18

        B.   The Effect of Master Complaints in
             Multidistrict Proceeding …………………………………….....19

IV.     CONCLUSION……………………………………………………24

# Table of Authorities

## Cases

*In re Activated Carbon-Based Hunting Clothing Mktg. & Sales Practices Litig.*,
840 F. Supp. 2d 1193 (D. Minn. 2012) _____ 2

*In re Bridgestone/Firestone*, 155 F. Supp. 2d at 1078 _____ 21

*In re Conagra Peanut Butter Prods. Liab. Litig.*, 251 F.R.D. 689, 693 (N.D. Ga. 2008) ___ 21

*In re Digitek Prods. Liab. Litig.*, 2009 U.S. Dist. LEXIS 113947 at *8
(S.D. W. Va. Aug. 3, 2009) _____ 23

*In re Ford Motor Company/Citibank (S.D.) N.A.*, 264 F.3d 952, 965
(9th Cir. 2001) _____ 24

*In re Guidant Corp. Implantable Defibrillators Products Liability Litigation*,
489 F. Supp. 2d 932, 935 (D.C. Minn.2007)_ _____ 21

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2014 U.S. Dist. LEXIS 86765 (S.D.N.Y.
June 23, 2014) _____ 24

*In re Katrina Canal Breaches Litig.*, 309 F. App'x 836, 837 (5th Cir. 2009) 20

*In re Light Cigarettes*, 2011 U.S. Dist. LEXIS 142432 *2 (J.P.M.L. 2005)_ _____ 19

*In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 56 (D.N.J. 2009)_____ 23

*In re Motor Fuel Temperature Sales Practices Litig.*, 534 F. Supp. 2d 1214, 1216 and n. 2
(D. Kan. 2008) _____ ____ 21

*In re New England Compounding Pharm., Inc. Prods. Liab. Litig.*, 2014 U.S. Dist.
LEXIS 121062 (D. Mass. Aug29, 2014) _____ 21

*In re NuvaRing Prods. Liab. Litig.*, 2009 U.S. Dist. LEXIS 115711 at *2
(E.D. Mo. Dec. 11, 2009)_____ 22

*In re Orthopedic Bone Screw Prods. Liab. Litig.*, 1997 U.S. Dist. LEXIS 2743 at *2
(E.D. Pa. Mar. 7, 1997) _____ 22

*In re Phenypropanolamine Prods. Liab. Litig.*, 2004 U.S. Dist. LEXIS 18937 at *2
(W.D. Wash. Sept. 3, 2004)_____ 22

*In re Propulsid Products Liability Litig.*, 208 F.R.D. 133, 142 (E.D. La. 2002) _____ 20, 23

*In re Refrigerant Compressors Antitrust Litig.*, 731 F.3d 586, 589 (6th Cir. 2013) _____ 2, 16

*In re Rezulin Products Liability Litigation*, 390 F. Supp. 2d 319, 330 (S.D.N.Y. 2005) 19

*In re San Juan Dupont Plaza Hotel Fire Litig.*, 1988 U.S. Dist. LEXIS 17332 at *84
(D.P.R. Dec. 2, 1988) _____ 21

*In re Storage Tech. Corp. Sec. Litig.*, 630 F. Supp. 1072, 1074 (D. Colo. 1986) _____ 21

*In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices/
and Products Liab. Litig.*, 785 F.Supp.2d 925, 930 (C.D. Cal. 2011) _____ 20, 23

*In re TransTexas Gas Corp.*, 303 F.3d 571, 577 (5th Cir. 2002) _____ 3

*In re Trasylol Prods. Liab. Litig.*, 2009 U.S. Dist. LEXIS 65481 at *8
(S.D. Fla. Mar. 5, 2009) ........................................................................... 22

*In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450 (E.D. La. 2006) ................. 21

*In re Wirebound Boxes Antitrust Litig.*, 128 F.R.D. 256, 258–260 (D. Minn. 1989) ......... 20

*In re Zimmer Nexgen Knee Implant Prods. Liab. Litig.*, 2012 U.S. Dist. LEXIS 117239 at
*18-19 (N.D. Ill. Aug. 16, 2012) ................................................................... 22

*In re: General Motors LLC Ignition Switch Litig.*, _ F. Supp. 2d _, 2014 WL 2616819, at *1
(J.P.M.L. Jun. 9, 2014) ............................................................................... 7

*Armstrong v. LaSalle Bank Nat'l Ass'n*, 552 F.3d 613, 614 (7th Cir. 2009) ......... 19

*Johnson v.Manhattan Ry. Co.*, 289 U.S. 479, 496-97 (1933) ......................... 3, 25

*Katz v. Realty Equities Corp.*, 521 F.2d 1354, 1358 (2d Cir. N.Y. 1975) ......... 3, 25

*Keffer v. Wyeth*, 2011 U.S. Dist. LEXIS 40355 at *3 n.2 (S.D. W. Va. Apr. 13, 2011) ......... 20

*Lexecon v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 39 (1998) ......... 4, 21

*Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 39 (2d Cir. N.Y. 1982) ......... 18

*Lucas v. Miles*, 84 F.3d 532 , 534-35 (2d Cir. 1996) ..................................... 18

*Mem'l Hermann Healthcare Sys. v. State St. Bank & Trust Co.
(In re State St. Bank & Trust Co.)*, 2011 U.S. Dist. LEXIS 29308 (S.D.N.Y. Mar. 22, 2011) ___ 21

*Minette v. Time Warner*, 997 F.3d 1023, 1027 (2d Cir. 1993) ......................... 4

*Mitchell v. Lyons Prof'l Servs., Inc.*, 708 F.3d 463, 467 (2d Cir. 2013) ......... 19

*Road Sprinkler Fitters Local Union v. Continental Sprinkler Co.*, 967 F.2d 145, 149–150
(5th Cir. 1992) ............................................................................................. 23

*Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 358 (2d Cir. 2008) ......... 19

*Truax v. Corrigan*, 257 U.S. 312, 332 (1921) ........................................... 19

*Turner v. Murphy Oil USA, Inc.*, 2005 U.S. Dist. LEXIS 45123 (E.D. La. Dec. 22, 2005) ......... 3

*Wynder v. McMahon*, 360 F.3d 73, 79 (2d Cir. 2004) ................................ 18

## Law Review Articles

Charles Silver, Consolidations and Class Actions, 10 Rev. Litig. 495 ......... 20

Joan Steinman, Reverse Removal, 78 Iowa L. Rev. 1029, 1042 (1993) ......... 20

Roger H. Trangsrud, Joinder Alternatives in Mass Tort Litigation,
70 Cornell L. Rev. 779 (1985) ............................................................... 20

## Treatises

15 CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER,
FEDERAL PRACTICE AND PROCEDURE
§ 3866 ........................................................................................... 21

DAVID F. HERR, ANNOTATED MANUAL FOR COMPLEX LITIGATION
§ 20.132 (4th ed. 2010) ..................................................................... 21

MOORE'S FEDERAL PRACTICE (2010) §42.13 _____ 19

**Statutes and Rules**

28 U.S.C. § 1407 _____ 4, 5, 6, 13

Fed. Rule. Civ. Pro. 41(b) _____ _____ 4, 18, 19

Fed. Rule. Civ. Pro. 42(a)_____ 19, 20

## I.      INTRODUCTION

Order No. 29[1] dismisses every economic loss claim of every Plaintiff whose lawsuit has been consolidated in these proceedings but who is not named in the Consolidated Complaints, unless "good cause" for reinstatement is presented.

