**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| IN RE: | ) | |
| | ) | No. 14-MD-2543 (JMF) |
| GENERAL MOTORS LLC | ) | No. 14-MC-2543 (JMF) |
| IGNITION SWITCH LITIGATION | ) | |
| | ) | Hon. Jesse M. Furman |
| *This Document Relates To All Actions* | ) | |
| | ) | |

**DEFENDANT GENERAL MOTORS LLC'S**
**OPENING BRIEF CONCERNING CHOICE OF LAW**

Richard C. Godfrey, P.C.
Andrew B. Bloomer, P.C.
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL  60654-3406
Phone:  312-862-2000
Fax:  312-862-2200
richard.godfrey@kirkland.com
andrew.bloomer@kirkland.com

*Attorneys for Defendant General Motors LLC*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ..................................................................................................... 1

BACKGROUND ...................................................................................................... 2

    A.    The 21 Plaintiffs Are From 14 States, But None Are From Michigan. ................ 2

    B.    New GM Vehicles And Their Component Parts Are Built Across The Globe. .............................................................................................................. 5

    C.    Plaintiffs Were Told That Their Rights Vary From State To State. ...................... 6

ARGUMENT ........................................................................................................... 7

I.    APPLYING MICHIGAN LAW TO PLAINTIFFS' CLAIMS WOULD BE UNCONSTITUTIONAL. ................................................................................ 7

    A.    A Single State's Law Cannot Apply To Plaintiffs' Claims Unless That State Has Significant Contacts With Each Plaintiff's Claims. .............................. 7

    B.    The Location Of A Defendant's Headquarters Or Principal Place Of Business Does Not Provide A Basis For Applying That State's Law To Out-Of-State Plaintiffs. ...................................................................................... 9

    C.    Michigan Does Not Have Sufficient Contacts With Each Plaintiff's Claims For Michigan's Law To Be Applied.......................................................... 16

II.    STATE CHOICE-OF-LAW PRINCIPLES REQUIRE APPLYING THE LAW OF EACH PLAINTIFF'S HOME STATE, NOT MICHIGAN LAW. ........................... 21

    A.    MDL Litigation Requires Applying The Choice-of-Law Principles of Each Transferor Court............................................................................................... 21

    B.    The Choice-of-Law Principles Of Every State RequireApplying The Varying Substantive Laws Of Each State. .............................................................. 24

        1.    Tort Choice-of-Law Principles Require Applying The Substantive Law Of Each Plaintiff's Home State. ....................................................... 24

        2.    Contract Choice-of-Law Rules Require Applying The Substantive Law Of The State In Which Each Plaintiff Resides Or Bought A Vehicle. .................................................................................................... 28

        3.    Unjust Enrichment Claims Are Governed By The Substantive Law Of Each Plaintiff's Home State.................................................................. 30

i

## TABLE OF CONTENTS (CONT'D)

III.   THE LAWS OF THE 14 STATES AND MICHIGAN MATERIALLY
       CONFLICT FOR EACH OF PLAINTIFFS' CLAIMS ..................................................... 31

       A.    State Fraudulent Concealment Laws Materially Differ. ........................................ 32

       B.    State Unjust Enrichment Laws Materially Differ. ................................................. 34

       C.    State Implied Warranty Laws Materially Differ, And Those Differences
             Apply To MMWA Claims As Well. ...................................................................... 36

CONCLUSION ........................................................................................................................... 38

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraham v. Volkswagen of Am., Inc.,*
    795 F.2d 238 (2d Cir. 1986) ............................................................................................. 17

*Adolph Coors Co. v. Truck Ins. Exch.,*
    960 A.2d 617 (D.C. 2008) ................................................................................................. 29

*Allstate Ins. Co. v. Hague,*
    449 U.S. 302 (1981) ............................................................................................................. 8

*Am. Motorists Ins. Co. v. ARTRA Grp., Inc.,*
    659 A.2d 1295 (Md. 1995) ................................................................................................ 28

*Am. Online, Inc. v. Nat'l Health Care Disc., Inc.,*
    121 F. Supp. 2d 1255 (N.D. Iowa 2000) ......................................................................... 25

*Amusement Indus., Inc. v. Stern,*
    693 F. Supp. 2d 327 (S.D.N.Y. 2010) ............................................................................. 26

*Barbarin v. Gen. Motors Corp.,*
    No. 84-0888 (TPJ.), 1993 WL 765821 (D.D.C. Sept. 22, 1993) .................................... 38

*Bernal v. Charter Cnty. Mut. Ins. Co.,*
    209 P.3d 309 (Okla. 2009) ................................................................................................ 29

*Berry v. Budget Rent A Car Sys., Inc.,*
    497 F. Supp. 2d 1361 (S.D. Fla. 2007) ............................................................................ 14

*Bigelow v. Virginia,*
    421 U.S. 809 (1975) ............................................................................................................. 9

*Bishop v. Florida Specialty Paint Co.,*
    389 So.2d 999 (Fla. 1980) ................................................................................................. 25

*Black v. Powers,*
    628 S.E.2d 546 (Va. Ct. App. 2006) ................................................................................ 28

*BMW of N. Am., Inc. v. Gore,*
    517 U.S. 559 (1996) ............................................................................................................. 9

*Brown v. Hearst Corp.,*
    54 F.3d 21 (1st Cir. 1995) ................................................................................................. 23

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Bullard v. MRA Holding, LLC*,
   740 S.E.2d 622 (Ga. 2013) ................................................................... 24

*Burnett v. Columbus McKinnon Corp.*,
   887 N.Y.S.2d 405 (N.Y. App. Div. 2009) .............................................. 26

*Cali v. Chrysler Grp. LLC,*
   No. 10 CIV 7606(JSR), 2011 WL 383952 (S.D.N.Y. Jan. 18, 2011) ...................................... 30

*Casa Orlando Apartments, Ltd. v. Fed. Nat'l Mortg. Ass'n*,
   624 F.3d 185 (5th Cir. 2010) .......................................................... 13, 35

*Castano v. Am. Tobacco Co.*,
   84 F.3d 734 (5th Cir. 1996) ................................................................. 33

*Chin v. Chrysler Corp.*,
   182 F.R.D. 448 (D.N.J. 1998) .................................................... 8, 34, 38

*Christian v. Sony Corp. of Am.*,
   No. Civ. 00-932 (DWF/AJB), 2001 WL 739147 (D. Minn. June 26, 2001) ........................... 31

*Clay v. Am. Tobacco Co.*,
   188 F.R.D. 483 (S.D. Ill. 1999) .................................................... 14, 36

*Cochran v. Volvo Grp. N. Am., LLC,*
   No. 1:11-CV-927, 2013 WL 1729103 (M.D.N.C. Apr. 22, 2013) ........................................... 38

*Cole v. Gen. Motors Corp.*,
   484 F.3d 717 (5th Cir. 2007) ............................................................. 37

*Compaq Computer Corp. v. Lapray*,
   135 S.W.3d 657 (Tex. 2004) .............................................................. 14

*Connolly v. Samuelson*,
   671 F. Supp. 1312 (D. Kan. 1987) ...................................................... 28

*Convergys Corp. v. Keener*,
   582 S.E.2d 84 (Ga. 2003) ................................................................. 28

*Cooney v. Osgood Mach.*,
   612 N.E.2d 277, 81 N.Y.2d 66 (N.Y. 1993) .................................... 25, 26

*Corder v. Ford Motor Co.*,
   272 F.R.D. 205 (W.D. Ky. 2011) ....................................................... 17

*Cortina v. Wal-Mart, Inc.*,
   No. 13-CV-2054 BAS DHB, 2015 WL 260913 (S.D. Cal. Jan. 20, 2015) ........................... 13, 16

**TABLE OF AUTHORITIES (CONT'D)**

*Cox House Moving, Inc. v. Ford Motor Co.*,
  No. CA 706-1218-HMH, 2006 WL 3230757 (D.S.C. Nov. 6, 2006) ...................................... 38

*David v. Am. Suzuki Motor Corp.*,
  629 F. Supp. 2d 1309 (S.D. Fla. 2009) ................................................................................... 28

*Devore v. Pfizer Inc.*,
  867 N.Y.S.2d 425 (N.Y. App. Div. 2008) ......................................................................... 25, 26

*DiBartolo v. Abbott Labs.*,
  914 F. Supp. 2d 601 (S.D.N.Y. 2012) .................................................................................... 30

*Eclipse Mfg. Co. v. U.S. Compliance Co.*,
  886 N.E.2d 349 (Ill. App. Ct. 2007) ....................................................................................... 28

*Edgar v. Mite Corp.*,
  457 U.S. 624 (1982) ................................................................................................................. 9

*Elvig v. Nintendo of Am.*,
  696 F. Supp. 2d 1207 (D. Colo. 2010) ............................................................................. passim

*Endo v. Albertine*,
  No. 88 C 1815, 1995 WL 170030 (N.D. Ill. Apr. 7, 1995) ..................................................... 15

*Erie Ins. Exch. v. Heffernan*,
  925 A.2d 636 (Md. 2007) ........................................................................................................ 24

*Erie R.R. v. Tompkins*,
  304 U.S. 64 (1938) .............................................................................................................. 2, 31

*Estate of Felts v. Genworth Life Ins. Co.*,
  250 F.R.D. 512 (W.D. Wash. 2008) ................................................................................. 13, 15

*Fed. Ins. Co. v. J.K. Mfg. Co.*,
  933 F. Supp. 2d 1065 (N.D. Ill. 2013) ................................................................................... 25

*Feinstein v. Firestone Tire & Rubber Co.*,
  535 F. Supp. 595 (S.D.N.Y. 1982) ........................................................................... 14, 17, 38

*Feldman v. Mercedes-Benz USA, LLC*,
  No. 2:11-cv-00984 (WJM), 2012 WL 6596830 (D.N.J. Dec. 18, 2012) ................................ 12

*Fin. One Pub. Co. v. Lehman Bros. Special Fin.*,
  414 F.3d 325 (2d Cir. 2005) ................................................................................................... 29

*Forest Park Pictures v. Universal Television Network, Inc.*,
  683 F.3d 424 (2d Cir. 2012) ................................................................................................... 29

**TABLE OF AUTHORITIES (CONT'D)**

**Page(s)**

*Foster v. Leggett,*
    484 S.W.2d 827 (Ky. 1972) ................................................................................ 27

*Frontier Oil Corp. v. RLI Ins. Co.,*
    63 Cal. Rptr. 3d 816 (Cal. Ct. App. 2007) .......................................................... 30

*Ganey v. Kawasaki Motors Corp., U.S.A.,*
    234 S.W.3d 838 (Ark. 2006) ............................................................................... 27

*Georgine v. Amchem Prods., Inc.,*
    83 F.3d 610 (3d Cir. 1996) ............................................................................ 8, 21

*Grandalski v. Quest Diagnostics Inc.,*
    767 F.3d 175 (3d Cir. 2014) ............................................................................... 13

*Greene v. Hanover Direct, Inc.,*
    No. 06 Civ. 13308(NRB), 2007 WL 4224372 (S.D.N.Y. Nov. 19, 2007)............... 26

*Gustafson v. BAC Home Loans Servicing, LP,*
    294 F.R.D. 529 (C.D. Cal. 2013) ........................................................................ 35

*Hale v. Enerco Grp., Inc.,*
    288 F.R.D. 139 (N.D. Ohio 2012)....................................................................... 33

*Harvell v. Goodyear Tire & Rubber Co.,*
    164 P.3d 1028 (Okla. 2006) ................................................................................ 30

*Hastings v. Fid. Mortg. Decisions Corp.,*
    984 F. Supp. 600 (N.D. Ill. 1997) ...................................................................... 14

*Hawk Enters., Inc. v. Cash Am. Int'l, Inc.,*
    282 P.3d 786 (Okla. Civ. App. 2012).................................................................. 25

*Hussemann ex rel. Ritter v. Hussemann,*
    847 N.W.2d 219 (Iowa 2014).............................................................................. 28

*Ilhardt v. A.O. Smith Corp.,*
    168 F.R.D. 613 (S.D. Ohio 1996) ....................................................................... 31

*Illinois Tool Works v. Sierracin Corp.,*
    479 N.E.2d 1046 (Ill. App. Ct. 1985).................................................................. 28

*In re Air Crash Disaster Near Chicago, Illinois on May 25, 1979,*
    644 F.2d 594 (7th Cir. 1981)............................................................................... 22

*In re Allstate Ins. Co. (Stolarz),*
    613 N.E.2d 936 (N.Y. 1993) ............................................................................... 29

**TABLE OF AUTHORITIES (CONT'D)**

**Page(s)**

*In re Am. Med. Sys., Inc. Pelvic Repair Sys. Prods. Liab. Litig.*,
No. 2:13-CV-19418, 2014 WL 637189 (S.D.W. Va. Feb. 18, 2014) ...................................... 24

*In re Am. Med. Sys., Inc.*,
75 F.3d 1069 (6th Cir. 1996)........................................................................................ 31

*In re Aqua Dots Prods. Liab. Litig.*,
270 F.R.D. 377 (N.D. Ill. 2010) ................................................................................... 36

*In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*,
No. 07–MD–01871, 2012 WL 3205620 (E.D. Pa. Aug. 7, 2012) ........................................ 24

*In re Bausch & Lomb Inc. Contacts Lens Solution Prods. Liab. Litig.*,
MDL No. 1785, 2007 WL 3046682 (D.S.C. Oct. 11, 2007)................................................ 24

*In re Baycol Prods. Litig.*,
218 F.R.D. 197 (D. Minn. 2003)................................................................................... 14

*In re Bridgestone/Firestone, Inc.*,
288 F.3d 1012 (7th Cir. 2002)............................................................................... passim

*In re Conagra Peanut Butter Prods. Liab. Litig.*,
251 F.R.D. 689 (N.D. Ga. 2008) .................................................................................. 35

*In re Currency Conversion Fee Antitrust Litig.*,
230 F.R.D. 303 (S.D.N.Y. 2004)................................................................................... 33

*In re Digitek Prods. Liab. Litig.*,
No. MDL 2:08-MD-01968, 2010 WL 2102330 (S.D.W. Va. May 25, 2010) ................... 36, 38

*In re DirecTV Early Cancellation Fee Litig.*,
No. SACV 08-0741 AG (ANX), 2009 WL 2912656 (C.D. Cal. Sept. 9, 2009)...................... 13

*In re Educ. Testing Serv. Praxis Principles of Learning & Teaching: Grades 7-12 Litig.*,
517 F. Supp. 2d 832 (E.D. La. 2007) ............................................................................ 23

*In re Flonase Antitrust Litig.*,
692 F. Supp. 2d 524 (E.D. Pa. 2010) ............................................................................ 36

*In re Ford Motor Co. Bronco II Prod. Liab. Litig.*,
177 F.R.D. 360 (E.D. La. 1997)........................................................................ 1, 10, 11, 18

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*,
174 F.R.D. 332 (D.N.J. 1997) ............................................................................... passim

*In re Ford Motor Co. Vehicle Paint Litig.*,
182 F.R.D. 214 (E.D. La. 1998).................................................................................... 33

