UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------x

IN RE:

GENERAL MOTORS LLC IGNITION
SWITCH LITIGATION

THIS DOCUMENT RELATES TO:

ALL ACTIONS

---------------------------------------------------x

14-MD-2543 (JMF)
14-MC-2543 (JMF)

**PLAINTIFFS' OPENING BRIEF
REGARDING CHOICE OF LAW**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................... 1

II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ................... 5

    A.     The Post-Sale Complaint Pleads Three Nationwide Class Claims ........... 5

        1.     Unjust Enrichment (¶¶ 878-883) .................................................... 5

        2.     Fraudulent Concealment (¶¶ 864-877) ........................................... 5

        3.     Breach of Implied Warranty (¶¶ 901-916) ..................................... 6

    B.     The Fraudulent and Inequitable Conduct at the Heart of Plaintiffs' Claims Had Consistent Impact Felt Nationwide and in Each and Every State ........................................................................... 7

    C.     There Are 14 Home States at Issue ........................................................ 8

III.   ARGUMENT ..................................................................................... 9

    A.     Unjust Enrichment: No True Conflict Given the Facts of this Case .......... 9

    B.     Fraudulent Concealment and Breach of Warranty: Analysis of the Fourteen States' Choice of Law Rules and the Outcome of the Analysis .......................................................................... 12

        1.     Under Arkansas Choice of Law Principles, Arkansas Law Governs the Claims of the Arkansas Class. ................................ 13

            a.     Fraudulent Concealment ................................................ 13

            b.     Implied Warranty .......................................................... 14

        2.     Under California Choice of Law Principles, California Law Governs the Claims of the California Class. ............................... 15

            a.     Fraudulent Concealment ................................................ 16

            b.     Implied Warranty .......................................................... 17

        3.     Under District of Columbia Choice of Law Principles, District of Columbia Law Governs the Claims of the District of Columbia Class ......................................................... 19

        4.     Under Florida Choice of Law Principles, Florida Law Governs the Claims of the Florida Class ..................................... 20

            a.     Fraudulent Concealment ................................................ 20

            b.     Implied Warranty .......................................................... 22

# TABLE OF CONTENTS
## (continued)

Page

5.     Under Georgia Choice of Law Principles, Georgia Law Governs the Claims of the Georgia Class ................................... 22

6.     Under Illinois and Iowa Choice of Law Principles, Illinois and Iowa Laws Govern the Claims of the Illinois and Iowa Classes, Respectively ....................................................... 23

7.     Under Kentucky Choice of Law Principles, Kentucky  Law Governs the Claims of the Kentucky Class ................................ 25

     a.     Fraudulent Concealment ................................. 25

     b.     Implied Warranty ........................................ 25

8.     Under Maryland Choice of Law Principles, Maryland Law Governs the Claims of the Maryland Class ................................ 26

     a.     Fraudulent Concealment ................................. 26

     b.     Implied Warranty ........................................ 26

9.     Under Missouri Choice of Law Principles, Missouri Law Governs the Claims of the Missouri Class ................................. 27

     a.     Fraudulent Concealment ................................. 27

     b.     Implied Warranty ........................................ 28

10.     Under New Jersey Choice of Law Principles, New Jersey Law Governs the Claims of the New Jersey Class ..................... 28

     a.     Fraudulent Concealment ................................. 29

     b.     Implied Warranty ........................................ 29

11.     Under New York Choice of Law Principles, New York Law Governs the Claims of the New York Class ....................... 30

     a.     Fraudulent Concealment ................................. 30

     b.     Implied Warranty ........................................ 33

12.     Under Oklahoma Choice of Law Principles, Oklahoma Law Governs the Claims of the Oklahoma Class ....................... 33

     a.     Fraudulent Concealment ................................. 33

     b.     Implied Warranty ........................................ 34

13.     Under Virginia Choice of Law Principles, Virginia Law Governs the Claims of the Virginia Class.................................... 34

**TABLE OF CONTENTS**
**(continued)**

**Page**

|  |  |  |
|---|---|---|
| | C. | The Choice of Law Outcomes Are Faithful to Constitutional Principles Applied by the Supreme Court to Class Actions and Punitive Damages Claims ..................................................................... 35 |
| IV. | CONCLUSION................................................................................................ 38 |

1218438.7

# TABLE OF AUTHORITIES

**Page**

## <u>CASES</u>

*Ace Am. Ins. Co. v. Grand Banks Yachts, Ltd.*,
    587 F. Supp. 2d 697 (D. Md. 2008) ........................................................................... 26

*Adam v. J.B. Hunt Transp.*,
    130 F.3d 219 (6th Cir. 1997) .................................................................................. 25

*Agostino v. Quest Diagnostics Inc.*,
    256 F.R.D. 437 (D.N.J. 2009) ................................................................ 10, 28, 29

*Arabian Trading & Chem. Indus.Co. v. B.F. Goodrich Co.*,
    823 F.2d 60 (4th Cir. 1987) .................................................................................... 26

*Arlandson v. Hartz Mt. Corp.*,
    792 F. Supp. 2d 691 (D.N.J. 2011) ......................................................................... 29

AroChem Int'l, Inc. v. Buirkle,
    *968 F.2d 266 (2d Cir. 1992)* ................................................................................ 31

*Bankers Trust Co. v. Keeling & Assocs.*,
    20 F.3d 1092, 1098 (10th Cir. 1994) ...................................................................... 31

*Barbara's Sales, Inc. v. Intel Corp.*,
    879 N.E.2d 910 (Ill. 2007) ..................................................................................... 23

*Bates v. Cook, Inc.*,
    509 So.2d 1112 (Fla. 1987) ..................................................................................... 20

*BMW of N. Am. v. Gore*,
    517 U.S. 559 (1996) ................................................................................................ 36

*Bonaparte v. Tax Court*,
    104 U.S. 592 (1881) ................................................................................................ 36

*Brickner v. Gooden*,
    525 P.2d 632 (Okla. 1974) ...................................................................................... 33

*Brink's Ltd. v. S. African Airways*,
    93 F.3d 1022 (2d Cir. 1996) ................................................................................... 32

*Brisson v. Ford Motor Co.*,
    602 F. Supp. 2d 1227 (M.D. Fla. 2009)
    *aff'd in relevant part, vacated in part, remanded*,
    349 F. App'x 433 (11th Cir. 2009) ......................................................................... 22

*Broadspring, Inc. v. Congoo, LLC*,
    2014 U.S. Dist. LEXIS 116070 (S.D.N.Y. Aug. 20, 2014) .................................... 29

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Butler v. Sears, Roebuck & Co.*,
727 F.3d 796 (7th Cir. 2013)
*cert.denied*, __U.S.___, 2014 U.S. LEXIS 1507 (Feb. 24, 2014) .............................. 4

*Colgan Air, Inc., v. Raytheon Aircraft Co.*,
507 F.3d 270 (4th Cir. 2007) ................................................................................. 34

*Collins Radio Co. v. Bell*,
623 P.2d 1039, 1046-47 (Okla. Ct. Civ. App. 1980) ....................................... 33, 34

*Cooney v. Osgood Mach., Inc.*,
612 N.E.2d 277 (N.Y. 1993) ............................................................................ 30, 31

*Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*,
472 F. Supp. 2d 1183 (S.D. Cal. 2007) ................................................................. 15

*Cromer Fin. Ltd. v. Berger*,
137 F. Supp. 2d 452 (S.D.N.Y. 2001) ................................................................... 32

*Danziger v. Ford Motor Co.*,
402 F. Supp. 2d 236 (D.D.C. 2005) ...................................................................... 19

*Dillard v. Shaughnessy, Fickel and Scott Architects, Inc.*,
943 S.W.2d 711 (Mo. Ct. App. 1997) ................................................................... 28

*Dodson v. Ford Motor Co.*,
2006 R.I. Super. LEXIS 115 (R.I. Super. Ct. 2006) ....................................... 16, 36

*Dorman v. Emerson Elec. Co.*,
23 F.3d 1354 (8th Cir. 1994) ................................................................................. 27

*Dunseth v. Eli Lilly & Co.*,
404 F. Supp. 2d 97 (D.D.C. 2005) ........................................................................ 19

*Dzielak v. Whirlpool Corp.*,
26 F. Supp. 3d 304 (D.N.J. 2014) ......................................................................... 10

*E. Me. Baptist Church v. Union Planters Bank, N.A.*,
244 F.R.D. 538 (E.D. Mo. 2007) .......................................................................... 27

*Ebin v. Kangadis Family Mgmt.*,
2014 U.S. Dist. LEXIS 132129 (S.D.N.Y. July 25, 2013) ..................................... 2

*Eldon Indus., Inc. v. Paradies & Co.*,
397 F. Supp. 535 (N.D. Ga. 1975) .......................................................................... 9

*Feldman v. Mercedes-Benz USA, LLC*,
2012 U.S. Dist. Lexis 178924 (D.N.J. Dec. 18, 2012) ......................................... 29

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Flynn v. CTB, Inc.*,
 2013 U.S. Dist. LEXIS 169 (E.D. Mo. Jan. 2, 2013) ............................ 27

*Foodland Distribs. v. Al-Naimi*,
 220 Mich. App. 453 (Mich. Ct. App. 1996) ..................................... 3

*Forest Park Pictures v. Universal Television Network, Inc.*,
 683 F.3d 424 (2d Cir. 2012) ................................................. 30

*Foster v. Leggett*,
 484 S.W.2d 827 (Ky. Ct. App. 1972) ......................................... 25

*G4i Consulting, Inc. v. NANA Servs., LLC*,
 2012 U.S. Dist. LEXIS 67293 (E.D. Va. May 14, 2012) ....................... 34

*Gauthier v. Mayo*,
 258 N.W.2d 748 (Mich. Ct. App. 1977) ....................................... 17

*Ge Dandong et al. v. Pinnacle Performance Ltd.*,
 2013 U.S. Dist. LEXIS 150529 (S.D.N.Y. Oct. 17, 2013) ...................... 4

*Gen. Assur. of Am., Inc. v. Overby-Seawell Co.*,
 893 F. Supp. 2d 761 (E.D. Va. 2012) ......................................... 34

*Globe Communications Corp. v. R.C.S. Rizzoli Periodici, S.p.A.*,
 729 F. Supp. 973 (S.D.N.Y. 1990) ........................................... 32

*Greenman v. Yuba Power Prods., Inc.*,
 59 Cal. 2d 57 (Cal. 1963) ................................................... 18

*Guidi v. Inter–Cont'l Hotels Corp.*,
 2003 WL 1907901 (S.D.N.Y. Apr. 16, 2003) ................................... 31

*Hatton v. Chrysler Canada, Inc.*,
 937 F. Supp. 2d 1356 (M.D. Fla. 2013) ....................................... 9

*Hauch v. Connor*,
 453 A.2d 1207 (Md. 1983) .................................................... 26

*Herbert v. District of Columbia*,
 808 A.2d 776 (D.C. 2002) .................................................... 19

*Hill v. Novartis Pharm. Corp.*,
 2012 U.S. Dist. LEXIS 38516 (E.D. Cal. Mar. 20, 2012) ...................... 16

*Holiday Image LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*,
 2015 U.S. Dist. LEXIS 10062 (S.D.N.Y. Jan. 28, 2015) ...................... 30

-ii-

# TABLE OF AUTHORITIES
## (continued)

Page

*IBM v. Kemp,*
   536 S.E.2d 303 (Ga. Ct. App. 2000) ........................................................ 22

*In re Abbott Laboratories Norvir Antitrust Litig.,*
   2007 WL 1689899 (N.D. Cal. 2007) ........................................................ 11

*In re Allstate Ins. Co. and Stolarz,*
   81 N.Y.2d 219 (1993) ................................................................................. 9

*In re Carrier IQ, Inc., Consumer Privacy Litig.,*
   2015 U.S. Dist. LEXIS 7123 (N.D. Cal. Jan. 21, 2015) .......................... 18

*In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.,*
   860 F. Supp. 2d 1062 (C.D. Cal. 2012) .................................................... 21

*In re Grand Theft Auto Video Game Consumer Litig.,*
   251 F.R.D. 139 (S.D.N.Y. 2008) .............................................................. 11

*In re J.P. Morgan Chase Bank Home Equity Line of Credit Litig.,*
   794 F. Supp. 2d 859 (N.D. Ill. 2011) ....................................................... 10

*In re Terazosin Hydrochloride Antitrust Litig.,*
   220 F.R.D. 672 (S.D. Fla. 2004) .............................................................. 11

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.,*
   754 F. Supp. 2d 1145 (C.D. Cal. 2010) .................................................... 17

*In re Mercedes-Benz Tele Aid Contract Litig.,*
   257 F.R.D. 46 (D.N.J. 2009) ........................................................ 2, 10, 12

