# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

Andrew B. Bloomer, P.C.
To Call Writer Directly:
(312) 862-2482
andrew.bloomer@kirkland.com

300 North LaSalle
Chicago, Illinois  60654

(312) 862-2000

www.kirkland.com

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 04/21/2015

April 18, 2015

The Honorable Jesse M. Furman
United States District Court for the
Southern District of New York
500 Pearl Street
New York, NY 10007

> Re:   *In re: General Motors LLC Ignition Switch Litigation,*
>       14-MD-2543 (JMF); 14-MC-2543

Dear Judge Furman:

Pursuant to this Court's Order No. 8 § IV.B, counsel for General Motors LLC ("New GM") and Lead Counsel – having met and conferred on multiple occasions with each other as well as with counsel for the other Defendants – submit this joint letter setting forth the parties' tentative agenda for the April 24, 2015 Status Conference.  The parties believe that the Court does not need to allot more than three hours for the Status Conference.

  1.   **Coordination in Related Actions.**

The parties will be prepared to address their ongoing coordination efforts in Related Actions (*See* Order No. 15, Doc. No. 315).  The most pressing coordination issue is in *Felix, et al. v. General Motors LLC*, No. 1422-CC09472 (City of St. Louis, Mo.), a wrongful death and personal injury action alleging ignition switch defects in thirty-three separate accidents involving five deaths and thirty-three personal injuries.  On April 15, 2015, the Honorable David Dowd entered an order denying New GM's motion to adopt the joint coordination order and finding "that the Joint Coordination Order is not necessary to avoid duplicative discovery, undue burden or expense."  The court further found that "Plaintiffs are entitled to have their discovery requests fully responded to without reference to the MDL discovery."  The court's order directs New GM to provide responses to plaintiffs' document requests within 21 days (May 6, 2015).

The proceedings in *Felix* pose a serious risk of undermining the coordination efforts of the Court and the parties, and could lead to the unraveling of MDL-state case coordination.  Lead Counsel and counsel for New GM are conferring on this issue.  If we are unable to resolve the dispute, New GM will promptly inform the Court and seek any necessary relief, including

## KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
April 18, 2015
Page 2

injunctive relief that the Court is empowered to grant in aid of its jurisdiction over this MDL. *See* Doc. No. 299 n.2.

### 2. New GM's Document Productions.

New GM continues to comply with its rolling production obligations and deadlines set forth in the Court's orders. To date, New GM has produced into the MDL 2543 Document Depository more than 935,000 documents (totaling over 5.25 million pages), including more than 100,000 additional documents (totaling approximately 775,000 pages) to date in March and April 2015, including: (a) custodial file documents produced on March 27 and April 13 pursuant to Order Nos. 20 and 36 (Doc. Nos. 383 and 604); (b) documents produced on March 6, 13, and 27, and April 13 relating to the 47 categories of documents for the seven Phase One Recalls identified in Order No. 20 (Doc. No. 383); (c) documents produced on March 6 pursuant to Paragraph 1 of Order No. 26 (Doc. No. 434) regarding certain personnel files; (d) documents produced on March 6 that were responsive to requests in *Melton II*; (e) documents produced on March 13 pursuant to Order No. 12 (Doc. No. 295) from New GM's productions to Congress and NHTSA; (f) documents produced on April 13 pursuant to Order No. 44 Paragraph 1(d) (Doc. No. 754) relating to Plaintiffs' Phase Two custodial search terms; and (g) documents related to post-recall repair complaints pursuant to the October 7, 2014 joint letter endorsed by the Court and subsequent correspondence between the parties (*see* Doc. No. 334). New GM anticipates making several additional productions in the next few weeks as its rolling Phase One production continues.

Finally, New GM has identified additional fields of supplemental data within New GM's Customer Assistance Center ("CAC") Service Request database. Although the data input in these additional fields is stored within the CAC database, the aggregate information cannot readily be extracted from the CAC database in usable form. The inputs, if any, in these additional fields were not included in the CAC files that New GM produced in the MDL in connection with the post-recall repair discovery (*see* Doc. No. 334) and the VIN packages that New GM produced in response to RFP 415 (*see* Doc. No. 334). New GM is working with its vendor to extract this data and supplement its MDL production, as well as to determine if there are any additional data fields in the other databases subject to the parties' October 7, 2014 letter which were not included in New GM's production of such files. The parties are meeting and conferring regarding this issue.

