

April 29, 2015

*Via Electronic Court Filing*

The Honorable Jesse M. Furman
United States District Court for the
Southern District of New York
500 Pearl Street
New York, NY 10007

        Re:    *In re: General Motors LLC Ignition Switch Litigation,*
                 14-MD-2543 (JMF)

Dear Judge Furman:

      Pursuant to this Court's Order Nos. 22 and 47 (Doc. Nos. 399 and 842), the parties have met and conferred among themselves and with Designated Counsel in the Bankruptcy Court, and submit this joint letter regarding how the Court should proceed on Plaintiffs' Pre-Sale Complaint (Doc. No. 347) in light of the Bankruptcy Court's April 15, 2015 "*Decision on Motion to Enforce Sale Order*" ("Decision") (09-BR-50026 Docket No. 13109).

Plaintiffs' Position

      While the parties before the Bankruptcy Court have yet to confer, and no Bankruptcy Court judgment has been issued on the Decision, Plaintiffs currently intend to appeal one or more aspects of the Decision, including that portion of the Decision upholding the Sale Order's[1] bar on successor liability claims. The Decision erroneously concludes that the denial of "the notice that due process requires" (Decision at 9) "did not establish a due process violation" (*Id.* at 12) because Plaintiffs failed to establish prejudice as a result of the constitutionally insufficient notice. Based on that analysis, the Decision upholds the bar on successor liability claims in the Free and Clear Provisions of the Sale Order. *Id.* The Bankruptcy Court has indicated its intention to certify its anticipated judgment for direct review by the Second Circuit. *Id.* at 131. Plaintiffs respectfully assert that, for the reasons indicated below, the Decision is in error and immediate review to the Circuit may not be appropriate or consistent with the controlling statute. *See* 28 U.S.C. Sec. 158 (d).

      In determining that Plaintiffs did not suffer prejudice on the 2009 successor liability bar, the Bankruptcy Court determined that, even if Plaintiffs had an opportunity to be heard in connection with the entry of the Sale Order, the result would not have been different. In so

---

[1] Capitalized terms not otherwise defined herein shall have the meanings provided in the Decision.

concluding, the Bankruptcy Court relied on the numerous objections to the Free and Clear Provisions of the Sale Order raised by others and overruled back in 2009. *Id.* at 80. *See also Id.* at 20-23 (discussion of the Successor Liability Objectors). In effect, the Bankruptcy Court determined that it had afforded the Plaintiffs a "do-over" but that Plaintiffs failed to present any new arguments that were not previously made and rejected back in 2009.

Plaintiffs' likely appeal will challenge the determinations 1) that prejudice beyond the opportunity to be heard is required; and 2) if such additional prejudice was required, that Plaintiffs failed to demonstrate such prejudice. Plaintiffs' contentions remain both that deprivation of notice and an opportunity to be heard itself constitutes prejudicial denial of due process; *and* that this denial had real, devastating human and economic consequences. The appropriate remedy is that the Sale Order's ban on successor liability claims cannot be enforced against them. Plaintiffs further contend the Bankruptcy Court erred in determining that their arguments were no different or better that those raised by others back in 2009. As Plaintiffs properly alleged on the limited record before the Bankruptcy Court,[2] both Old GM and New GM were charged with the knowledge of the Ignition Switch Defect and the deadly safety issues it presented,[3] and each independently violated federally mandated safety laws by failing to conduct the requisite recall.

In substance, the sale from Old GM to New GM represented a bad-faith, inequitable and potentially collusive effort by a seller and buyer to prevent disclosure of known safety defects, and to avoid their correction. Based on the asserted facts and controlling law, Plaintiffs believe notice may well have produced a Free and Clear finding with appropriate carve outs for the victims of the Ignition Switch Defect, much like the carve out for post sale personal injury and wrongful death claims. Unlike the other Successor Liability Objectors, the Plaintiffs, but for their acknowledged lack of appropriate notice and opportunity to be heard, could have raised specific objections to the Free and Clear Provisions. Based on what is now known to have been a gross violation of both the law and the public trust against millions of innocent people, no one could accurately speculate there would have been no change in outcome had there been proper disclosure that millions of cars were being kept on the road with known but hidden life-threatening defects. While logic dictates that awareness of these material facts would have resulted in a Sale conditioned upon a timely recall campaign (preventing many injuries, saving many lives and ameliorating economic harm), the Bankruptcy Court essentially held that no set of previously unknown facts would have changed the result of the 2009 Sale Hearing. Moreover, both the original 2009 decision and the 2015 Decision were made without an appropriate factual record, because the underlying facts surrounding the Ignition Switch Defect

---

[2] It should be emphasized that no discovery was conducted in connection with the resolution of the Threshold Issues. Instead, the parties developed and submitted a set of stipulated facts, based primarily on the Valukas Report and materials presented to Congress. The record also contains numerous "disputed facts" which remain contested. *See* Disputed Stipulations of Fact Pursuant to the Bankruptcy Court's Supplemental Scheduling Order, Doc. No. 12826-1-4.

