UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------x
IN RE:

GENERAL MOTORS LLC IGNITION SWITCH LITIGATION          14-MD-2543 (JMF)

*This Document Relates to All Actions*

------------------------------------------------------------------------------x


**GENERAL MOTORS LLC'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER
REGARDING PRETRIAL DISCOVERY MATERIALS**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................ 3

    A.    The MDL Protective Order And De-Designation Requests. ................................ 3

    B.    Co-Lead Counsel's Inflammatory Press Releases. .................................. 4

    C.    Escalating Press Releases Regarding Non-Party Depositions. ............................. 5

ARGUMENT AND AUTHORITIES ............................................................................. 7

I.    THIS COURT HAS THE AUTHORITY TO LIMIT DISCLOSURE OF NON-JUDICIAL DISCOVERY MATERIALS IN THIS CASE. ................................. 7

    A.    Pre-Trial Discovery Is Not A Public Component Of A Civil Trial. ..................... 7

    B.    Non-Judicial Discovery Documents May Be Protected From Disclosure Upon A Baseline Showing Of Good Cause. ........................................................ 8

    C.    Courts Have Applied Broad Good Cause Findings To Protect Discovery Materials From Public Disclosure. ................................................................... 10

II.    THERE IS GOOD CAUSE TO PREVENT PUBLIC DISCLOSURE OF DISCOVERY MATERIALS IN THIS CASE. ............................................................ 12

    A.    Efforts To Try This Case In The Media Provide Good Cause. ......................... 12

    B.    The Protective Order Is Consistent With Professional Conduct Rule 3.6. .......... 14

    C.    Extensive Personal Information And Otherwise Privileged Materials Provide Good Cause. ........................................................................... 15

    D.    A Protective Order Will Not Prejudice Plaintiffs And Will Preserve The Integrity Of The Judicial Process And The Rights Of Parties And Witnesses. ................................................................................... 19

CONCLUSION ............................................................................................................ 20

i

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Adams v. Lab. Corp. of Am.*,
  2014 WL 7336697 (N.D. Ga. Dec. 22, 2014) ................................................ 15

*Anderson v. Cryovac, Inc.,*
  805 F.2d 1 (1st Cir. 1986) ................................................ 13

*Authentec, Inc. v. Atrua Technologies, Inc.*,
  2008 WL 9413824 (N.D. Cal. Sept. 24, 2008) ................................................ 11

*Baker v. Buffenbarger*,
  2004 WL 2124787 (N.D. Ill. Sept. 22, 2004) ................................................ 8, 17

*Barrella v. Village of Freeport*,
  2012 WL 6103222 (E.D.N.Y. Dec. 8, 2012) ................................................ 11

*Bond v. Utreras*,
  585 F.3d 1061 (7th Cir. 2009) ................................................ 9

*Burberry Ltd. v. K-1, Inc.*,
  2014 WL 1365702 (C.D. Cal. Apr. 4, 2014) ................................................ 11

*Cantley v. Indiana Univ. Health, Inc.*,
  2014 WL 6632463 (S.D. Ind. Nov. 21, 2014) ................................................ 16

*Connector Service Corp. v. Briggs*,
  1998 WL 34024177 (N.D. Ill. May 18, 1998) ................................................ 12

*Constand v. Cosby*,
  229 F.R.D. 472 (E.D. Pa. 2005) ................................................ 15

*Duling v. Gristede's Operating Corp.*,
  266 F.R.D. 66 (S.D.N.Y. 2010) ................................................ 16

*EEOC v. Dial Corp.*,
  2000 WL 33912746 (N.D. Ill. Nov. 29, 2000) ................................................ 16

*Eolas Technologies Inc. v. Microsoft Corp.*,
  2002 WL 31375531 (N.D. Ill. Oct. 18, 2002) ................................................ 12

*Flagg v. City of Detroit*,
  268 F.R.D. 279 (E.D. Mich. 2010) ................................................ 3, 17, 18

**Page(s)**

*Haldiman v. Continental Cas. Co.*,
  2014 WL 584305 (D. Ariz. Feb. 13, 2014) ..................................................... 19

*Hickman v. Taylor*,
  329 U.S. 495 (1947) ....................................................................................... 7

*In re Carrsow-Franklin*,
  456 B.R. 753 (Bankr. D.S.C. 2011) .............................................................. 15

*In re Doe*,
  964 F.2d 1325 (2d Cir. 1992) ........................................................................ 18

*In re Terrorist Attacks on September 11, 2001*,
  454 F. Supp. 2d 220 (S.D.N.Y. 2006) .................................................... passim

*Irizarry-Santiago v. Essilor Indus.*,
  293 F.R.D. 100 (D.P.R. Aug. 28, 2013) ........................................................ 18

*Jennings v. Peters*,
  162 F.R.D. 120 (N.D. Ill. 1995) .............................................................. 13, 17

*Jicarilla Apache Nation v. United States*,
  91 Fed.Cl. 489 (Fed. Cl. 2010) ..................................................................... 18

*Joy v. North*,
  692 F.2d 880 (2d Cir. 1982) ........................................................................ 3, 9

*Looney v. Moore*,
  2014 WL 1364509 (N.D. Ala. Apr. 7, 2014) ................................................. 13

*Lyondell-Citgo Refining, LP v. Petroleos de Venezuela, S.A.*,
  2003 WL 22990099 (S.D.N.Y. Dec. 19, 2003) .............................................. 11

*Mitchell v. Metro. Life Ins. Co.*,
  2004 WL 2439704 (S.D.N.Y. Nov. 2, 2004) .................................................. 16

*Munoz v. City of New York*,
  2013 WL 1953180 (S.D.N.Y. May 10, 2013) ................................................ 14

*Owner-Operator Independent Drivers Ass'n v. Bulkmatic Transp. Co.*,
  2004 WL 1212096 (N.D. Ill. May 3, 2004) .................................................... 11

*Paisley Park Enters., Inc. v. Uptown Prods.*,
  54 F. Supp. 2d 347 (S.D.N.Y. 1999) ........................................................ 13, 19

