IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: | MDL No. 2543 |
| GENERAL MOTORS LLC IGNITION SWITCH LITIGATION | Master File No.: 14-MDL-2543 (JMF) |
| This Document Relates to:  All Actions | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO GENERAL MOTORS LLC'S MOTION FOR A PROTECTIVE ORDER REGARDING PRETRIAL DISCOVERY MATERIALS**

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  FACTUAL BACKGROUND ............................................................................... 3

    A.   The Court has already entered a blanket protective order that prevents the
        disclosure of confidential information. ....................................................... 3

    B.   A massive amount of information regarding New GM's knowledge and
        concealment of the defect is already in the public domain. ....................... 4

    C.   New GM's media machine has spun a false narrative to influence public
        opinion about its culpability for the delayed recall. ................................... 6

III. ARGUMENT ....................................................................................................... 8

    A.   The proposed order violates the First Amendment. .................................... 8

    B.   New GM has not demonstrated good cause to shield non-confidential
        discovery material from disclosure. ............................................................ 9

    C.   New GM's proposed order seeks to improperly shield "judicial documents"
        from disclosure. ......................................................................................... 19

IV.  CONCLUSION .................................................................................................. 20

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Cryovac, Inc.*,
    805 F.2d 1 (1st Cir. 1986) ........................................................................................................ 17

*AT&T Co. v. MCI Comm. Corp.*,
    594 F.2d 594 (7th Cir. 1979) .................................................................................................... 12

*Bowne of New York City, Inc. v. AmBase Corp.*,
    150 F.R.D. 465 (S.D.N.Y. 1998) ............................................................................................... 21

*Cipolline v. Liggett Group, Inc.*,
    113 F.R.D. 86 (D.N.J. 1986) ..................................................................................................... 14

*Condit v. Dunne*,
    225 F.R.D. 113 (S.D.N.Y. 2004) .......................................................................................... passim

*Culinary Foods, Inc. v. Raychem Corp.*,
    151 F.R.D. 297 (N.D. Ill. 1993) ................................................................................................ 14

*Dandong v. Pinnacle Performance Ltd.*, 10-CV-8086 (JMF), 2012 U.S. Dist. LEXIS 177525,
    2012 WL 6217646 (S.D.N.Y. Dec. 3, 2012) .............................................................................. 23

*Flaherty*, 209 F.R.D. 295 (N.D.N.Y. 2001) ................................................................................. 15, 16

*Gambale v. Deutche Bank AG*,
    377 F.3d 133 (2d Cir. 2004) ........................................................................................... 9, 11, 19

*Gucci Am., Inc. v. Guess?, Inc.*, No. 09-cv-4373 (SAS) (JLC),
    2010 U.S. Dist. LEXIS 34834 (S.D.N.Y. Apr. 8, 2010) ............................................................. 19

*Hawley v. Hall*,
    131 F.R.D. 578 (D. Nev. 1990) ................................................................................................. 17

*In re Agent Orange Prod. Liab. Litig.*,
    821 F.2d 139 (2d Cir. 1987) ............................................................................... 19, 10, 11, 13

*In re NBC, Inc.*,
    635 F.2d 945 (2d Cir. 1980) ..................................................................................................... 17

*In re: Terrorist Attacks on September 1, 2011*,
    454 F. Supp. 2d 220 (S.D.N.Y. 2006) .................................................................................. 12, 24

*In the Matter of Roman Catholic Archbishop of Portland in Oregon*,
    661 F.3d 417 (9th Cir. 2011) .................................................................................................... 14

*Jennings v. Peters,*
    162 F.R.D. 120 (N.D. Ill. 1995) .................................................................................. 18

*Jepson, Inc. v. Makita Elec. Works, Ltd.,*
    30 F.3d 854 (7th Cir. 1994) ..................................................................................... 11

*Kia Song Tang v. Glocap Search LLC,* 14-CV-1108 (JMF),
    2015 U.S. Dist. LEXIS 37342 (S.D.N.Y. Mar. 24, 2015)......................................... 23

*Laugier v. City of New York,* No. 13-cv-6171 (JMF),
    2014 WL 6655283 (S.D.N.Y. Nov. 24, 2014)......................................................... 15

*Looney v. Moore,*
    2014 WL 1364509 (N.D. Ala. Apr. 7, 2014)........................................................... 18

*Morrow v. Tenaha,* No. 08-cv-288 (TJW),
    2010 WL 3927969 (E.D. Tex. Oct. 5, 2010) .......................................................... 17

*Oklahoma Hospital Ass'n v. Oklahoma Publishing Co.,*
    748 F.2d 1421 (10th Cir. 1985) ............................................................................... 11

*Paisley Park Enterprises, Inc. v. Uptown Prods.,*
    54 F. Supp. 2d 347 (S.D.N.Y. 1999) ................................................................. 15, 17

*Pansy v. Stroudsburg,*
    23 F.3d 772 (3d Cir. 1994) ...................................................................................... 13

*Public Citizen v. Liggett Group, Inc.,*
    858 F.2d 775 (1st Cir. 1988) .................................................................................... 11

*Schiller v. City of New York,* No. 04 Civ. 7922 (KMK) (JCF),
    2007 WL 136149 (S.D.N.Y. Jan. 19, 2007) .............................................. 11, 20, 21

*Seattle Times Co. v. Rhinehart,*
    467 U.S. 20 (1984).......................................................................................... 1, 8, 11

*SEC v. TheStreet,*
    273 F.3d 222 (2d Cir. 2001) .................................................................................... 12

*Skyline Steel, LLC v. Pilepro, LLC,*
    2015 U.S. Dist. LEXIS 54046 (S.D.N.Y. Apr. 24, 2015).......................................... 23

*Springs v. Ally Fin., Inc.,*
    2014 WL 7778947 (W.D.N.C. Dec. 2, 2014)......................................................... 18

*Travelers Indemnity Co. v. Excalibur Reins. Corp.*,
   2013 WL 4012772 (D. Conn. Aug. 5, 2013)................................................................ 18

*Vazquez v. City of New York*, No. 10 Civ. 6277 (JMF),
   2014 U.S. Dist. LEXIS 61451 (S.D.N.Y. May 12, 2014)................................................... passim

*Westinghouse Electric Corp. v. Republic of the Philippines,*
   951 F.2d 141 (3d Cir. 1991)........................................................................................ 21

