

July 10, 2015

**VIA ELECTRONIC COURT FILING**

The Honorable Jesse M. Furman
United States District Court for the
 Southern District of New York

    Re:    *In re: General Motors LLC Ignition Switch Litig.*, 14-MD-2543 (JMF), 14-MC-2543

Dear Judge Furman:

    Plaintiffs write in response to *Certain Plaintiffs' Objections to Second Amended Consolidated Complaint* ("SAC").[1] In an objection on behalf of 12 individuals (the "Peller Plaintiffs"), Mr. Peller complains that (a) the SAC does not plead claims on behalf of subclasses of owners of every model/year of vehicle which New GM recalled in 2014; and (b) the SAC's brand-wide diminution claim is (in his view) difficult to prove. Peller Obj. at 2. Mr. Peller acknowledges that he is "aware of no precedent to inform the Court's disposition" of his objection, and that he does not know "what course to recommend" as a remedy. *Id.* at 5. Because Mr. Peller's objections are misplaced, no remedy is needed.

    First, the objections ignore that subclassing, like class manageability generally, is highly fact dependent. The extreme degree of subclassing Mr. Peller recommends is not justified by the facts, and is inefficient and unnecessary given the absence of conflicts among proposed subclass members (among many other reasons). Notably, the SAC *does* detail the other safety defects in addition to the ignition switch defects. The question of whether each defect should be separately subclassed is one within Lead Counsel's discretion – and one that Lead Counsel handled correctly given the available evidence, including the work of a consulting expert that shows that diminution is brand-wide and *not* defect-specific. *See* SAC ¶¶ 24, 977-81. Second, the objections fail to acknowledge the commonalities presented by the brand-wide diminution claim. *See e.g.* SAC ¶¶ 945-982. Third, the objections ignore, or misstate, the law of class certification. Even assuming, *arguendo*, that certain claims are harder to certify than others, class certification is not all or nothing, and there is no reason for Plaintiffs not to pursue meritorious claims. For these and other reasons, and others described below, the objections are without merit.

    Finally, the Peller Plaintiffs' interests are fully protected by Rule 23 and this Court's Orders. Under Rule 23(b)(3), the Peller Plaintiffs will have an opportunity to opt out of any certified class if they believe they have unique claims. If on the other hand certification is denied, they will have the opportunity to litigate any claim they choose. Given that nearly all of the defects in the Peller Plaintiffs' vehicles are covered in Phase I and Phase II discovery consistent with this Court's Orders,[2] and that additional defects may be covered in later phases,

---

[1] *See* MDL ECF No. 1038 (June 26, 2015) ("Peller Obj.").

[2] *See* MDL ECF Nos. 383 (Order No. 20) (Phase I); 521 (Order No. 31) (Phase II).

there is no reason to upset the efficient and fair progress of this MDL to jump start discovery into additional defects merely because one of the Peller Plaintiffs drove a vehicle with that defect.

A.   **Relevant Background**

This Court has already addressed the underpinning of Mr. Peller's objections—namely, that the "brand-wide" diminution claims on behalf of all GM owners asserted in the SAC are somehow in conflict with the claims of owners of defective vehicles—in response to a July 10, 2014 letter to this Court by leadership applicant, Wolf Haldenstein.[3] Like Mr. Peller does now, that letter raised the specter of a conflict in light of the *Andrews* case,[4] filed by one of the Co-Leads. According to the Wolf Haldenstein letter, "*Andrews* is radically different from the Ignition Switch cases. It was brought on behalf of a different class, and it asserts a different legal theory. It should not be consolidated with these cases, and it should be led by different counsel"[5] Like Mr. Peller, the Wolf Haldenstein letter grounded its conflict claim on the fact that *Andrews* "seeks damages for tens of millions of GM vehicle owners, even those cars were never recalled, based on a theory that GM's spate of recent recalls has devalued the 'GM brand.'" This Court explicitly rejected the conflict argument, noting that "Courts have regularly permitted counsel to represent different types of claimants within a class or subclasses. . . ." and that, "[a]s in the Toyota litigation, '[t]here will be other, more appropriate opportunities to revisit the issue, such as the Court's consideration of the adequacy of counsel on motions for class certification.'"[6]

