


September 8, 2015

*Via CM/ECF*

The Honorable Jesse M. Furman
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 09/10/2015
```

Re:   *In re: General Motors LLC Ignition Switch Litigation*, 14-MD-2543 (JMF)

Dear Judge Furman:

Plaintiffs submit their position regarding the parties' dispute over the deposition of current New GM employee Courtland Kelley. The parties attempted in good faith to resolve this dispute but were unable to agree. As a more than 30-year employee of GM, Mr. Kelley has first-hand knowledge that is highly relevant to Plaintiffs' claims. Accordingly, Plaintiffs respectfully request an order compelling New GM to cooperate with Plaintiffs in scheduling Kelley's deposition.

### A.   Kelley's testimony is relevant to Plaintiffs' claims.

Kelley was formerly the head of a nationwide GM inspection program and the brand quality manager ("BQM") for the Cobalt's predecessor, the Cavalier.[1] In those roles, Kelley fought to bring safety-related defects affecting thousands of Chevrolet Trailblazers and other GM cars to his superiors' and the government's attention. After several years of internal resistance, Kelly eventually accused GM of not properly dealing with safety issues and threatened to notify the government if GM did not take action.[2] Although GM ultimately recalled those defective vehicles, GM retaliated against Kelley, stalling his career.[3]

Kelley's successor was his former subordinate Steven Oakley. When confronted with the ignition switch defect—vehicle stalls resulting from insufficient force required to turn off the ignition—Oakley initially thought "an inadvertent shut-off was a safety issue" but ultimately deferred to other engineers who said it was not.[4] According to the Valukas Report, Oakley "was

---

[1] *See* Ex. 1, GM-MDL2543-301697947 at 48.

[2] *Id.* at GM-MDL2543-301697951.

[3] *See* Ex. 2, GM-MDL2543-302741945 at 946 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮); *see also* Ex. 1 at 301697952 (Kelley transferred to the "GM version of purgatory").

[4] Ex. 3, Valukas Report excerpts at 76.

reluctant to push hard on safety issues because of his perception that his predecessor [Kelley] had been pushed out of the job for doing just that."[5]

GM's punishment of Kelley for speaking out about safety issues contributed to a corporate culture that helps explains why: (a) the ignition switch defect was characterized as a mere customer convenience issue, rather than the safety issue it was; and (b) GM employees did nothing about the ignition switch defect for more than a decade, even after becoming aware that scores of people were being hurt and killed as a result. Although Kelley's experience ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[6]

Moreover, Kelley ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[7] Had GM not removed Kelley from his position, GM would have had a BQM for the Cobalt who would identify and address safety concerns, even if it proved detrimental to his career. New GM actively prevented the earlier recall of a safety defect by replacing an engineer who took ▮▮▮▮▮▮▮▮▮▮ with one "reluctant to push hard on safety issues."

This evidence is highly relevant to Plaintiffs' claims, including, *inter alia*, whether New GM: (a) knew or should have known that the ignition switch was defective and presented the probability of harm to foreseeable users (but improperly characterized the defect as not involving safety issues due to a corporate culture that discouraged employees from addressing safety concerns);[8] (b) "valued cost-cutting over safety and took steps to ensure that its employees did not reveal known safety defects to regulators or consumers";[9] (c) failed to disclose or actively concealed the defect from Plaintiffs[10] by, *e.g.*, encouraging employees to stay silent about safety issues and/or removing Kelley from a position in which he would have been able to identify the ignition switch defect as a safety issue; and/or (d) deceptively promoted the safety of its vehicles while knowing that it punished employees for focusing on vehicle safety.[11]

This evidence is also relevant to Plaintiffs' request for punitive damages. By creating and sustaining a corporate culture that discouraged employees from elevating safety issues, New GM

---

[5] *Id.* at 93.

[6] *See* Ex. 2 at GM-MDL2543-302741946 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮) (emphasis added); *see also* Ex. 4, GM-MDL2543-100524642 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).

[7] Ex. 5, GM-MDL2543-100607221 at 224.

[8] *See, e.g., Scheuer v. General Motors, LLC*, 14-md-8176-JMF (Doc. No. 121) at ¶¶ 346-47 (claim for manufacturer's product liability); *id.* at ¶ 386 (claim for negligence, gross negligence and willful and wanton negligence).

