UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
IN RE:

GENERAL MOTORS LLC IGNITION SWITCH LITIGATION

*This Document Relates to All Actions*

14-MD-2543 (JMF)

Hon. Jesse M. Furman

------------------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF NEW GM'S MOTION *IN LIMINE* NO. 5 TO EXCLUDE EVIDENCE AND ARGUMENT RELATING TO (i) THE TOTAL NUMBER OF CASES FILED AGAINST NEW GM AND (ii) PRIOR INDIVIDUAL CASE SETTLEMENTS, NEGOTIATIONS, AND POTENTIAL SETTLEMENTS**

Defendant General Motors LLC ("New GM") moves *in limine* to exclude plaintiff from offering evidence, argument, or reference to evidence relating to: (1) individual settlements, negotiations and/or potential settlements between New GM and third parties related to other ignition switch personal injury claims and suits; and/or (2) the total number of ignition switch suits against New GM.  ***First***, any evidence of settlements and settlement offers is inadmissible under Federal Rule of Evidence 408.  ***Second***, such evidence should also be excluded under Federal Rules of Evidence 401 and 402 because it is irrelevant, and under Federal Rule of Evidence 403 because any probative value is outweighed by the danger of unfair prejudice and confusion of the issues.[1]

In further support of its motion, New GM states the following:

## BACKGROUND

**A.  Other Ignition Switch Personal Injury Lawsuits.**

As this Court is aware, this case is one of hundreds of actions transferred to MDL 2543 alleging a defect in the ignition switch of certain vehicles manufactured and sold by either

---

[1]  Although filed in the *Scheuer* action, New GM's Motion *in Limine* No. 5 applies globally to all bellwether and other personal injury complaints, the Second Amended Consolidated Complaint, and other economic loss actions.

General Motors Corporation ("Old GM") or New GM. In addition to the more than 230 such actions pending in the MDL, numerous other actions involving claims of an alleged ignition switch defect in GM model vehicles are pending in state courts nationwide. The hundreds of personal injury ignition switch suits involve several thousands of claimants.

**B.      Settlements Involving Other Ignition Switch Personal Injury Claims and Lawsuits.**

Plaintiff's Second Amended Complaint includes allegations relating to confidential settlements in a number of individual personal injury ignition switch claims and lawsuits, including:

- "For example, in the course of settling the claims involving a Cobalt in 2010, Defendant New GM and its outside litigation counsel, King & Spalding, became aware that the failure of the airbags resulted from the unintended movement of the ignition to the 'accessory' position. Armed with this knowledge, Defendant New GM chose to settle the case, and continue to cover up the ignition switch defect and its deadly consequences rather than report the defect to NHTSA and institute an immediate recall, as it was plainly required to do."[2]

- "During Old GM's investigation, it learned that the ignition switch in Amber's Cobalt was in the 'accessory' or 'off' position at the time of the collision. Upon information and belief, Old GM subsequently entered into a confidential settlement agreement with Amber's mother."[3]

- "Defendant New GM received notice of this incident, opened a file, and referred to it as the 'Chansuthus' incident, and knew the accident was caused by the ignition switch defect. When a lawsuit was filed over the Chansuthus incident, Defendant New GM chose to settle it confidentially and continue to conceal the defect and its horrible consequences from NHTSA and the public."[4]

- "There is significant evidence that multiple in-house attorneys also knew of and understood the ignition switch defect. These attorneys, including Michael Milliken, negotiated settlement agreements with families whose loved ones had been killed and/or injured while operating a Defective Ignition Switch Vehicle."[5]

---

[2] Second Amended Complaint, *Scheuer v. Gen. Motors LLC*, 1:14-cv-08176 (S.D.N.Y. Sept. 23, 2015) (Docket No. 138) ("2d Am. Compl.") at ¶ 56.

[3] *Id.* ¶ 164.

[4] *Id.* ¶ 199.

[5] *Id.* ¶ 211; *see also id.* ¶¶ 319-20.

