

November 3, 2015

*Via CM/ECF*

The Honorable Jesse M. Furman
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

   Re: *In re: General Motors LLC Ignition Switch Litigation*, 14-MD-2543 (JMF)

Dear Judge Furman:

  Pursuant to the Court's order dated October 23, 2015 (Docket No. 1548), Plaintiffs address the impact of New GM's September 16, 2015 Deferred Prosecution Agreement ("DPA")[1] on the issues raised in Plaintiffs' Motion to Compel Documents from New GM and King & Spalding Based on the Crime-Fraud Exception ("Motion"). The criminal charges and New GM's admissions—many of which directly contradict arguments made by New GM in its prior briefing—definitively establish probable cause to believe that New GM committed crime-fraud and used privileged material in furtherance thereof. New GM has repudiated its prior position that "[i]ts lawyers engaged in no wrongful criminal or fraudulent conduct. They furthered no crime or fraud."[2] New GM's remaining argument, that Plaintiffs failed to establish probable cause to believe that the material at issue was used to further its admitted fraud, does not withstand scrutiny.

  **A. The Department of Justice charged New GM with intentionally concealing the ignition switch safety defect from NHTSA and the public.**

  Pursuant to the DPA, the Office of the United States Attorney for the Southern District of New York filed an Information charging New GM with a scheme to conceal material facts from a government regulator in violation of 18 U.S.C. §§ 1001 and 2.[3] The U.S. Attorney charged that, *inter alia*: (1) "[f]rom in or about the spring of 2012 through in or about February 2014, GM, through its agents and employees, concealed a potentially deadly safety defect from NHTSA and the public" (DPA Ex. B ¶ 4); (2) "[w]hen the fact that the Defective Switch could cause airbag non-deployment - - and therefore undeniably presented a *safety* defect - - became plain no later than in or about the spring of 2012 . . . GM concealed the defect from NHTSA and the public, taking the matter 'offline,' outside the normal recall process, so that the Company could buy time to package, present, explain and manage the issue . . . [because it] [f]ear[ed] an

---

[1] The DPA is attached as Ex. 1.
[2] *See* Redline of New GM's Amended Opposition to Plaintiffs' Motion at 5.
[3] The U.S. Attorney also charged GM with wire fraud in violation of 18 U.S.C. §§ 1343 and 2.

adverse impact on the Company's business . . . ." (*id*. at ¶ 7) (emphasis in orginal); (3) "[f]rom in or about the spring of 2012 through in or about February 2014, GM . . . willfully and knowingly did falsify, conceal, and cover up by trick, scheme and device material facts, and made materially false, fictitious, and fraudulent statements and representations, to wit, GM engaged in a scheme to conceal from its federal U.S. regulator, NHTSA, a potentially deadly safety defect that GM was required to disclose within five business days of discovery thereof" (*id*. at ¶ 9).

New GM also "truthfully admitted" 115 facts contained in the Statement of Facts attached as Exhibit C to the DPA. DPA ¶ 13.

### B. There is probable cause to believe that New GM committed a crime-fraud by concealing the ignition switch safety defect.

After the DPA, it is beyond dispute that there exists "a factual basis for a showing of probable cause to believe that a fraud or crime has been committed . . . ." *U.S. v. Jacobs*, 117 F.3d 82, 87 (2d Cir. 1997). The U.S. Attorney found probable cause[4] to criminally charge New GM with intentionally concealing a potentially deadly safety defect from NHTSA and the public. Plaintiffs here allege the same crime-fraud.[5] And New GM has now admitted what Plaintiffs argued from the beginning – that New GM intentionally misled NHTSA and consumers and/or delayed the recall despite years-long knowledge of the ignition switch safety defect.[6]

New GM's DPA admissions starkly contradict its prior arguments in opposition to Plaintiffs' Motion on this point[7] and vindicate Plaintiffs' positions. For example, New GM argued vigorously before the DPA that its conduct was not intentional because its lawyers were not aware of the ignition switch safety defect long before the 2014 recalls.[8] New GM relied

