# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>GENERAL MOTORS LLC IGNITION SWITCH LITIGATION | No. 14-MD-2543 (JMF) |

**MEMORANDUM OF AMICUS CURIAE WILMINGTON TRUST COMPANY
IN OPPOSITION TO NEW GM'S MOTION
FOR PARTIAL SUMMARY JUDGMENT ON SUCCESSOR LIABILITY**

Wilmington Trust Company, as trustee for and administrator of the Motors Liquidation Company General Unsecured Creditors' Trust (the "GUC Trust"), hereby submits this memorandum of law, as amicus curiae, for the limited purposes of correcting the record that it is not the successor to General Motors Corporation ("Old GM") or Motors Liquidation Company ("MLC"), and setting forth a position that neither party here has an interest in advocating—that Plaintiffs cannot file late proofs of claim and recover against the GUC Trust.

**INTEREST OF AMICUS CURIAE**

The GUC Trust has a strong interest in ensuring that the Court has a complete and accurate understanding of the nature of the GUC Trust and its beneficiaries when deciding New GM's motion for partial summary judgment on successor liability. In particular, the Court should know that, contrary to New GM's assertions, the GUC Trust is *not* the successor to Old GM or MLC.

In June 2009, Old GM and its related entities (collectively, the "Debtors") filed for bankruptcy under chapter 11 of the Bankruptcy Code. Shortly thereafter, the Debtors sold substantially all of their assets—including Old GM's real property, inventory of vehicles and spare parts, and books and records—to New GM in exchange for, among other things,

approximately $45 billion in publicly traded New GM common stock and warrants to purchase additional New GM stock.  *See In re General Motors Corp.*, 407 B.R. 463, 482 (Bankr. S.D.N.Y. 2009).  Shortly thereafter, Old GM changed its name to MLC, and dissolved on December 15, 2011.  *See* New GM Statement of Undisputed Material Facts, Dkt. 3517 ¶¶ 46-47.  The GUC Trust was formed on March 31, 2011, pursuant to the Confirmation Order that confirmed the Debtors' Plan of liquidation.[1]

The GUC Trust is not the successor to Old GM or MLC.  Rather, the GUC Trust's primary role is to resolve disputed claims, and to distribute New GM securities (or the proceeds thereof) to GUC Trust beneficiaries.  The GUC Trust Agreement (Karlan Decl. Ex. C), which is incorporated by reference into the Plan, defines the GUC Trust beneficiaries to include holders of disputed claims as of the effective date of the bankruptcy that were later allowed, as well as holders of allowed claims, but does not include the holders of claims filed *after* the effective date.  *See* GUC Trust Agreement ¶ F; *In re Motors Liquidation Co.*, 529 B.R. 510, 536 (Bankr. S.D.N.Y. 2015), *aff'd, vacated, and rev'd in part on other grounds sub nom. Elliott v. General Motors LLC*, 829 F.3d 135 (2d Cir. 2016).  As of the date of this filing, no plaintiff has sought permission to file a late proof of claim in connection with the ignition switch or any other defect.  Therefore, no plaintiff is a GUC Trust beneficiary and no plaintiff is entitled to any GUC Trust assets.

---

[1]  Relevant excerpts of the Confirmation Order and Plan are attached as Exhibits A and B, respectively, to the Declaration of Mitchell A. Karlan ("Karlan Decl."), which accompanies this brief.

2

## ARGUMENT

### I. The GUC Trust Is Not A Successor To Old GM Or MLC

In its brief and accompanying 56.1 statement, New GM repeatedly characterizes the GUC Trust as the successor to Old GM and MLC. *See, e.g.*, Dkt. 3520 at 2, 5, 6-7, 12, 14; Dkt. 3517 ¶¶ 45, 48, 49. But the Plan, Confirmation Order, and GUC Trust Agreement make clear that the GUC Trust is not Old GM's or MLC's general successor, but instead a successor solely within the meaning of Section 1145 of the Bankruptcy Code for the limited purpose of exempting the GUC Trust from reporting requirements in connection with distributing its securities. *See, e.g.*, Plan § 6.6; Confirmation Order ¶ 13; GUC Trust Agreement ¶ E. The GUC Trust's 10-K filing, which New GM misleadingly quotes only a snippet of (*see* Dkt. 3517 ¶ 48), is fully in accord: "The GUC Trust is a post-confirmation successor to MLC within the meaning of Section 1145 of title 11 of the United States Bankruptcy Code." Dkt. 3517, Ex. 36.

It is the Plan that controls whether, and to what extent, the GUC Trust is the Debtors' successor. *See Leveraged Innovations, LLC v. NASDAQ OMX Grp., Inc.*, 2012 WL 1506524, at *5 (S.D.N.Y. April 20, 2012) (citing *Dunkley Co. v. Cal. Packing Corp.*, 277 F. 996, 999 (2d Cir. 1921)). And the Plan demonstrates that the GUC Trust did not expressly or impliedly agree to be Old GM's or MLC's general successor, and only agreed to become a successor for certain limited and delineated purposes. *See In re Tronox, Inc. Sec. Litig.*, 769 F. Supp. 2d 202, 216 (S.D.N.Y. 2011) (rejecting broad successor liability where contract merely made entity liable as successor for environmental remediation costs). For example, in addition to the aforementioned securities reporting exemption, the GUC Trust Agreement allows the GUC Trust to set-off any claim "that the GUC Trust, as successor to the Debtors, may have against the claimant." GUC Trust Agreement § 6.5. This language does no more than grant the GUC Trust the limited power to assert a counterclaim against a claimant, which is consistent with the GUC Trust's duty to

3

wind down the Debtors' affairs.  Another provision makes the GUC Trust responsible for Debtor tax matters.  *See* GUC Trust Agreement § 7.7(e); *accord* Dkt. 3517 ¶ 52.  But no provision makes the GUC Trust the successor to Old GM for anything more than specific narrowly tailored purposes.  And no provision so much as suggests that the GUC Trust is the successor to Old GM or MLC for purposes of plaintiffs' claims.

