UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------x
IN RE:

GENERAL MOTORS LLC IGNITION SWITCH LITIGATION

*This Document Relates To:*
*Scruggs f/k/a Dodson v. General Motors LLC,*
*15-CV-8324 (JMF)*
------------------------------------------------------------------------------x

14-MD-2543 (JMF)

OPINION AND ORDER

JESSE M. FURMAN, United States District Judge:

**[Regarding the Parties' Motions *in Limine* and the
Admissibility of Plaintiff's Other Similar Incident Evidence]**

The next bellwether trial in this multidistrict litigation ("MDL"), brought by Plaintiff Mary Scruggs (formerly known as Mary Dodson) in connection with her accident while driving her 2004 Cadillac CTS on November 16, 2013, and familiarity with which is presumed, is scheduled to begin on November 2, 2017.  In advance of trial, the parties filed nine motions *in limine*, one of which (Scruggs's second motion *in limine*) was mooted by the parties' agreement (Docket No. 4600)[1] and one of which (Scruggs's seventh motion *in limine*) is not yet fully submitted.  (Docket No. 4628).  Seven are thus ripe for decision, to wit:

- Scruggs's First Motion, which seeks an order precluding New GM from using or referring to her original Plaintiff's Fact Sheet ("PFS") at trial (*see* Docket No. 4474);

- Scruggs's Third Motion, which seeks to exclude evidence that she had used or was impaired by prescription pain medication at the time of her accident and to limit evidence regarding her pre-accident pain medication usage (*see* Docket No. 4480);

- Scruggs's Fourth Motion, which seeks to keep out evidence or argument relating to the traffic citation she received for the accident at issue and other evidence concerning her driving history (*see* Docket No. 4483);

---

[1]  Unless otherwise noted, all docket references are to the MDL docket, 14-MD-2543.

1

- Scruggs's Fifth Motion, which seeks to exclude the "opinions and findings" of the police officer who responded to the accident regarding its cause (*see* Docket No. 4486);

- Scruggs's Sixth Motion, which seeks an order precluding New GM from introducing evidence "related to her job performance, the reasons for her terminations from prior jobs, and evidence related to any pain, suffering, medical procedures or examinations, or automobile accidents she has experienced since September 2015" (Docket No. 4489, at 1);

- New GM's Thirty-Seventh Motion, which seeks to preclude Scruggs from offering statements she allegedly made to her mother and a trooper on the morning of the subject crash (*see* Docket No. 4463);[2] and

- New GM's Thirty-Eighth Motion, which seeks to preclude Scruggs from offering evidence relating to "the nature, execution, and effectiveness of the recall remedy" for her car (*see* Docket No. 4466, at 1).

In addition, Scruggs seeks an advanced ruling that she may introduce certain other similar incident ("OSI") evidence — namely, (1) evidence concerning fifty-five other crashes allegedly attributable to the ignition switch defect in certain General Motors cars for purposes of proving notice; and (2) evidence concerning eighteen other crashes for purposes of proving causation and the extent of the defect. (Docket No. 4312 ("Pl.'s OSI Mem.")).

For the reasons stated below, Scruggs's first and third motions *in limine* and New GM's thirty-seventh motion *in limine* are DENIED; Scruggs's fourth and sixth motions *in limine* are GRANTED in part and DENIED in part; and Scruggs's fifth motion *in limine* and New GM's thirty-eighth motion *in limine* are GRANTED in full. In addition, Scruggs's application to admit

---

[2] For reasons that are not entirely clear, plaintiffs in this MDL have adopted the practice of numbering their motions *in limine* separately for each trial, restarting each time with the number one. By contrast, New GM continues in each trial from whatever number it finished at in the prior trial. Thus, New GM's Thirty-Seventh Motion *in Limine* is its thirty-seventh motion *in limine* in the MDL overall, not its thirty-seventh motion with respect to Scruggs.

