

January 22, 2018

The Honorable Jesse M. Furman
United States District Court
Southern District of New York

      Re:    *In re: General Motors LLC Ignition Switch Litig.*, No. 14-md-2543 (JMF)

Dear Judge Furman:

    Lead Counsel submits in camera the documents withheld in response to GM's September 22, 2017 Requests for Production regarding Top Class Actions, LLC, and clarifies why the attorney-client privilege and work product doctrine protect them from disclosure.

**I.    The Hagens Berman documents withheld from production**

    From July 25 to August 25, 2016, Hagens Berman paid Top Class Actions, LLC ("TCA") to advertise this MDL class action on TCA's website.  Hagens Berman sought putative class members who may be eligible and willing to act as named plaintiffs for proposed classes.  Hagens Berman does not have a copy of this webpage, but all of TCA's case webpages have similar formatting and language:  a description of the case, an electronic form to contact counsel,[1] and a footer stating "Attorney Advertising" and identifying the firm or lawyer sponsoring the webpage.  This format is illustrated in a similar but different advertisement that ran at the same time Hagens Berman's advertisement was on TCA's website.[2]

    Lead Counsel submitted in camera three distinct categories of documents.  First, all 2,332 form submissions that Hagens Berman received from putative class members from July 28 to August 25, 2016, via its own form posted on the TCA webpage advertising this MDL (the "Privileged Submissions").[3]  The Privileged Submissions were never received, seen, or accessed by any third party, including TCA.  It is unknown how many of the 2,332 Privileged Submissions came from putative class members visiting TCA's website because the same form was posted on Hagens Berman's website at the same time.  The Privileged Submissions do not identify the website the consumer was on when they submitted the form and Hagens Berman cannot retroactively determine this information.[4]  The Privileged Submissions were not and could not be subject to GM's third-party subpoena to TCA because TCA never possessed or accessed these documents; therefore, this is the first time any Court has considered their discoverability.  The second category of documents includes 447 form submissions from putative class members received by Hagens Berman ***and*** TCA from July 25 to July 28, 2016, after TCA mistakenly posted its own form on the webpage (the

---

[1]  Screenshots of both TCA's and Hagens Berman's electronic forms were produced by TCA in response to GM's third-party subpoena.  Ex. 1 at TCA1157.

[2]  Ex. 2.  This ad is archived on the Wayback Machine at: https://web.archive.org/web/20160727130906/https://-topclassactions.com/lawsuit-settlements/lawsuit-news/340385-california-delivery-driver-misclassified-employee-class-action-lawsuit-investigation/ (last visited January 19, 2018).

[3]  The Privileged Submissions were received via Hagens Berman's electronic form.  *See* Ex. 1 at TCA1157.

[4]  GM's September 22, 2017 Requests for Production seek documents "made available to [Lead Counsel] by Top Class Actions, LLC," and because Hagens Berman cannot determine the source website for these 2,332 Privileged Submissions, the firm withheld all of them.  *See* Def.'s Mot. to Compel at Ex. A, Nos. 1-4.

"Commingled Submissions").[5]  When TCA realized the error, it swapped in Hagens Berman's form.  The third category of documents includes emails exchanged between Hagens Berman and TCA from July 21 to August 8, 2016, generally discussing the GM advertising campaign, including its cost, time period, and electronic form mistake and correction (the "Emails").[6]

## II.     The Privileged Submissions are attorney-client privileged communications.

The Privileged Submissions are communications sent by putative class members to class counsel to procure legal advice.  The facts communicated in the Privileged Submissions enabled Lead Counsel "to give sound and informed advice," including, e.g., whether the consumer is eligible to be a member of the putative class or a named plaintiff.  *See Upjohn Co. v. United States*, 449 U.S. 383, 390-91 (1981) (privilege exists to protect both lawyer giving professional advice and client giving information to lawyer to obtain such advice).  In *Schiller v. City of New York*, this jurisdiction analyzed cases involving prospective client forms or questionnaires and found "an attorney-client relationship may be established in connection with the use of a questionnaire distributed to multiple potential clients" where there is "compelling indicia of the clients' understanding that an attorney-client relationship was anticipated."  245 F.R.D. 112, 116 (S.D.N.Y. 2007).  Indicia that such submissions are privileged include:  the questionnaire gathers information about potential plaintiffs; a case has been filed; the consumer believes that she is consulting a lawyer to seek legal advice or obtain legal information; and the questionnaire was exchanged only with counsel and kept confidential.  *Id.* at 116-17.

