# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| IN RE: | ) | |
| | ) | No. 14-MD-2543 (JMF) |
| GENERAL MOTORS LLC | ) | No. 14-MC-2543 (JMF) |
| IGNITION SWITCH LITIGATION | ) | |
| | ) | Hon. Jesse M. Furman |
| *This Document Relates To All Actions* | ) | |
| | ) | |

**DEFENDANT GENERAL MOTORS LLC'S RESPONSE REGARDING UNJUST ENRICHMENT, INCIDENTAL DAMAGES (LOST TIME), AND MANIFEST DEFECT FOR THE 35 JURISDICTIONS THAT HAVE NOT BEEN THE SUBJECT OF DISMISSAL MOTION PRACTICE PURSUANT TO ORDER NO. 131**

Richard C. Godfrey, P.C.
Andrew B. Bloomer, P.C.
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL  60654-3406
Phone:  312-862-2000
Fax:  312-862-2200
richard.godfrey@kirkland.com
andrew.bloomer@kirkland.com

*Attorneys for Defendant General Motors LLC*

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................... 1

ARGUMENT ......................................................................................................................... 2

I.  PLAINTIFFS CANNOT REBUT THAT ALMOST ALL CLAIMS AT ISSUE
    REQUIRE A MANIFEST DEFECT. ................................................................................ 3

    A.  Measuring Damages Using Benefit-Of-The-Bargain And Time-Of-Sale
    Are Completely Consistent With Requiring A Manifest Defect. ........................... 3

    B.  Plaintiffs Cannot Avoid The Clear Authority In 20 Jurisdictions Requiring
    A Manifest Defect For All Claims. .......................................................................... 7

    C.  Plaintiffs Have No Answer For The Nine States That Require A Manifest
    Defect Under This Court's Prior Holdings Regarding Consumer Fraud
    Statutes With Limited Damages. .......................................................................... 14

    D.  Four Jurisdictions Would Follow The Majority View Requiring A
    Manifest Defect For Consumer Fraud Claims. ..................................................... 15

    E.  Under This Court's Precedents A Manifest Defect Is Required For Almost
    All Fraudulent Concealment and Implied Warranty Claims. ............................... 16

II.  WELL SETTLED LAW ACROSS JURISDICTIONS HOLD THAT LOST
     "FREE TIME" IS NOT RECOVERABLE WITHOUT PROOF OF LOST
     INCOME. ...................................................................................................................... 16

III.  ALMOST ALL PLAINTIFFS' UNJUST ENRICHMENT CLAIMS ARE
      BARRED AS A MATTER OF LAW .............................................................................. 22

    A.  Plaintiffs Do Not Contest That Nine Of The Ten Disputed Jurisdictions
    Bar Unjust Enrichment Where Plaintiffs Have An Adequate Legal
    Remedy. ................................................................................................................. 22

    B.  Plaintiffs Cannot Rebut That Nine Of The Ten Disputed Jurisdictions Bar
    Unjust Enrichment Claims Where There Is An Express Warranty. ...................... 23

CONCLUSION .................................................................................................................... 24

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adams v. Benson*,
117 A.2d 881 (Md. 1955)...........................................................................21

*Akers v. Prime Succession of Tenn., Inc.*,
387 S.W.3d 495 (Tenn. 2012)...................................................................15

*Annarella v. Pugliese*,
2014 WL 4636347 (N.J. App. Div. Sept. 18, 2014)....................................9

*Arthur Andersen & Co. v. Perry Equip. Co.*,
945 S.W.2d 812 (Tex. 1997).......................................................................4

*Artzner v. A&A Exterminators, Inc.*,
531 S.E.2d 200 (Ga. Ct. App. 2000) ........................................................14

*Atherton v. Tenet Healthcare Corp.*,
2005 WL 7084013 (S.C. Ct. App. May 25, 2005) ....................................24

*Belville v. Ford Motor Co.*,
13 F. Supp. 3d 528 (S.D. W. Va. 2014) .............................................11, 12

*Belville v. Ford Motor Co.*,
60 F. Supp. 3d 690 (S.D. W. Va. 2014) ....................................................11

*Birmingham Ry., Light & Power Co. v. Nalls*,
66 So. 5 (Ala. 1914) ..................................................................................21

*Boldt Co. v. Thomason Elec. & Am. Contractors Indem. Co.*,
820 F. Supp. 2d 703 (D.S.C. 2007) ..........................................................24

*Brashears v. Sight 'n Sound Appliances Ctrs., Inc.*,
981 P.2d 1270 (Okla. Civ. App. 1999)......................................................21

*Brewer v. Bros.*,
611 N.E.2d 492 (Ohio Ct. App. 1992) ........................................................5

*Briehl v. Gen. Motors Corp.*,
172 F.3d 623 (8th Cir. 1999)......................................................................8

*Brown v. Richards*,
840 P.2d 143 (Utah Ct. App. 1992)............................................................5

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Burlison v. Janssen*,
   141 N.W.2d 274 (Wis. 1966) ........................................................................................ 21

*Captain & Co., Inc. v. Stenberg*,
   505 N.E.2d 88 (Ind. Ct. App. 1987) ............................................................................. 4

*Carey v. Select Comfort Corp.*,
   2006 WL 871619 (Minn. Dist. Ct. Jan. 30, 2006) ....................................................... 7

*Corsello v. Verizon N.Y., Inc.*,
   967 N.E.2d 1177 (N.Y. 2012) .................................................................................... 22

*Craig & Bishop, Inc v. Piles*,
   247 S.W.3d 897 (Ky. 2008) ........................................................................................ 21

*Dalton v. Ford Motor Co.*,
   2002 WL 338081 (Del. Super. Ct. Feb. 28, 2002) ................................................... 7, 8

*Discover Bank v. Morgan*,
   363 S.W.3d 479 (Tenn. 2012) .................................................................................... 15

*Earthscapes Unlimited, Inc. v. Ulbirch*,
   703 S.E.2d 221 (S.C. 2010) ....................................................................................... 24

*Eckmann v. Nw. Fed. Sav. & Loan Ass'n*,
   436 N.W.2d 258 (N.D. 1989) ...................................................................................... 5

*Edel v. Southtowne Motors of Newnan II, Inc.*,
   789 S.E.2d 224 (Ga. Ct. App. 2016) .......................................................................... 14

*Edwards v. Zenimax Media Inc.*,
   2012 WL 4378219 (D. Colo. Sept. 25, 2012) ........................................................... 10

*Edwards v. Zenimax Media Inc.*,
   2013 WL 2317395 (D. Colo. May 28, 2013) ............................................................ 10

*Ellsworth v. Infor Glob. Sols. (Mich.), Inc.*,
   2012 WL 6641648 (D.S.C. Dec. 20, 2012) ............................................................... 24

*Everett v. TK-Taito, L.L.C.*,
   178 S.W.3d 844 (Tex. Ct. App. 2005) ......................................................................... 4

*Fazio v. Cypress/GR Houston I, L.P.*,
   403 S.W.3d 390 (Tex. Ct. App. 2013) ......................................................................... 5

*Felix v. Ganley Chevrolet, Inc.*,
   49 N.E.3d 1224 (Ohio 2015) ....................................................................................... 9

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Fernandes v. Havkin*,
   731 F. Supp. 2d 103 (D. Mass. 2010) ................................................................................ 22

*Finstad v. Washburn Univ. of Topeka*,
   845 P.2d 685 (Kan. 1993) ................................................................................ 11

*Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*,
   960 S.W.2d 41 (Tex. 1998) ................................................................................ 4

*Fryatt v. Lantana One*,
   866 So.2d 158 (Fla. Dist. Ct. App. 2004) ................................................................................ 20

*Gaddy Eng'g Co. v. Bowles Rice McDavid Graff & Love, LLP*,
   746 S.E.2d 568 (W.Va. 2013) ................................................................................ 24

*Gainsburg v. Bachrack*,
   270 N.Y.S. 727 (N.Y. App. Div. 1934) ................................................................................ 5

*Goldberg v. Mallinckrodt, Inc.*,
   792 F.2d 305 (2d Cir. 1986) ................................................................................ 17, 18

*Gray v. Boston Elevated Ry. Co.*,
   102 N.E. 71 (Mass. 1913) ................................................................................ 21

*Greyhound Corp. v. Ault*,
   238 F.2d 198 (5th Cir. 1956) ................................................................................ 17

*Hale v. Bain Motor Co.*,
   795 P.2d 1006 (N.M. 1990) ................................................................................ 21

*Hanlon v. AXA Equitable Life Ins. Co.*,
   2016 WL 2968990 (W. Va. May 20, 2016) ................................................................................ 24

*Hecht v. Metzler*,
   48 P. 37 (Utah 1897) ................................................................................ 5

*Houser v. Eckhardt*,
   506 P.2d 751 (Colo. Ct. App. 1972) ................................................................................ 21

*In re Bridgestone/Firestone, Inc.*,
   288 F.3d 1012 (7th Cir. 2002) ................................................................................ 3, 8

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*,
   2001 WL 1266317 (D.N.J. Sept. 30, 1997) ................................................................................ 8

*In re Gen. Motors LLC Ignition Switch Litig.*,
   2016 WL 3920353 (S.D.N.Y. July 15, 2016) ................................................................................ 22

**TABLE OF AUTHORITIES (CONT'D)**

**Page(s)**

*In re Gen. Motors LLC Ignition Switch Litig.*,
  257 F. Supp. 3d 372 (S.D.N.Y. 2017) ............................................................................ passim

