```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

IN RE:

GENERAL MOTORS LLC IGNITION SWITCH LITIGATION

*This Document Relates To:*
*Schmidt v. General Motors LLC, 18-CV-227 (JMF)*

------------------------------------------------------------------------x
```

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 06/11/2018
```

14-MD-2543 (JMF)

MEMORANDUM OPINION
AND ORDER

JESSE M. FURMAN, United States District Judge:

**[Regarding Schmidt's Motion to Remand to State Court]**

D. Maria Schmidt, as representative of the estate of Harrison Yazzie, brings this case against General Motors LLC ("New GM") and Ashton Begay as part of the multidistrict litigation ("MDL") proceedings, general familiarity with which is assumed, relating to defects in the ignition switches and other features of certain General Motors vehicles and associated product recalls. The case relates to an October 2014 accident involving a 2001 Chevrolet Malibu driven by Defendant Begay, which resulted in Yazzie's death. (*See* 18-CV-227, Docket No. 1 ("Notice of Removal"), Ex. D, ¶ 8). Schmidt alleges that a defect in the key lock module of the Malibu — which was manufactured by General Motors Corporation ("Old GM") — caused the accident and Yazzie's death; she seeks both compensatory and punitive damages. (*See id*. ¶¶ 92-105). Schmidt — like Begay, a resident of New Mexico — originally filed the case in New Mexico state court. Citing Title 28, United States Code, Sections 157(b), 1331, and 1334(b), New GM later removed it to federal court (and it was transferred here to be included in the MDL). (Notice of Removal ¶ 7). New GM asserted — and continues to assert — that removal was proper because the case "is a civil proceeding that (i) arises under 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"); (ii) arises in a case under the Bankruptcy Code; and/or (iii) is related

to a case under the Bankruptcy Code." (*Id.*). More specifically, New GM contends that removal is proper in light of the 2009 bankruptcy of Old GM, pursuant to which New GM assumed most of Old GM's assets but only some of its liabilities. (*Id.* at ¶¶ 7-18). Schmidt contends that removal was improper and moves to remand the case back to New Mexico state court. (18-CV-227, Docket No. 21).

Significantly, the Court resolved a similar motion late last year in a case removed from Connecticut state court. *See In Re: General Motors LLC Ignition Switch Litig.* ("*Synott*"), 14-MD-2543 (JMF), 2017 WL 5195234 (S.D.N.Y. Nov. 9, 2017). In that case, Amber Synott brought claims against New GM relating to a 2008 accident involving her 2005 Saturn Ion, also manufactured by Old GM. *See id.* at *1. At the outset, the Court easily concluded that Synott's case did not "arise under" the Bankruptcy Code — on the ground that her claims were "creatures exclusively of state law" and did not involve "substantive rights created by federal bankruptcy law." *Id.* at *2 (internal quotation marks omitted). The Court acknowledged that "[t]he case for 'arising in' jurisdiction" was "closer," but ultimately concluded that it too fell short. *Id.* at *3. In particular, the Court rejected New GM's reliance on cases holding that a suit qualifies as a "core" bankruptcy proceeding (and thus "arises in" a case under the Bankruptcy Code) "if it requires the interpretation and enforcement of a prior bankruptcy order," explaining:

> In each of the cases cited by New GM . . . , the claims at issue were directly related to a prior order of the Bankruptcy Court or required the Bankruptcy Court to interpret its prior orders. By contrast, there is no need in this case to interpret any prior order of the Bankruptcy Court. The Second Circuit settled the question of whether Synott can proceed with her claims despite the "free and clear" provisions of the Sale Order: She may. And the Bankruptcy Court settled the question (on two occasions, no less) of whether Synott can pursue punitive damages: She may not. The Bankruptcy Court's rulings may have to be applied to Synott's case, but the mere need for such implementation (particularly given Synott's representation that she will amend her complaint to remove the request for punitive damages promptly upon her return to state court) does not transform the case into a "core" proceeding.

