**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RICHARD RONQUILLO, et al. ) | |
| ) | CIVIL ACTION NO.: 1:18-cv-05118-JMF |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| BRAVO SOUTHWEST, LP LLLP d/b/a ) | |
| BRAVO CADILLAC, et al. ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR REMAND**

COME NOW Plaintiffs, by and through the undersigned counsel, pursuant to 28 U.S.C. § 1447(c), and respectfully provide their Suggestions in Support of Plaintiff's Motion for Remand to the County Court at Law No. 7, El Paso, State of Texas. This case must be remanded because (1) Defendant Bravo Southwest, LP LLLP d/b/a Bravo Cadillac (Bravo) was properly joined and thus this action lacks complete diversity; (2) the claims at issue are based on Texas law and do not "arise under" bankruptcy law nor are the claims "related to" bankruptcy law, and (3) even if these claims were "related to" bankruptcy law, the doctrine of abstention requires this action to be remanded to state court. In support, Plaintiffs provide argument and authorities below.

1

**INTRODUCTION**

This is an action for wrongful death caused by a defective motor vehicle. Plaintiffs bring their product liability claims under Texas state law. The case was timely filed on November 22, 2017 in the County Court at Law No. 7, El Paso, State of Texas, and it was timely served on the Defendants. Defendant General Motors, LLC (New GM) removed the case to the United States District Court for the Western District of Texas on January 16, 2018.

This Court does not have jurisdiction over this case because there is not complete diversity. Both Plaintiffs and Defendant Bravo are Texas residents. (*See* Pls.' Original Pet., attached as Ex. A, at ¶¶ 2-4). And as explained more fully below, Defendant Bravo was properly joined. Plaintiffs have sufficiently alleged an exception to seller immunity. Additionally, New GM does not argue that federal question jurisdiction exists. Instead, New GM claims that this action is removable because it is a civil proceeding that "arises under" the Bankruptcy Code, "arises in" a case under the Bankruptcy Code, and/or "is related to" a case under the Bankruptcy Code. (Notice of Removal, Doc. 1, at ¶ 21). However, the instant action is a personal injury claim which sounds in state tort law—it plainly does not "arise under," "arise in," nor is it "related to" a case under the Bankruptcy Code. New GM has improperly invoked the jurisdiction of this Court, and for that reason, this action must be remanded back to the District Court of El Paso County, Texas.

**BACKGROUND**

In their Petition, Plaintiffs assert certain product liability claims against Bravo and New GM for the wrongful death of Richard Estrada, who died as a result of injuries he sustained in a motor vehicle collision. (*See* Ex. A at ¶¶ 2-3, 26). They allege that the 2006 Cadillac DTS (the "subject vehicle") was designed, manufactured and sold with certain defects which could cause the subject vehicle to suddenly and unexpectedly lose electrical power during normal and ordinary use. *See id.* Those defects include but are not limited to a weak ignition switch that was located

2

low on the steering column and an airbag system that gets disabled when the ignition is in the "accessory" or "off" position. *See id.* The subject vehicle was sold to Decedent Estrada by Defendant Bravo on or about January 7, 2015. *Id.* at ¶ 25. Plaintiffs allege Defendant Bravo knew or should have known of these product defects. *Id.* at ¶¶ 210. On November 24, 2015, Decedent Estrada was driving the subject vehicle, when the subject vehicle was involved in a frontal collision in Clint, El Paso County, Texas. *Id.* at ¶ 26. As a result of the unreasonably dangerous and defective condition of the subject vehicle, the front airbags failed to deploy, and Decedent Estrada sustained a severe and ultimately fatal injury. *Id.* at ¶ 26.

The defective ignition switch installed in the subject vehicle was designed, manufactured, and sold by General Motors Corporation ("Old GM"), an entity that is not a party to this action. *See id.* In June of 2009, Old GM filed for Chapter 11 bankruptcy protection in the U.S. Bankruptcy Court for the Southern District of New York. Doc. 1, ¶ 22. On July 5, 2009, the bankruptcy court approved the sale of substantially all Old GM's assets pursuant to an Amended and Restated Master Sale Purchase Agreement ("Sale Agreement"). *Id.* at ¶ 23. That Sale Agreement[1] became effective on July 10, 2009. *Id.*

After the sale, New GM retained most of Old GM's employees, including many of its senior-level managers, officers and directors and retained substantially all Old GM's records. Sale Agreement § 2.2. For the next five years, New GM continued to conceal the existence of the ignition switch defect, even as it learned of additional motor vehicle accidents, injuries and deaths caused by the defect. *See* Ex. A.

