# Exhibit 42

**EXECUTION COPY**

**AMENDED AND RESTATED**

**MASTER SALE AND PURCHASE AGREEMENT**

**BY AND AMONG**

**GENERAL MOTORS CORPORATION,**

**SATURN LLC,**

**SATURN DISTRIBUTION CORPORATION**

**AND**

**CHEVROLET-SATURN OF HARLEM, INC.,**

***as Sellers***

**AND**

**NGMCO, INC.,**

***as Purchaser***

**DATED AS OF**

**JUNE 26, 2009**

## TABLE OF CONTENTS

**DESCRIPTION** **PAGE**


ARTICLE I DEFINITIONS ..... 2

Section 1.1 Defined Terms. ..... 2
Section 1.2 Other Interpretive Provisions. ..... 23

ARTICLE II PURCHASE AND SALE ..... 23

Section 2.1 Purchase and Sale of Assets; Assumption of Liabilities. ..... 23
Section 2.2 Purchased and Excluded Assets. ..... 23
Section 2.3 Assumed and Retained Liabilities. ..... 28
Section 2.4 Non-Assignability. ..... 32

ARTICLE III CLOSING; PURCHASE PRICE ..... 33

Section 3.1 Closing. ..... 33
Section 3.2 Purchase Price. ..... 34
Section 3.3 Allocation. ..... 35
Section 3.4 Prorations. ..... 35
Section 3.5 Post-Closing True-up of Certain Accounts. ..... 36

ARTICLE IV REPRESENTATIONS AND WARRANTIES OF SELLERS ..... 37

Section 4.1 Organization and Good Standing. ..... 37
Section 4.2 Authorization; Enforceability. ..... 37
Section 4.3 Noncontravention; Consents. ..... 37
Section 4.4 Subsidiaries. ..... 38
Section 4.5 Reports and Financial Statements; Internal Controls. ..... 38
Section 4.6 Absence of Certain Changes and Events. ..... 39
Section 4.7 Title to and Sufficiency of Assets. ..... 41
Section 4.8 Compliance with Laws; Permits. ..... 41
Section 4.9 Environmental Laws. ..... 42
Section 4.10 Employee Benefit Plans. ..... 42
Section 4.11 Labor Matters. ..... 44
Section 4.12 Investigations; Litigation. ..... 45
Section 4.13 Tax Matters. ..... 45
Section 4.14 Intellectual Property and IT Systems. ..... 46
Section 4.15 Real Property. ..... 47
Section 4.16 Material Contracts. ..... 48
Section 4.17 Dealer Sales and Service Agreements for Continuing Brands. ..... 49
Section 4.18 Sellers' Products. ..... 49
Section 4.19 Certain Business Practices. ..... 49
Section 4.20 Brokers and Other Advisors. ..... 50

Section 4.21 Investment Representations. ....50
Section 4.22 No Other Representations or Warranties of Sellers. ....51

ARTICLE V REPRESENTATIONS AND WARRANTIES OF PURCHASER .... 51

Section 5.1 Organization and Good Standing. ....51
Section 5.2 Authorization; Enforceability. ....52
Section 5.3 Noncontravention; Consents. ....52
Section 5.4 Capitalization. ....53
Section 5.5 Valid Issuance of Shares. ....54
Section 5.6 Investment Representations. ....54
Section 5.7 Continuity of Business Enterprise. ....55
Section 5.8 Integrated Transaction. ....55
Section 5.9 No Other Representations or Warranties of Sellers. ....55

