# Exhibit 193

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE:<br><br>GENERAL MOTORS LLC IGNITION SWITCH LITIGATION | No. 14-MD-2543 (JMF) |
| This Document Relates to:<br><br>ALL ACTIONS | |

**DECLARATION OF DAVONNE J. VIGIL**

I, Davonne J. Vigil, declare as follows:

I have personal knowledge of the facts set forth below and I am willing and competent to testify about them.

3. In 2013 and 2014, I was living in Denver, Colorado, and driving the 2007 Chevrolet Cobalt purchased by Michael Graciano and my mother, Gina Vigil. Prior to March 2, 2014, on five or six occasions, when I was driving to or from school, the engine on the Cobalt stopped running and the power steering stopped working so that it was almost impossible for me to turn the wheel. Thankfully, each time I was able to come to a safe stop in the street and no one ran into me from behind, so I was not injured during any of these incidents.

4. Each time I found that the key and ignition had turned into the off position. On two of the five or six occasions, maybe the last two, the switch would not immediately turn back into the start position and start the car again. On those occasions, I had to try to turn the car back on multiple times and it took a couple of minutes before I could finally get the car restarted.

I declare that the foregoing is true and correct under penalty of perjury under the laws of the United States. Executed on September 17, 2018, at Arlington, Texas.

Davonne J. Vigil

DAVONNE J. VIGIL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE:<br><br>GENERAL MOTORS LLC IGNITION SWITCH LITIGATION | No. 14-MD-2543 (JMF) |
| This Document Relates to:<br><br>ALL ACTIONS | |

**DECLARATION OF GINA VIGIL**

I, GINA VIGIL, declare as follows:

1. I have personal knowledge of the facts set forth below and I am willing and competent to testify about them.

2. In October 2011, when I and Michael Graciano, my then-fiancée, went shopping to purchase a used car from my daughter, Davonne Vigil, to drive, finding the safest and most reliable car possible within our price range was my priority, and I clearly communicated that to Michael. I specifically told him that, in the interest of safety, I wanted the car to have airbags, traction control and ABS.

3. We purchased the 2007 Chevrolet Cobalt from Holt Chrysler Jeep Dodge in Arlington, Texas, on October 17, 2011. Before we purchased it, the salesman told us that it would be a safe, reliable car for a teenager. We believed him and relied upon this representation in deciding to buy the Cobalt.

4. Davonne subsequently moved to Denver, Colorado, with the Cobalt. Prior to March 2, 2014, my daughter called me multiple times upset and frightened and told me that the car had stopped running and that when it did, the power steering stopped working. Thankfully, she was not injured during any of these incidents. My father had the Cobalt inspected by family members experienced in car repair and one independent repair shop, but no one was able to correctly diagnose the problem.

5. We received the safety recall notice for the Cobalt in March 2014. Michael and I were afraid for Davonne's safety if she continued driving the car, so we agreed with her that she would not to drive it anymore until it was fixed. I called a Denver Chevrolet dealer, AutoNation Chevrolet, twice in March 2014 about having the car fixed. Both time the dealer told me it did not have the necessary parts, and both times it failed to offer me a loaner vehicle. As a consequence,

my daughter was without a loaner vehicle until May 5, 2014. During that time from March to May 5, Davonne used her grandfather's car, a 1991 Buick Park Avenue, which got significantly worse gas mileage than the Cobalt, resulting in increased gasoline expenditures.

6. AutoNation Chevrolet North finally arranged for a rental car staring May 5, 2014, after I researched the recall and found out we were entitled to loaner vehicle. I called AutoNation and told them what I learned from my research, at which time it finally agreed to arrange for the rental.

7. While we were waiting for the dealer to make the recall repair, Davonne moved to Texas to go to college, and she brought the rental car with her. Eventually, in approximately mid-June, the dealer called me to say the repairs had been completed. This was almost two months after we had dropped the car off to be fixed. I had numerous telephone conversations with the service manager after that explaining that Davonne was now living in Texas and why and asking the dealership to please get New GM to cover the cost of transporting the Cobalt to her in Texas. While we were having these discussions, Davonne kept driving the Enterprise rental. Finally, the service manager informed me that New GM refused to pay for transporting the Cobalt back to Texas.

8. Shortly after that, I received a phone call from a New GM representative stating I had 24 hours to return the loaner vehicle to Enterprise in Denver or criminal charges would be pressed against me and I would owe $5,000 for continuing to keep the loaner vehicle. Under that threat, Davonne returned the loaner to Enterprise in Arlington, Texas, Texas, on July 30, 2014.

9. That left us with the problem of how to get the Cobalt from Denver to my daughter in Texas. So, my brother kindly donated his time and effort to drive the car from Denver to Texas, but we had to pay the cost of the gasoline required to do so. Then, we had to pay to fly my brother back from Texas to Denver.

I declare that the foregoing is true and correct under penalty of perjury under the laws of the United States. Executed on September 19, 2018 at 4703 w 52nd ave apt 502 Denver CO 80212

Gina Vigil
GINA VIGIL