**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE:<br><br>GENERAL MOTORS LLC<br>IGNITION SWITCH LITIGATION | 14-MD-2543 (JMF)<br>14-MC-2543<br><br>Hon. Jesse M. Furman |

*This Motion Applies To:* ***Genita McKnight v. General Motors LLC****, 18-CV-3247*

**MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR ADMISSION OF PURPORTED OTHER SIMILAR INCIDENT EVIDENCE**

Richard C. Godfrey, P.C.
Andrew B. Bloomer, P.C.
KIRKLAND & ELLIS LLP
300 N. LaSalle Street
Chicago, IL 60654
Phone: 312-862-2000
Fax: 312-862-2200
richard.godfrey@kirkland.com
andrew.bloomer@kirkland.com

*Attorneys for Defendant*
*General Motors LLC*

Dated: October 19, 2018

# TABLE OF CONTENTS

**Page**

**INTRODUCTION** .......... **1**

**FACTUAL BACKGROUND** .......... **1**

A. Plaintiff's June 2016 Crash .......... 1

B. The Recall Repair .......... 2

C. Plaintiff's Proffered OSIs Do Not Involve Recall Repaired Vehicles .......... 4

**ARGUMENT** .......... **4**

A. The Pre-Recall Incidents Are Not "Substantially Similar" To Plaintiff's Post-Recall Accident .......... 5

B. Introduction Of The Pre-Recall Incidents Creates A Substantial Risk Of Unfair Prejudice .......... 8

**CONCLUSION** .......... **9**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bado-Santana v. Ford Motor Co.*,
482 F. Supp. 2d 197 (D. P.R. 2007)....5

*Barker v. Deere & Co.*,
60 F.3d 158 (3d Cir. 1995)....4

*Beane v. Util. Trailer Mfg. Co.*,
2013 WL 837155 (W.D. La. Mar. 6, 2013)....8

*Exum v. Gen. Elec. Co.*,
819 F.2d 1158 (D.C. Cir. 1987)....5

*Gardner v. Ford Motor Co.*,
166 F. Supp. 3d 1261 (M.D. Fla. 2015)....3, 6

*Gumbs v. Int'l Harvester, Inc.*,
718 F.2d 88 (3d Cir. 1983)....6

*Lewy v. Remington Arms Co.*,
836 F.2d 1104 (8th Cir. 1988)....5, 6

*Nakajima v. Gen. Motors Corp.*,
857 F. Supp. 100 (D.D.C. 1994)....5, 6, 7

*Schmelzer v. Hilton Hotels Corp.*,
2007 WL 2826628 (S.D.N.Y. Sept. 24, 2007)....4

## INTRODUCTION

Plaintiff Genita McKnight seeks to introduce evidence from fifty-eight ***pre-recall*** incidents "for purposes of proving New GM's notice and knowledge of the defect." (ECF. No. 6147 at 1) However, unlike the OSIs, plaintiff's vehicle had the ***recall repair performed*** prior to her accident. This distinction renders the OSIs irrelevant to notice. In this case, plaintiff must show that rotation can occur in a vehicle that had the recall remedy installed—*i.e.*, that the recall remedy itself was defective. None of the purported OSIs involve recall repaired vehicles, and thus none of them did (or could) put New GM on notice of an alleged problem with the recall remedy.

Plaintiff seeks to side step this issue by arguing that, like the OSIs, "the defect in [her] vehicle involves a low torque ignition switch." (ECF. No. 6147 at 27) But the relevant inquiry is whether the re-designed ***ignition system*** in a recall-repaired vehicle is susceptible to inadvertent key rotation. Prejudicial OSI evidence involving vehicles without the recall repair cannot have put New GM on notice of ***that*** issue.

