# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

Andrew B. Bloomer, P.C.
To Call Writer Directly:
+1 312 862 2482
andrew.bloomer@kirkland.com

300 North LaSalle
Chicago, IL 60654
United States

+1 312 862 2000

www.kirkland.com

Facsimile:
+1 312 862 2200

July 25, 2019

The Honorable Jesse M. Furman
United States District Court for the
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: In re: General Motors LLC Ignition Switch Litigation, 14-MD-2543

Dear Judge Furman:

Counsel for New GM responds to the economic loss plaintiffs' July 18, 2019 letter enclosing the decision in *Hilsley v. Ocean Spray Cranberries, Inc.*, 2019 WL 3006465 (S.D. Cal. July 10, 2019), as supplemental authority regarding pending class and *Daubert* motions. (Dkt. 6961.) *Ocean Spray* confirms that Mr. Boedeker's and Dr. Gans' analyses are fundamentally flawed and incapable of measuring the market-based injury and damages plaintiffs allege.

*First*, confirming New GM's position, the *Ocean Spray* Court held that (i) market-based damages are measured by "taking the difference between the *market* price actually paid by consumers and the true *market* price" of a product reflecting the impact of the alleged unlawful conduct; (ii) the "ultimate price of a product is a combination of market demand and market supply"; and (iii) merely "demonstrating a consumer's willingness to pay is insufficient to satisfy *Comcast*." *Id.* at *3 (emphasis added).

*Second*, plaintiffs suggest that Boedeker and Gans, like the *Ocean Spray* expert, "consider[ed] *supply-side considerations*." (Dkt. 6961 (emphasis added).) But New GM's argument is not merely that Boedeker and Gans failed to account for "supply-side considerations" (*i.e.*, the *quantity* supplied[1]), but also that (1) as a matter of both bellwether state law and economics, "market" prices require consideration of *willingness to sell those quantities at both actual and but-for prices*;[2] and (2) both Boedeker and Gans admit they did not consider willingness to sell at *any* price.[3] That admission is fatal to Boedeker and Gans under *Ocean Spray*. Unlike

---

[1] As New GM has explained, even "'the number of Class vehicles' is not part of Boedeker's calculation of purported actual or but-for demand curves or market prices." New GM Boedeker *Daubert* Reply (Dkt. 6294), at 16-17.

[2] *See* New GM Boedeker *Daubert* Reply (Dkt. 6294), at 14 & n.21 (collecting bellwether state authority requiring consideration of willingness to sell at both actual and but-for prices, in order for any "market price" or "market value" to exist).

[3] New GM Boedeker *Daubert* Reply (Dkt. 6294) at 13-21; New GM Class Cert. Opp. Ex. 40, Boedeker 7/6/18 Dep. 462:11-18 ("Q. You are not opining that New GM would be willing to sell these option packages at the prices offered

## KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
July 25, 2019
Page 2

New GM, however, the *Ocean Spray* defendant did not argue that such alleged "supply-side considerations" (quantity supplied) do not establish market-based injury or damages under applicable state law, including because they ignore *willingness to sell those quantities at both actual and but-for prices*. *Hilsley*, 2019 WL 3006465, at *5 ("[T]he parties *do not dispute*…that these retail sales data satisfy the supply side factor of a price premium analysis") (emphasis added); *see also* New GM Gans *Daubert* Reply (Dkt. 6281), at 2-3. Thus, *Ocean Spray* does not address the arguments made and authorities cited by New GM in this case.

*Third*, the *Ocean Spray* Court only approved plaintiffs' damages model and class certification because a second expert analyzed "real world pricing and sales" market data for the at-issue products. *Hilsley,* 2019 WL 3006465, at *4, 6 ("*As long as Plaintiff presents real world pricing data to support her damages model*, she has sufficiently satisfied *Comcast*" (emphasis added)). Again, this *Ocean Spray* holding is fatal to Boedeker and Gans' opinions because, unlike plaintiff's experts in *Ocean Spray*, Boedeker's and Gans' analyses incorporate no real world pricing data—either for vehicles or safety feature packages—whatsoever.[4] New GM Boedeker *Daubert* Reply (Dkt. 6294), at 6-7. Indeed, Boedeker and Gans do not even report *any* prices for many of the individual safety features in his safety feature package "scenarios," such as anti-glare windshields, active head constraints, adaptive cruise control, and driver and front passenger air bags. *See* New GM List *Daubert* Opp. (Dkt. 6225), at 17–21; New GM Class Cert. Opp. Ex. 45 at 29, 41 (Survey Scenarios Including Features for Which Boedeker Provided No Prices).

Respectfully submitted,

/s/ Richard C. Godfrey, P.C.
/s/ Andrew B. Bloomer, P.C.

*Counsel for Defendant General Motors LLC*

cc: MDL Counsel of Record

---

in your conjoints, are you? . . . A. I'm not opining on New GM's willingness to sell those option packages at those prices. That is correct."); New GM Class Cert. Opp. Ex. 34, 7/5/18 Boedeker Dep. Tr. at 235:3-20 ("Q. And there's no information that you've looked at about GM's willingness to sell vehicles at different price points at all either? A. No."); New GM Class Cert. Opp. Ex. 110, 6/29/18 Gans Dep. 429:2-8 ("Q. So [Boedeker] did not analyze GM's willingness to sell at the actual or but-for-price? A. No."). Gans further testified his "opinion is that [he] would find it highly unlikely that GM -- it would have wanted to sell the same amount of cars at the price implied by Mr. Boedeker's 'but-for' analysis." New GM Class Cert. Opp. Ex. 111, 6/28/18 Gans Dep. 281:6-10.

[4] Footnote 2 of plaintiffs' letter mischaracterizes the opinions of New GM's expert Dr. John List. (Dkt. 6961.) New GM addressed plaintiffs' mischaracterization extensively in its opposition to plaintiffs' *Daubert* motion regarding Dr. List. *See* New GM List *Daubert* Opp. (Dkt. 6225), at 8 ("[T]his is not a battle of the experts with competing damage estimates or competing 'correct' price ranges….Dr. List used his independent conjoint survey to conclude that Boedeker's results are dependent upon the prices [Boedeker] arbitrarily selected for use in his surveys and, as a result, Boedeker's methodology is unreliable.")