Celestine Elliott, Lawrence Elliott, Berenice Summerville,[2] Ishmail Sesay, Joanne Yearwood,[3] Sharon Bledsoe, Cina Farmer, Paul Fordham, Momoh Kanu, Tynesia Mitchell, Dierra Thomas, and James Tibbs[4] ("Certain Plaintiffs"), Plaintiffs in the above-captioned actions who allege economic loss and property damage and who are not named in either of the Consolidated Complaints submitted at the Court's direction by Lead Counsel,[5] respectfully request that the Court reconsider and rescind Order No. 29, fully reinstate Plaintiffs' claims as set forth in their non-consolidated complaints, and consider and adopt one of the procedures that sister transferee courts have used to avoid duplicative litigation of common pretrial issues.[6] Alternatively, pursuant to Order No. 29, Certain Plaintiffs object to the dismissal of their distinct claims, not duplicative of those asserted in the Consolidated Complaints, on the ground that their claims are well taken in law and fact and, pursuant the Orders of the Judicial Panel on Multidistrict Litigation, the Court is obliged either to entertain them here or--if the Court determines they are no longer appropriate for consolidation for pretrial purposes--to suggest that

---

[1] Order Regarding the Effect of the Consolidated Complaints, 1:14-mc-02543, Doc. No. 83 (December 18, 2014) ("Order No. 29")
[2] Mr. and Mrs. Elliott and Ms. Summerville are named Plaintiffs in *Elliott et al. v. General Motors LLC, et al.*, 14-cv-8382 (JMF).
[3] Mr. Sesay and Ms. Yearwood are named Plaintiffs in *Sesay et al. v. General Motors LLC et al,* 1:14-cv-0618 (JMF).
[4] Mrs. Fordham, Kanu, and Tibbs and Mss. Bledsoe, Farmer, Mitchell and Yearwood, along with Mr. and Mrs. Elliott, are among the named Plaintiffs in *Bledsoe et al. v. General Motors LLC*, 1:14-cv-7631 (JMF).
[5] One Consolidated Complaint is brought by and on behalf of 63 purchasers of GM vehicles prior to the purchase of Old GM's assets by New GM. Doc. No 347, 1:14-md-2543 ("the Pre-Sale Consolidated Complaint"); the other is brought by and on behalf of 68 post-asset sale purchasers. Doc. No. 345 ("the Post-Sale Consolidated Complaint")
[6] Plaintiffs' Co-Lead Counsel authorized Certain Plaintiffs to proceed with this motion pursuant to Order No. 13, I (A) (14).

the Panel remand them to their transferor courts. They file Objections contemporaneously with their motion for reconsideration.

There is no legal basis for the involuntary dismissal of Plaintiffs' claims upon the filing of consolidated complaints in which they are not named as parties. As explained more fully below, the filing of a consolidated complaint can only become the "operative" complaint for those named in it. By joining a consolidated pleading, the *named parties* may thereby consent to an amendment of *their* original pleadings, and accordingly their joint filing of a consolidated complaint can be said to "supersede" their earlier pleadings--just as would be the case for any party amending earlier pleadings. *See In re Refrigerant Compressors Antitrust Litig.*, 731 F.3d 586, 589 (6th Cir. 2013.[7]

Typically, in multidistrict litigation, transferee courts order lead counsel to prepare consolidated pleadings on behalf of *all* parties to the consolidated proceedings. In Order No. 8, the Court directed Lead Counsel to prepare consolidated complaints "with respect to *all* claims alleging economic loss." (*emphasis added*) Lead Counsel nevertheless submitted Consolidated Complaints joining only a small percentage of parties named in the economic loss lawsuits consolidated in this multidistrict litigation--predominantly leadership's own clients--and, when GM objected to any reservation of claims, Lead Counsel agreed with GM that the claims of all those not named should simply be dismissed.[8]

Lead Counsel's decision not to include the claims of Certain Plaintiffs and hundreds of other economic loss plaintiffs prevents the Consolidated Complaints from having the effect of superseding *all* underlying complaints or rendering them a nullity. Whatever the effect of the

---

[7] Even in those circumstances, the underlying complaints of those who are named in and join the Consolidated Complaint cannot become a nullity—at least in multidistrict consolidations under sec. 1407-- because they establish the bases for application of choice of law rules. *See* p. 24, *infra*.

[8] Order No. 5, I(A) at 3 charges "Co-Lead Counsel …with acting for the benefit of *all* plaintiffs." (*emphasis added*)

Consolidated Complaints on the prior pleadings of those who *are* named in and join the consolidated pleadings--and, as discussed below, there is conflicting authority on *that* issue--the Consolidated Complaints simply cannot become the operative pleadings for Plaintiffs who are not named in them. Certain Plaintiffs' pleadings are not amended or superseded, even implicitly, by the filing of a new complaint *by other parties*. The Consolidated Complaints may become the operative pleadings for *all* economic loss claims only if they were amended to name every Plaintiff and to assert every plausible claim brought by each of them in their underlying lawsuits.[9]

It is a bedrock principle of the law of consolidation that the procedure cannot work to affect the substantive rights of the parties, nor to merge their separate lawsuits into a single action. "It is axiomatic that consolidation is a procedural device designed to promote judicial economy and that consolidation cannot affect a physical merger of the actions or the defenses of the separate parties." *Katz v. Realty Equities Corp.*, 521 F.2d 1354, 1358 (2d Cir. N.Y. 1975) (*citations omitted*). "[C]onsolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another." *Johnson v.Manhattan Ry. Co.*, 289 U.S. 479, 496-97 (1933). "Consolidated actions retain their separate character." *In re TransTexas Gas Corp.,* 303 F.3d 571, 577 (5th Cir. 2002). Even as to parties named in a consolidated pleading, "the master complaint does not supersede the underlying cases in such a way as to render them non-existent." *Turner v. Murphy Oil USA, Inc.*, 2005 U.S. Dist. LEXIS 45123 (E.D. La. Dec. 22, 2005) (Fallon, J.)

---

[9] Certain Plaintiffs do *not* suggest that such a procedure would be appropriate here, given the variety of distinct safety hazards and legal theories asserted by Plaintiffs in the underlying lawsuits. *See* pp. 22-23, *supra*.

The fact that Plaintiffs' claims have been dismissed "without prejudice" should not obscure the significance of the dismissal. Order No. 29 provides that the eventual effect of the present "dismissal without prejudice" will be a "dismissal with prejudice" for any parties or claims that Lead Counsel ultimately decide not to include in amendments to the Consolidated Complaints to be made by June 4, 2014. Moreover, Order No. 29 accords Certain Plaintiffs no further opportunity to object to such unilateral determinations of Lead Counsel posing such drastic consequences for Plaintiffs' claims. Plaintiffs' fundamental due process rights to seek relief in a court of law for the wrongs they allege may not be subject to the discretion of fellow Plaintiffs' counsel in this fashion, particularly in light of the fact that no class has been certified or may ever be certified in this action.

The Court has discretion regarding involuntary dismissal under Fed. Rule. Civ. Pro. 41(b), but the wholesale and indiscriminate dismissal of the claims of parties not named in the Consolidated Complaints is groundless. "[Involuntary] dismissal is a harsh remedy to be utilized only in extreme situations," *Minette v. Time Warner*, 997 F.3d 1023, 1027 (2d Cir. 1993) (*internal quotations omitted*). The remedy is available to federal courts as a sanction for those who have failed to prosecute their claims or who have violated court orders. *Id*. Certain Plaintiffs have committed no wrongdoing or default that warrants involuntary dismissal under Rule 41(b).