**TABLE OF AUTHORITIES (CONT'D)**

**Page(s)**

*In re Gen. Motors Corp. Dex-Cool Prods. Liab. Litig.*,
241 F.R.D. 305 (S.D. Ill. 2007) ........................................................................ 17, 28

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995) ........................................................................................ 37

*In re Grand Theft Auto Video Game Consumer Litig.*,
251 F.R.D. 139 (S.D.N.Y. 2008) ............................................................ 14, 30, 35, 38

*In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*,
489 F. Supp. 2d 932 (D. Minn. 2007) ........................................................................ 23

*In re Jackson Nat'l Life Ins. Co. Premium Litig.*,
183 F.R.D. 217 (W.D. Mich. 1998) ..................................................................... 34, 36

*In re Masonite Corp. Hardboard Siding Prods. Liab. Litig.*,
170 F.R.D. 417 (E.D. La. 1997) .......................................................................... 13, 31

*In re Packaged Ice Antitrust Litig.*,
779 F. Supp. 2d 642 (E.D. Mich. 2011) ..................................................................... 35

*In re Panacryl Sutures Prods. Liab.*,
263 F.R.D. 312 (E.D.N.C. 2009) ............................................................................... 16

*In re Pharm. Indus. Average Wholesale Price Litig.*,
230 F.R.D. 61 (D. Mass. 2005) .................................................................................. 14

*In re Prempro Prods. Liab. Litig.*,
230 F.R.D. 555 (E.D. Ark. 2005) ............................................................................... 36

*In re Prempro Prods. Liab. Litig.*,
No. 4:04CV01202, 2008 WL 1699211 (E.D. Ark. Apr. 9, 2008) ............................... 22

*In re Processed Egg Prods. Antitrust Litig.*,
851 F. Supp. 2d 867 (E.D. Pa. 2012) ........................................................................ 35

*In re Refco Inc. Secs. Litig.*,
892 F. Supp. 2d 534 (S.D.N.Y. 2012) ....................................................................... 26

*In re Refrigerant Compressors Antitrust Litig.*,
No. 2:09-MD-02042, 2013 WL 1431756 (E.D. Mich. Apr. 9, 2013) .......................... 35

*In re Rezulin Prods. Liab. Litig.*,
210 F.R.D. 61 (S.D.N.Y. 2002) ...................................................................... 14, 21, 22

*In re Rezulin Prods. Liab. Litig.*,
390 F. Supp. 2d 319 (S.D.N.Y. 2005) .................................................................. 22, 23

**TABLE OF AUTHORITIES (CONT'D)**

**Page(s)**

*In re Rhone-Poulenc Rorer Inc.,*
  51 F.3d 1293 (7th Cir. 1995) ................................................................................. 31

*In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.,*
  Nos. 05 C 4742, 05 C 2623, 2006 WL 3754823 (N.D. Ill. Dec. 18, 2006) ............ 36

*In re Sigg Switzerland (USA), Inc. Aluminum Bottles Mktg. & Sales Practices Litig.,*
  No. MDL 2137, 2011 WL 64289 (W.D. Ky. Jan. 7, 2011) ..................................... 30

*In re St. Jude Med., Inc.,*
  425 F.3d 1116 (8th Cir. 2005) ............................................................. 13, 15, 18, 19

*In re Stucco Litig.,*
  175 F.R.D. 210 (E.D.N.C. 1997) ............................................................................. 31

*In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.,*
  97 F.3d 1050 (8th Cir. 1996) ................................................................................. 22

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
  No. M 07-1827 SI, 2011 WL 4501223 (N.D. Cal. Sept. 28, 2011) ......................... 36

*In re Thelen LLP,*
  736 F.3d 213 (2d Cir. 2013) ................................................................................... 26

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Prods. Liab.*
  *Litig.,*
  785 F. Supp. 2d 925 (C.D. Cal. 2011) ....................................................... 12, 22, 38

*In re Vioxx Prods. Liab. Litig.,*
  239 F.R.D. 450 (E.D. La. 2006) ....................................................................... 15, 19

*In re Watson Fentanyl Patch Prods. Liab. Litig,*
  977 F. Supp. 2d 885 (N.D. Ill. 2013) ...................................................................... 24

*In re Wellbutrin XL Antitrust Litig.,*
  260 F.R.D. 143 (E.D. Pa. 2009) .............................................................................. 36

*In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.,*
  275 F.R.D. 270 (S.D. Ill. 2011) ............................................................................... 33

*In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.,*
  No. 3:09–md–2100–DRH–PMF, 2011 WL 1375011 (S.D. Ill. Apr. 12, 2011) ........ 23

*In re Zimmer NexGen Knee Implant Prods. Liab. Litig.,*
  890 F. Supp. 2d 896 (N.D. Ill. 2012) ...................................................................... 23

**TABLE OF AUTHORITIES (CONT'D)**

**Page(s)**

*In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.*,
  No. 12-MD-2342, 2014 WL 2445790 (E.D. Pa. May 29, 2014) ............................................ 24

*Jackson v. Eddy's LI RV Center, Inc.*,
  845 F. Supp. 2d 523 (E.D.N.Y. 2012) ................................................................................. 30

*Jarrett v. Panasonic Corp. of N. Am.*,
  8 F. Supp. 3d 1074 (E.D. Ark. 2013) ................................................................................. 38

*Jones ex rel. Jones v. Winnebago Indus., Inc.*,
  460 F. Supp. 2d 953 (N.D. Iowa 2006) ............................................................................... 19

*Jones v. Clinch*,
  73 A.3d 80 (D.C. 2013) ..................................................................................................... 25

*Jones v. R.S. Jones & Assocs., Inc.*,
  431 S.E.2d 33 (Va. 1993) ................................................................................................... 24

*Kaczmarek v. Int'l Bus. Machs. Corp.*,
  186 F.R.D. 307 (S.D.N.Y. 1999) ......................................................................................... 38

*Karhu v. Vital Pharms., Inc.*,
  No. 13-60768-CIV, 2014 WL 815253 (S.D. Fla. Mar. 3, 2014) ............................................ 28

*Kelley v. Microsoft Corp.*,
  251 F.R.D. 544 (W.D. Wash. 2008) ................................................................................... 36

*Kingdom 5-KR-41, Ltd. v. Star Cruises PLC*,
  No. 01 CIV. 2946(AGS), 2002 WL 432390 (S.D.N.Y. Mar. 20, 2002) .................................. 26

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
  313 U.S. 487 (1941) ......................................................................................................... 21

*Kramer v. Ciba-Geigy Corp.*,
  854 A.2d 948 (N.J. Super. Ct. App. Div. 2004) ..................................................................... 29

*Kunzelmann v. Wells Fargo Bank, N.A.*,
  No. 9:11-CV-81373-DMM, 2013 WL 139913 (S.D. Fla. Jan. 10, 2013) ............................... 35

*Lantz v. Am. Honda Motor Co.*,
  No. 06 C 5932, 2007 WL 1424614 (N.D. Ill. May 14, 2007) ................................................. 13

*Lewis Tree Serv., Inc. v. Lucent Techs. Inc.*,
  211 F.R.D. 228 (S.D.N.Y. 2002) ......................................................................................... 33

*Lilly v. Ford Motor Co.*,
  No. 00 C 7372, 2002 WL 507126 (N.D. Ill. Apr. 3, 2002) ................................................... 35

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Lyon v. Caterpillar, Inc.*,
  194 F.R.D. 206 (E.D. Pa. 2000) ................................................................... 14

*Maniscalco v. Brother Int'l (USA) Corp.*,
  709 F.3d 202 (3d Cir. 2013) ........................................................................ 13

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012) ....................................................................... 35

*McCann v. Foster Wheeler LLC*,
  225 P.3d 516 (Cal. 2010). ...................................................................... 27, 30

*Menowitz v. Brown*,
  991 F.2d 36 (2d Cir. 1993) .......................................................................... 22

*Mill's Pride, Inc. v. Cont'l Ins. Co.*,
  300 F.3d 701 (6th Cir. 2002) ....................................................................... 29

*Miller v. Gen. Motors Corp.*,
  Nos. 98 C 7386, 98 C 2851, 2003 WL 168626 (N.D. Ill. Jan. 26, 2003)................................. 33

*Montgomery v. New Piper Aircraft, Inc.*,
  209 F.R.D. 221 (S.D. Fla. 2002) .......................................................... 14, 15, 17

*Monticello v. Winnebago Indus., Inc.*,
  369 F. Supp. 2d 1350 (N.D. Ga. 2005) ........................................................... 28

*Montich v. Miele USA, Inc.*,
  849 F. Supp. 2d 439 (D.N.J. 2012) ............................................................... 13

*Moody v. Ford Motor Co.*,
  No. 03CV0784-CVE-PJC, 2006 WL 346433 (N.D. Okla. Feb. 13, 2006). ............................ 20

*Morris B. Chapman & Assocs., Ltd. v. Kitzman*,
  716 N.E.2d 829 (Ill. App. Ct. 1999)............................................................. 30

*Muehlbauer v. Gen. Motors Corp.*,
  No. 05 C 2676, 2009 WL 874511 (N.D. Ill. Mar. 31, 2009) .................................... 35

*Nikolin v. Samsung Elecs. Am., Inc.*,
  No. CIV. A. 10-1456 (GEB), 2010 WL 4116997 (D.N.J. Oct. 18, 2010) .............................. 13

*Norwood v. Raytheon Co.*,
  237 F.R.D. 581 (W.D. Tex. 2006)............................................................... 33, 38

*Osborne v. Subaru of Am., Inc.*,
  243 Cal. Rptr. 815 (Cal. Ct. App. 1988) ......................................................... 38

**TABLE OF AUTHORITIES (CONT'D)**

**Page(s)**

*Oscar v. BMW of N. Am., LLC*,
   274 F.R.D. 498 (S.D.N.Y. 2011).................................................................................... 38

*P.V. ex rel. T.V. v. Camp Jaycee*,
   962 A.2d 453 (N.J. 2008) ................................................................................................ 25

*Payne v. FujiFilm U.S.A., Inc.*,
   No. CIV. A. 07-385 GEB, 2010 WL 2342388 (D.N.J. May 28, 2010) .................................. 38

*Petronis v. Churchill Downs, Inc.*,
   No. 2005-CA-001925-MR, 2007 WL 1520018 (Ky. App. May 25, 2007) .............................. 27

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) ............................................................................................... passim

*Pilgrim v. Universal Health Card, LLC*,
   660 F.3d 943 (6th Cir. 2011); ................................................................................ 13, 21

*Poe v. Sears, Roebuck & Co.*,
   No. CIVA1:96-CV-358-RLV, 1998 WL 113561 (N.D. Ga. Feb. 13, 1998); ........................... 14

*Powers v. Lycoming Engines*,
   272 F.R.D. 414 (E.D. Pa. 2011); ............................................................................. 13, 38

*Rapp v. Green Tree Servicing, LLC*,
   302 F.R.D. 505 (D. Minn. 2014) .................................................................................... 35

*Rodriguez v. It's Just Lunch, Int'l*,
   300 F.R.D. 125 (S.D.N.Y. 2014) .................................................................................... 35

*Rosen v. Chrysler Corp.*,
   No. 97-CV-60374-AA, 2000 WL 34609135 (E.D. Mich. July 18, 2000) .................. 11, 12, 33

*Sanchez v. Boston Scientific Corp.*,
   No. 2:12-CV-05762, 2014 WL 202787 (S.D.W. Va. Jan. 17, 2014) ...................................... 24

*Schilling v. Let's Talk Cellular and Wireless*,
   No. CIV.A. 00-3123, 2002 WL 391695 (E.D. Pa. Feb. 6, 2002) ............................................ 36

*Schultz v. Boy Scouts of Am., Inc.*,
   480 N.E.2d 679 (N.Y. 1985) .......................................................................................... 26

*Scottsdale Ins. Co. v. Morrow Land Valley Co., LLC*,
   411 S.W.3d 184 (Ark. 2012) .......................................................................................... 28

*Seippel v. Jenkens & Gilchrist, P.C.*,
   341 F.Supp.2d 363 (S.D.N.Y. 2004) ............................................................................... 26

**TABLE OF AUTHORITIES (CONT'D)**

**Page(s)**

*Siegel v. Shell Oil Co.,*
   256 F.R.D. 580 (N.D. Ill. 2008); ............................................................................ 36

*Skeen v. BMW of N. Am., LLC,*
   No. 2:13-cv-1531-WHW-CLW, 2014 WL 283628 (D.N.J. Jan. 24, 2014) ............................. 12

*Spence v. Glock,*
   227 F.3d 308 (5th Cir. 2000) ............................................................... 17, 21, 24, 25

*Stalker v. MBS Direct, LLC,*
   No. 10-11355, 2012 WL 6642518 (E.D. Mich. Dec. 20, 2012) ............................................ 35

*Standard Fire Ins. Co. v. Ford Motor Co.,*
   723 F.3d 690 (6th Cir. 2013) .................................................................................. 27, 28

*State Farm Mut. Auto. Ins. Co. v. Campbell,*
   538 U.S. 408 (2003) ........................................................................................... 8, 9

*State Farm Mut. Auto. Ins. Co. v. Hodgkiss-Warrick,*
   413 S.W.3d 875 (Ky. 2013) .................................................................................... 28

*State Farm Mut. Auto. Ins. Co. v. Roach,*
   945 So.2d 1160 (Fla. 2006) ................................................................................... 28

*Sweet v. Pfizer,*
   232 F.R.D. 360 (C.D. Cal. 2005) ............................................................................ 38

*Szymczak v. Nissan N. Am., Inc.,*
   No. 10 CV 7493 (VB), 2011 WL 7095432 (S.D.N.Y. Dec. 16, 2011) ................................... 16

*Thompson by Thompson v. Crawford,*
   833 S.W.2d 868 (Mo. 1992) ................................................................................... 25

*Thompson v. Bayer Corp.,*
   No. 4:07CV00017 JMM, 2009 WL 362982 (E.D. Ark. Feb. 12, 2009) ................................... 36

*Thompson v. Jiffy Lube Int'l, Inc.,*
   250 F.R.D. 607 (D. Kan. 2008) ......................................................................... 13, 36

*Threlkeld v. Worsham,*
   785 S.W.2d 249 (Ark. Ct. App. 1990) ..................................................................... 27

*Tidenberg v. BIDZ.com, Inc.,*
   No. CV 08-5553 PSG (PMO), 2009 WL 605249 (C.D. Cal. Mar. 4, 2009) ............................. 13

*Townsend v. Sears, Roebuck and Co.,*
   879 N.E.2d 893 (Ill. 2007) .................................................................................... 25

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*True v. Conagra Foods, Inc.*,
  No. 07-00770-CV-W-DW, 2011 WL 176037 (W.D. Mo., Jan. 4, 2011) ................................ 36

*Tyler v. Alltel Corp.*,
  265 F.R.D. 415 (E.D. Ark. 2010) ................................................................................ 19, 36

*Van Dusen v. Barrack*,
  376 U.S. 612 (1964) .......................................................................................................... 22