*In re Sigg Switzerland (USA), Inc. Aluminum Bottles Mktg. and Sales Practices Litig.,*
   2011 U.S. Dist. LEXIS 2192 (W.D. Ky. Jan. 7, 2011) ............................ 25

*Innovative Biodefense, Inc. v. VSP Techs.,*
   2013 U.S. Dist. LEXIS 95429 (S.D.N.Y. July 3, 2013) .......................... 32

*Istim, Inc. v. Chem. Bank,*
   78 N.Y.2d 348 (N.Y. 1991) ...................................................................... 30

*Kahara Bodas Co. LLC v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara,*
   313 F.3d 70 (2d Cir. 2002) ....................................................................... 30

*Kaiser-Georgetown Cmty. v. Stutsman,*
   491 A.2d 502 (D.C. 1985) ........................................................................ 19

*Keegan v. Am. Honda Motor Co., Inc.,*
   838 F. Supp. 2d 929 (C.D. Cal. 2012) .................................................... 18

1218438.7

# TABLE OF AUTHORITIES
## (continued)

Page

*Keilholtz v. Lennox Hearth Prods. Inc.,*
  268 F.R.D. 330 (N.D. Cal. 2010).........................................................................10

*Klaxon Co. v. Stentor Elec. Mfg. Co.,*
  313 U.S. 487 (1941)................................................................................................4

*Lee v. Bankers Trust Co.,*
  166 F.3d 540 (2d Cir. 1999) .................................................................................29

*Lichoff v. CSX Transp., Inc.,*
  2004 U.S. Dist. LEXIS 21893 (N.D. Ohio Oct. 6, 2004) .....................................12

*Lopes v. JetsetDC, LLC,*
  994 F. Supp. 2d 135 (D.D.C. 2014)........................................................................9

*Majeski v. Balcor Entm't Co.,*
  134 F.R.D. 240 (E.D. Wis. 1991) .........................................................................12

*Margolis v. Caterpillar, Inc.,*
  815 F.Supp. 1150 (C.D. Ill. 1991) ........................................................................12

*Mattingly v. Equal Energy,*
  2011 U.S. Dist. LEXIS 85144 (N.D. Okla. Aug. 1, 2011) ...................................33

*Mazza v. Am. Honda Motor Co.,*
  666 F.3d 581 (9th Cir. 2012) ................................................................................17

*Mendy v. J.P. Morgan Chase & Co.,*
  2014 U.S. Dist. LEXIS 39307 (S.D.N.Y. Mar. 23, 2014) ....................................31

*Mgmt. Sci. Am., Inc. v. NCR Corp.,*
  765 F. Supp. 738 (N.D. Ga. 1991)........................................................................23

*nVision Global Tech. Solutions, Inc. v. Cardinal Health 5, LLC,*
  887 F. Supp. 2d 1240 (N.D. Ga. 2012).................................................................22

*Offshore Rental Co., Inc. v. Cont'l Oil Co.,*
  22 Cal. 3d 157, (1978) ..........................................................................................15

*P.V. v. Camp Jaycee,*
  197 NJ 132 (N.J. 2008) .........................................................................................28

*Pa. Employee, Benefit Trust Fund v. Zeneca, Inc.,*
  710 F. Supp. 2d 458 (D. Del. 2010)...................................................................9, 10

*Padula v. Lilarn Properties Corp.,*
  620 N.Y.S.2d 310 (N.Y. 1994).............................................................................31

1218438.7

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Phillips Petro. Co. v. Shutts*,
    472 U.S. 797 (1985)................................................................................. 35, 37

*Powers v. Lycoming Engines*,
    272 F.R.D. 414 (E.D. Pa. 2011).......................................................... 3, 11, 13

*Rayle Tech, Inc. v. DEKALB Swine Breeders, Inc.*,
    133 F.3d 1405 (11th Cir. 1998) .................................................................... 22

*Roby v. McKesson Corp.*,
    47 Cal. 4th 686 (2009) ................................................................................. 15

*Rodrigues v. Campbell Indus.*,
    87 Cal. App. 3d 494 (Cal. Ct. App. 1978) ................................................... 17

*Rodriguez v. It's Just Lunch, Int'l*,
    300 F.R.D. 125 (S.D.N.Y. 2014) ............................................................ 10, 12

*Rosenberg v. Pillsbury Co.*,
    718 F. Supp. 1146 (S.D.N.Y. 1989) ............................................................ 32

*Rowland v. Novartis Pharm. Corp.*,
    983 F. Supp. 2d 615 (W.D. Pa. 2013).......................................................... 9

*Saleba v. Schrand*,
    300 S.W.3d 177 (Ky. 2009)......................................................................... 25

*Schultz v. Boy Scouts of Am., Inc.*,
    65 N.Y.2d 189 (N.Y. 1985) .................................................................... 30, 31

*Schumacher v. Tyson Fresh Meats, Inc.*,
    221 F.R.D. 605 (D. S.D. 2004) .................................................................... 11

*Scott v. Ford Motor Co.*,
    224 Cal. App. 4th 1492 (Cal. App. 1st Dist. 2014) ................................ 16, 36

*Singer v. AT&T Corp.*,
    185 F.R.D. 681 (S.D. Fla. 1998)................................................................. 11

*Snow v. Admiral Ins. Co.*,
    612 F. Supp. 206 (W.D. Ark. 1985) ........................................................... 14

*Snyder v. Farnam Cos., Inc.*,
    792 F. Supp.2d 712 (D.N.J. 2011) .............................................................. 10

*Sooner Hot Oil and Well Services, LLC v. Bison Clean Fuels, LLC*,
    2014 U.S. Dist. LEXIS 160519 (W.D. Okla. Nov. 13, 2014) ....................... 33

## TABLE OF AUTHORITIES
### (continued)

Page

*St. Louis Union Trust Co. v. Merrill Lynch*,
  562 F.2d 1040 (8th Cir. 1977) ................................................ 27

*Stanley v. Novartis Pharm. Corp.*,
  11 F. Supp. 3d 987 (C.D. Cal. 2014) ................................ 9, 15, 16

*State Farm Mut. Auto Ins. Co. v. Campbell*,
  538 U.S. 408 (2003) .................................................... 36, 37

*State Farm Mut. Auto. Ins. Co. v. Hodgkiss-Warrick*,
  413 S.W.3d 875 (Ky. 2013) ................................................. 25

*Sussman v. Bank of Israel*,
  801 F. Supp. 1068 (S.D.N.Y. 1992) ...................................... 31

*Tasion Communs., Inc. v. Ubiquiti Networks, Inc.*,
  2014 U.S. Dist. LEXIS 88055 (N.D. Cal. June 26, 2014) .................. 18

*Thornton v. Sea Quest, Inc.*,
  999 F. Supp. 1219 (N.D. Ind. 1998) .................................... 9, 14

*Traylor v. Grafton*,
  273 Md. 649 (Md. 1975) ................................................... 26

*Tyler v. Alltel Corp.*,
  265 F.R.D. 415 (E.D. Ark. 2010) ...................................... 13, 14

*Veasley v. CRST Int'l, Inc.*,
  553 N.W.2d 896 (Iowa 1996) ............................................... 23

*Vista Healthplan, Inc. v. Warner Holdings Co. III, Ltd.*,
  246 F.R.D. 349 (D.D.C. 2007) ............................................. 11

*Warhorse-Balt. Real Estate, LLC v. Fore*,
  2014 U.S. Dist. LEXIS 98403 (D. Md. July 21, 2014) ...................... 26

*Wash. Mut. Bank, FA, v. Superior Court*,
  24 Cal. 4th 906 (Cal. 2001) .............................................. 15

*Ysbrand v. DaimlerChrysler Corp.*,
  2003 OK 17 (Okla. 2003) .............................................. 33, 34

*Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.*,
  84 N.Y.2d 309 (N.Y. 1994) ................................................ 32

### STATUTES

Mich. Comp. Laws § 440.2314 ................................................ 6

**TABLE OF AUTHORITIES**
(continued)

Page

**RULES**

Rule 23(b)(3)............................................................................................................. 4

**TREATISES**

*Tort Law Desk Reference: A Fifty-State Compendium*
  Morton F. Daller ed. 2014) ........................................................................... 36

**OTHER AUTHORITIES**

17A-124 Moore's Federal Practice - Civil § 124.31................................................. 22

*Catherine M. Sharkey, Punitive Damages as Societal Damages*;
  113 Yale L.J. 347, 453 (Nov. 2003) ........................................................... 36

Peter E. Nygh, The Reasonable Expectations of the Parties as a Guide to the Choice of Law in
  Contract and Tort, in 251 RECUEIL DES COURS: COLLECTED COURSES OF THE
  HAGUE ACADEMY OF INTERNATIONAL LAW 269, 369 (1995).................................. 16

Restatement (Second) of Conflict of Laws.......................................................... passim

Restatement (Second) of Torts............................................................................... 2

Restatement (Third) of Restitution and Unjust Enrichment ........................................ 9

Symeon C. Symeonides, *Lecture, Choice of Law for Products Liability: The 1990s and Beyond*,
  78 TUL. L. REV. 1247, 1268-69 (2004) ............................................................... 16

# I.       INTRODUCTION

Plaintiffs' Opening Brief addresses the choice of law rules of each of the 14 states identified by the parties to determine whether these "home states'" substantive laws of unjust enrichment, fraudulent concealment, and implied warranty, or those of Michigan, apply in each instance to claims against General Motors LLC ("GM" or "New GM").[1]

As Plaintiffs alleged in the Post-Sale Consolidated Complaint[2] [Dkt. No. 345] ("Post-Sale Complaint"), GM's conduct in no way varied from state to state, and was uniform regarding the vehicles and recalls at issue in this litigation. The facts of GM's conduct, and the basic questions of whether GM is liable to the purchasers of specified vehicles, given GM's degree of knowledge and legal duties, will *all* be determined through common evidence. Within this commonality, there remain the questions of how the fact-finders are to be instructed, and what questions they will be asked: that is*,* will these instructions and questions be based on one state's law and pattern jury instructions, or several.

The Post-Sale Complaint posits, as an alternative, nationwide consumer and dealer classes on three claims (unjust enrichment, fraudulent concealment, and implied warranty) under Michigan law. This brief tests that alternative under the applicable choice of law rules to determine whether a nationwide or multistate class should proceed under one state's law (Michigan), or under the transferor states' laws, on these claims. The results are:

**Unjust Enrichment:** The federal courts are split on whether or not the common law of unjust enrichment presents a true conflict among U.S. jurisdictions, with MDL courts in recent

---

[1] The states are: California, Arkansas, District of Columbia, Florida, Georgia, Illinois, Iowa, Kentucky, New Jersey, New York, Maryland, Missouri, Oklahoma, and Virginia.

[2] The "Post-Sale Plaintiffs" are Plaintiffs in the Consolidated Complaint Concerning All GM-Branded Vehicles That Were Acquired July 11, 2009 Or Later (the "Post-Sale Complaint").

years going both ways on the issue.[3] The better view is that there are no true conflicts among

various states' unjust enrichment laws and, even if there are conflicts, they are not material under

the facts of this case. Here, because Michigan law is in the mainstream, the unjust enrichment

claims could be treated under the Michigan formula (or the Court could use the laws

interchangeably without explicit specification). In the alternative, variations can be addressed

through the special verdict/jury interrogatory method.

      **Fraudulent Concealment:** The law of fraudulent concealment is, in its broad strokes,

essentially uniform,[4] given that most states have adopted the Restatement's formulations for that

tort.[5] The states divide, however, on the level of proof required (preponderance vs. clear and

---

[3] *See, e.g.*, *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, at *58 (D.N.J. 2009)
("[s]ince there is no material conflict relating the elements of unjust enrichment between the
different jurisdictions from which class members will be drawn, the Court will apply New Jersey
law").

[4] *See, e.g.*, *Ebin v. Kangadis Family Mgmt.*, 2014 U.S. Dist. LEXIS 132129, at *10-11 (S.D.N.Y.
Sept. 18, 2014) ("[W]hile some variation exists among states in the common law of fraud and
negligent misrepresentation, when applied to the facts of this particular case any such variation is
unlikely to lead to actual variation in adjudication of liability.").