### 3. Additional Documents that New GM Has Produced to the U.S. Government.

Plaintiffs' position is that on March 6, 2015, Plaintiffs served their Second Set of Consolidated Requests for Production of Documents, which seek additional documents that New

# KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
April 18, 2015
Page 3

GM has produced to the U.S. Government in connection with the Government's investigation of New GM's conduct with respect to the same recalls that are at issue in the MDL.  New GM has not served responses and objections to those requests.  Based on the parties' multiple meet and confer conferences on this topic, the parties will likely be able to agree that approximately ninety percent (90%) of the additional documents that New GM has produced to the U.S. Government are relevant here and should be produced by New GM into the MDL Document Depository. New GM initially expressed willingness to produce those documents upon which the parties could agree while the parties worked through their disputes on the remainder.  New GM, however, then took the position that it would not agree to produce documents it agrees are relevant and responsive unless Plaintiffs agreed that they would not press for the production of certain – as yet unnamed – other categories of responsive documents that it produced to the U.S. Government.  Plaintiffs are still waiting to hear from New GM as to the categories of responsive documents it proposes to withhold from production.

New GM's claim below that Plaintiffs' requests are somehow improper assumes that New GM has produced documents to the Government that are not related to the MDL recalls. But, again, New GM has yet to tell Plaintiffs what those purportedly irrelevant documents are. And the example New GM gives the Court, materials related to New GM's protocol for determining whether crashes resulting in death or injury were caused by the ignition switch defect, are clearly relevant to this MDL, which seeks, *inter alia*, recovery for people whose death or injuries were caused by the ignition switch defect.  Plaintiffs will fully explain their reasoning in a letter brief to the Court, as necessary.

Contrary to New GM's argument below, Plaintiffs have not raised this issue prematurely. The parties have been meeting and conferring on this issue since February – since even before Plaintiffs served their March 6 requests.  It was only Plaintiffs' inclusion of this topic in the status conference letter that prompted New GM to change its tune, once again, and represent to the Court that it is now prepared to promptly begin producing relevant materials on a rolling basis.

New GM's position is that Plaintiffs' Second Set of Consolidated Requests, which demand production of, *inter alia*, "all documents [New GM] produced to any Government entity in response to any Government request for Documents, regardless of date, related to any of the MDL Recalls and/or GM's conduct regarding any MDL Recall" (RFP No. 1) are improper as a matter of law.  *See, e.g., Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 110 (S.D.N.Y. 2013) ("[Plaintiffs] are not entitled to all documents [] that the defendants have turned over to 'any government body or agency' pursuant to subpoena. While the scope of discoverable material may extend beyond the particular transactions in this case, that fact in and of itself does not mean that every document produced in response to any

# KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
April 18, 2015
Page 4

government subpoena [] is relevant. Instead, the plaintiffs should be provided with copies of those responses that are relevant to this case and which conform to the limits of Rule 26(b)"); *see also Capital Ventures Int'l v. J.P. Morgan Mortgage Acquisition Corp.*, No. CIV.A. 12-10085-RWZ, 2014 WL 1431124, at *2 (D. Mass. Apr. 14, 2014) (denying motion to compel "all documents that defendants previously produced…to any congressional body, regulatory agency, [or] law enforcement agency," and recognizing that "[g]overnment investigations also may be much broader than the limited subject matter of a lawsuit"); *King Cnty. v. Merrill Lynch & Co.*, No. C10-1156-RSM, 2011 WL 3438491, at *3 (W.D. Wash. Aug. 5, 2011) (denying motion to compel "'[c]loned discovery', requesting all documents produced or received during other litigation or investigations . . . . Although some portion of documents encompassed by Plaintiffs' request may be relevant, the Court has no method of determining which of those documents are relevant, and which are not."); *Wollam v. Wright Medical Group*, No. 10-cv-03104, 2011 WL 1899774 (D. Colo. May 18, 2011) ("I agree with the many courts that have considered the question and have held that cloned discovery is not necessarily relevant and discoverable." (citing cases)). Instead, it is axiomatic that plaintiffs "must make proper requests describing the information in which they are interested. The plaintiffs' counsel must do their own work and request the information they seek directly." *Midwest Gas Servs., Inc. v. Indiana Gas Co.*, No. IP 99-690-C-Y/G, 2000 WL 760700, at *1 (S.D. Ind. Mar. 7, 2000); *see also King Cty*, 2011 WL 3438491, at *3 ("Plaintiff must make proper discovery requests, identifying the specific categories of documents sought, in order to obtain them—and each category must be relevant to its claims and defenses.").