[3] As the Bankruptcy Court noted, at least 24 Old GM personnel, all of whom transferred immediately to New GM, including engineers, senior managers, and attorneys, were aware of the Ignition Switch Defect prior to the Sale Motion, as early as 2003. *See* Decision at 32. Each brought that knowledge to New GM.

were not disclosed or subjected to discovery.[4] The conduct of such discovery remains the role of this MDL Transferee Court under 28 U.S. § 1407 and the Panel's Transfer Order, and its scope is unchanged by the Decision.

Were this matter to go straight to the Circuit, and assuming the Circuit believed consideration of the facts known to both Old GM and New GM is relevant to the questions of collusion, concealment and New GM's probable unclean hands as these impact the Sale Order's bar of successor liability claims, it is reasonably likely the Circuit would remand the matter back to the Bankruptcy Court for further fact finding. However, it is this Court that is in charge of relevant discovery germane to those issues; by-passing this Court would lead to inefficiencies and waste.[5] This Court's superior knowledge of the facts and Plaintiffs' claims as they are developing in this MDL renders this Court uniquely qualified to rule on which claims may proceed in this action notwithstanding the Sale Order, and to preside over any remaining factual issues that may remain in connection with that question. As a consequence, Plaintiffs are likely to appeal to the Circuit's discretion not to directly accept the inevitable appeal and allow this Court to hear it in the first instance.

Plaintiffs' Lead Counsel contemplate a number of amendments to the existing Consolidated Complaints. In particular, in light of the Decision, Lead Plaintiffs intend to amend the claims presently asserted in the Post Sale Consolidated Complaint to include direct liability claims based "solely on New GM conduct" as to Old GM vehicles and parts. *See* Decision at 12. As to the Pre-Sale Consolidated Complaint, Lead Counsel respectfully propose that the successor liability claims therein be stayed pending appeal, which appeal we believe can and should be expedited before this Court. That may obviate the need for further amendments in the event that this Court (if it takes the appeal) and/or the Second Circuit ultimately agree with Plaintiffs' position. Unless and until Judge Gerber's decision on this score is overruled, Plaintiffs have no intention of attempting to litigate successor liability claims, or any claims premised on the conduct of Old GM. Contrary to New GM's assertion, Plaintiffs do not argue that this Court should stay Judge Gerber's ruling pending appeal. Rather, Plaintiffs believe that this case should now go forward with respect to the claims they will assert in their upcoming Second Amended Consolidated Complaint. Consistent with Judge Gerber's ruling, those claims will all be claims against New GM arising solely from its own independent violations of law. Plaintiffs merely request that the successor liability claims asserted in the Pre-Sale Complaint be stayed by this Court pending the appeal of Judge Gerber's decision. If Judge Gerber's ruling is ultimately affirmed in that respect, then (and only then) should this Court dismiss the successor liability claims with prejudice.

---

[4] Contrary to New GM's argument, Plaintiffs do not complain that no discovery was conducted in the bankruptcy court. As discussed, Plaintiffs do not believe that any discovery was necessary to show the prejudice to them flowing from what Judge Gerber found to be the Due Process violation in not providing them with notice of the Sale Order. However, in the event that the appellate court agrees that a showing of prejudice is necessary and not made out on the existing record, discovery may be necessary. Any such discovery can and should be overseen by this Court.

[5] For example, any remand back to the Bankruptcy Court could, for a variety of reasons, lead to unnecessary motion practice, including motions for withdrawal of the reference.

Finally, contrary to New GM's position, Judge Gerber's opinion is clear: claims against New GM based on its own post-Sale misconduct are actionable—even if those claims relate to cars or parts made by Old GM. *See. e.g.* Decision at 12 ("[T]he Economic Loss Plaintiffs were prejudiced in one respect. Nobody else had argued a point that they argue now: that the proposed Sale Order was overly broad, and that it should have allowed them to assert claims involving Old GM vehicles and parts so long as they were basing their claims *solely on New GM conduct*, and not based on any kind of successor liability or any other act by Old GM.") Plaintiffs plan to assert such claims in their upcoming amended Consolidated Complaint. Plaintiffs flatly disagree with New GM's claim that Old GM cannot be mentioned in that Complaint consistent with Judge Gerber's Order. To the contrary, because of the continuity in personnel, books and records, New GM had knowledge of the Ignition Switch Defect and a host of other defects and safety issues *from day one* of its existence beginning in July of 2009.