*Prudential Ins. Co. of Am. v. Massaro*,
  2000 WL 1176541 (D.N.J. Aug. 11, 2000) .................................................... 18

**Page(s)**

*Romero v. Drummond Co.*,
    2006 WL 5670535 (N.D. Ala. June 19, 2006)................................................................. 15

*Rossini v. Ogilvy & Mather, Inc.*,
    798 F.2d 590 (2d Cir. 1986)............................................................................................. 16

*S.E.C. v. TheStreet.Com*,
    273 F.3d 222 (2d Cir. 2001)............................................................................................... 9

*Seattle Times Co. v. Rhinehart*,
    467 U.S. 20 (1984).............................................................................................. 2, 7, 8, 19

*Springs v. Ally Fin., Inc.*,
    2014 WL 7778947 (W.D.N.C. Dec. 2, 2014) ........................................................... 13, 14

*Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*,
    621 F. Supp. 2d 55 (S.D.N.Y. 2007).............................................................................. 10

*Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Secs. Dealers, Inc.*,
    2008 WL 199537 (S.D.N.Y. Jan. 22, 2008) ..................................................................... 9

*Stern v. Cosby*,
    529 F. Supp. 2d 417 (S.D.N.Y. 2007).......................................................................... 9, 10

*Tradewinds Airlines, Inc. v. Soros*,
    2009 WL 1321695 (S.D.N.Y. May 12, 2009) ................................................................ 11

*Travelers Indemnity Co. v. Excalibur Reins. Corp.*,
    2013 WL 4012772 (D. Conn. Aug. 5, 2013) .................................................................. 15

*United Nuclear Corp. v. Cranford Ins. Co.*,
    905 F.2d 1424 (10th Cir. 1990) ................................................................................ 10, 11

*United States v. Amodeo*,
    44 F.3d 141 (2d Cir. 1995)............................................................................................ 8, 9

*United States v. Amodeo*,
    71 F.3d 1044 (2d Cir. 1995)........................................................................................ 9, 17

*United States v. Gray*,
    189 F. Supp. 2d 279 (D. Md. 2002) ............................................................................... 15

*United States v. McGregor*,
    838 F. Supp. 2d 1256 (M.D. Ala. 2012) ........................................................................ 15

*United States v. Oakley*,
    2007 WL 2123907 (E.D. Tenn. July 20, 2007) ............................................................. 15

**Page(s)**

*United States v. Smith*,
    985 F. Supp. 2d 506 (S.D.N.Y. 2013)....................................................................... 9, 10, 11

*Veasey v. Perry*,
    2014 WL 1340077 (S.D. Tex. Apr. 3, 2014) ..................................................... 18

*Williams v. The Art Instit. of Atlanta*,
    2006 WL 3694649 (N.D. Ga. Sept. 1, 2006) ..................................................... 16

**Rules**

Fed. R. Civ. P. 1 ....................................................................................................... 11

Fed. R. Civ. P. 16(f) .................................................................................................. 14

Fed. R. Civ. P. 26 ................................................................................................. 7, 13

Fed. R. Evid. 502(d) ............................................................................................. 2, 18

N.Y. Rules of Prof'l Conduct R. 3.6 .................................................................. 14, 15

S.D.N.Y. L. Civ. R. 1.5(b)(5) .................................................................................. 14

## INTRODUCTION

As the one-year anniversary of this MDL passes, the efforts of the parties and the Court to advance the case on a "reasonable but aggressive" schedule have succeeded.  Fact discovery of the 18 bellwether candidates is nearly complete; depositions of current and former New GM employees are well underway; and the first trial is scheduled for January 2016.  Despite this progress, it is now evident that Co-Lead Counsel's use of discovery for non-litigation purposes threatens the integrity of the judicial process—turning pre-trial discovery into a mockery designed to garner sensational press coverage, rather than preparing for a trial on the merits. New GM requests that the Court enter a protective order requiring that pre-trial discovery materials be used solely for the purpose of litigating the issues in this MDL and Related Actions, and not for any other purpose, including dissemination to the media.  These additional safeguards will not be a "gag order" precluding parties from commenting on the case (consistent with ethical rules), and would not apply to materials introduced at trial or determined to be "judicial documents."  Instead, the order is limited to pre-trial discovery and is necessary not only to protect the litigants' right to a fair trial, but also to protect sensitive information about many individual non-parties who have been identified in and targeted by discovery here.

Since last fall, Co-Lead Counsel Robert Hilliard has exploited pre-trial discovery materials through orchestrated media leaks and highly inflammatory extrajudicial statements. These maneuvers—and the attendant risks of prejudice to New GM and individual witnesses— have escalated as depositions proceed and trial dates approach.  Mr. Hilliard has, for example, announced that "both GM and the attorneys advising them sentenced many of my clients to die." He has also published the names of MDL deponents, even though none of the deponents is a party to this litigation and many are no longer New GM employees.  Moreover, the discovery includes information derived from otherwise privileged materials obtained by Plaintiffs through,

among other things, the Court's Federal Rule of Evidence 502(d) Orders.  The extraordinary access to such materials for the purposes of this litigation—along with Mr. Hilliard's confirmation at the recent MDL status conference that, absent a Court order to the contrary, he will disclose discovery materials in the press—underscores the importance of protection from public disclosure here.

Critically, Plaintiffs have not identified any reason for their multiple requests to New GM to "de-designate" confidential material, other than their apparent desire to disclose the information to the media.  Because sensitive information and otherwise privileged materials are interwoven throughout the discovery, New GM has been required to conduct painstaking document-by-document—or in the case of depositions, line-by-line—confidentiality reviews solely to allow Plaintiffs to try the case in the press.  While New GM fully embraces the need for such reviews in the context of judicial documents, teasing out confidential and non-confidential portions of the voluminous non-judicial, pre-trial discovery produced here is unduly burdensome—and unnecessary where the only purpose is not to advance the litigation, but rather is to use the discovery to support Mr. Hilliard's extrajudicial statements.

Against this backdrop, there is "good cause" to enter a protective order to mitigate potential harm not only to New GM, but also to people whose reputations and livelihoods are at stake.  The Court should grant New GM's motion for each of the following reasons.