**OTHER AUTHORITIES**

MANUAL FOR COMPLEX LITIG. § 11.423 (4th ed. 2004)................................................... 9

Miller, Arthur R., Confidentiality, Protective Orders, and Public Access to the Courts,
   105 Harv. L. Rev. 427, 492-93 (1991) .......................................................................... 12

Weinstein, Jack B., Secrecy in Civil Trials: Some Tentative Views,
   9 J.L. & Pol'y 53, 61 (2000)........................................................................................ 12

## I.      INTRODUCTION

There is no good cause for entering New GM's proposed order, which seeks to prevent Plaintiffs from disclosing or discussing any information exchanged in the pretrial phase of this litigation even if the information is not confidential, not privileged, and already accessible to the public.  Having dedicated its enormous resources to false media spin designed to minimize its culpability for the delayed ignition switch recall that killed and injured hundreds, New GM wants to prevent Plaintiffs from countering New GM's false narrative in the public domain.  But the intended harm to Plaintiffs here is secondary.  "[P]articularly in a case of this nature"[1]— which directly implicates a vital public interest—the public should have full access to non-confidential and "judicial" documents.  New GM's request to suppress public access to such documents should be rejected.

*First*, New GM's proposed order would prohibit Plaintiffs from disclosing or discussing the substantial amount of evidence regarding New GM's knowledge and concealment of the ignition switch defect that already exists in the public domain – a First Amendment violation. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 37 (1984).

*Second*, New GM has failed to meet its burden in showing good cause to shield from disclosure documents that New GM concedes are *not confidential*.  New GM misleadingly refers to the need for confidentiality to justify its request[2] but this Court has already entered a blanket protective order that permits New GM to shield from disclosure any documents it deems confidential.[3]  As a result, New GM's good cause arguments on this motion apply only to non-confidential documents that New GM could not otherwise shield from disclosure under the

---

[1] MDL Order No. 10 (Doc. No. 44) ("Order") at 1.
[2] New GM's Memorandum in Support of its Motion for a Protective Order Regarding Pretrial Discovery Materials ("New GM Mem.") at 7, 12, 15, 18.
[3] *Supra* n. 1.

existing protective order.  New GM has not met its burden in showing that the disclosure of *non-confidential* information would prejudice New GM's ability to obtain a fair trial or embarrass anyone.

*Third*, New GM's proposed order would impermissibly alter the definition of a "judicial document."  New GM proposes to prohibit the public disclosure of all discovery documents except for *non-confidential* documents filed on the docket in connection with requests for a judicial determination.[4]  As this Court has repeatedly stressed, however, "the mere fact that the parties have agreed that a document is designated as confidential or highly confidential does not, in itself, justify overriding the presumption in favor of public access."[5]

New GM's motion is not about a fair trial or the privacy interests of its employees.  Rather, it is a poorly veiled attempt to preemptively muzzle information that contradicts its billion-dollar propaganda pitch that GM has turned over a new leaf.  Moreover, New GM wants to shirk its obligation under the Order to review and make a particularized showing of the confidentiality of documents in response to Plaintiffs' challenges.  New GM's goal is censorship of Plaintiffs' public challenge to New GM's false, carefully orchestrated media narrative that places blame for the recall debacle on "old" GM – despite New GM's knowledge and concealment of the ignition switch defect for almost five years.

New GM promised transparency,[6] but now it wants the opposite.  The Court should not grant New GM's attempt to so severely restrict the public's access to information in this case of

---

[4] *See* New GM's proposed [Protective Order to Govern Disclosure of Information not Designated Confidential or Highly Confidential Under Order No. 10 Produced in MDL 2543.] (Doc. No. 1058-1) ("Nothing in this Order is intended to preclude, however, filing as appropriate on the public docket Information *not designated as Confidential or Highly Confidential* in connection with requests for a judicial determination.") (emphasis added).

[5] Ex. 1, *In re: General Motors LLC Ignition Switch Litig.*, 14-md-2543 (JMF), Mar. 13, 2015 Hearing Tr. at 15.

[6] Ex. 2, Written Testimony of General Motors Chief Executive Officer Mary Barra Before the House Committee on Energy and Commerce Subcommittee on Oversight and Investigations, "The GM Ignition Switch Recall: Why Did It Take So Long?" April 1, 2014 ("we will be fully transparent with you, with our regulators, and with our customers"), *available* *at*

great significance to the public's health and safety. Accordingly, Plaintiffs respectfully request that the Court deny New GM's Motion for a Protective Order Regarding Pretrial Discovery Materials.

## II.     FACTUAL BACKGROUND

### A.     The Court has already entered a blanket protective order that prevents the disclosure of confidential information.

On September 10, 2014 the Court entered MDL Order No. 10 [Protecting Confidentiality and Privileged Materials] (Doc. No. 44) (the "Order"). Under the Order, the Court permitted New GM to make "blanket confidential designations so as to immediately provide bulk production of millions of pages of documents," but permitted Plaintiffs "to challenge any specific designation as discovery proceeds within the framework of this Order." Order at p. 1; *see also id.* at ¶ 4 (establishing procedure for parties to challenge confidentiality designations and stating that the producing party has the burden of proving that "good cause" exists).

The Order restricts access to information designated as "Confidential" or "Highly Confidential" as those terms are defined in the Order. *Id.* at ¶¶ 2, 5-6. The Order provides that Confidential and Highly Confidential Information may only be used in the MDL or related proceedings, but does not restrict the use of information not designated Confidential or Highly Confidential. *Id.* at ¶ 7.

The Order also emphasizes that the presumption of public access applies to filed documents. *Id.* at 1 ("the Court has advised all Parties that there is a presumption in favor of public access, particularly in a case of this nature, and that unless the Court determines – based on a written application – that there is a reason justifying something be filed in redacted form or under seal, any filings are public and publicly available to the press and the public alike").

---

http://media.gm.com/media/us/en/gm/news.detail.html/content/Pages/news/us/en/2014/mar/0331-barra-written-testimony.html ("Barra Written Testimony").

3

**B.**     **A massive amount of information regarding New GM's knowledge and concealment of the defect is already in the public domain.**

Prohibiting the disclosure of all pretrial discovery materials, as New GM proposes, would necessarily prohibit the disclosure of information already in the public domain.