In a July 28, 2014 letter in connection with this Court's determination of leadership structure, Mr. Peller stated "I represent several consumers with claims against New GM relating to the ignition switch defect,"[7] and did not purport to represent non-ignition switch plaintiffs. Then, on August 4, 2014, Mr. Peller asserted that there was "an actual conflict of interest within the Plaintiff's group," but he was ***not*** talking about the supposed conflict arising from the brand-wide diminution claim. Instead, Mr. Peller posited a "conflict" between his plaintiffs who assert claims "that rest solely and exclusively on alleged breaches by New GM of independent, non-derivative duties," and the claims of others that asserted both "independent" and successor liability claims that might be stayed by the bankruptcy Sale Order.[8] Leaving to one side Judge Gerber's repeated findings that Mr. Peller actually alleged successor claims, this "conflict" argument is now moot since the SAC exclusively asserts claims based solely on New GM's own independent violations of federal and state law.

Later, in a January 2, 2015 filing, Mr. Peller again stressed that his complaints "explicitly disclaim[] any reliance on any derivative or successor liability of Old GM," and assert claims "solely and exclusively for breaches of independent, non-derivative duties New GM owned to GM."[9] Mr. Peller also criticized Lead Counsel for not including "successor liability claims on

---

[3] *See* MDL ECF No. 40 (Letter from Wolf Haldenstein Adler Freeman & Herz) (July 10, 2014).
[4] *Andrews v. General Motors, LLC,* No 5:14-cv-1239-ODW (C.D. Cal).
[5] MDL ECF No. 40, at 3.
[6] *See* MDL ECF No. 70, Order No. 50 at 2-3 n.1 (July 18, 2014).
[7] *See* MDL ECF No. 115 (July 28, 2014).
[8] *See* MDL ECF No. 195 at 304 (Aug. 4, 2014).
[9] MDL ECF No. 496 (January 2, 2015).

behalf of post-petition purchasers," for not asserting "claims under RICO" and for not having a plaintiff from the District of Columbia ("D.C.")[10]—arguments that are also now mooted by the inclusion of a well-pled RICO count and a D.C. plaintiff in the SAC.  Once again, Mr. Peller made no mention of the alleged brand-wide diminution conflict about which he now complains.

In Order No. 50, this Court specified, among other things, that the Peller Plaintiffs can (a) either (i) recover as a member of any class that might be certified or (ii) pursue claims if no class is certified or if they opt out of a class that is certified;[11] (b) have the right to challenge the applicability to them of any ruling made with respect to the SAC;[12] and (c) had the right to (i) comment on a draft of the SAC prior to the amendment deadline, and (ii) object to the SAC within 14 days after its filing.  Before the SAC was filed, Mr. Peller did request that Lead Counsel assert claims on behalf of separate subclasses for owners and lessors of vehicles with each of the 37 defects that led to recalls in 2014, but did *not* ground his request in the alleged conflict he now posits.  Lead Counsel chose not to allege scores of subclasses, as they believe that neither the facts nor the law support doing so.

**B.     Argument**

To be clear, Mr. Peller represents approximately 12 plaintiffs in connection with this MDL.[13]  While he objects that the SAC does not contain claims on behalf of subclasses of owners of each type of defective vehicle pled in the SAC, he neglects to point out that (i) most of the plaintiffs he represents have vehicles with the ignition switch defect, and his clients' vehicles have only 4 of the other 37 defects discussed in the SAC; (ii) his clients' interests are fully protected here through the operation of Rule 23 and this Court's Orders and (iii) the work of Plaintiffs' consulting expert shows brand-wide diminution.

### 1.     The ignition switch defect is unique and warrants its own subclass.

As noted above, Mr. Peller criticizes the SAC for not asserting separate subclasses for each of the dozens of defects discussed in the SAC.  But the ignition switch defect is unique: it caused a shocking number of deaths and serious injuries, and there is substantial evidence that New GM knew about and concealed this defect from the date of its inception.