[9] *Id.* at ¶ 361 (claim for manufacturer's product liability).

[10] *Id.* at ¶ 368 (claim for deceit).

[11] *Id.* at ¶ 402 (claim for unfair and deceptive trade practices).

deliberately engaged in willful, wanton and reckless disregard for the rights and safety of Plaintiffs.[12]

The relevance of Kelley's testimony is further supported by the fact that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓[13] and the Valukas Report addressed the significance of GM cultural resistance to raising safety concerns.[14] This Court previously ruled that Plaintiffs were "free to depose the witnesses whom the Jenner attorneys interviewed as part of the Valukas investigation."[15]

### B. New GM's arguments are meritless.

Plaintiffs anticipate that New GM will make a handful of meritless arguments. *First*, the mere fact that Kelley was not involved with the ignition switch defect does not render his testimony irrelevant. His testimony is relevant to GM's corporate culture and the fact that GM removed a safety-focused engineer from a position that would have had safety oversight over the Cobalt. Moreover, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ in GM's retaliation against Kelley were later fired by GM over the ignition switch defect.[16] *Second*, the fact that New GM is now taking the untenable position that it has no liability for punitive damages in post-sale personal injury cases, and that Plaintiffs may not reference events that occurred under Old GM, should not preclude Kelley's deposition. Those issues are undecided and will be addressed by Judge Gerber. In any event, Kelley's testimony does not relate solely to Old GM. Kelley remains with New GM today. Plaintiffs expect New GM to argue that any cultural problems that existed were confined to pre-bankruptcy GM. Kelley can speak to whether GM's culture changed as a result of the July 2009 sale order. To understand what New GM could have, but did not, rectify, it is important and relevant to understand the Old GM culture that executives brought with them, and employees feared. Moreover, in the face of media scrutiny regarding GM's treatment of Kelley after release of the Valukas Report, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓[17] New GM should be required to let Kelley "speak up" in sworn testimony to the jury. *Finally*, to the extent New GM argues that Kelley's testimony will not be admissible at trial that argument is properly made in a motion *in limine*. Because Kelley's testimony "appears reasonably calculated to lead to the discovery of admissible evidence,"[18] his deposition should proceed.

---

[12] *Id.* at ¶¶ 442-449.

[13] Ex. 5 at GM-MDL2543-100607225; *see also* Ex. 6 (▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓).

[14] Ex. 3, Valukas Report excerpts at 252-255.

[15] *In re: General Motors Ignition Switch Litig.*, 14-md-2543, Jan. 15, 2015 Opinion (Doc. No. 531) at 18.

[16] Ex. 5 at GM-MDL2543-100607225; *see also* Ex. 1 at GM-MDL2543-301697951-52 (fired attorney Ron Porter attended meeting where Kelley was told not to concern himself with safety issues).

[17] Ex. 2, GM-MDL2543-302741945.

[18] Fed. R. Civ. P. 26(b)(1); *see also In re Actos (Pioglitazone) Prods. Liab. Litig.*, No. 6:11-md-2299, 2014 WL 2872299, at *32 (June 23, 2014) (admitting evidence relating to argument that manufacturer's "corporate culture embrac[ed] attempts to conceal or remove mention of or to underplay expressed safety concerns").

                                  Respectfully,

/s/

| Steve W. Berman | Elizabeth J. Cabraser | Bob Hilliard |
|---|---|---|
| **Hagens Berman Sobol Shapiro LLP** | **Lieff Cabraser Heimann & Bernstein, LLP** | **Hilliard Muñoz Gonzales L.L.P.** |
| 1918 Eighth Ave. | 275 Battery Street | 719 S Shoreline Blvd |
| Suite 3300 | 29th Floor | Suite #500 |
| Seattle, WA  98101 | San Francisco, CA  94111-3339 | Corpus Christi, TX 78401 |
| -and- | -and- | |
| 555 Fifth Avenue | 250 Hudson Street | |
| Suite 1700 | 8th Floor | |
| New York, NY  10017 | New York, NY  10013-1413 | |

cc:  GM Defense Counsel

      Substantially for the reasons stated in Lead Counsel's letter, New GM's application for a protective order barring the deposition of Mr. Kelley is DENIED. The Court need not decide at this time whether Mr. Kelley's testimony would ultimately be admissible at trial; it is plainly relevant for purposes of discovery. New GM shall cooperate with Lead Counsel to schedule the deposition.

                              SO ORDERED.

                              *[signature]*

                              September 10, 2015