Plaintiff's counsel has also requested New GM to admit a number of statements included in the Statement of Facts attached to the Deferred Prosecution Agreement between the United States and New GM—which relate to settlements and offers of settlement:[6]

- "This crash sensing 'anomaly' risked the prospect of punitive damages. Three months later, GM settled the Tennessee Crash case."[7]

- "GM's outside counsel in the Georgia Crash case urged GM in-house lawyers to settle it: [T]here is little doubt that a jury here will find that the ignition switch used on [the Georgia Crash car] was defective and unreasonably dangerous, and that it did not meet GM's own torque specifications. In addition, the [engineering inquiry documents about the Defective Switch from 2004 and 2005] and the on-going FPE investigation have enabled plaintiffs' counsel to develop a record from which he can compellingly argue that GM has known about this safety defect from the time the first 2005 Cobalts rolled off the assembly line and essentially has done nothing to correct the problem for the last nine years.'"[8]

- "GM followed its outside counsel's advice and settled the Georgia Crash case at the end of August 2013, agreeing to pay $5 million."[9]

- "On July 23, 2013, one day after GM's outside counsel had advised GM to settle the Georgia Crash case and noted that plaintiffs' counsel could make a 'compelling' argument that GM 'essentially has done nothing to correct' the Defective Switch 'for the last nine years,' the GM Safety Director received an email from NHTSA's Director of Defects Investigation accusing GM of being 'slow to communicate' and 'slow to act' in the face of safety defects, including defects unrelated to the Defective Switch (about which NHTSA remained unaware) but related to non-deployment of airbags."[10]

---

[6] New GM fully stands by the Deferred Prosecution Agreement between New GM and the United States Attorney for the Southern District of New York, dated September 16, 2015, and the Statement of Facts associated with that Agreement. Nothing in this filing is intended to contradict the Deferred Prosecution Agreement or associated materials. Rather, this motion addresses legal arguments regarding the admissibility of certain evidence.

[7] Plaintiff's First Set of Request for Admissions to General Motors LLC, Sept. 29, 2015, at RFA No. 58.

[8] *Id.* at RFA No. 91.

[9] *Id.* at RFA Nos. 92-93.

[10] *Id.* at RFA No. 95.

**NEW GM'S ARGUMENT**

**I.   THE COURT SHOULD EXCLUDE EVIDENCE OF OTHER INDIVIDUAL SETTLEMENTS, NEGOTIATIONS, AND/OR POTENTIAL SETTLEMENTS RELATED TO OTHER IGNITION SWITCH PERSONAL INJURY CLAIMS AND SUITS AS IRRELEVANT AND UNFAIRLY PREJUDICIAL.**

Evidence of settlement and negotiations is inadmissible pursuant to Federal Rule of Evidence 408, under which evidence of "furnishing or offering or promising to furnish . . . a valuable consideration in compromising or attempting to compromise the claim" is inadmissible "when offered to prove liability for a claim." Fed. R. Evid. 408. The purpose of the rule is to promote compromise and settlement of disputes. *See* Fed. R. Evid. 408 advisory committee's note ("[E]xclusion may be based on . . . promotion of the public policy favoring the compromise and settlement of disputes."); *see also Wier v. Fed. Ins. Co.*, 811 F.2d 1387, 1395 (10th Cir. 1987) ("The prejudicial effect of allowing a jury to hear of the circumstances surrounding the settlement of a claim was one of the concerns that motivated the drafters of the Federal Rules of Evidence to absolutely prohibit the use of evidence of a settlement to prove liability or the amount of a claim."); *Smith v. New Line Cinema*, No. 03 CIV. 5274 (DC), 2004 WL 2049232, at *5 (S.D.N.Y. Sept. 13, 2004) (noting that "[s]ettlement discussions are inadmissible to show fault under Fed. R. Evid. 408 . . . immaterial and potentially prejudicial") (*citing Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 38 (S.D.N.Y. 1992)); *Young v. Verson Allsteel Press Co.*, 539 F. Supp. 193, 196 (E.D. Pa. 1982) (noting that the policy underlying Rule 408 is to encourage settlements).