---

[4] *See* Offices of the United States Attorneys, U.S. Attorneys' Manual § 9-27.200 – Initiating and Declining Prosecution – Probable Cause Requirement.
[5] *Compare* Plaintiffs' Memorandum in Support of Motion ("Pl. Br.") at 30 ("New GM's admitted concealment of the ignition switch defect—despite knowing about the safety defect for years before the delayed recall—constitutes a 'crime' or 'fraud.'"); Reply Memorandum in Support of Plaintiffs' Motion ("Reply") at 1 (New GM intentionally concealed the ignition switch defect "from regulators, car owners and the public alike"); *id*. at 3 ("New GM committed a crime-fraud by intentionally concealing a known safety defect") *with* DPA Ex. B ¶¶ 4, 7, 9.
[6] *See* DPA Ex. C ¶ 2 ("GM further affirmatively misled consumers about the safety of GM cars afflicted by the defect"); *id*. ¶ 3 ("from in or about the spring of 2012 through in or about February 2014, GM failed to disclose a deadly safety defect to its U.S. regulator [NHTSA]. It also falsely represented to consumers that vehicles containing the defect posed no safety concern."); *id*. ¶ 7 ("From approximately the spring of 2012, certain GM personnel knew that the Defective Switch presented a safety defect because it could cause airbag non-deployment associated with death and serious injury."); *id*. ¶ 9 ("Inside GM, certain personnel responsible for shepherding safety defects through GM's internal recall process delayed this recall until GM could fully package, present, explain, and handle the deadly problem, taking affirmative steps to keep the Defective Switch matter outside the normal process."); *id*. ¶ 78 ("The PI Investigator, the PI Senior Manager, the GM Safety Attorney, the GM Safety Director" delayed the recall "to develop the optimal remedy for the defect condition and set with precision the scope of the anticipated recall."); *id*. ¶¶ 82-90 (GM further delayed the recall after learning of the 2006 ignition switch change); *id*. ¶¶ 100-107 (GM further delayed the recall for three months between November 2013 and January 2014); and *id*. ¶ 115 (senior GM executives delayed reporting the ignition switch safety defect by approximately 20 months).
[7] *See, e.g.*, Plaintiffs' Oct. 9, 2015 letter to New GM, attached as Ex. 2.
[8] *See, e.g.*, General Motors LLC's Surreply in Opposition to Plaintiffs' Motion to Compel Production of Documents from New GM and King & Spalding Based on the Crime-Fraud Exception (Docket No. 1339) ("GM Surreply") at 5 ("New GM Lawyers Did Not Conceal A 'Known' Safety Defect"); *id*. ("Plaintiffs' contention that New GM lawyers

specifically on the deposition testimony of its in-house lawyers Jaclyn Palmer and William Kemp.[9] Now, however, New GM "truthfully admits" that its personnel, including but not limited to Kemp and Palmer, were fully aware of the ignition switch safety defect by no later than spring 2012 – *at least two years before the recall*.[10]

In addition, New GM previously argued that the case evaluation letters do not indicate that New GM concealed the defect from NHTSA or the public because, *inter alia*, engineers, not lawyers, were responsible for recall decision-making.[11] Now, however, New GM "truthfully admits" that (a) New GM lawyers, including Kemp, were well aware of New GM's safety defect reporting requirements and essential to its recall decision-making process;[12] and (b) Kemp, among others, anticipated the need for a recall by no later than summer 2012.[13]

New GM has admitted crime-fraud; probable cause is established.

**C. There is probable cause to believe that New GM intended privileged material to further the concealment of the ignition switch safety defect.**

The DPA similarly bolsters Plaintiffs' argument that the privileged material that is the subject of Plaintiffs' Motion[14] "was intended in some way to facilitate or conceal"[15] New GM's admitted concealment of the ignition switch safety defect. New GM admits that: (a) Palmer and Kemp, among others, understood by no later than spring 2012 that the defective ignition switch was the cause of airbag non-deployment in the many incidents involving deaths and serious injuries[16] (b) its lawyers, including Kemp, were fully aware of New GM's recall obligations;[17] (c) Kemp, among others, anticipated the need for a recall by summer 2012;[18] and (d) Kemp, among others, intentionally delayed the recall to put a better public face on the recall.[19]

---

'knew years before the February 2014 recall that the ignition switch defect existed in model year 2005-07 Cobalts,' is also based on speculation, mischaracterizes the record, and ignores sworn testimony to the contrary."); *id*. ("New GM lawyers have testified that there was not a known ignition switch safety defect years before 2014").