## II. Plaintiffs Cannot Now Seek A Remedy Against The GUC Trust For The Ignition Switch Or Other Defects

New GM argues that plaintiffs may use the GUC Trust as a "viable source for recourse," and that "plaintiffs have represented that they will pursue claims against the MLC GUC Trust." Dkt. 3520 at 53, 67, 71-72.  New GM leaves out important context:  to pursue late claims against the GUC Trust now, plaintiffs will need permission from the Bankruptcy Court.  If plaintiffs actually seek such permission—which they have yet to do despite repeatedly warning that such motions were imminent (*See, e.g.*, Ltr. From Edward Weisfelner to Matthew Williams (Nov. 4, 2014) (Karlan Decl. Ex. D); Status Report, *In re Motors Liquidation Co.*, No. 09-bk-50026, Dkt. 13786 at 14 (Bankr. S.D.N.Y. Nov. 10, 2016) (Karlan Decl. Ex. E))—the GUC Trust and certain holders of GUC Trust Units (the "Unitholders") plan to vigorously oppose that request.  In particular, the GUC Trust and Unitholders intend to press arguments that plaintiffs' claims are equitably moot—as the Bankruptcy Court held earlier—and barred in any event because plaintiffs cannot show excusable neglect.

### A. Plaintiffs' Claims Are Equitably Moot

On April 15, 2015, Judge Gerber found that the plaintiffs' as-yet-unfiled claims against the GUC Trust were equitably moot.  *In re Motors Liquidation Co.*, 529 B.R. at 584.  Applying the factors outlined in *In re Chateaugay Corp.*, 10 F.3d 944 (2d Cir. 1993), Judge Gerber found that plaintiffs had not "pursued with diligence all available remedies to obtain a stay" of

4

distributions because they had made a "tactical choice" to not seek "to block" GUC Trust distributions to unitholders. *In re Motors Liquidation Co.*, 529 B.R. at 590-91. Judge Gerber also found that allowing late claims by the plaintiffs would require modification of the Confirmation Order, impair the rights of unitholders, and be unjust to the unitholders who acquired GUC Trust Units in post-confirmation trading with the understanding that the universe of claims against the GUC Trust could not expand. *Id.* at 528-29.

Although the Second Circuit vacated the equitable mootness holding on procedural grounds, it said nothing to indicate it had any issues whatsoever with the merits of Judge Gerber's decision. *See Elliott*, 829 F.3d at 166-70. Subsequent factual developments—including a 2015 distribution of $135 million that plaintiffs declined to stay by failing to post a bond (*see In re Motors Liquidation Co.*, 539 B.R. 676, 692 (Bankr. S.D.N.Y. 2015)), and a recent distribution of $112 million that occurred without any objection whatsoever from plaintiffs (*see* GUC Trust 8-K dated Oct. 26, 2016) (Karlan Decl. Ex. F)—suggest that if the equitable mootness issue is presented to the Bankruptcy Court again, Judge Glenn will have an even stronger basis for finding that plaintiffs' claims are equitably moot.[2]

### B.   In Any Event, Plaintiffs Cannot Show Excusable Neglect

Even if plaintiffs could overcome the equitable mootness hurdle (they cannot), they cannot show excusable neglect to justify their failure to timely file claims. The Supreme Court has laid out four factors for evaluating whether a claimant may file a late claim: "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant,

---

[2] In fact, Judge Glenn was the bankruptcy judge that applied equitable mootness in the Borders bankruptcy case that Judge Gerber found to be "particularly relevant" in finding plaintiffs' claims were equitably moot. *See In re Motors Liquidation*, 529 B.R. at 588.

and whether the movant acted in good faith." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).  In the Second Circuit, which has taken a "hard line" on late claims, "a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test."  *Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.)*, 419 F.3d 115, 121 (2d Cir. 2005).  As the GUC Trust and Unitholders will explain to the Bankruptcy Court (if plaintiffs seek permission to file late claims), plaintiffs cannot show that their request is extraordinary and cannot satisfy any of the *Pioneer* factors, let alone all four.  As a result, plaintiffs cannot pursue late-filed claims against the GUC Trust.

## CONCLUSION

The GUC Trust respectfully requests that this Court consider the above information in rendering a decision on New GM's Motion for Partial Summary Judgment on Successor Liability.

Dated:  December 13, 2016

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By:   /s/ *Mitchell A. Karlan*

Mitchell A. Karlan
Gabriel K. Gillett
200 Park Avenue
New York, New York 10166
Telephone: (212) 351-4000
Facsimile:  (212) 351-4035

*Attorneys for Wilmington Trust Company,
as Trustee for and Administrator of the
Motors Liquidation Company General
Unsecured Creditors Trust*