OSI evidence is GRANTED in part and DENIED in part.[3]

A. **Scruggs's First Motion** *in Limine*

In her first motion *in limine*, Scruggs seeks an order precluding New GM from using or referring to her original PFS at trial. (Docket No. 4474). Scruggs argues that allowing New GM to use the original PFS would be unfairly prejudicial to her because, contrary to New GM's suggestion, it is not inconsistent with her supplemental PFS and because "its introduction or use will inevitably open the door to a confusing and time-consuming trial-within-a-trial concerning the discovery process, New GM's demands that Plaintiff update the PFS, and the meet-and-confers between counsel on this issue." (Docket No. 4475, at 2). Upon review of the parties' submissions, the motion is denied as frivolous. Pursuant to Order No. 25 (Docket No. 422), Scruggs's PFSs are the equivalent to interrogatories and, thus, admissible by New GM as statements of its party opponent without regard for their consistency or inconsistency. *See* Fed. R. Evid. 801(d)(2)(A)-(B); *see also, e.g.*, *Higgs v. Transp. Specialist Sanford*, No. 5:07CV-P77-R, 2009 WL 1939026, at *1 (W.D. Ky. July 6, 2009) ("Interrogatory responses are admissible as admissions of a party opponent under Fed. R. Evid. 801(d)(2)(A) and (B)." (citing cases)). And despite Scruggs's arguments to the contrary, the probative value of the PFSs — both with respect to what happened in the subject accident and her credibility — are plainly not outweighed, let alone *substantially* outweighed, by any of the dangers referenced in Rule 403 of the Federal

---

[3] Some of the issues decided here may be affected — or even mooted — by the Court's decisions on the parties' *Daubert* motions (Docket Nos. 4356 and 4363) and New GM's partial summary judgment motion (Docket No. 4353), all of which are now fully briefed and under advisement. Additionally, on September 28, 2017, New GM filed a letter motion concerning Scruggs's allegedly untimely disclosure of additional OSI evidence (Docket No. 4648), which is not addressed here. Needless to say, the Court's rulings are subject to modification — or even reconsideration — as appropriate in light of subsequent decisions.

Rules of Evidence. Scruggs is free to explain any apparent inconsistencies between her PFSs in her testimony — as she did in her deposition. (*See* Docket No. 4537, Ex. 6, at 57-58). Put simply, there is no need or basis for a mini-trial within the trial, for any extended discussion of the discovery process or the circumstances resulting in the supplemental PFS, or for any revelation of confidential communications between Scruggs and her counsel. Accordingly, Scruggs's first motion *in limine* is denied.

## B. Scruggs's Third Motion *in Limine*

Scruggs's third motion *in limine* seeks to exclude evidence or argument that she had used or was impaired by prescription pain medication at the time of the accident and to limit evidence regarding her pre-accident pain medication usage. (Docket No. 4480). With respect to the former — evidence that she took pain medication on the day of her accident — Scruggs relies heavily on the Court's exclusion of similar evidence in two earlier bellwether cases, *Scheuer* and *Cockram*. *See In re: Gen. Motors LLC*, No. 14-MD-2543 (JMF), 2015 WL 8578945, at *7 (S.D.N.Y. Dec. 9, 2015) ("*Scheuer*"); *In re: Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2016 WL 4077117, at *4 (S.D.N.Y. Aug. 1, 2016) ("*Cockram*"). Each of those rulings, however, was predicated on the complete absence of any evidence that the plaintiff's drug consumption — if any — could have caused, or contributed to, the plaintiff's accident. *See Scheuer*, 2015 WL 8578945, at *7; *Cockram*, 2016 WL 4077117, at *4. In this case, by contrast, there is an evidentiary basis for New GM to argue that Scruggs took pain medication very shortly before her accident and that such medication impaired her driving abilities at the time of the accident. (*See* Docket No. 4543, at 6-8 & nn.33-40 (marshalling the evidence)). Accordingly, the Rule 403 balancing test tips the other way. *See, e.g.*, *Harris v. Kubota Tractor Corp.*, No. CIV. 04-2490, 2006 WL 2734460, at *3 (W.D. La. Sept. 22, 2006) (allowing evidence that the

4

plaintiff had used "cocaine and marijuana during the week of his accident" over a Rule 403 objection). As for evidence of Scruggs's historical pain medication usage, the Court agrees that such evidence should be carefully monitored so as not to cause unfair prejudice and that limiting instructions may well prove appropriate. But Scruggs's *ex ante* attempts to limit that evidence — evidence that she wisely concedes is relevant to injury causation (Docket No. 4481, at 7) — are either off base (for example, to the extent that they are based on her ex-husband's lack of credibility (*id.* at 6), an issue for the jury to decide) or premature. Put simply, the Court will be in a better position to evaluate the nature and extent of the evidence at issue (and the need for limiting instructions) in connection with the resolution of specific deposition designation disputes and at trial. (*See* Order No. 123 (Docket No. 3902)). Accordingly, Scruggs's third motion *in limine* is denied, albeit in part without prejudice.