Here, Hagens Berman advertised about an existing class action and the firm's electronic form sought information relevant to the litigation from putative class members.  Both the TCA webpage and the Hagens Berman form posted on the webpage made clear that the form submissions were going to a law firm for case evaluation.  The webpage, on a site called "Top Class Actions" and replete with information about all kinds of active litigation, described this case and plainly disclosed that it was sponsored by Hagens Berman, the firm leading the class action.  And the Hagens Berman form stated "an attorney will contact you to discuss the details of your potential case."  GM argues that the Privileged Submissions are not privileged because of TCA's general website disclaimers and disclaimers on some TCA forms, ***but there is no such disclaiming language on the Hagens Berman form***.[7]  And the Privileged Submissions were received via the Hagens Berman form, not the TCA form.[8]  Hagens Berman also received and maintained the confidentiality of these Privileged Submissions.  *See Maloney v. Sisters of Charity Hosp. of Buffalo, N.Y.*, 165 F.R.D. 26, 29 (W.D.N.Y. 1995) (privilege belongs to client and cannot be waived by attorney without client consent).  Because Hagens Berman cannot distinguish which of the 2,332 Privileged Submissions came from a consumer visiting TCA's website, disclosing them would mean violating the privilege of some consumers who directly contacted Hagens Berman via its own website and certainly expected their communications were confidential.

---

[5]  The Commingled Submissions were received via TCA's electronic form.  *See* Ex. 1 at TCA1157.  Because TCA already produced the Commingled Submissions in response to GM's third-party subpoena, GM agreed that Lead Counsel need not produce them.  But Lead Counsel submitted in camera the Commingled Submissions for the Court to compare to the Privileged Submissions, which are still in dispute.

[6]  TCA produced all but four of these Emails in response to GM's third-party subpoena, and GM agreed that Lead Counsel need not produce those it has.  Lead Counsel submitted in camera the four remaining Emails, but maintains that all of the Emails are protected work product.

[7]  Disclaiming language does not automatically render a prospective client questionnaire unprivileged.  *See Barton v. United States Dist. Court*, 410 F.3d 1104, 1109-11 (9th Cir. 2005) (finding communications from prospective clients privileged where law firm in a pharmaceutical class action utilized an online questionnaire that included disclaimer the submission was not seeking legal advice and did not create an attorney-client relationship).

[8]  *See* Ex. 1 at TCA1157 (comparing both forms).

January 22, 2018
Page 3

Putative class members and named plaintiffs' communications with counsel must be protected. Many consumers are frustrated, angry, and confused about their vehicles and want to know their rights. If they are contacted by GM reaching out to class counsel, it would destroy their trust, jeopardize honest disclosure to counsel, and chill future class participation. Consumers submitting these forms want legal recourse, not to communicate with GM. Otherwise, they would be on GM's website. And GM cites no evidence that any of these consumers, including named plaintiffs who submitted a form via TCA's website, did not realize they were contacting a law firm. Finally, the Privileged Submissions cannot fulfill GM's claimed purpose—to probe for evidence bearing on Lead Counsel's adequacy—because they are communications *from putative class members*, not communications from Lead Counsel to putative class members.

**III.     All of the withheld documents are protected by the work product doctrine.**

The Privileged and Commingled Submissions were created by putative class members and named plaintiffs and relate to this MDL, and the Emails were created by Hagens Berman and its paid agent, TCA, to further the litigation strategy of finding named plaintiffs. *See* Fed. R. Civ. P. 26(b)(3)(A) (documents are undiscoverable if prepared in anticipation of litigation by or for a party or its representative, including the party's attorney or agent). The work product doctrine protects documents prepared or obtained for the prospect of litigation and extends to factual material, not just documents containing legal theories and strategy. *Newmarkets Partners, LLC v. Sal. Oppenheim Jr. & Cie. S.C.A.*, 258 F.R.D. 95, 102 (S.D.N.Y. 2009) (document qualifies for work-product protection where it "can fairly be said to have been prepared or obtained *because of* the prospect of litigation") (quoting *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998) (emphasis in original). GM cannot show substantial need for the Privileged and Commingled Submissions when it already propounded written discovery and deposed named plaintiffs about the very facts it claims to now seek, and when it already obtained the Commingled Submissions and all but four of the Emails from TCA. *See* Fed. R. Civ. P. 26(b)(3)(A)(ii) (party seeking disclosure must show "substantial need for the materials to prepare its case and [that the party] cannot, without undue hardship, obtain their substantial equivalent by other means"). GM cannot reap the benefit of Lead Counsel's money and effort by demanding putative class member information that Lead Counsel procured. If GM wants to communicate with putative class members, let them sift through the likely hundreds of thousands of emails they get from their consumers via their own websites. And GM should be made to follow the guidelines of Order No. 119 to solicit putative class member opinions.

**IV.     Conclusion**

GM is overreaching for Hagens Berman's documents that are protected by privilege and the work product doctrine. And as previously argued, GM's Requests for Production are further deficient because they were served on Lead Counsel, a non-party, and seek information from and about named plaintiffs and putative class members not currently subject to discovery. The Court should deny GM's Motion to Compel in its entirety.

Respectfully,

/s/ Steve W. Berman
Steve W. Berman
**Hagens Berman Sobol Shapiro LLP**
1918 Eighth Ave.
Suite 3300
Seattle, WA  98101

-and-

555 Fifth Avenue
Suite 1700
New York, NY 10017

cc:  GM Defense Counsel