*Jackson v. Wood*,
  859 P.2d 378 (Idaho 1993) ...................................................................................................... 12

*Jarman v. United Indus. Corp.*,
  98 F. Supp. 2d 757 (S.D. Miss. 2000) ...................................................................................... 8

*Jarvill v. Porky's Equip, Inc.*,
  189 P.3d 335 (Alaska 2008) ................................................................................................... 14

*Jones v. Westbrook*,
  379 P.3d 963 (Alaska 2016) ................................................................................................... 13

*Kantner v. Merck & Co., Inc.*,
  2007 WL 3092779 (Ind. Marion Cnty. Super. Ct. Apr. 18, 2007) ......................................... 13

*Kashmir Corp. v. Patterson*,
  616 P.2d 468 (Or. 1980) ......................................................................................................... 23

*Keller v. Woods*,
  2011 WL 555769 (Ky. Ct. App. Feb. 18, 2011) ...................................................................... 4

*Lambert v. Hasson*,
  823 P.2d 167 (Idaho Ct. App. 1991) ....................................................................................... 17

*Lee v. Gen. Motors Corp.*,
  950 F. Supp. 170 (S.D. Miss. 1996) .......................................................................................... 8

*Lux v. Envtl. Warranty, Inc.*,
  755 A.2d 936 (Conn. Ct. App. 2000) ...................................................................................... 17

*Mazzurco v. Aeon Fin., LLC*,
  2016 WL 3199737 (Ohio Ct. App. June 9, 2016) ..................................................................... 4

*McKee Elec. Co., Inc. v. Carson Oil Co.*,
  688 P.2d 1360 (Or. Ct. App. 1984) ......................................................................................... 20

*Mehan v. Gershkoff*,
  230 A.2d 867 (R.I. 1967) ......................................................................................................... 23

*Morrissey v. New England Deaconess Ass'n—Abundant Life Communities, Inc.*,
  57 N.E.3d 1066 (Table), 2016 WL 4723459 (Mass. App. Ct., Sept. 9, 2016) ........................ 23

*NGT Telecomms., Inc v. Int'l Bus. Machs., Inc.*,
  2000 WL 562745 (E.D. Pa. May 8, 2000) .............................................................................. 21

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Nieberding v. Barrette Outdoor Living, Inc.*,
   302 F.R.D. 600 (D. Kan. 2014) ............................................................. 11

*Normius v. Eckerd Corp.*,
   813 So.2d 985 (Fla. Dist. Ct. App. 2002) ............................................ 21

*O'Neil v. Simplicity, Inc.*,
   574 F.3d 501 (8th Cir. 2009) ................................................. 3, 4, 6, 7

*Porter v. Merck & Co., Inc.*,
   2005 WL 3719630 (Kan. Dist. Ct. Aug. 19, 2005) ............................. 11

*Powell v. Kan. Yellow Cab Co.*,
   131 P.2d 686 (Kan. 1942) ..................................................................... 17

*Process Eng'rs & Constructors, Inc v. DiGregorio, Inc.*,
   93 A.3d 1047 (R.I. 2014) ...................................................................... 23

*R.M. Dudley Constr. Co., Inc. v. Dawson*,
   258 S.W.3d 694 (Tex. App. 2008) ........................................................ 22

*Republic Min. & Mfg. Co. v. Elrod*,
   185 S.W.2d 99 (Ark. 1945) ..................................................................... 5

*Reybold Group, Inc. v. Chemprobe Techs., Inc.*,
   721 A.2d 1267 (Del. 1998) ...................................................................... 7

*Reynolds v. Pionear, LLC*,
   2016 WL 1248866 (E.D. Va. Mar. 25, 2016) ...................................... 21

*Rivera v. Wyeth-Ayerst Labs.*,
   283 F.3d 315 (5th Cir. 2002) .................................................................. 6

*Salmon v. CRST Expedited, Inc.*,
   2015 WL 1395237 (N.D. Okla. Mar. 25, 2015) .................................. 21

*Schnellmann v. Roettger*,
   645 S.E.2d 239 (S.C. 2007) ................................................................. 4, 5

*Season Comfort Corp. v. Ben A. Borenstein Co..*,
   655 N.E.2d 1065 (Ill. App. Ct. 1995) .................................................. 22

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010) .............................................................................. 10

*Shaver v. N.C. Monroe Constr. Co.*,
   306 S.E.2d 519 (N.C. Ct. App. 1983) .................................................... 4

**TABLE OF AUTHORITIES (CONT'D)**

**Page(s)**

*Sinclair Refining Co. v. Tompkins*,
   117 F.2d 596 (5th Cir. 1941) ........................................................................... 17

*Smallwood v. Bradford*,
   720 A.2d 586 (Md. 1998) ............................................................................... 21

*Stephens v. Wheeler*,
   213 N.W. 464 (Wis. 1927) ............................................................................... 5

*Stephenson v. Capano Dev., Inc.*,
   462 A.2d 1069 (Del. 1983) ............................................................................... 4

*Strickland v. A & C Mobile Homes*,
   321 S.E.2d 16 (N.C. Ct. App. 1984) ................................................................. 4

*Thiedemann v. Mercedes Benz*,
   872 A.2d 783 (N.J. 2005) ................................................................................. 9

*Tietsworth v. Harley-Davidson, Inc.*,
   677 N.W.2d 233 (Wis. 2004) ........................................................................ 4, 6

*Tilghman v. Dollenberg*,
   213 A.2d 324 (Pa. 1965) ................................................................................. 5

*Tolliver v. Visiting Nurse Ass'n of Midlands*,
   711 N.W.2d 908 (Neb. 2009) .......................................................................... 18

*Tudor Dev. Group, Inc. v. U.S. Fidelity & Guar. Co.*,
   968 F.2d 357 (3d Cir. 1992) ............................................................................ 22

*Vardaman v. Florence City Bd. of Educ.*,
   544 So.2d 962 (Ala. 1989) .............................................................................. 22

*Wallis v. Ford Motor Co.*,
   208 S.W.3d 153 (Ark. 2005) .......................................................................... 4, 6

*Walus v. Pfizer, Inc.*,
   812 F. Supp. 41 (D.N.J. 1993) ....................................................................... 8, 9

*West v. Carlson*,
   454 N.W.2d 307 (N.D. 1990) ........................................................................... 5

*Williams v. Planet Motor Car, Inc.*,
   738 N.Y.S.2d 170 (N.Y. Civ. Ct. 2001) ....................................................... 18, 20

*Wilson v. Marquette Elecs., Inc.*,
   630 F.2d 575 (8th Cir. 1980) .......................................................................... 20

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Wilson v. Style Crest Prods.*,
   627 S.E.2d 733 (S.C. 2006) ............................................................................................. 6

*Wood v. Wyeth-Ayerst Labs.*,
   82 S.W.3d 849 (Ky. 2002) ............................................................................................. 12

*WSG W. Palm Beach Dev., LLC v. Blank*,
   990 So. 2d 708 (Fla. Dist. Ct. App. 2008) ................................................................. 21

*Yost v. Gen. Motors Corp.*,
   651 F. Supp. 656 (D.N.J. 1986) ..................................................................................... 8

**Statutes**

13 Pa. Cons. Stat. § 2714(b) .............................................................................................. 5

13 Pa. Cons. Stat. § 2725(b) .............................................................................................. 6

Ark. Code § 4-2-714(2) ..................................................................................................... 5

Ark. Code § 4-2-725(2) ..................................................................................................... 6

Ky. Rev. Stat. § 367.220(1) ............................................................................................. 12

Minn. Stat. § 336.2-714(2) ................................................................................................ 5

Minn. Stat. § 336.2-725(2) ................................................................................................ 6

Mo. Stat. § 400.2-714(2) ................................................................................................... 5

Mo. Stat. § 400.2-725(2) ................................................................................................... 6

N.C. Gen. Stat. § 25-2-714(2) ........................................................................................... 5

N.C. Gen. Stat. § 25-2-725(2) ........................................................................................... 6

N.D. Cent. Code. § 41-02-104(2) ...................................................................................... 6

N.D. Cent. Code. § 41-02-93(2) ........................................................................................ 5

N.H. Rev. Stat. § 382-A:2-714(2) ..................................................................................... 5

N.H. Rev. Stat. § 382-A:2-725(2) ..................................................................................... 6

N.J. Stat. § 12A:2-714(2) .................................................................................................. 5

N.J. Stat. § 12A:2-725(2) .................................................................................................. 6

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

N.Y. U.C.C. § 2-714(2) ................................................................................... 5

N.Y. U.C.C. § 2-725(2) ................................................................................... 6

S.C. Code § 36-2-714(2) ................................................................................. 5

Tex. Bus. & Com. § 2.714(b) .......................................................................... 5

Tex. Bus. & Com. § 2.725(b) .......................................................................... 6

Uniform Commercial Code § 2-714(2) ........................................................... 5

Uniform Commercial Code § 2-725(2) ........................................................... 5

Utah Code § 70A-2-714(2) .............................................................................. 5

Utah Code § 70A-2-725(2) .............................................................................. 6

Wis. Stat. § 402.714(2) .................................................................................... 5

Wis. Stat. § 402.725(2) .................................................................................... 6

**Other Authorities**

1 MCLAUGHLIN ON CLASS ACTIONS § 5:56 & n.15 (13th ed.) ................................... 2, 3

6A Wash. Prac., Wash. Pattern Jury Instr. Civ. WPI 310.06 (6th ed.) ......................................... 21