*Id.* (citations and footnote omitted). Finally, the Court held that it did not need to decide if the case was "related to" a case under the Bankruptcy Code because, even if it did, mandatory abstention pursuant to Title 28, United States Code, Section 1334(c)(2) required remand (as New GM more or less conceded). *See id.* at *4. Accordingly, notwithstanding its misgivings about the "cost" of remanding given the advantages of the MDL, the Court granted Synott's motion to remand. *Id.* at *5.

New GM contends that this case is distinguishable from *Synott* in three ways. (*See* 18-CV-227 (Docket No. 25 ("New GM Opp'n"), at 2, 10-12). First, it argues that, "unlike *Synott*," Schmidt "contends that the Bankruptcy Court's rulings have no applicability to her and, indeed, disputes the Bankruptcy Court's jurisdiction to limit Plaintiff's claims." (*Id.* at 2; *see also id.* at 11). In support of that argument, New GM quotes Schmidt's assertion that "'[t]he Sale Order establishes no rights or limitations that are relevant to this action and, as such, there is no applicable injunction for the bankruptcy court to enforce.'" (*Id.* at 11 n.7 (quoting Docket No. 22, at 4)). But there is less to that assertion than first meets the eye, as Schmidt repeatedly acknowledges the Bankruptcy Court's rulings and makes plain that she is prepared to amend her complaint to the extent that any of her allegations run afoul of those rulings. (*See, e.g.*, Docket No. 27 ("Pl.'s Reply"), at 4 n.3, 6 n.5). In any event, Synott made the same assertion — using nearly the exact same words. (*See* 17-CV-4150, Docket No. 17-1, at 4 ("[T]he Sale Order establishes no rights or limitations that are relevant to Synott's claims, and there is no applicable injunction for the bankruptcy court to enforce.")). Accordingly, that is no basis to distinguish this case from *Synott*.

Next, New GM contends that, while *Synott* involved the crash of a Saturn Ion (that is, a vehicle with the "Ignition Switch Defect," as that term has been used in the bankruptcy proceedings and the MDL, *see, e.g.*, *In re: Motors Liquidation Co.*, No. 15-CV-8432 (JMF), 2018 WL 2416567, at *2 (S.D.N.Y. May 29, 2018)), *before* entry of the Sale Order, this case involves the crash of a Chevrolet Malibu (a vehicle without the Ignition Switch Defect) *after* entry of the Sale Order. (New GM Opp'n 11). The Second Circuit, New GM argues, may have "settled the question" of whether pre-closing accident plaintiffs like Synott could proceed with their claims, but it "has made no such determination with respect to . . . accidents like the one at issue here." (*Id.* at 11-12). That much is true, but New GM — somewhat disingenuously — omits the reason that the Second Circuit did not need to make a "determination" with respect to accidents like the one at issue here: It is because New GM has never disputed — and cannot dispute — that, under the plain terms of the Sale Order and Sale Agreement, the company "expressly assumed responsibility for claims for death, personal injury or damage to property caused by 'accidents or incidents' first occurring after" entry of the Sale Order. *In re Motors Liquidation Co.*, 513 B.R. 467, 472 (Bankr. S.D.N.Y. 2014). Thus, contrary to New GM's assertions, this case will not call on "the Bankruptcy Court [to] interpret Plaintiff's Complaint to determine whether it violates its prior Orders" any more than *Synott* did. (New GM Opp'n 12).