---

[1] The Sale Agreement is available via PACER. (*In re Gen. Motors Corp.*, Case No. 09-50026(REG), Bankr. S.D.N.Y., ECF No. 2968-2).

In February 2014, New GM revealed the existence of the ignition switch defect to the National Highway Traffic Safety Administration. *Id.* at ¶ 148. In June 2014, New GM issued a recall on the subject vehicle regarding the ignition switch defect. *Id.* at ¶ 27. Shortly after New GM revealed the existence of the ignition switch defects, hundreds of ignition switch-related lawsuits were filed against New GM. Under Section 2.3(a)(ix) of the Amended and Restated Master Sale and Purchase Agreement, New GM agreed to assume liability for these claims. *See* Sale Agreement § 2.3(a). New GM also expressly assumed the continuing duty to monitor the performance of vehicles manufactured by Old GM and to notify owners of such vehicles about defects in those vehicles, as required by law. *See* Sale Agreement § 6.15.

Since the bankruptcy sale closed on July 10, 2009, New GM has been repeatedly put on notice that people have been injured and killed due to the ignition switch defect. New GM has defended hundreds of these successor liability claims since the bankruptcy sale closed and has compensated claimants for their injuries using New GM's funds. That is precisely the course that Plaintiffs are pursuing in their state court action, where they make no claims against the debtor, Old GM, or the bankruptcy estate. *See* Ex. A at ¶17 ("The allegations pertaining to Old GM are included for purposes of background and context, and to set forth the scope of New GM's liabilities and responsibilities under the Agreement. This Complaint does not assert any causes of action against Old GM; all causes of action and attributions of liability are directed solely against New GM").

Instead, Plaintiffs assert their wrongful death claims against a non-debtor third-party, New GM. The Sale Order does not shield New GM from such claims, nor does it enjoin Plaintiffs from them. In fact, the Sale Order establishes no rights or limitations that are relevant to this action and, as such, there is no applicable injunction for the bankruptcy court to enforce. New GM's liability

for Old GM's conduct turns on an interpretation of Texas's laws of successor liability. If Plaintiffs succeed in their tort action, New GM will bear financial responsibility – neither Old GM nor the bankruptcy estate will incur any liability regardless of the outcome of this case.

For the reasons that follow, Plaintiffs respectfully request that the Court find that New GM's removal of this matter was improper as the Court does not have jurisdiction and remand this case to the District Court of El Paso County, Texas.

## **ARGUMENT & AUTHORITIES**

Federal courts are courts of limited jurisdiction which lack the power to disregard limits imposed on their jurisdiction by the Constitution or Congress. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994). Out of respect for the independence of state courts, and in order to control the federal docket, federal courts construe the removal statute narrowly, resolving any doubts against removability. *Somlyo v. J. Lu-Rob Enters., Inc.*, 932 F.2d 1043, 1045-46 (2d Cir. 1991). The defendant "bears the burden of demonstrating the propriety of removal." *Cal. Pub. Employees' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004) (quoting *Grimo v. Blue* Federal district courts have original jurisdiction over cases "arising under" federal law and certain cases between citizens of different States. S*ee* 28 U.S.C. § 1331; 28 U.S.C. § 1332. Neither of these statutes provide federal jurisdiction in this case because Plaintiffs' claims arise solely under state law and both they and Defendant Bravo, a properly joined party, are citizens of Texas.

**I.  DEFENDANT BRAVO IS PROPERLY JOINED SO THERE IS NOT COMPLETE DIVERSITY**

The fraudulent joinder doctrine is strictly applied in this jurisdiction. *See In re Fosamax Prods. Liab. Litig.*, No. 09–CV–4061, 2009 WL 3109832, at *2 (S.D.N.Y. Sept. 28, 2009) ("Most courts in this district have applied the 'no possibility' standard rather strictly."); *see also Stan Winston Creatures, Inc. v. Toys "R" Us, Inc.*, 314 F. Supp. 2d 177, 183 (S.D.N.Y. 2003) (concluding that defendants had not shown that it was "legally impossible" for non-

diverse defendant to be liable under state law); *Nemazee v. Premier, Inc.*, 232 F. Supp. 2d 172, 178 (S.D.N.Y.2002) ("Any possibility of recovery, even if slim, militates against a finding of fraudulent joinder."). When, as here, plaintiffs choose to file suit in state court, defendants may only remove a case to federal court based on diversity jurisdiction if there exists complete diversity of citizenship among the parties involved and the amount in controversy exceeds $75,000.00. See 28 U.S.C. § 1332; 28 U.S.C. § 1441(a). A defendant seeking to remove a plaintiff's suit to federal court bears "the burden of establishing that the requirements for diversity jurisdiction [are] met." *Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291, 296 (2d Cir. 2000).