ARTICLE VI COVENANTS .... 56

Section 6.1 Access to Information. ....56
Section 6.2 Conduct of Business. ....57
Section 6.3 Notices and Consents. ....60
Section 6.4 Sale Procedures; Bankruptcy Court Approval. ....61
Section 6.5 Supplements to Purchased Assets. ....62
Section 6.6 Assumption or Rejection of Contracts. ....62
Section 6.7 Deferred Termination Agreements; Participation Agreements. ....65
Section 6.8 [Reserved] ....66
Section 6.9 Purchaser Assumed Debt; Wind Down Facility. ....66
Section 6.10 Litigation and Other Assistance. ....66
Section 6.11 Further Assurances. ....67
Section 6.12 Notifications. ....68
Section 6.13 Actions by Affiliates. ....69
Section 6.14 Compliance Remediation. ....69
Section 6.15 Product Certification, Recall and Warranty Claims. ....69
Section 6.16 Tax Matters; Cooperation. ....69
Section 6.17 Employees; Benefit Plans; Labor Matters. ....74
Section 6.18 TARP. ....79
Section 6.19 Guarantees; Letters of Credit. ....79
Section 6.20 Customs Duties. ....79
Section 6.21 Termination of Intellectual Property Rights. ....79
Section 6.22 Trademarks. ....80
Section 6.23 Preservation of Records. ....81
Section 6.24 Confidentiality. ....81
Section 6.25 Privacy Policies. ....82
Section 6.26 Supplements to Sellers' Disclosure Schedule. ....82
Section 6.27 Real Property Matters. ....82
Section 6.28 Equity Incentive Plans. ....84
Section 6.29 Purchase of Personal Property Subject to Executory Contracts. ....84

Section 6.30 Transfer of Riverfront Holdings, Inc. Equity Interests or Purchased Assets; Ren Cen Lease. ....84
Section 6.31 Delphi Agreements. ....85
Section 6.32 GM Strasbourg S.A. Restructuring. ....85
Section 6.33 Holding Company Reorganization. ....85
Section 6.34 Transfer of Promark Global Advisors Limited and Promark Investment Trustees Limited Equity Interests. ....86
Section 6.35 Transfer of Equity Interests in Certain Subsidiaries. ....86

ARTICLE VII CONDITIONS TO CLOSING .... 86

Section 7.1 Conditions to Obligations of Purchaser and Sellers. ....86
Section 7.2 Conditions to Obligations of Purchaser. ....87
Section 7.3 Conditions to Obligations of Sellers. ....91

ARTICLE VIII TERMINATION .... 93

Section 8.1 Termination. ....93
Section 8.2 Procedure and Effect of Termination. ....94

ARTICLE IX MISCELLANEOUS .... 95

Section 9.1 Survival of Representations, Warranties, Covenants and Agreements and Consequences of Certain Breaches. ....95
Section 9.2 Notices. ....95
Section 9.3 Fees and Expenses; No Right of Setoff. ....97
Section 9.4 Bulk Sales Laws. ....97
Section 9.5 Assignment. ....97
Section 9.6 Amendment. ....98
Section 9.7 Waiver. ....98
Section 9.8 Severability. ....98
Section 9.9 Counterparts; Facsimiles. ....98
Section 9.10 Headings. ....98
Section 9.11 Parties in Interest. ....98
Section 9.12 Governing Law. ....99
Section 9.13 Venue and Retention of Jurisdiction. ....99
Section 9.14 Waiver of Jury Trial. ....99
Section 9.15 Risk of Loss. ....99
Section 9.16 Enforcement of Agreement. ....99
Section 9.17 Entire Agreement. ....100
Section 9.18 Publicity. ....100
Section 9.19 No Successor or Transferee Liability. ....100
Section 9.20 Time Periods. ....101
Section 9.21 Sellers' Disclosure Schedule ....101
Section 9.22 No Binding Effect. ....101