## FACTUAL BACKGROUND

### A. Plaintiff's June 2016 Crash

On June 29, 2016, at approximately 7:30 a.m., plaintiff was driving her 2007 Cadillac CTS on State Highway 8 in Cleveland County, Arkansas, when she failed to navigate a turn and drove off of the roadway.[1] Her vehicle collided with a culvert and became airborne, then rolled over one and a half times before coming to rest on its roof. (*Id.*) Plaintiff initially could not recall experiencing any problem with her vehicle. But several weeks after the accident she learned about the key rotation recall and then claimed that her steering and brakes quit working.[2]

---

1 Ex. A, Police Report at MCKNG-MDL2543-MRC-00601

2 Ex. B, G. McKnight Dep. Tr. at 79:6-11, 120:18-121:16

**B. The Recall Repair**

Two years prior to plaintiff's accident, the 2007 CTS was recalled for potential inadvertent key rotation.[3] The recall remedy included a design change to remove the moment arm by altering the design of the key head from a slot to a central hole utilizing an insert or a cover for the key head. (*Id.*) At a high level, inadvertent inertial rotation of the ignition switch requires a twisting force, torque, to be applied to the key head. (*Id.* at 20) Application of the torque requires both a force (coming from *e.g.*, the inertial loading of a hanging key mass) ***and*** a moment arm for the force to act upon (*e.g.*, the distance from the center of the key head to the end of the slot). (*Id.*) Even an infinite force applied on the axis of rotation (*i.e.* the center of the key head) will not cause the switch to rotate. (*Id.*) By changing the key from one that contains a slot to one with a central hole, the moment arm is removed, thus eliminating the mechanism by which inertial loading can cause inadvertent key rotation. (*Id.*)

The recall remedy also included adding two small key rings to the key head.[4] The pair of key rings produces a decoupling effect which effectively reduces the ability of external forces applied to the key chain or fob to be transmitted to the key and switch. (*Id.*) Internal GM testing demonstrated that, even prior to the recall repair being implemented, the 2007 Cadillac CTS at issue (the "Generation 1 CTS") was ***not*** susceptible to inadvertent key rotation through inadvertent knee-key contact.[5] However, even if it had been, the recall remedy would have addressed and minimized that risk.[6]

---

[3] Ex. C, Report of M. Stevenson at 10 (citing GM-MDL2543-402653779-81 (recall notice)

[4] Ex. D, Report of D. Toomey at 5.

[5] Ex. D, Report of D. Toomey at 8; *see also* Ex. E, 5/17/2014 V. Boatman Cadillac CTS Ignition Evaluation Presentation at 3 (4/25/2017 V. Boatman Dep. Ex. 23) (testing of Generation I 2007 MY Cadillac CTS showed "[n]one of the evaluators were able to turn off the ignition switch with normal driving motions" and only could do so with deliberate and intentional efforts to do so)).

[6] Ex. D, Report of D. Toomey at 8, 19. Plaintiff does not argue that any of the purported OSIs put New GM on notice of knee-key rotation in a recall-repair vehicle. Any such argument would in any event fail because:

These irrefutable physics concepts became the underlying basis for New GM's recall repair. This remedy was also validated by New GM through a rigorous series of vehicle testing across multiple vehicle platforms, including the Cadillac CTS, with a variety of ignition switches and key masses utilizing post-recall ignition keys. No unintentional rotation was observed in any of those tests when using a post-recall ignition key that featured a central hole and two rings rather than a slot.

***Plaintiff does not dispute that the recall repair was performed on her vehicle prior to the accident***.[7] Rather, plaintiff has proffered an expert—Glen Stevick—to opine that the recall remedy was itself inadequate.[8] According to Stevick, "[t]he partial remedy of changing the key cover from a slot to a hole … does not completely fix the low torque problem." (*Id.* at 23) For this opinion, Stevick focuses on one component of the ignition system—the ignition switch—and ignores the fact that the recall remedy changed other components of the ignition system that influence key rotation, *i.e.* the key head and key rings. In any event, Stevick admits that: (1) the principles behind New GM's remedies—reducing the moment arm and adding key rings—address the issue of inadvertent rotation (Ex. I, 7/11/2018 Stevick Dep. Tr. at 250:20-25; 251:13-252:4.); and (2) he

---

(1) there is no evidence that any of the OSIs involved knee-key rotation; (2) 55 of the OSIs involve Cobalt vehicles which differ from plaintiff's CTS in fundamental ways that impact susceptibility to knee-key rotation, including different ignition switches, ignition systems, ignition key location, ignition key orientation, and occupant compartment dimensions (*e.g.*, Ex. F, 5/24/2017 G. Stevick Dep. Tr. at 117:16–121:12); and (3) New GM's Milford Providing Ground testing shows that the Generation I CTS is ***not*** susceptible to inadvertent key rotation through inadvertent knee-key contact. *See Gardner v. Ford Motor Co.*, 166 F. Supp. 3d 1261, 1270 (M.D. Fla. 2015) (rejecting OSI evidence because, among other reasons, "Ford also supplies affirmative evidence that [the purportedly similar] defect was not present in the …Vehicle").