The dismissal of lawsuits consolidated here by Order of the Judicial Panel on Multidistrict Litigation ("JPML" or "the Panel") is also inconsistent with the Court's obligations as a transferee court in a multidistrict proceeding to conduct pretrial proceedings and then to remand cases back to transferor courts for ultimate disposition, *see* 28 U.S.C. § 1407(a); *Lexecon v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 39 (1998).

The JPML has enlarged the terms of its original consolidation and transfer order to include economic loss and personal injury lawsuits alleging a wide range of safety hazards beyond the ignition switch hazards that first gave rise to these proceedings and that are the primary focus of the Consolidated Complaints. Because Certain Plaintiffs allege that New GM is liable for their economic losses due to New GM's failure to disclose various *non*-ignition switch safety hazards, many of their claims differ *factually* from those that others assert in this proceeding. In addition, because they have taken special care to assert no claims in connection with *purchases*, their claims may stand on a different *legal* footing regarding the 2009 Sale Order under which New GM now asserts protection for all pre-petition vehicles, whenever purchased, from suit in bankruptcy proceedings--and regarding the bases of New GM's duty to disclose and eventual class certification--than the legal claims that other Plaintiffs base on their reliance on misrepresentations or omissions regarding safety when purchasing, and paying too much for, their vehicles.

Because Certain Plaintiffs allege that New GM's concealment or minimization of these non-ignition switch hazards was due to the same or similar pattern of corporate misconduct underlying New GM's concealment of the ignition switch hazard, the JPML has determined that, while not asserting identical or even parallel legal or factual claims, such economic loss lawsuits have sufficient common issues with the ignition switch lawsuits so that consolidation for pre-trial purposes is warranted under §1407. Dismissal of such claims because Lead Counsel chose not to assert them as part of consolidated pleadings designed to bring together the *common* issues of underlying lawsuits would be inconsistent with rulings of the JPML transferring actions, including the *Elliott* lawsuit, with explicit recognition that plaintiffs were asserting distinct

factual and legal claims, albeit presenting *common* issues regarding New GM's practices with respect to safety issues generally.

## II.      BACKGROUND

### A.      The Broadened Scope of this Multidistrict Proceeding

Starting in February 2014, and in piecemeal fashion thereafter, General Motors LLC (hereafter "New GM" or "GM") has publicly admitted that New GM employees and lawyers knew about safety-related defects in millions of vehicles, including Plaintiffs' cars, and that GM did not disclose those defects as it was required to do by law. GM's recent crisis began with its admission that it had concealed an ignition switch defect in some 1.6 million vehicles, a defect, causing death or serious injury to hundreds of victims while GM knew but failed to disclose its danger. Since purporting to come clean about its wrongdoing, New GM has been forced to admit that its misconduct was far more widespread than its initial confession in February 2014 revealed. New GM has since issued expanded recalls for more and more vehicles that present the same or related ignition-related dangers. New GM has also issued new or expanded prior, geographically restricted recalls for a wide range of other safety hazards that Plaintiffs' vehicles and others present and that GM had concealed or minimized, some 28 million vehicles and thirty-five safety related defects since February 2014 and counting, a boggling tally of corporate irresponsibility, and a frighteningly sharp reflection of how widespread New GM's reckless endangerment of the Plaintiffs and the public, in America and abroad, has been. Certain Plaintiffs, owners of vehicles that possess or possessed a wide range of safety hazards that New GM failed to disclose, seek redress for New GM's wrongdoing.[10]

On June 9, 2014, the JPML granted the petitions of GM and several groups of Plaintiffs for consolidation and transfer pursuant to §1407 of lawsuits alleging economic loss related to the

---

[10] *Bledsoe* Complaint, p. 2.

ignition switch defect. The Panel's initial Consolidation and Transfer Order defined the scope of the consolidation exclusively in terms of economic loss claims relating to the ignition switch hazard: Each transferred action "asserts economic damages on behalf of certain classes and/or individuals stemming from an alleged defect in certain General Motors vehicles that causes the vehicle's *ignition switch* to move unintentionally from the 'run' position to the 'accessory' or 'off' position." *See In re: General Motors LLC Ignition Switch Litig.*, _ F. Supp. 2d _, 2014 WL 2616819, at *1 (J.P.M.L. Jun. 9, 2014) (*emphasis added*).

The JPML initially excluded non-ignition switch related claims from this proceeding. *See, e.g.*, Conditional Transfer Order 2 and Simultaneous Separation and Remand of Certain Claims, Doc. No. 49, 1:14-md-2543 (transferring ignition switch claims but separating and remanding claims related to an alleged *axle shaft fracture* hazard).

On July 16, 2014, the JPML granted GM's unopposed motion to transfer to and consolidate with this proceeding *Andrews* v. *General Motors LLC*, 1:14-cv-05351-JMF, an action alleging that New GM's concealment and belated recalls of ignition switch and some *thirty-five non-ignition switch related* safety hazards had degraded the GM brand, entitling post-Sale purchasers of *any* GM vehicle—hazardous or not—to relief, *see* CTO-5, Doc. No. 19, 1:14-cv-0531-JMF.

Since its action in *Andrews*, the Panel has changed course and rejected further requests to separate and remand non-ignition switch claims. For example, the JPML rejected the *Elliott* Plaintiffs' request for separation and remand of their *fuel pump* hazard claim:

> While our initial intent was to limit MDL No. 2543 to cases alleging only an ignition switch defect, several actions have been brought with similar general claims that inhibit separation of claims. Given that discovery and pretrial proceedings likely will overlap concerning the ignition switch defect and general allegations that General Motors concealed safety defects, we are persuaded that transfer of all plaintiffs' claims will promote efficiencies in this action and in MDL 2543.

Transfer Order, Doc. No. 356, 1:14-md-2543. The Panel also noted the expansion of this proceeding to include personal injury and property damage claims in addition to economic loss claims. *Id.*[11]

### B. The Claims of Certain Plaintiffs

Except for their allegations of distinct safety hazards in their vehicles, the allegations of Certain Plaintiffs are virtually identical. Each allege that New GM knew but failed to disclose that their vehicles contained safety hazards putting Certain Plaintiffs and others at imminent risk of death or serious bodily injury.[12] Each allege that they have been injured by the diminution in the value of their vehicles they own, the loss of full use of their vehicles, and the increased risk of death or serious bodily injury they suffered.[13] Each explicitly disclaims any reliance on any derivative or successor liability of Old GM,[14] and each asserts claims (and seeks to represent others owning the dangerous vehicles since New GM's inception), solely and exclusively for breaches of independent, non-derivative duties New GM owed to them, causing them legally cognizable injury. Certain Plaintiffs also do *not* allege that they *relied* on GM's representations regarding its vehicles in connection with any purchase decision. Except for Ms. Summerville and Ms. Yearwood, who purchased new GM cars after New GM purchased the assets of Old GM, Certain Plaintiffs make no claims whatsoever in connection with their purchases, *i.e.*, they do not

---

[11] *See also Phillips* Transfer Order, Doc. No. 357, 1:14-md-2543 (repeating quoted language in transferring for consolidation claims for fraud and emotional distress based on non-disclosure of *steering hazard* in settlement of wrongful death claims, noting that the Plaintiff was unwilling to stipulate that no discovery regarding GM's mishandling of the *ignition switch* hazard would be sought)

[12] *Elliott et al. v. General Motors LLC et al.,* First Amended Complaint, 1:14-cv-8382, Doc. No. 15, at ¶¶ 2-11, 20-36, 57-63 ("*Elliott* FAC"); *Sesay et al. v. General Motors LLC et al.,* First Amended Complaint, 1:14-md-2543, Doc. No. 275, at ¶¶ 3-30, 39-56, [57-67, 71-74, 81-83, 88] ("*Sesay* FAC") ([] indicates non-consecutive number ordering); *Bledsoe et al. v. General Motors LLC,* Complaint, 1:14-cv-07631, Doc. No. 2, at *at* ¶¶14-83, 94-97, 104-05, 113, 117 ("*Bledsoe* Complaint").