*Viacom, Inc. v. Transit Cas. Co.*,
  138 S.W.3d 723 (Mo. 2004) ............................................................................................. 29

*Vulcan Golf, LLC v. Google, Inc.*,
  254 F.R.D. 521 (N.D. Ill. 2008) ....................................................................................... 36

*Wahl v. Gen. Elec. Co.*,
  983 F. Supp. 2d 937 (M.D. Tenn. 2013) .......................................................................... 23

*Walewski v. ZeniMax Media, Inc.*,
  No. 6:11-CV-1178-Orl-28DAB, 2012 WL 834125 (M.D. Fla. Jan. 30, 2012) ................. 28

*Walsh v. Ford Motor Co.*,
  130 F.R.D. 260 (D.D.C. 1990) ......................................................................................... 38

*Williams v. Rizza Chevrolet-Geo, Inc.*,
  No. 99 C 2294, 2000 WL 263731 (N.D. Ill. Mar. 6, 2000) .............................................. 36

*Yarger v. ING Bank, fsb*,
  285 F.R.D. 308 (D. Del. 2012) ......................................................................................... 35

*Zeman v. Canton State Bank*,
  211 N.W.2d 346 (Iowa 1973) ........................................................................................... 25

*Zinser v. Accufix Research Inst., Inc.*,
  253 F.3d 1180 (9th Cir. 2001) .......................................................................................... 13

**Statutes**

15 U.S.C. § 2301 ................................................................................................................. 17

15 U.S.C. § 2304 ................................................................................................................. 17

15 U.S.C. § 2308 ................................................................................................................. 17

28 U.S.C. § 1404 ................................................................................................................. 22

28 U.S.C. § 1407 ................................................................................................................. 22

**TABLE OF AUTHORITIES (CONT'D)**

**Page(s)**

Cal. Civ. Code § 1646 ................................................................................................ 30

**Other Authorities**

Restatement (Second) of Conflicts of Laws § 145 ...................................................... 25

Restatement (Second) of Conflicts of Laws § 147 ...................................................... 25

Restatement (Second) of Conflicts of Laws § 188 ...................................................... 29

Restatement (Second) of Conflicts of Laws § 6 ......................................................... 25

## INTRODUCTION

The question before the Court is what substantive laws apply to 21 plaintiffs residing across 14 states who assert claims based on vehicles manufactured by New GM.  Lead Counsel seek to have the law of a single state, Michigan, apply to the claims of all these plaintiffs—and, indeed, all putative class members across 51 jurisdictions—based on the location of New GM's headquarters and notwithstanding the fact that none of plaintiffs' claims have any significant connection to Michigan.  The law does not permit the application of only one state's law.  This Court should join the myriad other courts that have rejected efforts to have one state's law apply nationwide to MDLs and class actions.  The Constitution and choice-of-law analysis require applying the substantive laws of 14 states to the claims of the 21 plaintiffs for three reasons.

*First*, the Constitution prohibits applying Michigan's law to the claims of plaintiffs in 14 different states, much less nationwide.  A single state's law can be applied only if the state has "a significant contact or significant aggregation of contacts" to each and every plaintiff's claims. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818-819, 822-23 (1985).  Plaintiffs' claims lack significant contacts with Michigan.  The fact that New GM is headquartered in Michigan does not cure this deficiency.  The 21 plaintiffs live in states other than Michigan, bought their vehicles from dealers in states other than Michigan, drove their vehicles in states other than Michigan, had their vehicles serviced in states other than Michigan, claimed to have listened to and read advertisements in states other than Michigan, and allegedly suffered economic losses in states other than Michigan.  Following *Shutts*, courts repeatedly have rejected applying Michigan law to claims against automotive companies headquartered there.  *See*, *e.g.*, *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012 (7th Cir. 2002); *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332, 348 (D.N.J. 1997); *In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, 177 F.R.D. 360 (E.D. La. 1997).

**Second**, in addition to constitutional constraints, state choice-of-law principles dictate applying the laws of their home states to plaintiffs' claims.  The choice-of-law rules among the 14 states vary, but each requires applying the substantive law of each plaintiff's place of residence or purchase.  Because none of the 21 plaintiffs reside in or purchased a vehicle in Michigan, Michigan law cannot be applied to any of their claims, nor to the claims of other putative members of Lead Counsel's proposed nationwide classes.

**Third**, material differences exist among the states' substantive laws for each of plaintiff's claims.  Dozens of courts have held that such variations prohibit one state's laws concerning fraudulent concealment, unjust enrichment, or implied warranties—the causes of action alleged in the Post-Sale Complaint for which plaintiffs assert Michigan law should control—from applying to plaintiffs in other states.  Ignoring such differences and applying a single law to plaintiffs from multiple states would create a federal common law, which the Supreme Court has long held is unconstitutional.  *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).  Such differences confirm the need to have each plaintiff's claims governed by the substantive laws of the appropriate state.

## BACKGROUND

### A.     The 21 Plaintiffs Are From 14 States, But None Are From Michigan.

Pursuant to Order No. 30 (ECF No. 478), and the parties' joint December 31, 2014 letter to the Court (ECF No. 487), the present choice-of-law briefing is limited to 21 plaintiffs who assert economic loss claims arising from vehicles manufactured by New GM.  These 21 plaintiffs live in 14 jurisdictions: Arkansas, California, District of Columbia, Florida, Georgia, Illinois, Iowa, Kentucky, Maryland, Missouri, New Jersey, New York, Oklahoma, and Virginia. (ECF No. 487).  None of the 21 plaintiffs lives in Michigan.  (Post-Sale Compl. ¶¶ 30-35, 37, 39, 41, 42, 44, 47, 50, 53, 61, 62, 66, 70, 72, 77-79, 86).

Plaintiffs' claims are based on 24 different vehicles, which span 8 different vehicle models across multiple model years:  2010 Buick LaCrosse; 2011 Buick Regal; 2010 and 2011 Chevrolet HHR; 2011 and 2012 Chevrolet Camaro; 2010 Chevrolet Cobalt; 2011 Chevrolet Traverse; 2010, 2012, and 2013 Chevrolet Impala; and 2014 Chevrolet Silverado:

| Plaintiff | Vehicle | How Acquired | State |
|---|---|---|---|
| Nettleton Auto Sales, Inc. | 2010 Chevrolet HHR | Used | AR |
| Nettleton Auto Sales, Inc. | 2011 Chevrolet HHR | Used | AR |
| Williams, Courtney | 2011 Chevrolet Camaro | Used | AR |
| Andrews, Anna | 2010 Buick LaCrosse | Used | CA |
| Koppelman, Marc | 2010 Chevrolet HHR | Used | CA |
| Padilla, David | 2010 Chevrolet Cobalt | New | CA |
| Pina, Randall | 2011 Chevrolet HHR | New | CA |
| Jackson, Pajja | 2011 Buick Regal | New | DC |
| Ferden-Precht, Joni | 2011 Chevrolet Traverse | New | FL |
| Fox, Nykea | 2010 Chevrolet HHR | Used | GA |
| Loterbour, Charles David | 2010 Chevrolet HHR | Used | IA |
| Painter, Patrick | 2010 Chevrolet Cobalt | New | IL |
| Stewart, Elizabeth | 2010 Chevrolet Cobalt | Used | KY |
| Albert, Harry | 2012 Chevrolet Camaro | New | MD |
| Albert, Harry | 2013 Chevrolet Impala | Used | MD |
| Hawkins, Cynthia | 2010 Chevrolet Cobalt | Used | MO |
| Robinson, Ronald | 2010 Chevrolet Impala | Used | MO |
| Reagan, Gene | 2010 Chevrolet HHR | New | NJ |
| Mason, Nicole | 2010 Chevrolet Cobalt | New | NY |
| Tefft, Dawn | 2010 Chevrolet Cobalt | Used | NY |
| Reeder, Jennifer | 2012 Chevrolet Impala | Used | OK |
| Reeder, Jennifer | 2010 Chevrolet Cobalt | Used | OK |
| Wright, Bruce and Denise | 2011 Chevrolet Camaro | New | OK |
| Hall-Abbott, Ashlee | 2014 Chevrolet Silverado | New | VA |

New GM does not sell vehicles to individual retail consumers.  (Ex. 1, Decl. of William D. Mistele, Jr. ¶ 10).  Rather, New GM sells its vehicles to independent dealerships throughout the United States.  (*Id.*)  Dealers then sell vehicles to customers in individual sales transactions, in which numerous details are worked out between the customer and the dealer.  (*Id.*)  Accordingly, no plaintiff purchased his or her vehicle from New GM.  Of the 24 vehicles, 10 were purchased new from a dealer.  (Post-Sale Compl. ¶¶ 35, 37, 39, 41, 44, 53, 66, 70, 77, 86).

3

Fourteen vehicles were bought used in a variety of transactions with third parties. (Post-Sale Compl. ¶¶ 30-34, 42, 47, 50, 61, 62, 72, 78, 79). The dealer or other third party generally was located in the state where the plaintiff resides.[1] New or used, none of the 21 plaintiffs alleges that he or she purchased a vehicle in Michigan.

Nine plaintiffs claim that their vehicles experienced stalls while being driven. (*Id.* ¶¶ 30, 34, 35, 42, 50, 53, 70, 72, 79). The alleged stalls generally occurred in each plaintiff's home state or, in any case, states other than Michigan. (*Id.*).

The 21 plaintiffs are putative class representatives of a proposed nationwide class of purchasers and lessors of New GM vehicles. (*Id.* ¶ 21). Even though none of the 21 plaintiffs live in or purchased a vehicle in Michigan, they allege that Michigan law should apply to some—but not all—of their claims. (*Id.* ¶¶ 21, 835). Plaintiffs seek to have Michigan law apply to their nationwide claims for fraudulent concealment (Count I), unjust enrichment (Count II), and breach of implied warranty (Count IV). (Post-Sale Compl. ¶¶ 21, 835, 864-907). Plaintiffs also assert that Michigan law should govern the Magnuson-Moss Warranty Act ("MMWA") claim (Count III) asserted on behalf of putative class members in 36 states. (*Id.* ¶¶ 21, 835). In addition, they allege negligence claims on behalf of Arkansas, Louisiana, Maryland, and Ohio putative class members, without specifying what law should apply (Count V). (*Id.* ¶¶ 908-16). Finally, plaintiffs bring claims under an array of state consumer protection statutes. These claims are not alleged under Michigan law, but instead under the law of the state where each plaintiff resides. (*Id.* ¶ 917, *et seq.*).

---

[1]  Of the plaintiffs and vehicles involved here, the only vehicle that arguably was bought outside of the plaintiff's state of residence is that of Paija Jackson, who resides in the District of Columbia. His grandmother purchased a 2011 Buick Regal in Mississippi, and then when she became ill Mr. Jackson "took possession of the car." (Post-Sale Compl. ¶ 39).

### B.      New GM Vehicles And Their Component Parts Are Built Across The Globe.

Although New GM's headquarters is located in Michigan, the vehicles it sells and their component parts are designed and built in various different states and countries. Only one of the eight vehicle models owned by plaintiffs—the 2011 Chevrolet Traverse—was actually built in Michigan. (Ex. 1 ¶ 12). The 2010 Buick LaCrosse was assembled in Fairfax, Kansas. (*Id.*) The 2011 Buick Regal was assembled in Antwerp, Belgium. (*Id.*) The 2010 Chevrolet Cobalt was assembled in Lordstown, Ohio. (*Id.*) The 2010 and 2011 Chevrolet HHR were assembled in Ramos Arizpe, Mexico. (*Id.*) The 2010, 2012, and 2013 Chevrolet Impala, as well as the 2011 and 2012 Chevrolet Camaro, were assembled in Oshawa, Ontario, Canada. (*Id.*) The 2014 Chevrolet Silverado was assembled in Roanoke, Indiana. (*Id.*)

These vehicles are built using parts sourced from around the world. For example, Mexico supplies 51% of the 2014 Chevrolet Silverado's parts and another 9% of its parts come from countries other than the U.S., Canada, or Mexico. (Ex. 1.M). For the 2013 Impala, 25% of its parts come from outside the U.S. or Canada, and its engine was made in Canada. (Ex. 1.L). Certain plaintiffs assert allegations concerning ignition switches in their vehicles. (Post-Sale Compl. ¶¶ 30, 34, 35, 42, 44, 47, 50, 53, 66, 70, 72, 78, 79). The ignition switches in plaintiffs' eight vehicle models were sourced from three different suppliers, headquartered in three different countries, and manufactured in three other countries. The ignition switches for the 2010 Chevrolet Cobalt and the 2010 Chevrolet HHR were built in Mexico by Delphi Automotive, which is headquartered in the United Kingdom. (Ex. 2 Decl. of Ralf Nickel ¶ 6). The ignition switches for the 2010 and 2012 Chevrolet Impala and the 2011 and 2012 Chevrolet Camaro were manufactured in China by Alps Electric, which is headquartered in Japan. (*Id.* ¶ 7). And, depending on the model at issue, the ignition switches for the 2013 Chevrolet Impala were manufactured either in China by Alps Electric or in Thailand by Valeo, which is headquartered

in France.  (*Id.* ¶ 8).

### C.     Plaintiffs Were Told That Their Rights Vary From State To State.

Every New GM vehicle sold new by an authorized New GM dealership comes with a booklet specifying the owner's express or "glove box" warranty.  (Ex. 1 ¶ 13; Ex. 1.F, 2010 Chevrolet Warranty Booklet; Ex. 1.G, 2010 Buick Warranty Booklet; Ex. 1.H, 2014 Chevrolet Warranty Booklet).  The duration of that "glove box" warranty may vary from model to model but, generally speaking, New GM vehicles are covered by an express bumper-to-bumper warranty for a certain number of years or a certain number of miles, whichever occurs first (e.g., 3 years / 36,000 miles or 4 years / 50,000 miles).  (*See, e.g.*, Ex. 1.F at 2; Ex. 1.G at 2; Ex. 1.H at 2).  With respect to any implied warranty, the booklet states in bold language:

> **Any implied warranty of merchantability or fitness for a particular purpose applicable to this vehicle is limited in duration to the duration of this written warranty.  Performance of repairs and needed adjustments is the exclusive remedy under this written warranty or any implied warranty.  GM shall not be liable for incidental or consequential damages, such as, but not limited to, lost wages or vehicle rental expenses, resulting from breach of this written warranty or any implied warranty.**

(Ex. 1.F at 10; Ex. 1.G at 9; Ex. 1.H at 12-13).

Immediately following this notice regarding the limitation on any implied warranties, the booklet advises customers that:  "**[s]ome states** do not allow limitations on how long an implied warranty will last or the exclusion or limitation of incidental or consequential damages." (*Id.* (emphasis added)).  It also informs owners that "[t]his warranty gives you specific legal rights and you may also have other rights **which vary from state to state**."  (*Id.* (emphasis added); *see also id.* at 16, 11, and 19, respectively ("Your [warranty] extension rights **may vary depending on state law**.") (emphasis added); *id.* at 32, 28, and 36, respectively ("Laws in many states permit owners to obtain a replacement vehicle or a refund of the purchase price under certain circumstances.  The provisions of these laws **vary from state to state**.") (emphasis added)).