[5] Specifically, as the Restatement (Second) of Torts, §551 provides:
§ 551 Liability for Nondisclosure
    (1) One who fails to disclose to another a fact that he knows may justifiably
    induce the other to act or refrain from acting in a business transaction is subject to
    the same liability to the other as though he had represented the nonexistence of
    the matter that he has failed to disclose, if, but only if, he is under a duty to the
    other to exercise reasonable care to disclose the matter in question.
    (2) One party to a business transaction is under a duty to exercise reasonable care
    to disclose to the other before the transaction is consummated,
    (a) matters known to him that the other is entitled to know because of a fiduciary
    or other similar relation of trust and confidence between them; and
    (b) matters known to him that he knows to be necessary to prevent his partial or
    ambiguous statement of the facts from being misleading; and
    (c) subsequently acquired information that he knows will make untrue or
    misleading a previous representation that when made was true or believed to be so;
    and
    (d) the falsity of a representation not made with the expectation that it would be
    acted upon, if he subsequently learns that the other is about to act in reliance upon
    it in a transaction with him; and

-2-

convincing[6]), and the availability of punitive damages. In *this* case, those differences present

outcome-dispositive, or "true" conflicts, given the allegations of the wantonness and

reprehensibility of New GM's conduct. These important differences—in which individual states

have taken an active interest[7]—can be merged in a common trial without imposing the law of a

single "immunity" state. Michigan, unlike the 14 states discussed in this brief, does not allow

punitive damages for common-law fraud, and punitive damages are an important part of this

case.

**Implied Warranty:** The key concept in implied warranty—merchantability—is

universal. The law of implied warranty was intended to be essentially uniform. However, states

have differed in their treatment of concepts such as privity, and some states impose notice

requirements. Courts have often found these differences to be outcome dispositive, warranting

the application of the law of home state law and, conversely, rendering the application of any

single state's law problematic.[8] Nonetheless, these variations sort themselves into separate

---

(e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

[6] Michigan, for example, requires that fraud be proven by clear and convincing evidence. *Foodland Distribs. v. Al-Naimi*, 220 Mich. App. 453, 459 (Mich. Ct. App. 1996).

[7] *See* Section III(C) below. Specifically, while it is colorable that (if one focused on liability alone) Michigan might provide the appropriate law based on a careful application of certain states' choice-of-law tests, the specific states' interest in punitive damages decisively tips the balance under all applicable choice of law regimes, warranting an application of home state law to that claim in this case.

[8] *See, e.g.*, *Powers v. Lycoming Engines*, 272 F.R.D. 414, 420 nn.12-13 (E.D. Pa. 2011) (grouping states that do and do not have privity requirement for breach of implied warranty claims).

categories such that they can be addressed by a series of special interrogatories at the close of a common-evidence trial.[9]

The results exemplified above come from an application of the choice of law precepts of the 14 states where Plaintiffs reside. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (in diversity actions, the court applies the choice of law rules of the forum state to determine which state's laws provide the rules of decision in the case). The results do not materially differ: there are two or three primary choice of law principles, with various substantially-similar tests in play. And, further, given the facts and claims in this case, as discussed below, application of any of the tests yields similar results.

Thus, the choice of law decision, while requiring careful, step-by-step analysis, is not unduly cumbersome. No state is a wildcard that immunizes fraud. No foreign laws are at issue. The sort of egregious fraud GM committed is "fundamental" to the purchase decisions, and is actionable everywhere and always.[10]

---

[9] *See, e.g.*, *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 797 (7th Cir. 2013) *cert. denied*, __U.S.___, 2014 U.S. LEXIS 1507 (Feb. 24, 2014) (Rule 23(b)(3) certification reaffirmed for consumer class asserting design defect claims "based on the breach-of-warranty laws of six states").

[10] *Ge Dandong et al. v. Pinnacle Performance Ltd.*, 2013 U.S. Dist. LEXIS 150529, at *30-31 (S.D.N.Y. Oct. 17, 2013) (certifying common-law fraud claim because, among other reasons, the misrepresentations and omissions were "so fundamental to the value of the Notes that it is hard to imagine a reasonable investor purchasing them if the Offering Documents had revealed their true nature," and reliance likely could be proven with "common, circumstantial evidence").

-4-

## II.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.     The Post-Sale Complaint Pleads Three Nationwide Class Claims[11]

#### 1.     Unjust Enrichment (¶¶ 878-883).

The unjust enrichment claim is brought on a behalf of the Nationwide and Nationwide Dealer Classes under Michigan law. Plaintiffs allege that "New GM has received and retained a benefit from the Plaintiffs and inequity has resulted." ¶ 880. In particular, "New GM was benefitted from selling defective cars for more than they were worth, at a profit, and Plaintiffs have overpaid for the cars and been forced to pay other costs." ¶ 881. "It is inequitable for New GM to retain these benefits." ¶ 882. Therefore, Plaintiffs seek relief in the form of disgorgement of the amounts by which New GM was unjustly enriched. ¶ 883. The claim is pled under Michigan law, and the Post-Sale Complaint alleges the necessary elements of an unjust enrichment claim under all states' laws (which do not differ in substance under these facts).

#### 2.     Fraudulent Concealment (¶¶ 864-877).

Plaintiffs allege a fraudulent concealment claim on behalf of a proposed Nationwide class and a proposed Nationwide Dealer Class (and in the alternative under each state's laws). The Nationwide Class is defined as:

> [A]ll persons in the United States who purchased or leased a GM-branded vehicle between July 11, 2009 and July 3, 2014 (the "Affected Vehicles")," and who either still own or lease the vehicle or sold the vehicle on or after February 14, 2014 and/or whose vehicle was declared a total loss after an accident on or February 14, 2014. [¶ 846.]

The Nationwide Dealer Class is defined as:

> All non-GM car dealerships in the United States that, on or after February 14, 2014, have sold or leased an Affected Vehicle or retained an Affected Vehicle in their inventory, when such Affected Vehicle was purchased by the dealership between July 11, 2009 and July 3, 2014. [¶ 849.]

---

[11] The Post-Sale Complaint also asserts statutory consumer protection claims under each state's consumer protection law.

Plaintiffs allege that New GM concealed and suppressed material facts concerning the quality of its vehicles and the GM brand—including the many serious defects plaguing GM-branded vehicles—and that it valued cost-cutting over safety and took steps to ensure that its employees did not reveal known safety defects to regulators or consumers. ¶¶ 866-868. New GM did so in order to falsely assure Plaintiffs that it was a reputable manufacturer that stands behind its vehicles after they are on the road and that its vehicles are safe and reliable. ¶ 869; *see also* ¶ 871 (New GM's active concealment and/or suppression of material facts to protect its profits and avoid recalls).

New GM violated its duty to disclose the material information that it withheld about the defects, in that the facts "were known and/or accessible only to New GM who had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable" by Plaintiffs. ¶ 870.

Plaintiffs were unaware of the true facts, and "would not have acted as they did if they had known of the concealed facts," *i.e.*, Plaintiffs actually and justifiably relied on New GM. ¶ 873.

New GM profited from the alleged fraud, since the perceived quality, safety and reliability of the vehicles and the reputation of the manufacturer, "played a significant role in the value of the vehicles." *Id.* Hence, Plaintiffs overpaid for the vehicles, and the value of their vehicles diminished as the result of New GM's fraudulent concealment. ¶¶ 874-75.

### 3.    Breach of Implied Warranty (¶¶ 901-916).

Plaintiffs' implied warranty of merchantability class is defined as:

All persons in the United States who either (i) own or lease a Defective Ignition Switch Vehicle that was sold or leased as a new vehicle by New GM between July 11, 2009 and July 3, 2014, (ii) sold such a vehicle on or after February 14, 2014, and/or (iii) purchased or leased a Defective Ignition Switch Vehicle that was declared a total loss after an accident on or after February 14, 2014. [¶ 850.]

This claim is pled under Michigan's version of the Uniform Commercial Code ("U.C.C."), Mich. Comp. Laws § 440.2314. Plaintiffs allege that the Defective Ignition Switch Vehicles were not merchantable and not fit for the ordinary purpose for which cars are used, and seek their resultant damages. ¶¶ 904-907. New GM, in other words, breached the implied warranty.

The count includes the elements of the implied warranty claim under all states' laws, and in the alternative, Plaintiffs have asserted warranty claims under the law of each state where privity is not required.[12]

## B.    The Fraudulent and Inequitable Conduct at the Heart of Plaintiffs' Claims Had Consistent Impact Felt Nationwide and in Each and Every State.

As the Post-Sale Complaint alleges, New GM's conduct since its 2009 inception inflicted ongoing safety risk and economic loss on GM customers uniformly in all states. While the culpable conduct of New GM occurred largely in Michigan, the impact of this conduct is felt nationwide.

New GM is headquartered in Detroit, Michigan, and does substantial business in Michigan. ¶¶ 836-37. "The conduct that forms the basis for each and every Class member['s] claims against New GM emanated from New GM's headquarters in Detroit, Michigan." ¶ 839. More particularly, New GM personnel in the Michigan headquarters made and implemented the core decision not disclose the array of defects in GM-branded vehicles to consumers. ¶ 840. The Red X team, tasked with finding the cause of engineering defects, is also located in Detroit. ¶ 841. Some or all of the marketing campaigns falsely promoting New GM cars as safe and reliable were conceived and designed in Michigan. ¶ 842. New GM personnel located in

---

[12] The Post-Sale Complaint also brings a multi-state Magnuson-Moss Warranty Act Claim, grouping states with similar warranty claims, under these 36 states' laws. ¶¶ 884-890.

Michigan communicated with consumers (across the nation) concerned about the ignition switch and other safety defects. ¶ 843.

## C.     There Are 14 Home States at Issue.

The parties agree on the Plaintiffs at issue in this briefing and their states of residence: Arkansas, Florida, California, the District of Columbia, Florida, Georgia, Illinois, Iowa, Kentucky, Maryland, Missouri, New Jersey, New York, Oklahoma, and Virginia. Dkt. No. 487. As the below chart reflects, these 22 Plaintiffs come from five transferor courts; several brought their claims directly in this Court (New York), and others were transferred from federal courts in Arkansas, California, Florida, and Illinois.[13]

| Name | State of Residence | Original Court |
|---|---|---|
| Albert, Harry | MD | S.D.N.Y. |
| Andrews, Anna | CA | C.D. CA |
| Fox, Nykea | GA | S.D.N.Y. |
| Hall-Abbott, Ashlee | VA | S.D.N.Y. |
| Hawkins, Cynthia | MO | S.D.N.Y. |
| Jackson, Pajja | DC | S.D.N.Y. |
| Koppelman, Marc | CA | S.D.N.Y. |
| Loterbour, Charles David | IA | S.D.N.Y. |
| Mason, Nicole | NY | S.D.N.Y. |
| Nettleton Auto Sales, Inc. | AR | E.D. AR |
| Padilla, David | CA | S.D.N.Y. |
| Painter, Patrick | IL | N.D. IL |
| Pina, Randall | CA | C.D. CA |
| Ferden-Precht, Joni | FL | S.D. FL |
| Reagan, Gene | NJ | S.D.N.Y. |

---

[13] ¶ 25 of the Post-Sale Complaint provides that "[p]ursuant to the Court's instructions that Plaintiffs could file directly in the MDL court and reserve the right to have filed in another district, this Complaint is filed by each new Plaintiff as if they had filed in the district in which they reside." However, if the Court considers this paragraph effectively superseded by Order No. 29 (and given Plaintiffs have merely reserved their rights; there are no extant complaints in many of the states where they reside), Plaintiffs note that of course the same result is reached under an analysis of the five transferor jurisdictions that are a subset of the 14: a nationwide unjust enrichment claim, and home-state claims for fraudulent concealment (with a multi-state punitive damages trial) and warranty.

| Reeder, Jennifer | OK | S.D.N.Y. |
|---|---|---|
| Robinson, Ronald | MO | S.D.N.Y. |
| Stewart, Elizabeth | KY | C.D. CA |
| Tefft, Dawn | NY | C.D. CA |
| Williams, Courtney | AR | S.D.N.Y. |
| Wright, Bruce and Denise | OK | S.D.N.Y. |

### III.   ARGUMENT

**A.   Unjust Enrichment: No True Conflict Given the Facts of this Case.**

The first question in the choice of law analysis is whether the laws of the various

jurisdictions actually conflict. *See In re Allstate Ins. Co. and Stolarz*, 81 N.Y.2d 219, 223

(1993).[14] Plaintiffs submit that those courts that have found no true conflicts in the law of unjust

enrichment have the better of the argument. Absent true conflict, the Court can apply Michigan

law, or refer to the states' laws interchangeably. *See, e.g.*, *Pa. Employee Benefit Trust Fund v.*

*Zeneca, Inc.*, 710 F. Supp. 2d 458 (D. Del. 2010) (citing cases noting that absent true conflict the

---

[14] *See, e.g.*, *Thornton v. Sea Quest, Inc.*, 999 F. Supp. 1219, 1221 (N.D. Ind. 1998) (applying Arkansas choice of law) (holding that there is no need to resolve the issue of which state's substantive laws apply, if the laws do not conflict, or present a "false conflict"); *Stanley v. Novartis Pharm. Corp.*, 11 F. Supp. 3d 987, 995 (C.D. Cal. 2014) (applying California choice of law) (observing that the first step in California's governmental interest analysis, in deciding conflicts of law issues, is to determine whether the applicable rules of law of the potentially concerned jurisdictions materially differ, and if there is no material difference, there is no choice-of-law problem and the court may proceed to apply California law); *Lopes v. JetsetDC, LLC*, 994 F. Supp. 2d 135, 146 (D.D.C. 2014); *Rowland v. Novartis Pharm. Corp.*, 983 F. Supp. 2d 615, 622 (W.D. Pa. 2013) (applying District of Columbia choice of law) ("Under District of Columbia law, the Court must first determine whether a true conflict exists between the laws of the competing jurisdictions. If there is no conflict, District of Columbia law applies by default."); *Hatton v. Chrysler Canada, Inc.*, 937 F. Supp. 2d 1356, 1367-68 (M.D. Fla. 2013) (applying Florida choice of law) ("A comprehensive conflict-of-law analysis is required only if the case involves a 'true' conflict between the jurisdictions with an interest in the case. A true conflict exists when 'two or more states have a legitimate interest in a particular set of facts in litigation and the laws of those states differ or would produce a different result.'") (citations omitted); *Eldon Indus., Inc. v. Paradies & Co.*, 397 F. Supp. 535, 538 (N.D. Ga. 1975) (applying Georgia choice of law) ("If Georgia law and California law are identical on this issue, this is a case involving a 'false conflict' and it makes no difference which law is applied.").