Here, notwithstanding the fact that Lead Counsel's Second Set of Consolidated Requests are facially improper, New GM has participated in multiple meet-and-confers (and is prepared to continue to do so) in order to fashion a reasonable compromise and to avoid burdening the Court with a needless discovery dispute. In addition, consistent with the parties' meet-and-confer discussions, New GM is prepared to promptly begin providing to Lead Counsel relevant materials previously produced to the government, with rolling productions prioritized according to the upcoming depositions. Nevertheless, there is a substantial amount of material in New GM's governmental productions that is plainly nonresponsive (*e.g.*, materials regarding implementation of the Feinberg Settlement Protocol). New GM is in the process of identifying the categories of non-responsive documents, is prepared to engage in further meet-and-confers to narrow or resolve any disputes, and is disappointed that Lead Counsel elected to prematurely raise this issue with the Court.

## KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
April 18, 2015
Page 5

### 4. Plaintiffs' Superseding Consolidated Document Requests Related to Phase One Recalls.

Order No. 44 Paragraph 3 (Doc. No. 754) required New GM to serve its responses to the first 50 requests in Plaintiffs' Revised First Set of Consolidated Requests for Production of Documents on April 15, 2015. Given the broad scope of Plaintiffs' requests and the substantial undertaking involved in responding to them on a short time line, New GM completed and served those responses at 12:29 a.m. EDT on April 16. The parties will continue to meet and confer in an effort to narrow any disputes and, if necessary, will submit competing letter briefs (not to exceed five single-spaced pages) on any unresolved objections by Tuesday, April 21, 2015.

### 5. Redaction of Board of Directors-Related Documents.

Pursuant to Order No. 37 (Doc. No. 628), the parties are continuing to meet and confer regarding their dispute about the redacted documents that are the subject of Plaintiffs' request to compel (Doc. Nos. 600, 601) and will propose to the Court a process for submitting the challenged documents (or a representative subset thereof) to the Court for in camera review if the parties are unsuccessful in resolving their dispute.

### 6. Plaintiffs' Third-Party Subpoenas to King & Spalding.

Plaintiffs have served subpoenas for documents and deposition testimony on King & Spalding, New GM's outside counsel in multiple product liability actions involving the ignition switch defect. King & Spalding served objections to the subpoenas on April 17, 2015. Plaintiffs anticipate that a briefing schedule will be necessary to resolve disputes about the subpoenas and will confer with King & Spalding before submitting a proposed schedule to the Court.

### 7. MDL 2543 Document Depository Cost Sharing.

Pursuant to the parties' agreement during their August 21, 2014 meet and confer, New GM signed a six month contract with ShareVault to serve as the MDL 2543 Document Depository on August 29, 2014. *See also* Order No. 12 § II, Doc. No. 296 ("The parties have agreed to use ShareVault as the single electronic document depository for both this MDL and all related state and federal court actions (the 'MDL 2543 Document Depository')". New GM has investigated the use of potential alternatives to ShareVault as the MDL 2543 Document Depository, including Everlaw, the vendor that Plaintiffs recommended. Unfortunately, without significant changes to its hosting platform, Everlaw does not appear to be able to meet New GM's requirements for the security and control of data. New GM has renewed the ShareVault contract for an additional six month period.

# KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
April 18, 2015
Page 6

    **8.**    **Proposed Amended Order Regarding Effect of the Consolidated Complaints.**

Pursuant to Order No. 39 Section VII (Doc. No. 671), on April 3, 2015, the parties submitted competing letter briefs and proposed amended orders regarding the effect of the consolidated complaints. (*See* Doc. Nos. 809, 810.)

    **9.**    **Settlement.**

The parties will be prepared to discuss possible resolution mechanisms at the status conference.

    **10. Plaintiffs' Proposed Order Regarding Authentication And Qualification Of Documents As Business Records.**

Plaintiff's position is that the GM-produced documents that Plaintiffs will use as deposition exhibits in this case will overwhelmingly (i) be authentic and (ii) qualify as business records consistent with the Federal Rules of Evidence. In order to conserve the parties' precious deposition time, Plaintiffs have proposed a simple Order to expedite the authentication of documents and their qualification as business records. The Order would provide that (i) documents produced by a party that purport to be copies of documents prepared or received by the party are presumed to be authentic within the meaning of the Federal Rules of Evidence; and (ii) documents introduced as exhibits during depositions that purport to be records of acts, events, conditions, opinions, or diagnoses will presumptively be considered business records within the meaning of Fed. R. Evidence 803(6). No one would be prejudiced under the Order, as it would allow the parties 30 days from the receipt of the transcript of the deposition in which a given document is introduced to contest the authenticity of the document and/or the document's qualification as a business record. If the producing party objects to the designation, the Order provides that the parties will meet and confer, determine whether limited further discovery is necessary, and—only as a last resort—bring any irreconcilable disputes to this Court for resolution.