More fundamentally still, Plaintiffs' Second Amended Consolidated Complaint will not be filed until June 12. Once it is filed, New GM will have the opportunity to move to dismiss the claims pleaded therein—including the claims on behalf of purchasers of Old GM vehicles. At that time, upon full briefing, this Court can rule on the viability of those claims—and this Court's review will no doubt include the question of whether the claims (or any of them) improperly seek to hold New GM liable for Old GM's conduct. New GM's argument on this score is premature.

New GM's Position

The Decision confirms that claims against New GM based in any way on successor liability or Old GM's conduct are barred under the Sale Order and Injunction, and that the Bankruptcy Court should now direct the plaintiffs to immediately dismiss with prejudice their Pre-Sale Consolidated Complaint. The Bankruptcy Court expressly held that:

> [I]t is plain that to the extent the Plaintiffs seek to impose successor liability, or to rely, in suits against New GM, on any wrongful conduct by Old GM, these are actually claims against Old GM, and not New GM. It also is plain that any court analyzing claims that are supposedly against New GM only must be extraordinarily careful to ensure that they are not in substance successor liability claims, "dressed up to look like something else." **Claims premised in any way on Old GM conduct are properly proscribed under the Sale Agreement and the Sale Order**, and by reason of the Court's other rulings, the prohibitions against the assertion of such claims stand.

*Id.* at *8 (emphasis added). The Bankruptcy Court also held that the Pre-Sale Consolidated Complaint claims "**would all be barred under the Sale Order and Injunction, to the extent it is enforceable**." *Id.* at *17 n.63 (emphasis added). Because the Decision enforces the Sale Order and Injunction against such claims, holding that they are barred, the complaint should be dismissed. That dismissal should be with prejudice because the Pre-Sale Consolidated Complaint plaintiffs—all of whom purchased Old GM vehicles prior to the Bankruptcy Sale— assert claims based on successor liability and/or Old GM conduct.

The Pre-Sale Consolidated Complaint purports to bring claims against New GM based on (1) successor liability for Old GM claims; and (2) the conduct of New GM. Pre-Sale Cplt. ¶¶ 3, 815. Claims explicitly based on successor liability are barred under the Decision. *See* Decision at *8 (Bankruptcy Court "will continue to enforce prohibitions against successor liability"). And analysis of the complaint's claims supposedly based on New GM's own conduct establishes that, in fact, these claims rely on Old GM's conduct and are "in substance successor liability claims, dressed up to look like something else." *Id.* at *8.

The Pre-Sale Consolidated Complaint asserts three types of claims against New GM: breach of implied warranty, fraudulent concealment and consumer protection, and unjust enrichment. As to the first category, the complaint alleges breach of the implied warranty of merchantability under both common law and the Magnuson-Moss Warranty Act. Pre-Sale Cplt. ¶¶ 847-72. Any such implied warranty claim can only arise when the vehicle was sold by Old GM, and thus the claims rely on Old GM's conduct. Moreover, the Sale Agreement and Sale Order and Injunction expressly provide that New GM is not assuming implied warranties. *See* Sale Order and Inj. ¶ 56; Sale Agreement §§ 2.3(b)(xvi), 6.15(b); *Trusky v. Gen. Motors LLC (In re Motors Liquidation Co.)*, Adv. Proc. No. 09–09803, 2013 WL 620281, at *7-*8 (Bankr. S.D.N.Y. Feb. 19, 2013).

The second category of claims asserts fraudulent concealment and violation of various state law consumer protection statutes. The complaint alleges that there was a duty to disclose because "Plaintiffs relied on the Companies' representations that the vehicles they were purchasing and retaining were safe and free from defects." Pre-Sale Cplt. ¶¶ 878-79. As these plaintiffs all purchased their vehicles **before New GM even existed**, any alleged representations or concealment they supposedly relied on would have been that of Old GM. And plaintiffs' mere retention of an Old GM vehicle does not state an economic loss claim against New GM.

The third category of claims—unjust enrichment—also is based on Old GM conduct. *Id.* ¶¶ 880-84. Any alleged benefit from pre-sale plaintiffs could only have been conferred on Old GM, as New GM did not exist when they purchased their vehicles. Likewise, any conduct that would have made such purchases inequitable was necessarily the conduct of Old GM.