*First*, preventing the public dissemination of pre-trial discovery materials is consistent with the "***sole purpose***" of the liberal discovery rules—"assisting in the preparation and trial, or the settlement, of litigated disputes."  *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984) (emphasis added).  As explained in Section I below, courts have entered similar orders broadly protecting discovery materials, regardless of whether they were otherwise "confidential."

*Second*, and set forth in Section II below, Plaintiffs' attorneys have "already demonstrated their desire to try their case in the press" such that public disclosure of the discovery materials "would irreparably tarnish defendants' reputations' and 'would prejudice defendants' ability to defend themselves at trial." *See In re Terrorist Attacks on September 11, 2001*, 454 F. Supp. 2d 220, 223 (S.D.N.Y. 2006). Moreover, the centrality of sensitive employment and privilege issues further risks harm not only to New GM, but also to individual non-parties. These risks demand exercise of "greater vigilance in the Court's protection of the [privacy] interests." *See Flagg v. City of Detroit*, 268 F.R.D. 279, 302 (E.D. Mich. 2010).

*Third,* the requested relief will not limit any party's right or ability to adjudicate its case in court. As discussed in Section III below, the purpose of discovery is "to facilitate the orderly preparation for trial, not to educate or titillate the public." *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982). Tellingly, the proposed order will not preclude or limit Plaintiffs' access to and use of these materials for litigation. Their opposition can only be explained by an intent to use discovery materials for inappropriate, non-litigation purposes. Thus, rather than prejudicing any party, the requested relief will protect the integrity of the judicial process, as well as the rights of all parties and the public to have the cases tried on the merits.

## BACKGROUND

### A.    The MDL Protective Order And De-Designation Requests.

On September 10, 2014, the Court entered MDL Order No. 10, an agreed order governing, among other things, "Information that the Producing Party designates 'Confidential' or 'Highly Confidential.'" (Doc No. 294 ¶ 2) The Order, however, does not address the use of non-confidential discovery material outside the MDL litigation. While Order No. 10 has provided (and continues to provide) critical procedures in these cases, Plaintiffs' actions confirm

that non-confidential materials (including materials originally designated Confidential or Highly Confidential, but later "de-designated" by New GM) will be selectively funneled to the press.

In November 2014, Mr. Hilliard initiated a series of requests to "de-designate" certain documents. These documents were produced by GM's supplier, Delphi, but reflected communications with and information from GM. Delphi agreed to the de-designation request without consulting New GM, and the materials were quickly provided to the press—in at least one case before the expiration of New GM's 10-day objection period. The press in turn ran stories based chiefly on Mr. Hilliard's commentary on the selectively released documents.

On November 10, 2014, for example, the *Wall Street Journal* published an article based on documents de-designated by Delphi less than a week earlier. (Ex. 1, 11/2/2014 Request; Ex. 2, 11/10/2014 Article)[1]  And on November 21, 2014, the *New York Times* published an article detailing a document Mr. Hilliard had requested be de-designated only three days before. (Ex. 3, 11/18/2014 Request; Ex. 4, 11/21/2014 Article)[2]  Mr. Hilliard continues to request additional de-designations for unspecified reasons, requiring significant time for New GM to address.[3]

### B.    Co-Lead Counsel's Inflammatory Press Releases.

As the case has progressed and as the first trial date nears, Mr. Hilliard's media assault has escalated. Press releases and other extrajudicial statements have focused upon not only this MDL litigation and Related Cases, but also on ongoing Bankruptcy Court proceedings and investigations by the Department of Justice. For example, according to Mr. Hilliard:

---

[1] The online version of the article on the *Wall Street Journal*'s website includes a picture of a portion of one of the emails with a caption that states, "RELEASED BY TEXAS ATTORNEY BOB HILLIARD." (Ex. 2)

[2] The online article provides a link to the entire document. (Ex. 4) While New GM's time to oppose de-designation had not passed when the story ran, afterwards any objection would have been been meaningless.

[3] Plaintiffs have not identified any litigation purpose for such requests at this stage of the litigation, and have instead claimed that license to give discovery to the press constitutes a proper basis for requesting de-designations.

- "GM is the modern benchmark for corruption and deceit.  It knowingly killed and injured its own customers and intentionally lied and covered up this conduct for over a decade."  (Ex. 5, 2/17/2015 Press Release, "GM should Waive Its Bankruptcy Shield")

- "Until GM executives are being made to wear orange jump suits there can be no full justice for the thousands of victims."  (Ex. 6, 3/17/2015 Hilliard Blog)

- "GM literally makes tens of billions of dollars and needs a governmental agency to tell it to do the right thing?  That is laughable . . .  Until jail time is mandatory and all profits are forfeited there will be deaths caused by this short-sighted greed."  (Ex. 7, 6/9/2015 Press Release, "GM Investigation Deepens")

- The Bankruptcy Court's April 15, 2015 ruling creates "permanent purgatory" to victims' families, and gives the "Judicial seal of approval" to an alleged GM plan that "recalculates evil's depths."  For "GM's lawyers to keep this information locked in their briefcases while the bankruptcy sale hearing was taking place, does truly make them the devil's advocate." (Ex. 9, 4/16/15 Press Release, "GM Succeeds in Killing The Claims Of Its Dead Customers")

- "This [Bankruptcy Court] ruling padlocks the courthouse doors."  "Hundreds of victims and their families will go to bed tonight forever deprived of justice."  (*Id.*) (emphasis added)

- "[J]ust to keep GM's business, lawyers decide to help cover up the defect. . . . [T]hey put an army of lawyers on the task of burying the evidence, a paper vault of confidentiality and secrecy conceived and crafted by GM's attorneys and at GM's instruction."  (Ex. 8, 6/11/2015 Press Release, "Conspiracy Between General Motors and Its National Law Firm")

- "[B]oth GM and the attorneys advising them sentenced many of my clients to die." (*Id.*)

### C.  Escalating Press Releases Regarding Non-Party Depositions.

In the deposition context, Mr. Hilliard has redoubled his efforts to use discovery to try his case in the press.  Indeed, Co-Lead Counsel's recent press releases forecast disclosure of deposition testimony as fodder for his inflammatory press accusations.