Documents reflecting New GM's knowledge and concealment of the defect are available on the website of the National Highway Traffic Safety Administration ("NHTSA"). For example, the chronology that New GM submitted to NHTSA regarding New GM's decade-long knowledge of the safety defect (which prompted NHTSA's civil enforcement investigation, Timeliness Query TQ14-001)[7] appears on NHTSA's website.[8] Documents evidencing GM's 2006 part change request to increase ignition switch torque to meet specification also appears on NHTSA's website.[9] And a GM training document that instructed engineers not to use words such as "defect," "safety," or "safety-related" in order to avoid liability in defect suits also appears on the site.[10]

In addition, on June 5, 2014, New GM made public the lengthy report regarding GM's knowledge and handling of the ignition switch defect that was prepared, at New GM's request, by Anton R. Valukas of Jenner & Block. The Valukas Report is over 300 pages long and summarizes roughly 350 witness interviews and 23 terabytes of data collected from the files of over 300 GM employees.[11] In detailing GM's concealment of a known safety defect, the report discloses the contents of, and quotes from, hundreds (if not more) of internal GM documents –

---

[7] *See* Ex. 3, *In re TQ14-001 NHTSA Recall No. 14V-047*, Consent Order ("Consent Order") at ¶¶ 5, 9.

[8] *See* Ex. 4, New GM's Feb. 24, 2014 letter to NHTSA, *available at* http://www-odi.nhtsa.dot.gov/acms/cs/jaxrs/download/doc/UCM450663/RCDNN-14V047-3409.pdf (attaching detailed chronology from 2004-2014 of "principal events that were the basis for the determination that the defect related to motor vehicle safety").

[9] *See* Ex. 5, Delphi's Apr. 11, 2014 letter to NHTSA attaching documents, *available at* http://www-odi.nhtsa.dot.gov/acms/cs/jaxrs/download/doc/UCM453825/RCMR-14V047-8855.pdf.

[10] *See* Ex. 3, Consent Order, Ex. B., *available at* http://www-odi.nhtsa.dot.gov/acms/cs/jaxrs/download/doc/UCM455617/RCORRD-14V047-8089.pdf.

[11] *See* Ex. 6, Valukas Report excerpt at 13-14. The report contains over 1300 footnotes to evidence, many of which cite multiple sources.

including attorney-client communications and work product generated in the course GM's defense of product liability suits arising from crashes of recalled vehicles. The Valukas Report also identifies at least 185 GM employees and third parties, and their respective roles in the defect debacle.[12]   After New GM made the Valukas Report public, it publicly announced the firing of fifteen New GM employees[13] – whose names were quickly identified in the press.[14]

Subsequently, the United States House of Representatives Energy & Commerce Committee posted on its website over seventy internal documents evidencing GM's 2001-2014 knowledge of the ignition switch defect in connection with the Committee's June 18, 2014 hearing on New GM's delayed recall.[15]   New GM CEO Mary Barra and Anton Valukas discussed these documents and the contents of the Valukas Report with Congress during the hearing, the transcript of which is also available online.[16]

---

[12] All but two of the deponents publicly identified by Mr. Hilliard (New GM Mem. at 6) were identified in the Valukas Report. *See* Ex. 7 (list of 185 GM employees and third parties identified in the Valukas Report indicating the 33 identified in the Hilliard press release).

[13] *See* Ex. 8, New GM press release, "GM CEO Mary Barra's Remarks to Employees on Valukas Report Findings,         June         5,         2014,         *available         at* http://media.gm.com/media/us/en/gm/news.detail.html/content/Pages/news/us/en/2014/Jun/060514-mary-remarks.html.

[14] *See* Ex. 9, "G.M. Lawyers Hid Fatal Flaw, From Critics and One Another," N.Y. Times June 6, 2014 (identifying fired employees); Ex. 10, "General Motors Executives Who Were Fired in Wake of Valukas Report Named," June 6, 2014, *available at* http://gmauthority.com/blog/2014/06/general-motors-executives-who-were-fired-in-wake-of-valukas-report-named/ (identifying fired employees); Ex. 11, "2 more fired GM execs who failed to push for ignition-switch recall named," June 7, 2014, *available at* http://www.autoblog.com/2014/06/07/2-more-fired-gm-execs-named-recall/ (identifying fired employees).

[15] *See* http://energycommerce.house.gov/hearing/the-gm-ignition-switch-recall-investigation-update. A list of the posted documents also appears on the site. *See* Ex. 12, Subcommittee on Oversight and Investigations Document Binder Index, June 18, 2014, "The GM Ignition Switch Recall: Investigation Update," *available at* http://docs.house.gov/meetings/IF/IF02/20140618/102345/HHRG-113-IF02-20140618-SD093.pdf.

[16] *See* The GM Ignition Switch Recall: Investigation Update: June 18, 2014 House of Representatives, Subcommittee on Oversight and Investigations Committee on Energy and Commerce, *available at* http://docs.house.gov/meetings/IF/IF02/20140618/102345/HHRG-113-IF02-Transcript-20140618.pdf.

New GM has produced to Plaintiffs during pretrial discovery, among other things, the internal GM documents that have been made public, including those referenced in the Valukas Report and produced to NHTSA and Congress.[17]

### C.   New GM's media machine has spun a false narrative to influence public opinion about its culpability for the delayed recall.

New GM's publicity machine has been hard at work.  As part of its damage control efforts in the wake of the recall scandal, New GM promised transparency.[18]  Yet behind closed doors New GM carefully crafted a false media narrative to downplay its responsibility for the hundreds of defect-related deaths and injuries and to ███████████████████████████
██████████████████[19]

New GM has publicly blamed victims for their failure to wear seat belts, high-speed travel, or alcohol use[20] and emphasized that it issued a recall in 2014 based on its "present understanding"[21] – even though New GM had known for years that ████████████████████ prevented airbag deployment in Cobalts.[22]

New GM has also publicly blamed "Old GM" for the delayed recall – even though New GM knew about and concealed the ignition switch defect for almost five years (between its July 2009 creation and the February 2014 recall).   The strategy outlined in New GM's ████████
████████████████████████████████████████████████████████████████████

---

[17] *See* MDL Order No. 12 (Doc. 46), § 1 (ordering New GM to produce non-privilege documents it produced to NHTSA and Congress); § V (ordering New GM to produce non-privileged documents cited in the Valukas Report); MDL Order No. 23 (Doc. 404) (ordering New GM to produce certain privileged documents that were produced to the government).
[18] Ex. 2, Barra Written Testimony.
[19] Ex. 13, GM-MDL2543-000699640 (█████████████████████████████).
[20] Ex. 14, GM-MDL2543-001135644 (██████████████████████████████████████████████████████████████████████████████████████).
[21] *Id.* at GM-MDL2543-001135645.
[22] Ex. 15, GM-MDL2543-000660601.001 at .002.