Specifically, Mr. Peller asserts that "except for the particular auto parts involved, [the Peller Plaintiffs'] claims [concerning other defects] are factually identical" to the claims in the SAC on behalf of Plaintiffs owning vehicles with the ignition switch defect.[14]  That is false.  For good reason, the ignition switch defect shocked Congress, NHTSA and the public: that defect

---

[10] MDL ECF No. 51 at 8.
[11] *See* Order No. 50, MDL ECF No. 875 at 1-2.
[12] *Id.* at 8.
[13]  (1) Ishmael Sesay and (2) Joanne Yearwood (collectively, the "*Sesay Plaintiffs*"); (3) Lawrence Elliott, (4) Celestine Elliott, and (5) Bernice Summerville (collectively, the "*Elliott Plaintiffs*"); and (6) Sharon Bledsoe, (7) Cina Farmer, (8) Paul Fordham, (9) Momoh Kanu, (10) Tynesia Mitchell, (11) Dierra Thomas; and (12) James Tibbs (together with Lawrence and Celestine Elliott, the "*Bledsoe Plaintiffs*").
[14] Peller Obj. at 2.

has caused at least 121 deaths, and there is a wide body of evidence showing that New GM was aware of the defect from the very date of its inception. Judge Gerber recognized this by holding that owners of vehicles with defective ignition switches were deprived of due process, such that they alone are cleared from the Sale Order's injunction and may sue New GM for its own misconduct in connection with those vehicles. For good reason, then, the SAC alleges claims on behalf of subclasses of owners and lessors of vehicles with ignition switch defects.

While the other defects set forth in the SAC are serious, none have had as severe an adverse impact as the ignition switch defect. In the *Sesay* complaint, for example, Mr. Peller sets forth considerable detail about the ignition switch defect in his clients' vehicles—a 2007 Impala owned by the Sesays, and a 2010 Cobalt owned by Ms. Yearwood. The ignition switch defect is the ***only*** defect flagged in the Sesays' Impala. With respect to Ms. Yearwood's Cobalt, the complaint notes in passing that in addition to the ignition switch defect, the car also had an "ignition cylinder defect"—just like all the cars involved in the February and March 2014 ignition switch recalls—and a power steering defect.[15] Mr. Peller provides no further information about the ignition cylinder defect.[16] Unlike owners of vehicles with the ignition switch defect, owners of vehicles with other defects (since repaired) have suffered damages as a result of brand-wide diminution rather than as the result of their vehicles' defects.

In contrast to his current criticisms of the SAC, Mr. Peller adopts the "brand-wide diminution" theory from Lead Counsel's prior complaints (verbatim at times) by pleading (correctly) that the ignition switch defects and the rash of adverse publicity "forced [New GM] to disclose that it had been concealing a staggering and unprecedented number of known safety defects in GM-branded vehicles ever since its inception in 2009, and that other defects arose on its watch apparently due in large measure to GM's focus on cost-cutting over safety."[17] Mr. Peller goes on to list the same 35 defects listed by Lead Counsel in prior complaints.[18] Mr. Peller's own complaints underscore the uniqueness of the ignition switch defect, and the viability of the "brand-wide" diminution theory he now objects to as too ambitious.

The apparent proposal for dozens of subclasses presents needless complications and should not be implemented here in the absence of the actual conflicts subclassing is meant to address. *See In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 202 (3d Cir. 2005). Such balkanization creates rather than solves manageability problems. And in any event it is the Court, at the time of class certification, that decides and designates any subclasses then determined to be necessary and appropriate, and the SAC has no impact on this Court's discretion under Rule 23(c)(5). The facts simply don't show a conflict or support defect-by-defect subclasses at this time.