In addition to being inadmissible under Federal Rule of Evidence 408, evidence of settlement or offers to settle is inadmissible under Federal Rules of Evidence 401 and 402. Under the Federal Rule of Evidence 402, "[i]rrelevant evidence is not admissible." Fed. R. Evid. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it

would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.  Evidence relating to prior settlements or settlement offers is unnecessary to help the jury resolve any of the disputed issues in this case.  *See Hart v. RCI Hospitality Holdings, Inc.*, 90 F. Supp. 3d 250, 287 (S.D.N.Y. 2015) (noting that "the entire subject of settlement is, categorically, off limits at trial").  Here, whether an alleged defect caused Plaintiff's injuries hinges on unique, plaintiff-specific facts. *See, e.g.*, *Marsee v. U.S. Tobacco Co.*, 866 F.2d 319, 322 (10th Cir. 1989) (upholding trial court's decision to exclude evidence of another patient's injuries because "[t]he fact that one other individual using [the product] also developed oral cancer similar to that suffered by [plaintiff] constitutes very little, if any, proof that [the product] caused [plaintiffs'] cancer").

  Even if marginally relevant, which it is not, such settlement evidence should be excluded pursuant to Federal Rule of Evidence 403, because its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury.  Indeed, plaintiff's allegations about the other settlements demonstrate that his purpose for offering such evidence is to prejudice the jury against New GM.  For example, plaintiff alleges New GM "chose to settle [one] case, and continue to cover up the ignition switch defect . . . ." 2d. Am. Compl. ¶ 56.  Likewise, plaintiff alleges that "New GM chose to settle [another lawsuit] confidentially and continue to conceal the defect and its horrible consequences from NHTSA and the public."  *Id.* ¶ 199.  And he alleges that New GM's attorneys "negotiated settlement agreements with families whose loved ones had been killed and/or injured while operating a Defective Ignition Switch Vehicle.  In spite of this knowledge, Defendant New GM's attorneys concealed their knowledge and neglected to question whether the Defective Ignition Switch Vehicles should be recalled."  *Id.* ¶ 211.  Plaintiff also quotes from a New York Times article,

5

which asserted that New GM "pushed back against families in at least two of the accidents, and reached settlements that required the victims to keep the discussions confidential." *Id.* ¶¶ 319-20; *see also* New GM's Answer to Plaintiff's First Amended Complaint, *Scheuer v. Gen. Motors LLC*, 1:14-cv-08176 (S.D.N.Y. Sept. 23, 2015) (Docket No. 131) at ¶¶ 56, 199, 211, 319-20. The unfair prejudice to New GM from evidence of past settlement offers, negotiations, and settlements of completely unrelated personal injury ignition switch claims and lawsuits would far outweigh any limited probative value.

Admitting evidence of other settlements would also create a significant risk of confusion and delay. The jury could easily misunderstand the fact of New GM's settlement offers and settlements as an admission of liability. Such evidence would also open the door to (1) evidence and argument about New GM's motivations in seeking to settle other, unrelated ignition switch claims and actions; and (2) evidence and argument about the economics of each settlement. Such evidence and argument would cause enormous confusion, undue delay, as well as unfair prejudice to New GM.[11] *See* Fed. R. Evid. 403.[12] Indeed, permitting plaintiff to introduce evidence relating to other settlements would invite a "trial within a trial," as the parties sought to help the jury decode the meaning of New GM's prior settlement offers. *See, e.g., Beastie Boys v. Monster Energy Co.*, 983 F. Supp. 2d 354, 358-59 (S.D.N.Y. 2014) (collecting cases as to the "trial within a trial" that Rule 403 seeks to avoid).

---

[11] Plaintiff may proffer settlement evidence to show "notice." However, the issue of notice is not in dispute in this case. Plaintiff's accident occurred on May 28, 2014, more than three months after New GM announced the recall of Saturn Ions and other vehicles with ignition switch defects on February 24, 2014.