[9] *See* GM Surreply at 6 ("And after ignition torque was proposed as an alternative explanation in 2012, Ms. Palmer explained that the torque issue was merely considered one 'possibility,' not a 'definitive reason,' for the airbag non-deployments."); *id*. at 6, n. 13 (citing Kemp's testimony that: "In August of 2013, General Motors had not made a determination that there existed a defect relating to motor vehicle safety.").

[10] *See, e.g.*, DPA Ex. C ¶¶ 64-78, 115. Although New GM has admitted that it had full knowledge of the ignition switch defect by spring 2012, New GM and K&S were fully aware that there was "clear evidence of a defect" by November 2010. Pl. Br. at 6-7; Reply at 6-8.

[11] *See generally* GM Surreply at 4-5; *see also id*. at 5 (former General Counsel Michael Millikin testified during his deposition that it is the engineering organization's "decision to make as to whether or not there is a defect," and "whether that defect is such that it would require a recall. That's an engineering decision.").

[12] DPA Ex. C ¶¶ 15-17, 26, 278, 107; *see also* Reply at 13-14 (describing how "each of the New GM and K&S lawyers working on, or with knowledge of, the K&S Cases was fully aware of New GM's Safety Act obligation to recall vehicles containing a safety-related defect").

[13] DPA Ex. C ¶ 78.

[14] Reply at 32.

[15] *In re Richard Roe, Inc.*, 68 F.3d 38, 40 (2d Cir. 1995).

[16] *See, e.g.*, DPA Ex. C ¶¶ 64-78, 115.

[17] *Id*. at ¶¶ 15-17, 26, 78, 107.

[18] *Id*. at ¶ 78.

[19] *Id*.; *see also id*. at ¶¶ 82-90, 107, 115.

3

Despite this admitted knowledge, New GM's lawyers, *including Palmer and Kemp*,[20] worked with K&S and other outside counsel to sweep defect-related claims under the rug to prevent crash victims from obtaining evidence that New GM had known about the defect for years but took no action. Pl. Br. at 32-33; Reply at 21. In other words, the *very same lawyers* who had knowledge of the ignition switch safety defect and the need for an ignition switch defect recall were the lawyers settling defect-related claims to avoid the punitive damages that would likely result when consumers who were entitled to notice of the ignition switch safety defect found out that New GM had been concealing its knowledge of the defect for years. By settling defect-related claims in order to prevent claimants from learning that New GM had been concealing a known safety defect for years, New GM used its lawyers' communications and work product to "facilitate or conceal"[21] its crime-fraud. Pl. Br. at 32-33; Reply at 21. Plaintiffs have clearly established probable cause to believe that settlements undertaken to conceal the fact that New GM had been concealing a safety defect were intended to further the concealment of a safety defect.

### D. There is probable cause to believe that New GM committed a crime-fraud by engaging in *Melton* litigation misconduct.

Plaintiffs argue in their Motion that New GM knew before its January-February 2013 representations in *Melton* that the defective ignition switch explained airbag non-deployment in the long list of non-deployment incidents that were, accordingly, responsive to the Meltons' discovery requests. *See* Pl. Br. at 14-16; Reply at 23-25. Now, New GM has admitted that: (a) its lawyers knew by spring 2012—eight to nine months *before* the Melton representations—that the condition identified in the TSB was causing both non-deployment and power loss;[22] and (b) the crash at issue in *Melton*, just like the many other incidents discussed in the DPA, was a "deadly consequence" of the defective switch.[23] Accordingly, New GM's lawyers plainly knew that their representations that New GM had no responsive documents and information about other incidents related to the TSB were undoubtedly false and designed to further conceal the fact that New GM had known about, but concealed, the defect for years – a clear crime-fraud.

New GM's DPA admissions also bolster Plaintiffs' argument that New GM and K&S hid the existence of part change documents. In June 2013, New GM refused to produce documents regarding its investigation into the part change, telling the Meltons that it had not authorized a part change. Pl. Br. at 23. Yet now New GM admits that by May 2013 it knew that the part had changed and "had an explanation for why the defect condition did not appear to affect cars built after the middle of 2006."[24] Despite such admitted knowledge, New GM and K&S purposefully played dumb to prevent the Meltons from obtaining evidence proving that New GM had changed the ignition switch to remedy the design defect – a clear crime-fraud.