## C. Scruggs's Fourth Motion *in Limine*

Scruggs's fourth motion *in limine* — which seeks to preclude New GM from offering evidence or argument relating to (1) the traffic citation she received for the accident at issue; (2) other traffic citations she has received; and (3) her ex-husband's testimony concerning her driving (Docket No. 4483) — need not detain the Court long, as it is moot in part and otherwise unripe. The motion is moot in part because New GM agrees that it will not seek to admit evidence of the citation Scruggs received for the subject accident or her ex-husband's lay opinions regarding the cause of the crash. (Docket No. 4540, at 1, 2 n.1). And the motion is otherwise unripe because New GM agrees that it will not seek to use evidence regarding Scruggs's driving history unless she somehow opens the door to such evidence for impeachment or rebuttal purposes (*id.* at 1-2), scenarios that Scruggs insists will not happen. (Docket No. 4599, at 2-3). Accordingly, the motion is granted with respect to evidence of Scruggs's driving

5

history (albeit without prejudice to New GM seeking leave to introduce the evidence outside the presence of the jury if it believes that she has opened the door to it) and otherwise denied as moot.

**D. Scruggs's Fifth Motion *in Limine***

Next, Scruggs seeks to exclude from trial the "opinions and findings" of Officer Daniel Dellenger, the responding officer, regarding the cause of her accident. (Docket No. 4486, at 1). In particular, she seeks to exclude the portions of Officer Dellenger's police report in which he opines that Scruggs's accident was caused by her "unsafe speed" and his testimony to the same effect. (Docket No. 4487 ("Pl.'s Fifth Mem."), at 5-13). Notably, Scruggs does not seem to be suggesting that the police report as a whole should be excluded. Nor is she seeking to preclude Officer Dellenger's factual testimony concerning what he saw and heard. Those are for good reason, as the report is generally admissible, both as a business record, pursuant to Rule 803(6) of the Federal Rules of Evidence (and by operation of MDL Order No. 52 (Docket No. 926)), and as a public record, pursuant to Rule 803(8). *See, e.g.*, *Spanierman Gallery, Profit Sharing Plan v. Merritt*, No. 00-CV-5712 (LTS) (THK), 2003 WL 22909160, at *5 (S.D.N.Y. Dec. 9, 2003) (collecting cases for the proposition that police reports are generally admissible under Rules 803(6) and 803(8)). And Officer Dellenger's factual testimony is plainly relevant and admissible.

Instead, Scruggs's motion is limited to Officer Dellenger's opinions about the cause of Scruggs's accident. The Court agrees that those portions of Officer Dellenger's report and testimony should be excluded, as they are not rationally based on the officer's firsthand observations and are insufficiently trustworthy. For one thing, at the time of his investigation, Officer Dellenger had been working as a peace officer for only about seventeen months; he was

6

qualified at the lowest level of Texas's "accident reconstruction" training and could not even remember what training he had received; and he candidly conceded that he "would not call [him]self an expert" in accident reconstruction. (*See* Pl.'s Fifth Mem., Ex. 3, at 51-55). For another, Officer Dellenger did nothing to determine, or even investigate, the speed of Scruggs's car: He did not look for, or record, skid marks on the road; and he took no measurements or photographs of the scene. (*See id.* at 63-64). And finally, in his deposition, he did not resist counsel's characterization of his conclusion as an "assumption or presumption," and he conceded that it was based on nothing more than "the fact that it was a curved road, wet condition, and there was some fog." (*Id.* at 74-75).[4] In short, whether viewed through the lens of Rule 403 (with its prohibition on "unfair prejudice"), Rule 701 (with its requirement that lay opinion be "rationally based on the witness's perception"), or Rule 803(8) (which prohibits public reports where "the source of information or other circumstances indicate a lack of trustworthiness"), the foundation for Officer Dellenger's opinions is simply too flimsy to admit at trial. *See, e.g.*, *Duhon v. Marceaux*, 33 F. App'x 703, at *4 (5th Cir. 2002) (noting that, "[a]s a general rule, police officers' lay opinions as to the cause of an automobile accident formed by viewing subsequent evidence at the scene are excluded under Rule 701" and holding that the district court properly excluded portions of the responding officer's report that contained the officer's opinions about the cause of the accident (citation omitted)); *Rea v. Wis. Coach Lines, Inc.*, No. CIV.A. 12-

---

[4] In light of the foregoing, Officer Dellenger's report and testimony are easily distinguished from the report and testimony of Officer David Kramer that the Court ruled admissible in the *Barthelemy/Spain* trial. (Docket No. 2458, at 9). Among other things, although Officer Kramer did not witness the plaintiffs' accident itself, he himself was on the bridge where it occurred at the time of the accident and he witnessed other crashes (indeed, he was in one himself) near the time of the accident. (*Id.*).