**Rules**

Fed. R. Civ. P. 23 ............................................................................................. 10

## INTRODUCTION

Plaintiffs' Opening Memorandum exposes their unwarranted leaps of logic, ignoring established case-law and this court's prior decisions, to assert that most jurisdictions do not require a manifest defect in product defect cases and that plaintiffs do not have to prove lost income to recover lost time damages. For the reasons summarized and explained below, the Court should adopt New GM's positions for 35 remaining jurisdictions and dismiss the claims of dozens of plaintiffs as described in Exhibits 1 and 2 of New GM's Opening Brief.[1]

*First*, with respect to manifest defect, plaintiffs focus on damages formulas using the benefit-of-the-bargain and time-of-sale measures. Plaintiffs urge that the existence of those formulas means that no manifest defect is required. But adopting plaintiffs' approach would contradict numerous states' express, on-point case law requiring a manifest defect in product defect cases. For almost all of the states where the Court has already ruled in favor of a manifest defect (or where plaintiffs concede the requirement), both the manifest defect and the benefit-of-the-bargain/time-of-sale damage measures co-exist. That a jurisdiction measures damages in particular ways—such as benefit-of-the-bargain or time-of-sale—does not mean that such damages are recoverable without alleging and proving a manifest defect, a prerequisite for any recovery in a case involving allegedly defective products. That prerequisite is the majority view, as recognized by this Court: "the Seventh Circuit and New GM appear to be right that the 'majority view is that there is no legally cognizable injury in a product defect case, regardless of whether the claim is for fraud, violation of consumer protection statutes, breach of warranty, or any other theory, unless the alleged defect has manifested itself in the product used by the claimant.'" *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 423 n.18

---

[1] For the Court's convenience, New GM attaches as Exhibit 4 an index showing where New GM makes arguments and cites authorities for each jurisdiction, by issue, in its opening brief and this response.

(S.D.N.Y. 2017) ("*FACC MTD Opinion*") (quoting 1 MCLAUGHLIN ON CLASS ACTIONS § 5:56 & n.15 (13th ed.) (collecting cases)).

*Second*, for lost time damages, plaintiffs again attempt to use general statements about damages to contradict explicit, directly applicable law. Plaintiffs posit that because lost "free time" could be viewed as a type of incidental, consequential, compensatory or other kind of damage, they are entitled to recovery. This analysis ignores well settled law and cases from across the country holding that lost time damages are not recoverable—as incidental, consequential, or any other kind of damage—without proof of lost income. Plaintiffs have no answer to these authorities. Plaintiffs assert that their holdings were based on insufficient proof or evidence of "lost time" damages, but this only proves New GM's point. The evidence that was lacking in these decisions was evidence that the plaintiff had lost income.

*Third*, with regard to unjust enrichment, plaintiffs concede that 25 of the jurisdictions bar unjust enrichment claims, leaving ten states in dispute. Plaintiffs have no credible response to New GM's arguments that unjust enrichment claims are barred where a plaintiff has an adequate legal remedy in nine of those ten states. Plaintiffs assert that they can plead in the alternative, but do not cite any case law for this position, and the Court has rejected it for various jurisdictions. Moreover, an adequate remedy at law only needs to be available, not necessarily successful, to bar an unjust enrichment claim. Independently, nine of the ten disputed states hold that an express contract such as a warranty bars unjust enrichment claims. Plaintiffs' cases either involve plaintiffs arguing that the contract was invalid, do not address this issue, or are inconsistent with controlling case law.

## ARGUMENT

Based on the parties' exchange submissions, New GM anticipated and rebutted plaintiffs' arguments in New GM's opening brief, as well as distinguished the case law plaintiffs cite.

Accordingly, to avoid repetition, this response cross-references the relevant sections of New GM's opening brief in responding to plaintiffs' arguments.

## I.     PLAINTIFFS CANNOT REBUT THAT ALMOST ALL CLAIMS AT ISSUE REQUIRE A MANIFEST DEFECT.

Plaintiffs continue to ignore—but cannot avoid—the "majority view" that manifest defect is required for all claims, as recognized by this Court.  *FACC MTD Opinion*, 257 F. Supp. 3d at 423 n.18 (emphasis added) (quoting 1 MᴄLᴀᴜɢʜʟɪɴ ᴏɴ Cʟᴀss Aᴄᴛɪᴏɴs § 5:56 & n.15 (13th ed.) (collecting cases)).  The Court's conclusion that the majority view requires a manifest defect for all claims is well-supported by appellate case law, which plaintiffs also disregard.  *E.g.*, *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1017 (7th Cir. 2002) (explaining that "most states would not entertain the sort of theory that plaintiffs press"); *O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 504-05 (8th Cir. 2009) ("No-injury suits such as this one, however, are routinely dismissed for failure to state a claim.").  Plaintiffs implausibly assert that only 6 of the 35 jurisdictions at issue would follow what the Court has recognized as the "majority view."  In this section, New GM first shows how plaintiffs' overarching argument is without merit, and then analyzes each state's authorities using the same categories as in New GM's opening brief.  New GM Br. at 5.

### A.     Measuring Damages Using Benefit-Of-The-Bargain And Time-Of-Sale Are Completely Consistent With Requiring A Manifest Defect.

New GM's opening brief assembled the relevant case law confirming the "majority view" that a manifest defect is required for all claims.[2]  New GM Br. at 6-30.  By contrast, plaintiffs have no on-point case law regarding manifest defect for the jurisdictions that remain in dispute. Plaintiffs attempt to hide this deficiency by arguing that a jurisdiction measuring damages by

---

[2]  Specifically, all 35 jurisdictions require a manifest defect for all claims, except for Hawaii (which does not require a manifest defect for any claim at issue), Maine (which does not require a manifest defect for common law fraud), and Vermont (which does not require a manifest defect for consumer fraud).

using benefit-of-the-bargain and/or at time-of-sale means that the jurisdiction would not require a manifest defect.

Plaintiffs' position is belied by the fact that nearly all jurisdictions that indisputably require a manifest defect also adopt the benefit-of-the-bargain and time-of-sale measures.  *Id*. at 28-30.  Texas, Arkansas, Delaware, Indiana, Minnesota, North Carolina, and South Carolina all have decisions expressly measuring consumer fraud damages using benefit-of-the-bargain and/or time-of-sale, yet the Court has held, or plaintiffs concede, that each of these jurisdictions requires a manifest defect.[3]  Texas, Wisconsin, Arkansas, Kentucky, North Carolina, North Dakota, Ohio, South Carolina, and Utah all allow benefit-of-the-bargain damages for common law fraud, yet these jurisdictions indisputably require a manifest defect.[4]  Similarly, Texas, New York,

---

[3]  *Everett v. TK-Taito, L.L.C.*, 178 S.W.3d 844, 858 (Tex. Ct. App. 2005) ("The DTPA allows a plaintiff to recover for misrepresentation under the higher of the two common law measures of economic damages: either the 'out-of-pocket' measure or the 'benefit-of-the-bargain' measure."); *Arthur Andersen & Co. v. Perry Equip. Co.*, 945 S.W.2d 812, 817 (Tex. 1997) ("Under the DTPA, a plaintiff may recover under the damage theory that provides the greater recovery.  Both measures of damages are determined at the time of sale.") (internal citations omitted); *Wallis v. Ford Motor Co.*, 208 S.W.3d 153, 154, 160 (Ark. 2005) (plaintiff sought "benefit of the bargain" damages under ADTPA claim); *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1076 (Del. 1983) ("most common and accept standard is the benefit of the bargain rule" for consumer fraud act claims); *Captain & Co., Inc. v. Stenberg*, 505 N.E.2d 88, 98-99 (Ind. Ct. App. 1987) (holding that benefit-of-the-bargain measure applies to Deceptive Consumer Sales Act); *O'Neil*, 574 F.3d at 504 (plaintiffs sought benefit-of-the-bargain damages under Minnesota consumer fraud act); *Strickland v. A & C Mobile Homes*, 321 S.E.2d 16, 19 (N.C. Ct. App. 1984) ("In some unfair trade practice cases our courts have held the benefit of the bargain damage rule applies … ."); *Schnellmann v. Roettger*, 645 S.E.2d 239, 241 (S.C. 2007) (holding that benefit-of-the-bargain measure applied in case involving common law fraud and unfair trade practices claims).