Finally, New GM contends that a different result is warranted here because Schmidt, unlike Synott, "has made no . . . representation" that "she will amend her complaint to remove the request for punitive damages promptly upon her return to state court." (*Id.* at 12). Synott's agreement to amend her complaint, however, was not critical to this Court's conclusion that her case did not "arise in" a case under the Bankruptcy Code; the Court merely noted her representation as an aside. *See Synott*, 2017 WL 5195234, at *3. Moreover, there is a good

4

explanation for why Schmidt has not disclaimed punitive damages even though Synott did: Plaintiffs with claims arising from pre-closing accidents (such as Synott) are categorically precluded from seeking punitive damages from New GM, while plaintiffs with claims arising from post-closing accidents (such as Schmidt) are not, so long as the claims are based on New GM's own conduct. *See In re Motors Liquidation Co.*, 541 B.R. 104, 110 (Bankr. S.D.N.Y. 2015); *In re: Motors Liquidation Co.*, 571 B.R. 565, 575-80 (Bankr. S.D.N.Y. 2017), *aff'd in part, vacated in part by In re: Motors Liquidation Co.*, No. 15-CV-8432 (JMF), 2018 WL 2416567 (S.D.N.Y. May 29, 2018); *Motors Liquidation Co.*, 2018 WL 2416567, at *14-15. Notably, Schmidt does not dispute the now well-established principles limiting her right to seek punitive damages, and expressly represents that she "will amend" her complaint to the extent that it "seemingly" runs afoul of those principles. (Pl.'s Reply 4 & n.3). Thus, here, as in *Synott*, "[t]he Bankruptcy Court's rulings may have to be applied . . . , but the mere need for such implementation . . . does not transform the case into a 'core' proceeding." *Synott*, 2017 WL 5195234, at *3.

In short, New GM's efforts to distinguish this case from *Synott* are ultimately unconvincing and remand is no less warranted here. On top of that, and in the alternative, the Court concludes that remand would be appropriate pursuant to the doctrine of permissive abstention. Title 28, United States Code, Section 1334(c)(1) provides that a federal court may "abstain[] from hearing" a case "in the interest of justice, or in the interest of comity with state courts or respect for state law." 28 U.S.C. § 1334(c)(1). To determine whether permissive abstention is appropriate under that section, courts consider a multitude of factors, including but not limited to comity, the degree of relatedness of the proceeding to the main bankruptcy case, the effect on the efficient administration of the bankruptcy estate, the extent to which issues of

5

state law predominate, and the existence of the right to a jury trial. *See, e.g.*, *In re Residential Capital, LLC*, 519 B.R. 890, 903 (Bankr. S.D.N.Y. 2014); *accord In re JCC Capital Corp.*, 147 B.R. 349, 354 (Bankr. S.D.N.Y. 1992). Weighing the applicable factors here, the Court concludes that permissive abstention is justified. Among other things, abstention will have no effect on the administration of the bankruptcy estate, as Schmidt brings claims only against New GM (and Begay); for related reasons, the case is only remotely related to the bankruptcy case; Schmidt's state common law claims predominate over any bankruptcy law issues that may exist; and Schmidt made a jury demand in state court. Accordingly, even if jurisdiction were not lacking (or mandatory abstention did not apply), the Court would permissively abstain. *See, e.g.*, *Osuji v. HSBC Bank, U.S.A., Nat'l Ass'n*, 580 B.R. 605, 613-17 (E.D.N.Y. 2018) (affirming the Bankruptcy Court's permissive abstention from certain proceedings).

The Court certainly understands New GM's interest in seeking to bring this case to federal court and make it part of the MDL. As the Court noted in *Synott*, it has "largely been able to manage and oversee the claims of several thousand plaintiffs in a manner that promotes efficiency and minimizes the risks of inconsistent rulings and unnecessary duplication of effort." 2017 WL 5195234, at *5. Nevertheless, the bankruptcy of Old GM does not provide New GM with an open-ended ticket to remove cases from state court at will merely because they involve vehicles manufactured by Old GM. Where, as here, the relevant legal principles have been settled and all that is left is to apply those principles to a case in a straightforward manner, the arguments for removal fall short. Accordingly, Schmidt's motion to remand this case to the First Judicial District Court in Santa Fe, New Mexico is GRANTED.

The Clerk of Court is directed to terminate 14-MD-2543, Docket No. 5017 and 18-CV-227, Docket No. 21; to remand 18-CV-227 back to the First Judicial District Court in Santa Fe, New Mexico; and to then close 18-CV-227.

SO ORDERED.

Date: June 11, 2018
New York, New York

_____
JESSE M. FURMAN
United States District Judge