In order to show that a plaintiff's naming of a non-diverse defendant is a "fraudulent joinder" effected to defeat diversity, defendants must demonstrate, by clear and convincing evidence, either (1) that there has been outright fraud committed in the plaintiff's pleadings, or (2) that there is no possibility, based on the pleadings, that the plaintiff can state a cause of action against the nondiverse defendant in state court. *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998). New GM attempts to demonstrate improper joinder under the second method. (*See* Doc. 1, ¶ 10). In regard to that method, "[j]oinder will be considered fraudulent when it is established that there can be no recovery against the defendant under the law of the state on the cause alleged." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 207 (2d Cir. 2001) (internal citations omitted). "The defendant seeking removal bears a heavy burden of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff." *Pampillonia,* 138 F.3d at 461.

In addition, in the context of fraudulent joinder, "because this jurisdictional inquiry is preliminary to any decision on the merits, the federal court resolves any uncertainties in applicable state law in plaintiffs' favor and subjects the complaint to less searching scrutiny than on a motion

to dismiss for failure to state a claim." *Intershoe Inc. v. Filanto S.P.A.*, 97 F. Supp. 2d 471, 474 (S.D.N.Y. 2000); *see also Sherman v. A.J. Pegno Constr. Corp.,* 528 F.Supp.2d 320, 328–29 (S.D.N.Y.2007) (explaining that it is not enough for a defendant asserting fraudulent joinder to show that the plaintiff's cause of action would not survive a motion to dismiss). As courts have explained in the context of fraudulent joinder, "it is not sufficient to argue that the complaint fails to state a claim against [a non-diverse] defendant..." *Stan Winston,* 314 F. Supp. 2d at 182; *see also Read v. Nationwide Mut. Ins. Co.,* No. 3:06–cv–00514 (JCH), 2006 WL 2621652, at *1 (D. Conn. Sept. 13, 2006) ("To show that a 'fraudulent joinder has occurred, the defendants must do more than show that the plaintiff has failed to state a claim upon which relief can be granted.'"). Even allegations that are "general and at times in barebones language" may be sufficient to defeat a claim of fraudulent joinder. *See Ulysse v. AAR Aircraft Component Servs.,* 841 F. Supp. 2d 659, 684 (E.D.N.Y.2012) (finding no fraudulent joinder and remanding case).

Further, a "defendant may not use removal proceedings as an occasion to adjudicate the substantive issues of a case." *Stan Winston*, 314 F. Supp. 2d at 182. When a district court evaluates a motion to remand, the court "does not reach the merits of the underlying dispute but instead decides only the question of whether removal to the federal court was proper." *Wilds v. United Parcel Serv., Inc.,* 262 F. Supp. 2d 163, 177–78 (S.D.N.Y. 2003) (internal citation omitted); *see also In re Pfohl Bros. Landfill Litig*., 67 F.Supp.2d 177, 179 n. 1 (W.D.N.Y. 1999) ("[A] matter of remand ... presents only the question of whether there is a proper basis for federal jurisdiction to support removal and neither reaches nor requires a determination on the merits of a plaintiff's claims or a defendants [sic] defenses or counterclaims."); *Holt v. Tonawanda Coke Corp.,* 802 F. Supp. 866, 868 (W.D.N.Y.1991) ("A motion to remand ... decides only the question of whether

there is a proper basis for federal jurisdiction to support removal, and neither reaches nor determines the merits of a plaintiff's claims or a defendant's defenses or counterclaims.").