## EXHIBITS

| | |
|---|---|
| Exhibit A | Form of Parent Warrant A |
| Exhibit B | Form of Parent Warrant B |
| Exhibit C | UAW Active Labor Modifications |
| Exhibit D | Form of UAW Retiree Settlement Agreement |
| Exhibit E | Form of VEBA Warrant |
| Exhibit F | Certain Excluded Owned Real Property |
| Exhibit G | Certain Retained Workers' Compensation Claims |
| Exhibit H | Form of Sale Procedures Order |
| Exhibit I | Form of Sale Approval Order |
| Exhibit J-1 | Form of Deferred Termination Agreement for Saturn Discontinued Brand Dealer Agreements |
| Exhibit J-2 | Form of Deferred Termination Agreement for Hummer Discontinued Brand Dealer Agreements |
| Exhibit J-3 | Form of Deferred Termination Agreement for non-Saturn and non-Hummer Discontinued Brand Dealer Agreements and Excluded Continuing Brand Dealer Agreements |
| Exhibit K | Form of Participation Agreement |
| Exhibit L | Form of Subdivision Master Lease |
| Exhibit M | Form of Assignment and Assumption of Willow Run Lease |
| Exhibit N | Form of Ren Cen Lease |
| Exhibit O | Form of Equity Registration Rights Agreement |
| Exhibit P | Form of Bill of Sale |
| Exhibit Q | Form of Assignment and Assumption Agreement |
| Exhibit R | Form of Novation Agreement |
| Exhibit S | Form of Government Related Subcontract Agreement |
| Exhibit T | Form of Intellectual Property Assignment Agreement |
| Exhibit U | Form of Transition Services Agreement |
| Exhibit V | Form of Assignment and Assumption of Real Property Leases |
| Exhibit W | Form of Assignment and Assumption of Harlem Lease |
| Exhibit X | Form of Master Lease Agreement |
| Exhibit Y | Form of Certificate of Designation of Purchaser for Preferred Stock |
| Exhibit Z | VEBA Note Term Sheet |

**AMENDED AND RESTATED MASTER SALE AND PURCHASE AGREEMENT**

THIS AMENDED AND RESTATED MASTER SALE AND PURCHASE AGREEMENT (this "Agreement"), dated as of June 26, 2009, is made by and among General Motors Corporation, a Delaware corporation ("Parent"), Saturn LLC, a Delaware limited liability company ("S LLC"), Saturn Distribution Corporation, a Delaware corporation ("S Distribution"), Chevrolet-Saturn of Harlem, Inc., a Delaware corporation ("Harlem," and collectively with Parent, S LLC and S Distribution, "Sellers," and each a "Seller"), and NGMCO, Inc., a Delaware corporation and successor-in-interest to Vehicle Acquisition Holdings LLC, a Delaware limited liability company ("Purchaser").

WHEREAS, on June 1, 2009 (the "Petition Date"), the Parties entered into that certain Master Sale and Purchase Agreement (the "Original Agreement"), and, in connection therewith, Sellers filed voluntary petitions for relief (the "Bankruptcy Cases") under Chapter 11 of Title 11, U.S.C. §§ 101 et seq., as amended (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court");

WHEREAS, pursuant to Sections 363 and 365 of the Bankruptcy Code, Sellers desire to sell, transfer, assign, convey and deliver to Purchaser, and Purchaser desires to purchase, accept and acquire from Sellers all of the Purchased Assets (as hereinafter defined) and assume and thereafter pay or perform as and when due, or otherwise discharge, all of the Assumed Liabilities (as hereinafter defined), in each case, in accordance with the terms and subject to the conditions set forth in this Agreement and the Bankruptcy Code;

WHEREAS, on the Petition Date, Purchaser entered into equity subscription agreements with each of Canada, Sponsor and the New VEBA (each as hereinafter defined), pursuant to which Purchaser has agreed to issue, on the Closing Date (as hereinafter defined), the Canada Shares, the Sponsor Shares, the VEBA Shares, the VEBA Note and the VEBA Warrant (each as hereinafter defined);

WHEREAS, pursuant to the equity subscription agreement between Purchaser and Canada, Canada has agreed to (i) contribute on or before the Closing Date an amount of Indebtedness (as hereinafter defined) owed to it by General Motors of Canada Limited ("GMCL"), which results in not more than $1,288,135,593 of such Indebtedness remaining an obligation of GMCL, to Canada immediately following the Closing (the "Canadian Debt Contribution") and (ii) exchange immediately following the Closing the $3,887,000,000 loan to be made by Canada to Purchaser for additional shares of capital stock of Purchaser;

WHEREAS, the transactions contemplated by this Agreement are in furtherance of the conditions, covenants and requirements of the UST Credit Facilities (as hereinafter defined) and are intended to result in a rationalization of the costs, capitalization and capacity with respect to the manufacturing workforce of, and suppliers to, Sellers and their Subsidiaries (as hereinafter defined);