[7] Ex. G, Report of M. Pitman at 13 (plaintiff's accident reconstruction expert stating "the subject Cadillac had the recall key update completed prior to the crash"); Ex. H, Report at G. Stevick at 25 (plaintiff's ignition switch expert stating "[t]he subject vehicle was taken to Teague Chevrolet, who performed the recall on or about January 29, 2015").

[8] Ex. H, Report of G. Stevick at 21-24

has not seen any verified complaints alleging inadvertent rotation with a recall repaired vehicle (Ex. J, 9/20/18 Stevick Dep. Tr. at 133:22-135:6).[9]

### C. Plaintiff's Proffered OSIs Do Not Involve Recall Repaired Vehicles

Nevertheless, Plaintiff seeks to introduce 58 incidents as supposedly similar to her own crash solely "for purposes of proving New GM's notice and knowledge of the defect." (ECF. No. 6147 at 1) 55 of the OSIs involve non-CTS vehicles, which were built on entirely different vehicle platforms than plaintiff's vehicle, have a different ignition switch and system, a different ignition key position and orientation, a different occupant compartment, different chassis and suspensions, and were subject to a different recall. Only three involved CTS vehicles with a '257 switch subject to the recall at issue in this case. None of the 58 incidents, however, involve vehicles that had the recall repair performed prior to the crash.

## ARGUMENT

As detailed in the Court's prior OSI rulings, "[t]he relevant principles [for introducing OSIs] are not really in dispute." *Scheuer* OSI Op. and Order (ECF No. 1968) at 2; *see also Barthelemy-Spain* OSI Op. and Order (ECF No. 2362) at 3; *Cockram* OSI Op. and Order (ECF No. 3239) at 2.) The proponent of OSIs "must establish [the prior accidents'] relevance by showing that they occurred under the same or substantially similar circumstances as the accident at issue." *Schmelzer v. Hilton Hotels Corp.*, No. 1:05-cv-10307 (JFK), 2007 WL 2826628, at *2 (S.D.N.Y. Sept. 24, 2007); *see also Barker v. Deere & Co.*, 60 F.3d 158, 162 (3d Cir. 1995). When offered for notice, a prior incident is subject to a relaxed standard of substantial similarity.

[9] New GM's experts refute Mr. Stevick's recall remedy opinion. Ex. C, Report of M. Stevenson at 32 (Stevick's report and testimony does not "provide any engineering analysis to show that a [] recall-repaired ignition system is susceptible to inadvertent inertial rotation") Importantly, however, the experts' dispute over the adequacy of the recall repair does not prevent the Court from ruling on plaintiff's proffered OSI evidence. Even if Stevick's baseless speculation regarding the adequacy of the recall repair had merit (and it does not), none of the OSIs could have put New GM on notice of ***that*** issue.

Nevertheless, an incident offered for notice must still be substantially similar enough to be "of a kind which should have served to warn the defendant" of a defect in the product at issue. *Exum v. Gen. Elec. Co.*, 819 F.2d 1158, 1162-63 (D.C. Cir. 1987); *see also Bado-Santana v. Ford Motor Co.*, 482 F. Supp. 2d 197, 200-01 (D. P.R. 2007) (finding that proffered incidents were "not of a kind which should have served to warn the defendant that *the 1996 Ford Explorer* had stability problems." (emphasis added)).