[13] *Elliot* FAC Complaint, *at* ¶¶63, 68, 83-85, 101; *Sesay* FAC at *at* ¶¶ 26, 30c, 45, 67, 75, 81; *Bledsoe* Complaint *at* ¶¶15, 98, 104.

[14] *Elliot* FAC Complaint, *at* ¶15; *Sesay* FAC at *at* ¶34; *Bledsoe* Complaint at ¶11.

seek relief for having "paid too much" in reliance on any misrepresentations or omissions concerning safety.

Certain Plaintiffs each assert that New GM's duty to disclose safety-related hazards rested on its duties as an automobile manufacturer under the TREAD Act; on the common law of Maryland, the District of Columbia, and every other jurisdiction that requires a party with unique knowledge not accessible to others that another faces imminent risk of death or serious bodily injury to disclose that fact; and on Maryland and District of Columbia consumer protection laws containing identical provisions rendering New GM liable for injuries caused by any "failure to disclose a material fact," with no requirement that such material omission relate to a specific commercial transaction.[15]

The *Elliott* Plaintiffs allege that New GM knew since its inception but failed to disclose *ignition switch* and *fuel pump* hazards in their Chevrolet Cobalts.[16] Ms. Summerville, a post-petition purchaser of a new GM car, also asserts distinct claims based on an implied warranty of merchantability against New GM on behalf of herself and a subclass of post-petition purchasers.[17] Their complaint alleges eight causes of action on behalf of the Plaintiffs and putative class members.[18] It seeks compensatory damages, punitive damages, treble damages, the

---

[15] *Elliot* FAC Complaint, *at* ¶¶ ; *Sesay* FAC at *at* ¶¶ ; *Bledsoe* Cpmplaint *at* ¶¶

[16] Celestine and Lawrence Elliott ("the Elliotts") are joint owners of a 2006 Chevrolet Cobalt which they purchased new in 2006 from a now-defunct dealership in Washington, D.C. Berenice Summerville is the owner of a 2010 Chevrolet Cobalt that she purchased new in December 2009 from a Chevrolet dealership in Maryland.

[17] *Elliott* FAC ¶¶5, 93-113.

[18] The *Elliott* FAC seeks recovery: 1) for violations of the Racketeering Influenced Corrupt organizations Act, ("RICO") related to the concealment and cover-up of risks that driving GM vehicles entailed for Plaintiffs and a nationwide class of pre- and post-petition purchasers; 2) for common law fraud under the common law of the several states based on New GM's failure to disclose risks of death or serious bodily injury on behalf of Plaintiffs and a nationwide class of pre-and post-petition purchasers; 3) for common law fraud under the common law of the several states based on New GM's failure to disclose risk of death or serious bodily injury on behalf of Ms. Summerville and a nationwide class of post-petition purchasers; 4) for negligent infliction of increased risk and economic loss under the common law of the District of Columbia, Florida, Maryland, Ohio, and New Jersey, on behalf of Plaintiffs and a subclass of consumers in those states; 5) for violations of the District of Columbia Consumer Protection Procedures Act, brought by Mr. and Mrs. Elliott as a representative and class action on behalf of residents of the District; 6) for violations of the Maryland Consumer Protection Act, on behalf of Ms. Summerville and a subclass of

certification of a nationwide and various subclasses, and, on behalf of the residents of the District of Columbia, statutory damages and broad injunctive relief, available to Plaintiffs acting in a representative capacity under the private attorney general provisions of the District's consumer protection law, to prevent New GM from continuing practices that endanger the public safety of residents of, and commuters and other visitors to, the District.[19]

The two *Sesay* Plaintiffs are each post-petition purchasers. In December 2012, Mr. Sesay bought a used pre-petition car that contained an "*ignition key*" hazard posing imminent risk of death or serious bodily injury, one that GM allegedly knew about since its inception but failed to disclose until it issued a recall in July 2014. In April 2010, Ms. Yearwood purchased a new post-petition car possessing *ignition switch* and *power steering failure* hazards posing imminent risk of death or serious bodily injury hazards that New GM's allegedly knew about since its inception but failed to disclose until it issued a recall for the defects in February and March 2014, respectively. The *Sesay* Plaintiffs are Maryland residents. Except for claims in the *Elliott* action arising under District of Columbia law, they allege the same causes of action and seek the same relief.

The *Bledsoe* Plaintiffs[20] allege economic loss for pre- and post- petition purchasers of new and used cars made by Old GM. The Elliotts, who purchased their 2006 Chevrolet Trailblazer new in 2006, allege that it contained a *master power door module switch* hazard that New GM knew about since August 2012 but failed to disclose until issuing a recall for the defect

---

Maryland residents; 7) for breaches of the implied warranty of merchantability, on behalf of Ms. Summerville and a multi-state subclass of post-petition purchasers residing in the thirty-one jurisdictions that do not require privity between a manufacturer and consumer with respect to enforcement of such warranty; and 8) an omnibus count for joint liability alleging joint action and civil conspiracy. *Elliott* FAC ¶12.

[19] *Elliott* FAC ¶¶52-53.

[20] In addition to their economic loss claims for the hazardous vehicles they still own, Plaintiffs Sharon Bledsoe and Cina Farmer allege personal injury and accordingly their claims are not subject to Order No. 29.

in July 2014.[21] Ms. Bledsoe purchased a new 2006 Chevrolet Cobalt in 2007 with an *ignition switch* hazard that she alleges GM knew about since its inception but failed to disclose until February 2014.[22] Mss. Farmer, Mitchell and Thomas, who purchased used vehicles post-petition, allege that New GM knew since its inception but failed to disclose *ignition switch* hazards in their vehicles.[23] Mssrs. Kanu and Tibbs are post-petition purchasers of used cars manufactured by Old GM. They allege that since its inception New GM knew but failed to disclose *ignition key* hazards in their cars until GM issued recalls in June and July 2014.[24] Mr. Fordham is also a post-petition purchaser of a used vehicle manufactured by Old GM. He alleges that New GM knew since its inception but failed to disclose *power steering* hazards in his car until GM issued recalls for them in March and July 2014.[25] Mr. Fordham also alleges that New GM knew since May 2011 that his vehicle presented a *risk of transmission cable fracture* but that New GM failed to disclose the hazard until it issued a recall in April 2014.[26] Mr. Fordham also alleges that his car had a *brake light defect* that New GM knew about since its inception but failed to disclose until New GM issued a recall for the defect in May 2014.[27] They allege that each of these hazards posed an imminent risk of death or serious bodily injury. *Id.*

The *Bledsoe* Plaintiffs assert causes of action for common law fraud, for violations of the Maryland and District of Columbia consumer protection statutes, and an omnibus civil conspiracy, joint action, and aiding and abetting count. They seek compensatory damages, punitive damages, statutory damages, and the same injunctive relief under District law as the *Elliott* Plaintiffs.[28]

---

[21] *Bledsoe* Complaint, ¶¶73-83.
[22] *Id.* ¶¶3,43-49.
[23] *Id.* ¶¶43-49.
[24] *Id.* ¶¶50-67.
[25] *Id.* ¶¶68-69.
[26] *Id.* ¶70.
[27] *Id.* ¶¶71-72.
[28] *Id.* pp. 33-35.