6

In addition to the warranty booklet, owner manuals inform buyers that applicable laws vary by state and locality on a range of issues, which can include seat belt use, child restraints, remote starters, headlamps, pumping fuel, and obtaining police reports after an accident.  (Ex. 1.I, 2010 Chevrolet Cobalt Owner Manual at 2-11, 2-43, 3-6, 4-11, 6-10, 8-13; Ex. 1.J, 2010 Buick LaCrosse Owner Manual at 1-8, 2-10, 2-48, 5-5, 8-51; Ex. 1.K, 2011 Chevrolet Traverse Owner Manual at 2-5, 3-16, 3-59, 9-43).

Documents that customers receive from dealers also state that the law of the local jurisdiction, not Michigan, would control.  Plaintiffs who purchased their vehicles new did so pursuant to a signed contract with a dealer.  (Ex. 1 ¶ 11).  Sales contracts between consumers and dealers may contain a variety of terms specifically addressing the applicable law, such as express choice-of-law clauses, limitations in implied warranties and consequential damages, arbitration provisions, and other terms indicating that the law of the state where the dealer is located governs a variety of issues.  (*E.g.*, Exs. 1.A-E).

## ARGUMENT

## I.  APPLYING MICHIGAN LAW TO PLAINTIFFS' CLAIMS WOULD BE UNCONSTITUTIONAL.

### A.  A Single State's Law Cannot Apply To Plaintiffs' Claims Unless That State Has Significant Contacts With Each Plaintiff's Claims.

As a matter of basic due process and fundamental fairness—two bedrock principles of American constitutional jurisprudence—the United States Supreme Court has long held that a single state's law cannot be applied to a dispute in the absence of significant contacts.  "[F]or a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair."  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818 (1985) (rejecting the application of Kansas law to gas leases located in eleven

states); *see also Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312-13, 332 (1981) (same). "When considering fairness in this context, an important element is the expectation of the parties." *Shutts*, 472 U.S. at 822. "The parties … have a due process right to have their claims governed by the state law applicable to their dispute." *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 457 (D.N.J. 1998); *see also Ford Ignition Switch*, 174 F.R.D. at 348. Accordingly, courts "must apply an individualized choice of law analysis to each plaintiff's claims." *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 627 (3d Cir. 1996).

A state must have a "'significant contact or significant aggregation of contacts' to the *claims* asserted by each" plaintiff to apply that state's law. *Shutts*, 472 U.S. at 821-22 (emphasis added). The constitutional question requires inquiry into a state's contacts with *each plaintiff's claims*, not a state's contacts with the *defendant*. The facts in *Shutts* confirm that a state's contacts with the defendant are legally insufficient. *Shutts* explains that the defendant, Phillips Petroleum, "owns property and conducts substantial business in [Kansas], so Kansas certainly has an interest in regulating petitioner's conduct *in Kansas*." *Id.* at 819 (emphasis added). But Kansas had a "lack of 'interest' in claims unrelated to that State" such that "application of Kansas law to every claim in this case is sufficiently arbitrary and unfair as to exceed constitutional limits." *Id.* at 822. The fact that Phillips Petroleum had substantial property and business in Kansas only allowed Kansas to apply its law to Kansas class members' claims, not claims of plaintiffs outside its borders.

*Shutts* is complemented by other Supreme Court decisions prohibiting a state's laws from punishing conduct occurring in another state where that conduct is legal. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 421 (2003). "A basic principle of federalism is that each State may make its own reasoned judgment about what conduct is permitted or

proscribed within its borders, and each State alone can determine what measure of punishment, if any, to impose on a defendant who acts within its jurisdiction." *Id.* at 422; *see also Edgar v. Mite Corp.*, 457 U.S. 624, 643 (1982); *Bigelow v. Virginia*, 421 U.S. 809, 822-23 (1975).

*BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 (1996), illustrates the bar against state laws being projected into other states' jurisdictions. In *Gore*, the Alabama courts granted plaintiffs' request for punitive damages based on the number of BMW cars nationwide that had been repainted pre-sale. *Id.* at 564. The Supreme Court reversed, explaining that states do not "provide [consumer] protection in a uniform manner," resulting in "a patchwork of rules representing the diverse policy judgments of lawmakers in 50 States." *Id.* at 569-70. The Supreme Court thus rejected plaintiffs' proposed uniform rule requiring disclosure of all pre-sale repairs. *Id.* at 570. "[W]hile we do not doubt that Congress has ample authority to enact such a policy for the entire Nation, it is clear that no single State could do so, or even impose its own policy choice on neighboring States." *Id.* at 571; *see also id.* at 572-73.

### B. The Location Of A Defendant's Headquarters Or Principal Place Of Business Does Not Provide A Basis For Applying That State's Law To Out-Of-State Plaintiffs.

Applying these constitutional principles and state choice-of-law rules, courts have consistently held that a state's law cannot be applied to a plaintiff's claims because the defendant has its headquarters or principal place of business in that state. This general rule has been repeatedly enforced where plaintiffs seek to have Michigan law apply to putative multi-state classes against automotive companies. Again and again, federal courts have applied constitutional principles and state choice-of-law rules to reject plaintiffs' arguments and hold that the law of each plaintiff or putative class member's home state must govern his or her claims.

In *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012 (7th Cir. 2002), plaintiffs brought a putative class action against Ford alleging that tires on certain vehicles were prone to fail,

diminishing the vehicles' market value.  *Id.* at 1014-15.  The MDL district court, sitting in Indiana, applied the law of the "headquarters of the defendants, because that is where the products are designed and the important decisions about disclosures and sales are made," meaning that Michigan law would apply to the case against Ford.  *Id.* at 1015.  The Seventh Circuit reversed: "Neither Indiana nor any other state has applied a uniform place-of-the-defendant's-headquarters rule to products-liability cases."  *Id.* at 1016.

In *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332 (D.N.J. 1997), the plaintiffs brought putative class actions against Ford alleging that ignition switches in approximately 23 million vehicles had a propensity to short-circuit.  *Id.* at 336.  Like plaintiffs here, the *Ford Ignition Switch* plaintiffs sought to apply Michigan law nationwide:

> Plaintiffs argue that Michigan has the greater interest in having its law applied because Ford's headquarters are located in Michigan, the vehicles in question were manufactured there, decisions relating to the allegedly defective ignition switches were made there, and any misrepresentations, statements or advertisements regarding the Ford vehicles originated in Michigan.  Further, plaintiffs claim that Michigan has an interest in regulating Ford's behavior and in making sure that it adheres to the minimum levels of care expected of Michigan corporations.

*Id.* at 348.  The MDL court rejected these arguments, holding that each plaintiff's home state has an interest in protecting its consumers from in-state injuries caused by foreign corporations and in delineating the scope of recovery for its citizens under its own laws.  *Id.*  "While it might be desirable, for the sake of efficiency, to settle upon one state—like Michigan or New Jersey—and apply its law in lieu of the other 49 jurisdictions, due process requires individual consideration of the choice of law issues raised by each class member's case before certification."  *Id.*  "Thus, the court will apply the law of each of the states from which plaintiffs hail."  *Id.*

The district court rejected similar arguments in *In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, 177 F.R.D. 360 (E.D. La. 1997).  "Plaintiffs maintain that the application of Michigan law to all claims in this litigation will not offend notions of due process or the Full

Faith and Credit clause of the Constitution because Ford has its principal place of business in Michigan and design decisions concerning the Bronco II were made in Michigan." *Id.* at 371. The court found plaintiffs' analysis unacceptable and ruled that a constitutional choice-of-law analysis was required because plaintiffs sought "to apply the law of a single state to the claims of citizens of fifty-one (51) United States jurisdictions, who purchased their vehicles in fifty-one jurisdictions, involving vehicles that were manufactured in Kentucky that had an alleged defect [that] manifested itself in fifty-one United States jurisdictions." *Id.* at 370-71. In reaching this decision, the court rejected the plaintiffs' characterization of "Michigan's contacts to this litigation as 'overwhelming,'" because they failed to explain "how Michigan's contacts are more significant than the contacts of the state in which the Bronco IIs were manufactured, where the alleged defect manifested itself, where plaintiffs' purchased their vehicles, where plaintiffs' entered the complained-of transactions, and/or where the allegedly fraudulent conduct occurred." *Id.* at 371. The court concluded by holding that Michigan law could not be applied to the claims of the hundreds of thousands of putative class members. *Id.*

Likewise, in *Rosen v. Chrysler Corp.*, No. 97-CV-60374-AA, 2000 WL 34609135 (E.D. Mich. July 18, 2000), the plaintiffs sought the application of Michigan law to claims filed on behalf of a putative nationwide class against Chrysler arising from alleged misrepresentations about a four-wheel-drive system: "As in *Ford Ignition Switch*, plaintiffs contend that this court should apply Michigan's Consumer Protection Act on a nationwide class basis because the allegedly deceptive advertising emanated from Chrysler's Michigan headquarters." *Id.* at *1, 3, 10. The court flatly rejected this argument: "[I]t is the state where the consumer is located which would have the greatest interest in vitiating its own laws to protect its citizens." *Id.* To "the extent Michigan has an interest in protecting consumers from harm … this interest arises from

plaintiffs' in-state residence, in-state purchases, or from damages suffered in-state." *Id.* "Due process concerns and choice-of-law analysis militate in favor of having the law of each member plaintiff's forum control." *Id.* at *12.

In *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Prods. Liab. Litig.*, 785 F. Supp. 2d 925 (C.D. Cal. 2011), the plaintiffs—represented by most of the same attorneys serving as Lead Counsel—argued that California law should apply nationwide to a putative "economic loss" class like the proposed class here, because Toyota's American headquarters is located in California. *Id.* at 927. They tried to achieve that result by moving on behalf of only plaintiffs who had filed in California and seeking to use only California choice-of-law rules. *Id.* The court denied the plaintiffs' motion, explaining that allowing California law to apply nationwide would "alter, and indeed expand the substantive rights of some Plaintiffs and [] diminish the substantive rights of the Toyota Defendants, at times producing vastly different results as to the non-moving Plaintiffs who filed in other states." *Id.* at 932. *See also Skeen v. BMW of N. Am., LLC*, No. 2:13-cv-1531-WHW-CLW, 2014 WL 283628, at *7-8 (D.N.J. Jan. 24, 2014) (rejecting the argument that the law of New Jersey, BMW of North America's headquarters, should apply to claims by plaintiffs from Illinois and Georgia and instead applying Illinois and Georgia law); *Feldman v. Mercedes-Benz USA, LLC,* No. 2:11-cv-00984 (WJM), 2012 WL 6596830, at *6-8 (D.N.J. Dec. 18, 2012) (rejecting the argument that the law of New Jersey, Mercedes-Benz USA's headquarters, should apply to claims for fraud and breach of contract, and instead holding that the laws of each plaintiff's home state would govern).

All these decisions illustrate the widely recognized rule of law that the location of the defendant's headquarters or principal place of business is ***not*** a significant contact that could justify applying that state's law to plaintiff's claims. This rule of law is not unique to the

automotive industry.  Indeed, courts across the country have refused to apply a single state's

laws to multi-state claims in multiple industries. For example, in *In re St. Jude Med., Inc.*, 425

F.3d 1116 (8th Cir. 2005), the plaintiffs brought claims based on an allegedly defective heart

valve.  *Id.* at 1118.  The district court applied Minnesota law to claims of plaintiffs in other states

because the defendants "had significant contacts with Minnesota, including [St. Jude Medical]

being headquartered in Minnesota, and the fact that 'much of the conduct relevant' to the claims

'occurred or emanated from Minnesota.'"  *Id.* at 1119-20.  The Eighth Circuit reversed, holding

that the district court erred because it "did not conduct a thorough conflicts-of-law analysis with

respect to each plaintiff class member before applying Minnesota law." *Id.* at 1120.

"[P]rotection of out-of-state parties' constitutional rights requires an inquiry into their claims'

contacts with Minnesota and their individual state laws before concluding Minnesota law may

apply."  *Id.*[2]

---

[2]  *See also Grandalski v. Quest Diagnostics Inc.*, 767 F.3d 175, 182 (3d Cir. 2014) (holding that the law of plaintiffs' home states, rather than New Jersey, must apply to their claims where "nothing else about the relationship between the parties, other than the fortuitous location of the defendant's headquarters, took place in the state of New Jersey") (internal quotation marks and brackets omitted); *Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 208 (3d Cir. 2013); *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 946-47 (6th Cir. 2011); *Casa Orlando Apartments, Ltd. v. Fed. Nat'l Mortg. Ass'n*, 624 F.3d 185, 194 (5th Cir. 2010); *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1185, 1187-88 (9th Cir. 2001); *Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 449 (D.N.J. 2012) (holding that "the mere fact that a company is headquartered in New Jersey or 'that unlawful conduct emanated from New Jersey' will not supersede the numerous contacts with the consumer's home state"); *Elvig v. Nintendo of Am.*, 696 F. Supp. 2d 1207 (D. Colo. 2010) (rejecting plaintiffs' argument that Washington, where defendants had its corporate headquarters and allegedly designed, manufactured, and tested its products, could be applied to plaintiffs in other States); *In re Masonite Corp. Hardboard Siding Prods. Liab. Litig.*, 170 F.R.D. 417, 422-23 (E.D. La. 1997) (rejecting the argument that plaintiffs "can proceed under the law of Illinois, the state in which Masonite designs and tests its products, and where Masonite has its primary place of business"); *Cortina v. Wal-Mart, Inc.*, No. 13-CV-2054 BAS DHB, 2015 WL 260913, at *2-3 (S.D. Cal. Jan. 20, 2015);  *Powers v. Lycoming Engines*, 272 F.R.D. 414, 423-24 (E.D. Pa. 2011); *Nikolin v. Samsung Elecs. Am., Inc.*, No. CIV. A. 10-1456 (GEB), 2010 WL 4116997, at *4 (D.N.J. Oct. 18, 2010); *In re DirecTV Early Cancellation Fee Litig.*, No. SACV 08-0741 AG (ANX), 2009 WL 2912656, at *4-5 (C.D. Cal. Sept. 9, 2009); *Tidenberg v. BIDZ.com, Inc.*, No. CV 08-5553 PSG (PMO), 2009 WL 605249 (C.D. Cal. Mar. 4, 2009); *Thompson v. Jiffy Lube Int'l, Inc.*, 250 F.R.D. 607 (D. Kan. 2008); *Estate of Felts v. Genworth Life Ins. Co.*, 250 F.R.D. 512, 522 (W.D. Wash. 2008); *Lantz v. Am. Honda Motor Co.*, No. 06 C 5932, 2007 WL 1424614, at *5 (N.D. Ill. May 14, 2007); *Berry v. Budget Rent A Car Sys., Inc.*,

Decisions within the Southern District of New York have followed this rule of law and refused to apply the law of a defendant's headquarters or principal place of business nationwide in multidistrict litigation concerning a video game. In *In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139 (S.D.N.Y. 2008), the plaintiffs filed claims, including for breach of implied warranty and unjust enrichment, against the game manufacturer alleging that it had concealed a lewd mini-game within the broader game. *Id.* at 143. The plaintiffs argued that New York law should apply to their claims, but the court held that even "though portions of the defendants' allegedly deceptive marketing may have been conceived at the defendants' principal places of business in New York, the actual deception occurred at the time each plaintiff purchased a copy of" the game. *Id.* at 146, 149. "Because the fraud at issue in this case occurred in the state of purchase, and as states have a strong interest in protecting consumers with respect to sales within their borders, but they have a relatively weak interest, if any, in applying their policies to consumers or sales in neighboring states," the laws of the state where each plaintiff purchased his or her copy of the game would apply. *Id.* (internal quotation marks and citation omitted).[3]

The rule that the location of defendant's headquarters or principal place of business is not

---

497 F. Supp. 2d 1361, 1365-66 (S.D. Fla. 2007); *In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 83 (D. Mass. 2005); *Compaq Computer Corp. v. Lapray*, 135 S.W.3d 657, 662, 680-81 (Tex. 2004); *In re Baycol Prods. Litig.*, 218 F.R.D. 197 (D. Minn. 2003); *Montgomery v. New Piper Aircraft, Inc.*, 209 F.R.D. 221, 228-29 (S.D. Fla. 2002); *Lyon v. Caterpillar, Inc.*, 194 F.R.D. 206, 215 (E.D. Pa. 2000); *Clay v. Am. Tobacco Co.*, 188 F.R.D. 483, 487, 497-98 (S.D. Ill. 1999); *Poe v. Sears, Roebuck & Co.*, No. CIVA1:96-CV-358-RLV, 1998 WL 113561 (N.D. Ga. Feb. 13, 1998); *Hastings v. Fid. Mortg. Decisions Corp.*, 984 F. Supp. 600, 615 (N.D. Ill. 1997).