-9-

nomenclature of which law is applying is not so important, presenting functionally identical

choices). Here, for simplicity, Plaintiffs refer to this as applying Michigan law.

As an initial matter, the fundamental equitable rule of unjust enrichment, as originally

articulated in the Restatement (First) of Restitution § 1 (1937), is straightforward: "[a] person

who has been unjustly enriched at the expense of another is required to make restitution to the

other." The same language describing this bedrock principle opens the current version of the

Restatement.[15] As one recent case held, "several courts have recognized that a universal thread

throughout all common law causes of action for unjust enrichment is a focus on the gains of the

defendants." *See Rodriguez v. It's Just Lunch, Int'l*, 300 F.R.D. 125, 136 (S.D.N.Y. 2014)

(internal citations and quotations omitted).[16] "Accordingly," these cases raise "a question

common to all class members and provable on a class-wide basis 'as to whether [d]efendants

unjustly profited,' by making the representations" at issue in that case. *Id.* (quoting *Keilholtz v.*

*Lennox Hearth Prods. Inc.*, 268 F.R.D. 330, 341 (N.D. Cal. 2010)).

There is ample recent authority supporting the proposition that the law of unjust

enrichment does not meaningfully vary in a variety of contexts. *See, e.g.*, *Dzielak v. Whirlpool*

*Corp.*, 26 F. Supp. 3d 304, 330 (D.N.J. 2014) (applying forum state law to unjust enrichment

claim in products context and noting that "many courts have suggested that there are no

significant disparities in the unjust enrichment laws of the 50 states"); *In re J.P. Morgan Chase*

*Bank Home Equity Line of Credit Litig.*, 794 F. Supp. 2d 859, 885 (N.D. Ill. 2011) (holding, in a

consumer mortgage context, that despite minor differences in characterization of the elements,

---

[15] "A person who is unjustly enriched at the expense of another is subject to liability in restitution." Restatement (Third) of Restitution and Unjust Enrichment § 1 (2011).

[16] In *Rodriguez*, the Court found the unjust enrichment claim presented common issues, but failed to certify a nationwide unjust enrichment class because in that case the plaintiffs did not attempt to show how the differences between and among the laws that did exist could be managed in that case. *Id.* at 143.

-10-

California and Delaware (and the other states at issue in that particular case) have claims for

unjust enrichment that "all essentially require the inequitable or unjustified retention of a benefit

or enrichment at the plaintiff's expense"); *Snyder v. Farnam Cos., Inc.*, 792 F. Supp.2d 712, 723

(D.N.J. 2011) ("Numerous courts have held that unjust enrichment laws do not vary in any

substantive manner from state to state"); *Pa. Employee, Benefit Trust Fund*, 710 F. Supp. 2d at 4

(court determined that "the basic elements required under the relevant states' [unjust enrichment]

laws do not create an actual conflict"); *Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 437, 464

(D.N.J. 2009) (concluding "there are no actual conflicts among the laws of unjust enrichment" in

the 50 states); *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 58 (D.N.J. 2009)

(any differences under the laws of the various states are "not material and do not create an actual

conflict"); *In re Abbott Laboratories Norvir Antitrust Litig.*, 2007 WL 1689899 at *9-10 (N.D.

Cal. 2007) (certifying nationwide unjust enrichment class in antitrust context, finding that "the

variations among some States' unjust enrichment laws do not significantly alter the central issue

or the manner of proof"); *Vista Healthplan, Inc. v. Warner Holdings Co. III, Ltd.*, 246 F.R.D.

349, 359 (D.D.C. 2007) (approving settlement of nationwide unjust enrichment class based on

finding that unjust enrichment laws of the fifty states involved "predominant common questions"

and "minor differences in state law" did not preclude the nationwide class). Less recent cases are

also in accord.[17]

---

[17] *See, e.g.*, *Schumacher v. Tyson Fresh Meats, Inc.*, 221 F.R.D. 605, 617-18 (D. S.D. 2004)
(certifying multistate unjust enrichment class, noting that the unjust enrichment laws are
"identical in many states" and adding that if any material variations were later identified they
could be handled through sub-classing); *In re Terazosin Hydrochloride Antitrust Litig.*, 220
F.R.D. 672, 697 & n.40 (S.D. Fla. 2004) (certifying multistate unjust enrichment class, finding
that "[t]he standards for evaluating each of the various states classes' unjust enrichment claims
are virtually identical" and that minor variation in states' laws "present[ed] no obstacle to class
certification"); *Singer v. AT&T Corp.*, 185 F.R.D. 681, 692 (S.D. Fla. 1998) (certifying
multistate unjust enrichment class, stating that elements of unjust enrichment claim were

-11-

There is, of course, authority going the other way, including from courts in the Second Circuit. *See, e.g.*, *In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 147 (S.D.N.Y. 2008) ("the states' unjust-enrichment laws vary in relevant respects") (citing cases). However, those cases that have found differences have tended to focus on issues that are not in play here, such as whether plaintiffs have unclean hands (not even possibly an issue here), whether plaintiffs have suffered a loss (which Plaintiffs here assert that all Plaintiffs have), and whether defendants, rather than third parties such as retailers, have been enriched (here also not an issue for Class members who purchased GM vehicles at GM dealerships or through other agents of GM). Thus, the differences that courts have identified do not create a true conflict here, and this Court can apply Michigan law.

**B.** **Fraudulent Concealment and Breach of Warranty: Analysis of the Fourteen States' Choice of Law Rules and the Outcome of the Analysis.**

Despite differences in characterization, the 14 states' choice of law regimes fall into the interest analysis categories (in governmental interest states and "most significant relationship" states, which are "substantially similar"[18]) and variations of *lex loci* states, which generally apply the law of the place where the plaintiff suffers injury. The existence of different choice of law regimes does not unduly complicate the analysis.

Conflicts analysis is necessary to determine which law applies to the claims of fraudulent concealment and breach of implied warranty. While some courts have found that there are no

---

"materially the same throughout the United States"); *Powers v. Lycoming Engines*, 245 F.R.D. 226, 231 (E.D. Pa. 2007) (court applies forums state law to unjust enrichment claim after finding "few real differences" amongst the states).

[18] "It is widely-acknowledged that the governmental-interest test is substantially similar to the most-significant-relationship test adopted by the Restatement." *Mercedes*, 257 F.R.D. at 58.

material conflicts amongst the laws of the states with respect to fraudulent concealment,[19] others

have found to the contrary.[20] *See, e.g.*, *Rodriguez*, 300 F.R.D. at 136, 140-141 (describing the

"issues common to the class regardless of the state fraud law applicable to the class's claims . . .

misrepresentation, materiality of misrepresentation and reliance are elements of all states' fraud

laws" ) (internal citations and quotations omitted). And, whereas courts regularly have found

such differences with respect to breach of implied warranty, these are mostly with respect to the

straightforward issue of whether or not vertical privity is required, making grouping at a later

point very simple.[21]

> **1.      Under Arkansas Choice of Law Principles, Arkansas Law Governs the Claims of the Arkansas Class.[22]**

> **a.      Fraudulent Concealment.**

> In *Wallis v. Mrs. Smith's Pie Co.*, 261 Ark. 622, 550 S.W.2d 453 (1977), the Arkansas Supreme Court adopted Professor Robert A. Leflar's five-factor approach to deciding tort choice-of-law questions. *See Miller v. Pilgrim's Pride Corp.*, 366 F.3d 672, 674 (8th Cir.2004). Those factors are: (1) predictability of results; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law. *Id.* Arkansas law has not, however, altogether discarded the traditional approach of lex loci delicti, so a court "must consider the lex loci delicti rule within the framework of the five Leflar factors." *Id.*; *see also Ganey v. Kawasaki Motors Corp., U.S.A.*, 366 Ark. 238, 251, 234 S.W.3d 838, 847 (2006) (noting that Arkansas choice-of-law analysis "ha[s]

---

[19] *See also* note 6 above. Again, the differences with respect to common-law fraud go not to the elements of liability: the same conduct would be evaluated under the same rubric nationwide. Rather, the different formulations of punitive damages and different degrees of proof for their imposition (preponderance of the evidence vs. clear and convincing) could lead to different consequences for the same conduct.

[20] *See, e.g.*, *Lichoff v. CSX Transp., Inc.*, 2004 U.S. Dist. LEXIS 21893 (N.D. Ohio Oct. 6, 2004); *Majeski v. Balcor Entm't Co.*, 134 F.R.D. 240 (E.D. Wis. 1991); *Margolis v. Caterpillar, Inc.*, 815 F.Supp. 1150 (C.D. Ill. 1991).

[21] *See, e.g.*, *Powers v. Lycoming Engines,* 272 F.R.D. 414, 420 nn.12-13 (E.D. Pa. 2011) (grouping states that do and do not have privity requirement).

[22] Plaintiffs also include Arkansas and Maryland, two of the 14 states at issue, in the multi-state negligence claim they have brought. The home state law applies, but these four states easily can be grouped for certification and trial because of the material similarity of their laws.

> evolved from a simple application of the doctrine of lex loci delicti into a
> consideration of both that doctrine and Leflar's five choice-influencing factors");
> *Gomez v. ITT Educ. Servs., Inc.*, 348 Ark. 69, 77, 71 S.W.3d 542, 546 (2002)
> (noting that "the adoption of the Leflar factors in Wallis and subsequent cases
> appears to be merely a softening of what previously had been a rigid formulaic
> application of the former rule of law").

*Tyler v. Alltel Corp.*, 265 F.R.D. 415, 425 (E.D. Ark. 2010).

As explained below, *lex loci delicti* favors application of the laws of the state where

plaintiff acted in reliance (by purchasing the vehicle), received the representations (through

advertisements, or indirectly through the dealer), and was domiciled.

The remaining factors also favor application of Arkansas law, since the state has an

interest in protecting its citizens from fraudulent conduct by, for example, providing the threat of

punitive damages. Moreover, the "better rule of law" is that which "more closely equates with

modern theories of recovery allowed by each state in all other cases." *Thornton v. Sea Quest, Inc.*,

999 F. Supp. 1219, 1224 (N.D. Ind. 1998). Here, to the extent there are material distinctions

between the laws of Arkansas and Michigan, the majority of states side with Arkansas' approach

of allowing punitive damages under certain circumstances. In sum, under Arkansas choice of law

rules, the fraudulent concealment claims of the Arkansas Class will be governed by Arkansas

law.

### b.    Implied Warranty.

Under a traditional contractual choice of law analysis, "[w]here there is no effective

choice of law by the parties in a cause of action arising in contract, Arkansas courts employ the

'most significant relationship' test to determine which state's laws to apply." *Tyler*, 265 F.R.D.

at 415. Applying that test, courts consider "'the nature and quantity of each state's contacts' with

the transaction at issue.'" *Id.* (quoting *Snow v. Admiral Ins. Co.*, 612 F. Supp. 206, 209 (W.D.