New GM has objected to the proposal and suggests that the issues of authenticity and business records qualification be tabled until the time of trial. But that is too late, as there will be no time for discovery to cure any real questions that may exist as to the authenticity or qualification as business records of certain documents. New GM also notes, correctly, that not every email between employees will qualify as a business record. But Plaintiffs believe that the reports, studies, emails and other documents they plan to use in the upcoming depositions overwhelmingly will qualify. If New GM disagrees with particular designations, its rights are fully protected under the proposed Order. Because the parties cannot agree on the propriety of

# KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
April 18, 2015
Page 7

the proposed Order, and, because depositions begin soon, Plaintiffs request that this Court resolve the issue upon the submission of simultaneous five page letter briefs, to be submitted on May 1, and simultaneous five page replies, to be submitted on May 8.

New GM's position is that Plaintiffs' proposed approach to business records and authenticity issues is contrary to the Court's orders and the Federal Rules, and would be an inefficient use of the parties' and the Court's time and resources. As an initial matter, Plaintiffs' argument that the documents they will mark as deposition exhibits are "overwhelmingly" business records is incorrect. *See, e.g., In re Oil Spill by the Oil Rig DEEPWATER HORIZON in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179, 2012 WL 85447, at *3 (E.D. La. 2012) (discussion of business records exception to hearsay rule); In re Oil Spill by Oil Rig "DEEPWATER HORIZON" in Gulf of Mexico, on April 20, 2010, 2012 WL 423862, (E.D.La. Feb. 08, 2012) (same). Moreover, Plaintiffs' proposal would require the parties to object to the "lack of authenticity and/or failure to qualify as a business record" of documents within "30 calendar days of the receipt of the transcript of a deposition." Contrary to Plaintiffs' claim, New GM does not suggest "that the issues of authenticity and business records qualification be tabled until the time of trial." Rather, these issues should be addressed at the same time they are addressed in every other case and MDL—*i.e.*, when the parties exchange their trial exhibit lists. That way the parties and the Court can focus their efforts on those documents and can avoid wasting time and resources litigating over hundreds of documents used in depositions that are not important enough to be included on the parties' trial exhibit lists.

   11.   **Inspection of Ignition Switches.**

The parties have agreed that a protocol should be set to enable the testing of a limited number of ignition switches that have been preserved by New GM under Preservation Order No. 1 (Doc. No. 238). New GM is drafting an agreed-upon order that would establish a process for randomly selecting switches, permit New GM to provide the requested switches to Plaintiffs as well as a protocol for the chain of custody/disassembly/non-destructive testing of any such switches by both plaintiffs and defendants. The parties will then attempt to agree upon the form of the order and submit it the Court for approval.

   12.   **Identifying Deponent Custodial Productions.**

Plaintiffs' position is that Order No. 36 requires New GM to produce non-privileged custodial file documents for deponents at least fifteen (15) days in advance of the noticed deposition date when Plaintiffs provide at least sixty (60) days' notice of the intended deposition. In New GM's cover letter announcing the production, New GM refuses to identify which Order No. 36 custodial files are being produced. This refusal has practical consequences that will

# KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
April 18, 2015
Page 8

disadvantage Plaintiffs as depositions draw near. New GM's document productions are posted in electronic volumes on ShareVault. Once Plaintiffs receive notice from New GM that a new production is available, Plaintiffs' vendor (Everlaw) downloads the documents to the Everlaw platform, whereupon Plaintiffs' counsel are then able to review the documents. This process of retrieving and loading—which is done manually—takes at least a day and can take several days, depending on the size of the production. Plaintiffs have asked New GM to identify those deponents for whom Order No. 36 productions are being made so that Plaintiffs can prioritize the downloading of files for deponents whose depositions could be set for 15 days after New GM produced those custodial files to ShareVault. New GM refuses to provide this basic professional courtesy. Plaintiffs believe that New GM's refusal to identify the deponents violates the spirit if not the letter of Order No. 36 because, without the deponent identified, Plaintiffs will not be able to prioritize the downloading of those specific files and, effectively, be deprived of the full 15 day opportunity to review those files and incorporate them into the deposition preparation process. Plaintiffs request that the Court order New GM to identify the deponents for whom Order No. 36 productions are being made.