The Sale Order and Injunction expressly provides that all "rights or claims based on any successor or transferee liability" against Old GM "are forever barred, estopped, and permanently enjoined," and further that "all persons and entities are forever prohibited and enjoined from commencing or continuing in any manner any action or other proceedings … with respect to any … successor or transferee liability of [New GM] for any of the Debtors." Sale Order and Inj. ¶¶ 8, 47. As the Supreme Court has held, "persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order." *Celotex Corp. v. Edwards*, 514 U.S. 300, 306 (1995). The Sale Order and Injunction required plaintiffs to seek authorization from the Bankruptcy Court (which had retained exclusive jurisdiction to decide the issue) before commencing any action against New GM based on Old GM's Retained Liabilities. Plaintiffs violated the Sale Order and Injunction by not doing so. Ultimately, after New GM filed the

Motion to Enforce, plaintiffs agreed to seek the Bankruptcy Court's approval. Pursuant to the Decision, plaintiffs' request to bring the claims in the Pre-Sale Consolidated Complaint has been denied. As such, plaintiffs are compelled by the Decision to dismiss with prejudice the Pre-Sale Consolidated Complaint (which never should have been brought in the first place).

The Bankruptcy Court itself has ordered dismissal with prejudice when other plaintiffs have violated the Sale Order and Injunction. I*n re Motors Liquidation Co.*, No. 09-50026 (REG), 2011 WL 6119664 (Bankr. S.D.N.Y. Nov. 29, 2011) (ordering various plaintiffs to dismiss New GM "with prejudice"). Other courts are in accord. *See In re Escarent Entities, L.P.*, 519 Fed. App'x 895, 897-98 (5th Cir. Apr. 18, 2013); *New Jersey Transit Corp. v. Am. Premier Underwriters, Inc.*, No. CIV.A.05-CV-06614-JF, 2006 WL 3004893, at *2 (E.D. Pa. Oct. 19, 2006); *In re Residential Capital, LLC*, 508 B.R. 838, 842 (Bankr. S.D.N.Y. 2014).

In accordance with Order Nos. 22 and 47, New GM has limited its discussion to the effect of the Decision on the Pre-Sale Consolidated Complaint. That said, New GM intends to meet and confer with Lead Counsel to address additional effects of the Decision, including: (i) dismissing with prejudice all wrongful death or personal injury claims alleging Pre-Sale accidents; (ii) striking and dismissing claims and allegations of economic loss based in any way on Old GM's conduct, and precluding discovery thereon relevant only to Old GM's conduct; and (iii) prohibiting punitive damages that are based in any way on Old GM's conduct.

Finally, plaintiffs' position makes arguments at the wrong time and in the wrong place. Plaintiffs primarily argue the merits of the Decision, but the appropriate time to do that is on appeal. Suffice it to say, New GM disagrees with plaintiffs' factual and legal arguments concerning the Decision, its effects, and the merits of any appeal plaintiffs may pursue. For example, plaintiffs now complain about a lack of discovery, but the parties expressly agreed that no discovery should be conducted before the Bankruptcy Court. Indeed, plaintiffs' Designated Counsel told the Bankruptcy Court that plaintiffs "strongly believe that discovery is not necessary for the briefing of the Four Threshold Issues—and it is certainly not necessary to brief the due process and remedy Threshold Issues … ." *In re Motors Liquidation Co.*, No. 09-50026, Dkt No. 12854 at 2 (Bankr. S.D.N.Y. Aug. 15, 2014). As for plaintiffs' request that their successor liability claims (or, for that matter, any enforcement of the Decision) be stayed, New GM disagrees but in any case that request must be made to the Bankruptcy Court in the first instance, after judgment is entered. Likewise, plaintiffs' request that the Decision not be appealed directly to the Second Circuit must be addressed to the Second Circuit. Plaintiffs' speculation as to what procedurally should occur after a hypothetical Second Circuit decision is well beyond the directives of this Court's orders. The only question here is the effect of the Decision on the Pre-Sale Consolidated Complaint, and that effect is clear: the Bankruptcy Court should direct the plaintiffs to dismiss the complaint with prejudice as its very existence violates the Sale Order and Injunction.

Respectfully Submitted,

| Steve W. Berman | Elizabeth J. Cabraser | Robert C. Hilliard |
|---|---|---|
| **Hagens Berman Sobol Shapiro LLP** | **Lieff Cabraser Heimann & Bernstein, LLP** | **Hilliard Muñoz Gonzales L.L.P.** |
| 1918 Eighth Ave. | 275 Battery Street | 719 S Shoreline Blvd. |
| Suite 3300 | 29th Floor | Suite 500 |
| Seattle, WA 98101 | San Francisco, CA 94111-3339 | Corpus Christi, TX 78401 |
| -and- | -and- | |
| 555 Fifth Avenue | 250 Hudson Street | |
| Suite 1700 | 8th Floor | |
| New York, NY 10017 | New York, NY 10013-1413 | |

cc: Counsel of Record for the Defendants