***March 19, 2015 Press Release*** (Ex. 10) claims:

- "[H]igh level executives at GM not only knew about the 2.6 million defective ignition switches linked to at least 67 deaths and countless accidents, but also took steps to conceal them from the public."

- "[O]utside counsel [are implicated] in GM's massive cover-up. . . .Mr. Hilliard will "target" an alleged lawyer cover-up, "[i]f the biggest law firms in the country helped GM cover up the cover-up then the game changes and the targets shift."

- If witnesses "dodge or crawfish in their answers then they will face the consequences."

5

The release also provides the upcoming deposition schedule for New GM deponents as well as the tentative date of each deposition—information that is not otherwise public.  (*Id.* at 2.) This press release was publicized by many media outlets, including the *Wall Street Journal*, the *New York Times*, ABC News, the *Detroit Free Press*, and others.  (Ex. 11)

**March 26, 2015 Law360 Article** (Ex. 12) quotes Mr. Hilliard's threats to upcoming deponents: "This is a case where any single one of these executives could sink the company. . . . If they obfuscate, the jury will be angry at them for not being forthright.  The CEO and these witnesses are walking on a high and thin tightrope, because the jury is going to expect the unvarnished truth from them."

**June 3, 2015 Press Release** (Ex. 13), issued less than a month after the first depositions in this case, released the names of over a dozen deponents (including several of whom Lead Counsel had not yet attempted to schedule with New GM).  The release, which was picked up in the *Detroit News*, also refers to "interviews that haven't previously been made public."

If the behavior outlined above continues, the deposition process will essentially serve as a media-relations tool for Lead Counsel, rather than as a process to prepare cases for trial.

* * *

The depositions of current and former New GM employees—which began on May 7, 2015—underscore the importance of reasonable limits on the use of pre-trial discovery materials. *First*, the examinations have included sensitive and potentially embarrassing questions about individuals' employment history (including terminations), and their opinions regarding other current or former employees.[4]  *Second*, the depositions have focused on documents and testimony concerning otherwise privileged litigation strategy and attorney-client

---

[4] Due to the sensitive nature of these examinations, New GM has not provided specific examples here. New GM would, however, welcome an opportunity to develop a procedure for the Court's consideration of such materials.

communications—materials to which litigants have been granted unprecedented access for the purposes of this litigation, but which remain extremely sensitive and confidential not only to New GM, but also to its outside counsel.  *See Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947) (emphasizing importance to attorneys to work within "certain degree of privacy").  *Third*, there is no doubt that, unless the Court precludes it, deposition testimony that is not "Confidential" or "Highly Confidential" will be promptly, selectively, and prejudicially fed to the press.  (Indeed, shortly after the first two New GM depositions on May 7, Mr. Hilliard sent a request for the wholesale de-designation of those deposition transcripts.[5])

## ARGUMENT AND AUTHORITIES

### I.    THIS COURT HAS THE AUTHORITY TO LIMIT DISCLOSURE OF NON-JUDICIAL DISCOVERY MATERIALS IN THIS CASE.

Under Federal Rule 26, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including," among other things, "limiting the scope of disclosure or discovery to certain matters."  Fed. R. Civ. P. 26(c)(1).   "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and "what degree of protection is required."  *Seattle Times*, 467 U.S. at 36.  The circumstances here warrant an order precluding disclosure of pre-trial discovery.

### A.    Pre-Trial Discovery Is Not A Public Component Of A Civil Trial.

In its seminal *Seattle Times* opinion, the Supreme Court applied the Rule 26(c) good cause standard to uphold a protective order preventing the defendant from publishing, disseminating, or otherwise using categories of information except as necessary to prepare for and try the case.  467 U.S. at 27.  The Supreme Court explained, "[a]s in all civil litigation, petitioners gained the information they wish to disseminate only by virtue of the trial court's

---

[5]  The request itself was premature under Order No. 10, which provides 30 days to make confidentiality designations.  (Doc No. 294 ¶3(e))

discovery processes.  As the Rules authorizing discovery were adopted by the [ ] legislature, the processes thereunder are a matter of legislative grace.  A litigant has no First Amendment right of access to information made available only for the purposes of trying his suit."  *Id.* at 32.  "Moreover, pretrial depositions and interrogatories are not public components of a civil trial."  *Id.* at 33.  "Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information."  *Id*.

The Supreme Court emphasized that "[l]iberal discovery is provided for the ***sole purpose*** of assisting in the preparation and trial, or the settlement, of litigated disputes."  *Id.* at 34 (emphasis added).  The Court observed that "[m]uch of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action."  *Id.* at 33.  "There is an opportunity, therefore, for litigants to obtain—incidentally or purposefully—information that not only is irrelevant but if publicly released could be damaging to reputation and privacy."  *Id.* at 35.  The Court highlighted the potential for abuse of liberal discovery rules because "discovery [] may seriously implicate privacy interests of litigants and third parties."  *Id.* at 34-35.  The Court explained that a protective order is appropriate to prevent such abuse.  *Id.* at 35-36.  *See also Baker v. Buffenbarger*, 2004 WL 2124787, at *3 (N.D. Ill. Sept. 22, 2004) ("While Rule 26 generally contemplates broad, public discovery, the Rule does not sanction the misuse of the judicial system and the discovery procedures by any party.").

**B.      Non-Judicial Discovery Documents May Be Protected From Disclosure Upon A Baseline Showing Of Good Cause.**

Applying *Seattle Times*, the Second Circuit and other federal courts have distinguished discovery that becomes a "judicial document" from other discovery.  The presumption of public access applies only to "judicial documents."  *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir.