[BLACK]<sup>23</sup> New GM's public relations goal was to [BLACK]

[BLACK]<sup>24</sup>



[BLACK] New GM's public statements to the media and Congress, including those by Ms. Barra, have repeatedly and misleadingly placed the blame on "old" GM,<sup>27</sup> as if New GM had not itself concealed the defect for almost five years.

New GM meticulously tracks all recall-related media coverage, on a daily basis, so that it can tailor messaging to influence public opinion,<sup>28</sup> respond to negative press,<sup>29</sup> and reinforce its false narrative.<sup>30</sup> New GM's media reach is wide.<sup>31</sup>

---

<sup>23</sup> Ex. 13, [BLACK] at GM-MDL2543-000699640; *see also* Ex. 16, GM-MDL2543-400604665 ([BLACK]).

<sup>24</sup> Ex. 17, GM-MDL2543-400604667.

<sup>25</sup> Ex. 18, GM-MDL2543-004265925 (emphasis added).

<sup>26</sup> Ex. 19, GM-MDL2543-002317469.

<sup>27</sup> *See, e.g.*, Ex. 2, Barra Written Testimony ("Today's GM will do the right thing."); Ex. 20, GM-MDL2543-002731803 at 809 (news article noting that "Barra, a company veteran [has] been portrayed as the face of a 'new GM'"); *id.* at 810 (Barra said "GM had moved from a cost-focused company to a consumer-focused company since it had emerged from bankruptcy. 'This is not the way we do business at GM,' she said. 'Today's GM will do the right thing,' said Barra.").

<sup>28</sup> Ex. 22, GM-MDL2543-402033393 ([BLACK])

### III.   ARGUMENT

#### A.    The proposed order violates the First Amendment.

New GM proposes that the Court prohibit the public dissemination of any and all materials exchanged between the parties in this litigation. *See* New GM's Proposed Order at 1 (proposing that the Court order "that all 'Information,' as defined in Order No. 10[32] . . . may not be publicly disseminated").[33] By proposing that all information be protected, whether or not it has been kept confidential, New GM is asking the Court to prevent Plaintiffs from publicly disclosing or discussing, among other things, the vast amount of information that is already in the public domain. *See supra* at 4-6.

The First Amendment forbids the entry of such an order. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984), upon which New GM heavily relies,[34] states that a protective order prohibiting the disclosure of certain pretrial discovery materials does not violate the First Amendment *if* the protective order is entered on a showing of good cause and "*does not restrict the dissemination of the information if gained from other sources.*" *Id.* at 37 (emphasis added); *see also id.* at 33-34 (a protective order is not an impermissible prior restraint if it permits a party

---



[29] Ex. 23, GM-MDL2543-402027810 (                                                              ).

[30] Ex. 24, GM-MDL2543-001050835 (                                        ).

[31] For example, the phrase "Valukas Report" was picked up at least 3,400 times by various news outlets, with an exposure of at least 7,886,055,486 views. Ex. 25 (data compiled by news coverage aggregator software developed by the Meltwater company).  Moreover, New GM spends billions each year on advertising and promotion. *See* New GM's Feb. 4, 2015 10-K at 61 (listing New GM's advertising and promotion expenditures at over $5 billion each year from 2012-2014).  In light of New GM's pervasive media presence, it is absurd to suggest that Mr. Hilliard's press releases have influenced, let alone prejudiced, public perception of New GM.

[32] "Information" is defined as "the contents of documents and other data, any data and information associated with documents (whether physical or in electronic format), oral and written testimony, answers to interrogatories, admissions, and data and information derived from objects other than documents, produced or disclosed in these proceedings by any party to the above-captioned litigation or by any third party . . . ." Order ¶ 1.

[33] The only exception to New GM's proposal is made for non-confidential documents filed in connection with a request for a judicial determination. *Id.* Plaintiffs explain in Section III.B.5 below why the narrow breadth of this proposed exception runs afoul of the presumption in favor of public access for "judicial documents."

[34] *See* New GM Mem. at 2, 7-8, 19.

to disseminate "the identical information covered by the protective order as long as the information is gained through means independent of the court's processes"). Because New GM's proposed order would restrict Plaintiffs' ability to disseminate or discuss any information gained through pretrial discovery—even if the identical information is also available from other sources—the order offends the First Amendment. New GM's motion must therefore be denied.

### B.   New GM has not demonstrated good cause to shield non-confidential discovery material from disclosure.

New GM has the burden of demonstrating that good cause exists to shield all discovery material from disclosure. *Gambale v. Deutche Bank AG*, 377 F.3d 133, 142 (2d Cir. 2004); *In re Agent Orange Prod. Liab. Litig.*, 821 F.2d 139, 145 (2d Cir. 1987). New GM must "show that the disclosure will result in a clearly defined, specific and serious injury. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test. Moreover, the harm must be significant, not a mere trifle." *Vazquez v. City of New York*, No. 10 Civ. 6277 (JMF), 2014 U.S. Dist. LEXIS 61451, at *2 (S.D.N.Y. May 12, 2014) (Furman, J.).

New GM's argument that it need not make a particularized showing of good cause in this complex case, *see* New GM Mem. at 10, ignores that the Court *has already entered* a blanket confidentiality order. Under the Order, New GM must make a particularized showing of good cause as to documents it maintains are confidential over Plaintiffs' challenge. *See* MANUAL FOR COMPLEX LITIG. § 11.423 (4th ed. 2004) (umbrella "orders typically are made without a particularized showing to support the claim for protection, but such a showing must be made whenever a claim under an order is challenged"). Yet here it requests blanket protection without such a showing for documents that are concededly *not confidential*. That is not the law. New GM cannot meet its burden.

1.     **Plaintiffs are free to disseminate non-confidential discovery materials to the public.**

Contrary to New GM's assertions,[35] there is nothing improper about disclosing discovery materials that are not governed by the Order because they contain no confidential information.