---

[15] First Amended Complaint in *Sesay*, ECF No. 275, ¶¶ 20-21.
[16] Mr. Peller's other complaint is the same in this regard. *See Bledsoe* Complaint (9/19/04), ¶¶ 40-83 (nine plaintiffs who own 8 vehicles, most with ignition switch/lock cylinder defects, one with power steering defects, one with a transmission shift cable defect, one with a brake light defect, and one with a power door switch defect). The *Bledsoe* Complaint includes Plaintiffs Celestine and Lawrence Elliot, and therefore apparently subsumes the *Elliot* Complaint.
[17] *Sesay* First Amended Complaint, ¶ 55; *compare Andrews* Complaint, ¶ 10 (identically worded).
[18] *Id.* at ¶ 56; *compare Andrews* Complaint, ¶ 10 (identically worded).

The Honorable Jesse M. Furman
July 10, 2015
Page 5

**2.    The work of Plaintiffs' consulting expert shows brand-wide diminution.**

While Mr. Peller claims that the Peller Plaintiffs "are advised that their recalled vehicles have declined in value to a distinctly greater degree than GM vehicles generally," *Id.* at 3, he provides no data to support this claim.  In contrast, Lead Counsel retained a consulting expert, and his work reaches a different conclusion:  that diminution is brand-wide.  SAC, ¶¶ 24, 977-981.  Mr. Peller is thus wrong to assert "causation will be easier to establish with respect to the diminished value of vehicles that are or were actually unsafe, compared with the more diffuse brand degradation that all GM vehicles may have suffered…" Peller Obj. at 3.   To the contrary, the factual record and the work of Lead Counsel's expert show brand-wide diminishment caused by the revelation of the ignition switch defect, the resultant parade of recalls, and the raft of adverse publicity.  That caused Lead Counsel to plead brand-wide diminution claims.

**3.    The Peller Plaintiffs' rights are fully protected by Rule 23 and this Court's Orders.**

Mr. Peller argues that there is a "risk[] that the proposed nationwide class of all owners of GM vehicles may not be certified . . . ."  Peller Obj. at 4.  But if no class is certified, the Peller Plaintiffs will suffer no prejudice, as they will remain free to assert any and all claims.  And if a Class is certified under Rule 23, the Peller Plaintiffs will be free to opt out if they believe they have unique claims that have not been certified. Such are the built-in efficiencies and protections of Rule 23, the MDL process, and this Court's Orders.  In either case, the Peller Plaintiffs can enjoy the benefits of the vast amount of work done by all Plaintiffs' counsel in this MDL.

As for Mr. Peller's requests for discovery into the other defects in his client's vehicles, that is already occurring as a result of this Court's Orders.  Phase I discovery has included all of the ignition switch defects in all his client's vehicles, as well as the power steering defect in Ms. Yearwood's 2010 Cobalt.  Phase II discovery covers four additional defects—(1) side airbag wiring harness; (2) transmission shift cable; (3) brake lights; and (4) seat belt tensioner—carefully chosen based on a review of all the recalls, taking into account the severity of the defect and the available evidence of New GM's awareness of the defect.  By the close of Phase II, discovery will therefore occur with respect to nearly *all* of the defects in the Peller Plaintiffs' vehicles—and additional defects may be covered in Phase III.  The current process is carefully crafted to efficiently and fairly protect the rights of *all* Class Members.

**C.    Conclusion**

For the reasons stated above, the Peller Plaintiffs' objections are without merit, and the SAC should stand as filed.

The Honorable Jesse M. Furman
July 10, 2015
Page 6

Respectfully submitted,

| Steve W. Berman | Elizabeth J. Cabraser | Robert C. Hilliard |
|---|---|---|
| **Hagens Berman Sobol Shapiro LLP** | **Lieff Cabraser Heimann & Bernstein, LLP** | **Hilliard Muñoz Gonzales L.L.P.** |
| 1918 Eighth Ave., Suite 3300 | 275 Battery Street 29th Floor | 719 S Shoreline Blvd, # 500 Corpus Christi, TX 78401 |
| Seattle, WA 98101 | San Francisco, CA 94111-3339 | |
| -and- | -and- | |
| 555 Fifth Avenue Suite 1700 | 250 Hudson Street 8th Floor | |
| New York, NY 10017 | New York, NY 10013-1413 | |

cc:     All Counsel of Record (via ECF)