[12] Exclusion under Rule of Evidence 403 is appropriate even assuming arguendo that certain facts relating to an incident are determined to be substantially similar to Mr. Scheuer's and otherwise admissible, which New GM disputes. *See, e.g.*, *Williams v. Remington Arms Co.,* No. 3:05-CV-1383-D, 2008 WL 222496, at *10 (N.D. Tex. Jan. 28, 2008) (finding that even if the plaintiff persuaded the court that the "evidence of the filing of a lawsuit is sufficiently similar to a customer complaint that it should be admitted to the same extent, proof of verdicts and settlements is altogether different in its potential for unfair prejudice, confusion of the issues, misleading the jury, or by considerations of the waste of time involved in re-litigating those cases in the context of this lawsuit.").

Accordingly, New GM requests that this Court exclude evidence of prior settlement offers, negotiations, and settlements under Federal Rules of Evidence 401, 402, 403, and 408.[13]

## II. THE COURT SHOULD EXCLUDE EVIDENCE RELATING TO THE TOTAL NUMBER OF IGNITION SWITCH PERSONAL INJURY CASES AGAINST NEW GM BECAUSE IT IS IRRELEVANT AND HIGHLY PREJUDICIAL.

Plaintiffs may also seek to offer evidence of the number of ignition switch cases filed against New GM. Such evidence should also be excluded pursuant to Federal Rules of Evidence 401-403. As with evidence of settlements or settlement offers, evidence of the total number number of ignition switch cases is irrelevant because it is not "of consequence in determining the action" and does not make "more or less probable" any fact that is "of consequence in determining the action." Fed. R. Evid. 402.

Moreover, any minimal probative value of such evidence is outweighed by the risk of confusion and unfair prejudice, including because such evidence would invite the jury to infer that the number of other claims makes plaintiff's claim more valid. *See* Fed. R. Evid. 403; *see also Compaq Computer Corp. v. Ergonome Inc.*, 387 F.3d 403, 408-09 (5th Cir. 2004) (holding that, where plaintiff's true reason for seeking to introduce evidence of past lawsuits was to paint the defendant as a "bad" company, the district court did not abuse its discretion by excluding such evidence due to its prejudicial and inflammatory nature and its tendency to confuse the jury with tangential litigation); *Yellow Bayou Plantation, Inc. v. Shell Chem., Inc.*, 491 F.2d 1239, 1242-43 (5th Cir. 1974) (upholding district court's exclusion of list of prior lawsuits and complaints against defendant because of its "faint probative value" and the "high potential for unfair prejudice"); *United States v. Kahale*, 789 F. Supp. 2d 359, 386 (E.D.N.Y. 2009)

---

[13] In September 2015, New GM entered into a "Memorandum of Understanding" with approximately 1,380 plaintiffs who had filed Ignition Switch Actions, whereby those plaintiffs may be able to participate in a settlement with New GM. (*See* 9/17/2015 joint letter to the Court, Docket No. 1368.) All evidence regarding this settlement should likewise be excluded.

(excluding evidence that would lead to multiple "mini-trials" within trials and noting that such evidence would "necessarily result in delay, confusion of the issues, and may mislead the jury to make a determination of guilt based on propensity").

## CONCLUSION

For each of the foregoing reasons, New GM respectfully requests that the Court enter an order *in limine* precluding plaintiff from introducing evidence or argument regarding: (1) individual settlements (including the recent settlement involving over 1,380 plaintiffs), negotiations, and/or potential settlements between New GM and third parties related to other ignition switch personal injury claims and suits; and (2) the total number of ignition switch suits against New GM.

Dated: October 30, 2015
Respectfully submitted,

 */s/ Richard C. Godfrey, P.C.*_____

Richard C. Godfrey, P.C.
Andrew B. Bloomer, P.C.
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654-3406
Phone: 312-862-2000
Fax: 312-862-2200
andrew.bloomer@kirkland.com
richard.godfrey@kirkland.com

Attorneys for Defendant General Motors LLC

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2015, I electronically filed the foregoing Motion using the CM/ECF system which will serve notification of such filing to the email of all counsel of record in this action.

By: */s/ Andrew B. Bloomer*_____
Andrew B. Bloomer, P.C.