---

[20] *See* Reply at 11 (Palmer was the staff attorney responsible for at least twelve defect-related claims, including *Sullivan*, *Lambert*, and *Preuss*, which were settled after spring 2012); *id*. (Kemp was personally involved in the decisions to settle *Chansuthus* and *Melton*, which occurred after spring 2012); *id.* at 15 (discussing the number of defect-related settlements after spring 2012, including K&S Cases *Sullivan* and *Melton*).
[21] *In re Richard Roe, Inc.*, 68 F.3d 3 at 40.
[22] *See, e.g.*, DPA Ex. C ¶¶ 44, 78, 115.
[23] DPA Ex. C ¶ 55 (*Melton* crash included among incidents demonstrating the defective switch's "deadly consequences").
[24] *Id*. at ¶¶ 88-89.

### E. New GM's remaining arguments fail to defeat Plaintiffs' probable cause showing.

In its amended briefing, New GM asserts only that it did not intend to further its admitted crime-fraud through the settlement of defect-related claims because the case evaluations do not explicitly say that the lawyers were trying to avoid disclosure to NHTSA or delay a recall.[25] This argument ignores that New GM's crime-fraud involved its intentional concealment of the ignition switch safety defect from both NHTSA *and the public*. Plaintiffs have presented abundant evidence of New GM's intent to use the settlements to facilitate the continued concealment from the public, including crash victims, of the both the defect and the fact that New GM had known about it for years. And though the case evaluations may not explicitly discuss hiding the defect from NHTSA, there remains a "reasonable basis to suspect"[26] that New GM intended its settlements to do just that – particularly in light of New GM's admissions that its counsel: (a) acted with awareness of both the ignition switch safety defect and its recall obligations; and (b) intentionally delayed the recall between spring 2012 and February 2014—during which time New GM lawyers continued to quietly settle cases—in an attempt to minimize harm to the corporation. New GM urges this Court to adopt a "smoking gun" standard that is not the law.

In addition, in light of its DPA admissions, New GM has similarly abandoned its claim that New GM's discovery conduct in *Melton* does not constitute a crime-fraud, arguing only that its discovery efforts in *Melton* were not intended to further that crime-fraud.[27] New GM, however, has no argument as to why privileged communications between New GM and K&S or work product *about the fraudulent discovery responses* were not in furtherance of its crime-fraud; it merely repackages its prior arguments that no crime-fraud took place because its discovery conduct was reasonable, if imperfect.[28] But Plaintiffs established and New GM has conceded a crime-fraud – which necessarily means that its conduct was intentional, and forecloses its argument that is conduct was somehow reasonable.

### F. Conclusion

For the reasons listed above and in Plaintiffs' prior briefing, Plaintiffs respectfully request that the Court grant the Motion.

---

[25] *See* Redline of New GM's Amended Opposition to Plaintiffs' Motion at Table of Contents (deleting prior sections arguing that Plaintiffs failed to establish that New GM or K&S committed a crime or fraud and that the alleged wrongdoings are not crimes, fraud or intentional torts); *id*. at 3 (deleting argument that the challenged litigation activity does not constitute evidence of a crime or fraud); *see also id*. at 18-19. New GM's amended brief recasts Plaintiffs' position as a "NHTSA Theory" (*id*. at 3) to avoid the inconvenient fact that the alleged crime-fraud includes New GM's concealment of the defect from the public in addition to NHTSA.

[26] *Jacobs*, 117 F.3d at 87.

[27] *See* Redline of New GM's Amended Opposition Brief at 4 (deleting argument that "the conduct at most reflects zealous advocacy or judgment calls, not crimes or frauds"); *id*. at 23 (eliminating prior argument that Melton discovery efforts were not "fraudulent, nor were they part of a criminal scheme or crime").

[28] *Id*. at 23.

Respectfully,

/s/

| Steve W. Berman | Elizabeth J. Cabraser | Bob Hilliard |
|---|---|---|
| **Hagens Berman Sobol Shapiro LLP** | **Lieff Cabraser Heimann & Bernstein, LLP** | **Hilliard Muñoz Gonzales L.L.P.** |
| 1918 Eighth Ave. | 275 Battery Street | 719 S Shoreline Blvd |
| Suite 3300 | 29th Floor | Suite #500 |
| Seattle, WA  98101 | San Francisco, CA  94111-3339 | Corpus Christi, TX 78401 |
| -and- | -and- | |
| 555 Fifth Avenue | 250 Hudson Street | |
| Suite 1700 | 8th Floor | |
| New York, NY 10017 | New York, NY  10013-1413 | |

cc:  GM Defense Counsel