7

1252, 2015 WL 1012936, at *4 (E.D. La. Mar. 5, 2015) (admitting a police accident report to the extent it contained the responding officer's "recordation of information," but excluding, on Rule 403 grounds, those portions containing the officer's conclusions); *Graves ex rel. W.A.G. v. Toyota Motor Corp.*, No. 2:09CV169KS-MTP, 2011 WL 4590772, at *9 (S.D. Miss. Sept. 30, 2011) ("The reconstruction opinion testimony of law enforcement [officers], who are not competent to testify as accident reconstructionists, violates the evidentiary standards of Rule 701 F.R.E.").

In short, while Officer Dellenger is free to testify about what he did and did not observe at the scene of the accident and what Scruggs did and did not say at the scene, he may not — through his report or his testimony — offer his opinions about the cause of the accident. Accordingly, Scruggs's fifth motion *in limine* is granted.

### E. Scruggs's Sixth Motion *in Limine*

In her sixth motion *in limine*, Scruggs seeks an order precluding New GM from introducing evidence "related to her job performance, the reasons for her terminations from prior jobs, and evidence related to any pain, suffering, medical procedures or examinations, or automobile accidents she has experienced since September 2015." (Docket No. 4489, at 1). With respect to employment-related evidence, Scruggs's motion is largely premature, as she identifies and analyzes only two specific items: her termination by former employers EMS and Church's Chicken. (Docket No. 4490 ("Pl.'s Sixth Mem."), at 2). As for those items, however, her motion is on solid ground. New GM does not even make an argument with respect to evidence of Scruggs's termination by EMS, and for good reason: The alleged cause — that her boss and her ex-husband were having an affair (Pl.'s Sixth Mem., Ex. A, at 41) — is plainly irrelevant. And while New GM does make an argument with respect to the Church's Chicken

termination approximately twenty years ago — namely, that it is admissible pursuant to Rule 608(b) of the Federal Rules of Evidence as evidence of specific conduct that relates directly to Scruggs's propensity for truthfulness because she was fired on suspicion of stealing money from her cash register (Docket No. 4554, at 10) — its argument falls short. Assuming *arguendo* that the underlying conduct would be probative of truthfulness — a potentially dubious assumption, *see, e.g.*, *Shakur v. United States*, 32 F. Supp. 2d 651, 671 (S.D.N.Y. 1999) ("It is generally held that crimes of theft are not probative of truthfulness.") — the conduct is, among other things, "too remote in time to have any significance," *United States v. Ahmed*, No. 14-CR-277 (DLI), 2016 WL 3647686, at *3 (E.D.N.Y. July 1, 2016) (precluding cross-examination on twenty-year-old conduct); *see also, e.g.*, *United States v. Wilke*, No. 09-CR-6099 (CJS), 2010 WL 1573918, at *1 (W.D.N.Y. Apr. 15, 2010) (precluding cross-examination on twenty-four-year-old conduct).

That leaves Scruggs's effort to exclude evidence related to any pain, suffering, medical procedures or examinations, or automobile accidents she has experienced since September 2015 — including, most notably, evidence that she was in another car accident, for which she received medical care, in October 2015. Scruggs's argument is based on the fact that, in a stipulation filed on August 24, 2017, she unilaterally agreed not to seek damages for medical expenses or pain and suffering after September 2015. (Docket No. 4448). Scruggs claims pure motives for that stipulation — namely, concern that the jury would have "difficulty . . . determining what degree of injury and damages stem from the 2013 crash versus the 2015 accident" (Docket No. 4601, at 2) — but there is some reason to suspect that the true motive is more tactical: to keep from the jury the fact that she failed to disclose the October 2015 accident to her own medical experts. Whatever the motive, Scruggs's arguments are too cute by half. Among other things, the fact

that Scruggs may have concealed the 2015 accident from her own experts is plainly probative of her credibility. Additionally, New GM is entitled to use medical records and tests post-dating the October 2015 accident (including, for example, records for a December 2015 doctor visit, in which Scruggs complained about symptoms she attributed to the October 2015 car accident, and made no mention of the November 2013 accident (*see* Docket No. 4555, Ex. 6)) to dispute Scruggs's claims of damages in and before September 2015.