[4]  *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 49 (Tex. 1998) ("Texas recognizes two measures of direct damages for common-law fraud: the out-of-pocket measure and the benefit-of-the-bargain measure."); *Tietsworth v. Harley-Davidson, Inc.*, 677 N.W.2d 233, 239 (Wis. 2004) ("damages in intentional misrepresentation cases are measured according to the 'benefit of the bargain' rule"); *Wallis*, 208 S.W.3d at 155 ("this court has applied two measures of damages for common-law fraud: (1) the benefit-of-the-bargain measure … and (2) the out-of-pocket measure"); *Stephenson*, 462 A.2d at 1076 ("most common and accepted standard is the benefit of the bargain rule" for common law fraud claims); *Keller v. Woods*, 2011 WL 555769, at *3 (Ky. Ct. App. Feb. 18, 2011) ("One induced by fraudulent representations to enter into a contract is entitled to recover as damages, not only what he actually parted with, but benefits of the bargain."); *Shaver v. N.C. Monroe Constr. Co.*, 306 S.E.2d 519, 526 (N.C. Ct. App. 1983) ("The proper measure of damages in this case is the benefit of the bargain" which "has generally been applied in fraud cases"); *Mazzurco v. Aeon Fin., LLC*, 2016 WL

Wisconsin, Pennsylvania, Arkansas, North Dakota, Ohio, and Utah all measure common law fraud damages using the time-of-sale, and all require a manifest defect.[5]  For breach of implied warranty, all jurisdictions that the Court has held, or plaintiffs agree, require a manifest have adopted Uniform Commercial Code § 2-714(2), providing that the "measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted."[6]  Likewise, almost all jurisdictions requiring a manifest defect have adopted UCC § 2-725(2) providing that

---

3199737, at *2 (Ohio Ct. App. June 9, 2016) (holding that benefit of the bargain may be used to measure fraud damages); *Eckmann v. Nw. Fed. Sav. & Loan Ass'n*, 436 N.W.2d 258, 261 (N.D. 1989) ("the traditional 'out-of-pocket' or 'benefit-of-the-bargain' rules usually applied in deceit actions"); *Schnellmann*, 645 S.E.2d at 241 ("for determining damages from fraud … [i]t is the well-settled law of this state that the proper method in such a case is the benefit of the bargain approach"); *Brown v. Richards*, 840 P.2d 143, 150 (Utah Ct. App. 1992) (Utah follows benefit-of-the-bargain rule for fraud).

[5]  *Fazio v. Cypress/GR Houston I, L.P.*, 403 S.W.3d 390, 394-95 (Tex. Ct. App. 2013) ("Both measures are determined at the time of the sale induced by the fraud."); *Gainsburg v. Bachrack*, 270 N.Y.S. 727, 733 (N.Y. App. Div. 1934) (holding for fraud that the "measure of damages in such a case is the difference between the amount paid for the property and the value thereof at the time of the sale or acquisition"); *Stephens v. Wheeler*, 213 N.W. 464, 467 (Wis. 1927) ("Furthermore, in actions such as this for deceit, the measure of damages ordinarily is to be determined as of the time of the transaction."); *Tilghman v. Dollenberg*, 213 A.2d 324, 326-27 (Pa. 1965) (fraud damages are measured by "the difference between the real value of the property purchased at the time of sale and what was paid for it"); *Republic Min. & Mfg. Co. v. Elrod*, 185 S.W.2d 99, 100 (Ark. 1945) ("the measure of damages [for fraud] would be the difference between the value of the property at the time the sale was made and the price paid"); *West v. Carlson*, 454 N.W.2d 307, 312 (N.D. 1990) ("It is well established that the measure of damages for fraud is the difference between what the property received would have been worth if it was as represented and what it was actually worth at the time of sale."); *Brewer v. Bros.*, 611 N.E.2d 492, 496 (Ohio Ct. App. 1992) ("Where there is fraud inducing the purchase or exchange of real estate, Ohio courts have held that the proper measure of damages is the difference between the value of the property as it was represented to be and its actual value at the time of purchase or exchange. This is known as the 'benefit of the bargain' rule."); *Hecht v. Metzler*, 48 P. 37, 41 (Utah 1897) ("In such actions, as in actions for fraud in the sale of chattels, it has usually been held that the measure of damages is the difference in value between the land as it would have been if as represented and as it actually was at the time of the sale.") (internal citations omitted).

[6]  Tex. Bus. & Com. § 2.714(b); N.Y. U.C.C. § 2-714(2); 13 Pa. Cons. Stat. § 2714(b); Wis. Stat. § 402.714(2); Ark. Code § 4-2-714(2); Minn. Stat. § 336.2-714(2); Mo. Stat. § 400.2-714(2); N.H. Rev. Stat. § 382-A:2-714(2); N.J. Stat. § 12A:2-714(2); N.C. Gen. Stat. § 25-2-714(2); N.D. Cent. Code. § 41-02-93(2); S.C. Code § 36-2-714(2); Utah Code § 70A-2-714(2).

5

a cause of action accrues when the breach occurs, and a breach of warranty occurs when tender of delivery is made, on which plaintiffs also rely.[7]

These myriad authorities establish that using benefit-of-the-bargain or time-of-sale to measure damages is consistent with requiring a manifest defect as a requirement for recovery in a product defect claim.  The "application of benefit-of-the-bargain damages … has nonetheless been limited to instances where the actual product received by the purchaser manifests that it is different from that which was promised."  *Wallis v. Ford Motor Co.*, 208 S.W.3d 153, 155 (Ark. 2005); *see also Tietsworth v. Harley-Davidson, Inc.*, 677 N.W.2d 233, 240 (Wis. 2004) ("But an allegation that a product is diminished in value because of an event or circumstance that might— or might not—occur in the future is inherently conjectural and does not allege actual benefit-of-the-bargain damages with the 'reasonable certainty' required to state a fraud claim.").  If the plaintiff's product "has not exhibited the alleged defect, they have necessarily received the benefit of their bargain."  *O'Neil,* 574 F.3d at 504 (8th Cir. 2009); *see also Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 320 (5th Cir. 2002) ("By plaintiffs' own admission, Rivera paid for an effective pain killer, and she received just that—the benefit of her bargain."); *Wilson v. Style Crest Prods.*, 627 S.E.2d 733, 736 (S.C. 2006) ("[T]he defective products the plaintiffs had purchased had performed satisfactorily and, therefore, the courts found that the plaintiffs had reaped the benefit of their bargain and could not bring a warranty action.").

Plaintiffs' argument thus confuses how damages are **measured** with a **prerequisite** about whether any product defect economic loss claim is cognizable.  Many jurisdictions use benefit-of-the-bargain and time-of-sale to measure or calculate the amount of damages.  But such

---

[7]   Tex. Bus. & Com. § 2.725(b); N.Y. U.C.C. § 2-725(2); 13 Pa. Cons. Stat. § 2725(b); Wis. Stat. § 402.725(2); Ark. Code § 4-2-725(2); Minn. Stat. § 336.2-725(2); Mo. Stat. § 400.2-725(2); N.H. Rev. Stat. § 382-A:2-725(2); N.J. Stat. § 12A:2-725(2); N.C. Gen. Stat. § 25-2-725(2); N.D. Cent. Code § 41-02-104(2); Utah Code § 70A-2-725(2).

damages can be awarded only if the plaintiff alleges and proves a manifest defect.  Thus, there is no inconsistency in using these measures of damages while requiring a manifest defect, and plaintiffs' argument to the contrary is meritless.

### B.   Plaintiffs Cannot Avoid The Clear Authority In 20 Jurisdictions Requiring A Manifest Defect For All Claims.

New GM previously explained that 20 of the 35 jurisdictions have on-point case law explicitly requiring a manifest defect.  New GM Br. at 6-18.  While plaintiffs concede 6, their arguments for the remaining 14 only confirm that New GM's positions are correct:

**Minnesota:**  Plaintiffs assert that fraudulent concealment does not require a manifest defect, but this ignores the plain language of *O'Neil v. Simplicity* holding that "[w]here, as in this case, a product performs satisfactorily and never exhibits an alleged defect, ***no cause of action*** lies."  574 F.3d at 504 (emphasis added) (internal citations omitted).  Minnesota state court cases have specifically held that "[d]iminished value premised upon a mere possibility of future product failure is too speculative and uncertain to support a fraud claim."  *Carey v. Select Comfort Corp.*, 2006 WL 871619, at *4 (Minn. Dist. Ct. Jan. 30, 2006).  Plaintiffs do not cite, much less attempt to distinguish, either of these cases.  Pls. Memo. at 23.  And plaintiffs have no on-point case law and cite only to a case allowing out-of-pocket losses for fraud.  *Id*.

**Delaware:**  Plaintiffs claim manifestation is not required for their breach of implied warranty claim, but this ignores *Dalton v. Ford Motor Co.*, which holds that a plaintiff cannot "recover 'damages' to fix an alleged defective product, which has never manifested."  2002 WL 338081, at *5 (Del. Super. Ct. Feb. 28, 2002).  This holding of "no manifest defect, no damages" applies to any claim brought under Delaware law.  Moreover, implied warranty claims specifically require "injury," *Reybold Group, Inc. v. Chemprobe Techs., Inc.*, 721 A.2d 1267, 1269 (Del. 1998), and *Dalton* holds that without manifest defect there is no injury or damages.

7

Finally, *Dalton* expressly adopted *Briehl v. Gen. Motors Corp.*, 172 F.3d 623 (8th Cir. 1999) and explained that it dismissed "similar breach of express and implied warranty, fraudulent concealment, and consumer protection claims" for lack of a manifest defect.  2002 WL 338081, at *5.  Plaintiffs make no attempt to distinguish *Dalton* and do not cite any Delaware case law addressing the manifest defect requirement.  Pls. Memo. at 10.

**Mississippi:**  Plaintiffs have no response to *Jarman v. United Indus. Corp.*, 98 F. Supp. 2d 757, 768 (S.D. Miss. 2000) and *Bridgestone/Firestone,* 288 F.3d at 1017, and so ask the Court not to follow these decisions.  Pls. Memo. at 25 n.45.  But this Court has previously relied on *Jarman* as an example of the "ample precedent holding that injury (and, relatedly, actual damages) for common law purposes requires the manifestation of a defect," *FACC MTD Opinion,* 257 F. Supp. at 438, and there is no reason or basis to ignore the Seventh Circuit's decision in *Bridgestone/Firestone*.  These cases (as well as *Lee v. Gen. Motors Corp.*, 950 F. Supp. 170, 172 (S.D. Miss. 1996)) establish that Mississippi requires a manifest defect for all claims.  New GM Br. at 8-9.  Plaintiffs have no on-point authorities and cite only the general language of Mississippi's consumer fraud statute and cases using benefit-of-the-bargain damages, which are fully consistent with a state requiring a manifest defect.