Here, New GM does not, and more pointedly, cannot discharge its heavy burden of showing legal impossibility for Defendant Bravo to be liable under Texas law. In this case, Plaintiffs have alleged and pleaded a viable state law claim against the in-state defendant, Bravo. The primary inquiry with respect to this Motion is whether, considering Texas Civil Practice and Remedies Code Section 82.003, Plaintiffs have any possibility of recovery under state law against Defendant Bravo, which sold, but did not manufacture, the subject vehicle. New GM claims that Defendant Bravo, as a dealership/seller in a products liability action, is immune from liability under Section 82.003(a) and is therefore an improper party to this suit. Non-manufacturing sellers' immunity under this Section, however, is subject to seven clearly stated exceptions. Plaintiffs pleaded the "actual knowledge" exception to a seller's immunity under Section 82.003(a)(6), which provides, in relevant part:

> (a) A seller that did not manufacture a product is not liable for harm caused to the claimant by that product *unless* the claimant proves:
> …
>     (6) that:
>         (A) the seller actually knew of a defect to the product at the time the seller supplied the product; and
>         (B) the claimant's harm resulted from the defect[.]

Texas Civil Practice and Remedies Code Section 82.003(a)(6).

Regarding Defendant Bravo's strict liability, Plaintiffs pled:

At the time the Subject Vehicle left the possession and control of Defendant Bravo, it was defective and unreasonably dangerous in several respects, *including, but not limited to*, the following:

> a. The Key System had a propensity to turn from the "run" position to the "accessory/off" position while the vehicle is running, which caused the vehicle to enter a stall and experience a sudden loss of power steering; power brakes; and, caused a failure of the airbag and restraint system;

8

> b. The position of the key lock module on the steering column allowed a driver to inadvertently bump the key fob or chain, resulting in the key turning from the "run" position to the "accessory/off" position, which caused the vehicle to enter a stall and experience a sudden loss of power steering; power brakes; and, caused a failure of the airbag and restraint system;
>
> c. The key's design allowed the key fob or chain to hang lower on the key, which increases the chance of the key inadvertently moving from the "run" position to the "accessory/off" position, which caused the vehicle to enter a stall and experience a sudden loss of power steering; power brakes; and, caused a failure of the airbag and restraint system;
>
> d. Subject Vehicle contains a uniformly designed airbag system that is disabled when the ignition switch on the vehicle fails during ordinary and foreseeable driving situations. Thus, as a result of the defective design of the Subject Vehicle, a driver whose ignition switch fails may suddenly and without warning experience a vehicular power failure that also disables the vehicle's airbags, steering, and brakes. Such a failure may occur unexpectedly and during normal operation of the vehicle;
>
> e. The Key System and its associated component parts lacked adequate testing and/or inspection before it was distributed and sold to ensure it was reasonably suitable for its intended purpose; and,
>
> f. The Key System and its associated component parts lacked adequate warnings and/or other proper notice to alert users regarding the hazardous condition, as herein described, involving its use and operation.

…

Defendant Bravo Cadillac knew or should have known that the Subject Vehicle would be used without inspection for defects, and it represented that the Subject Vehicle could be safely used for the ordinary purpose for which it was purchased.

Defendant Bravo Cadillac knew or should have known that the Subject Vehicle was defectively designed or defectively manufactured in the particular respects set forth above.

Furthermore, the Subject Vehicle was in a defective and unreasonably dangerous condition in that it failed to give the Decedent fair and adequate notice of the danger and possible consequences of using the subject vehicle in the intended and appropriate manner.

> As a direct and proximate result of the defective condition and unreasonably dangerous nature of the Subject Vehicle, the Decedent sustained severe and ultimately fatal injuries.

Ex. A, p. ¶¶ 205, 209-212. Plaintiffs also pleaded negligence, breach of implied warranty, and gross negligence claims against Bravo. *Id. at* ¶¶ 214-226. Their gross negligence claim alleges:

> The conduct and omissions of the Defendants involved an extreme degree of risk, considering the probability and magnitude of the potential harm and of which Defendants had subjective awareness of the risks involved, but nevertheless proceeded with conscious indifference to the rights, safety, and welfare of the decedent involved in this incident by refusing to incorporate feasible safety measures in the subject vehicle.

*Id.* at ¶ 226.

Section 82.003(a)(6) requires that a seller actually know of a defect in the product at the time the seller supplies the product. As set forth above, Plaintiffs clearly pleaded that Defendant Bravo actually knew the subject vehicle was defective. The statute also requires that the claimant's harm resulted from the defect. Plaintiffs also clearly pleaded that that their injuries *resulted* from "known product defects"—including the failure of the subject vehicle's airbags to deploy due to the ignition position. *See generally* Ex. A. Plaintiffs, therefore, have properly pleaded an exception to the immunity provisions of Section 82.003(a) and have sufficiently stated a claim under Section 82.003(a)(6). **Under controlling authority, the inquiry ends here. New GM may not use removal proceedings as an occasion to adjudicate the substantive issues of a case.** Accordingly, this case should be remanded.