WHEREAS, it is contemplated that Purchaser may, in accordance with the terms of this Agreement, prior to the Closing (as hereinafter defined), engage in one or more related transactions (the "Holding Company Reorganization") generally designed to reorganize

**Section 2.3(b)(iv)**, **Section 2.3(b)(vi)** and **Section 2.3(b)(ix)**, (2) Liabilities arising under any dealer sales and service Contract and any Contract related thereto, to the extent such Contract has been designated as a Rejectable Executory Contract, and (3) Liabilities otherwise assumed in this **Section 2.3(a)**;

(vi) all Transfer Taxes payable in connection with the sale, transfer, assignment, conveyance and delivery of the Purchased Assets pursuant to the terms of this Agreement;

(vii) (A) all Liabilities arising under express written warranties of Sellers that are specifically identified as warranties and delivered in connection with the sale of new, certified used or pre-owned vehicles or new or remanufactured motor vehicle parts and equipment (including service parts, accessories, engines and transmissions) manufactured or sold by Sellers or Purchaser prior to or after the Closing and (B) all obligations under Lemon Laws;

(viii) all Liabilities arising under any Environmental Law (A) relating to conditions present on the Transferred Real Property, other than those Liabilities described in **Section 2.3(b)(iv)**, (B) resulting from Purchaser's ownership or operation of the Transferred Real Property after the Closing or (C) relating to Purchaser's failure to comply with Environmental Laws after the Closing;

(ix) all Liabilities to third parties for death, personal injury, or other injury to Persons or damage to property caused by motor vehicles designed for operation on public roadways or by the component parts of such motor vehicles and, in each case, manufactured, sold or delivered by Sellers (collectively, "Product Liabilities"), which arise directly out of accidents, incidents or other distinct and discreet occurrences that happen on or after the Closing Date and arise from such motor vehicles' operation or performance (for avoidance of doubt, Purchaser shall not assume, or become liable to pay, perform or discharge, any Liability arising or contended to arise by reason of exposure to materials utilized in the assembly or fabrication of motor vehicles manufactured by Sellers and delivered prior to the Closing Date, including asbestos, silicates or fluids, regardless of when such alleged exposure occurs);

(x) all Liabilities of Sellers arising out of, relating to, in respect of, or in connection with workers' compensation claims against any Seller, except for Retained Workers' Compensation Claims;

(xi) all Liabilities arising out of, relating to, in respect of, or in connection with the use, ownership or sale of the Purchased Assets after the Closing;

(xii) all Liabilities (A) specifically assumed by Purchaser pursuant to **Section 6.17** and (B) arising out of, relating to or in connection with the salaries and/or wages and vacation of all Transferred Employees that are accrued and unpaid (or with respect to vacation, unused) as of the Closing Date;

an executive officer of Purchaser setting forth the details of such event and the action which Purchaser proposes to take with respect thereto.

*Section 6.13 Actions by Affiliates.* Each of Purchaser and Sellers shall cause their respective controlled Affiliates, and shall use their reasonable best efforts to ensure that each of their respective other Affiliates (other than Sponsor in the case of Purchaser) takes all actions reasonably necessary to be taken by such Affiliate in order to fulfill the obligations of Purchaser or Sellers, as the case may be, under this Agreement.

*Section 6.14 Compliance Remediation.* Except with respect to the Excluded Assets or Retained Liabilities, prior to the Closing, Sellers shall use reasonable best efforts to, and shall use reasonable best efforts to cause their Subsidiaries to use their reasonable best efforts to, cure in all material respects any instances of non-compliance with Laws or Orders, failures to possess or maintain Permits or defaults under Permits.

*Section 6.15 Product Certification, Recall and Warranty Claims.*

(a) From and after the Closing, Purchaser shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by Seller.