### A. The Pre-Recall Incidents Are Not "Substantially Similar" To Plaintiff's Post-Recall Accident

Here, plaintiff has not met her burden of showing that the proffered 58 pre-recall repair incidents are sufficiently similar to put New GM on notice of an alleged defect in the post-recall repaired product. Nor could she. Courts have made clear that where, as here, plaintiff's claim is premised on a defective recall repair component, incidents involving pre-recall products are not sufficiently similar for the purpose of proving notice. *See Lewy v. Remington Arms Co.*, 836 F.2d 1104, 1109 (8th Cir. 1988) (pre-recall incidents not "substantially similar" to incident involving a subsequent model with the same recall repair component); *Nakajima v. Gen. Motors Corp.*, 857 F. Supp. 100, 103 (D.D.C. 1994) ("[N]onretrofitted coaches are not 'substantially similar' to the retrofitted bus involved in the [at-issue] incident."). This common-sense proposition makes perfect sense—if the OSIs do not involve the recall repair then they cannot provide notice it is inadequate.

For example, in *Lewy*, the plaintiff alleged that the "fire control mechanism" on the Remington M700 rifle was defective. *Id.* at 1106. Remington had previously recalled the ***M600*** rifle to replace the fire control mechanism. The replacement used for the recalled M600 was the version used on the M700, such that the M700's fire control mechanism was essentially a post-recall version of the M600. *Id.* at 1109. At trial, the plaintiff introduced OSI evidence related to

a pre-recall M600 for notice. *Id.* at 1108-09. Reversing, the Eighth Circuit held that incidents involving the M600 were not "substantially similar" to those involving the M700 because, among other things, the latter contained the recall repair part and the former did not. *Id.* at 1109. Indeed, the court noted, "[i]t would not make sense for a manufacturer to recall a product because of an alleged design defect and attempt to correct the problem by replacing the defective components with substantially similar components which suffer from the same defect as the original components." *Id.*

Similarly, in *Nakajima*, the plaintiff sought to introduce "52 other incidents in which the rear doors of RTS–II coaches inadvertently opened and passengers were injured" to "prove that defendant was on notice of the dangerousness of the product design." *Nakajima*, 857 F. Supp. at 102. The court excluded the evidence because, among other things, "46 of the 52 'other incidents' occurred prior to two design modifications implemented in 1984 and 1985." *Id.* at 103. The design modifications included (1) increasing "[t]he air pressure to the door … to hold them more tightly closed" and (2) installing a speed sensor "to terminate all electrical power to the rear door operating system at speeds in excess of 2 mph." *Id.* In light of these modifications, the court held that "the inescapable conclusion is that the 1984 and 1985 retrofits substantially reduced the likelihood of inadvertent rear door openings," and thus "the nonretrofitted coaches are not 'substantially similar' to the retrofitted bus involved in the March 20, 1990, incident." *Id.*[10]

Plaintiff's effort to use pre-recall OSI evidence here fails for the same reasons. As compared to Ms. McKnight's vehicle, the pre-recall OSI vehicles involve ***different*** ignition

---

[10] *See also Gumbs v. Int'l Harvester, Inc.*, 718 F.2d 88, 98 (3d Cir. 1983) (reversing admission of other accident evidence because, among other things, defendant "changed the U-bolt nuts that it uses in the manufacture of its trucks before the truck operated by plaintiff was manufactured and, hence, the parts are not the same as those [at issue in the other accidents]"); *Gardner*, 166 F. Supp. 3d at 1269 (purported OSIs not "substantially similar" in post-recall case where, among other things, plaintiff did not "identify whether the recall was performed" on the OSI vehicles).

systems with ***different*** key heads and ***different*** key rings creating dramatically ***different*** susceptibility to inadvertent rotation. Indeed, Stevick admits that: (1) the recall remedy—which, among other things, changes the ignition system through reduction of the moment arm—"is an effective way of addressing the issue of inadvertent key rotation" (Ex. I, 7/11/2018 Stevick Dep. Tr. at 250:20-25; 251:13-252:4); and (2) he has not seen any verified complaints alleging inadvertent rotation with a recall repaired vehicle (Ex. J, 9/20/18 Stevick Dep. Tr. at 133:22-135:6). Thus, like *Nakajima*, the "inescapable conclusion" is that the recall repair substantially reduced the likelihood of inadvertent key rotation, and that pre-recall vehicles without that remedy are not "substantially similar" to plaintiff's vehicle here.