As noted above, the *Elliott* action was transferred to this Court by the JPML on October 15, 2014, over the objections of Plaintiffs that their non-ignition switch related claims should be separated and remanded to the District for the District of Columbia. The *Sesay* and *Bledsoe* actions were directly filed in this District and accepted as related to these multidistrict proceedings by the Court.

### C.    The Consolidated Complaints

In Order No. 7, the Court stated:

> Lead Counsel should file a consolidated or master complaint with respect to the economic loss claims and cases… Lead Counsel should — review all existing complaints and file a consolidated or master complaint with claims on behalf of the class or classes, as appropriate. After doing so, any counsel who believed that their claims should have been included, but were not, would have an opportunity to object.

The Court explained that such a procedure would "streamline and clarify the claims and help eliminate those that are duplicative, obsolete, or unreflective of developing facts or current law. That would not only help advance this litigation, but would also presumably facilitate litigation of the issues currently pending before the Bankruptcy Court."[29] In Order No. 8, the Court set deadlines for Lead Counsel to submit, after circulation to all Plaintiffs for comments, a Consolidated Complaint "with respect to all claims alleging economic loss," and the Court provided a procedure for any Plaintiff seeking to object to the Consolidated Complaint.

On October 15, 2014, after circulation to Plaintiffs, Lead Counsel submitted the Pre-Sale and Post-Sale Consolidated Complaints. No party objected.[30]

### 1.    The Pre-Sale Consolidated Complaint

---

[29] Order No. 7 at 7.

[30] Certain Plaintiffs understood that Lead Counsel were selecting which Plaintiffs to name in the Consolidated proceedings solely on the basis of Lead Counsel's evaluation of their fitness to serve as class representatives. Pursuant to the Court's Order, Certain Plaintiffs made comments and suggestions to Lead Counsel with respect to the draft Consolidated Complaints. Certain Plaintiffs had no reason to think that their failure to object to pleadings that did not purport to affect their rights would lead to the dismissal of their claims if they did not object. The Court adverted to the likelihood that Plaintiffs' counsel did not have notice that their claims may be dismissed. *See* notes 12 and 13, *supra*.

According to its terms, the Pre-Sale Consolidated Complaint "is intended to serve as the Plaintiffs' Master Class Action Complaint for purposes of discovery, pre-trial motions and rulings (including for choice of law rulings relevant to Rule 23 of the Federal Rules of Civil Procedure, and class certification itself), and the determination and trial of certified claims or common questions in these multi-district litigation ("MDL") proceedings with respect to millions of vehicles recalled by New GM, that were originally sold by Old GM." ¶1. The Pre-Sale Consolidated Complaint

> neither waives nor dismisses any claims for relief… not included in this pleading that are asserted by any other plaintiffs in actions that have been or will be made part of this MDL proceeding, except by operation of the class notice and any opt-out provisions on claims or common questions asserted in this Complaint and certified by this Court. Certain claims for certain parties may, consistent with 28 U.S.C.§ 1407 and the caselaw thereunder, be matters for determination on remand by transferor courts. ¶5.

The Pre-Sale Consolidated Complaint names 63 Plaintiffs from various States, including Maryland, but it names no Plaintiff from the District of Columbia. ¶¶30-95. It names New GM as a sole defendant. ¶96. *It is concerned exclusively with "ignition-switch related defects."* ¶¶2,12-18, 104-375. It makes claims based on breaches of New GM's "independent, non-derivative duties" as well as based on New GM's liability "as a successor and mere continuation of Old GM." ¶3. It alleges that Old and New GM knew about but failed to disclose, and actively concealed, the ignition switch issues in millions of GM cars. ¶¶97-375, 472-529. It alleges that Old and New GM represented their cars as safe to consumers, ¶¶376-471.

The Pre-Sale Consolidated Complaint describes other defects for which GM has recently issued recalls, including detailed allegations regarding the *power steering*, *brake light*, and other non-ignition switch hazards that Certain Plaintiffs and others allege, and a bullet reference to an "*electrical short in driver's door module defect*," presumably referring to the same hazard that the Elliotts' Trailblazer presents, although no detail regarding the hazard is provided. ¶¶530-48,

552-752. No reference is made to the *fuel pump* hazard that the *Elliott* Plaintiffs allege. The Pre-Sale Consolidated Complaint alleges classes and subclasses exclusively made up of consumers with vehicles containing an "*ignition-switch related*" defect. *See*, *e.g.*, ¶¶854 869, 878.

The Pre-Sale Consolidated Complaint alleges that Plaintiffs have suffered harm in having overpaid for the vehicles due to Old GM's wrongdoing, ¶756, 861, 878-81, in "being stuck with vehicles that are worth less," ¶757, and in exposure to continued risk because of New GM's inadequate remediation efforts. The Pre-Sale Consolidated Complaint alleges that New GM had a duty to disclose the ignition switch related hazards based on liabilities it assumed under the TREAD Act, based on the law of fraudulent concealment, based on state consumer legislation, and, for selected states, based on common law negligence. ¶770. The Pre-Sale Consolidated Complaint asserts claims under the Magnuson-Moss Act; Michigan implied warranty law; Michigan or individual states' fraudulent concealment and unjust enrichment law; and under the consumer protection legislation and common law of each of the States and the District of Columbia.The Pre-Sale Consolidated Complaint makes no reference to representative action rights to relief under D.C. law.

### 2.   *The Post-Sale Consolidated Complaint*

The Post-Sale Consolidated Complaint largely tracks the allegations in *Andrews*. As noted above, *Andrews* advances a novel "brand degradation" claim, namely that the *combination* of so many disclosures of safety related defects that New GM had failed to disclose for so long has degraded the GM brand, diminishing the value of *all* GM vehicles--whether hazardous or not—and entitling *purchasers* who relied on the GM brand and GM representations and omissions concerning safety when they bought their cars to relief for having paid too much. The claim is brought on behalf of nationwide and, alternatively, state classes of post-petition

purchasers of GM vehicles. ¶21. The Post-Sale Consolidated complaint defines national and state subclasses of GM purchasers whose cars present the *ignition switch* related defects. ¶¶850, 853. As in *Andrews*, the Post-Sale Complaint describes many non-ignition switch related hazards that GM vehicles possess but it asserts no claims for owners of such vehicles differentiated from those asserted on behalf of all purchasers of GM vehicles generally. Like the Pre-Sale Consolidated Complaint, the Post-Sale pleading contains extensive allegations regarding alleged misrepresentations regarding safety made by New GM. It alleged that Plaintiffs were injured because they paid less or would not have purchased their vehicles but for GM's wrongdoing, and their vehicles have diminished value. ¶¶874-75, 881, 899.

The Post-Sale Consolidated Complaint utilizes the same prefatory language regarding the purposes of the pleading and the reservation of claims as the Pre-Sale version. *Id*. at 1. It names 66 consumers and two GM dealerships as Plaintiffs. It asserts Counts for fraudulent concealment under Michigan law or alternatively the parallel laws of all jurisdictions; for unjust enrichment under Michigan law or alternatively the law of each jurisdiction; under the Magnuson-Moss Act on behalf of purchasers of cars containing the defective *ignition switch*; under the Michigan law of implied warranty of merchantability on behalf of purchasers of cars containing the defective *ignition switch*; and negligence under the law of identified States (including Maryland) on behalf of purchasers of cars with *ignition switch* related defects The Post-Sale Complaint proceeds to allege various parallel claims under the laws of each State and the District of Columbia, for violations of state consumer protection legislation, common law of fraudulent concealment, and implied warranty law. The allegations for residents of the District of Columbia and Maryland under consumer protection legislation and for fraudulent concealment are asserted on behalf of all purchasers of any GM vehicles, and no distinct allegations are made for those who own the

15

hazardous cars in particular. ¶¶1315-1353, 1833-67. Implied warranty claims are asserted for purchasers of vehicles with *ignition switch* hazards only. ¶¶1355, 1869.