[3] *See also, e.g.*, *In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. 61, 70-71 (S.D.N.Y. 2002) (rejecting plaintiffs' argument that New Jersey, the manufacturer defendants' "home state," had an interest in "holding its corporate citizens accountable [that] is so substantial that it trumps all other factors" and instead finding this interest insufficient compared to the interest of "every other state in ensuring that its own citizens are compensated for their injuries, [and] that the standards it set for product sales within its borders are complied with"); *Feinstein v. Firestone Tire & Rubber Co.*, 535 F. Supp. 595 (S.D.N.Y. 1982).

a significant contact with plaintiffs' claims is consistent with the Supreme Court's focus on the "expectation of the parties."  *Shutts*, 472 U.S. at 822.  *St. Jude Medical* explained that there "is no indication out-of-state parties 'had any idea that Minnesota law [where the defendant was headquartered] could control' potential claims when they received their" products.  425 F.3d at 1120.  Rather, consumers expect the law where they live or purchased the product to apply:

> It is reasonable to assume that most consumers expect to be protected by the laws applicable in the state where they live, purchase a product and use it.  It is less likely that consumers make purchases after carefully assessing where the manufacturer is located, where the item was produced and consequently what recourse they would have under the laws of such locations if the product turns out to be defective.

*Elvig v. Nintendo of Am., Inc.*, 696 F. Supp. 2d 1207, 1215 (D. Colo. 2010).  Applying the law of a product manufacturer's headquarters would create uncertainty for purchasers, as they might be able to recover damages from one manufacturer but not another for the exact same defect because of differences in laws between the states in which the manufacturers are headquartered.  *Id.* at 1214.  The "expectations of the parties" lead to applying the laws of the states where the plaintiffs reside or purchased the product, rather than where the manufacturer is headquartered or has its principal place of business.[4]

Moreover, applying the law of an out-of-state manufacturer's headquarters does not mesh with each state's interest in protecting its own citizens, nor does it comport with notions of federalism, particularly the limits on states regulating transactions beyond their borders.  No state would apply another state's law because an alleged tortfeasor is headquartered or has its

---

[4]  *See Felts*, 250 F.R.D. at 522 (holding that law of Virginia where defendant was headquartered could not apply to non-Virginia plaintiffs, in part because "there is no reason to suspect that class members would expect Virginia law, rather than the law of the state in which they reside, to apply to their claims"); *In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 457 (E.D. La. 2006) ("As to the individual plaintiffs, it is highly unlikely that a plaintiff residing outside of New Jersey [where defendant was located] could have reasonably expected that his or her personal injury claims would be governed by New Jersey law."); *Montgomery*, 209 F.R.D. at 228; *Endo v. Albertine*, No. 88 C 1815, 1995 WL 170030 (N.D. Ill. Apr. 7, 1995).

principal place of business in that other state.   As the Seventh Circuit explained in *Bridgestone/Firestone*, Indiana would not apply Michigan law to domestic vehicle sales within its borders any more than it would apply Korean law to Hyundai sales or French law to Michelin tire sales.   288 F.3d at 1018.   Instead, "Indiana has consistently said that sales of products in Indiana must conform to Indiana's consumer-protection laws and its rules of contract law," *id.*, just like every other state applies its own laws to products within its borders.   *See also Elvig*, 696 F. Supp. 2d at 1213 ("The Plaintiffs' suggestion that Nintendo's sales practices anywhere in the country should be governed by Washington law would subvert the ability of other states to protect [their] citizens and to regulate those who offer products or services to its citizens.").[5]

### C.   Michigan Does Not Have Sufficient Contacts With Each Plaintiff's Claims For Michigan's Law To Be Applied.

Applying Michigan law to the claims of the 21 plaintiffs—none of whom live in, or purchased a vehicle in, Michigan—would violate the parties' due process rights.   The Post-Sale Complaint includes "choice of law allegations" (Post-Sale Compl. ¶¶ 835-45), but Lead Counsel ignore the fundamental requirement that Michigan must have significant contacts with ***each plaintiff's claims***, not with the ***defendant***, before Michigan's law might apply to out-of-state plaintiffs.

Plaintiffs' claims have little, if any, contacts with Michigan, and whatever "contacts" they have fall well short of the "significant" contacts that could allow Michigan law to apply

---

[5]   *See also Szymczak v. Nissan N. Am., Inc.*, No. 10 CV 7493 (VB), 2011 WL 7095432, at *12 (S.D.N.Y. Dec. 16, 2011) ("In a multi-state consumer class action, based on choice-of-law considerations, courts have applied the law of the buyer's domicile.   States have no interest in applying their consumer protection statutes to buyers who live out of state and whose purchases occur out of state.") (citations omitted); *In re Panacryl Sutures Prods. Liab.*, 263 F.R.D. 312, 320 (E.D.N.C. 2009) ("the interests of the prospective class members' home states in protecting residents from in-state injuries caused by out-of-state entities outweigh New Jersey's interest in regulating domestic corporations."); *Cortina*, No. 2015 WL 260913, at *3.

here.  Plaintiffs claim that their vehicles dropped in value.  (Post-Sale Compl. ¶¶ 835-45).  But any alleged economic loss would have occurred, if at all, in the states where plaintiffs reside, not in Michigan.  *See Bridgestone/Firestone,* 288 F.3d at 1016 ("Financial loss (if any …) was suffered in the places where the vehicles and tires were purchased at excessive prices or resold at depressed prices.").[6]  Plaintiffs also claim that they overpaid for their cars.  (Post-Sale Compl. ¶ 881).  Plaintiffs did not buy their cars in Michigan, but rather from dealers or other third parties in their home states.  Plaintiffs' claims under the MMWA and for breach of implied warranty depend on whether the vehicles were merchantable.[7]  (Post-Sale Compl. ¶¶ 891, 905).  Any alleged vehicle problems occurred where plaintiffs drove the vehicles, which was generally in their home states, not Michigan.  (*See, e.g., id.* ¶¶ 35, 50).  Plaintiffs also claim that information was concealed from or misrepresented to them, and that they relied on such misrepresentations or omissions in purchasing their vehicles.  (*See id.* ¶¶ 868-70).  Plaintiffs allegedly received misrepresentations, or supposedly should have received information, in their home states, not in Michigan.  Plaintiffs' alleged reliance would have led them to buy vehicles, and purportedly to overpay for them, in each plaintiff's home state, not in Michigan.  (*See id.* ¶ 873).  Michigan, in

---

[6]  *See also Spence v. Glock*, 227 F.3d 308, 312 (5th Cir. 2000) ("Plaintiffs allege that they suffered economic loss because of the defective design of the guns they bought … [T]he economic injury occurred when and where plaintiffs bought the guns."); *Corder v. Ford Motor Co.*, 272 F.R.D. 205, 209 (W.D. Ky. 2011) (holding, with respect to alleged economic losses caused by vehicle having an inferior engine, that "any injury would have occurred when the consumer bought the truck without the benefit of a full disclosure of the engine's attributes"); *Montgomery*, 209 F.R.D. at 229.

[7]  Under the MMWA, "the obligations of the warranty are solely the creation of state law" and "state law … governs implied warranties except where explicitly modified by" the MMWA's language.  *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 247, 249 (2d Cir. 1986); *see also* 15 U.S.C. § 2301(7) (defining "implied warranty" as "an implied warranty arising under state law (as modified by sections 2308 and 2304(a)"); *Feinstein*, 535 F. Supp. at 599.  The MMWA "in numerous respects is essentially a vehicle for vindicating state-law warranty claims in federal court."  *In re Gen. Motors Corp. Dex-Cool Prods. Liab. Litig.*, 241 F.R.D. 305, 315 (S.D. Ill. 2007).  Thus, the elements and proof necessary for plaintiffs' breach of implied warranty and MMWA claims are generally the same and the two claims are treated similarly in this brief.

sum, lacks almost any contacts with plaintiffs' claims.

Instead of focusing on Michigan's contacts with plaintiffs' claims, Lead Counsel rely on New GM's contacts with Michigan.  As discussed at length in the prior section, courts have repeatedly held that the defendant's contacts with a state cannot support applying that state's law to out-of-state plaintiffs.  Thus, although Lead Counsel claim that New GM does "substantial business" in Michigan and that Michigan hosts a "significant number" of New GM's operations, (Post-Sale Compl. ¶¶ 837-38), the Supreme Court expressly has held that such allegations were legally insufficient.  *Shutts*, 472 U.S. at 819, 822.  Likewise, allegations that New GM is headquartered in Michigan, that its conduct "emanated" from its headquarters, that it made decisions there, and Lead Counsel's other choice-of-law allegations (Post-Sale Compl. ¶¶ 836, 839-45), are nearly identical to allegations that courts repeatedly have held are insufficient to apply Michigan law to out-of-state plaintiffs.  *E.g.*, *Bridgestone/Firestone*, 288 F.3d at 1016; *Ford Ignition Switch*, 174 F.R.D. at 348; *Ford Bronco II*, 177 F.R.D. at 371; *see also St. Jude Med.*, 425 F.3d at 1119-1120.

In addition to the law supporting New GM's argument, the facts show that the vehicles and parts at issue here have limited or no connections to Michigan.  Seven of the eight vehicle models were built outside Michigan, in locations such as Indiana, Kansas, Ohio, Belgium, Canada, and Mexico.  (Ex. 1 ¶ 12).  Indeed, the ***only*** vehicle assembled in Michigan at issue in this choice-of-law briefing was the 2011 Chevrolet Traverse.  (*Id.*).  The individual parts at issue are similarly diverse; for example, the ignition switches were manufactured in China, Mexico, and Thailand.  (Ex. 2 ¶¶ 6-8).

The parties' reasonable expectations also establish that they did not expect Michigan law to apply.  New GM sells cars to dealers in every state.  New GM expects the law of a consumer's

home state to govern any warranty-related claims against New GM.  *See Elvig,* 696 F. Supp. 2d at 1215; *Tyler v. Alltel Corp.*, 265 F.R.D. 415, 425–26 (E.D. Ark. 2010); *In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 457 (E.D. La. 2006); *Jones ex rel. Jones v. Winnebago Indus., Inc.,* 460 F. Supp. 2d 953, 975 (N.D. Iowa 2006).  Indeed, New GM's warranty booklets state that "[t]his warranty gives you specific legal rights and you may also have other rights **which vary from state to state**."  (*See, e.g.*, Ex. 1.F at 10; Ex. 1.G at 9; Ex. 1.H at 12-13; *see also* Ex. 1.F at 10, 16, 32; Ex. 1.G. at 9, 11, 28; Ex. 1.H. at 12-13, 19, 36 (referring to "[s]ome states" having special rules on limiting implied warranties, that the provisions of refund or replacement laws "vary from state to state," and that warranty extension rights "may vary depending on state law")).

Similarly, plaintiffs could not have reasonably expected that Michigan law, rather than the laws of their home states, would apply to their claims.  *E.g.*, *St. Jude Med.,* 425 F.3d at 1120; *Elvig*, 696 F. Supp. 2d at 1213.  New GM's warranty booklets tell vehicle owners, like plaintiffs here, that their rights vary from state to state.  (Exs. 1.F-H).  New GM's owner manuals likewise explain that the laws on a range of subjects vary by state and locality.  (Exs. 1.I-K).  At the time of purchase, many plaintiffs signed contracts referring to the law of the state where the vehicle was purchased, thus indicating that state's law would apply to plaintiffs.  (*E.g.,* Ex. 1.A ("under the law of the State of New York controlling the sale ..."); Ex. 1.B ("the dealer may be liable to you under the Virginia Consumer Protection Act"); Ex. 1.D (referring to the buyer's rights under California law).  Finally, as explained by cases such as *Elvig*, applying the law of a manufacturer's headquarters would confuse vehicle owners.  696 F. Supp. 2d at 1214.  A New York resident would not expect Michigan law to apply to her New GM vehicle.  Much less would she expect that different, out-of-state legal regimes could govern if, for example, her New GM vehicle and Toyota vehicle have the exact same issue.

In fact, the Post-Sale Complaint tacitly ***admits*** that Michigan does not have sufficient contacts with all plaintiffs nationwide.  Plaintiffs ask that Michigan law be applied only to their claims of fraudulent concealment, unjust enrichment, MMWA, and breach of implied warranty. But plaintiffs also assert negligence claims on behalf of consumers in four states—Arkansas, Louisiana, Maryland, and Ohio—but do not contend that Michigan law applies to those claims. Plaintiffs also purport to assert claims for breach of each state's consumer protection statutes, alleging application of each state's law rather than Michigan's.  If Michigan law could constitutionally be applied nationwide, Lead Counsel could have pleaded all of plaintiffs' claims under Michigan law to avoid the challenges that applying multiple states' laws presents for class certification.  *See, e.g., Bridgestone/Firestone*, 288 F.3d at 1015 ("No class action is proper unless all litigants are governed by the same legal rules.").  Their decision not to do so confirms that Michigan law cannot be applied to the claims of the 21 plaintiffs or the putative nationwide class.