Ark. 1985)). "The following factors are relevant: (1) the place of contracting; (2) the place of

-14-

negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties." *Id.*

Here, the subject matter of the implied contract between the purchasers and GM is the subject vehicle and the performance is the delivery of and payment for the vehicle—all of which occurred in Arkansas. Any negotiation arguably occurred in Arkansas as well. The fifth factor— the parties' domiciles—implicates Michigan, but also Arkansas. Thus, Arkansas has the most significant contacts with the transaction, and under Arkansas choice of law, its substantive law of implied warranty applies.

**2.     Under California Choice of Law Principles, California Law Governs the Claims of the California Class.**[23]

California employs a "three-step" version of the governmental interest analysis to claims arising out of both tort and contract. *Wash. Mut. Bank, FA, v. Superior Court*, 24 Cal. 4th 906, 919 (Cal. 2001). The three steps are to (1) identify if there is a conflict between the potentially applicable laws, (2) "determine what interest, if any, each state has in having its own law applied to the case," and (3) "select the law of the state whose interests would be 'more impaired' if its laws were not applied." *Id.* at 919-20. The comparative impairment analysis turns on "the relative commitment of the respective states to the laws involved[,] . . . the history and current status of the states' laws and the function and purpose of those laws." *Id.* at 920 (citations omitted). "[A]ll other things equal, if one state's law 'is archaic and isolated in the context of the laws of the federal union, it may not unreasonably have to yield to the more prevalent and progressive law[.]'" *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183,

---

[23] This section is also the most fulsome analysis under the comparative impairment regimes, which various states follow.

1198 (S.D. Cal. 2007) (quoting *Offshore Rental Co., Inc. v. Cont'l Oil Co.*, 22 Cal. 3d 157, 165,

(1978)).

> a.   **Fraudulent Concealment.**

As explained above, the laws of fraudulent concealment in California and Michigan

differ at least in the availability of punitive damages. In California, "the policies underlying

punitive damages, punishment and deterrence, are held strongly today." *Stanley*, 11 F. Supp. 3d

at 1008 (citing *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 719-20 (2009)). "Michigan courts," in

contrast, "have no interest in seeing the application of this principle [denying punitive damages]

in the courts of California, which apply a contrary principle in allowing punitive damages."

*Scott v. Ford Motor Co.*, 224 Cal. App. 4th 1492, 1495 (Cal. App. 1st Dist. 2014).[24]

---

[24] Indeed, noted choice of law scholar, Symeon C. Symeonides, has observed that

> A consumer who is injured in her home state by a product she has purchased there
> is entitled to the protection of that state's law, regardless of where the product was
> manufactured or by whom. Correspondingly, in a global market with free and
> predictable circulation of goods, the manufacturer who chooses to market his
> products in the plaintiff's state may not reasonably expect to carry with him the
> protective laws of the state of manufacture. One of the tradeoffs in entering a
> particular market and benefiting from it is the foreseeable and insurable risk of
> being held accountable under the higher product-liability standards of that market.
> As Peter Nygh put it, "[A] manufacturer should not be allowed to escape a higher
> risk by establishing itself in a low risk haven as a base for its activities."

Symeon C. Symeonides, *Lecture, Choice of Law for Products Liability: The 1990s and Beyond*,
78 TUL. L. REV. 1247, 1268-69 (2004) ("Symeonides") (quoting Peter E. Nygh, The
Reasonable Expectations of the Parties as a Guide to the Choice of Law in Contract and Tort, in
251 RECUEIL DES COURS: COLLECTED COURSES OF THE HAGUE ACADEMY OF
INTERNATIONAL LAW 269, 369 (1995)). Thus, "in products liability cases . . . where the
plaintiff's domicile, the place where the injury occurred, and the place where the product was
sold are the same state, it is 'appropriate' for courts to apply the 'pro-plaintiff law of the
plaintiff's home state, which was also the place of injury and the product's acquisition'" *Dodson
v. Ford Motor Co.*, 2006 R.I. Super. LEXIS 115, at *17-18 (R.I. Super. Ct. 2006) (quoting
Symeonides). And when a Michigan company "chose[s] to market its products" in other states it
"cannot reasonably expect to carry" with it "the protective laws of Michigan." *Id.* at 19.

Even assuming Michigan had any interest in applying its policies on punitive damages outside its borders (which current Supreme Court jurisprudence would not, in any case, permit to trump California's interests, as discussed in Section C below), California's regulatory interest is more impaired by the imposition of Michigan's laws than vice versa, where, as here, "Defendant markets, distributes, and sells" its products in California, Defendant's "misconduct extends to California," Defendant "failed to communicate the known risks" to consumers in California, and the California Class Plaintiffs were injured in California. *See Hill v. Novartis Pharm. Corp.*, 2012 U.S. Dist. LEXIS 38516, at *26-41 (E.D. Cal. Mar. 20, 2012); *Stanley*, 11 F. Supp. 3d at 1008. Thus, California law should apply to the California Class' claims for fraudulent concealment.

### b.      Implied Warranty.

There is no true conflict between the privity requirements in the implied warranty laws of Michigan and California as they pertain to the facts alleged in the Complaint. Generally, California requires vertical privity to sustain an implied warranty action, *Rodrigues v. Campbell Indus.*, 87 Cal. App. 3d 494, 500 (Cal. Ct. App. 1978), while Michigan does not, *Gauthier v. Mayo*, 258 N.W.2d 748 (Mich. Ct. App. 1977). Where, as here, however, Plaintiffs plead that they "purchased vehicles from a network of dealers who are agents of Defendants," and were intended to be the ultimate consumers of the vehicles, they are intended third-party beneficiaries of the contract between the dealers and manufacturers and their "breach of implied warranty claim is not precluded by the lack of vertical privity." *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1184-85 (C.D. Cal. 2010) ("the clear weight of authority compels a conclusion that where plaintiffs successfully plead third-party beneficiary status, they successfully plead a breach of implied warranty

-17-

claim"). If the Court finds that California law does not actually differ from Michigan law, then California law must apply to the implied warranty claims of the California Class.

The result is no different even if the Court does find an actual conflict between California and Michigan law. California has a strong "interest in setting the appropriate level of liability for companies conducting business within its territory," and "an interest in applying its law to transactions within its borders" such that applying Michigan law to the California Class' claims would "impair" California's "ability to calibrate liability to foster commerce." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 592-93 (9th Cir. 2012).

"California law generally provides that this notice requirement 'is not an appropriate one for the court to adopt in actions by injured consumers against manufacturers with whom they have not dealt.'" *Tasion Communs., Inc. v. Ubiquiti Networks, Inc.*, 2014 U.S. Dist. LEXIS 88055, at *12-13 (N.D. Cal. June 26, 2014) (quoting *Greenman v. Yuba Power Prods., Inc.*, 59 Cal. 2d 57, 61 (Cal. 1963)); accord *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 2015 U.S. Dist. LEXIS 7123, at *146 (N.D. Cal. Jan. 21, 2015) (courts have "routinely held that plaintiffs are not required to provide pre-suit notice to a remote seller/manufacturer with whom they have not dealt"); *Keegan v. Am. Honda Motor Co., Inc.*, 838 F. Supp. 2d 929 (C.D. Cal. 2012). This exception to the notice requirement is justified by California's concern that requiring "notice to a remote seller . . . becomes a booby-trap for the unwary. The injured consumer is seldom steeped in the business practice which justifies the rule." *Greenman*, 59 Cal. 2d at 61 (internal quotations omitted).

California law would not require notice under the facts of this case. Here, for example, New GM can claim no surprise, nor would notice have given it a greater opportunity to investigate and prepare for litigation. The litigation was precipitated by New GM's own

-18-

(insufficient) investigation and (dilatory) recall notice. In other words, it was New GM that put Plaintiffs on notice of the defect, not the other way around. Moreover, New GM clearly had no intention of settling these Class claims before the initiation of this lawsuit. New GM did decide to settle a narrow set of claims arising from the instant defects through the General Motors Ignition Compensation Claims Resolution Facility administered by Kenneth Feinberg, but Plaintiffs' claims were not among them. Finally, the instant claims—initiated soon after the first Ignition Switch recall—can hardly be deemed "stale." Thus, under the facts of this case, California's interest in protecting its consumers is more impaired by the application of a strict notice requirement than Michigan's interest is by excusing that requirement.

### 3. Under District of Columbia Choice of Law Principles, District of Columbia Law Governs the Claims of the District of Columbia Class.

"Under a choice of law analysis," the District of Columbia will apply "another state's law when (1) its interest in the litigation is substantial, and (2) 'application of District of Columbia law would frustrate the clearly articulated public policy of that state.'" *Herbert v. District of Columbia*, 808 A.2d 776, 779 (D.C. 2002) (citing *Kaiser-Georgetown Cmty. v. Stutsman*, 491 A.2d 502, 509 (D.C. 1985)). This results in a "two-step 'modified governmental interest analysis.'" *Danziger v. Ford Motor Co.*, 402 F. Supp. 2d 236, 239 (D.D.C. 2005) (quotations omitted). "First, the Court must evaluate the governmental policies underlying the applicable laws of the interested states. Second, if those interests conflict, the Court must determine which jurisdiction's policy would be most advanced by having its law applied to the facts in the case." *Id.* (quotations omitted).

In determining which jurisdiction's policies would be most advanced, D.C. courts "will consider the four factors set forth in the Restatement (Second) of Conflict of Laws (1971) § 145, Comment d," including "(a) the place where the injury occurred; (b) the place where the conduct

-19-

causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship is centered." *Dunseth v. Eli Lilly & Co.*, 404 F. Supp. 2d 97, 101 (D.D.C. 2005) (applying D.C.'s governmental interest analysis).

Here, the proposed D.C. Class representative received his New GM vehicle from his grandmother, who purchased the vehicle in Mississippi, paid the remainder that was due while in D.C., and maintained the vehicle in D.C. Compl. ¶ 13. The injury therefore occurred both in Mississippi, where the defective vehicle was purchased and in D.C., where the payment was completed and where the defective vehicle is currently located. The conduct causing the injury includes the fraudulent omissions—made in Michigan and received in Mississippi—and the delivery of a defective vehicle in Mississippi. The domiciles are split between Michigan and D.C. The vehicle, which is the subject of the relationship between Plaintiff and New GM, is in D.C. which shifts the relationship's center of gravity to that jurisdiction. On balance, although all three states have some relationship to the Class representative's claims, D.C. has the greatest interest in applying its laws to the claims of the D.C. Class.

### 4. Under Florida Choice of Law Principles, Florida Law Governs the Claims of the Florida Class

#### a. Fraudulent Concealment.

Florida follows the "most significant relationship" test set out in the Restatement (Second) Conflict of Laws. *Bates v. Cook, Inc.*, 509 So.2d 1112, 1114-15 (Fla. 1987). Section 145 of the Restatement outlines the four relevant considerations under the "most significant relationship" test:

(a)     the place where the injury occurred,

(b)     the place where the conduct causing the injury occurred,

-20-

(c)     the domicil, residence, nationality, place of incorporation and place of
        business of the parties, and

(d)     the place where the relationship, if any, between the parties is centered.

Restatement (Second) Conflict of Laws § 145.

Section 148 addresses additional factors relevant specifically to fraud and

misrepresentation claims, including:

(a)     the place, or places, where the plaintiff acted in reliance upon the
        defendant's representations,

(b)     the place where the plaintiff received the representations,

(c)     the place where the defendant made the representations,

(d)     the domicil, residence, nationality, place of incorporation and place of
        business of the parties,

(e)     the place where a tangible thing which is the subject of the transaction
        between the parties was situated at the time, and

(f)     the place where the plaintiff is to render performance under a contract
        which he has been induced to enter by the false representations of the
        defendant.

Restatement (Second) Conflict of Laws § 148.

Significantly, comment j to § 148 provides that, "[i]f any two of the above-mentioned

contacts, apart from the defendant's domicil, state of incorporation or place of business, are

located wholly in a single state, this will usually be the state of the applicable law with respect to

most issues." *Id.* (cmt. J).

Moreover, "when the plaintiff acted in reliance upon the defendant's representations in a

single state, this state will usually be the state of the applicable law, with respect to most issues,

if (a) the defendant's representations were received by the plaintiff in this state, or (b) this state is

the state of the plaintiff's domicil or principal place of business." *Id.*

-21-

Florida's conflict of law rules therefore would apply Florida law to the Florida Class' claims for fraudulent concealment. Of the six § 148 factors, two—defendants' domicile and the place of defendants' representations (or omissions)—favor Michigan. The remaining four point to Florida. Moreover, per comment j, the most important factors—the state where plaintiff acted in reliance (by purchasing the vehicle), received the representations (through advertisements, or indirectly through the dealer), and was domiciled—all suggest Florida has the most significant interest in the fraudulent concealment claims of the Florida Class. *See In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*, 860 F. Supp. 2d 1062, 1073-74 (C.D. Cal. 2012).