New GM's position is that its document productions comply with the requirements of Order Nos. 11, 20, 36 and 44 and provide Plaintiffs ample information to identify the deponents for whom documents have been produced. Indeed, Plaintiffs have access to the custodial information under the CUSTODIAN and ALL_CUSTODIANS fields, as well as many other searchable fields in New GM's production load files including, but not limited to, AUTHOR, CC, BCC, RECIPIENT and TEXT_LINK, which allow Plaintiffs to search for documents related to a particular custodian. New GM has not generated or created the lists or details requested by Plaintiffs, and the process for doing so is the same for Plaintiffs as it would be for New GM. Further, in MDL 2179, where the parties produced custodial file documents 10 days before the deposition, none of the parties produced materials in the manner suggested by Plaintiffs. New GM has been producing custodial files pursuant to Order Nos. 11, 20, 36 and 44 for several weeks and will continue to produce materials as required by those Orders.

### 13.     Joint Letter Proposing How to Proceed on Pre-Sale Consolidated Complaint.

Pursuant to Order Nos. 22 and 47 (Doc. Nos. 399 and 842), the parties will meet and confer and submit a joint letter no later than April 29, 2015 discussing proposals for how the Court should proceed with respect to Plaintiffs' Pre-Sale Consolidated Complaint. The parties will also be prepared to discuss the issue at the April 24 Status Conference.

# KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
April 18, 2015
Page 9


    **14.    Filing Deadlines.**

    Plaintiffs' position is that they request that the Court establish a 9:00 p.m. EST time deadline for the filing and service of documents due under the Court's various scheduling orders. The parties have been routinely filing up until midnight on the day of a deadline, and there have even been instances in which New GM's documents have been received by Plaintiffs' counsel well after midnight (*e.g.*, New GM March 25 letter brief re: Order No. 31 search terms (Doc. No. 734); Defendant General Motors LLC's First Response to Plaintiffs' First Set of Consolidated Requests for Production of Documents Nos. 1-50). This practice shortens the time available to the court for consideration of submissions, deprives counsel of the ability to make a quick review of the filing before retiring for the evening, and unnecessarily requires clerical staff filing to work very late on deadline days. Plaintiffs respectfully submit that the orderly progression of this complex litigation will be enhanced by maintaining a 9:00 p.m. EST deadline for the filing and service of documents due on a particular day. It also deprives counsel of the ability to maintain religious observances on Friday night, tonight is one example.

    New GM's position is that, pursuant to Section 13.10 of the ECF Instructions for the District Court for the Southern District of New York, "[f]iling must be completed before midnight local time where the Court is located in order to be considered timely filed that day." *See also* Fed. R. Civ. P. 6(a)(4) (deadline "for electronic filing" is "at midnight in the court's time zone"). New GM agrees with Plaintiffs that, on occasion, both sides have filed/served documents after the prescribed deadline and should use their best efforts to avoid doing so in the future. However, Plaintiffs have provided no basis for deviating from the Federal and Local Rules and defendants submit that they should be maintained. Moreover, Plaintiffs cannot be heard to complain about late filings when such filings are prompted, as they were here, by Plaintiffs' inclusion of lengthy substantive arguments in the proposed agenda letter (*see, e.g.*, ¶¶ 3, 10, 12, 13 *supra*) for the first time on the day the agenda letter was to be filed. New GM requested that such arguments be removed and reserved for any letter briefs, but Plaintiffs' refused. Faced with Plaintiffs' insistence that their substantive arguments be included in the agenda letter despite New GM's position that this letter is not the appropriate vehicle for legal argument on the merits of issues, New GM has no choice but to respond to Plaintiffs' arguments. New GM was prepared to file the parties' joint letter yesterday but Plaintiffs refused.

# KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
April 18, 2015
Page 10

                                                        Respectfully submitted,

                                                        /s/ Richard C. Godfrey, P.C.
                                                        /s/ Andrew B. Bloomer, P.C.

                                                        *Counsel for Defendant General Motors LLC*

cc:      Lead Counsel for Plaintiffs
          Counsel of Record for Defendants

Counsel should be prepared to address, and/or update the Court with respect to, each of the issues discussed above at the April 24, 2015 status conference. Additionally, counsel should be prepared to update the Court with respect to the status of the plaintiff fact sheets for both economic loss plaintiffs and personal injury/ wrongful death plaintiffs.

Further, the parties are hereby ORDERED to brief the issues raised in Item #10 -- Plaintiffs' proposed order regarding authentication and qualification of documents as business records. In the interest of resolving the issue before most if not all depositions begin, the parties shall submit simultaneous letter briefs, not to exceed five pages, no later than April 28, 2015, and may submit reply letter briefs, not to exceed three pages, no later than May 1, 2015, at 2 p.m.

The Clerk of Court is directed to docket this memo endorsement in both 14-MD-2543 and 14-MC-2543.

                                                      SO ORDERED.

                                                      April 21, 2015