1995) ("*Amodeo I*").  The documents at issue here are not judicial documents.[6]  They are instead documents that have been "passed between the parties in discovery" and "play no role in the performance of Article III functions."  *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995) ("*Amodeo II*").  Unlike judicial documents used at "the adjudication stage," discovery "involves the use of compulsory process to facilitate orderly preparation for trial, not to educate or titillate the public."  *Joy*, 692 F.2d at 893.  Accordingly, the discovery materials at issue "stand[] on a different footing than . . . a motion filed by a party seeking action by the court," or, "indeed, than any other document which is presented to the court to invoke its powers or affect its decisions."  *Amodeo II,* 71 F.3d at 1050; *see also Bond v. Utreras*, 585 F.3d 1061, 1073 (7th Cir. 2009) ("Generally speaking, the public has no constitutional, statutory (rule-based), or common-law right of access to unfiled discovery.") (emphasis omitted); *Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Secs. Dealers, Inc.*, 2008 WL 199537, at *6 (S.D.N.Y. Jan. 22, 2008) ("[N]on-judicial documents" "carry no presumption of public access under either the common law or the First Amendment.").

Similarly, there is no right of access to deposition transcripts and videos.  *See, e.g.*, *Stern v. Cosby*, 529 F. Supp. 2d 417, 421-22 (S.D.N.Y. 2007).  Depositions are not judicial documents, and "the presumption of public access—if any—that attaches to the transcript and videotape is low, at best.  No such presumption attaches at all to the videotape, and even if the transcript is filed for purposes of a motion to compel, the presumption that would attach to the

---

[6]  An item must not only be filed with the court but also "must be relevant to the performance of the judicial function and useful in the judicial process in order for it to be designated a judicial document."  *Amodeo I*, 44 F.3d at 145.  "[T]he mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access."  *Id.*  Documents reviewed in connection with discovery disputes, including those concerning confidentiality, are not judicial documents.  *See S.E.C. v. TheStreet.Com*, 273 F.3d 222, 233 (2d Cir. 2001) (rejecting as "without merit" claim that testimony "was a 'judicial document' because the Court reviewed it in order to decide whether or not to enter the protective order," noting that such a rule "would transform every document that a court reviews into a 'judicial document' presumptively open to the public, despite well-settled law to the contrary."); *see also United States v. Smith*, 985 F. Supp. 2d 506, 520 (S.D.N.Y. 2013) ("discovery materials filed with the court in connection with discovery-related disputes are not covered by the qualified right of access.").

transcript would be low." *Id.* at 422. Dissemination of depositions can be an "impediment[] to the fair and efficient administration of justice, without serving any legitimate purpose." *Id.*

"With respect to [ ] non-judicial documents, [a party] must only make a baseline showing of good cause in order to obtain a protective order." *Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 621 F. Supp. 2d 55, 73 (S.D.N.Y. 2007); *see also Smith*, 985 F. Supp. 2d at 546 (it is "consistent with the proper allocation of evidentiary burdens for the court to construct a broad 'umbrella' protective order upon a threshold showing by [a party] of good cause").

## C.   Courts Have Applied Broad Good Cause Findings To Protect Discovery Materials From Public Disclosure.

This Court has recognized that "[i]n cases of unusual scope and complexity, [ ] broad protection during the pretrial stages of litigation may be warranted without a highly particularized finding of good cause." *Terrorist Attacks*, 454 F. Supp. 2d at 222; *see also Smith*, 985 F. Supp. 2d at 546 (granting protective order treating all discovery materials as confidential, finding blanket protection particularly appropriate "in a case which involves substantial amounts of discovery"). Thus, even "broad assertions of good cause" may support entry of a protective order in such complex cases. *Terrorist Attacks*, 454 F. Supp. 2d at 223. As the Tenth Circuit has explained in the context of a stipulated protected order that "designated ***all materials produced in discovery*** as confidential," "'blanket' protective orders are becoming standard practice in complex cases." *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990) (emphasis added). "They allow the parties to make full disclosure in discovery without fear of public access to sensitive information and without the expense and delay of protracted disputes over every item of sensitive information, thereby promoting the overriding goal of the Federal Rules of Civil Procedure, 'to secure the just, speedy, and inexpensive determination of every action.' Fed. R. Civ. P. 1." *Id.*

Applying these principles, courts have limited the use or disclosure of all pre-trial discovery material, ***whether or not designated as confidential***, such that it "shall be used solely for the purpose of prosecution or defense of the MDL, or preparation of the MDL for trial." *Terrorist Attacks*, 454 F. Supp. 2d at 225; *see also Smith*, 985 F. Supp. 2d at 521 (granting protective order that "would restrict public dissemination of discovery materials"); *Barrella v. Village of Freeport*, 2012 WL 6103222, at *2 (E.D.N.Y. Dec. 8, 2012) (quashing subpoena based on protective order providing that "Discovery Material produced in connection with this Action shall be used solely for the purpose of prosecuting or defending this Action and not for any other purpose"); *Tradewinds Airlines, Inc. v. Soros*, 2009 WL 1321695, at *1 (S.D.N.Y. May 12, 2009) (referencing protective order providing "that 'Litigation Materials'—defined broadly to include anything produced during or derived from discovery—were to 'be used by the parties solely for the prosecution and defense of [Jet Star II], and not for any other purpose'"); *Lyondell-Citgo Refining, LP v. Petroleos de Venezuela, S.A.*, 2003 WL 22990099, at *2 (S.D.N.Y. Dec. 19, 2003) (entering order providing "All Discovery Material" "and any documents or information derived therefrom, shall be used solely for the purpose of the Litigation and may not be used for any other purpose whatsoever, including, but not limited to, any business or commercial purpose or for dissemination to the media or public.'").[7]