Under a "plain reading" of Federal Rule of Civil Procedure Rule 26(c), "discovery materials . . . should not receive judicial protection and . . . should be open to the public for inspection" unless the moving party demonstrates good cause for the Court to shield the discovery materials under a valid protective order. *In re Agent Orange*, 821 F.2d at 145-46 (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 37 (1984)); *see also Gambale*, 377 F.3d at 142 (same). Thus, as this Court recently recognized, "[i]n the absence of a protective order, parties to a law suit may disseminate materials obtained during discovery as they see fit." *Vazquez*, 2014 U.S. Dist. LEXIS 61451, at *3 (quoting *Schiller v. City of New York*, No. 04 Civ. 7922 (KMK) (JCF), 2007 WL 136149, at *2 (S.D.N.Y. Jan. 19, 2007)).[36]

The Order only prohibits the public dissemination of discovery materials that have been marked confidential or highly confidential under the terms of the Order. *See supra* at 3.   It follows that in the absence of a protective order barring disclosure of discovery *not* marked

---

[35] *See, e.g.*, New GM Mem. at 1, 7-8.

[36] *See also Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994) ("Absent a protective order, parties to a lawsuit may disseminate materials obtained during discovery as they see fit."); *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 780 (1st Cir. 1988) (before the entry of a protective order, the parties were "free to disseminate [discovery materials] if they chose to do so"); *Oklahoma Hospital Ass'n v. Oklahoma Publishing Co.*, 748 F.2d 1421, 1424 (10th Cir. 1985) ("[I]t may be conceded that parties to a litigation have a constitutionally protected right to disseminate information obtained by them through the discovery process absent a valid protective order."); *AT&T Co. v. MCI Comm. Corp.*, 594 F.2d 594 (7th Cir. 1979) ("As a general proposition, pretrial discovery must take place in the public unless compelling reasons exist for denying the public access to the proceedings."); *Flaherty v. Seroussi*, 209 F.R.D. 295, (N.D.N.Y. 2001) ("At a minimum, the governing rules strongly suggest a philosophy which favors free access to discovery materials in the absence of countervailing considerations.").

confidential, Plaintiffs may freely disseminate *non-confidential* discovery materials as they see fit. *Vazquez v. City of New York*, 2014 U.S. Dist. LEXIS 61451, at *3.[37]

### 2.   The public interest in New GM's delayed recall weighs against modifying the protective order.

It is true that no "presumption" or "right" of public access attaches to discovery documents not yet filed with the Court. But in making its good cause determination, the Court may still consider the public's interest in accessing the discovery materials New GM seeks to shield from public view.[38] *See SEC v. TheStreet*, 273 F.3d 222, 234 (2d Cir. 2001) (affirming district court's refusal to prohibit disclosure of discovery materials that were not "judicial documents" because the public's interest outweighed the right to privacy); *Vazquez*, 2014 U.S. Dist. LEXIS 61451, at *2-3 (denying protective order prohibiting disclosure of discovery that was not a "judicial document" in light of the public interest in the litigation); *Condit v. Dunne*, 225 F.R.D. 113, 118-120 (S.D.N.Y. 2004) (same).[39]

---

[37] The cases New GM cites in support of barring the disclosure of all pretrial discovery (New GM Mem. 10-11) are distinguishable. None involved a prohibition on the disclosure of vast amounts of information that were already in the public domain. And none involved a request by a party to modify the stipulated, governing protective order because one of the parties no longer agreed with its terms. Moreover, *In re: Terrorist Attacks on September 11, 2001*, 454 F. Supp. 2d 220, 223 (S.D.N.Y. 2006) dealt with "far from normal" litigation involving burdens not present here, such as "numerous defendants, including sovereign states, government institutions, public figures, private individuals, companies, charitable organizations, and others" that made "defendant-by-defendant" and "document-by-document" good cause determinations impracticable if not impossible. *Tradewinds Airlines, Inc. v. Soros*, 2009 WL 1321695, at *1 (S.D.N.Y. May 12, 2009) and *Lyondell-Citgo Refining, LP v. Petroleos de Venezuela, S.A.*, 2003 WL 22990099, at *2 (S.D.N.Y. Dec. 19, 2003) involved umbrella protective orders that were stipulated by the parties without the courts' analysis of good cause.

[38] New GM's focus on the fact that unfiled discovery materials are not "judicial documents" (New GM Mem. at 8-10) misses the point. As this Court has stated, "[d]efendants are correct that the items [not filed with the Court] are not 'judicial documents' subject to a presumption in favor of public access. But that does not entitle Defendants to a protective order under Rule 26(c) of the Federal Rules of Civil Procedure, which requires a showing of 'good cause.'" *Vazquez v. City of New York*, 2014 U.S. Dist. LEXIS 61451, at *2 (internal citations omitted).

[39] *See also Pansy v. Stroudsburg*, 23 F.3d 772, 786-87 (3d Cir. 1994) (prior to issuing a protective order courts should balance "whether confidentiality is being sought over information important to public health and safety"); Weinstein, Jack B., *Secrecy in Civil Trials: Some Tentative Views*, 9 J.L. & Pol'y 53, 61 (2000) ("We can strike a fair balance between the privacy interests of a corporation and the health and safety of the public so long as we recognize that a publicly maintained legal system ought not protect those who engage in misconduct, conceal the cause of injury from the victims, or render potential victims vulnerable. Secrecy in such instances defeats a function of the justice system – to reveal important legal factual issues to the public."); Miller, Arthur R., *Confidentiality, Protective Orders, and Public Access to the Courts*, 105 Harv. L. Rev. 427, 492-93 (1991) (judges should balance "the existence of any threat to health and safety" in determining whether to issue a protective order).

This case involves a substantial public safety concern: GM's ten-year cover-up of a significant safety defect that GM knowingly installed in millions of vehicles and that has killed and injured hundreds of unsuspecting consumers.   Given this vital public interest, the public should have access to non-confidential discovery and "judicial documents."