In sum, Scruggs's sixth motion *in limine* is granted in part and denied in part.

## F. New GM's Thirty-Seventh Motion *in Limine*

New GM's Thirty-Seventh motion *in limine* seeks to preclude Scruggs from offering statements she allegedly made to her mother and a trooper on the morning of the subject crash. (*See* Docket No. 4463). Scruggs contends that the statements are admissible as prior consistent statements, pursuant to Rule 801(d)(1)(B) of the Federal Rules of Evidence. (*See* Docket No. 4534 ("Pl.'s Opp'n to Thirty-Seventh Mot'n"), at 2). The Court agrees.[5] Notably, New GM's sole argument to the contrary is that the statements at issue were not made before the motive to testify falsely arose, as Scruggs "*did* have a motive to falsely allege a steering and loss of power malfunction: to blame the crash on something other than driver error." (Docket No. 4582, at 1-2). That argument falls short for two reasons. First, Scruggs only debatably had a motive to lie in the immediate aftermath of the accident, as there were no other cars (or passengers) involved and she presumably had no fear of liability. New GM is entitled to argue the point to the jury, but it is not a basis for exclusion because it is "reasonably possible for the jury to say that the

---

[5] In light of that, the Court need not and does not reach Scruggs's alternative argument, that her statements are admissible as excited utterances pursuant to Rule 803(2). (Pl.'s Opp'n to Thirty-Seventh Mot'n 5-7).

prior consistent statements did in fact antedate the motive" to fabricate. *United States v. Grunewald*, 233 F.2d 556, 566 (2d Cir. 1956), *rev'd on other grounds by* 353 U.S. 391 (1957); *accord United States v. DiLorenzo*, 429 F.2d 216, 220 (2d Cir. 1970). Second, New GM presumably intends to argue that Scruggs's anticipated testimony at trial is fabricated because she saw an opportunity upon learning about the ignition switch recalls. But *that* motive to fabricate did not arise until the recall of her car, months after the accident. Scruggs's prior consistent statements are thus admissible to rebut New GM's express or implied charge, even though she may have had another motive to fabricate at the time. *See, e.g.*, *United States v. Mack*, No. 3:13-CR-00054 (MPS), 2016 WL 4373695, at *10 (D. Conn. Aug. 15, 2016); *see also, e.g.*, *Mason v. United States*, 53 A.3d 1084, 1092 (D.C. 2012) (holding that a "prior consistent statement was admissible to rebut a charge of a very recent and different reason to fabricate . . . notwithstanding that the witness also had other, unrelated motives to lie at the time the statement was made," noting that "the jury was well aware of those other motives, and thus able to weigh the prior consistent statement accordingly"). Accordingly, New GM's Thirty-Seventh motion *in limine* is denied.

## G. New GM's Thirty-Eighth Motion *in Limine*

New GM's Thirty-Eighth motion *in limine* seeks to preclude Scruggs from offering evidence relating to "the nature, execution, and effectiveness of the recall remedy" for her car on the ground that it did not occur until after her accident. (Docket No. 4467 ("New GM's Thirty-Eighth Mot'n"), at 1). Notably, New GM does not seek complete exclusion of the recall notification, which includes a description of the alleged defect. (Docket No. 4584 ("New GM's Reply"), at 1 n.1). On the flip side, Scruggs represents that she "has no intention of 'challenging the adequacy' of the recall remedy." (Docket No. 4550 ("Pl.'s Opp'n to New GM's Thirty-