**New Jersey:**  Contrary to plaintiffs' assertions, Pls. Memo. at 32, the multiple New Jersey district court cases New GM cites interpret New Jersey law as well of the law of other states.  New GM Br. at 9-10; *see Yost v. Gen. Motors Corp.*, 651 F. Supp. 656, 657 (D.N.J. 1986) (considering New Jersey claims brought by New Jersey plaintiff); *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 2001 WL 1266317, at *2 (D.N.J. Sept. 30, 1997) (same).  The plaintiff in *Walus v. Pfizer, Inc.*, brought a variety of claims including fraud and failure to warn; the *Walus* court considered only the New Jersey Product Liability Act because that Act

superseded plaintiffs' other claims, which is also true for plaintiffs here.  812 F. Supp. 41, 43 (D.N.J. 1993); *see* New GM Br. at 11 n.12.  Thus, *Walus* holds that a manifest defect is required for claims based on allegedly defective products.

Plaintiffs ignore New GM's other authorities holding that a defect must manifest before the warranty period expires to be actionable under the New Jersey Consumer Fraud Act and the New Jersey Supreme Court's rejection of the same type of damages and expert testimony plaintiffs rely on here.  New GM Br. at 10-11.  And plaintiffs cite no case law that supports their arguments.  *Thiedemann v. Mercedes Benz* did not discuss the manifest defect requirement, the plaintiffs alleged manifestation, and the court rejected plaintiffs' claims because the vehicle had been repaired.  872 A.2d 783, 787-88, 794 (N.J. 2005); New GM Br. at 11.  *Annarella v. Pugliese*, 2014 WL 4636347, at *2 (N.J. App. Div. Sept. 18, 2014) simply recites the general elements of fraud, with no discussion of manifest defect.

**Ohio:**  Plaintiffs ignore how the Ohio Supreme Court in *Felix v. Ganley Chevrolet, Inc.*, 49 N.E.3d 1224 (Ohio 2015), relied on and adopted numerous leading authorities requiring a manifest defect, incorporating that requirement in the OCSPA's element of "actual damages." New GM Br. at 11-12; Pls. Memo. at 38 & n.68.  By contrast plaintiffs cite a single trial court case predating *Ganley*, which was superseded by that Supreme Court decision establishing Ohio law.  As for implied warranty, Ohio federal district courts have specifically held that Ohio requires a manifest defect.  New GM Br. at 12.  Plaintiffs cite no case law to the contrary.

**Colorado:**  New GM cites directly on-point federal Colorado case law holding that a manifest defect is required.  New GM Br. at 12-13.  Plaintiffs claim that under New GM's authority "it was the proposed measure of damages … that necessitated proof of defect," Pls. Memo. at 8 n.12, but the plaintiffs in that case alleged that "class members suffered economic

injury at the time of the purchase of the product when they purchased the product because the Defect was not revealed, meaning that they did not receive the benefit of the bargain," the same theory of plaintiffs here. *Edwards v. Zenimax Media Inc.*, 2013 WL 2317395, at *3 (D. Colo. May 28, 2013). Moreover, contrary to plaintiffs' assertion, *Zenimax* considered claims including "false advertising" and "breach of implied warranty." *Edwards v. Zenimax Media Inc.*, 2012 WL 4378219, at *1, 5-6 (D. Colo. Sept. 25, 2012). By contrast, plaintiffs cite only a case that did not consider manifest defect and where on reconsideration the court dismissed all of plaintiffs' claims. Pls. Memo. at 7; New GM Br. at 13.[8]

**South Dakota:** New GM cites directly on-point South Dakota case law holding that a manifest defect is required. New GM Br. at 13-14. Plaintiffs complain that New GM's authority is a state trial court case, Pls Memo. at 45 n. 77, but this is a hollow objection as plaintiffs rely on state trial court cases for their positions in states such as Maine and Ohio. *Id*. at 20-21, 38. This Court also has relied on state trial court cases to determine state law. *E.g.*, *FACC MTD Opinion*, 257 F. Supp. 3d at 437-38. Plaintiffs also object that the South Dakota case adopts a North Dakota case, but jurisdictions commonly cite and rely on law from other states in determining their own law. This is especially true in an area like manifest defect where so many states have decisions adopting the requirement. By contrast, plaintiffs cite a case that did not discuss the manifest defect requirement and where the defect had apparently manifested, resulting in out-of-pocket losses. New GM Br. at 14.

---

[8] Moreover, the Colorado CPA does not provide remedies to class members. New GM Br. at 13 n.13. Plaintiffs' claim this provision is inconsistent with *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, but that opinion expressly did "not decide whether a state law that limits the remedies available in an existing class action would conflict with Rule 23." 559 U.S. 393, 401 (2010). The several cases New GM cites all post-date *Shady Grove* and hold that the Colorado CPA's limitation on remedies available in a class action applies in federal court. New GM Br. at 13 n.13.

**Kansas:**  Plaintiffs ignore New GM's on-point case of *Porter v. Merck & Co., Inc.*, 2005 WL 3719630, at *3 (Kan. Dist. Ct. Aug. 19, 2005) holding that a manifest defect is required. Plaintiffs misinterpret *Finstad v. Washburn Univ. of Topeka*, where plaintiffs had enrolled in a school falsely representing that its program was accredited.  845 P.2d 685, 691 (Kan. 1993).  In *Finstad*, the "students claimed that they were aggrieved because they paid tuition for a program that was not accredited," the same as plaintiffs' allegations that they paid for a defect-free vehicle but received one with a defect.  *Id.* at 688.  The Kansas Supreme Court held that allegations that the plaintiff thought they were buying one thing but received another were insufficient to state a claim; instead some additional showing of injury or loss is required.  *Id.* at 691.  That additional showing equates to a manifest defect requirement, reinforcing *Porter*.

By contrast, plaintiffs rely on *Nieberding v. Barrette Outdoor Living, Inc.*, a case where the defect had manifested for the plaintiff and that did not consider Kansas state cases, such as *Porter* or *Finstad*, which hold that a manifest defect is required.  302 F.R.D. 600, 612 (D. Kan. 2014); New GM Br. at 15.  Kansas law is determined by Kansas state courts, not federal district courts.  *See FACC MTD Opinion*, 257 F. Supp. 3d at 432-33 (deciding not to apply economic loss rule to New York fraud claims, despite numerous SDNY decisions to the contrary, relying on state court decisions).  Plaintiffs other cite involves the economic loss rule, not manifest defect.  These are two separate rules and the Court has held that a jurisdiction can reject the economic loss rule for claims while still requiring a manifest defect.  New GM Br. at 14.

**West Virginia:**  New GM cites on-point decisions from the *Belville v. Ford Motor Co.* litigation, which involved an alleged vehicle defect.  13 F. Supp. 3d 528, 542-43 (S.D. W. Va. 2014); 60 F. Supp. 3d 690, 700 (S.D. W. Va. 2014).  Plaintiffs try to distinguish *Belville* as "involv[ing] allegations of diminished value, not overpayment at the time of sale."  Pls. Memo.

at 51 n.87.   But this purported distinction is nonsensical, as overpayment at the time of sale is a type of diminished value damages.   In any case, the *Belville* "Plaintiffs allege they have suffered economic damages because they paid more to purchase or lease the vehicles than their actual worth," the same allegation as plaintiffs here.   13 F. Supp. 3d at 532.   Plaintiffs' only citation does not discuss the manifest defect requirement.   Pls. Memo. at 50-51; New GM Br. at 15.

**Kentucky:**   Plaintiffs assert Kentucky does not require manifestation for consumer protection claims, but cannot dispute that Kentucky applies the manifest defect requirement to a variety of claims, including those similar to what plaintiffs bring here.   In *Wood v. Wyeth-Ayerst Labs.*, plaintiffs sought damages including economic losses and financial expenses for a defective drug.   82 S.W.3d 849, 851, 854 (Ky. 2002).   The Kentucky Supreme Court held that without a manifestation of physical injury, plaintiffs could not recover for their economic losses. *Id.* at 855-56.   The same holding should apply to the consumer protection claims that plaintiff brings here.   See also New GM Br. at 15-16.   Moreover, the Kentucky consumer protection statute requires proof of "actual damages," Ky. Rev. Stat. § 367.220(1), which this Court has held supports requiring a manifest defect.   New GM Br. at 19.   Plaintiffs' federal district court cases, which do not even discuss the manifest defect requirement, cannot overcome Kentucky's highest court or its statutory language.   Pls. Memo. at 19-20; New GM Br. at 15-16.

**Idaho:**   Plaintiffs claim that a manifest defect is not required for fraudulent concealment, but *Jackson v. Wood* holds that a plaintiff has no ascertainable loss or actual damages without manifestation. 859 P.2d 378, 379 (Idaho 1993); New GM Br. at 16-17.   That decision requires a manifest defect not only for consumer fraud claims, but also for common law fraud claims where proof of injury and damages is required.   New GM Br. at 17.   Plaintiffs' only cases concern

measuring damages using benefit-of-the-bargain and time-of-sale, which cannot overcome the plain holding of the Idaho Supreme Court.  Pls. Memo. at 14.