Despite this, New GM asks the Court to pierce the pleadings and consider additional evidence which purportedly refutes Plaintiffs' factual assertions. This Court should decline to pierce the pleadings as the evidence New GM submits is merits based. The evidence includes a sworn statement that Defendant Bravo repaired the defect listed in GM Recall Number 14299 prior to sale of the subject vehicle. (Doc. 1, ¶14). New GM claims Plaintiffs omitted this fact. (Doc. 1,

10

¶14). However, other than in claims for fraud or mistake, pleading rules do not require specific factual allegations regarding knowledge. *See* Fed. R. Civ. P. 9(b).

Additionally, in viewing the Petition in a light most favorable to Plaintiffs, this Court should find that such information does not refute that the ignition was still defective regardless of the alleged repair at the time of sale and that Defendant Bravo knew or should have known of such defect(s). There is no indication Plaintiffs have misstated or omitted discrete facts that would determine the propriety of joinder. Remand in such situations is consistent with the notice pleading standard and the limited jurisdiction of federal courts. That limited jurisdiction requires defendants to meet a heavy burden in establishing fraudulent joinder. New GM has not met the burden of showing "there is absolutely no possibility that the plaintiff will be able to establish a cause of action" against the in-state seller in state court. Accordingly, Defendant Bravo is a proper in-state defendant.

Regardless, based on its submitted evidence, New GM argues:

> Given Bravo Cadillac's presale repair of the inadvertent key rotation defect, Plaintiffs have no possibility of showing that Bravo Cadillac actually knew the subject 2006 Cadillac DTS had that defect when it sold the vehicle to their decedent. Indeed, the undisputed proof shows the exact opposite: Bravo Cadillac knew, based on its having completed the service procedure specified in New GM's Product Safety Recall Bulletin for Recall No. 14299, that it had remedied the inadvertent key rotation defect described in GM Recall No. 14299 before selling the 2006 Cadillac DTS to Plaintiffs' decedent.

(Doc. 1, ¶ 14). This argument is fatal to New GM's claim of improper joinder because if that argument is accepted,[2] it would also affect the claims against New GM. In other words, New GM's argument that Plaintiffs have no reasonable basis for predicting that state law would allow them to recover against Bravo because it had completely remedied the only defect with the subject vehicle

---

[2] Plaintiffs point this out for purposes of illustration. Plaintiffs disagree the defects in the subject vehicle were sufficiently repaired pursuant to GM's recall protocol for Recall No. 14299.

11

would necessarily compel the same result for New GM. In such circumstances, the allegation of improper joinder is actually an attack on the merits of plaintiff's case as such and the argument is not one of improper joinder. New GM's sole basis for fraudulent joinder focuses on the merits of Plaintiffs' case which is an inappropriate undertaking in such a determination.

Clearly, New GM is requesting this Court determine issues of fact. The affidavit at issue raises a fact issue which goes directly to the merits of this case and therefore is not properly considered when reviewing a motion to remand. The Southern District of New York has held that defendants may not use removal proceedings as an occasion to adjudicate the substantive issues of a case. *Stan Winston*, 314 F. Supp. 2d at 182 ("Whether or not the complaint adequately alleges such participation and knowledge, however, are properly resolved on a motion to dismiss, not on a motion for remand").

The evidence New GM submitted is merits based and an attempt to adjudicate the substantive issues of this case. This Court should decline New GM's invitation to pierce the pleadings and find, based on a review of Plaintiffs' Petition, that Plaintiffs have a possibility of recovery against Defendant Bravo such that remand this case to the state court in which it was originally filed is warranted. Accordingly, this case should be remanded.

## II. THIS WRONGFUL DEATH ACTION IS NOT A CORE BANKRUPTCY PROCEEDING, NOR IS IT "RELATED TO" A CASE UNDER THE BANKRUPTCY CODE

As a second basis for its removal, New GM relies on 28 U.S.C. § 1334(b), which vests federal district courts with "original but not exclusive jurisdiction of all civil proceedings arising under title 11" or "arising in or related to cases under title 11." Federal law provides that cases filed in state court may be removed to federal court if they are related to bankruptcy proceedings. 28 U.S.C. § 1452(a) ("A party may remove any claim or cause of action in a civil action ... to the district court for the district where such civil action is pending, if such district court has jurisdiction

of such claim or cause of action under section 1334 of this title."). Section 1334(b) provides, "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to a case under title 11." 28 U.S.C. § 1334(b) (emphasis added); *see also* 28 U.S.C. § 157. This provision creates jurisdiction in three categories of proceedings: [1] those that **arise under** title 11; [2] those that **arise in cases under** title 11, and [3] those **related to** cases under title 11. *In re Robert Plan Corp.*, 777 F.3d 594, 596 (2d Cir. 2015) (*citing MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 108–09 (2d Cir.2006)).