(b) From and after the Closing, Purchaser shall be responsible for the administration, management and payment of all Liabilities arising under (i) express written warranties of Sellers that are specifically identified as warranties and delivered in connection with the sale of new, certified used or pre-owned vehicles or new or remanufactured motor vehicle parts and equipment (including service parts, accessories, engines and transmissions) manufactured or sold by Sellers or Purchaser prior to or after the Closing and (ii) Lemon Laws. In connection with the foregoing clause (ii), (A) Purchaser shall continue to address Lemon Law Claims using the same procedural mechanisms previously utilized by the applicable Sellers and (B) for avoidance of doubt, Purchaser shall not assume Liabilities arising under the law of implied warranty or other analogous provisions of state Law, other than Lemon Laws, that provide consumer remedies in addition to or different from those specified in Sellers' express warranties.

(c) For the avoidance of doubt, Liabilities of the Transferred Entities arising from or in connection with products manufactured or sold by the Transferred Entities remain the responsibility of the Transferred Entities and shall be neither Assumed Liabilities nor Retained Liabilities for the purposes of this Agreement.

*Section 6.16 Tax Matters; Cooperation.*

(a) Prior to the Closing Date, Sellers shall prepare and timely file (or cause to be prepared and timely filed) all Tax Returns required to be filed prior to such date (taking into account any extension of time to file granted or obtained) that relate to Sellers, the Purchased Subsidiaries and the Purchased Assets in a manner consistent with

**IN WITNESS WHEREOF,** each of the Parties hereto has caused this Amendment to be executed by its duly authorized officer, in each case as of the date first written above.

GENERAL MOTORS CORPORATION

By: ______________________
Name: Frederick A. Henderson
Title: President and Chief Executive Officer

SATURN LLC

By: ______________________
Name: Jill Lajdziak
Title: President

SATURN DISTRIBUTION CORPORATION

By: ______________________
Name: Jill Lajdziak
Title: President

CHEVROLET-SATURN OF HARLEM, INC.

By: ______________________
Name: Michael Garrick
Title: President

NGMCO, INC.

By: ______________________
Name: Sadiq Malik
Title: Vice President and Treasurer

**IN WITNESS WHEREOF**, each of the Parties hereto has caused this Amendment to be executed by its duly authorized officer, in each case as of the date first written above.

GENERAL MOTORS CORPORATION

By: ______________________________
Name: Frederick A. Henderson
Title: President and Chief Executive Officer

SATURN LLC

By: ______________________________
Name: Jill Lajdziak
Title: President

SATURN DISTRIBUTION CORPORATION

By: ______________________________
Name: Jill Lajdziak
Title: President

CHEVROLET-SATURN OF HARLEM, INC.

By: ______________________________
Name: Michael Garrick
Title: President

NGMCO, INC.

By: ______________________________
Name: Sadiq Malik
Title: Vice President and Treasurer

IN WITNESS WHEREOF, each of the Parties hereto has caused this Amendment to be executed by its duly authorized officer, in each case as of the date first written above.

GENERAL MOTORS CORPORATION

By: ______________________________
Name: Frederick A. Henderson
Title: President and Chief Executive Officer

SATURN LLC

By: ______________________________
Name: Jill Lajdziak
Title: President

SATURN DISTRIBUTION CORPORATION

By: ______________________________
Name: Jill Lajdziak
Title: President

CHEVROLET-SATURN OF HARLEM, INC.

By: ______________________________
Name: Michael Garrick
Title: President

NGMCO, INC.

By: ______________________________
Name: Sadiq Malik
Title: Vice President and Treasurer

**IN WITNESS WHEREOF,** each of the Parties hereto has caused this Amendment to be executed by its duly authorized officer, in each case as of the date first written above.

GENERAL MOTORS CORPORATION

By: ______________________________
Name: Frederick A. Henderson
Title: President and Chief Executive Officer

SATURN LLC

By: ______________________________
Name: Jill Lajdziak
Title: President

SATURN DISTRIBUTION CORPORATION

By: ______________________________
Name: Jill Lajdziak
Title: President

CHEVROLET-SATURN OF HARLEM, INC.

By: ______________________________
Name: Michael Garrick
Title: President

NGMCO, INC.

By: ______________________________
Name: Sadiq Malik
Title: Vice President and Treasurer