Plaintiff attempts to avoid these critical distinctions by repeatedly stating that, like the OSIs, "the defect in [her] vehicle involves a low torque ignition switch." (ECF. No. 6147 at 27) But this myopic focus on ignition switch torque misses the point. The relevant inquiry is not whether the ***ignition switch*** in a repaired vehicle meets, or does not meet, a torque specification; even Stevick admits that a component may fall outside an engineering specification without posing a safety risk. (Ex. K, 5/2/2017 Stevick Dep. Tr. at 123:2-4) Rather, the relevant inquiry is whether the ***ignition system*** in plaintiff's recall-repaired vehicle was susceptible to inadvertent key rotation. Unlike the OSIs, the repair performed on plaintiff's vehicle transitioned her ignition system from one that allows torque to be generated by a hanging mass to one that does not—*i.e.* from one that is susceptible to inadvertent key rotation to one that is not. New GM believed then and believes now that its recall repair—which is based on fundamental physics and was extensively validated—cured any potential key rotation defect in her vehicle. More fundamentally, the OSIs involving pre-recall vehicles simply do not provide any notice to New GM as to the effectiveness of the recall remedy.

Plaintiff cannot overcome these distinctions by relying on the Court's past OSI rulings. None of the prior bellwethers involved a recall repaired vehicle, and thus the Court's orders in those cases do not speak to whether pre-recall accidents can give notice of an alleged inadequacy with the recall remedy. Plaintiff argues that, like the "single key" at issue in *Scheuer*, the differences between pre- and post-recall vehicles "go to weight, not admissibly." (ECF. No. 6147 at 27) But, unlike *Scheuer*—in which the use of a single key was a ***circumstance*** of the accident that distinguished it from the OSIs but the ignition system had not been repaired and was subject to a recall—plaintiff's ignition system here had been ***repaired*** and thus no longer had "the same alleged defect" as the vehicles in her OSIs. As a result, to prove her claims she must (and does) argue that the recall repair is ***itself defective***. But, regardless of the merits of that baseless assertion, the proffered OSI does not—and cannot—give notice of ***that*** issue and should therefore be excluded.

**B. Introduction Of The Pre-Recall Incidents Creates A Substantial Risk Of Unfair Prejudice**

Given the material differences between pre- and post-recall susceptibility to inadvertent key rotation, any limited relevance of pre-recall OSIs (especially those involving different model vehicles with different ignition switches and systems) is substantially outweighed by the danger of unfair prejudice. The relevant question in this case is whether inadvertent key rotation occurred in plaintiff's vehicle ***after*** the recall repair was performed. Plaintiff's OSIs—which involve pre-recall accidents and thus necessarily do not speak to that issue—will only invite confusion, delay, and mini-trials on an ancillary question, *e.g.*, whether the pre-recall ignition system caused or contributed to the OSIs. Nothing about the answer to that question will inform the jury as to the question regarding plaintiff's recall repaired vehicle. It will simply be used to inflame the jury. The OSIs should, thus, be excluded for these independent reasons. *Beane v. Util. Trailer Mfg. Co.*,

No. 2:10 CV 0781, 2013 WL 837155, at *3 (W.D. La. Mar. 6, 2013) ("Absent any clear evidence showing that the accidents are 'closely similar,' the probative value of this evidence would be substantially outweighed by the danger of unfair prejudice, confusion, and undue delay."); *see also* 6/30/2017 Op. and Order (ECF No. 4167) at 3 ("[T]he risk of unfair prejudice arising from such evidence is substantially greater here, as there is a danger that the jury could seek to punish New GM for bad conduct unrelated to Ward and the '190 switch.").

**CONCLUSION**

For the foregoing reasons, New GM respectfully requests the Court deny plaintiff's request to offer evidence of other allegedly similar incidents.

Dated: October 19, 2018

Respectfully submitted,

*/s/ Richard C. Godfrey, P.C.*

Richard C. Godfrey, P.C.
Andrew B. Bloomer, P.C.
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654-3406
Phone: 312-862-2000
Fax: 312-862-2200
andrew.bloomer@kirkland.com
richard.godfrey@kirkland.com

*Attorneys for Defendant General Motors LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 19, 2018 I electronically filed the foregoing Motion using the CM/ECF system which will serve notification of such filing to the email of all counsel of record in this action.

By: *<u>/s/ Andrew B. Bloomer, P.C.</u>*
Andrew B. Bloomer, P.C.