### D.    Order No. 29

On November 1, 2014, in the joint agenda letter submitted by GM and Lead Counsel, New GM objected to the "reservation of claims" asserted in each of the Consolidated Complaints.[31] On November 3, 2014, the Court directed that counsel for GM and Plaintiffs' Lead Counsel be prepared to discuss at the then-upcoming status hearing

> the effect of the consolidated class action complaints on the underlying economic loss complaints --- namely, whether and to what extent the consolidated class action complaints should be treated as the operative pleadings superseding any prior individual complaints or as an "administrative summary." *See generally In re Refrigerant Compressors Antitrust Litig*, 731 F.3d 586 (6th Cir. 2013).

Memo Endorsement, Doc No. 381, 1:14-md-02543 (Nov. 3, 2014).

At the November 6, 2014, hearing, the Court adverted to "some ambiguity…whether [the Consolidated Complaints] essentially supersede the individual complaints…as would be the case in ordinary litigation with an amended complaint, or in essence it's some sort of administrative role more specific to the MDL context."[32] Lead Counsel agreed with GM that "the complaints that are not in the consolidated complaint would be deemed dismissed without prejudice."[33]

---

[31] Doc. No. 376 at 4.

[32] Transcript of November 6, 2014, Status Hearing, at 106.

[33] *Id.* at 107.

The Court expressed concern with the need for other Plaintiffs' counsel to be heard on the issue of the effect of the Consolidated Complaints on the underlying actions:

THE COURT: Is this an issue on which I need to give an opportunity to be heard to the other plaintiffs' lawyers in the pool, which is to say, to the extent that you, as lead counsel, either in conjunction with them or not, made a decision to leave out claims that other lawyers had been pressing, *their interests may not be aligned with yours in terms of whether their complaints are a legal nullity*.

Mr. Berman: …We didn't give notice that their complaints would be deemed dismiss without prejudice.

THE COURT: My concern is that, to the extent that I wasn't aware of this ambiguity in the MDL world before, and we didn't make it clear *ex ante* what effect the filing of these complaints would have on the individual complaints, that maybe the need to object wasn't perceived quite as much as it might have been if they had understood their complaints would be rendered a nullity…. I do think it would be prudent to allow other lawyers to opine and be heard on this or make their objections known before I come out one way or another on this. Why don't you do this and we'll discuss it again at the December status hearing…

16

GM's counsel expressed concern that New GM not be faced with a "moving target… It doesn't make sense to have series of complaints where it's a moving target all the time." .[34]

Order No. 29 is addressed to "the effect of the two Consolidated Complaints … on the claims of plaintiffs in economic loss complaints *who are not named as plaintiffs* in those consolidated pleadings…." (*emphasis added*).  It provides:

> In order to avoid any ambiguity, by this order the Court confirms the status of any economic loss claims not included in the Consolidated Complaints. It is therefore ordered that any economic loss allegations, claims, and defendant(s) not included in the Consolidated Complaints are hereby dismissed without prejudice (1) upon the effective date of this Order for complaints already transferred to or filed in MDL 2543…For any claims dismissed pursuant to the preceding sentence, the statute of limitations shall be tolled from the date of dismissal to June 4, 2015. If any plaintiff whose claims are dismissed pursuant to this paragraph objects to dismissal of his or her allegations, claims, or any defendant(s) not named in the Consolidated Complaints, then such plaintiff may seek leave with the Court to reinstate his or her allegations or claims or the addition of such dismissed defendant(s) upon a showing of good cause within 14 days of the dismissal without prejudice. …
>
> Any claims and defendant(s) that are dismissed without prejudice and reinstated pursuant to the preceding paragraph, but which are not included in any amendment of the Consolidated Complaints filed by June 4, 2015, shall be deemed dismissed with prejudice as of the later of (a) June 4, 2015 or (b) 90 days following the date the complaint is transferred to or filed in MDL 2543.

---

*Id.* at 108-09 (*emphasis added*).

[34] GM and Lead Counsel appear to have jointly submitted a redlined proposed Order No. 29 prior to the December hearing, but the document was not docketed or made generally available to other Plaintiffs' counsel. On December 18, 2014, the Court signed and entered Order No. 29. This motion for reconsideration is first opportunity Certain Plaintiffs to be heard on question of the effect of the filing of the consolidated complaint, the subject of Order No. 29. The Court has recognized that fairness requires that Plaintiffs have an opportunity to be heard with respect to the effect of the Consolidated Complaints:

> [T]o be candid, I think all of us were either blind to or ignorant of the ambiguities of the law, what the effects of the consolidated complaint were, which is issue I raised at the last conference, but it is proper for this discussion. It may well be, or I don't want to foreclose the possibility that lawyers refrain from making objections when the complaints were filed in the first instance because of some understanding that their claims would survive in some fashion and be revived down the road, and the consolidated complaints were in essence just a mechanism, convenient mechanism to adjudicate the big pictures in the case; which is to say, I don't think it is fair they're been estopped from raising those issues now, and that is precisely why I raised this issue, although belated in the sense it wasn't raised before the first time we dealt with this, better to deal with it now than down the road.

Transcript of December 15, 2014, Status Hearing at 24.

## III.    ARGUMENT

### A.    There Are No Grounds for Involuntary Dismissal of Plaintiffs' Claims

Certain Plaintiffs have not and do not consent to the dismissal of their claims.

Involuntary dismissal is governed by Fed. R. Civ. Pro. 41(b):

> INVOLUNTARY DISMISSAL; EFFECT.  If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it…[35]

The Court has discretion regarding an involuntary dismissal under Fed. Rule. Civ. Pro. 41(b), but the wholesale and indiscriminate dismissal of the claims of parties not named in the Consolidated Complaints is groundless. "[Involuntary] dismissal is a harsh remedy to be utilized only in extreme situations," *Minette v. Time Warner*, 997 F.3d 1023, 1027 (2d Cir. 1993) (*internal quotations omitted*); *see also Lucas v. Miles*, 84 F.3d 532 , 534-35 (2d Cir. 1996) (same). Even when an involuntary dismissal is "without prejudice," dismissal under Rule 41(b) "is intended to serve as a rarely employed, but useful, tool of judicial administration available to district courts in managing their specific cases and general caseload." *Wynder v. McMahon*, 360 F.3d 73, 79 (2d Cir. 2004) (Calabresi, J.). "The primary rationale underlying a dismissal under Rule 41(b) is the failure of plaintiff in his duty to process his case diligently." *Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 39 (2d Cir. N.Y. 1982) (*citation omitted*). If a plaintiff's complaint complies the other requirements of the Federal Rules, "a Rule 41(b) dismissal could properly rest only on one of two other grounds: that plaintiff has failed (1) to prosecute; or (2) to comply with a court order." *Wynder*, 360 F.3d at 77.

---

[35] It is well-established that such an Order may be issued by the Court *sue sponte*, as it was here. It is worth noting that when dismissal proceeds by defendants' motion, plaintiffs would in the ordinary course have the notice and opportunity to be heard that were not accorded prior to entry of the present Order. *See* note 15, *infra*.