That Michigan law lacks significant contacts with plaintiffs' claims, and could therefore not be properly applied, would be clear in an individual case.  Courts have rejected arguments by automotive companies that Michigan law should apply to claims brought by plaintiffs who purchased, drove, and allegedly experienced injuries in other states.  *See, e.g., Moody v. Ford Motor Co.*, No. 03CV0784-CVE-PJC, 2006 WL 346433, at *2-3 (N.D. Okla. Feb. 13, 2006). Allowing Michigan law to displace the law of another state within that state's own borders could be seen as usurping that state's authority to provide its chosen level of protection to its citizens and govern transactions within its boundaries.  *E.g., Elvig*, 696 F. Supp. 2d at 1213.  Indeed, legislatures and courts in states other than Michigan may be particularly suspect of applying Michigan law given the number of automotive companies headquartered there, as they may

believe that Michigan law would be more favorable to automotive companies than their own laws. *See*, *e.g.*, *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 947 (6th Cir. 2011); *Spence v. Glock*, 227 F.3d 308, 314 (5th Cir. 2000).

Lead Counsel no doubt seek to apply Michigan law nationwide to avoid the fundamental class certification problems posed by applying each jurisdiction's laws. But the choice-of-law "calculus is not altered by the fact that it may be more difficult or more burdensome to comply with the constitutional limitations because of the large number of transactions which the State proposes to adjudicate." *Shutts*, 472 U.S. at 821. Under *Shutts*, the Court applies the same choice-of-law analysis to each plaintiff's claims regardless of whether the case is an individual one or brought as a putative class action. A class certification request cannot change the requirement that the Court must apply "an individualized choice of law analysis to each plaintiff's claims." *Georgine*, 83 F.3d at 627; *Ford Ignition Switch*, 174 F.R.D. at 348. The required individualized choice-of-law analysis here demonstrates that Michigan law cannot constitutionally be applied to plaintiffs who reside in and purchased their cars in in other states.

## II.  STATE CHOICE-OF-LAW PRINCIPLES REQUIRE APPLYING THE LAW OF EACH PLAINTIFF'S HOME STATE, NOT MICHIGAN LAW.

### A.  MDL Litigation Requires Applying The Choice-of-Law Principles of Each Transferor Court.

In addition to constitutional limitations, state choice-of-law principles require applying the substantive law of each of the 14 states to the claims made by that state's resident plaintiffs. To conduct this analysis, the court first must determine which state's choice-of-law rules apply. In making that determination, a federal court ordinarily applies the choice-of-law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. 61, 69 (S.D.N.Y. 2002). But this analytic approach gives way if it would allow a party to obtain a result in federal court that it could not achieve in state

court.  *See Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964).  In *Van Dusen*, the Supreme Court

held that a transfer of venue under 28 U.S.C. § 1404(a) would not change the law that applied;

instead, the transferee court must apply the choice-of-law rules of the state in which the case

originated.  *Id.*; *Rezulin Prods. Liab. Litig.*, 210 F.R.D. at 69.  Subsequently, courts have held

that the same principle applies to cases transferred and consolidated under 28 U.S.C. § 1407.  *See*

*Rezulin Prods. Liab. Litig.*, 390 F. Supp. 2d 319, 330 (S.D.N.Y. 2005); *Toyota Unintended*

*Acceleration*, 785 F. Supp. 2d at 931.  "When an action is transferred as part of an MDL, the

transferee court applies the choice of law rules of the state in which the action first was filed."

*Rezulin Prods. Liab. Litig.*, 390 F. Supp. 2d at 229 (*citing Menowitz v. Brown*, 991 F.2d 36, 40

(2d Cir. 1993)).[8]

The choice-of-law rules of the transferor states continue to apply even if the MDL

plaintiffs file an amended, consolidated complaint.   In *Rezulin*, for example, one plaintiff

originally filed suit in Louisiana and then another filed in New York; both were assigned to an

MDL pending in the Southern District of New York.  390 F. Supp. 2d at 329-30.  The plaintiffs

jointly filed an amended complaint in the MDL court and the court held that Louisiana's choice-

of-law rules applied to the Louisiana plaintiff's claims and New York's applied to the New York

plaintiff's claims: "Just as transfers pursuant to Sections 1404 and 1407 do not affect the

applicable choice of law rules, so too the next step in the streamlining process—namely

consolidation into one proceeding of two or more actions initially filed in different states—does

---

[8]   *See also e.g.*, *In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055
(8th Cir. 1996); *In re Air Crash Disaster Near Chicago, Illinois on May 25, 1979*, 644 F.2d 594, 610 (7th
Cir. 1981); *In re Prempro Prods. Liab. Litig.*, No. 4:04CV01202, 2008 WL 1699211, at *2 (E.D. Ark.
Apr. 9, 2008).

not affect them." *Id.* at 330 n.62.[9]

      Thus, for each individual plaintiff's claims here, this Court should apply the choice-of-law principles of the state from which the case was transferred, notwithstanding the filing of the Post-Sale Consolidated Complaint.  At a minimum, this Court should apply the choice-of-law principles of Arkansas, California, Florida, Illinois, and New York—the states in which 8 of the 21 plaintiffs first filed their actions.[10]

      In addition, the choice-of-law rules of plaintiffs' home states also apply to those plaintiffs who filed their claims directly in the MDL through the consolidated complaint. Lead Counsel concede as much, making clear that the consolidated complaint "is filed by each new Plaintiff as if they had filed in the district in which they reside."  (Post-Sale Compl. ¶ 25).  This is consistent with the prevailing rule, under which the applicable choice-of-law rules for direct-filed cases are those of "the 'originating' jurisdiction (*i.e.*, where the case would have been brought but for the [case management order] permitting direct filing), rather than the choice of law rules of the MDL Court.  … [T]he direct filing procedure is simply designed to promote judicial economy and conserve the parties' resources, not to alter the choice of law rules."  *Wahl v. Gen. Elec. Co.*, 983 F. Supp. 2d 937, 943 (M.D. Tenn. 2013); *see In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.,* No. 3:09–md–2100–DRH–PMF, 2011 WL 1375011, at *6 (S.D. Ill. Apr. 12, 2011) ("[T]he better approach is to treat foreign direct filed cases as if they were transferred from a judicial district sitting in the state where the case originated," which is "the

---

[9]  *See also In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 489 F. Supp. 2d 932, 936 (D. Minn. 2007); *In re Zimmer NexGen Knee Implant Prods. Liab. Litig.*, 890 F. Supp. 2d 896, 901 (N.D. Ill. 2012); *In re Educ. Testing Serv. Praxis Principles of Learning & Teaching: Grades 7-12 Litig.*, 517 F. Supp. 2d 832, 839 (E.D. La. 2007); *Brown v. Hearst Corp.*, 54 F.3d 21, 24 (1st Cir. 1995).

[10]  The following plaintiffs originally filed cases in state or federal courts in the following states: Arkansas (Nettleton Auto Sales, Inc.,); California (Anna Andrews, Randall Pina, Elizabeth Stewart, Dawn Tefft); Florida (Joni Ferden-Precht); Illinois (Patrick Painter), and New York (David Padilla).

state where the plaintiff purchased and was prescribed the subject drug.").[11]

Thus, as with the plaintiffs who originally filed elsewhere, for the remaining 13 plaintiffs who brought their claims for the first time in the Post-Sale Complaint, the Court should apply the choice-of-law rules of their home jurisdictions—*i.e.*, Arkansas, California, Iowa, Maryland, Missouri, New Jersey, New York, Oklahoma, and Virginia.

**B.    The Choice-of-Law Principles Of Every State RequireApplying The Varying Substantive Laws Of Each State.**

**1.    Tort Choice-of-Law Principles Require Applying The Substantive Law Of Each Plaintiff's Home State.**

For torts such as fraudulent concealment, three of the states at issue—Georgia, Maryland, and Virginia—apply *lex loci delicti* or the "law of the place of the tort."  *See Bullard v. MRA Holding, LLC*, 740 S.E.2d 622, 625 (Ga. 2013); *Erie Ins. Exch. v. Heffernan*, 925 A.2d 636, 648-49 (Md. 2007); *Jones v. R.S. Jones & Assocs., Inc.*, 431 S.E.2d 33, 34 (Va. 1993).  A tort is considered to have been committed where the alleged injury to the plaintiff occurs, which is where the plaintiff resides for economic loss claims.  *See*, *e.g.*, *Bridgestone/Firestone*, 288 F.3d at 1016; *Spence*, 227 F.3d at 312.  Thus, each of these states would apply the substantive law of the state where each plaintiff resides.

Florida, Illinois, Iowa, Missouri, New Jersey, and Oklahoma apply the Restatement (Second) of Conflict of Law's "most significant relationship" test.  *Bishop v. Florida Specialty*

---

[11]  *See also In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.,* No. 07–MD–01871, 2012 WL 3205620, at *2 (E.D. Pa. Aug. 7, 2012) (reasoning that applying the law of the home state "will promote uniform treatment between those Plaintiffs whose cases were transferred into the MDL from their home states and those Plaintiffs who filed directly in the MDL."); *In re Am. Med. Sys., Inc. Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:13-CV-19418, 2014 WL 637189, at *8 (S.D.W. Va. Feb. 18, 2014) (for direct-filed cases, "the choice of law that applies is the place where the plaintiff was implanted with the product"); *In re Watson Fentanyl Patch Prods. Liab. Litig,* 977 F. Supp. 2d 885, 888 (N.D. Ill. 2013); *In re Bausch & Lomb Inc. Contacts Lens Solution Prods. Liab. Litig.*, MDL No. 1785, 2007 WL 3046682, at *3 (D.S.C. Oct. 11, 2007); *Sanchez v. Boston Scientific Corp.*, No. 2:12-CV-05762, 2014 WL 202787, at *4 (S.D.W. Va. Jan. 17, 2014); *In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.*, No. 12-MD-2342, 2014 WL 2445790, at *2 (E.D. Pa. May 29, 2014).

*Paint Co.*, 389 So.2d 999, 1001 (Fla. 1980); *Townsend v. Sears, Roebuck and Co.*, 879 N.E.2d 893, 903 (Ill. 2007); *Zeman v. Canton State Bank*, 211 N.W.2d 346, 348-49 (Iowa 1973); *Thompson by Thompson v. Crawford*, 833 S.W.2d 868, 870 (Mo. 1992); *P.V. ex rel. T.V. v. Camp Jaycee,* 962 A.2d 453, 460 (N.J. 2008); *Hawk Enters., Inc. v. Cash Am. Int'l, Inc.*, 282 P.3d 786, 790-91 (Okla. Civ. App. 2012).   The District of Columbia applies a governmental interest test that relies heavily on the Restatement.   *Jones v. Clinch*, 73 A.3d 80, 82-83 (D.C. 2013).   The Restatement test generally weighs a number of different factors, but has presumptions for certain types of claims.   Restatement (Second) of Conflicts of Laws §§ 6, 145. "In an action for an injury to land or other tangible thing, the local law of the state where the injury occurred determines the rights and liabilities of the parties" unless another state can rebut this presumption.   Restatement (Second) of Conflicts of Laws §§ 6, 147; *see also Bishop*, 389 So.2d at 1001 ("The state where the injury occurred would, under most circumstances, be the decisive consideration in determining the applicable choice of law."); *Townsend*, 879 N.E.2d at 903; *Camp Jaycee*, 962 A.2d at 460.[12]   Here, the presumption in favor of the place of injury is reinforced by the facts that plaintiffs reside there and any relationship between the parties also is centered there.   Restatement (Second) of Conflicts of Laws § 145.   Thus, these states' conflict-of-law rules would apply the substantive law of each plaintiff's home state.

New York applies "an 'interest analysis' [which] involves several steps and focuses on determining which jurisdiction, 'because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation.'"   *Devore v. Pfizer Inc.*, 867 N.Y.S.2d 425, 427 (N.Y. App. Div. 2008) (internal quotation marks omitted) (citing *Cooney v. Osgood Mach.*, 612 N.E.2d 277, 81 N.Y.2d 66, 72 (N.Y. 1993)).   "When the purpose

---

[12]   *See also Spence*, 227 F.3d at 315; *Fed. Ins. Co. v. J.K. Mfg. Co.*, 933 F. Supp. 2d 1065, 1074 (N.D. Ill. 2013); *Am. Online, Inc. v. Nat'l Health Care Disc., Inc.*, 121 F. Supp. 2d 1255, 1270 (N.D. Iowa 2000).

of the statute is to regulate conduct, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders."  *Id.* at 428 (citing *Cooney*, 612 N.E.2d 277, 81 N.Y.2d at 72).  "[T]he place of the wrong is considered to be the place where the last event necessary to make the actor liable occurred," which is "where the plaintiffs' injuries occurred."  *Schultz v. Boy Scouts of Am., Inc.*, 480 N.E.2d 679, 682-83 (N.Y. 1985) (citation omitted); *see also Devore*, 867 N.Y.S.2d at 428; *Burnett v. Columbus McKinnon Corp.*, 887 N.Y.S.2d 405, 407 (N.Y. App. Div. 2009).  Applying New York's interest analysis, the Second Circuit has held that for "claims based on fraud, the locus of the tort is generally deemed to be the place where the injury was inflicted, rather than where the fraudulent act originated."  *In re Thelen LLP*, 736 F.3d 213, 220 (2d Cir. 2013); *see also Greene v. Hanover Direct, Inc.*, No. 06 Civ. 13308(NRB), 2007 WL 4224372, at *5 n.1 (S.D.N.Y. Nov. 19, 2007); *Seippel v. Jenkens & Gilchrist, P.C.*, 341 F.Supp.2d 363, 377 (S.D.N.Y. 2004); *Kingdom 5-KR-41, Ltd. v. Star Cruises PLC*, No. 01 CIV. 2946(AGS), 2002 WL 432390, at *12 (S.D.N.Y. Mar. 20, 2002).[13]  Thus, New York would apply the substantive law of each plaintiff's home state, where their alleged injuries occurred.

California applies a governmental interest test when there is a conflict among states' laws, which "carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law 'to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state' and then ultimately

---

[13] Although a small minority of district courts has applied the law of the state where the fraud was centered rather than the place of loss, *see*, *e.g.*, *In re Refco Inc. Secs. Litig.*, 892 F. Supp. 2d 534, 538 (S.D.N.Y. 2012); *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 327, 341 (S.D.N.Y. 2010), these cases pre-date *Thelen* and thus are no longer persuasive.  Nor are such decisions consistent with New York's highest court in cases such as *Schultz*, which hold that "when the defendant's negligent conduct occurs in one jurisdiction and the plaintiff's injuries are suffered in another," the place of injury controls.  480 N.E.2d at 679, 682-83.  Moreover, in those cases, the plaintiffs had more direct contacts with the state where the alleged fraud was centered than plaintiffs here do with Michigan.

applies 'the law of the state whose interest would be more impaired if its law were not applied.'" *McCann v. Foster Wheeler LLC*, 225 P.3d 516, 527 (Cal. 2010).  Where an injury occurs within a state's borders, that state generally has the predominant interest.  *Id.* at 535-37.  Thus, under California's choice-of-law rules, the substantive law of the states where plaintiffs reside and were allegedly injured applies to plaintiffs' claims.