   **b.**   **Implied Warranty.**

For contractual causes of actions, "Florida's choice-of-law rule applies the doctrine of *lex loci contractus*." *Brisson v. Ford Motor Co.*, 602 F. Supp. 2d 1227, 1230 (M.D. Fla. 2009) *aff'd in relevant part, vacated in part, remanded*, 349 F. App'x 433 (11th Cir. 2009). "Generally, a contract is made where the parties complete the last act necessary to form the contract under forum state law. Generally that is the place where the parties accept the offer." 17A-124 Moore's Federal Practice - Civil § 124.31. Here, the acceptance of the offer is the consumer's purchase of the vehicle. The Florida Class purchased their vehicles in Florida; therefore, under Florida's *lex loci contractus* choice of law rules, Florida's law of implied warranty applies to the Florida Class claims.

   **5.**   **Under Georgia Choice of Law Principles, Georgia Law Governs the Claims of the Georgia Class.**

Georgia applies the traditional "vested rights theory of the First Restatement of Conflicts" in both tort and contract. 17A-124 Moore's Federal Practice - Civil § 124.31. As applied to a tort action like fraud, "the parties' rights are deemed to vest in the place of the wrong (*lex loci delictus*)," which "is defined as the place where the last event necessary to make the actor liable

-22-

took place." *Id.*; *Rayle Tech, Inc. v. DEKALB Swine Breeders, Inc.*, 133 F.3d 1405, 1409 (11th Cir. 1998) ("Georgia follows the approach to choice of law issues embodied in the First Restatement of Conflicts of Laws, employing the traditional rules of *lex loci contractus* and *lex loci delecti.*"). "[T]he last event necessary to make an actor liable for fraud is the injury, and consequently, for purposes of *lex loci delictis*, the place of the wrong is where that injury is sustained." *nVision Global Tech. Solutions, Inc. v. Cardinal Health 5, LLC*, 887 F. Supp. 2d 1240, 1271 (N.D. Ga. 2012) (citing *IBM v. Kemp*, 536 S.E.2d 303, 306 (Ga. Ct. App. 2000)). Thus, "[f]ederal courts applying" this approach "to fraud claims consistently have considered the tort to have been committed in the state where the economic loss occurred and not where the fraudulent misrepresentations were made." *Mgmt. Sci. Am., Inc. v. NCR Corp.*, 765 F. Supp. 738, 740 (N.D. Ga. 1991).

Here, the economic loss was suffered in the state where the consumers purchased their defective vehicles—Georgia—not Michigan, from where the fraudulent concealment emanated. Accordingly, Georgia's law of fraudulent concealment applies to the claims of the Georgia Class.

Georgia also applies these principles to contract claims. Thus, for the reasons explained in the Florida contract section above, the Georgia Class' implied warranty claims are governed by Georgia law.

### 6. Under Illinois and Iowa Choice of Law Principles, Illinois and Iowa Laws Govern the Claims of the Illinois and Iowa Classes, Respectively.

Both Illinois and Iowa apply the "most significant relationship" test outlined in the Restatement (Second) of Conflict of Laws. *Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 919 (Ill. 2007); *Veasley v. CRST Int'l, Inc.*, 553 N.W.2d 896, 897 (Iowa 1996), and use the same factors as set forth above in the Florida section.

-23-

Factors (a) through (c) of § 148 focus on the place where the plaintiff acted upon and received the fraudulent representation, and the place the defendant made that representation. Comment g to § 148 states that the place where the plaintiff received the representations "constitutes approximately as important a contact as does the place where the defendant made the representations. On the other hand, this place is not so important a contact as is the place where the plaintiff acted in reliance on the defendant's representations." Restatement (Second) of Conflict of Laws § 148, cmt. g (1971). Here, the Iowa and Illinois Plaintiffs received and relied upon New GM's misrepresentations in their respective home states, Illinois and Iowa.

Section 148's factor (d) looks to the domicile of the parties. Comment i explains the importance of this factor in a case alleging economic loss due to fraud: "The plaintiff's domicil or residence . . . are contacts of substantial significance when the loss is pecuniary in its nature . . . . This is so because a financial loss will usually be of greatest concern to the state with which the person suffering the loss has the closest relationship. . . . The domicil, residence and place of business of the plaintiff are more important than are similar contacts on the part of the defendant." Restatement (Second) of Conflict of Laws § 148, cmt. i (1971). Factor (d) of § 148, then, would favor the plaintiffs' home states as well.

Factor (e) looks to the place where the tangible thing that was the subject of the dispute is located. The tangible thing in this case is the defective vehicle. Presumably, these vehicles will be located in plaintiffs' home states, and thus the analysis will also favor application of Illinois or Iowa law, respectively. Comment j then provides a general rule to guide a § 148 choice of law analysis. That comment states, "If any two of the . . . contacts, apart from the defendant's . . . place of business[] are located wholly in a single state, this will usually be the state of the applicable law with respect to most issues." Restatement (Second) of Conflict of Laws § 148,

-24-

cmt. j (1971). The general rule set forth in comment j thus also favors application of Illinois or Iowa law, respectively.

Thus, the law of Illinois applies to the Illinois Class' claims and law of Iowa applies to the Iowa Class' claims. Plaintiffs from these states received and acted upon the representations by purchasing vehicles in their respective states, and suffered pecuniary loss in their respective states. Finally, the defective vehicles are located within plaintiffs' respective states. Section 148 therefore supports the law of the plaintiff's home jurisdiction.

**7.**    **Under Kentucky Choice of Law Principles, Kentucky Law Governs the Claims of the Kentucky Class.**

**a.**    **Fraudulent Concealment.**

Kentucky choice-of-law rules favor the application of Kentucky law to tort claims under the "any significant contacts" test. "The basic law is the law of the forum . . . should not be displaced without valid reasons." *Foster v. Leggett*, 484 S.W.2d 827, 829 (Ky. Ct. App. 1972); *accord Saleba v. Schrand*, 300 S.W.3d 177, 181 (Ky. 2009). In other words, if there are "significant contacts—not necessarily the most significant contacts"—with Kentucky, the Kentucky law should be applied." *Id. See also Adam v. J.B. Hunt Transp*., 130 F.3d 219 (6th Cir. 1997). Here, given that the Kentucky Class purchased their vehicles in Kentucky, and suffered harm in Kentucky, there are significant contacts with Kentucky, and Kentucky law will apply to the claim of fraudulent concealment.

**b.**    **Implied Warranty.**

Kentucky courts apply the "most significant relationship" choice-of-law rules for contracts to claims of implied warranty. *See In re Sigg Switzerland (USA), Inc. Aluminum Bottles Mktg. and Sales Practices Litig.*, 2011 U.S. Dist. LEXIS 2192, at *16 (W.D. Ky. Jan. 7, 2011). "For contract claims, Kentucky utilizes Section 188 of the Restatement (Second) of Conflict of

-25-

Laws and applies the law of the state with the most significant relationship to the transaction and parties." *Id.* at *20 (quotations omitted). As the court stated in *State Farm Mut. Auto. Ins. Co. v. Hodgkiss-Warrick*, 413 S.W.3d 875, 878-79 (Ky. 2013):

> Among the factors a court making that determination should consider are the place or places of negotiating and contracting; the place of performance; the location of the contract's subject matter; and the domicile, residence, place of incorporation and place of business of the parties.

Here, any negotiations and contracting occurred in Kentucky, performance was in Kentucky, the subject vehicles are in Kentucky, and the Kentucky Class is domiciled in Kentucky. In contrast, the only contact with Michigan is that it is the headquarters of New GM. Under these facts, Kentucky law governs the Kentucky Class' claims of breach of implied warranty.

**8.      Under Maryland Choice of Law Principles, Maryland Law Governs the Claims of the Maryland Class.**

**a.      Fraudulent Concealment.**

Under Maryland conflicts law, a fraud claim is governed by the law of the place of injury. *Hauch v. Connor,* 453 A.2d 1207, 1209 (Md. 1983); *see also Arabian Trading & Chem. Indus.Co. v. B.F. Goodrich Co.*, 823 F.2d 60, 62 (4th Cir. 1987) (applying Maryland law). Maryland law further holds that the place of injury is the place where the injury occurred, not the place where the conduct causing the injury occurred. *Hauch,* 453 A.2d at 1209; s*ee also, e.g.*, *Warhorse-Balt. Real Estate, LLC v. Fore*, 2014 U.S. Dist. LEXIS 98403, at *15 (D. Md. July 21, 2014).

**b.      Implied Warranty.**

As to choice of law questions regarding contract issues, including implied warranty, Maryland courts generally follow the *lex loci contractus* approach and thus hold that while the law of the forum governs the remedy for breach of contract, the law of the place of contracting governs questions regarding the nature, validity, and construction of a contract unless such law

-26-

would violate a strong public policy of Maryland. *See Traylor v. Grafton*, 273 Md. 649, 660 (Md. 1975); *see also Ace Am. Ins. Co. v. Grand Banks Yachts, Ltd.*, 587 F. Supp. 2d 697, 704 (D. Md. 2008) (applying *lex loci contractus* analysis to claim for breach of implied warranty). Given that the contracts between the Maryland Class and New GM were effectuated in Maryland, Maryland law governs the Maryland Class' claims for breach of implied warranty.

9.   **Under Missouri Choice of Law Principles, Missouri Law Governs the Claims of the Missouri Class.**

"For both tort and contract claims, Missouri courts apply the most-significant-relationship test as defined in the Restatement." *Dorman v. Emerson Elec. Co.*, 23 F.3d 1354, 1358 (8th Cir. 1994); *accord Flynn v. CTB, Inc.*, 2013 U.S. Dist. LEXIS 169 (E.D. Mo. Jan. 2, 2013).

a.   **Fraudulent Concealment.**

Under the "most-significant relationship" test, Missouri law governs the Missouri Class' fraudulent concealment claims. As the court stated in *E. Me. Baptist Church v. Union Planters Bank, N.A.*, 244 F.R.D. 538, 543 n.4 (E.D. Mo. 2007):

> The "significant contacts" analysis of the Restatement (Second) of Conflicts of Law, § 148 (1977), governs the choice of law for fraud and misrepresentation cases in Missouri. *See Reis v. Peabody Coal Co.*, 997 S.W.2d 49 (Mo. App. 1999). Section 148 directs the court to consider the following contacts to determine which state has the most significant relationship to the claims: (a) where plaintiff acted in reliance; (b) where the plaintiff received the representations; (c) where the defendant made the representations; and (d) the domicile, residence, and place of business of the parties…. Comment (j) to § 148 provides that if any of these two contacts are located wholly in a single state (not including defendant's place of business), this will usually be the state of the applicable law. This analysis weighs heavily in favor of the state in which the plaintiff received and acted in reliance on the representations of the defendant.

*See also St. Louis Union Trust Co. v. Merrill Lynch*, 562 F.2d 1040, 1054 n.20 (8th Cir. 1977)

("Since the plaintiffs are all Missouri citizens and their alleged reliance and pecuniary harm occurred in Missouri, we defer to the holding of the district court that Missouri had the most

-27-

significant relationship to the transaction. Restatement (Second) of Conflict of Laws § 148(2) (1971).”). Here too, the Missouri Class is comprised of people who purchased their vehicles in Missouri, and their alleged reliance and pecuniary harm occurred in Missouri.

> **b.** **Implied Warranty.**

For claims sounding in contract, including claims for breach of implied warranty, Missouri courts balance several factors to determine which state has the most significant relationship to the cause of action. *See Dillard v. Shaughnessy, Fickel and Scott Architects, Inc.,* 943 S.W.2d 711, 715 (Mo. Ct. App. 1997). These factors include: (a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation, and place of business of the parties. *Id.* Once again, nearly all the relevant factors—the place of contracting, the place of negotiation, the place of performance, the location of the subject vehicles, and the plaintiffs’ domicile—point to Missouri as the state with the most significant relationship to the Missouri Class’ claims for breach of implied warranty. Accordingly, Missouri law should govern the implied warranty claims of the Missouri Class.

> **10.** **Under New Jersey Choice of Law Principles, New Jersey Law Governs the Claims of the New Jersey Class.**

To resolve conflict-of-law disputes, New Jersey applies the “most significant relationship test” as set forth in the Restatement (Second) of Conflict of Laws. *P.V. v. Camp Jaycee,* 197 NJ 132 (N.J. 2008). If there is an actual conflict, the “test requires the Court to weigh the factors enumerated in the Restatement section corresponding to the Plaintiffs’ cause of action.” *Agostino v. Quest Diagnostics, Inc.*, 256 F.R.D. 437, 462 (D.N.J. 2009).