---

[7] *See also Burberry Ltd. v. K-1, Inc.*, 2014 WL 1365702, at *2 (C.D. Cal. Apr. 4, 2014) (entering stipulated protective order providing that "Discovery Materials shall be used by the Receiving Party solely for the purpose of conducting this litigation, but not for any other purpose whatsoever"); *Authentec, Inc. v. Atrua Technologies, Inc.*, 2008 WL 9413824, at *7 (N.D. Cal. Sept. 24, 2008) (entering protective order providing that "All Disclosure or Discovery Material, whether or not designated CONFIDENTIAL or HIGHLY CONFIDENTIAL–OUTSIDE COUNSEL'S EYES ONLY, shall be used solely in connection with this litigation and shall not be used for any business, commercial, competitive, personal or other purpose, including patent prosecution or product design and development."); *Owner-Operator Independent Drivers Ass'n v. Bulkmatic Transp. Co.*, 2004 WL 1212096, at *4 (N.D. Ill. May 3, 2004) ("All discovery materials, information, documents, things or other materials produced by any party or any third-party subpoena recipient, whether designated 'CONFIDENTIAL' or 'CONFIDENTIAL–ATTORNEYS' EYES ONLY,' or not so designated, together with all reproductions, copies, abstracts, indices or summaries of those materials, shall be used solely and exclusively for the prosecution or defense of the claims in this action and shall not be used for any business, commercial, competitive, personal or any other purpose."); *Eolas Technologies Inc. v. Microsoft Corp.*, 2002 WL 31375531, at *31 (N.D. Ill. Oct. 18, 2002) (noting that court had

In the *Terrorist Attacks* case, for example, the defendants requested "provisions limiting the parties' use of all disclosure or discovery material to purposes associated with this litigation." 454 F. Supp. 2d at 223.  The court considered whether good cause existed where (as here) many of the documents contained confidential information the disclosure of which would intrude on the defendants' privacy, and where plaintiffs had "already demonstrated their desire to try their case in the press'" such that public disclosure of the discovery materials "'would irreparably tarnish defendants' reputations' and 'would prejudice defendants' ability to defend themselves at trial." *Id.*  While the court recognized that this might not satisfy good cause in an ordinary case, "the present circumstances are far from normal."  *Id.*  Given the "unusual scope and complexity of the instant litigation" and the "privacy and prejudice concerns," the court protected all discovery materials unless they became judicial documents.  *Id.* at 223-24.

## II.   THERE IS GOOD CAUSE TO PREVENT PUBLIC DISCLOSURE OF DISCOVERY MATERIALS IN THIS CASE.

As detailed below, there is good cause to order that all discovery material be used solely for the purpose of this litigation, and not be publicly disseminated.

### A.   Efforts To Try This Case In The Media Provide Good Cause.

Co-Lead Counsel Hilliard has made no secret of his plan to try this case in the press.  The potential harm to New GM or individual witnesses is not theoretical, but is instead a deliberate strategy to publicly and selectively disclose materials damaging to New GM and thus deprive it of a fair trial.  In similar circumstances, courts have found "that the extensive publicity generated

---

previously entered a protective order stating, "[a]ll discovery material (and the information contained therein) whether designated 'CONFIDENTIAL' or not so designated, shall be used by each party receiving it solely for the prosecution or defense of the claims in this litigation or any appeal therefrom and shall not be used by that party for any business, commercial, competitive, personal or other purpose."); *Connector Service Corp. v. Briggs*, 1998 WL 34024177, at *2 (N.D. Ill. May 18, 1998) ("All discovery material, whether designated 'Confidential' or not so designated, shall be used solely for the prosecution or defense of the claims in this action, and shall not be used for any business, commercial, competitive, personal or other purpose.").

by the allegations made against the defendants, particularly the accounts appearing in the daily newspapers, would inhibit and perhaps prevent the selection of an impartial jury" and constituted good cause for a protective order preventing disclosure of all discovery materials under Rule 26(c).  *See Anderson v. Cryovac, Inc.*, 805 F.2d 1, 8 (1st Cir. 1986).[8]  *See also Terrorists Attacks*, 454 F. Supp. 2d at 223; *cf. Jennings v. Peters*, 162 F.R.D. 120, 122 (N.D. Ill. 1995) (court had "healthy suspicion that [defendants] intend to use Mr. Jenning's deposition for purposes other than preparing for trial or settling this suit.").

A recent decision from the Northern District of Alabama enforcing a similar protective order likewise sets forth the very real dangers of trial-by-media:

> The court has already expressed to the parties its concern that this potentially high profile case will be tried in the media, rather in the courtroom.  Significant media coverage of the case has already occurred.  In the interest of justice, ***this court is committed to giving both parties a fair trial, which includes protecting the Defendants from the "annoyance, embarrassment, [and] oppression" that could occur from allowing their names to be dragged through the metaphorical mud before a jury has even made any determination of wrongdoing***.

*Looney v. Moore*, 2014 WL 1364509, at *1–2 (N.D. Ala. Apr. 7, 2014) (footnote omitted) (emphasis added) (denying motion to delete sentence of protective order providing that "[a]ll Discovery Material produced in the above captioned action (the 'Litigation') is to be used solely for the purposes of this Litigation"); *see also Springs v. Ally Fin., Inc.*, 2014 WL 7778947, at *7 (W.D.N.C. Dec. 2, 2014) (good cause to amend protective order "to restrict Plaintiff's use of discovery from this lawsuit that was never filed or otherwise made public during the litigation" where plaintiffs had loaded portions of video deposition on YouTube); *Paisley Park Enters., Inc. v. Uptown Prods.*, 54 F. Supp. 2d 347, 349 (S.D.N.Y. 1999) (granting order precluding

---

[8] The First Circuit ultimately reversed the district court's order on other grounds, finding that parties selectively allowed disclosure of materials, such as select media outlets or in academic settings.  *Anderson*, 805 F.2d at 4.

disclosure of video deposition where "it is readily apparent that the defendants intend to use any videotape for purposes entirely unrelated to the litigation as well as for the lawsuit itself").

The Court should thus exercise vigilance to protect the parties' right to a fair trial and third-parties' privacy rights by entering New GM's requested protective order.  *See Springs*, 2014 WL 7778947, at \*5 ("[C]ourts must be vigilant to ensure that their processes are not used improperly for purposes unrelated to their role.") (emphasis omitted).