Courts have repeatedly held that no good cause exists to ban the disclosure of discovery materials in cases involving similar matters of significant concern to the public's health.  *See Agent Orange*, 821 F.2d at 146 (ruling in mass tort action that access to discovery materials is "particularly appropriate when the subject matter of the litigation is of especial public interest"); *Culinary Foods, Inc. v. Raychem Corp.*, 151 F.R.D. 297, 301 (N.D. Ill. 1993) (ruling in product liability action that "[w]here products are indeed hazardous, information concerning the dangers of the products and the corporations lack of action to prevent the dangers or its attempt to conceal the dangers should not be subject to protection under Rule 26(c)"); *Cipolline v. Liggett Group, Inc.*, 113 F.R.D. 86, 87 (D.N.J. 1986) (ruling that defendant failed to establish good cause for the concealment of non-confidential discovery documents relating to "knowledge of the defendant tobacco companies regarding the risks of cigarette smoking and what action was taken to conceal or minimize these risks and neutralize the required warnings"); *see also In the Matter of Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 428 (9th Cir. 2011) (ruling that the district court did not abuse its discretion in unsealing discovery records that revealed credible allegations of sexual abuse in light of the "weighty interest in public safety").

Moreover, the public's interest in access to discovery materials may defeat the movant's good cause showing even where the non-movant clearly intends to publish the discovery materials through the media in the absence of a protective order.

In *Condit v. Dunne*, for example, plaintiffs' counsel told the press of its intent to publish the videotape transcript of defendant's deposition in order to tarnish defendant's reputation. *Condit*, 225 F.R.D. at 114.   Rejecting defendant's motion for a protective order barring the public dissemination of the deposition tape, the court emphasized the public's interest in the subject matter of the litigation. *Id.* at 119.

Similarly, in *Flaherty v. Seroussi*, plaintiff announced her intention to publicize the defendant's deposition. *Flaherty*, 209 F.R.D. 295, 298-99 (N.D.N.Y. 2001).   The defendant moved for a protective order restricting the dissemination of the deposition, arguing that "plaintiff's avowed intention to publicize the deposition and make the videotape of it freely available to the media is improper, and suggests a desire to make impermissible use of material acquired during the course of pretrial discovery." *Id.* at 296.   The court disagreed, ruling that "entry of a protective order . . . would unduly hamper the public's access to materials bearing upon matters of significant public interest." *Id.*; *see also id.* at 299 ("In cases where issues of strong public interest favoring the free dissemination of discovery materials are at play, the normal practice of not according discovery materials the same degree of access as those filed in connection with trial gives way to a presumption of open access.").[40]

This Court has twice relied on *Condit* and *Flaherty* in finding that no good cause existed to bar the disclosure of discovery materials in cases, like this one, involving the public interest. *See Laugier v. City of New York*, No. 13-cv-6171 (JMF), 2014 WL 6655283, at *2 (S.D.N.Y. Nov. 24, 2014) (Furman, J.) (relying on *Condit* and *Flaherty* in holding that that the public's interest in the case "cuts in *favor* of allowing public access to the video not against it") (emphasis

---

[40] Both *Condit* and *Flaherty* distinguished *Paisley Park Enterprises, Inc. v. Uptown Prods.*, 54 F. Supp. 2d 347 (S.D.N.Y. 1999) (upon which New GM relies, *see* New GM Mem. at 13, 19) because the court in that case entered a protective order barring the publication of a videotaped deposition in light of evidence that the plaintiff sought to publish the video for commercial reasons. *Condit*, 54 F. Supp. 2d at 117; *Flaherty*, 209 F.R.D. at 299. Plaintiffs here seek no commercial advantage by disclosing discovery materials to the public.

13

in original); *Vazquez*, 2014 U.S. Dist. LEXIS 61451, at *3 (relying on *Condit* and *Flaherty* in holding that good cause had not been established "in view of, among other things, the public interest in the subject matter of this civil rights litigation, the extent and nature of the existing media coverage of the case, and other means available to address any risks posed by pretrial publicity."). Because the public's interest in the facts of this case cuts in *favor* of access to discovery materials, New GM's motion should be denied.

### 3. New GM failed to substantiate, in any way, its claim that disclosure of non-confidential discovery would deprive it of a fair trial.

New GM has offered nothing but conclusory, unsubstantiated claims that disclosure of non-confidential discovery materials would deprive it of a fair trial. It fails to cite a single piece of non-confidential testimony or evidence that Plaintiffs might conceivably disclose that would result in the type of prejudice warranting the entry of the order New GM seeks. *See* New GM Mem. at 12-14. This failure is fatal to New GM's motion. Moreover, New GM's unsubstantiated complaint rings particularly hollow in light of the enormous resources it spends on influencing public opinion – as it tries to prevent Plaintiffs from countering even a fraction of its false narrative.

New GM similarly fails to address why any concern about publicity cannot be adequately cured through voir dire. "[T]he appropriate course to follow when the spectre of prejudicial publicity is raised is not automatically deny access but to rely primarily on the curative device of voir dire examination . . . . " *Vazquez*, 2014 U.S. Dist. LEXIS 61451, at *3 (quoting *Schiller*, 2007 WL 1299260, at *5). Rejecting the defendant's argument that the jury pool would be tainted if discovery materials were revealed, *Condit* "defer[ed] to the Second Circuit's cogent view that publicity is unlikely to color incurably jurors' views, even in the most high-profile cases." *Condit*, 225 F.R.D. at 188 (citing, *inter alia, In re NBC, Inc.*, 635 F.2d 945, 948 (2d Cir.

1980)). "Even assuming part or all of the [discovery] is disseminated to the public, memories fade and, moreover . . . any tainting of the jury pool can be remedied through voir dire." *Id.*; *see also Morrow v. Tenaha*, No. 08-cv-288 (TJW), 2010 WL 3927969, at *6 (E.D. Tex. Oct. 5, 2010); *Hawley v. Hall*, 131 F.R.D. 578, 585 (D. Nev. 1990); *Cipollone*, 113 F.R.D. at 92). Accordingly, New GM's fair trial assertions cannot establish good cause to enter the proposed order.[41]

### 4. New GM can adequately protect undisclosed personal and sensitive information under the governing protective order provisions.

New GM argues that sensitive or potentially embarrassing and "otherwise" privileged information should receive "confidential treatment across the board . . . ." New GM Mem. at 15.[42] But the existing Order already gives New GM the ability to protect such information from disclosure by marking it as confidential. New GM has failed to explain how the existing Order is inadequate to protect purportedly "sensitive" and "otherwise privileged" information it discloses in discovery. Moreover, much of the information about which New GM expresses concern has already been disclosed to the public. Plaintiffs detail further below why entry of the proposed order is not necessary to protect this information.