11

Eighth Mot'n"), at 1). Thus, the sole issue in dispute is the admissibility of "the recall remedy itself (*i.e.*, a key insert plus two small diameter key rings)." (New GM's Thirty-Eighth Mot'n 2). Scruggs contends, first and foremost, that such evidence is admissible pursuant to Rule 407(b) of the *Texas* Rules of Evidence, which provides that "[a] manufacturer's written notification to a purchaser of a defect in one of its products is admissible against the manufacturer to prove the defect." Tex. R. Evid. 407(b). (*See* Pl.'s Opp'n to New GM's Thirty-Eighth Mot'n 8-9). But federal courts are near unanimous, if not unanimous, that where there is a conflict between Rule 407 of the *Federal* Rules of Evidence and a state counterpart, as here, a federal court must apply the federal Rule in a diversity case as it is (at least partially) procedural. *See, e.g.*, *Kelly v. Crown Equip. Corp.*, 970 F.2d 1273, 1278 (3d Cir. 1992); *Hogan v. Novartis Pharm. Corp.*, No. 06-CV-260 (BMC) (RER), 2011 WL 1336566, at *2-3 (E.D.N.Y. Apr. 6, 2011); *Cameron v. Otto Bock Ortho. Indus., Inc.*, Civ. No. 92-12510-Y, 1994 WL 51630, at *2-3 (D. Mass. Jan. 7, 1994) (citing cases), *aff'd*, 43 F.3d 14 (1st Cir. 1994).

In the alternative, Scruggs contends that evidence of the recall remedy is admissible pursuant to the federal Rule, which provides that a court "may admit" evidence of *post hoc* remedial measures to prove "the feasibility of precautionary measures," if the issue is "disputed." (Pl.'s Opp'n to New GM's Thirty-Eighth Mot'n 10-11). The problem with that argument, however, is that the issue is not disputed. New GM explicitly represents that it will not "affirmatively disput[e] or argu[e] the feasibility of an alternative design." (New GM's Reply 5). That is enough to keep the evidence out (unless, of course, New GM opens the door to it at trial). *See, e.g.*, *In re Joint E. Dist. & S. Dist. Asbestos Litig.*, 995 F.2d 343, 345-46 (2d Cir. 1993) (holding that it was error to admit evidence of subsequent remedial measures where the defendant "at no point" contested feasibility). Contrary to Scruggs's assertions (Pl.'s Opp'n to

New GM's Thirty-Eighth Mot'n 10), New GM need not go further and stipulate that a safer alternative design would have been feasible. *See, e.g.*, *Gauthier v. AMF, Inc.*, 788 F.2d 634, 637-38 (9th Cir.) (holding that it was error for the district court to admit evidence of post-accident remedial measures where the defendant had "admitted" feasibility before trial, even though the defendant had "refused to agree to a stipulation to be read to the jury that the safety devices were 'feasible' to install"), *amended on other grounds by* 805 F.2d 337 (9th Cir. 1986); *Malburg v. Grate*, No. 11-14856, 2014 WL 2894292, at *6 (E.D. Mich. June 26, 2014) (precluding evidence of subsequent remedial measures based on the defendant's representation that it did not dispute feasibility, and rejecting the plaintiff's argument that the defendant was required to enter into a written stipulation); *Friedman v. Nat'l Presto Indus.,* 566 F. Supp. 762, 765 (E.D.N.Y. 1983) ("It is enough if defendant agrees that it will not introduce evidence of nonfeasibility or argue it. Plaintiffs could then introduce evidence of feasibility other than subsequent remedial measures and could argue that defendant had not disputed the point."). Accordingly, New GM's Thirty-Eighth motion *in limine* is granted.

## H. The Admissibility of OSI Evidence

Finally, Scruggs seeks to admit evidence of fifty-eight other incidents to prove New GM's knowledge and notice of the alleged defect and eighteen other incidents to prove the existence or magnitude of the defect as well as causation. (Pl.'s OSI Mem. 1). The Court has summarized the applicable legal standards several times. *See In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2017 WL 2493143, at *1 (S.D.N.Y. June 9, 2017) ("*Ward*"); *In re: Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2016 WL 4410030 (S.D.N.Y. Aug. 18, 2016) ("*Cockram OSI*"); *In re: Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2016 WL 796846, at *2 (S.D.N.Y. Feb. 25, 2016) ("*Barthelemy/*