**Indiana:**  Plaintiffs assert manifest defect is not required for either common law fraud or implied warranty, but ignore the plain language of *Kantner v. Merck & Co., Inc.*, that without a manifest defect a plaintiff has "no injury" and "no actual damages."  2007 WL 3092779, ¶¶ 17-18 (Ind. Marion Cnty. Super. Ct. Apr. 18, 2007).  As injury and actual damages are requirements of common law fraud and implied warranty, plaintiffs' argument fails.  New GM Br. at 24-28 & n.17.  Plaintiffs' cases do not reject manifest defect but only support that damages are measured by benefit-of-the-bargain and time-of-sale.  Under Indiana law, there cannot be any recovery under such measures without a manifest defect. Pls. Memo. at 15.

**Alaska:**  Plaintiffs again ignore controlling state supreme court case law, instead relying on decisions that have nothing to do with the manifest defect requirement.  In *Jones v. Westbrook*, the plaintiff financed the sale of his business to a third party in 2004, and expected to have a security interest in the business's assets.  379 P.3d 963, 966 (Alaska 2016).  Plaintiffs hired the defendant, an attorney, to draft the sales agreement, but when plaintiff learned that the defendant attorney had failed to obtain a security interest in the business's assets, plaintiff sued in 2013 bringing claims including under the Alaska UTPA.  *Id.*  Defendant argued that the statute of limitations for a UTPA claim had long since passed.  The Alaska Supreme Court rejected this argument, holding that plaintiff did not suffer an "ascertainable loss of money or property" in 2004, when the contract was signed, or even in 2005, when the buyer began missing payments.  Instead, plaintiff had no loss until 2011, when the IRS took a security interest in the business's assets and so plaintiff could no longer attempt to exercise the lienholder remedies he believed he had.  *Id.* at 970.  In other words, the plaintiff had no UTPA claim until the defect in the

documents (the absence of a security interest) actually manifested and harmed plaintiff, even though plaintiff had not received the benefit of his bargain (a sale agreement with a security interest) several years earlier. *Jarvill v. Porky's Equip, Inc.* reaches a similar conclusion for common law claims. 189 P.3d 335, 336-39 (Alaska 2008); New GM Br. at 17-18. Plaintiffs cite cases that do not consider when the plaintiff's injury manifested, do not discuss the manifest defect requirement, and do not concern alleged defects. New GM Br. at 18.

**Georgia:** Plaintiffs claim that fraudulent concealment does not require a manifest defect, but ignore Georgia case law holding that without manifestation a plaintiff has not suffered an "actual injury." *Edel v. Southtowne Motors of Newnan II, Inc.*, 789 S.E.2d 224, 228 (Ga. Ct. App. 2016). Fraudulent concealment claims require injury, and thus without a manifest defect plaintiffs cannot prove an essential element of such claims. *Artzner v. A&A Exterminators, Inc.*, 531 S.E.2d 200, 204 (Ga. Ct. App. 2000) (common law fraud requires "damage to the plaintiff"). Plaintiffs cite only a case stating that damages are measured at the time-of-sale, which is irrelevant to whether there can be any recovery without a manifest defect.

### C. Plaintiffs Have No Answer For The Nine States That Require A Manifest Defect Under This Court's Prior Holdings Regarding Consumer Fraud Statutes With Limited Damages.

This Court previously held that Oklahoma requires a manifest defect for consumer fraud based on state law interpreting its consumer fraud statute narrowly, including requiring "actual damages." New GM Br. at 19-20. Nine states at issue do not have directly on-point case law regarding manifest defect for consumer fraud, but interpret the available damages strictly, similar to Oklahoma, and thus likewise require a manifest defect. *Id.* at 19-20 & n.14. Plaintiffs do not address this argument in their opening memorandum, and cannot meaningfully distinguish these nine states from Oklahoma for purposes of consumer fraud. Moreover, New GM already has largely rebutted the plaintiffs' cases and arguments for these nine states. *See supra* Section I.A.;

New GM Br. at 20-22.  Thus, this subsection addresses only the arguments and case law that New GM has not previously distinguished.

**Iowa & Nebraska:**  Plaintiffs admit they could not find any case law in these jurisdictions.  Plaintiffs assert that the Iowa and Nebraska statutes' limiting recovery to "actual damages" supports dispending with manifestation, Pls. Memo. at 16, 27-28, but this Court held the exact opposite for Oklahoma.  Because Iowa and Nebraska allow recovery only of "actual damages," the Court's prior precedent regarding Oklahoma applies and thus Iowa and Nebraska require a manifest defect.

**Tennessee:**  Plaintiffs ignore that the Tennessee statute requires "actual harm to the aggrieved party, such as lost profits or added costs" and has been interpreted narrowly by the Tennessee Supreme Court.  *Discover Bank v. Morgan*, 363 S.W.3d 479, 497-98 (Tenn. 2012); *see also Akers v. Prime Succession of Tenn., Inc.*, 387 S.W.3d 495, 509-10 (Tenn. 2012) (explaining narrow scope of TCPA damages and that plaintiffs cannot bring claims where their injuries "do not have tangible economic value as required by the TCPA").  Under this Court's Oklahoma ruling, this strict construction means that Tennessee requires a manifest defect.

### D.    Four Jurisdictions Would Follow The Majority View Requiring A Manifest Defect For Consumer Fraud Claims.

This Court and Second Circuit precedent hold that where a jurisdiction has no on-point case law, the state would follow the position adopted by many other states and federal courts.  New GM Br. at 22.  Four states have no on-point case law, and so would follow what the Court has recognized as the "majority view" requiring manifestation for all clams.  *Id.* at 22-23.  Once again, plaintiffs have no response to this argument.  Moreover, New GM already has refuted all of plaintiffs' arguments for these four states in its opening brief.  *Id*. at 22-23.

### E.  Under This Court's Precedents A Manifest Defect Is Required For Almost All Fraudulent Concealment and Implied Warranty Claims.

Under this Court's precedents, particularly its ruling on Pennsylvania, requirements of injury, actual damages, or (for implied warranty) defects means that a manifest defect is a prerequisite for fraud, implied warranty, and unjust enrichment claims.  New GM Br. at 24-28. In sum, "[i]n the absence of Pennsylvania case law to the contrary, the Court is persuaded by the ample precedent holding that injury (and, relatedly, actual damages) for common law purposes requires the manifestation of a defect." *FACC MTD Opinion*, 257 F. Supp. 3d at 438.  Plaintiffs cannot rebut this plain language from the Court's opinions.  Nearly all of the 35 jurisdictions require injury, damages, and or defect for both fraudulent concealment and implied warranty, and thus also require a manifest defect for those claims.  New GM Br. at 24-28 & nn. 17-20.

New GM has rebutted plaintiffs' arguments on these issues in this brief or its opening one.  *Id.* at 28-30 & nn. 21-26; *supra* Sections I.A. & I.B.  Plaintiffs rely almost solely on asserting that a jurisdiction measuring damages using benefit-of-the-bargain or time-of-sale, or having claims accrue at the time of sale, shows the state would not require a manifest defect. Such damages measures and accrual rules are used by the vast majority of states that the Court has held, or the plaintiffs concede, require a manifest defect and have no bearing on the question at issue.  New GM Br. at 28-30 & nn. 21-26; *supra* Section I.A.  The express case law set forth in New GM's opening brief at Section I.A. and *supra* at Section I.B. as well as the Court's reasoning regarding Pennsylvania is controlling and requires a manifest defect for fraud, implied warranty, and unjust enrichment claims.

## II.  WELL SETTLED LAW ACROSS JURISDICTIONS HOLD THAT LOST "FREE TIME" IS NOT RECOVERABLE WITHOUT PROOF OF LOST INCOME.

New GM's opening brief cited dozens of decisions from across the country and authoritative treatises holding that "lost time" is not compensable unless accompanied by proof

of lost income or earnings.  New GM Br. at 30-44.  New GM specifically cited numerous cases holding that lost time was not recoverable under jurisdictions' consumer protection statutes, and explained how that logic applied to statutes in other states.  *Id.* at 38-43 & nn. 31-32.

Plaintiffs do not distinguish these myriad authorities.  Plaintiffs frequently assert that the cases New GM cites are based on a lack of evidence or proof.  *E.g.*, Pls. Memo. at 10 n.15, 13 n.22, 14 n.27, 19 n.35, 20 n.38, 24 n.46, 26 n.52, 33.  But the missing evidence in these cases is precisely the required showing that a plaintiff lost income.  *E.g.*, *Lux v. Envtl. Warranty, Inc.*, 755 A.2d 936, 945 (Conn. Ct. App. 2000) (rejecting lost time claims where plaintiff had no evidence of a decrease in sales, expenses incurred, or other pecuniary losses); *Greyhound Corp. v. Ault*, 238 F.2d 198, 202 (5th Cir. 1956) (applying Georgia law) (reversing decision where plaintiff failed to submit evidence that her "earnings had been in anywise diminished" and holding that "[t]here was no evidence on which the jury could estimate her pecuniary loss, if any. In this connection loss of time means loss of earnings.").[9]  The overwhelming majority of plaintiffs here lack proofs of lost income, and their claims should be rejected for the same reason.