The first two are considered "core" proceedings, which the bankruptcy court has the power to hear, decide and enter orders and judgments. *Id*. The third category—"related to" proceedings—are "non-core" proceedings that the bankruptcy court can hear, but it is limited to submitting proposed findings of fact and conclusions of law to the district court. 28 U.S.C. § 157(c)(1); *see also In re Robert Plan Corp.*, 777 F.3d at 596.

### A. Plaintiffs' Common Law Wrongful Death Action is Not a "Core" Proceeding.

A helpful explanation of "core proceedings" is found in the Eastern District of New York's opinion decision in McCord v. Papantoniou:

> Courts have defined core proceedings as "those that are unique to or uniquely affected by the bankruptcy proceedings, or directly affect a core bankruptcy function." *Adelphia Communications Corp. v. Rigas*, 2003 WL 21297258, at *2 (S.D.N.Y. June 4, 2003) (citing *In re Petrie Retail, Inc.*, 304 F.3d 223, 229 (2d Cir. 2002)); *see also In re Burger Boys, Inc.*, 183 B.R. 682, 685 (S.D.N.Y. 1994) ("A core proceeding is generally defined as a matter which would have no existence outside of the bankruptcy case") (internal quotations omitted). Furthermore, "[a] matter is a core proceeding if it invokes a substantive right provided by the Bankruptcy Code or if it could only arise in the context of a bankruptcy case." *In re Kentile Floors, Inc.*, 1995 WL 479512, at *2 (S.D.N.Y. Aug. 10, 1995).

316 B.R. 113, 119 (E.D.N.Y. 2004).

Plaintiffs' wrongful death claims clearly do not constitute "core" proceedings. The claims asserted in Plaintiffs' state court Petition are not rights created by the bankruptcy court, nor are

they claims that would have no existence outside of bankruptcy. Instead, Plaintiffs' right to relief existed *after* Old GM's 2009 bankruptcy, and their causes of action are creatures of Texas common law. Plaintiffs' action seeks to vindicate these state-created common-law rights without using any process specially established by the Bankruptcy Code. In fact, these claims are not of the type that the bankruptcy court—an Article I tribunal of limited jurisdiction—would have the power to hear, decide, and enter a binding judgment. *See id.*; *see also Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S. Ct. 2858 (1982). Clearly, this action neither arises under nor arises in a case under title 11, and therefore is not a core proceeding over which federal bankruptcy jurisdiction exists. Federal law does not support the conclusion that New GM can establish federal subject matter jurisdiction merely because non-party Old GM may at some unspecified time in the future attempt to establish a prospective indebtedness of Old GM to New GM.

### B. Plaintiffs' Common Law Wrongful Death Action is not Related to the Bankruptcy Case.

New GM's claim that Plaintiffs' wrongful death action is "related to" a bankruptcy case is also erroneous. The jurisdiction of federal courts to hear cases that are related to bankruptcy is limited by statute and by Article III of the Constitution. *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984). For subject matter jurisdiction to exist, there must be some nexus between the related civil proceeding and the bankruptcy case. *In re Kreiss*, 58 B.R. 999, 1004 (Bankr. E.D.N.Y. 1986) (*citing In re Lion Capital Group*, 46 B.R. 850 (Bankr. S.D.N.Y. 1985). The Second Circuit has adopted the test for proceedings "related to" bankruptcy cases enunciated in *Pacor*:

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy. The proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

743 F.2d at 994; see also In re Cuyahoga Equip. Corp., 980 F.2d 110, 1114-15 (2d Cir. 1992) (adopting Pacor's "conceivable effect" test in the Second Circuit).