Certain Plaintiffs have committed no wrongdoing or default that warrants involuntary dismissal under FRCP 41(b). They are entitled to their day in court. *Truax v. Corrigan*, 257 U.S. 312, 332 (1921) ("The due process clause requires that every man shall have the protection of his day in court"); *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 358 (2d Cir. 2008) ("'It is a fundamental principle of American law that every person is entitled to his or her day in court.'") (*citation omitted*).[36]

### B.    The Effect of Master Complaints in Multidistrict Proceedings

MDL transferee courts are authorized to conduct the full range of pre-trial procedures, including dismissal and termination of litigation where appropriate. The transferee court "inherits the entire pretrial jurisdiction that the transferor district judge would have exercised if the transfer had not occurred." *In re Korean Air Lines Co.*, 642 F.3d 685, 693 (9th Cir. Cal. 2011), *citing* 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3886 (3d ed. 2010). The transferee court has discretion to determine "the extent and manner of coordination or consolidation." *In re Light Cigarettes*, 2011 U.S. Dist. LEXIS 142432 *2 (J.P.M.L. 2005). A transferee court may require parties to file consolidated amended complaints bringing together parties and claims into a single pleading.[37] Such a consolidated

---

[36] Involuntary dismissal under Rule 41(b) also requires procedural safeguards that were not accorded prior to the entry of Order No. 29. "[Involuntary] dismissals are 'the harshest of sanctions' and we insist that dismissal 'be proceeded by particular procedural prerequisites,' including 'notice of the sanctionable conduct, the standard by which it will be assessed, and an opportunity to be heard.' *Baptiste v. Sommers*, 768 F.3d 212, 217 (2d Cir. 2014), *quoting Mitchell v. Lyons Prof'l Servs., Inc.*, 708 F.3d 463, 467 (2d Cir. 2013) (*collecting cases*).
[37] *See In re Korean Air Lines Co.*, *supra* at , *citing Armstrong v. LaSalle Bank Nat'l Ass'n*, 552 F.3d 613, 614 (7th Cir. 2009); *In re Rezulin Products Liability Litigation*, 390 F. Supp. 2d 319, 330 (S.D.N.Y. 2005) (Rule 42(a) authorizes courts to consolidate actions pending before the court and to make such orders "as may tend to avoid unnecessary costs or delay"); *In re Propulsid Products Liability Litigation*, 208 F.R.D. 133, 136, 141-42 (E.D. La. 2002) (Fallon, J.) (*same*). *See generally* Diana E. Murphy, "Unified and Consolidated Complaints in Multidistrict Litigation," 132 F.R.D. 597, 597-98 (1991).

complaint typically names *all* parties in the cases or a subcategory of cases that have been consolidated.[38]

The filing of a consolidated complaint, however, entails no intrinsic substantive consequence. "Neither the general authorization of the coordination and consolidation under the MDL statute nor the more specific use of consolidated complaints, as the Court has required here, is intended to alter the substantive rights of the parties. …'Within the context of MDL proceedings, individual cases that are consolidated or coordinated for pretrial purposes remain fundamentally separate actions, intended to resume their independent status once the pretrial stage of litigation is over.'" *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Litig.*, 785 F.Supp.2d 925, 930 (C.D.Cal. 2011) (Selna, J.) (*quoting In re Korean Airlines*, *supra*, and applying choice of law rules of transferor court of underlying lawsuits despite consolidated complaint that was operative for other purposes).[39] Accordingly, even as to named plaintiffs, a consolidated complaint in multidistrict litigation "should not be given the same effect as an

---

[38] See MOORE'S FEDERAL PRACTICE (2010) §42.13 ("Lead counsel …may be ordered to file a consolidated complaint on behalf of *all* the plaintiffs") (*emphasis added*); *In re Katrina Canal Breaches Litig.*, 309 F. App'x 836, 837 (5th Cir. 2009) ("This pre-trial order directed *all* class-action plaintiffs in the Levee category ..to file a single Master Consolidated Class Action Complaint and stated that the Master Complaint 'shall supersede and replace all previously filed class action complaints') (*citations omitted*); *In re Korean Air Lines Co.*, 642 F.3d 685, (9th Cir. 2011) (The district court consolidated the case with other pending cases and ordered that *all* plaintiffs together file an amended consolidated complaint); Turner, cite ("Many courts, including this court, have interpreted Rule 42 to permit the filing of a master complaint which brings together *all* claims and theories of liability presented in the underlying cases"); *In re Wirebound Boxes Antitrust Litig.*, 128 F.R.D. 256, 258–260 (D. Minn. 1989) (court ordered lead counsel to file a consolidated complaint on behalf of *all* plaintiffs in a price-fixing case)

[39] The principle that consolidation is a procedural and administrative device that should not affect substantive rights is particularly important in the context of consolidated multidistrict proceedings in which, as a practical matter, lead counsel wield great power unchecked by the due process protections of class certification. Roger H. Trangsrud, Joinder Alternatives in Mass Tort Litigation, 70 Cornell L. Rev. 779, 816-24 (1985); Joan Steinman, Reverse Removal, 78 Iowa L. Rev. 1029, 1042 (1993) ("After consolidation, the procedural safeguards that due process and codified rules demand in class actions of similar magnitude often do not counterbalance the litigant's loss of control."); Charles Silver, Consolidations and Class Actions, 10 Rev. Litig. 495, 497-98 (arguing that consolidations are unlike class actions because they are not representational actions, and "parties and lawyers who stand at the head of a consolidation lead not as a dictator leads a people, but as an explorer leads a group of settlers into a new land - by going first").

ordinary complaint." *In re Propulsid Products Liability Litig.*, 208 F.R.D. 133, 142 (E.D. La. 2002) (Fallon, J.).[40]

Even with respect to those whom Lead Counsel name, a consolidated pleading can become the "operative" pleading—working as an amendment to the named parties prior individual pleadings--only if those parties consent.[41] Courts utilizing consolidated pleadings have employed a variety of procedural devices to permit parties whose cases have been consolidated but who do not consent to join consolidated pleadings to sever their claims.[42]

Finally, *even for parties named in it,"the master complaint does not supersede the underlying cases in such a way as to render them non-existent.*" *Turner v. Murphy Oil, supra* at *5 (Fallon, J.). Instead, 'master' or 'consolidated' complaints must be interpreted in light of the 'primary purpose' of multidistrict litigation: to promote efficiency through the coordination of

---

[40] For transferee courts agreeing with the proposition, *see In re Zimmer Nexgen Knee Implant Prods. Liab. Litig.*, 2012 U.S. Dist. LEXIS 117239 at *18-19 (N.D. Ill. Aug. 16, 2012); *In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450 (E.D. La. 2006); *In re Digitek Prods. Liab. Litig.*, 2009 U.S. Dist. LEXIS 113947 at *8 (S.D. W. Va. Aug. 3, 2009) ; *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 56 (D.N.J 2009) ; *Keffer v. Wyeth*, 2011 U.S. Dist. LEXIS 40355 at *3 n.2 (S.D. W. Va. Apr. 13, 2011).

[41] *See In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. at 56 (D.N.J. 2009) ("In the absence of . . . consent, the majority of courts treat consolidated complaints filed in multi-district litigations as a procedural device rather than a substantive pleading…."); *In re Conagra Peanut Butter Prods. Liab. Litig.*, 251 F.R.D. 689, 693 (N.D. Ga. 2008) ("A master complaint…is generally used as a substantive pleading only when the parties have consented to such an arrangement."); *In re Bridgestone/Firestone*, 155 F. Supp. 2d at 1078 (*same*); *In re Guidant Corp. Implantable Defibrillators Products Liability Litigation*, 489 F. Supp. 2d 932, 935 (D.C. Minn. 2007 (*same*); *see generally* 15 CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3866); see also DAVID F. HERR, ANNOTATED MANUAL FOR COMPLEX LITIGATION § 20.132 (4th Ed.)