Arkansas applies a hybrid of *lex loci delicti* and "five choice-influencing factors … : (1) predictability of results, (2) maintenance of interstate and international order, (3) simplification of the judicial task, (4) advancement of the forum's governmental interests, and (5) application of the better rule of law."  *Ganey v. Kawasaki Motors Corp., U.S.A.*, 234 S.W.3d 838, 846-47 (Ark. 2006).  *Lex loci delicti* would require applying the law of the state where each plaintiff resides and thus was allegedly injured.  Analyzing the five factors confirms this conclusion, as applying the law of the state where the plaintiff resides would be more predictable, maintain order by having each state's law apply to those within its borders, simplify the judicial task by providing a consistent result, and advance each state's interest in protecting its own citizens.  *Cf. Threlkeld v. Worsham*, 785 S.W.2d 249, 251-53 (Ark. Ct. App. 1990).

Finally, in tort cases, Kentucky applies its own substantive law "if there are significant contacts" with Kentucky, even if those are "not necessarily the most significant contacts."  *Foster v. Leggett*, 484 S.W.2d 827, 829 (Ky. 1972).  Thus, Kentucky would apply its own substantive law to its residents for tort claims, as the fact that any alleged injury of Kentucky plaintiffs occurred in Kentucky is a significant contact with Kentucky.  *See Petronis v. Churchill Downs, Inc.*, No. 2005-CA-001925-MR, 2007 WL 1520018, at *3 (Ky. App. May 25, 2007).[14]

---

[14]  Although none of the 21 plaintiffs are governed by Michigan's choice-of-law rules, Michigan likewise would apply each state's substantive law.  Michigan applies a version of *lex fori* (law of the forum) for tort claims and applies "Michigan law unless a 'rational reason' to do otherwise exists."  *Standard Fire Ins. Co. v. Ford Motor Co.*, 723 F.3d 690, 693 (6th Cir. 2013).  Applying Michigan choice-of-law rules,

### 2. Contract Choice-of-Law Rules Require Applying The Substantive Law Of The State In Which Each Plaintiff Resides Or Bought A Vehicle.

For contract claims such as alleged breach of implied warranty and MMWA violations,[15] Florida, Georgia, Maryland, and Virginia apply *lex loci contractus*, the law of the place where the contract was made. *State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So.2d 1160, 1163-64 (Fla. 2006); *Convergys Corp. v. Keener*, 582 S.E.2d 84, 86 (Ga. 2003); *Am. Motorists Ins. Co. v. ARTRA Grp., Inc.*, 659 A.2d 1295, 1301 (Md. 1995); *Black v. Powers*, 628 S.E.2d 546, 554 (Va. Ct. App. 2006). For consumer products such as vehicles, this means the place where the product was purchased. *See Karhu v. Vital Pharms., Inc.*, No. 13-60768-CIV, 2014 WL 815253, at *7 (S.D. Fla. Mar. 3, 2014); *Monticello v. Winnebago Indus., Inc.*, 369 F. Supp. 2d 1350, 1356 (N.D. Ga. 2005).[16]

Arkansas, Illinois, Iowa, Kentucky, Missouri, and New Jersey apply the Restatement (Second) of Conflict of Law's "most significant relationship" test to contract-based claims. *Scottsdale Ins. Co. v. Morrow Land Valley Co., LLC*, 411 S.W.3d 184, 189 (Ark. 2012); *Hussemann ex rel. Ritter v. Hussemann*, 847 N.W.2d 219, 224-25 (Iowa 2014); *Eclipse Mfg. Co. v. U.S. Compliance Co.*, 886 N.E.2d 349, 357-58 (Ill. App. Ct. 2007); *Illinois Tool Works v. Sierracin Corp.*, 479 N.E.2d 1046, 1050-51 (Ill. App. Ct. 1985); *State Farm Mut. Auto. Ins. Co. v. Hodgkiss-Warrick*, 413 S.W.3d 875, 878-89 (Ky. 2013); *Viacom, Inc. v. Transit Cas. Co.*, 138

---

the Sixth Circuit held that Tennessee law should be applied where "plaintiffs' insured was a Tennessee resident who sustained property damage in Tennessee allegedly caused by a defect in a vehicle registered and insured in Tennessee," despite Ford being headquartered in Michigan. *Id.* at 697-98.

[15]   MMWA claims, which as explained in footnote 7 are based on state warranty law, likewise are considered contract claims for choice-of-law purposes. *See David v. Am. Suzuki Motor Corp.*, 629 F. Supp. 2d 1309, 1315-16 (S.D. Fla. 2009); *Gen. Motors Dex-Cool.*, 241 F.R.D. at 315-18.

[16]   *See also Walewski v. ZeniMax Media, Inc.*, No. 6:11-CV-1178-Orl-28DAB, 2012 WL 834125, at *9 (M.D. Fla. Jan. 30, 2012); *David*, 629 F. Supp. 2d at 1316; *Connolly v. Samuelson*, 671 F. Supp. 1312, 1315 n.* (D. Kan. 1987).

S.W.3d 723, 724-25 (Mo. 2004); *Kramer v. Ciba-Geigy Corp.*, 854 A.2d 948, 959 (N.J. Super. Ct. App. Div. 2004).  Oklahoma generally uses a version of *lex loci contractus*, but for the sale of goods applies a version of the Restatement's most significant relationship test.  *See Bernal v. Charter Cnty. Mut. Ins. Co.*, 209 P.3d 309, 315-16 & n.25 (Okla. 2009).  The District of Columbia applies a governmental interest test that relies on the Restatement factors.  *Adolph Coors Co. v. Truck Ins. Exch.*, 960 A.2d 617, 620-21 (D.C. 2008).  For contract claims, the most-significant-relationship test weighs factors such as "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties."  Restatement (Second) of Conflicts of Laws § 188(2).  Here, the place of contracting and negotiation would have occurred where plaintiffs bought their vehicles, the place of performance and location of the vehicle would be where plaintiffs reside, and the last factor likewise weighs in favor of the state where the plaintiffs live.[17]

Under New York choice-of-law rules, courts apply a "center of gravity" or "grouping of contacts" analysis to contract claims.  *Fin. One Pub. Co. v. Lehman Bros. Special Fin.*, 414 F.3d 325, 336 (2d Cir. 2005) (citing *In re Allstate Ins. Co. (Stolarz)*, 613 N.E.2d 936 (N.Y. 1993)).  "Under the 'center of gravity' approach, a court may consider a number of significant contacts, including the place of contracting, the place of performance, the physical location of property that is the subject matter of the contract, and the domiciles or places of business of the contracting parties."  *Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 433 (2d Cir. 2012) (citing *Stolarz*, 613 N.E.2d 936, 81 N.Y.2d at 226).  The place of contracting

---

[17]  Although Michigan's choice-of-law rules do not apply to any of the 21 plaintiffs, Michigan applies *lex loci contractus* or, where that rule is unworkable, the Restatement.  *See Mill's Pride, Inc. v. Cont'l Ins. Co.*, 300 F.3d 701, 705 (6th Cir. 2002).  As explained in the text, either approach requires applying the substantive law of where plaintiffs purchased their vehicles or where they live, not Michigan's law.

and place of performance are given the greatest weight.  *Id.*  Applying this analysis to claims for breach of implied warranty and the MMWA, courts have selected the law of the state where plaintiff resides and made the purchase.  *See DiBartolo v. Abbott Labs.*, 914 F. Supp. 2d 601, 610-11 (S.D.N.Y. 2012); *Jackson v. Eddy's LI RV Center, Inc.*, 845 F. Supp. 2d 523, 530 (E.D.N.Y. 2012) (citing *Cali v. Chrysler Grp. LLC*, No. 10 CIV 7606(JSR), 2011 WL 383952, at *3 (S.D.N.Y. Jan. 18, 2011)); *Grand Theft Auto*, 251 F.R.D. at 149-150.

California choice-of-law principles for contracts are not entirely settled.  Some courts have applied a government interest analysis, similar to California's tort rules.  *Frontier Oil Corp. v. RLI Ins. Co.*, 63 Cal. Rptr. 3d 816, 834-35 (Cal. Ct. App. 2007).  On the other hand, California has a statute providing that a "contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made."  Cal. Civ. Code § 1646; *see also Frontier Oil*, 63 Cal. Rptr. 3d at 835-36.  If California Civil Code § 1646 applies, the place where any warranty is to be performed is where the relevant plaintiff's vehicles are located, which is where they live.  If the government interest analysis applies, then the substantive law of each relevant plaintiff's home residence will apply under *McCann's* logic.  225 P.3d at 535-37.

### 3.    Unjust Enrichment Claims Are Governed By The Substantive Law Of Each Plaintiff's Home State.

States vary on whether unjust enrichment is treated as a tort or contract claim for choice-of-law purposes, and some are unclear on which analysis applies.  *E.g.*, *Harvell v. Goodyear Tire & Rubber Co.*, 164 P.3d 1028, 1035-36 (Okla. 2006); *Morris B. Chapman & Assocs., Ltd. v. Kitzman*, 716 N.E.2d 829, 836-37 (Ill. App. Ct. 1999); *In re Sigg Switzerland (USA), Inc. Aluminum Bottles Mktg. & Sales Practices Litig.*, No. MDL 2137, 2011 WL 64289, at *5 (W.D. Ky. Jan. 7, 2011).  Regardless, for the reasons already discussed, under either tort or contract

choice-of-law principles, unjust enrichment claims will not be governed by Michigan law.

## III. THE LAWS OF THE 14 STATES AND MICHIGAN MATERIALLY CONFLICT FOR EACH OF PLAINTIFFS' CLAIMS.

Plaintiffs cannot avoid the constitutional or state choice-of-law analyses by arguing that the states have identical laws regarding fraudulent concealment, unjust enrichment, or breach of implied warranty. Irreconcilable differences exist among the laws of the 14 states and Michigan. For each plaintiff, "the law to be applied in any case is the law of the state," not a common law created by a federal court. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). If federal courts could ignore state law differences and instead apply a single law to plaintiffs from different states, "one wonders what the Supreme Court thought it was doing in the *Erie* case when it held that it was *unconstitutional* for federal courts in diversity cases to apply general common law rather than the common law of the state whose law would apply if the case were being tried in state rather than federal court." *In re Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293, 1300 (7th Cir. 1995) (emphasis in original). Even subtle differences must be respected, as "nuance can be important." *Id.*; *see also In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1996) (same).[18] "Differences across states may be costly for courts and litigants alike, but they are a fundamental aspect of our federal republic and must not be overridden in a quest to clear the queue in court." *Bridgestone/Firestone*, 288 F.3d at 1020.

This section summarizes some of the major differences among the laws of plaintiffs' 14

---

[18] *See also Christian v. Sony Corp. of Am.*, No. Civ. 00-932 (DWF/AJB), 2001 WL 739147, at *2 (D. Minn. June 26, 2001) ("Plaintiffs first suggest that the variation in laws is insignificant and has no practical implication for the core issues of the lawsuit. The variations may be slight, but they may still be of significance."); *In re Stucco Litig.*, 175 F.R.D. 210, 216 (E.D.N.C. 1997) (rejecting argument that because differences in state negligence law were allegedly minor they could be ignored: "The devil, however, is in the details."); *Masonite Hardboard Siding.*, 170 F.R.D. at 422 ("The many state laws that define products liability issues vary in nuance, and nuance becomes terribly important."); *Ilhardt v. A.O. Smith Corp.*, 168 F.R.D. 613, 619 (S.D. Ohio 1996) ("*Erie* requires federal courts to apply all of the nuances and differences in state law. Courts may not ignore those differences by merging the different states' standards into one generic instruction.").

home states as well as Michigan (and these myriad differences among 14 states plus Michigan would be multiplied if all 51 jurisdictions were at issue).  These differences are described in more detail in Exhibits 3 through 5 with citations to supporting authority.

A.     **State Fraudulent Concealment Laws Materially Differ.**

State law on fraudulent concealment differs significantly in key respects.  States diverge on the basic elements of fraudulent concealment.  Missouri requires proof of nine elements.  Iowa requires proof of seven, while Michigan requires proof of six.  Illinois, Maryland, and Oklahoma each require a plaintiff to prove five elements, but the elements differ for each state.  (Ex. 3).

States vary widely on the standard for a duty to disclose.  Florida and Georgia hold that the duty to disclose generally arises only if there is a fiduciary or confidential relationship between the parties.  Illinois requires a fiduciary or confidential relationship, or that the plaintiff place trust and confidence in defendant and thereby place the defendant in a position of influence and superiority, which may arise by reason of friendship, agency, or experience.  Maryland requires either a fiduciary relationship or that the plaintiff prove the defendant took affirmative action that must be more than mere silence.  In Missouri, a duty to disclose arises either where there is a relationship of trust and confidence between the parties or where one party has superior knowledge or information not within the fair and reasonable reach of the other party, but superior knowledge, alone, is not always sufficient.  Under New York law, absent a fiduciary relationship between the parties, a duty to disclose arises only under the "special facts" doctrine where one party's superior knowledge of essential facts renders a transaction without disclosure inherently unfair.  (*Id.*)

States similarly differ on whether the economic loss rule bars fraud claims for purely economic losses.  Arkansas holds that a common-law fraud claim is barred by the economic loss

rule where the only injury alleged is a diminution in value of the vehicle.  California applies the economic loss rule where the fraud claims seeks the same economic losses as a breach of contract claim.  Federal district courts applying New Jersey law have recognized that the economic loss rule applies to fraud claims unless they involve misrepresentations unrelated to the performance of the contract.  Many federal district courts applying New York law hold that the economic loss rule bars claims for purely economic loss.  States such as Georgia and Illinois may not apply the economic loss rules to fraud claims.  (*Id.*)

Based on these and other differences (including differences in reliance, materiality, the standard of proof, and the limitations periods), myriad courts—including in this Circuit—have held that fraudulent concealment laws materially vary among the states.  *E.g.*, *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 742 n.15 (5th Cir. 1996) ("States impose varying standards to determine when there is a duty to disclose facts" for fraud claims.); *In re Ford Motor Co. Vehicle Paint Litig.*, 182 F.R.D. 214, 222 (E.D. La. 1998) (holding that state law on fraudulent concealment varies on issues such as "the burden of proof, the duty to disclose, materiality, reliance, and the measure of damages"); *Lewis Tree Serv., Inc. v. Lucent Techs. Inc.*, 211 F.R.D. 228, 236 (S.D.N.Y. 2002) ("The elements of fraud vary greatly from state to state, with respect to elements including mitigation, causation, damages, reliance, and the duty to disclose.").[19]

---

[19] *See also In re Ford Ignition Switch*, 174 F.R.D. at 351 ("Defendants have likewise demonstrated a multitude of different standards and burdens of proof with regard to plaintiffs' warranty, fraud and consumer protection claims."); *Miller v. Gen. Motors Corp.*, Nos. 98 C 7386, 98 C 2851, 2003 WL 168626, at *1-2 (N.D. Ill. Jan. 26, 2003) (holding that the common law of fraudulent omission "among the various states included within the proposed classes is not uniform" and that "[n]o court has held that the fifty states' … common laws of fraudulent omission, are so similar that a single forum state's law could be applied to a multi-state class"); *Norwood v. Raytheon Co.*, 237 F.R.D. 581, 598 (W.D. Tex. 2006) (holding with respect to fraudulent concealment claims that the "law relating to allegations of fraud differs in American jurisdictions.  Jurisdictions differ concerning the circumstances under which a duty to disclose arises."); *In re Currency Conversion Fee Antitrust Litig.*, 230 F.R.D. 303, 311-12 (S.D.N.Y. 2004); *Hale v. Enerco Grp., Inc.*, 288 F.R.D. 139, 147 (N.D. Ohio 2012); *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, 275 F.R.D. 270, 276 (S.D. Ill. 2011); *Rosen v. Chrysler Corp.*, No. 97-CV-60374-AA, 2000 WL 34609135, at *9 (E.D. Mich. July 18, 2000); *In re*

### B.   State Unjust Enrichment Laws Materially Differ.

While most states recognize a cause of action for unjust enrichment, California does not. Whether Illinois recognizes unjust enrichment as a cause of action, and if so under what circumstances, is uncertain.  Thus, the viability of the claim itself varies from state to state.  (Ex. 4).  In states that do recognize unjust enrichment, the definition varies widely.  For example, in Michigan, unjust enrichment has two elements; in Iowa, Kentucky, Maryland, Missouri, New York, and Virginia, on the other hand, unjust enrichment has three elements (with those elements differing among the states); Florida has four elements; and other states such as Georgia and perhaps Oklahoma set forth a general standard.  (*Id.*).