### a.  Fraudulent Concealment.

Because Plaintiffs' fraudulent concealment claim sounds in fraud, the Court should apply the conflict of laws analysis of Restatement (Second) Conflict of Laws § 148. *See Agostino*, 256 F.R.D. at 462. Under that section, "the state in which a prospective plaintiff acted in reliance on a defendant's fraud is presumed to have the predominant relationship to the parties and the issues in the litigation." *Id*. That presumption applies here, and New Jersey law governs the New Jersey Class' fraudulent concealment claims. *Id*. at 464.

### b.  Implied Warranty.

Under New Jersey's "most significant relationship test" with respect to contract claims (including implied warranty claims), the Court should apply the analysis set forth in Restatement (Second) of Conflicts of Law § 188. *Arlandson v. Hartz Mt. Corp.*, 792 F. Supp. 2d 691, 704 (D.N.J. 2011) ("since breach of … implied warranty claims sound in contract, courts look to Section 188 of the Restatement to determine which state's law applies.") Section 188 of the Restatement requires courts to consider: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (e) the location of the subject matter of the contract, and (f) the domicile, residence, nationality, place of incorporation and place of business of the parties." *Id.* Under all of these factors, New Jersey law applies to the claims of New Jersey residents. *See, e.g.*, *Feldman v. Mercedes-Benz USA, LLC,* 2012 U.S. Dist. Lexis 178924, at *21 (D.N.J. Dec. 18, 2012) (applying California law to plaintiffs' claims when the location of contracting, negotiations, performance and the subject vehicles was California, while one defendant was headquartered in New Jersey).

-29-

11.    **Under New York Choice of Law Principles, New York Law Governs the Claims of the New York Class.**

"In tort cases . . . New York applies the law of the state with the most significant interest in the litigation." *Lee v. Bankers Trust Co.*, 166 F.3d 540, 545 (2d Cir. 1999). In weighing those interests, New York courts distinguish between conflicts regarding 'conduct regulating' rules and conflicts regarding 'loss-allocating' rules." *Broadspring, Inc. v. Congoo, LLC*, 2014 U.S. Dist. LEXIS 116070, at *16, 20 (S.D.N.Y. Aug. 20, 2014) (applying these principles and noting that choice of law requires claim-by-claim analysis).

> Similarly, for contract:
>
> Where a conflict of laws exists, New York courts "look[] to the 'center of gravity' of a contract to determine choice of law." *Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 433 (2d Cir. 2012). "This approach requires application of the law of the jurisdiction with the most significant interest in, or relationship to, the dispute," an inquiry that encompasses "the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domicile of the contracting parties." *Bank of N.Y. v. Yugoimport*, 745 F.3d 599, 609 (2d Cir. 2014) (internal quotation marks omitted).

*Holiday Image LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 2015 U.S. Dist. LEXIS 10062, at *13 (S.D.N.Y. Jan. 28, 2015) (noting that Ohio law would likely govern a contract dispute where, among other things, the defendants were headquartered in that state).

a.    **Fraudulent Concealment.**

Under the "interest analysis" used to resolve choice of law issues in tort cases in New York, the Court should apply the law of the state with the greatest interest in the application of its own law to the dispute at issue. *Kahara Bodas Co. LLC v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara,* 313 F.3d 70, 85 (2d Cir. 2002). New York courts give "controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." *Cooney v.*

-30-

*Osgood Mach., Inc.*, 612 N.E.2d 277, 280 (N.Y. 1993). As the New York Court of Appeals has

explained:

> Applying interests analysis, we first look to the purposes of the [laws] in conflict
> and identify the policies which the States seek to promote through application of
> their laws. Then, based upon the facts of the case which relate to the [laws']
> purpose, we determine which State has the greater interest in having its law
> applied.

*Istim, Inc. v. Chem. Bank*, 78 N.Y.2d 348, 348 (N.Y. 1991); *see also Schultz v. Boy Scouts of Am.,*

*Inc.*, 65 N.Y.2d 189, 198 (N.Y. 1985) (the focus of the inquiry is on the "relative interests" of the

relevant jurisdictions "in having their laws apply"). "The Second Circuit has explained that

"'[u]nder this formulation, the significant contacts are, almost exclusively, the parties domiciles

and the locus of the tort.'" *AroChem Int'l, Inc. v. Buirkle*, 968 F.2d 266, 270 (2d Cir. 1992)

(quoting *Schultz,* 65 N.Y.2d at 197).

    In tort cases, New York's interest analysis distinguishes between conflicts involving

conduct-regulating rules (such as fraud) and conflicts involving loss-allocating rules (such as

vicarious liability rules). *Guidi v. Inter-Cont'l Hotels Corp.*, 2003 WL 1907901, at *1 (S.D.N.Y.

Apr. 16, 2003); *see also Sussman v. Bank of Israel*, 801 F. Supp. 1068, 1975 (S.D.N.Y. 1992)

(fraudulent concealment is a conduct-regulating tort). Because "conduct-regulating rules have

the prophylactic effect of governing conduct to prevent injuries from occurring," *Padula v.*

*Lilarn Properties Corp.*, 620 N.Y.S.2d 310, 311 (N.Y. 1994), "the law of the jurisdiction where

the tort occurred will generally apply because that jurisdiction has the greatest interest in

regulating behavior within its borders." *Id*. (quoting *Cooney*, 612 N.E.2d at 280).

    As the New York Court of Appeals has held, "when the defendant's [wrongful] conduct

occurs in one jurisdiction and the plaintiff's injuries are suffered in another, the place of the

wrong is considered to be the place where the last event necessary to make the actor liable

occurred." *Schultz*, 65 N.Y.2d at 195. This rule applies to claims of fraud, and usually means that

-31-

the law of the place where the plaintiff suffered harm will govern. *See, e.g.*, *Bankers Trust Co. v. Lee Keeling & Assocs., Inc.*, 20 F.3d 1092, 1098 (10th Cir. 1994) (under the *Schultz* "last event necessary" test, the court applied the law of "the place where the plaintiff has relied on the alleged misrepresentations and suffered resultant damages," rather than the law of the place from which the misrepresentations emanated); *see also, e.g.*, *Mendy v. J.P. Morgan Chase & Co.*, 2014 U.S. Dist. LEXIS 39307, at *24 (S.D.N.Y. Mar. 23, 2014) (with respect to laws that regulate conduct, "the jurisdiction with the greater interest is the one in which the injury to the plaintiff is suffered"); *Innovative Biodefense, Inc. v. VSP Techs.*, 2013 U.S. Dist. LEXIS 95429, at *25-26 (S.D.N.Y. July 3, 2013) (because the alleged reliance and injury occurred in New York, New York law governed conspiracy to defraud counterclaim); *Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 492 (S.D.N.Y. 2001)) (quoting *Rosenberg v. Pillsbury Co.*, 718 F. Supp. 1146, 1150 (S.D.N.Y. 1989) (in fraud claims, the jurisdiction with the strongest interest is "'the place where the injury was inflicted,' as opposed to the place where the fraudulent act originated'"); *Globe Communications Corp. v. R.C.S. Rizzoli Periodici, S.p.A.*, 729 F. Supp. 973, 976 (S.D.N.Y. 1990) (the fact that plaintiff's reliance-based injury occurred in Florida gave Florida the strongest interest in the fraudulent misrepresentation claim and mandated the application of Florida law).

Here, New GM's ongoing fraudulent concealment implicates New York's interests, as it placed New York motorists at ongoing safety risks on New York roads, and, when revealed, inflicted economic loss on New York car owners. Because the "last event necessary" to impose liability on GM occurred in New York, and because GM's fraudulent conduct harmed New York residents, New York law governs the New York Class' fraudulent concealment claims.

b.      **Implied Warranty.**

In keeping with the interests analysis approach discussed above, in contract cases New

York courts apply the law of the state that is the "center of gravity" of a contract. *See Brink's Ltd.*

*v. S. African Airways,* 93 F.3d 1022, 1030 (2d Cir. 1996); *see also Zurich Ins. Co. v. Shearson*

*Lehman Hutton, Inc.*, 84 N.Y.2d 309, 317 (N.Y. 1994). "Under this approach, courts may

consider a spectrum of significant contacts, including the place of contracting, the places of

negotiation and performance, the location of the subject matter, and the domicile or place of

business of the contracting parties." *Brinks*, 93 F.3d at 1030-31. Here, because New York is the

state of contracting, negotiation, performance and the location of the vehicles at issue, New York

law governs the New York Class' claims of breach of implied warranty.

12.    **Under Oklahoma Choice of Law Principles, Oklahoma Law Governs the**
       **Claims of the Oklahoma Class.**

a.      **Fraudulent Concealment.**

When considering conflicts in the law of fraud, Oklahoma courts apply the "most

significant relationship" test from the Restatement (Second) of Conflict of Laws § 145, and

consider: (1) the place where the injury occurred; (2) the place where the conduct causing the

injury occurred; (3) each party's domicile, residence, nationality, place of incorporation and

place of business; and (4) the place where the relationship, if any, between the parties occurred.

*Brickner v. Gooden,* 525 P.2d 632 (Okla. 1974); *Sooner Hot Oil and Well Services, LLC v. Bison*

*Clean Fuels, LLC*, 2014 U.S. Dist. LEXIS 160519, at *5-6 (W.D. Okla. Nov. 13, 2014);

*Mattingly v. Equal Energy*, 2011 U.S. Dist. LEXIS 85144, at *9-10 (N.D. Okla. Aug. 1, 2011).

In *Ysbrand v. DaimlerChrysler Corp.*, 2003 OK 17, 18 (Okla. 2003), the Oklahoma Supreme

Court rejected the argument that Michigan law governed nationwide fraud claims because the

fraud emanated from there, and held that "each class member presumably received the

-33-

representation in their home state, their place of domicile. Therefore, the contacts point to each class member's home state for the applicable law." *Id*. Accordingly, Oklahoma law governs the Oklahoma Class' claims of fraudulent concealment.

> **b.     Implied Warranty.**

Oklahoma courts also apply the "most significant relationship" test to an action for breach of implied warranty in a sale of goods under Article 2 of the U.C.C. *See Collins Radio Co. v. Bell*, 623 P.2d 1039, 1046-47 (Okla. Civ. App. 1980) ("The same rationale for accepting the [most significant relationship test] as to torts dictates that its application should be made to actions that fall under Article 2 of the Uniform Commercial Code." ); *see also Ysbrand*, 2003 OK 17 ("The U.C.C. supports the most significant relationship test as applied in *Collins Radio*."). And, for issues in contract litigation the contacts to be evaluated are: (1) the place of contracting; (2) the place of negotiation; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties. *Collins Radio*, 623 P.2d at 1047 (citing Restatement (Second) of Conflict of Laws § 188(2)). Those factors favor of the application of Oklahoma law to the Oklahoma Class' claims of breach of implied warranty.

> **13.     Under Virginia Choice of Law Principles, Virginia Law Governs the Claims of the Virginia Class.**

Virginia applies *lex loci delicti* for tort and implied warranty claims. *See G4i Consulting, Inc. v. NANA Servs., LLC*, 2012 U.S. Dist. LEXIS 67293 (E.D. Va. May 14, 2012) (citing *Colgan Air, Inc. v. Raytheon Aircraft Co*., 507 F.3d 270, 275 (4th Cir. 2007) ("Under the rule of *lex loci delicti*, Massachusetts law, the situs of the crash, applies to the analysis of the claims for negligence, strict liability, and breach of express and implied warranties.").

-34-

Under Virginia's *lex loci delecti* rule, Virginia law applies to all the Virginia Class'

claims here. That is because:

> Virginia choice-of-law rules require application of the law of the place where the
> last act completing the tort occurred, regardless of where the effects of the tort
> were felt. . . . [In fraud cases], the place of reliance—which completes the fraud
> tort—happened to be the place of the plaintiff's domicile. *See, e.g., Feeley v.
> Total Realty Mgmt.*, 660 F. Supp. 2d 700, 713-14 (E.D. Va. 2009) (last event
> completing the tort was plaintiff's reliance in Virginia).

*Gen. Assur. of Am., Inc. v. Overby-Seawell Co.*, 893 F. Supp. 2d 761, 779 (E.D. Va. 2012); *see

also id. n. 27* (collecting cases holding that, in fraud cases, place where the last event completing

the tort occurred governs).

**C.     The Choice of Law Outcomes Are Faithful to Constitutional Principles Applied by
the Supreme Court to Class Actions and Punitive Damages Claims.**

The analysis here is informed not only by the states' choice of law principles, but also by

due process principles that relate to the states' connection to the litigation, and to states' interest

in regulation of punitive damages. With respect to the latter, the Supreme Court has, since 1995,

increasingly regulated punitive damages at a Constitutional level, while endorsing the states'

own interests in punishment and deterrence of conduct causing harm within their borders.