**B.      The Protective Order Is Consistent With Professional Conduct Rule 3.6.**

Adopting the proposed protective order here will further the goals of Rule 3.6 of the New York Rules of Professional Conduct, which governs out-of-court statements **by lawyers** appearing before the Court.  *See* S.D.N.Y. L. Civ. R. 1.5(b)(5).  That Rule recognizes that "[a] statement ordinarily is likely to prejudice materially an adjudicative proceeding" where it "relates to the character, credibility, reputation or criminal record of a party, suspect in a criminal investigation or witness, or the identity of a witness or the expected testimony of a party or witness; . . .; [or] information the lawyer knows or reasonably should know is likely to be inadmissible as evidence in a trial and would, if disclosed, create a substantial risk of prejudicing an impartial trial."  N.Y. Rules of Prof'l Conduct R. 3.6(b)(1), (b)(3), (b)(5).

This Court has previously entered prophylactic orders adopting Rule 3.6.  In *Laugier*, 2014 WL 6655283, at \*2, this Court entered an order incorporating Rule 3.6 where "publicity surrounding this case . . . creates[s] a risk that Defendants may be denied a fair trial, should this case get that far."  Similarly, in *Munoz v. City of New York*, 2013 WL 1953180, at \*2 (S.D.N.Y. May 10, 2013), the Court entered a prophylactic order so that "any breach of Rule 3.6 may be punished as a violation of this Court's orders under Rule 16(f) of the Federal Rules of Civil

Procedure or under the Court's inherent power."  Other courts have likewise incorporated their

own states' Rule 3.6 counterparts in response to counsel's public disclosures.[9]

### C.     Extensive Personal Information And Otherwise Privileged Materials Provide Good Cause.

The good cause for protecting pre-trial discovery from disclosure is animated not only by

Co-Lead Counsel's media blitz, but also by the unique nature of the discovery itself.

Depositions and other discovery materials produced here are interwoven with sensitive or

potentially embarrassing information about third parties, as well as otherwise privileged

information provided under special protections and orders.  Even if each page of a deposition or

document is not itself "Confidential" under the terms of Order No. 10, many categories of

documents "may be so rife with confidential material as to necessitate" confidential treatment

across the board to avoid unnecessary document-by-document determination and to ensure that

the remaining patchwork of non-designated materials are not disclosed in a manner that

prejudices the parties or embarrasses third parties. *Cf. Travelers Indemnity Co. v. Excalibur*

*Reins. Corp.*, 2013 WL 4012772, at *13 (D. Conn. Aug. 5, 2013).

***Employment and Personnel Materials***.  The discovery materials in this matter contain a

wide variety of sensitive or personal information, much of which relates to current and former

employees of New GM.  The deposition questions have already waded into the circumstances

under which certain current or former New GM employees were terminated or reprimanded,

which presents a heightened risk of unnecessary oppression, embarrassment, and humiliation.

*See In re Carrsow-Franklin*, 456 B.R. 753, 759 (Bankr. D.S.C. 2011) (good cause to protect

testimony of former employee who would be "potentially" exposed to "future negative

---

[9] *E.g.*, *Adams v. Lab. Corp. of Am.*, 2014 WL 7336697, at *3 (N.D. Ga. Dec. 22, 2014); *United States v. McGregor*, 838 F. Supp. 2d 1256, 1267 (M.D. Ala. 2012); *United States v. Oakley*, 2007 WL 2123907, at *2 (E.D. Tenn. July 20, 2007); *Romero v. Drummond Co.*, 2006 WL 5670535, at *4 (N.D. Ala. June 19, 2006); *Constand v. Cosby*, 229 F.R.D. 472, 478 (E.D. Pa. 2005); *United States v. Gray*, 189 F. Supp. 2d 279, 281 (D. Md. 2002).

commentary" if former employee's deposition concerning "robo-sign[ing]" were publically disseminated); *cf. Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 601 (2d Cir. 1986) (order permitting only counsel, and not the plaintiff, to inspect personnel files was "a proper attempt to balance the plaintiffs' desire for full disclosure of relevant information against the defendant's desire to preserve the privacy of its employee"); *Mitchell v. Metro. Life Ins. Co.*, 2004 WL 2439704, at *2 (S.D.N.Y. Nov. 2, 2004) ("disciplinary records and information relating to personal circumstances" in personnel files contain "sensitive data entitled to protection").[10]

Recognizing the sensitive nature of employment decisions and their effects on people's lives, courts have entered "comprehensive" protection for this type of information. *See, e.g., Duling v. Gristede's Operating Corp.*, 266 F.R.D. 66, 74 (S.D.N.Y. 2010) (granting protective order covering all documents in personnel files rather than targeting only the small group of documents that plaintiffs concede are private); *Williams v. The Art Instit. of Atlanta*, 2006 WL 3694649, at *16 (N.D. Ga. Sept. 1, 2006) ("employee medical records and personnel information are private information that should not be widely disseminated."); *Cantley v. Indiana Univ. Health, Inc.*, 2014 WL 6632463, at *2 (S.D. Ind. Nov. 21, 2014) ("Courts have previously honored requests to seal information produced under a protective order when it concerns non-parties, including personnel information, such as job performance and evaluations.").[11]

That the employment information elicited during the depositions may embarrass these deponents amplifies the need for protection—particularly where Co-Lead Counsel has indicated

---

[10] New GM expects that many of these employment materials will likely have no relevance to the merits of the case and would ultimately be excluded from any trial in this matter.  This further supports the requested relief.  *See, e.g., EEOC v. Dial Corp.*, 2000 WL 33912746, *1 (N.D. Ill. Nov. 29, 2000) (granting motion for protective order preventing disclosure of deposition testimony and excluding evidence from trial, observing that "[t]he public has no interest in gaining access to information that has failed to pass the threshold tests of relevance and admissibility").

[11]  Importantly, the same factors the Court considered in declining to enter a protective order in *Laugier*, 2014 WL 6655283, confirm that good cause exists here.  Unlike in *Laugier*, the non-party deponents in this case are not appointed public officials—which this Court found "cuts in *favor* of allowing public access"—but rather are private citizens whose sensitive employment and other personal issues have been targeted by Plaintiffs.  *See id.* at *1-2.

that he will broadcast depositions in the press.  *See Baker*, 2004 WL 2124787, at *4 ("it is apparent that Plaintiffs intend to use Defendants' deposition testimony to further their crusade of criticizing and embarrassing Defendants.  And while the First Amendment protects Plaintiffs' right to voice their opinions, the Court will not allow the discovery in this case to be misused in the manner Plaintiffs suggest."); *Jennings*, 162 F.R.D. at 123 ("good cause for protective order is primarily the showing" of an intent to use the "deposition for a purpose unrelated to settlement or trial preparation in this suit," which "could cause Jennings embarrassment," putting "his request for a protective order squarely within Rule 26(c).").