***Employment and Personnel Materials.*** *First*, New GM has admitted that it failed to provide "specific examples" of potentially embarrassing non-confidential employment

---

[41] The cases New GM cites at pp. 13-14 of its brief do not support entry of the proposed order. *Paisley Park* is distinguished at n. 40, *supra* and *Terrorist Attacks* is distinguished as n. 37, *supra*. Moreover, *Anderson v. Cryovac, Inc.*, 805 F.2d 1 (1st Cir. 1986) concerned a narrow order that was entered just before jury selection after the public and press had three years of unrestricted access to discovery materials. In *Jennings v. Peters*, 162 F.R.D. 120 (N.D. Ill. 1995) discovery was being publicized to influence an election – a concern not present here. *Springs v. Ally Fin., Inc.*, 2014 WL 7778947 (W.D.N.C. Dec. 2, 2014) involved allegations of evidence tampering not present here. Finally, *Looney v. Moore*, 2014 WL 1364509 (N.D. Ala. Apr. 7, 2014) stands only for the simple proposition that pretrial publicity might provide good cause to enter a protective order in some instances. New GM has not met its burden in establishing good cause to enter its proposed order here.

[42] The case New GM cites in support, *Travelers Indemnity Co. v. Excalibur Reins. Corp.*, 2013 WL 4012772 (D. Conn. Aug. 5, 2013) (*see* New GM Mem. at 15), deals only with whether the documents at issue were properly designated as confidential; it does not address whether good cause exists to prohibit Plaintiffs' disclosure of all discovery documents, including those that are concededly *not* confidential.

information that needs protecting. New GM Mem. at 6, n.4. This failure alone sinks New GM's good cause argument.

*Second*, New GM has already made public its employees' "sensitive" employment information. For the past year the public has known: (a) the facts and circumstances that ultimately led New GM to fire or reprimand certain current and former employees of New GM; and (b) the identities of New GM fired employees who "acted inappropriately," engaged in "misconduct or incompetence," or "simply didn't do enough" by not "tak[ing] responsibility" or act[ing] with any sense of urgency." *See supra* at 4-5; Ex. 8.

No good cause exists to shield information that has already been disclosed publicly. *See Gambale*, 377 F.3d at 144 (declining to seal amount of settlement that should not have been disclosed because the Court could not put the genie back in the bottle); *Vazquez*, 2014 U.S. Dist. LEXIS 61451, at *3 (denying entry of protective order given, among other things, "the extent and nature of what is already on the docket or in the public domain related to both the case and the parties"); *Gucci Am., Inc. v. Guess?, Inc.*, No. 09-cv-4373 (SAS) (JLC), 2010 U.S. Dist. LEXIS 34834, **4-8 (S.D.N.Y. Apr. 8, 2010).

*Third*, this is not a case where innocent third parties need to be protected from embarrassment. The deponents at issue are current and former corporate employees of New GM whose conduct, as representatives and agents of defendant New GM, led to deaths and injuries in a public scandal about which New GM has admitted wrongdoing.[43]

*Finally*, New GM has already demonstrated that the Order is perfectly capable of shielding from public disclosure "sensitive" information regarding the "circumstances under

---

[43] *See* Consent Order at ¶ 10 ("GM admits that it violated the [National Traffic and Motor Vehicle Safety Act of 1966 as amended and recodified] by failing to provide notice to NHTSA of the safety-related defect that is the subject of Recall No. 14V-047 within five working days as required by 49 U.S.C. § 30118(c)(1), 49 U.S.C. §30119(c)(2), and 49 C.F.R. § 573.6(b).").

which certain New GM employees were terminated or reprimanded." New GM Mem. at 15. For example, New GM has marked as confidential Ms. Palmer's testimony[44] that, *inter alia*:



New GM can similarly protect any other sensitive employment and personnel materials it deems appropriate under the existing Order.

To the extent New GM has a real concern that it cannot protect embarrassing information about non-parties under the Order, Plaintiffs are open to discussing a potential solution. But New GM's proposal—under which Plaintiffs would be prohibited from disclosing *any* information produced in discovery, not just "sensitive" employment information—is not it.[45]

***"Otherwise" Privileged Materials.*** New GM repeatedly refers to *"otherwise"* privileged documents that it has produced to Plaintiffs in this case. *See* New GM Mem. at 1-2, 18. What New GM means by this phrase, however, is documents that are *no longer privileged* because New GM disclosed them to Plaintiffs. *See Schiller*, 2007 WL 136149, at *5, n.5 ("[V]oluntary disclosure to an adversary constitutes waiver even where the party to whom production is made is subject to a confidentiality agreement.") (citing *Westinghouse Electric Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1426-27 (3d Cir. 1991)); *Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 480 (S.D.N.Y. 1998). No good cause exists to prohibit the disclosure of documents for which New GM has waived the privilege. *Schiller*, 2007 WL 136149, at *5, 7.

---

[44] Ex. 27, "Confidential" Testimony from the Deposition of Jaclyn Palmer Taken on May 19, 2015.
[45] New GM's cases at pp. 15-16 of its brief are distinguishable because the protective orders there were limited to the sensitive employee files; they did not involve the type of blanket protection New GM seeks here.

Moreover, like the employment-related documents discussed above, "otherwise" privileged material is already in the public domain. *See, e.g.,* Ex. 6, Valukas Report excerpts at 141-42, 149-53, 167-70, 203-05 (disclosing the contents of communications between New GM lawyers and its outside counsel, and of New GM meetings involving lawyers). New GM cannot establish good cause to prohibit the disclosure of information that is *not* privileged, *not* confidential, and *not* obtained through the exchange of pretrial information. And to the extent "otherwise" privileged documents have not been disclosed publicly, New GM has made no showing that the Order provides inadequate protection for such documents.

### 5.  Professional Conduct Rule 3.6 does not bar dissemination of non-confidential discovery material.

Professional Conduct Rule 3.6 provides no support for shielding all pretrial discovery from public disclosure in a case of significant public importance. To the contrary, the Rule's commentary emphasizes that:

> there are vital societal interests served by the free dissemination of information about events having legal consequences and about legal proceedings themselves. *The public has a right to know about threats to its safety and measures aimed at assuring its security.*

Rule 3.6, Comment 1 at p. 119 (emphasis added).