*Spain*"); *In re: Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2015 WL 9463183, at *1 (S.D.N.Y. Dec. 28, 2015) ("*Scheuer OSI*"). Briefly, OSI evidence may be admitted in a case such as this to prove "negligence, a design defect, notice of a defect, or causation." *Hershberger v. Ethicon Endo-Surgery, Inc.*, No. 10-CV-0837, 2012 WL 1113955, at *2 (S.D. W. Va. Mar. 30, 2012). The proponent of such evidence, however, must establish that the other accidents "occurred under the same or substantially similar circumstances as the accident at issue." *Schmelzer v. Hilton Hotels Corp.*, No. 05-CV-10307 (JFK), 2007 WL 2826628, at *2 (S.D.N.Y. Sept. 24, 2007). Where evidence is offered to prove the existence of a defect or causation, the proponent must show "a high degree of similarity" between the accident at issue and the other accidents. *Ward*, 2017 WL 2493143, at *6 (internal quotation marks omitted). "By contrast, the substantial similarity standard is 'relaxed' where OSI evidence is offered to show notice" *Id.* If sufficient substantial similarity is established, "[a]ny differences in the accidents . . . go to the weight of the evidence" rather than its admissibility. *Four Corners Helicopters, Inc. v. Turbomeca, S.A.*, 979 F.2d 1434, 1440 (10th Cir. 1992) (internal quotation marks omitted).

In light of the Court's prior rulings, application of these standards to the vast majority of the OSI evidence offered by Scruggs is straightforward — so much so that the parties should have been able to reach agreement without the need to burden the Court. First, substantially for the reasons provided by the Court in *Ward*, 2017 WL 2493143, at *7, Scruggs may offer limited evidence concerning the fifty-eight other incidents for purposes of proving notice.[6] Fifty-five of

---

[6] The Court emphasizes the word "limited." Pursuant to Rule 403 of the Federal Rules of Evidence, the Court will sharply curtail the evidence Scruggs may offer at trial with respect to the fifty-eight other incidents. *See Barthelemy/Spain*, 2016 WL 796846, at *6. As in the prior trials, the Court is unlikely to permit much, if any, evidence concerning "the details relating to

those incidents may well have involved different vehicle platforms, with different ignition switches and systems. (*See* Docket No. 4350 ("New GM's Opp'n to Pl.'s OSI"), at 9-10). "In the final analysis," however, New GM's arguments about these differences "go to weight rather than admissibility." *Ward*, 2017 WL 2493143, at *7. "In fact, to exclude the other incidents would arguably 'prevent the jury from understanding the scale, significance, and duration of Old GM's and New GM's conduct with respect to the ignition switch defect' allegedly at issue in this case." *Id.* (quoting *Cockram OSI*, 2016 WL 4410030, at *4). Second, substantially for the reasons provided by the Court in *Ward*, 2017 WL 2493143, at *6-7, and *Barthelemy/Spain*, 2016 WL 796846, at *6, fifteen of the eighteen accidents offered to prove either causation or the existence or magnitude of the defect are inadmissible for those purposes. Significantly, each of those accidents involved "not only a different ignition switch, but a different kind of vehicle . . . altogether." *Ward*, 2017 WL 2493143, at *6. Given that fundamental difference, Scruggs has an uphill battle "to satisfy the heightened standard" of substantial similarity "applicable to proving causation and the existence of a defect." *Id.* Her effort — relegated to a single cursory footnote (Pl.'s OSI Mem. 14 n.57) — does not come even close. *See also, e.g.*, *Ruminer v. General Motors Corp.*, 03-CV-0349 (GTE), 2006 WL 287945, at *14 (E.D. Ark. Feb. 6, 2006) (finding that the plaintiff had failed to meet his burden when he made "no effort to demonstrate or explain how" the OSIs were substantially similar to the alleged product defects in his case); *Great N. Ins. Co. v BMW of N. Am., LLC*, 02-CV-1153, 2015 WL 3936229, at *10 (S.D. Ohio June 26, 2015) (excluding OSI evidence for purposes of proving causation because the plaintiffs had failed to

---

the accidents or victims." *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2017 WL 2829693, at *2 (S.D.N.Y. June 30, 2017).

establish that "they [would] lay the proper foundation to prove the prior incidents were sufficiently similar").