Plaintiffs also resort to mischaracterizing the opinions rejecting lost "free time" damages. For example, in attempting (and failing) to distinguish New GM's New York citations, plaintiffs assert that *Goldberg v. Mallinckrodt, Inc.*, involved a claim for attorneys' fees.  792 F.2d 305, 309 (2d Cir. 1986).  But plaintiffs ignore that the *Goldberg* plaintiff sought attorneys' fees incurred in litigation with other parties (not the defendant).  While attorneys' fees generally are

---

[9]  *Lambert v. Hasson*, 823 P.2d 167, 174 (Idaho Ct. App. 1991) (affirming that "lost time was the same thing as the claim for lost earnings" and interpreting jury instructions to allow both would "yield a duplicative award of damages"); *Powell v. Kan. Yellow Cab Co.*, 131 P.2d 686, 686, 690 (Kan. 1942) ("Damages for time lost by woman as result of personal injuries sustained by her were not recoverable, in absence of other evidence on such question than that she had to employ someone to do her work."); *Sinclair Refining Co. v. Tompkins*, 117 F.2d 596, 598 (5th Cir. 1941) (Mississippi law) (holding that "loss of time means loss of earnings" and plaintiff could not recover when "there is neither pleading nor proof of loss of earnings").

not recoverable, there is an exception "under New York law, where the litigation is caused by the wrongful act of a third party, the person is entitled to recover from the third party the reasonable value of attorneys' fees and other expenses thereby suffered or incurred." *Id.* at 309 (internal citations omitted). The Second Circuit held that even if this rule on third-party litigation applied, "personal time spent defending litigation" was not recoverable: "None of the New York cases cited *supra* with respect to this exception holds that lost personal time is recoverable. In the absence of such a holding by the New York courts, we cannot equate litigation expenses, which are clearly recoverable, with time spent away from one's profession." *Id.* Plaintiffs also misstate *Williams v. Planet Motor Car, Inc.*, 738 N.Y.S.2d 170, 177-78 (N.Y. Civ. Ct. 2001). The relevant paragraph discussed two theories, "loss of use of the vehicle and for the time he lost from work." *Id.* With respect to loss of use, the court held that "there is a real question as to whether loss of use is compensable, but, in any event Mr. Williams presented no evidence to support an award of damages." *Id.* By contrast, for lost time, which is at issue here, the court squarely held that the "lost time for repairs is not compensable" as a matter of law. *Id.*

At other times, plaintiffs resort to twisting basic definitions. In addition to having express case law holding that lost "free time" is not recoverable, many jurisdictions limit common law fraud damages to "pecuniary" losses, meaning monetary losses. New GM. Br. 40-44 & n.33. Plaintiffs claim that because they seek money damages they are seeking pecuniary losses, Pls. Memo. at 17 n.32, but such a contortion would render these jurisdictions' limitation of recovery to "pecuniary" losses a nullity. Instead, the language of such cases plainly states that the underlying loss itself must be pecuniary, *i.e.*, monetary, in nature, regardless of what remedy the plaintiff seeks. New GM Br. at 44 n.33; *see, e.g., Tolliver v. Visiting Nurse Ass'n of Midlands*, 711 N.W.2d 908, 914-17 (Neb. 2009) ("And a pecuniary loss is a loss of money or of

something having monetary value."). Similarly, most jurisdictions limit recovery under consumer protection statutes to the "loss of money or property" or contain other limitations that prohibit lost "free time," which is neither money nor property. Here, the overwhelming majority of plaintiffs do not plead any loss of wages, income, or other money from having their vehicles repaired, and thus have no pecuniary loss and cannot recover for "lost time."[10]

Moreover, plaintiffs' insistence that New GM has conceded that lost time is recoverable for certain claims is baseless. *E.g.*, Pls. Memo. at 2 n.4, 5 n.6, 13-14 n.24, 31. In its exchanges with plaintiffs as well as the parties' stipulation, New GM expressly stated that it was arguing that no jurisdiction would allow lost "free time" damages. New GM's position is based on express case law across a variety of claims in the vast majority jurisdictions, and relying on that majority view for the handful of states where there is no directly on-point case law.

To cover this fundamental absence of authorities supporting their position, plaintiff rely on cases stating in general terms that compensatory, consequential, incidental, actual, or other damages are available. But these cases do not answer the core question, which is whether such categories of damages include lost "free time." The answer, as established by the scores of cases cited by New GM, is "no." Many states allow consequential, incidental, compensatory, actual and other kinds of a damages for a variety of claims, yet these jurisdictions hold that lost time is not recoverable without, at a minimum, proof of direct loss of income. New GM Br. at 30-44. Indeed, cases that specifically recognize that a plaintiff can recover incidental or consequential damages reject recovery of lost "free time." *E.g.*, *Williams v. Planet Motor Car, Inc.*, 738 N.Y.S 2d 170, 174-75, 177-78 (N.Y. Civ. Ct. 2001) (holding that plaintiff could recover "any incidental or consequential damages," yet rejecting any damages for "the time [plaintiff] lost from work in

---

[10] For any cases that plaintiffs attempt to distinguish which are not covered by these paragraphs, New GM stands on its case descriptions and arguments in its opening brief.

attempting to have the car repaired"); *Fryatt v. Lantana One*, 866 So.2d 158, 159 (Fla. Dist. Ct. App. 2004) (holding that the plaintiff buyer was "entitled to incidental damages … and consequential damages," but could not recover for the time of its employees in attempting to make the product work where plaintiff "did not incur any additional expense, or suffer a loss."); *McKee Elec. Co., Inc. v. Carson Oil Co.*, 688 P.2d 1360, 1366 (Or. Ct. App. 1984) (holding that although defendant was "liable for reasonably foreseeable consequential damages," lost time was not recoverable without "the loss of some other benefit as a result of that lost time").

With respect to the few plaintiffs' cites that actually discuss "lost time," New GM has previously addressed them in its prior briefing. New GM Br. at 47-48. In sum, plaintiffs' cases either require proof of lost income to recover for lost time (and so actually support New GM's position) or use terms like "lost time" or "loss of time" in contexts where they are interchangeable with lost wages or lost income. *Id.*; *see also id.* at 36-38. For example, plaintiffs argue that Arkansas recognizes damages for ***lost income***, but provide no case law showing that it would allow recovery for lost "free time." Pls. Memo. at 7. Indeed, plaintiffs cite cases expressly holding that lost time cannot be recovered without proof of lost income. *Id.* (citing *Wilson v. Marquette Elecs., Inc.*, 630 F.2d 575, 586 (8th Cir. 1980) (applying Arkansas law) (rejecting "lost time" award because there was no evidence that plaintiff lost any money based on employee having to spend additional time on particular business segment because of defendant's acts)).[11]

---

[11]  *See Birmingham Ry., Light & Power Co. v. Nalls*, 66 So. 5, 6 (Ala. 1914) (holding that there was "no error in refusing to instruct the jury that the plaintiff could not 'recover for any time, if any, he lost from work'"); *Houser v. Eckhardt*, 506 P.2d 751, 756-57 (Colo. Ct. App. 1972) (allowing lost time damages where plaintiff "approximated the loss of time from his self-employed, one-man air-conditioning business, and he testified as to the amount per hour that he charged his customers"); *Craig & Bishop, Inc v. Piles*, 247 S.W.3d 897, 907 (Ky. 2008) (allowing award for "inconvenience" where plaintiffs "testified to having to miss work" and "the inconvenience damages were awarded for real injuries with significant monetary ramifications"); *Gray v. Boston Elevated Ry. Co.*, 102 N.E. 71, 72 (Mass. 1913) (plaintiff can

Plaintiffs' other cases refer generally to "lost time" or "loss of time" without any indication that such terms refer to lost "free time." As New GM previously explained, jurisdictions define "lost time" to mean "lost wages" or "lost income." New GM Br. at 36-38 & n.30. In other words, "lost time" means lost income, not lost "free time." Without proof of lost income, plaintiffs cannot recover for "lost time." Thus, the phrase "lost time" in plaintiffs' citations should be given its standard definition of lost wages or other income. Applying the proper definition of "lost time" to plaintiffs' cases, none of them support plaintiffs' position, and all show that proof of lost wages or other income is necessary to recover for lost time.[12]

---

obtain compensation for "the loss of time of the valuable use of which he was deprived"); *Hale v. Bain Motor Co.*, 795 P.2d 1006, 1013 (N.M. 1990) (suggesting that if pled at trial, the court might have looked favorably on a claim for "lost paid vacation time"); *NGT Telecomms., Inc v. Int'l Bus. Machs., Inc.*, 2000 WL 562745, at * 7 (E.D. Pa. May 8, 2000) (allowing claim for lost time attempting to fix computer problems where plaintiff business's "employees devoted approximately 800 hours of time attempting to correct the problems" that could have been spent on other work, costing plaintiff $87,250); *Reynolds v. Pionear, LLC*, 2016 WL 1248866, at *7 (E.D. Va. Mar. 25, 2016) (plaintiff had alleged cognizable damages where she alleged a delay in a promotion and accompanying raise because of defendant's actions: "Reasonably inferring a delay of increased pay alongside the promotion, Reynolds places actual damages at bar."); 6A Wash. Prac., Wash. Pattern Jury Instr. Civ. WPI 310.06 (6th ed.) (providing that "[i]njuries to business or property, if any, include . . . [time away from work]"); *Burlison v. Janssen*, 141 N.W.2d 274, 279 (Wis. 1966) (evaluating "damages for lost wages or lost time" in terms of times which plaintiff could not work).