The fact that a vehicle was designed, manufactured, distributed and sold by a corporation that has since reorganized under Title 11 does not supply federal jurisdiction of all future personal injury claims involving pre-bankruptcy vehicles. As the Tenth Circuit explained in *In re Gardner*:

> A bankruptcy court has jurisdiction over disputes regarding alleged property of the bankruptcy estate at the outset of the case. When property leaves the bankruptcy estate, however, the bankruptcy court's jurisdiction typically lapses, and the property's relationship to the bankruptcy proceeding comes to an end. **Thus, the bankruptcy court lacks related jurisdiction to resolve controversies between third party creditors which do not involve the debtor or his property unless the court cannot complete administrative duties without resolving the controversy.**

913 F.2d 1515, 1518 (10th Cir. 1990) (emphasis added) (internal citations omitted); *see also In re Shirley Duke Assocs.*, 611 F.2d 15, 18 (2d Cir. 1979) ("As a general rule, a bankruptcy court has no jurisdiction to decide controversies between third parties which do not involve the debtor or his property, unless the court cannot complete its administrative duties without resolving the controversy"); *Matter of Lemco Gypsum, Inc.*, 910 F.2d 784, 789 (11th Cir. 1990) ("New disputes arising after the property has been sold by the trustee to a third party must be resolved through the processes available for the resolution of such independent disputes. . . Overlap between the bankrupt's affairs and another dispute is insufficient [to invoke jurisdiction under § 1334(b)] unless its resolution also affects the bankrupt's estate or the allocation of assets among creditors.") (*citing Matter of Chicago, Rock Island & Pac. R.R. Co.*, 794 F.2d 1182, 1188 (7th Cir. 1986)).

The case law does not in any way support the conclusion that New GM can establish federal subject matter jurisdiction merely because non-party Old GM is bankrupt. *See In re Holland Indus., Inc.*, 103 B.R. 461, 469 (Bankr. S.D.N.Y. 1989) ("where the proceeding is not otherwise related and would not affect distributable assets, it is not related and is not within the jurisdiction

15

of the bankruptcy courts."); *see also In re Eneco, Inc.*, 431 B.R. 308 (B.A.P. 10th Cir. 2010) (the court concluded that, even when predicated upon contractual indemnification, "[t]here must exist some point at which "related to" jurisdiction does not exist even though it may impact upon creditors in some way. Requiring a party who may seek indemnification to file a proof of claim transforms a potential claim into a tangible claim by allowing a bankruptcy court to look beyond the "relatedness" allegations of the parties.")

The dispute here is between the debtor's successor in interest, New GM, and Plaintiffs. This dispute does not involve the identification of Old GM's property interests and it does not affect its creditors. There is no suggestion that the recovery, if any is had, would come from the bankruptcy estate. Any judgment or settlement reached in this case will be paid to Plaintiffs by the Defendant they sued—*i.e.*, New GM—and will have no effect on Old GM's estate. Thus, in this case, there is no reason for the bankruptcy court's jurisdiction to linger. *See Matter of Lemco Gypsum, Inc.*, 910 F.2d 784, 789 (11th Cir. 1990).

Nevertheless, New GM contends that determination of Plaintiffs' claims involves the resolution of disputes concerning the Sale Agreement and Sale Order and Injunction, which creates bankruptcy jurisdiction. (Doc. 1, at ¶ 7.) However, the Second Circuit has held that the Sale Order and Injunction do not apply to suits involving vehicles designed, manufactured and sold prior to the 2009 bankruptcy:

> [T]he Sale Order likewise does not cover the Used Car Purchasers' claims. The Used Car Purchasers were individuals who purchased Old GM cars after the closing, without knowledge of the defect or possible claim against New GM. They had no relation with Old GM prior to bankruptcy. Indeed, as of the bankruptcy petition there were an unknown number of unknown individuals who would one day purchase Old GM vehicles secondhand. There could have been no contact or relationship—actual or presumed—between Old GM and these specific plaintiffs, who otherwise had no awareness of the ignition switch defect or putative claims against New GM. We cannot, consistent with bankruptcy law, read the Sale Order to cover their claims.

*In re Motors Liquidation Co.*, 829 F.3d at 157, *cert. denied sub nom. Gen. Motors LLC v. Elliott*, 137 S. Ct. 1813, 197 L. Ed. 2d 758 (2017). As the Second Circuit explained, there are no issues involved in Plaintiffs' case that affect the bankruptcy estate or Old GM's assets, as these claims are directed only at New GM. As such, there is nothing for the bankruptcy court to adjudicate, and no jurisdiction for it to do so. *See id.*

### III. FEDERAL JURISDICTION IS NOT PROPER UNDER THE DOCTRINE OF MANDATORY ABSTENTION

Even if the Court concludes that Plaintiffs' claims are "related to" a bankruptcy case, the Court must invoke the doctrine of mandatory abstention which provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or a State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such a proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2). *In re S.G. Phillips Constructors, Inc.*, 45 F.3d 702, 708 (2nd Cir. 1995).