[42] Order No. 29 is typical of such orders addressed to *named plaintiffs* who may wish to press distinct claims from those selected by lead counsel. Certain Plaintiffs are aware of no proceeding in which such an order has been applies to plaintiffs who are not part of the consolidated pleadings. *See, e.g. In re Motor Fuel Temperature Sales Practices Litig.*, 534 F. Supp. 2d 1214, 1216 and n. 2 (D. Kan. 2008) (court ordered that plaintiffs file a consolidated amended complaint as "an MDL administrative and procedural tool designed to narrow the predominant legal issues common to the underlying cases" but provided that it would not "supercede any pleading in the constituent cases in the MDL proceeding" and provided mechanism for counsel to segregate claims from consolidated complaint); *In re Storage Tech. Corp. Sec. Litig.*, 630 F. Supp. 1072, 1074 (D. Colo. 1986) (Court notified all parties of a specified period within which they could give notice of withdrawal from the consolidated complaint); *In re New England Compounding Pharm., Inc. Prods. Liab. Litig.*, 2014 U.S. Dist. LEXIS 121062 (D. Mass. Aug. 29, 2014) (court allows motion practice against consolidated complaint but requires defendant then to move against individual complaints on basis of rulings regarding consolidated complaint); *In re San Juan Dupont Plaza Hotel Fire Litig.*, 1988 U.S. Dist. LEXIS 17332 at *84 (D.P.R. Dec. 2, 1988) (adopting form for plaintiffs in underlying cases to employ to indicate whether they would join particular allegations in the consolidated complaint).

discovery." *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 1997 U.S. Dist. LEXIS 2743 at *2 (E.D. Pa. Mar. 7, 1997); *Mem'l Hermann Healthcare Sys. v. State St. Bank & Trust Co. (In re State St. Bank & Trust Co.)*, 2011 U.S. Dist. LEXIS 29308 at *6 (S.D.N.Y. Mar. 22, 2011) (same).

Courts have considered the effect of consolidated pleadings in multidistrict proceedings —whether they "supersede" or render a "nullity" the underlying complaints--primarily in four contexts: 1) whether dispositive motions may be directed at the consolidated complaint; 2) which forum's choice of law rules to apply; 3) whether the consolidated complaint can be treated as an original pleading to avoid limitations under *Lexecon*, *supra*, on the transferee court's jurisdiction and venue; and 4) whether dismissal of less than all parties of consolidated is appealable as final order.

Where parties are named in and have consented to the consolidated pleadings amending their earlier pleadings, courts have commonly permitted motion practice directed at the consolidated complaint. *See In re Zimmer Nexgen Knee Implaint Prod. Lial. Litig.,* 2012 U.S. Dist. LEXIS 117239 at 22-23 (*collecting cases*). But while transferee courts are *authorized* to conduct pre-trial proceedings in consolidated cases, they are not *mandated* to consider or dispose of any case-specific issues in the underlying cases. Where (as here) many consolidated lawsuits assert fact- and law-specific claims, MDL transferee courts typically decline to require that a "superseding" or "operative" consolidated pleading bring together the all of the claims for motion practice, reasoning that requiring a comprehensive pleading in such circumstances would defeat rather than advance the aims of consolidation.[43] In such circumstances, the factual and

---

[43] *See, e,g,, In re NuvaRing Prods. Liab. Litig.*, 2009 U.S. Dist. LEXIS 115711 at *2 (E.D. Mo. Dec. 11, 2009); *In re Trasylol Prods. Liab. Litig.*, 2009 U.S. Dist. LEXIS 65481 at *8 (S.D. Fla. Mar. 5, 2009); *In re Zimmer NexgenKnee Implaint Prod. Lial. Litig.*, at 19-22; 44-46.

legal claims and issues not common to other parties and thus not disposed of by the transferee court remain for the transferor court to consider.[44]

Transferee courts have consistently held that consolidated complaints in multidistrict litigation *do not supercede the parties' underlying complaints* for purposes of applying choice of law rules. *See, e.g., In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices and Products Liab. Litig., supra; Turner v. Murphy Oil, supra; In re Propulsid Products Liability Litig., supra; In re Mercedes-Benz Tele Aid Contract Litig., supra.*

Similarly, transferee courts have warned that *consolidated complaints do not supersede original pleadings* for purposes of establishing the jurisdiction or venue of the transferee court for trial without violating the prohibitions of *Lexecon. See, e.g., In re Vioxx Prods. Liab. Litig., supra; In re Digitek Prods. Liab. Litig., supra, In re Propulsid Products Liability Litig., supra.*

Finally, appellate courts have held that, for purposes of applying the final order rule, consolidate complaints may supersede earlier pleadings of the parties, and therefore parties who consolidated their claims with others have no *final* order to appeal when the transferee court dismisses their claims, but not the claims of other parties to the consolidated proceedings. *See, e.g., In re Refrigerant, supra; Road Sprinkler Fitters Local Union v. Continental Sprinkler Co.*, 967 F.2d 145, 149–150 (5th Cir. 1992).

---

*Id.* at *3, quoting *In re Phenypropanolamine Prods. Liab. Litig.*, 2004 U.S. Dist. LEXIS 18937 at *2 (W.D. Wash. Sept. 3, 2004).
[44] *See, e.g., Mem'l Hermann Healthcare Sys., supra; In re Ins. Brokerage Antitrust Litig.*, 2009 U.S. Dist. LEXIS 55611 at *4 (D.N.J. June 30, 2009); *In re Activated Carbon-Based Hunting Clothing Mktg. & Sales Practices Litig.*, 840 F. Supp. 2d 1193 (D. Minn. 2012).

In sum, whether the consolidated complaint in multidistrict litigation "supersedes" the underlying complaints depends on the context of the case, the particular legal inquiry at issue, and the wishes of the Court with respect to its case management concerns and preferences. But the issue whether a consolidated pleading supercedes underlying complaints in a multidistrict proceeding is only raised for the pleadings of parties *named in and joining* the consolidated proceeding. Courts concluding that the consolidate complaint may supersede the underlying complaints for some purposes have rested their conclusion on the "unremarkable proposition" that a party's amended pleading supersedes his earlier one, and that multidistrict transferee courts are authorized to order parties to consolidate their claims. *In re Ford Motor Company/Citibank (S.D.) N.A.*, 264 F.3d 952, 965 (9th Cir. 2001); *see also In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2014 U.S. Dist. LEXIS 86765, 2014 WL 2815645 (S.D.N.Y. June 23, 2014) .

But the idea that a consolidated complaint supersedes earlier filed ones cannot support the provisions of Order No. 29 that treat the complaints and claims of plaintiffs *who are not parties to the consolidated complaint* as if those claims were superseded by its filing. Since such Plaintiffs are not parties to *that* pleading, it cannot work to supersede the pleadings they have filed. While there are various ways that transferee courts discharge their responsibilities, Certain Plaintiffs are aware of no authority to support the counterintuitive notion that the filing of a consolidated complaint by some parties could supersede the pleadings of other parties not named in or joining that pleading.

## IV.  CONCLUSION

For the foregoing reasons, Certain Plaintiffs request that the Court rescind Order No. 29, reinstate their claims fully, and consider alternative ways of streamlining this proceeding and avoiding duplicative litigation.

Dated: January 2, 2014

Respectfully submitted,

/s/_____
Gary Peller
600 New Jersey Avenue, N.W.
Washington, DC 20001
(202) 662-9122
peller@law.georgetown.edu
Counsel for Plaintiffs Celestine Elliott,
Lawrence Elliott, Berenice Summerville,
Ishmail Sesay, Joanne Yearwood, Sharon
Bledsoe, Cina Farmer, Paul Fordham,
Momoh Kanu, Tynesia Mitchell, Dierra
Thomas and James Tibbs