States differ on whether an express contract or warranty bars an unjust enrichment claim. Most jurisdictions including the District of Columbia, Florida, Georgia, Iowa, Kentucky, Maryland, Michigan, Missouri, New Jersey, New York, and Virginia hold that an express contract or warranty bars the claim.  Arkansas generally provides that a contract bars unjust enrichment claims, but if the contract does not fully address a subject then the claim may be available.  Oklahoma holds that, at least under some circumstances, an express contract does not bar an unjust enrichment claim.  (*Id.*).

States likewise differ on whether a plaintiff must directly confer a benefit on the defendant.  Florida, Kentucky, Michigan, Missouri, New Jersey and Oklahoma require a direct relationship.  Arkansas, Iowa, and Maryland may not.  New York law provides that although privity is not required for an unjust enrichment claim, the claim is not viable if the connection between the parties is too attenuated.  (*Id.*)

Based on these and other differences (including whether an adequate remedy at law bars

---

*Jackson Nat'l Life Ins. Co. Premium Litig.*, 183 F.R.D. 217, 219, 222-23 (W.D. Mich. 1998); *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 451, 460-61 (D.N.J. 1998).

unjust enrichment, whether the defendant must know of and/or accept the benefit, and the limitation periods), numerous courts have held that unjust enrichment laws materially vary among the states. *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 591 (9th Cir. 2012) ("The elements necessary to establish a claim for unjust enrichment also vary materially from state to state."); *Casa Orlando Apartments, Ltd. v. Fed. Nat'l Mortg. Ass'n*, 624 F.3d 185, 195–96 (5th Cir. 2010) ("Plaintiffs' survey here fails to show that ... differences in state unjust enrichment laws are insignificant. For example, to state a claim for unjust enrichment some jurisdictions require the complainant to prove an actual loss or impoverishment."); *In re Grand Theft Auto*, 251 F.R.D. at 147 ("[S]everal courts have determined that the states' unjust-enrichment laws vary in relevant respects.").[20]

---

[20] *See also Rodriguez v. It's Just Lunch, Int'l*, 300 F.R.D. 125, 142-43 (S.D.N.Y. 2014) (explaining that "[l]aws concerning unjust enrichment *do* vary from state to state," such as that some "states only allow a claim of unjust enrichment when no adequate legal remedy exists" and others "preclude unjust enrichment claims when a valid, express contract governing the subject matter exists") (emphasis in original); *Muehlbauer v. Gen. Motors Corp.*, No. 05 C 2676, 2009 WL 874511, at *5 (N.D. Ill. Mar. 31, 2009) ("Courts have long held that the laws of unjust enrichment vary from state to state"); *Rapp v. Green Tree Servicing, LLC*, 302 F.R.D. 505, 514 (D. Minn. 2014) ("There are other material differences that are unique to unjust-enrichment law" including that "state laws vary widely regarding how 'unjust' a defendant's conduct must be to give rise to a recovery on an unjust-enrichment claim" and that the "direct-benefit requirement is yet another material difference among the unjust-enrichment laws of the 50 states"); *Yarger v. ING Bank, fsb*, 285 F.R.D. 308, 325 (D. Del. 2012) ("After reviewing the unjust enrichment laws of the sixteen states for which Plaintiffs seek class certification, the Court concludes that these states' laws have material variations. For instance, the requisite level of fault required to hold a defendant liable varies by state. In some states a cause of action is not available where there is an underlying contract, whereas other states have carved out exceptions to this rule. The availability of affirmative defenses also varies by state."); *Stalker v. MBS Direct, LLC*, No. 10-11355, 2012 WL 6642518, at *7 (E.D. Mich. Dec. 20, 2012) ("As to unjust enrichment, the Court similarly finds that the States' laws differ. … In fact, interpretations vary even within the same state, let alone among the fifty states. Additionally, even the actual definition of unjust enrichment varies from state to state.") (citations omitted); *In re Conagra Peanut Butter Prods. Liab. Litig.*, 251 F.R.D. 689, 697 (N.D. Ga. 2008) (describing the "morass" of differences that establishes "the lack of uniformity of unjust enrichment claims across the country"); *Lilly v. Ford Motor Co.*, No. 00 C 7372, 2002 WL 507126, at *2 (N.D. Ill. Apr. 3, 2002) ("Moreover, variances exist in state common laws of unjust enrichment."); *Gustafson v. BAC Home Loans Servicing, LP*, 294 F.R.D. 529, 548-49 (C.D. Cal. 2013); *In re Refrigerant Compressors Antitrust Litig.*, No. 2:09-MD-02042, 2013 WL 1431756, at *24 (E.D. Mich. Apr. 9, 2013); *Kunzelmann v. Wells Fargo Bank, N.A.*, No. 9:11-CV-81373-DMM, 2013 WL 139913, at *10 (S.D. Fla. Jan. 10, 2013); *In re Processed Egg Prods. Antitrust Litig.*, 851 F. Supp. 2d 867, 914 (E.D. Pa. 2012); *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 667-68 (E.D. Mich. 2011); *In re TFT-LCD (Flat*

### C.     State Implied Warranty Laws Materially Differ, And Those Differences Apply To MMWA Claims As Well.

State law also significantly varies with respect to a claim for breach of implied warranty and, because the MMWA incorporates state law as described in footnote 7 *supra*, the MMWA as well.   States differ on the factors they emphasize in determining whether a defendant has breached the implied warranty of merchantability.   Under New York law, to establish that a product is defective for purposes of an implied warranty of merchantability claim, a plaintiff must show that the product was not reasonably fit for its intended purpose, an inquiry that focuses on the expectations for the performance of the product when used in the customary, usual, and reasonably foreseeable manners.   To satisfy the warranty in Georgia, a vehicle must pass without objection in the trade under the contract description, and it must be fit for the ordinary purposes for which cars are used.   Michigan law provides that the warranty of merchantability means that goods are of average quality in the industry.   Oklahoma law provides that goods can be merchantable even if there are problems or breakdowns.   Other states have their own particular case law regarding when a vehicle is merchantable.   (Ex. 5).

---

*Panel) Antitrust Litig.*, No. M 07-1827 SI, 2011 WL 4501223, at *7 (N.D. Cal. Sept. 28, 2011); *True v. Conagra Foods, Inc.*, No. 07-00770-CV-W-DW, 2011 WL 176037, at *9 (W.D. Mo., Jan. 4, 2011); *In re Aqua Dots Prods. Liab. Litig.*, 270 F.R.D. 377, 386 (N.D. Ill. 2010);  *In re Digitek Prods. Liab. Litig.*, No. MDL 2:08-MD-01968, 2010 WL 2102330, at *8 (S.D.W. Va. May 25, 2010); *Tyler v. Alltel Corp.*, 265 F.R.D. 415, 422-23 (E.D. Ark. 2010); *In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524, 541 (E.D. Pa. 2010); *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 167 (E.D. Pa. 2009); *Thompson v. Bayer Corp.*, No. 4:07CV00017 JMM, 2009 WL 362982, at *4-6 (E.D. Ark. Feb. 12, 2009); *Siegel v. Shell Oil Co.*, 256 F.R.D. 580, 584 (N.D. Ill. 2008); *Vulcan Golf, LLC v. Google, Inc.*, 254 F.R.D. 521, 532-33 (N.D. Ill. 2008); *Kelley v. Microsoft Corp.*, 251 F.R.D. 544, 551 (W.D. Wash. 2008); *Thompson*, 250 F.R.D. at 626; *In re Prempro Prods. Liab. Litig.*, 230 F.R.D. 555, 563 (E.D. Ark. 2005); *Clay*, 188 F.R.D. at 501; *Jackson Nat'l Life Ins.*, 183 F.R.D. at  219, 222-23; *Schilling v. Let's Talk Cellular and Wireless*, No. CIV.A. 00-3123, 2002 WL 391695, at *1 (E.D. Pa. Feb. 6, 2002); *Williams v. Rizza Chevrolet-Geo, Inc.*, No. 99 C 2294, 2000 WL 263731, at *4 (N.D. Ill. Mar. 6, 2000); *In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, Nos. 05 C 4742, 05 C 2623, 2006 WL 3754823, at *1 n.3 (N.D. Ill. Dec. 18, 2006).

States also differ on privity-of-contract requirements, focusing on whether the plaintiffs must have a direct relationship with the seller. States such as California, Florida, Kentucky, and New York require plaintiffs to be in privity with the defendant in order to bring an implied warranty claim. In some states, the privity requirement is absolute; others have adopted various exceptions or qualifications to the privity requirement. Iowa and Virginia require privity for consequential economic losses. Other jurisdictions such as Arkansas, the District of Columbia, Georgia, Maryland, Michigan, Missouri, New Jersey, and Oklahoma may not require privity. Illinois uniquely requires privity for implied warranty claims, but not for MMWA claims. (*Id.*).

The overwhelming majority of jurisdictions, but not all, allow a manufacturer to limit an implied warranty. Such limitations are enforceable in states such as Arkansas, Florida, Georgia, Illinois, Iowa, Kentucky, Michigan, Missouri, New Jersey, New York, Oklahoma, and Virginia. By contrast, the District of Columbia and Maryland, provide certain limits on implied warranties are unenforceable, though even they allow limitations on remedies. (*Id.*)

Based on these and other differences (including whether substantial use of the vehicle establishes that it was merchantable and whether and how the implied warranty applies to used vehicles), myriad courts have held that the implied warranty of merchantability materially varies among the states. *See Cole v. Gen. Motors Corp.*, 484 F.3d 717, 726-30 (5th Cir. 2007) (holding that state laws vary with respect to reliance, notice, privity, unmanifested defects, presumption of merchantability, and used vehicles); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 783 (3d Cir. 1995) ("[T]he complaint itself invoked state laws that implicated different legal standards on, for example, the warranty claims (the laws contain various privity requirements or the need for an allegedly defective product to fail in service before a warranty claim can be sustained)."); *Oscar v. BMW of N. Am., LLC*, 274 F.R.D. 498,

509–10 (S.D.N.Y. 2011) (rejecting plaintiffs' argument that differences between states' laws on implied warranty claims "are negligible" because "numerous courts have recognized that there are significant variances among the interpretation of the elements of an implied warranty of merchantability claim among the states").[21]

## CONCLUSION

The Constitution, as well as settled precedent, prohibits Michigan law from applying to the claims of plaintiffs who do not live in, did not purchase their vehicles in, and otherwise have no contacts with Michigan.  State choice-of-law principles confirm that the laws of the states where plaintiffs reside or purchased their vehicles apply to their claims, not Michigan law.  This choice-of-law analysis cannot be avoided by arguments that the laws of all states governing plaintiffs' claims are the same, as myriad courts have rejected that overbroad and incorrect assertion, recognizing numerous material differences among states' laws regarding fraudulent concealment, unjust enrichment, and implied warranty.  Michigan law, in short, cannot be applied to the 21 plaintiffs' claims, and instead the laws of the states where they reside or

---

[21]  *See also Grand Theft Auto*, 251 F.R.D. at 147 ("Most of the courts that have addressed the issue have determined that the … breach-of-warranty laws in the fifty states differ in relevant respects. …  [T]here are many relevant differences in the states' … warranty laws."); *Kaczmarek v. Int'l Bus. Machs. Corp.*, 186 F.R.D. 307, 312–13 (S.D.N.Y. 1999) ("[M]any of the jurisdictions have different standards and elements of proof for the claims of breach of express and implied warranty … ."); *Feinstein*, 535 F. Supp. at 605 ("[E]ven within the U.C.C. implied warranty umbrella, state law may differ in such significant areas as vertical privity and the availability of punitive damages."); *Ford Ignition Switch*, 174 F.R.D. at 351 ("Defendants have likewise demonstrated a multitude of different standards and burdens of proof with regard to plaintiffs' warranty, fraud and consumer protection claims."); *Jarrett v. Panasonic Corp. of N. Am.*, 8 F. Supp. 3d 1074, 1087 (E.D. Ark. 2013); *Cochran v. Volvo Grp. N. Am., LLC*, No. 1:11-CV-927, 2013 WL 1729103, at *2 (M.D.N.C. Apr. 22, 2013); *Toyota Unintended Acceleration*, 785 F. Supp. 2d at 932-33;  *Powers,* 272 F.R.D. at 420; *Payne v. FujiFilm U.S.A., Inc.*, No. CIV. A. 07-385 GEB, 2010 WL 2342388, at *9 (D.N.J. May 28, 2010); *Digitek Prods.*, 2010 WL 2102330, at *8; *Cox House Moving, Inc. v. Ford Motor Co.*, No. CA 706-1218-HMH, 2006 WL 3230757, at *6 (D.S.C. Nov. 6, 2006); *Sweet v. Pfizer*, 232 F.R.D. 360, 372 (C.D. Cal. 2005); *Norwood*, 237 F.R.D. at 599; *Chin*, 182 F.R.D. at  451, 460-61; *Barbarin v. Gen. Motors Corp.*, No. 84-0888 (TPJ.), 1993 WL 765821, at *2-3 (D.D.C. Sept. 22, 1993); *Walsh v. Ford Motor Co.*, 130 F.R.D. 260, 271 (D.D.C. 1990); *Osborne v. Subaru of Am., Inc.*, 243 Cal. Rptr. 815, 820 (Cal. Ct. App. 1988).

purchased their vehicles should govern their claims.

Respectfully submitted,

Dated:  February 20, 2015

  /s/ Richard C. Godfrey, P.C.

Richard C. Godfrey, P.C.
Andrew B. Bloomer, P.C.
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL  60654-3406
Phone:  312-862-2000
Fax:  312-862-2200
richard.godfrey@kirkland.com
andrew.bloomer@kirkland.com

*Attorneys for Defendant General Motors LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 20, 2015, I electronically filed the foregoing Brief using the CM/ECF system which will serve notification of such filing to the email of all counsel of record in this action.

By: /s/ *Andrew B. Bloomer*

Andrew B. Bloomer, P.C.