As *Phillips Petroleum Co. v. Shutts* – the Supreme Court's seminal decision on class

actions, due process, and choice of law – made clear, "for a State's substantive law to be selected

in a constitutionally permissible manner, that State must have a significant contact or significant

aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor

fundamentally unfair." 472 U.S. 797, 823 (1985). The Constitution thus does *not generally

mandate a particular choice of law*; it empowers courts to choose one law to govern claims from

multiple states in appropriate circumstances, or multiple laws, with appellate deference accorded

their choices. Here, the selection of Michigan law for unjust enrichment and home state law for

-35-

fraudulent concealment and breach of implied warranty is in no way "arbitrary" or "fundamentally unfair."

In addition, and relevant here as a factor that further tips the balance in favor of home state law to fraud claims in this case, the Supreme Court has repeatedly emphasized that punitive damages serve a unique purpose in American law, and specific jurisprudence (and deference to the states) applies to their consideration. These damages are not compensatory; they are designed to protect the state—the sovereign itself—by condemning, punishing, and deterring the repetition of reprehensible conduct that causes harm within that state. "Punitive damages may properly be imposed to further a State's legitimate interests in punishing unlawful conduct and deterring its repetition." *BMW of N. Am. v. Gore*, 517 U.S. 559, 568 (1996) (explaining purpose and function of punitive damages); *see also* Catherine M. Sharkey, *Punitive Damages as Societal Damages*; 113 Yale L.J. 347, 391-414, 453 (Nov. 2003) (explaining same and noting differences between and among states' approaches to punitive damages).

In our federal system, states necessarily have considerable flexibility in determining the level of punitive damages that they will allow in different classes of cases and in any particular case. Most states that authorize exemplary damages afford the jury similar latitude requiring only that the damages awarded be reasonably necessary to vindicate the states' legitimate interests in punishment and deterrence. Each state polices the harm caused within its own borders. *See BMW*, 517 U.S. at 571; *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 421 (2003).[25]

---

[25] In the area of punitive damages, the Supreme Court respects the states' decisions whether, and how, to utilize punitive damages to vindicate their interests. This has resulted, quite properly, in a "patchwork of rules representing [these] diverse policy judgments." *BMW*, 517 U.S. at 570. No "single State could . . . impose its own policy choice on neighboring States" because each can legislate only with reference to its own jurisdiction. *Id.* at 571 (citing *Bonaparte v. Tax Court*, 104 U.S. 592, 594 (1881)).

-36-

In this case, Michigan's anomalous choice not to impose punitive damages in common law fraud (or other torts) based on the policy of protection of corporate interests should not interfere with the policy judgments of 14 others to do so.[26] *See Dodson*, 2006 R.I. Super. LEXIS 115, at *17-20 (noting cases identifying Michigan's pro-corporate policy choices, on the one hand, but discussing, on the other, that Michigan companies know that other states will not excuse intentionally wrongful conduct that has impact within their borders); *accord Scott*, 224 Cal. App. 4th at 1495 (California's strong policy interest in punitive damages trumps Michigan's interest in corporate protection).

Overall, these considerations compel deference to each state's authority over the societal remedy of punitive damages. This is where the contacts/interest analysis of *Shutts* dovetails with the state interest in punitive damages analyses of *BMW*, *Cooper*, and *State Farm*: courts must consider the specific claims at issue to determine the relative degrees of states' interests. *See, e.g., Shutts*, 472 U.S. at 820-821; *State Farm v. Campbell*, 538 U.S. 408 (2003). Here, a very state-specific interest is involved: whether or not punitive damages should be imposed to punish and deter GM's conduct (deliberate and ongoing concealment of known safety defects) that harmed consumers in that state. This jurisprudence renders problematic the nationwide application of a single state's law on this issue, especially that of Michigan's, which can arguably choose to give its own corporations asylum within its borders, but cannot grant them amnesty nationwide. *See, e.g.*, *BMW*, 517 U.S. at 569. This also means that a class-wide determination of punitive damages (*i.e.*, a multi-state punitive damages class) may be conducted to address multi-state conduct, but with due regard for the interests of each state in protecting

---

[26] The 14 states at issue, unlike Michigan, all impose punitive damages for fraud. *See* Tort Law Desk Reference: A Fifty-State Compendium (Morton F. Daller ed., Wolters Kluwer 2014).

against harm caused within its borders, with each state's claimants governed by their own state's law on punitive damages. *See State Farm*, 538 U.S. at 421.

## IV.    CONCLUSION

The identification and application of the choice of law principles of the 14 homes states is not nearly as cumbersome as GM has suggested in the past and likely will argue in its Opening Brief. On the core elements of liability for warranty and fraud – those that relate to GM's defective products, conduct, knowledge, and duty – the laws of the states are essentially uniform. Where the laws vary, in ways that may affect outcome under certain states' laws, relate to standards of proof, technical defenses such as notice (which may not be relevant here), and damages/remedies.

As a result, Class members have a legitimate interest in, or at least a reasonable expectation of, proceeding under the laws of their own state, *and* that it is possible to convene a single class-wide liability trial to try overarching common questions of fact, utilizing special verdict forms to enable the jury to answer the questions that are unique to particular states, or that different states parse differently.

For the reasons set forth above, Plaintiffs respectfully submit that under the choice of law principles that apply to this case, (a) home states' laws will apply to decide the legal questions on the Nationwide Class' fraudulent concealment and implied warranty claims (which types of claims may be manageably grouped and decided) and (b) Michigan law will apply to the Nationwide Class' unjust enrichment claim.

-38-

Dated: February 20, 2015

HAGENS BERMAN SOBOL SHAPIRO LLP

By:     /s/ Steve W. Berman
                Steve W. Berman

Steve W. Berman
steve@hbsslaw.com
Sean R. Matt
sean@hbsslaw.com
Andrew M. Volk
andrew@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone:    (206) 623-7292
Facsimile:     (206) 623-0594

LIEFF CABRASER HEIMANN &
 BERNSTEIN, LLP

By:     /s/ Elizabeth J. Cabraser
                Elizabeth J. Cabraser

Elizabeth J. Cabraser
ecabraser@lchb.com
LIEFF CABRASER HEIMANN &
 BERNSTEIN, LLP
275 Battery St., 29th Floor
San Francisco, CA 94111
Telephone:    (415) 956-1000
Facsimile:     (415) 956-1008

and

Steven E. Fineman (SF 8481)
sfineman@lchb.com
Rachel Geman (RG 0998)
rgeman@lchb.com
Annika K. Martin (AM 2972)
akmartin@lchb.com
LIEFF CABRASER HEIMANN &
 BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone:    (212) 355-9500
Facsimile:     (212) 355-9592

*Plaintiffs' Co-Lead Counsel with Primary Focus on Economic Loss Cases*

HILLIARD MUÑOZ GONZALES L.L.P.

By:     /s/ Robert Hilliard
                Robert Hilliard

Robert Hilliard
719 S Shoreline Blvd, Suite #500
Corpus Christi, TX 78401
Telephone:    (361) 882-1612
Facsimile:     (361) 882-3015

*Plaintiffs' Co-Lead Counsel with Primary
Focus on Personal Injury Cases*

-39-

WEITZ & LUXENBERG, PC
Robin L. Greenwald
James Bilsborrow
700 Broadway
New York, NY 10003
Telephone:    (212) 558-5500
Facsimile:    (212) 344-5461

*Plaintiffs' Liaison Counsel*

BOIES, SCHILLER & FLEXNER LLP
David Boies
333 Main Street
Armonk, NY 10504
Telephone:    (914) 749-8200

THE COOPER FIRM
Lance A. Cooper
531 Roselane St., Suite 200
Marietta, GA 30060
Telephone:    (770) 427-5588

OTTERBOURG, STEINDLER, HOUSTON &
 ROSEN
Melanie Cyganowski
230 Park Avenue
New York, NY 10169-0075
Telephone:    (212) 661-9100

GRANT & EISENHOFER, P.A.
Adam J. Levitt
30 N. LaSalle Street, Suite 1200
Chicago, IL 60602
Telephone:    (312) 214-0000

NAST LAW LLC
Dianne M. Nast
1101 Market St., Suite 2801
Philadelphia, PA 19107
Telephone:    (215) 923-9300

PODHURST ORSECK, P.A.
Peter Prieto
City National Bank Building
25 West Flagler Street, Suite 800
Miami, FL 33130
Telephone:    (305) 358-2800

COTCHETT, PITRE & MCCARTHY, LLP
Frank Pitre
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone:    (650) 697-6000

-40-

MOTLEY RICE LLC
Joseph F. Rice
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone:    (843) 216-9159

ROBINSON CALCAGNIE ROBINSON
 SHAPIRO DAVIS, INC.
Mark P. Robinson, Jr.
19 Corporate Plaza
Newport Beach, CA 92660
Telephone:   (949) 720-1288

SUSMAN GODFREY, L.L.P.
Marc M. Seltzer
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067
Telephone:   (310) 789-3102

*Plaintiffs' Executive Committee*

BARRIOS, KINGSDORF & CASTEIX, LLP
Dawn M. Barrios
701 Poydras St., Suite 3650
New Orleans, LA 70139
Telephone:    (504) 524-3300

*Federal / State Liaison Counsel*


Jonathan Shub
jshub@seegerweiss.com
SEEGER WEISS LLP
1515 Market Street
Philadelphia, PA 19002
Telephone:   (215) 564-2300
Facsimile:    (215) 851-8029

Mark P. Pifko
MPifko@baronbudd.com
Roland K. Tellis
RTellis@baronbudd.com
BARON AND BUDD PC
15910 Ventura Boulevard Suite 1600
Encino, CA 91436
Telephone:   (818) 839-2333
Facsimile:    (818) 986-9698

-41-

1218438.7

W. Daniel ("Dee") Miles, III
dee.miles@beasleyallen.com
Archie I. Grubb, II
archie.grubb@beasleyallen.com
BEASLEY ALLEN CROW METHVIN
PORTIS & MILES PC
218 Commerce Street
PO Box 4160
Montgomery, AL 36104
Telephone:    (334) 269-2343
Facsimile:    (334) 954-7555

Norman E. Siegel
siegel@stuevesiegel.com
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Telephone:    (816) 714-7112
Facsimile:    (816) 714-7101

Michael A. Caddell
mac@caddellchapman.com
Cory S. Fein
csf@caddellchapman.com
CADDELL & CHAPMAN
1331 Lamar Street, Suite 1070
Houston, TX 77010
Telephone:    (713) 751-0400
Facsimile:    (713) 751-0906

Robert Ahdoot
rahdoot@ahdootwolfson.com
Tina Wolfson
twolfson@ahdootwolfson.com
Bradley K. King
bking@ahdootwolfson.com
AHDOOT AND WOLFSON, P.C.
1016 Palm Avenue
West Hollywood, CA 90069
Telephone:    (310)-474-9111
Facsimile:    (310)-474-8585

Jonathan W. Cuneo
jonc@cuneolaw.com
CUNEO GILBERT & LADUCA, LLP
8120 Woodmont Avenue, Suite 810
Bethesda, MD 20814
Telephone:    (202) 789-3960
Facsimile:    (202) 789-1813

-42-

Roger L. Mandel
rlm@lhlaw.net
LACKEY HERSHMAN LLP
3102 Oak Lawn Avenue Suite 777
Dallas, TX 75219
Telephone:      (214)-560-2201

Gregory M. Travalio
gtravalio@isaacwiles.com
ISAAC WILES BURKHOLDER AND
TEETOR
Two Miranova Place, Suite 700
Columbus, OH 43215
Telephone:    (614) 221-2121
Facsimile:      (614) 365-9516

Benjamin L. Bailey
bbailey@baileyglasser.com
Eric B. Snyder
esnyder@baileyglasser.com
BAILEY & GLASSER, LLP
209 Capitol Street
Charleston, WV 25301
Telephone:    (304) 345-6555
Facsimile:      (304) 342-1110

Edward L. White
ed@edwhitelaw.com
EDWARD L. WHITE, P.C.
825 E. 33rd St.
Edmond, OK 73013
Telephone:    (405) 810-8188
Facsimile:      (405) 608-0971

*Counsel to Certain Plaintiffs*

-43-

## CERTIFICATE OF SERVICE

On February 20, 2015, I hereby certify that a true and correct copy of the foregoing document described as **PLAINTIFFS' OPENING BRIEF REGARDING CHOICE OF LAW,** was served upon the attorney of record for each other party through the Court's electronic filing service, which will send notification of such filing to the e-mail addresses registered.

*/s/ Elizabeth J. Cabraser*
Elizabeth J. Cabraser

-44-

1218438.7