Finally, the fact that the people being deposed are not parties reinforces the role this Court should play to protecting pre-trial discovery from disclosure.  *See, e.g., Flagg*, 268 F.R.D. at 288-89 ("[T]he protective measures employed by the Court here . . . are not intended to shield against any harm to the reputation of  a party, but instead seek to avoid embarrassment and harm to the reputations of ***non-parties***.") (emphasis in original).   And the danger extends further still, implicating privacy interests of other third parties about whom the deponents have been questioned.  *Id.* at 300 (observing that even if deponent Attorney General was a public figure, the "the privacy interests of ***other non-parties***—who unlike the the Attorney General, are not public figures—are not so readily disregarded.") (emphasis in original).

The presence of "intensive media coverage" requires "greater vigilance in the Court's protection of [the privacy] interests."  *See Id.* at 302.   As the Second Circuit explained, "[u]nlimited access to every item turned up in the course of litigation would be unthinkable.  Reputations would be impaired, personal relationships ruined, and businesses destroyed on the basis of misleading or downright false information."  *Amodeo II*, 71 F.3d at 1048-49.  *See also Flagg*, 268 F.R.D. at 302 ("[I]t is far more likely in this case than in others that this failure would

17

result in prompt and injurious disclosure of personal information about this third party in the next day's newspaper."); *id.* at 284 ("heightened public and media interest produces a greater potential for mischief, misuse of information learned in discovery, and interference with or harm to the interests of non-parties.").

      ***Otherwise Privileged Materials***.   Broad protection of discovery materials is also particularly appropriate where, as here, a party has produced a substantial number of otherwise privileged documents under the protection of Federal Rule of Evidence 502(d) and the similar Orders of the Court.  New GM and the Court have allowed other parties to these cases (and Related Cases) access for the purposes of this litigation; this access does not alter the confidential and highly sensitive nature of these documents.  *See Irizarry-Santiago v. Essilor Indus.*, 293 F.R.D. 100, 104 (D.P.R. Aug. 28, 2013) (granting order to protect confidentiality of documents including "confidential personnel data" and "litigation strategies"); *Prudential Ins. Co. of Am. v. Massaro*, 2000 WL 1176541, at *9 (D.N.J. Aug. 11, 2000) ("any communication of a legal nature" to attorney was privileged "and even more certainly confidential").

      Moreover, sensitive documents that would otherwise be privileged, and testimony about these documents, are also entitled to protection from public disclosure where this discovery was provided pursuant to tailored court orders.  *See In re Doe*, 964 F.2d 1325, 1329 (2d Cir. 1992) (ordering production of materials protected by psychotherapist-patient privilege where "counsel's interviews of appellant's psychotherapists would have been subject to a protective order sufficient to prevent public revelation of confidential matters"); *Jicarilla Apache Nation v. United States*, 91 Fed.Cl. 489, 494 (Fed. Cl. 2010) (compelling production of potentially privileged documents "subject to a Confidentiality Agreement and Protective Order which limits the use and further disclosure of records produced in this action"); *Veasey v. Perry*, 2014 WL

1340077, at *4 (S.D. Tex. Apr. 3, 2014) (ordering documents that State had claimed were subject to be produced, and also to be treated as highly confidential with restricted access).

### D.    A Protective Order Will Not Prejudice Plaintiffs And Will Preserve The Integrity Of The Judicial Process And The Rights Of Parties And Witnesses.

Critically, neither Plaintiffs nor any other party will be prejudiced by the relief requested. As explained in *Seattle Times*, "[l]iberal discovery is provided for the ***sole purpose*** of assisting in the preparation and trial, or the settlement, or litigated disputes."  467 U.S. at 34 (emphasis added).  Holding Lead Counsel to this sole purpose for the millions of pages of documents and scores of depositions they have requested is not prejudicial.  Instead, it fulfills the purpose of discovery under the Federal Rules and protects the parties' rights.  For example, in *Haldiman v. Continental Cas. Co.*, the court rejected the claim that "[p]ublic policy demands that Plaintiffs be given a free hand to expose to the whole world the Defendant's bad faith claim handling."  2014 WL 584305, at *3 (D. Ariz. Feb. 13, 2014).  "Discovery is solely for the purpose of aiding a litigant in his or her own case."  *Id.*; *see also Paisley Park*, 54 F. Supp. 2d at 349 (deposition rules were "not intended to be a vehicle for generating content for broadcast and other media").

New GM's proposal does not prevent Plaintiffs or any other party from preparing and prosecuting their case.  Nor does it interfere with Lead Counsel's ability to communicate with the media, consistent with ethical obligations.  However, nothing entitles counsel to use discovery materials to publicly impugn the reputation of opposing parties and counsel—let alone non-party individuals.  And there is good cause to preclude Lead Counsel from doing so here.

**CONCLUSION**

For the reasons discussed above, New GM respectfully requests that this Court enter a protective order providing that all discovery materials and any documents or information derived therefrom, shall be used solely for the purpose of the MDL and Related Actions and may not be used for any other purpose whatsoever, including, but not limited to, any business or commercial purpose or for dissemination to the media or public.  New GM has attached, for the Court's consideration, a draft proposed order.

Dated:  June 19, 2015

/s/ Richard C. Godfrey, P.C.
Richard C. Godfrey, P.C.
Andrew B. Bloomer, P.C.
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL  60654
Phone: 312-862-2000
Fax: 312-862-2200
richard.godfrey@kirkland.com
andrew.bloomer@kirkland.com

*Attorneys for Defendant General Motors LLC*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on June 19, 2015, I electronically served the foregoing Motion on all counsel of record in this action using the CM/ECF system.

<u>/s/ Andrew B. Bloomer, P.C.</u>
Andrew B. Bloomer, P.C.