Moreover, New GM's reliance on Rule 3.6 is totally unmoored from the relief it seeks. New GM has not argued that Mr. Hilliard disclosed information derived solely from documents exchanged in pretrial discovery.[46] Nor has it given the Court any specific examples of the type of non-confidential discovery Mr. Hilliard might otherwise disclose (were it not for the entry of the order New GM seeks) that would interfere with New GM's ability to obtain a fair trial. Nor has it shown that Mr. Hilliard's statements were so prejudicial as to prohibit the public disclosure

---

[46] Indeed, review of the exhibits attached to New GM's motion show that Mr. Hilliard's statements were general in nature and discussed little, if any, evidence.

of anything and everything exchanged in pretrial discovery. *See* New GM Mem. at 12-15 (failing to cite a single specific example of a prejudicial statement or serious injury).

Nor could it. Although New GM has accused Plaintiffs of "selective disclosure" to the press (New GM Mem. at 12), New GM has engaged in its own selective media spin since the recall debacle was first announced. *See supra* at 6-7. One man's efforts to rebut New GM's false media narrative—which has been carefully orchestrated by New GM's public relations juggernaut to skew public opinion in favor of "new" GM—are not materially prejudicial. *See* Rule 3.6(d) ("a lawyer may make a statement that a reasonable lawyer would believe is required to protect the client from the substantial prejudicial effect of recent publicity not initiated by the lawyer or the lawyer's client").

Rule 3.6 may not be "invoked by [New GM] as [a] procedural weapon[]." New York Rules of Professional Conduct, Preamble at p. 5. And it offers no support for New GM's requested relief.

### C.     New GM's proposed order seeks to improperly shield "judicial documents" from disclosure.

New GM's proposed order bars the public dissemination of all "Information" as that term is defined in the Order with the exception of information "not designated as Confidential or Highly Confidential" filed on the public docket "in connection with requests for a judicial determination." In other words, New GM seeks to bar the public filing of any confidential discovery document -- even if it was filed in conjunction with a party's request for judicial adjudication.

The Court, however, has made clear that New GM's designation of information as confidential or highly confidential cannot, by itself, justify the sealing of "judicial documents." *See, e.g.*, Ex. 28, June 16, 2015 Hearing Tr. at 8 ("I take pretty seriously the presumption in favor

19

of public access to judicial documents . . . . [T]he mere designation of something as confidential and/or the mere agreement between parties that something is confidential is not in and of itself sufficient . . . .").[47]   Indeed, the governing Order states that the presumption of public access attaches to all filed documents and all filed documents will be "publicly available to the press and the public alike" absent a written application justifying the sealing or redaction of a particular document. *See supra* at 3.

New GM has come nowhere near demonstrating good cause to modify the existing protective order to include provisions that violate the presumption of public access to judicial documents. *See In re: Terrorist Attacks on September 1, 2011*, 454 F. Supp. 2d at 224 (denying protective order to the extent it sought to seal "judicial documents").

## IV.   CONCLUSION

For all the foregoing reasons, New GM's motion for a protective order should be denied.

---

[47] *See also Kia Song Tang v. Glocap Search LLC*, 14-CV-1108 (JMF), 2015 U.S. Dist. LEXIS 37342, at **18–19 (S.D.N.Y. Mar. 24, 2015) (Furman, J.) ("The mere fact that information is subject to a confidentiality agreement between litigants, however, is not a valid basis to overcome the presumption in favor of public access to judicial documents.") (citations omitted); *Skyline Steel, LLC v. Pilepro, LLC*, 2015 U.S. Dist. LEXIS 54046, at *47 (S.D.N.Y. Apr. 24, 2015) (Furman, J.) (same); *Dandong v. Pinnacle Performance Ltd.*, 10-CV-8086 (JMF), 2012 U.S. Dist. LEXIS 177525, 2012 WL 6217646, at *2 (S.D.N.Y. Dec. 3, 2012) (Furman, J.) ("The consent of the parties is not a valid basis to justify sealing, as the rights involved are the rights of the public.") (internal quotation marks omitted).

Dated: June 26, 2015                Respectfully Submitted,

                                    HILLIARD MUÑOZ GONZALES L.L.P.

                                    By:    */s/ Robert Hilliard*
                                    Robert Hilliard
                                    *bobh@hmglawfirm.com*
                                    Anne K. Fornecker
                                    *anne@hilliardshadowenlaw.com*
                                    719 S Shoreline Blvd, Suite #500
                                    Corpus Christi, TX 78401
                                    Telephone:  (361) 882-1612
                                    Facsimile:  (361) 882-3015

                                    HAGENS BERMAN SOBOL SHAPIRO LLP

                                    By:    */s/ Steve W. Berman*
                                    Steve W. Berman
                                    *steve@hbsslaw.com*
                                    Sean R. Matt
                                    *sean@hbsslaw.com*
                                    Andrew M. Volk
                                    *andrew@hbsslaw.com*
                                    HAGENS BERMAN SOBOL SHAPIRO LLP
                                    1918 Eighth Avenue, Suite 3300
                                    Seattle, WA  98101
                                    Telephone:  (206) 623-7292

                                    LIEFF CABRASER HEIMANN
                                    & BERNSTEIN, LLP

                                    By:    */s/ Elizabeth J. Cabraser*
                                    Elizabeth J. Cabraser
                                    *ecabraser@lchb.com*
                                    Steven E. Fineman
                                    *sfineman@lchb.com*
                                    Rachel Geman
                                    *rgeman@lchb.com*
                                    Annika K. Martin
                                    *akmartin@lchb.com*
                                    275 Battery St., 29th Floor
                                    San Francisco, CA 94111
                                    Telephone:  (415) 956-1000
                                    Facsimile:   (415) 956-1008
                                    *Co-Lead Counsel*

21

## CERTIFICATE OF SERVICE

I, Robert C. Hilliard, hereby certify that I caused a copy of the foregoing to be filed electronically via the Court's electronic filing system. Those attorneys who are registered with the Court's electronic filing system may access this filing through the Court's system, and notice of this filing will be sent to these parties by operation of the Court's electronic filing system.

Dated: June 26, 2015

Respectfully Submitted,

/s/ Robert C. Hilliard
Robert C. Hilliard