The only arguably close call concerns the Thomas Letham, Jonathan Odom, and Hertenesse Williams incidents — each of which also involved a Cadillac CTS, the vehicle Scruggs was driving. (Pl.'s OSI Mem., Ex. 1, at 14-15). Notably, there is no dispute that evidence concerning those three incidents may be admitted at trial, as New GM concedes that all three "may be offered for notice." (New GM's Opp'n to Pl.'s OSI 9). Instead, the sole dispute is whether Scruggs can argue to the jury that they are *also* proof of causation or the existence or magnitude of the defect. Based on the current record, the Court concludes that she may not because, among other things, she has not offered evidence excluding "all reasonable secondary explanations for the cause of the other incidents." *Ward*, 2017 WL 2493143, at *6 (internal quotation marks omitted). Scruggs asserts that New GM investigated the three incidents "and deemed them to be incidents in which the airbags should have deployed but did not deploy due to inadvertent ignition switch rotation." (Pl.'s OSI Mem. 14). But the underlying evidence — a New GM document — does not appear to support that assertion, as it states only that the incidents were "*potentially* relate[d]" to inadvertent key rotation. (Docket No. 4351, Ex. 20, at 22 (emphasis added); *see also id.* Ex. 21, at 90 (Rule 30(b)(6) Deposition of Brian E. Thompson) (explaining that the document listed incidents "that, after review, could not be ruled out as being related to unintended ignition key rotation")). At bottom, without more definitive proof that the Letham, Odom, and Williams incidents were themselves caused by the defect Scruggs alleges, "there is nothing about [them] that tends to make [Scruggs's] theories of defect and causation 'more or less probable than it would be without the evidence.'" *Ward*, 2017 WL 2493143, at *6 (quoting Fed. R. Evid. 401); *cf. Barthelemy/Spain*, 2016 WL 796846, at *6 (explaining that, in

*Scheuer OSI*, the Court permitted evidence of "other crashes (under relatively similar circumstances, no less) in which the only explanation found for airbag non-deployment was the ignition switch defect" because such evidence "plainly tended to support" the plaintiff's theory of the case). Thus, while Scruggs may offer evidence concerning the Cadillac CTS incidents to prove notice, she may not — without more — argue that they prove causation or the existence or magnitude of the defect.[7]

## CONCLUSION

The Court feels compelled to express some frustration with respect to the parties briefing of the issues addressed in this Opinion and Order. First, based on its experiences with prior bellwether trials, the Court had admonished the parties to confer in advance of filing any motions *in limine*, to ensure that briefing was narrowly tailored to issues that were actually in dispute. (August 11, 2017 Status Conf. Tr. 31-32, *available at* http://gmignitionmdl.com/court-documents/transcripts/). It is clear from the briefing of several motions — most notably, Scruggs's fourth motion *in limine* and New GM's thirty-eighth motion *in limine* — that the parties did not fully heed the Court's admonition. Second, pursuant to Order No. 123, the parties were required to confer in good faith regarding the applicability of the Court's pretrial rulings in earlier bellwether trials to this case. (Docket No. 3902, ¶ 6). The obvious idea behind that requirement is to avoid the need for the parties to brief and the Court to decide issues that the

---

[7] If Scruggs is able to lay a better foundation at trial for the proposition that the other Cadillac CTS accidents were caused by inadvertent switch rotation (without the need for a separate "mini-trial" within the trial as to each of the incidents, which would plainly run afoul of Rule 403), then the Court might be open to revisiting its ruling and allowing her to argue to the jury that the other incidents are also proof of causation or the existence or magnitude of the defect. If Scruggs believes that there is a basis for such reconsideration, she should raise it with New GM and the Court outside the presence of the jury.

Court has effectively already decided. Underscoring that idea, the Court urged the parties in its Order concerning the application of prior rulings to "meet and confer" before filing new any new briefing "to avoid unnecessary motion practice and to narrow any disputes" (Docket No. 4498, ¶ 6), and, even more pointedly, to strive in briefing the admissibility of OSI evidence "to avoid making arguments that, based on a fair reading of the Court's prior opinions, the Court is likely to reject" (*id.* at 14). As the discussion of OSI evidence above should make clear, the parties could have done a better job of heeding that admonition too.

In any event, for the reasons stated above, Scruggs's first and third motions *in limine* and New GM's thirty-seventh motion *in limine* are DENIED; Scruggs's fourth and sixth motions *in limine* are GRANTED in part and DENIED in part; and Scruggs's fifth motion *in limine* and New GM's thirty-eighth motion *in limine* are GRANTED in full. In addition, Scruggs's application to admit OSI evidence is granted in part and denied in part. Specifically, while Scruggs may introduce evidence of the fifty-eight OSIs for purposes of proving notice, she may not introduce evidence of any OSIs to prove the existence or magnitude of the defect or causation.

The Clerk of Court is directed to terminate 14-MD-2543, Docket Nos. 4463, 4466, 4474, 4480, 4483, 4486, and 4489, and 15-CV-8324, Docket Nos. 145, 148, 153, 159, 162, 165, and 168.

SO ORDERED.

Dated: October 3, 2017
      New York, New York

JESSE M. FURMAN
United States District Judge