[12] *See WSG W. Palm Beach Dev., LLC v. Blank*, 990 So. 2d 708, 711-12 (Fla. Dist. Ct. App. 2008) (noting only that plaintiff sought "lost time" in his complaint (which would typically mean time lost for earning income), and that lost time was not among the damages awarded by the trial court); *Normius v. Eckerd Corp.*, 813 So.2d 985, 987 (Fla. Dist. Ct. App. 2002) (stating that "loss of time" is recoverable in a false imprisonment action, without indicating that this means lost "free time" instead of lost income); *Smallwood v. Bradford*, 720 A.2d 586, 594-95 (Md. 1998) (stating that in survivorship action "lost time" could be recovered, without any suggestion this refers to lost "free time"); *Adams v. Benson*, 117 A.2d 881, 885 (Md. 1955) (referring to "resulting loss of time and loss of earnings"); *Brashears v. Sight 'n Sound Appliances Ctrs., Inc.*, 981 P.2d 1270, 1274 (Okla. Civ. App. 1999) (referring to "loss of time" without any indication that lost "free time" was recoverable); *Salmon v. CRST Expedited, Inc.*, 2015 WL 1395237, at *8 (N.D. Okla. Mar. 25, 2015) (rejecting independent "claims for aggravation and loss of time," with no suggestion that loss time was recoverable without proof of lost income).

## III.    ALMOST ALL PLAINTIFFS' UNJUST ENRICHMENT CLAIMS ARE BARRED AS A MATTER OF LAW.

### A.    Plaintiffs Do Not Contest That Nine Of The Ten Disputed Jurisdictions Bar Unjust Enrichment Where Plaintiffs Have An Adequate Legal Remedy.

Nine of the ten states in dispute (all except Rhode Island) hold that unjust enrichment claims are barred if a plaintiff has an adequate remedy at law.  New GM Br. at 49-51.  Plaintiffs do not cite any case law or authorities to rebut this argument.  Instead, "[p]laintiffs do not contest that they can only recover under an unjust enrichment theory if they cannot recover under their claims at law, and have properly pled the claim in the alternative."  Pls. Memo. at 5 n.7.  But plaintiffs do not cite any case law allowing them to plead in the alternative.  In the context of whether a warranty bars an unjust enrichment claim, the Court has generally rejected plaintiffs' attempts to plead in the alternative.  *FACC MTD Opinion*, 257 F. Supp. 3d at 426-27, 433-34, 461; *In re Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 3920353, at *23, 25, 28, 35, 38 (S.D.N.Y. July 15, 2016) ("*TACC MTD Opinion").*  The Court's rulings are in accord with the availability of an adequate remedy at law barring unjust enrichment claims, even if plaintiffs do not succeed on those claims or even if they do not plead them at all.[13]

---

[13]   *See, e.g.*, *Tudor Dev. Group, Inc. v. U.S. Fidelity & Guar. Co.*, 968 F.2d 357, 364 (3d Cir. 1992) (applying Pennsylvania law: "equitable relief is not appropriate where a party has an adequate legal or statutory remedy. … In determining whether a remedy is 'adequate,' we must look to its availability and not to the likelihood of its success.") (internal citations omitted); *Fernandes v. Havkin*, 731 F. Supp. 2d 103, 114 (D. Mass. 2010) ("A claim of unjust enrichment, however, is 'not available to a party with an adequate remedy at law'. . .  Plaintiff's negligence and chapter 93A claims thus preclude a claim for unjust enrichment.  The disposition of those claims is irrelevant.  Their mere availability is a bar to a claim of unjust enrichment.") (internal citations omitted); *Season Comfort Corp. v. Ben A. Borenstein Co.*, 655 N.E.2d 1065, 1071 (Ill. App. Ct. 1995) ("[F]ailure to comply with the [available legal remedy] does not warrant relief under the doctrine of unjust enrichment."); *Vardaman v. Florence City Bd. of Educ.*, 544 So.2d 962, 964-65 (Ala. 1989) (affirming summary judgment against equitable implied contract theory because of availability of adequate legal remedy even while affirming judgment against plaintiff on express contract theory); *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012) (dismissing unjust enrichment claim despite also dismissing deceptive trade practice claim and concluding that "[t]o the extent that [plaintiffs' deceptive trade practice and other] claims succeed, the unjust enrichment claim is duplicative; if plaintiffs' other claims are defective, an unjust enrichment claim cannot remedy the defects"); *R.M. Dudley Constr. Co., Inc. v. Dawson*, 258 S.W.3d 694, 703 (Tex. App.

**B.**     **Plaintiffs Cannot Rebut That Nine Of The Ten Disputed Jurisdictions Bar Unjust Enrichment Claims Where There Is An Express Warranty.**

New GM cited case law holding that nine of the ten disputed jurisdictions for unjust enrichment bar the claim where there is a contract, such as an express warranty.[14]  New GM Br. at 51-53 & n.46.  New GM also explained why the decisions plaintiffs cite cannot overcome this plain case law (including that the cases were based on plaintiffs attempting to invalidate the contract, or that the cases simply did not address those issues), and need not repeat those explanations here.  *Id.* at 53-55.  The handful of additional cases plaintiffs cite do not support their arguments.

**Oregon:**  Plaintiffs claim that *Kashmir Corp. v. Patterson* allows alternative pleading, but *Kashmir* follows the typical rule that alternative pleading is allowed only if the plaintiff alleges that the contract is invalid:  "At that point the validity and enforceability of the contract were no longer in issue, and the trial court correctly struck the quantum meruit count."  616 P.2d 468, 470 (Or. 1980).

**Rhode Island:**  *Process Eng'rs & Constructors, Inc v. DiGregorio, Inc.*, 93 A.3d 1047 (R.I. 2014) simply did not consider whether an express contract barred the unjust enrichment claim, and Rhode Island has squarely on-point case law supporting New GM's position.  *Mehan v. Gershkoff*, 230 A.2d 867, 870 (R.I. 1967) ("It is well settled that where there is an express

---

2008) (affirming directed verdict on unjust enrichment claim where plaintiff had available legal remedies, even though jury ruled against plaintiff on one remedy and the other was a separate lawsuit, the outcome of which was unknown); *Morrissey v. New England Deaconess Ass'n—Abundant Life Communities, Inc.*, 57 N.E.3d 1066 (Table), 2016 WL 4723459, at *5 (Mass. App. Ct., Sept. 9, 2016) (affirming denial of motion to amend complaint to add unjust enrichment claim because "[u]njust enrichment is an equitable remedy not available to a party with an adequate remedy at law," and plaintiff did not allege that his other claims were inadequate even though they were dismissed or failed on summary judgment).

[14]  New GM agrees that, for Connecticut, an express contract does not bar an unjust enrichment claim seeking equitable relief which is not inconsistent with the contract.

contract between the parties referring to a subject matter, there can be no implied contract arising by implication of law governing that same subject matter.").

**South Carolina:** *Earthscapes Unlimited, Inc. v. Ulbirch* does not consider any argument that a contract bars an unjust enrichment claim. 703 S.E.2d 221, 225 (S.C. 2010). Plaintiffs' other cite is to a federal district court case that misinterprets *Earthscapes* and contradicts both controlling South Carolina case law and other South Carolina federal district court decisions. *Compare Ellsworth v. Infor Glob. Sols. (Mich.), Inc.*, 2012 WL 6641648, at *6 (D.S.C. Dec. 20, 2012) *with Atherton v. Tenet Healthcare Corp.*, 2005 WL 7084013, at *5-6 (S.C. Ct. App. May 25, 2005) (affirming trial court holding that "one cannot recover for unjust enrichment where an express contract exists"); *Boldt Co. v. Thomason Elec. & Am. Contractors Indem. Co.*, 820 F. Supp. 2d 703, 707-08 (D.S.C. 2007).

**West Virginia:** *Gaddy Eng'g Co. v. Bowles Rice McDavid Graff & Love, LLP* holds only that unjust enrichment must be based on fraud or similar circumstances. 746 S.E.2d 568, 578-79 (W.Va. 2013). Once again, *Gaddy* does not address whether a contract bars an unjust enrichment claim. By contrast, New GM's on-point case law squarely holds that a contract does bar an unjust enrichment claim. *E.g.*, *Hanlon v. AXA Equitable Life Ins. Co.*, 2016 WL 2968990, at *3 (W. Va. May 20, 2016) ("It is undisputed that petitioner and her husband entered into express contracts with this respondent. However, an unjust enrichment claim is inconsistent with a contractual dispute.").

## CONCLUSION

For the reasons established in New GM's opening brief and this response, the Court should hold that (1) each of the 35 jurisdictions requires a manifest defect for all claims, with the only exceptions of Hawaii (for all claims), Maine (for fraudulent concealment), and Vermont (for consumer fraud); (2) each state requires, at a minimum, that plaintiffs plead and prove lost

wages or other income to recover for "lost time"; (3) each state (except Rhode Island) holds that an adequate remedy at law precludes unjust enrichment claims; and (4) each state (except Connecticut) holds that an express contract such as a warranty bars unjust enrichment claims.


                                        Respectfully submitted,

Dated:  March 8, 2018                    */s/ Richard C. Godfrey, P.C.*
                                        _____

                                        Richard C. Godfrey, P.C.
                                        Andrew B. Bloomer, P.C.
                                        KIRKLAND & ELLIS LLP
                                        300 N. LaSalle
                                        Chicago, IL  60654-3406
                                        Phone:  312-862-2000
                                        Fax:  312-862-2200
                                        richard.godfrey@kirkland.com
                                        andrew.bloomer@kirkland.com

                                        *Attorneys for Defendant General Motors LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 8, 2018, I electronically filed the foregoing using the CM/ECF system which will serve notification of such filing to the email of all counsel of record in this action.

By: /s/ *Andrew B. Bloomer, P.C.*
Andrew B. Bloomer, P.C.