In a recent Order, this Court remanded a pre-bankruptcy crash involving claims against General Motors LLC to state court where the action was originally filed, holding that even assuming the case is "related to" a bankruptcy proceeding, mandatory abstention applied. *In Re: General Motors LLC Ignition Switch Litigation*, 14-MD-2543 (JMF), 2017 WL 5195234, at *4 (S.D.N.Y. Nov. 9, 2017) (also noting that "there is no serious argument [the plaintiff's] case falls within the Court's 'arising jurisdiction.'"), attached as Exhibit B. In another recent Order, this Court similarly found remand appropriate in a post-bankruptcy case. *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2018 WL 2899642, at *3 (S.D.N.Y. June 11, 2018) (finding remand no less warranted than it was in *Synott v. General Motors LLC, 17-CV-4150*

*(JMF)*, and in the alternative, concluding remand would be appropriate pursuant to the doctrine of permissive abstention), attached as Exhibit C. Remand is likewise warranted here.

The first element of mandatory abstention—a timely motion—is easily established here. The second element is also clearly met: Plaintiffs claims are a proceeding based upon Texas common law. Brief examination of the Petition filed in state court indicates that Plaintiffs' claims are for (1) strict liability; (2) negligence; (3) fraudulent misrepresentation/fraudulent concealment; (4) breach of implied warranty; and (5) punitive damages, all of which are state law causes of action asserted exclusively against New GM which turn on Texas's laws of successor liability. With respect to the third element, as set forth above, Plaintiffs' claims are clearly not a "core" proceeding over which the bankruptcy court would have the authority to enter a judgement. Finally, the County Court at Law No. 7, El Paso, Texas is ideally suited to adjudicate the issues presented in the instant matter, as it routinely adjudicates common law tort claims arising under Texas law. Accordingly, the Court should apply the doctrine of mandatory abstention and remand this case to the Texas state court.

**IV.    THE COURT SHOULD REMAND UNDER THE DOCTRINE OF DISCRETIONARY ABSTENTION**

Section 1334(c) also provides that courts may abstain from hearing a case "in the interest of justice, or in the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334(c)(1); *see also In re Kolinsky*, 100 B.R. 695, 704 (Bankr. S.D.N.Y. 1989). There are twelve factors the court must weigh to determine whether discretionary abstention is appropriate:

> (1) the effect of abstention on the efficient administration of the bankruptcy estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the basis of bankruptcy jurisdiction, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden

of the bankruptcy court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence in the proceeding of non-debtor parties.

*In re JCC Capital Corp.*, 147 B.R. 349, 354 (Bankr. S.D.N.Y. 1992) *(internal citations omitted)*.

Nearly all of these factors militate toward abstention: (1) abstention will have no effect on the administration of the bankruptcy estate, as there are no bankruptcy issues at play in this case; (2) Plaintiffs' common law personal injury claims predominate over any bankruptcy issue that may exist; (3) bankruptcy jurisdiction in this case is exclusively premised on 28 U.S.C. § 1334; (4) this case is only remotely related to the bankruptcy case; (5) this action is not a "core" proceeding; (6) to the extent that any bankruptcy issues exist in this case, they can easily be severed from the state court issues; (7) removal of this case to federal court and transfer to the Southern District of New York Bankruptcy Court is clearly an attempt to engage in forum shopping by New GM; (8) Plaintiffs have made a jury trial demand in the state court; and (9) non-debtor parties are present in this proceeding. Furthermore, remand serves principles of judicial economy, avoids prejudice to Texas resident Bravo, lessens the possibilities of inconsistent results, and allows the case to be tried in the Texas state court, which has more expertise in Texas tort actions than the Bankruptcy Court for the Southern District of New York.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion for Remand and remand this action to the County Court at Law No. 7, El Paso, Texas.

DATED: June 28, 2018

                                                  Respectfully submitted,
                                                  /s/Brett A. Emison
                                                  Brett A. Emison
                                                  LANGDON & EMISON
                                                  911 Main Street, P.O. Box 220
                                                  Lexington, Missouri 64067

Tel: (660) 259-6175  
Fax: (660) 259-4571  
brett@lelaw.com  
*admitted pro hac vice*

## **CERTIFICATE OF SERVICE**

  I hereby certify that on this 28th of June, 2018, I electronically filed the foregoing with the clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/Brett Emison