# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: | ) |
| | ) |
| | )    No. 14-MD-2543 (JMF) |
| GENERAL MOTORS LLC | )    No. 14-MC-2543 (JMF) |
| IGNITION SWITCH LITIGATION | ) |
| | )    Hon. Jesse M. Furman |
| *This Document Relates To All Actions* | ) |
| | ) |

<br>

## DEFENDANT GENERAL MOTORS LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AGAINST THE BELLWETHER ECONOMIC LOSS PLAINTIFFS

Richard C. Godfrey, P.C.
Andrew B. Bloomer, P.C.
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL  60654-3406
Phone:  312-862-2000
Fax:  312-862-2200
richard.godfrey@kirkland.com
andrew.bloomer@kirkland.com

*Attorneys for Defendant General Motors LLC*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION .............................................................................................................. 1

BACKGROUND .............................................................................................................. 2

    A.    New GM Conducted Recalls. ............................................................... 2

        1.    Recall No. 14v047 ("Delta Ignition Switch") ........................... 2

        2.    Recall Nos. 14v355, 14v394, 14v400 ("Key Rotation") ........... 3

        3.    Recall No. 14v346 ("Camaro Knee-Key Rotation") ................. 4

        4.    Recall No. 14v118 ("SIAB Wiring Harness") .......................... 4

        5.    Recall No. 14v153 ("EPS Assist") ........................................... 5

    B.    The Court's Prior Rulings Narrowed Plaintiffs' Claims And Alleged Damages ................................................................................................. 5

    C.    The Named Plaintiffs At Issue. ........................................................... 7

ARGUMENT ................................................................................................................... 9

I.    PLAINTIFFS HAVE NO LEGALLY RECOVERABLE DAMAGES. ........................... 9

    A.    Named Plaintiffs Have No Legally Cognizable Benefit-Of-The-Bargain Damages ................................................................................................. 9

    B.    Various Plaintiffs' Claims Also Fail Because They Cannot Show A Manifest Defect ................................................................................... 9

    C.    Plaintiffs Cannot Recover Lost Time Damages ................................. 11

        1.    Lost Time Damages Require Proof Of Lost Earnings, Which No Plaintiff (With One Exception) Provides. ................................ 11

        2.    No Plaintiffs Have Relevant Expert Testimony To Support Their Lost Time Claims ................................................................... 15

    D.    Plaintiffs Cannot Recover On Their Claims Without Damages. ......... 15

II.    PLAINTIFFS WHOSE VEHICLES ARE SUBJECT TO SERVICE PARTS VEHICLE RECALL HAVE NO CLAIMS ................................................................... 17

III. AS A MATTER OF LAW AND UNDISPUTED FACT, VARIOUS NAMED PLAINTIFFS CANNOT ESTABLISH NEW GM'S LIABILITY. ................................. 18

    A.    Certain Plaintiffs Cannot Show Reliance As Required For Consumer Protection And Fraudulent Concealment Claims. .................................. 18

        1.    Various Texas Plaintiffs Cannot Prove Reliance. ...................................... 20

        2.    Various California Plaintiffs Likewise Cannot Show Reliance. ............... 22

        3.    Various Missouri Plaintiffs Cannot Show Reliance. ............................... 24

    B.    Plaintiffs Have Not Pled Any Actionable Misrepresentations. ........................... 26

        1.    Alleged Statements That A Plaintiff Never Saw Or Heard Cannot Have Caused Plaintiff Harm. ...................................................... 26

        2.    New GM Cannot Be Liable For The Statements Of Third Parties, Including Independent Dealers. ................................................ 27

        3.    The Alleged Misrepresentations Are Non-actionable Puffery. ................. 29

    C.    Plaintiffs' Implied Warranty Claims Are Barred In Whole Or In Part. ................ 32

        1.    New GM Warranties Exclude Lost Time and Other Consequential Damages. ........................................................... 32

        2.    Various Plaintiffs' Implied Warranty Claims Are Barred By The Statutory Limitations Period. ..................................................... 33

        3.    Various Plaintiffs' Implied Warranty Claims Are Barred By The Time And Mileage Limits In The Vehicles' Warranties. ......................... 34

        4.    Numerous Plaintiffs' Substantial Use Of Their Vehicles Precludes Their Implied Warranty Claims. .................................................. 36

    D.    All Plaintiffs' Unjust Enrichment Claims Are Barred. ........................................ 39

        1.    California Law Precludes Plaintiffs' Unjust Enrichment Claims. ............ 40

        2.    Missouri Law Precludes Plaintiffs' Unjust Enrichment Claims. .............. 41

    E.    Summary Judgment Should Be Granted Against Claims Of Plaintiffs Who Purchased Old GM Or Used Vehicles. .................................................. 42

        1.    New GM Had No Duty To Disclose To Old GM Vehicle Purchasers. ................................................................... 42

2.  California And Texas Do Not Recognize An Asset Purchaser's Duty to Warn......................................................................................44

3.  Used Old GM Purchasers Cannot Bring Implied Warranty Claims Against New GM, Which Was Not A "Seller" Of The Vehicles. ............47

4.  The California Song-Beverly Act Does Not Apply To The Purchase Of Any Used Vehicle. ..............................................................48

5.  Used Vehicle Purchasers Cannot Recover On Their Unjust Enrichment Claims Because They Did Not Provide Any Benefit To New GM. ...................................................................................48

F.  Texas Plaintiffs Cannot Prove Unconscionability Under the Texas DTPA. ........49

1.  New GM's Mitigation By Recalling And Repairing The Vehicles Precludes DTPA Unconscionability Claims..............................49

2.  Various Plaintiffs Cannot Show The Lack Of Sophistication Required To Assert A DTPA Unconscionability Claims. ........................50

G.  Multiple Grounds Bar Plaintiffs' Bankruptcy-Claim-Fraud Counts. ...................52

1.  New GM Had No Duty To Purchasers Of Old GM Vehicles..................52

2.  The Bankruptcy-Claim-Fraud Plaintiffs' Count Fails For Additional Reasons. ...................................................................54

IV. PLAINTIFFS CANNOT OBTAIN INJUNCTIVE RELIEF...........................................56

A.  Plaintiffs' Have Not Alleged And Cannot Establish Irreparable Harm...............57

B.  The Extraordinary Relief Plaintiffs Request Is Not In The Public Interest. .........58

C.  The Requested Future Relief Is Overbroad And Impermissibly Reaches Conduct Unrelated To The Alleged Violations. ...................................................59

CONCLUSION....................................................................................................60

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraham v. Volkswagen of Am., Inc.*,
795 F.2d 238 (2d Cir. 1986) ....................................................................... 6

*Adams v. Am. Suzuki Motor Corp.*,
2011 WL 1304766 (N.J. Super. Ct. App. Div. 2011)............................... 38

*Algarin v. Maybelline, LLC*,
300 F.R.D. 444 (S.D. Cal. 2014)............................................................ 23

*Allgood v. R.J. Reynolds Tobacco Co.*,
80 F.3d 168 (5th Cir. 196).................................................................... 47

*Am. Pipe & Constr. Co. v. Utah*,
414 U.S. 538 (1974) .............................................................................. 34

*Am. Suzuki Motor Corp. v. Superior Court*,
44 Cal. Rptr. 2d 526 (Cal. App. Ct. 1995) ...................................... 36, 37

*Amburgy v. Express Scripts, Inc.*,
671 F. Supp. 2d 1046 (E.D. Mo. 2009) ................................................. 13

*Arceneaux v. Lykes Bros. S.S. Co., Inc.*,
890 S.W.2d 191 (Tex. App. 1994) ........................................................ 47

*Arnson v. Gen. Motors Corp.*,
377 F. Supp. 209 (N.D. Ohio 1974) ...................................................... 28

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015).................................................................. 48

*Atari Corp. v. The 3DO Co.*,
1994 WL 723601 (N.D. Cal. May 16, 1994) ......................................... 29

*Atchison, Topeka & Santa Fe Ry. Co. v. Acosta*,
435 S.W.2d 539 (Tex. Civ. App. 1968) ................................................. 14

*Autohaus, Inc. v. Aguilar*,
794 S.W.2d 459 (Tex. App. 1990) ........................................................ 29

*Avedisian v. Mercedes-Benz USA, LLC*,
43 F. Supp. 3d 1071 (C.D. Cal. 2014).................................................... 37

*Azoulai v. BMW of N. Am., LLC*,
  2017 WL 1354781 (N.D. Cal. Apr. 13, 2017) ........................................................ 30

*Backhaut v. Apple, Inc.*,
  74 F. Supp. 3d 1033 (N.D. Cal. 2014) .................................................................. 19

*Badame v. J.P. Morgan Chase Bank, N.A.*,
  641 F. App'x 707 (9th Cir. 2016) ........................................................................ 12

*BaySystems N. Am. LLC v. Rosebud-Lott Indep. Sch. Dist.*,
  2011 WL 6989898 (Tex. App. Dec. 21, 2011) ...................................................... 32

*Bennett v. Crane*,
  289 S.W. 26 (Mo. Ct. App. 1926) ........................................................................ 41

*Berger v. Home Depot USA, Inc.*,
  741 F.3d 1061 (9th Cir. 2014) ............................................................................. 16

*Bill & Joe Deane Bradford Invs., Inc. v. Cutter Aviation San Antonio, Inc.*,
  2005 WL 3161083 (Tex. App. Nov. 23, 2005) ...................................................... 30

*Block v. Wyeth, Inc.*,
  2003 WL 203067 (N.D. Tex. Jan. 28, 2003) ......................................................... 46

*Bohac v. Walsh*,
  223 S.W.3d 858 (Mo. Ct. App. 2007) ............................................................ 44, 52

*Bossier Chrysler Dodge II, Inc. v. Rauschenberg*,
  201 S.W. 3d 787 (Tex. App. 2006) ...................................................................... 14

*Bowles v. Mars, Inc.*,
  2015 WL 3629717 (S.D. Tex. June 10, 2015) ...................................................... 20

*Brandt v. Gen. Motors, LLC*,
  Case No. 2:14-cv-00079, Docket No. 1, Original Class Action Complaint
  (S.D. Tex. Mar. 14, 2014) ................................................................................... 34

*Briehl v. Gen. Motors Corp.*,
  172 F.3d 623 (8th Cir. 1999) ............................................................................... 31

*Brisson v. Ford Motor Co.*,
  349 F. App'x 433 (11th Cir. 2009) ....................................................................... 35

*Buffington v. Lewis*,
  834 S.W.2d 601 (Tex. App. 1992) ....................................................................... 34

*Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*,
769 F.2d 919 (2d Cir. 1985) .................................................................. 11

*Burns v. Bank of Am.*,
655 F. Supp. 2d 240 (S.D.N.Y. 2008) ....................................................... 9

*Burroughs v. Precision Airmotive Corp.*,
93 Cal. Rptr. 2d 124 (Cal. App. Ct. 2000) ....................................... 45, 53

*Bushendorf v. Freightliners Corp.*,
13 F.3d .1024 (7th Cir. 1993) ................................................................ 28

*Bussian v. DaimlerChrysler Corp.*,
411 F. Supp. 2d 614 (M.D.N.C. 2006) ................................................... 37

*Butler v. Adoption Media, LLC*,
486 F. Supp. 2d 1022 (C.D. Cal. 2007) ................................................ 12

*Butler v. Porsche Cars N. Am., Inc.*,
2017 WL 1398316 (N.D. Cal. Apr. 19, 2017) ...................................... 24

*Capital Ford Truck Sales, Inc. v. Ford Motor Co.*,
819 F. Supp. 1555 (N.D. Ga. 1992) ...................................................... 28

*Causey v. Sewell Cadillac-Chevrolet, Inc.*,
394 F.3d 285 (5th Cir. 2004) ................................................................ 28

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ....................................................................... 9, 18

*Chandler v. Gener Messer Ford, Inc.*,
81 S.W.3d 493 (Tex. App. 2002) .......................................................... 30

*Chapman v. Pacificare of Tex., Inc.*,
2005 WL 1155108 (S.D. Tex. Apr. 18, 2005) ...................................... 26

*Chicago Bd. of Educ. v. Substance, Inc.*,
354 F.3d 624 (7th Cir. 2003) ................................................................ 60

*Chin v. Chrysler Corp.*,
182 F.R.D. 448 (D.N.J. 1998) ............................................................... 58

*Chularee v. Cookson Co.*,
2014 WL 726778 (Cal. App. Ct. Feb. 26, 2014) .................................. 45

*Cirulli v. Hyundai Motor Co.*,
2009 WL 5788762 (C.D. Cal. June 12, 2009) ...................................... 30

*City of Los Angeles v. Lyons,*
  461 U.S. 95 (1983) ........................................................................................ 57

*Coleman-Anacieto v. Samsung Elecs. Am., Inc.,*
  2016 WL 4729302 (N.D. Cal. Sept. 12, 2016) ......................................... 19

*Collins v. eMachines, Inc.,*
  202 Cal. App. 4th 249 (2011) ...................................................................... 40

*Combined Am. Ins. Co. v. Morgan,*
  214 S.W.2d 145 (Tex. Civ. App. 1948) ..................................................... 14

*Consumer Advocates v. Echostar Satellite Corp.,*
  113 Cal. App. 4th 1351 (2d Dist. 2003) .................................................... 29

*Contech Casting, LLC v. ZF Steering Sys., LLC,*
  931 F. Supp. 2d 809 (E.D. Mich. 2013) .................................................... 58

*Cortinas v. Behr Process Corp.,*
  2017 WL 2418012 (E.D. Mo. June 5, 2017) ............................................. 29

*Cruz v. Andrews Restoration, Inc.,*
  364 S.W.3d 817 (Tex. 2012) ................................................................ 16, 19

*Dagher v. Ford Motor Co.,*
  238 Cal. App. 4th 905 (2015) ...................................................................... 48

*Daigle v. Ford Motor Co.,*
  2012 WL 3113854 (D. Minn. July 31, 2012) ........................................ 31, 48

*Deburro v. Apple, Inc.,*
  2013 WL 5917665 (W.D. Tex. Oct. 31, 2013) ....................................... 26, 35

*DePeralta v. Dlorah, Inc.,*
  2012 WL 4092191 (W.D. Mo. Sept. 17, 2012) .......................................... 44

*Detroit Newsp. Publishers Ass'n v. Detroit Typographical Union No. 18,*
  *Intern. Typographical Union,* 471 F.2d 872 (6th Cir. 1972) ................... 58

*Diais v. Land Rover Dallas, L.P.,*
  2016 WL 1298392 (Tex. App. Apr. 4, 2016) ................................... 29, 50, 51

*Doe v. Boys Clubs of Greater Dallas, Inc.,*
  907 S.W.2d 472 (Tex. 1995) ........................................................................ 16

*Doll v. Ford Motor Co.,*
  814 F. Supp. 2d 526 (D. Md. 2011) ........................................................... 49

*Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*,
2016 WL 6523428 (S.D. Cal. Nov. 3, 2016) ........................................................ 12

*Dunlap v. Gayle*,
2013 WL 1500377 (Tex. App. Apr. 11, 2013) ...................................................... 30

*Durell v. Sharp Healthcare*,
183 Cal. App. 4th 1350 (2010) ............................................................................ 19

*Durrell v. Sharp Healthcare*,
183 Cal. App. 4th 1350 (2010) ............................................................................ 26

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006) ............................................................................ 56, 57, 58

*Ehret v. Uber Tech., Inc.*,
148 F. Supp. 3d 884 (N.D. Cal. 2015) ................................................................ 26

*Emmons v. Durable Mobile Homes, Inc.*,
521 S.W.2d 153 (Tex. App. 1974) ....................................................................... 33

*English v. Apple Inc.*,
2016 WL 1188200 (N.D. Cal. Jan. 5, 2016) .................................................. 19, 24

*Everett v. TK-Taito, L.L.C.*,
178 S.W.3d 844 (Tex. App. 2005) ....................................................................... 16

*Fed. Exp. Corp. v. Fed. Espresso, Inc.*,
201 F.3d 168 (2d Cir. 2000) ................................................................................ 57

*Fernandes v. Havkin*,
731 F. Supp. 2d 103 (D. Mass. 2010) ................................................................. 40

*Fidelity & Guar. Life Ins. Co. v. Pina*,
165 S.W.3d 416 (Tex. App. 2005) ....................................................................... 20

*Firestone Steel Prods. Co. v. Barajas*,
927 S.W.2d 608 (Tex. 1996) ............................................................................... 46

*Ford Motor Co. v. Fairley*,
398 So.2d 216 (Miss. 1981) ................................................................................ 37

*Ford Motor Co. v. Ocanas*,
136 S.W.3d 447 (Tex. App. 2004) ....................................................................... 20

*Ford v. Reynolds*,
316 F.3d 351 (2d Cir. 2003) ................................................................................ 57

*Ford v. St. Louis Metro. Towing, L.C.*,
2010 WL 618491 (E.D. Mo. Feb. 18, 2010) ........................ 12

*Fort v. Am. Fed'n of State, County and Mun. Emps.*,
375 Fed. App'x 109 (2d Cir. 2010) ........................ 56

*Frank v. DaimlerChrysler Corp.*,
292 A.D.2d 118 (N.Y. App. Div. 1st Dept. 2002) ........................ 58, 59

*Fulford v. Logitech*,
2009 WL 837639 (N.D. Cal. Mar. 26, 2009) ........................ 42

*Ganz v. Metro. St. R. Co.*,
220 S.W. 490 (Mo. 1920) ........................ 13

*Garcia v. Asphalt Equip. & Serv. Co.*,
2005 WL 488569 (Cal. App. Ct. Mar. 3, 2005) ........................ 45

*Gaulding v. Celotex Corp.*,
772 S.W.2d 66 (Tex. 1989) ........................ 46

*Gee v. Tenneco, Inc.*,
615 F.2d 857 (9th Cir. 1980) ........................ 45

*Gen. Motors Corp. v. Halco Instruments, Inc.*,
185 S.E.2d 619 (Ga. Ct. App. 1971) ........................ 33

*Gerard v. Wells Fargo Bank, N.A.*,
2015 WL 12791416 (C.D. Cal. 2015) ........................ 12

*Glass v. BMW of N. Am., LLC*,
2011 WL 6887721 (D.N.J. Dec. 29, 2011) ........................ 38

*Goodrich & Pennington Mortgage Fund, Inc. v. Chase Home Fin., LLC*,
2008 WL 11338041 (S.D. Cal. Apr. 22, 2008) ........................ 40

*Grassi v. Int'l Comfort Prods., LLC*,
2015 WL 4879410 (E.D. Cal. Aug. 14, 2015) ........................ 29

*Greater Houston Transp. Co. v. Uber Techs., Inc.*,
155 F. Supp. 3d 670 (S.D. Tex. Dec. 2015) ........................ 30

*Grossoeheme v. Cordell*,
904 S.W.2d 392 (Mo. Ct. App. 1995) ........................ 24

*Hall v. Time Inc.*,
158 Cal. App. 4th 847 (2008) ........................ 19

*Hangarter v. Provident Life and Acc. Ins. Co.*,
373 F.3d 998 (9th Cir. 2004) ................................................................................. 57

*Harris v. Penninger*,
613 S.W.2d 211 (Mo. Ct. App. 1981) ..................................................................... 13

*Hauter v. Zogarts*,
14 Cal. 3d 104 (1975) ............................................................................................. 30

*Heberer v. Shell Oil Co.*,
744 S.W.2d 441 (Mo. 1988) ................................................................................... 17

*Henderson v. Ford Motor Co.*,
547 S.W.2d 663 (Tex. App. 1977) .......................................................................... 33

*Henry Schein, Inc. v. Stromboe*,
102 S.W.3d 675 (Tex. 2002) ............................................................................. 19, 20

*Heritage Res., Inc. v. Caterpillar Fin. Servs. Corp.*,
774 N.W.2d 332 (Mich. Ct. App. 2009) ................................................................. 33

*Hoffman v. 162 North Wolfe LLC*,
175 Cal Rptr. 3d 820 (Cal. Ct. App. 2014) ............................................................ 42

*Hoffman v. A. B. Chance Co.*,
339 F. Supp. 1385 (M.D. Pa. 1972) ........................................................................ 31

*Hoffmeister v. Kranawetter*,
407 S.W.3d 59 (Mo. Ct. App. 2013) ....................................................................... 48

*In re Chateaugay Corp.*,
53 F.3d 478 (2d Cir. 1995) ..................................................................................... 54

*In re Clorox Consumer Litig.*,
301 F.R.D. 436 (N.D. Cal. 2014) ............................................................................ 20

*In re Ford Motor Co. E-350 Van Prods. Liab. Litig. (No. II)*,
2010 WL 2813788 (D.N.J. July 9, 2010) ................................................................ 31

*In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*,
2011 WL 601279 (D.N.J. Feb. 16, 2011) ................................................................ 49

*In re Ford Motor Co. Sec. Litig., Class Action*,
381 F.3d 563 (6th Cir. 2004) .................................................................................. 31

*In re Gen. Motors Anti-Lock Brake Prods. Liab. Litig.*,
966 F. Supp. 1525 (E.D. Mo. 1997) ........................................................................ 31

*In re Gen. Motors LLC Ignition Switch Litig.*,
  2016 WL 874778 (S.D.N.Y. Mar. 3, 2016) ........................................................... 47

*In re Gen. Motors LLC Ignition Switch Litig.*,
  2017 WL 3382071 (S.D.N.Y. Aug. 3, 2017) .......................................................... 7

*In re Gen. Motors LLC Ignition Switch Litig.*,
  2017 WL 3443623 (S.D.N.Y. Aug. 9, 2017) ..................................................... 7, 15

*In re Gen. Motors LLC Ignition Switch Litig.*,
  2017 WL 6509256 (S.D.N.Y. Dec. 19, 2017) ........................................................ 7

*In re Gen. Motors LLC Ignition Switch Litig.*,
  2018 WL 1989572 (S.D.N.Y. Apr. 25, 2018) ........................................................ 7

*In re Gen. Motors LLC Ignition Switch Litig.*,
  202 F. Supp. 3d 362 (S.D.N.Y. 2016) .................................................................. 35

*In re Gen. Motors LLC Ignition Switch Litig.*,
  257 F. Supp. 3d 372 (S.D.N.Y. 2017) ............................................................ passim

*In re Gen. Motors LLC Ignition Switch Litig.*,
  2016 WL 3920353 (S.D.N.Y. July 15, 2016) ................................................... passim

*In re iPhone Application Litig.*,
  6 F. Supp. 3d 1004 (N.D. Cal. 2013) ................................................................... 26

*In re LinkedIn User Privacy Litig.*,
  932 F. Supp. 2d 1089 (N.D. Cal. 2013) ............................................................... 26

*In re Motors Liquidation Co.*,
  829 F.3d 135 (2d Cir. 2016) ............................................................................... 54

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
  903 F. Supp. 2d 942 (S.D. Cal. 2012) ................................................................. 12

*In re Vioxx Class Cases*,
  180 Cal. App. 4th 116 (2009) ............................................................................. 23

*Isip v. Mecedes-Benz USA*,
  65 Cal. Rptr. 3d 695 (Cal. App. Ct. 2007) ........................................................... 37

*Jones v. SIG Arms, Inc.*,
  2001 WL 1617187 (Tex. App. Dec. 19, 2001) ................................................. 46, 53

*Kuhns v. Scotttrade, Inc.*,
  868 F.3d 711 (8th Cir. 2017) .............................................................................. 13

*Kwikset Corp. v. Super. Ct.*,
  246 P.3d 877 (Cal. 2011) ........................................................................ 16

*Larsen v. Nissan N. Am.*,
  2009 WL 1766797 (Cal. Ct. App. June 23, 2009) ................................... 37

*LeCates v. Hertrich Pontiac Buick Co.*,
  515 A.2d 163 (Del. Super. Ct. 1986) ...................................................... 33

*Lee v. Gen. Motors Corp.*,
  950 F.Supp. 170 (S.D. Miss. 1996) ......................................................... 37

*Lesser v. St. Louis & S. Ry. Co.*,
  85 Mo. App. 331 (Mo. App. Ct. 1900) ..................................................... 13

*LiMandri v. Judkins*,
  60 Cal. Rptr. 2d 539 (Cal. Ct. App. 1997) ................................... 42, 45, 52

*Lueras v. BAC Home Loans Servicing, LP*,
  163 Cal. Rptr. 3d 804 (Cal. Ct. App. 2013) ............................................ 12

*Marshall v. Kusch*,
  84 S.W.3d 781 (Tex. App. 2002) ....................................................... 43, 52

*Martin v. Ford Motor Co.*,
  292 F.R.D. 252 (E.D. Pa. July 2, 2013) ................................................... 41

*Matthews v. Ford Motor Co.*,
  479 F.2d 399 (4th Cir. 1973) ................................................................... 28

*May v. AC & S, Inc.*,
  812 F. Supp. 934 (E.D. Mo. 1993) .......................................................... 34

*McLaughlin v. Northstar Drillings Techs., Inc.*,
  138 S.W.3d 24 (Tex. App. 2004) ............................................................. 20

*McManus v. Fleetwood Enters., Inc.*,
  320 F.3d 545 (5th Cir. 2003) ................................................................... 20

*McNeely v. Salado Crossing Holding, L.P.*,
  2017 WL 2561551 (Tex. App. June 14, 2017) .......................................... 29

*Meserole v. Sony Corp. of Am., Inc.*,
  2009 WL 1403933 (S.D.N.Y. May 19, 2009) ........................................... 35

*Messina v. Prather*,
  42 S.W.3d 753 (Mo. Ct. App. 2001) ........................................................ 13

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
    518 F. Supp. 2d 1197 (C.D. Cal. 2007) ................................................................. 59

*Mexia v. Rinker Boat Co., Inc.*,
    95 Cal. Rptr. 3d 285 (Cal. App. Ct. 2009) ............................................................. 37

*Microsoft Corp v. Baker*,
    137 S. Ct. 1702 (2017) ........................................................................................... 16

*Mirkin v. Wasserman*,
    858 P.2d 568 (Cal. 1993) ................................................................................. 19, 22

*Mitchell v. Gen. Motors LLC*,
    2014 WL 1319519 (W.D. Ky. Mar. 31, 2014) ...................................................... 31

*Moore v. Panini Am.*,
    2016 WL 7163899 (Tex App. Nov. 7, 2016) ........................................................ 19

*Mostek Corp. v. Chemetron Corp.*,
    642 S.W.2d 20 (Tex. App. 1982) .......................................................................... 33

*Muehlbauer v. Gen. Motors Corp.*,
    2009 WL 874511 (N.D. Ill. Mar. 31, 2009) .......................................................... 41

*Muss v. Mercedes-Benz of N. Am.*,
    734 S.W.2d 155 (Tex. App. 1987) ........................................................................ 34

*Myre v. Meletio*,
    307 S.W.3d 839 (Tex. App. 2010) ........................................................................ 43

*N.L.R.B. v. Express Pub. Co.*,
    312 U.S. 426 (1941) ............................................................................................... 59

*N.Y. State Nat. Org. for Women v. Terry*,
    886 F.2d 1339 (2d Cir. 1989) ................................................................................ 57

*Newcal Indus., Inc. v. Ikon Office Solution*,
    513 F.3d 1038 (9th Cir. 2008) ............................................................................... 29

*Newton v. City of New York*,
    640 F. Supp. 2d 426 (S.D.N.Y. 2009) ................................................................... 22

*O'Keefe v. Mercedes-Benz USA, LLC*,
    2002 WL 377122 (E.D. Pa. Jan. 31, 2002) ........................................................... 59

*Olivas v. Am. Home Prods. Corp.*,
    2002 WL 32620351 (W.D. Tex. Oct. 18, 2002) ................................................... 46

*Ortega v. Gen. Motors Corp.*,
   392 So.2d 40 (Fla. Dist. Ct. App. 1980) .................................................................. 28

*Peltier Enters. v. Hilton*,
   51 S.W.3d 616 (Tex. App. 2000) ...................................................... 19, 20, 50, 51

*Perkins v. LinkedIn Corp.*,
   53 F. Supp. 3d 1190 (N.D. Cal. 2014) ............................................................... 26

*Philips v. Ford Motor Co.*,
   2016 WL 7428810 (N.D. Cal. Dec. 22, 2016) ...................................................... 22

*Pleasant v. Noble Fin. Corp.*,
   54 F. Supp. 3d 1071 (W.D. Mo. 2014) ................................................................. 13

*Priebe v. Autobarn, Ltd.*,
   240 F.3d 584 (7th Cir. 2001) ............................................................................. 38

*Princess Cruise Lines, Ltd. v. Superior Court*,
   179 Cal. App. 4th 36 (2009) .............................................................................. 19

*R. D. Reeder Lathing Co. v. Cypress Ins. Co.*,
   84 Cal. Rptr. 98 (Cal. Ct. App. 1970) ................................................................. 12

*Ramona Manor Convalescent Hosp. v. Care Enters.*,
   177 Cal. App. 3d 1120 (1986) ........................................................................... 40

*Resnick v. Hyundai Motor Am., Inc.*,
   2016 WL 9455016 (C.D. Cal. Nov. 14, 2016) ...................................................... 26

*Roach v. Morse*,
   440 F.3d 53 (2d Cir. 2006) ................................................................................ 57

*Rogozienski v. Allen*,
   2007 WL 867773 (Cal. Ct. App. Mar. 23, 2007) ................................................. 42

*Rojas-Lozano v. Google, Inc.*,
   159 F. Supp. 3d 1101 (N.D. Cal. 2016) .............................................................. 22

*Russo v. Hilltop Lincoln-Mercury, Inc.*,
   479 S.W.2d 211 (Mo. Ct. App. 1972) ................................................................. 33

*Rylott-Rooney v. Alitalia-Linee Aeree Italiane SpA*,
   2009 WL 37817 (S.D.N.Y. Jan. 6, 2009) ............................................................ 21

*S & J, Inc. v. McLoud & Co., L.L.C.*,
   108 S.W.3d 765 (Mo. Ct. App. 2003) ................................................................. 17

*Sabol v. Ford Motor Co.*,
  2015 WL 4378504 (E.D. Pa. July 16, 2015) ........................................................... 31

*Sadat v. Am. Motors Corp.*,
  470 N.E.2d 997 (Ill. 1984) ................................................................................... 57

*Safeway Stores, Inc. v. Certainteed Corp.*,
  710 S.W.2d 544 (Tex. 1986) ................................................................................. 34

*Salazar v. Buono*,
  559 U.S. 700 (2010) ............................................................................................. 58

*Samms v. Abrams*,
  198 F. Supp. 3d 311 (S.D.N.Y. 2016) .................................................................. 56

*Sanders v. Air Line Pilots Ass'n Int'l.*,
  473 F.2d 244 (2d Cir. 1972) ................................................................................ 60

*Schmidt v. Ford Motor Co.*,
  972 F. Supp. 2d 712 (E.D. Pa. 2013) .................................................................. 49

*Schneider v. G. Guilliams, Inc.*,
  976 S.W.2d 522 (Mo. Ct. App. 1998) .................................................................. 34

*Schoenlein v. Routt Homes, Inc.*,
  260 S.W.3d 852 (Mo. Ct. App. 2008) .................................................................. 13

*Scholl v. Grayson*,
  127 S.W. 415 (Mo. Ct. App. 1910) ...................................................................... 13

*Season Comfort Corp. v. Ben A. Borenstein Co.*,
  655 N.E.2d 1065 (Ill. App. Ct. 1995) .................................................................. 40

*Sellify Inc. v. Amazon.com, Inc.*,
  2010 WL 4455830 (S.D.N.Y. 2010) ....................................................................... 9

*Sharp v. Tom Wood East, Inc.*,
  822 N.E.2d 173 (Ind. Ct. App. 2004) .................................................................. 38

*Silvas v. Gen. Motors, LLC*,
  2014 WL 1572590 (S.D. Tex. Apr. 17, 2014) ...................................................... 59

*Sims v. Kia Motors Am., Inc.*,
  2014 WL 12558249 (C.D. Cal. Mar. 31, 2014) .................................................... 30

*Skeen v. BMW of N. Am., LLC*,
  2014 WL 283628 (D.N.J. Jan. 24, 2014) .............................................................. 36

*Small Bus. Bodyguard Inc. v. House of Moxie, Inc.*,
   230 F. Supp. 3d 290 (S.D.N.Y. 2017) ................................................................ 9

*Solano v. Landamerica Commonwealth Title of Fort Worth, Inc.*,
   2008 WL 5115294 (Tex. App. Dec. 4, 2008) ...................................................... 26

*Stanislaus Food Prods. Co. v. USS-POSCO Indus.*,
   2010 WL 3521979 (E.D. Cal. Sept. 3, 2010) ...................................................... 40

*State ex rel. Bunting v. Koehr*,
   865 S.W.2d 351 (Mo. 1993) ................................................................................ 28

*State Farm Lloyds v. Nicolau*,
   951 S.W.2d 444 (Tex. 1997) .......................................................................... 49, 50

*Steele v. Goddard*,
   2013 WL 3013671 (Tex. App. June 13, 2013) .................................................... 43

*Stein v. Novus Equities Co.*,
   284 S.W.3d 597 (Mo. Ct. App. 2009) ................................................................. 24

*Stevenson v. Mazda Motor of Am., Inc.*,
   2015 WL 3487756 (D.N.J. June 2, 2015) ........................................................... 35

*Stickrath v. Globalstar, Inc.*,
   527 F. Supp. 2d 992 (N.D. Cal. 2007) ................................................................ 29

*Sud v. Costco Wholesale Corp.*,
   229 F. Supp. 3d 1075 (N.D. Cal. 2017) ................................................... 19, 22, 24

*Suddreth v. Mercedes-Benz, LLC*,
   2011 WL 5240965 (D.N.J. Oct. 31, 2011) .......................................................... 37

*Suminski v. Maine Appliance Warehouse, Inc.*,
   602 A.2d 1173 (Me. 1992) .................................................................................. 38

*Szymczak v. Nissan N. Am., Inc.*,
   2011 WL 7095432 (S.D.N.Y. Dec. 16, 2011) ..................................................... 36

*Tague v. Autobarn Motors, Ltd.*,
   914 N.E.2d 710 (Ill. App. Ct. 2009) ................................................................... 38

*Tellinghuisen v. Chrysler Group, LLC*,
   84 U.C.C. Rep. Serv. 2d 564 (Minn. Ct. App. 2014) .......................................... 37

*Terry v. Mercedes-Benz, USA, LLC*,
   2007 WL 2045231 (Tex. App. 2007) ............................................................. 43, 52

*Tex. S. Rentals, Inc. v. Gomez*,
  267 S.W.3d 228 (Tex. App. 2008) ........................................................ 20

*Theos & Sons, Inc. v. Mack Trucks, Inc.*,
  1999 WL 38393 (Mass. App. Ct. 1999) ................................................ 33

*Thompson v. Bayer Corp.*,
  2009 WL 362982 (E.D. Ark. 2009) ...................................................... 41

*Travelers Cas. & Sur. Co. of Am. v. Pacific Gas & Elec. Co.*,
  549 U.S. 443, 450 .................................................................................. 55

*Triggs v. Risinger*,
  772 S.W.2d 381 (Mo. Ct. App. 1989) ................................................... 19

*Trudeau v. Bockstein*,
  2008 WL 541158 (N.D.N.Y. Feb. 25, 2008) ......................................... 57

*Tudor Dev. Group, Inc. v. U.S. Fidelity & Guar. Co.*,
  968 F.2d 357 (3d Cir. 1992) .................................................................. 40

*Valley Juice Ltd., Inc. v. Evian Waters of France, Inc.*,
  213 F.3d 627 (2d Cir. 2000) .................................................................... 9

*Valley Nissan, Inc. v. Davila*,
  133 S.W.3d 702 (Tex. App. 2003) ........................................................ 14

*Vista Chevrolet, Inc. v. Barron*,
  698 S.W.2d 435 (Tex. App. 1985) ........................................................ 14

*Walsh v. Al West Chrysler, Inc.*,
  211 S.W. 3d 673 (Mo. Ct. App. 2007) .................................................. 13

*Walsh v. Ford Motor Co.*,
  807 F.2d 1000 (D.C. Cir. 1986) .............................................................. 6

*Walsh v. Ingersoll-Rand Co.*,
  656 F.2d 367 (8th Cir. 1981) ................................................................ 13

*Webb v. Carter's Inc.*,
  272 F.R.D. 489 (C.D. Cal. 2011) .................................................... 22, 24

*Weinberger v. Romero-Barcelo*,
  456 U.S. 305 (1982) .............................................................................. 57

*Welwood v. Cypress Creek Estates, Inc.*,
  205 S.W.3d 722 (Tex. App. 2006) ........................................................ 33

*Williams v. HSBC Bank USA, N.A.*,
   467 S.W.3d 836 (Mo. Ct. App. 2015) ...................................................................... 26

*Williams v. Kia Motors Am., Inc.*,
   2005 WL 2649152 (E.D. Mich. Oct. 14, 2005) ...................................................... 38

*Williams v. United Techs. Corp.*,
   2015 WL 7738370 (W.D. Mo. Nov. 30, 2015) .................................................. 29, 31

*Williams v. Yamaha Motor Corp., U.S.A.*,
   2015 WL 13626022 (C.D. Cal. Jan. 7, 2015) .......................................................... 28

*Wilson v. John Daugherty Realtors, Inc.*,
   981 S.W.2d 723 (Tex. App. 1998) .......................................................................... 43

*Wright v. Bath & Body Works Direct, Inc.*,
   2012 WL 12088132 (W.D. Mo. Oct. 17, 2012) ...................................................... 29

*Zaccagnino v. Nissan N. Am., Inc.*,
   2015 WL 3929620 (S.D.N.Y. June 17, 2015) .......................................................... 31

*Zapata Fonseca v. Goya Foods Inc.*,
   2016 WL 4698942 (N.D. Cal. Sept. 8, 2016) .......................................................... 40

**Statutes**

11 U.S.C. § 502(b)(1) ...................................................................................................... 55

Cal. Civ. Code § 1780(a) ................................................................................................ 16

Cal. Civ. Code § 1792 ................................................................................................ 47, 48

Cal. Civ. Code § 1794(a) ................................................................................................ 16

Cal. Civ. Code. § 1791(a) ............................................................................................... 48

Mo. Ann. Stat. § 407.025(1) ........................................................................................... 13

Mo. Rev. Stat. § 400.2-314(1) ........................................................................................ 47

Mo. Rev. Stat. § 400.2-316 ............................................................................................. 35

Mo. Rev. Stat. § 400.2-316(2) ........................................................................................ 35

Mo. Rev. Stat. § 400.2-719(1)(a) .................................................................................... 32

Mo. Rev. Stat. § 400.2-719(3) ........................................................................................ 32

Mo. Rev. Stat. § 400.2-725(1) ............................................................................................ 33

Mo. Rev. Stat. § 400.2-725(2) ............................................................................................ 34

Mo. Rev. Stat. § 407.020 .................................................................................................... 44

Tex. Bus. & Com. Code § 17.45(5) ................................................................................... 50

Tex. Bus. & Com. Code § 17.50(a) ................................................................................... 14

Tex. Bus. & Com. Code § 2.314(1) ................................................................................... 47

Tex. Bus. & Com. Code § 2.316 ........................................................................................ 35

Tex. Bus. & Com. Code § 2.316(b) ................................................................................... 35

Tex. Bus. & Com. Code § 2.719(a)(1) ............................................................................... 32

Tex. Bus. & Com. Code § 2.719(c) ................................................................................... 32

Tex. Bus. & Com. Code § 2.725(1) ................................................................................... 33

Tex. Bus. & Com. Code § 2.725(2) ................................................................................... 34

**Rules**

Fed. R. Civ. P. 56 ............................................................................................................... 18

Fed. R. Civ. P. 65(d)(1) ...................................................................................................... 60

Fed. R. Evid. 611(c) ........................................................................................................... 21

## INTRODUCTION

The undisputed facts and law establish that the named plaintiffs from the bellwether states of California, Missouri, and Texas cannot prove either damages or liability, and thus do not have any valid claims.

*First*, damages are an essential element of all claims in the bellwether states and plaintiffs cannot prove any such damages, whether in the form of benefit of the bargain, lost time, or otherwise. The Court on August 6, 2019, granted summary judgment against plaintiffs' benefit-of-the-bargain damages claims. *In re Gen. Motors. LLC Ignition Switch Litig.*, 2019 WL 3564968, at *1, 13, 17 (S.D.N.Y. Aug. 6, 2019) ("*BotB SJ Opinion*"). As a result, named plaintiffs' only remaining damages claims are for "lost free time," but this alleged damages theory is legally and factually invalid because each bellwether state holds that lost time is not recoverable without proof of lost income, and none of the named plaintiffs (with one exception) have any such evidence.

*Second*, starting with model year 2008, Cobalts, Ions, and other vehicles covered by the Delta Ignition Switch recall (Recall No. 14v047) were built using an ignition switch that was not defective. Such "Service Parts Vehicles" were recalled because they "could have been repaired at some point using the faulty ignition switch." *In re Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 3920353, *20 n.15 (S.D.N.Y. July 15, 2016) ("*TACC MTD Opinion*"). If such plaintiffs "are ultimately to succeed on their claims with respect to the ignition switch, they will have to show that their cars in fact contained that defect." *TACC MTD Opinion*, at *20 n.15. None of the named plaintiffs owning the Service Parts Vehicles can satisfy this factual predicate.

*Third*, individual named plaintiffs' claims fail for a variety of additional reasons:

- Most named plaintiffs did not see ***any*** New GM advertising, much less the specific advertisements the Fifth Amended Consolidated Complaint ("5ACC") claims are false, and thus have no evidence that these alleged misrepresentations caused them injury.

- Other named plaintiffs' claims are legally impermissible because the advertisements they allegedly saw constitute non-actionable puffery.

- Various named plaintiffs cannot prove reliance on New GM's alleged misrepresentations or omissions.

- Many named plaintiffs' implied warranty claims fail because the written warranties bar recovery of consequential damages, the limitations period has expired, or plaintiffs drove their vehicles for many tens of thousands of miles without a problem.

- Named plaintiffs' unjust enrichment claims are barred because they have an adequate remedy at law, and because many plaintiffs received a written vehicle warranty.

- Named plaintiffs who purchased Old GM or used vehicles face additional bars, including that New GM had no duty to disclose to or warn these plaintiffs, New GM did not sell the vehicles as required for an implied warranty claim, and plaintiffs did not provide any benefits to New GM as required for an unjust enrichment claim.

- The counts of plaintiffs who allege that New GM concealed their right to file a bankruptcy claim fail for numerous reasons, including that (i) New GM had no duty to disclose to or warn such plaintiffs and (ii) such plaintiffs have no damages for the reasons discussed previously.

*Fourth*, plaintiffs cannot obtain injunctive relief because they have not alleged or provided evidence that legal remedies are inadequate to prevent any irreparable future harm. Plaintiffs' requested relief of having the Court monitor the effectiveness of New GM's recalls is both impractical and unprecedented. Finally, plaintiffs' requested injunctive relief is vague and overbroad, and thus impermissible under federal rules and traditional equitable requirements.

Accordingly, the Court should grant summary judgment against each named plaintiff's claims for each of these reasons, which are summarized in Exhibit 1.

## BACKGROUND

### A.    New GM Conducted Recalls.

#### 1.    Recall No. 14v047 ("Delta Ignition Switch")

New GM issued a recall in February 2014 under NHTSA Recall No. 14v047 to remedy the "Delta Ignition Switch" defect. SUF ¶ 1. That initial recall covered model year ("MY") 2005-

2007 Chevrolet Cobalt, MY 2007 Pontiac G5, MY 2003-2007 Saturn Ion, MY 2006-2007 Chevrolet HHR, MY 2005-2006 Pontiac Pursuit (Canada), MY 2006-2007 Pontiac Solstice, and MY 2007 Saturn Sky vehicles. SUF ¶ 1. These vehicles were manufactured with an ignition switch known as "the '423 switch" and were recalled because under certain conditions that switch could unintentionally move from the "run" position to "accessory" or "off" with a corresponding loss of power. *Id.* ¶¶ 2-3.

In March 2014, New GM extended Recall No. 14v047 to MY 2008-2010 Pontiac Solstice and G5, MY 2008-2010 Saturn Sky, MY 2008-2010 Chevrolet Cobalt, and MY 2008-2011 Chevrolet HHR vehicles (the "Service Parts Vehicles"). SUF ¶ 4. Service Parts Vehicles were built with an ignition switch ("the '190 switch") that had a longer detent plunger and higher torque resistance than the '423 switch. *Id.* ¶¶ 5-6. In March 2014, New GM received information that a limited number of vehicles originally manufactured with the '190 switch might have been repaired with the '423 switch, and "out of an abundance of caution" New GM extended the recall to all Service Parts Vehicles. *Id.* ¶¶ 7-8; *see also TACC MTD Opinion*, at *20 n.15.

### 2. Recall Nos. 14v355, 14v394, 14v400 ("Key Rotation")

In June 2014, New GM recalled under NHTSA Recall No. 14v355 MY 2005-2009 Buick Lacrosse, MY 2006-2014 Chevrolet Impala, MY 2000-2005 Cadillac Deville, MY 2006-2011 Cadillac DTS, MY 2006-2011 Buick Lucerne, and MY 2006-2007 Chevrolet Monte Carlo vehicles ("Impala Key Rotation"). SUF ¶ 10. The ignition key for these vehicles was originally designed with a slot for attaching the key ring to the key. *Id.* ¶ 12. New GM's inadvertent key rotation testing showed that "[i]f the key ring is carrying added weight and the vehicle goes off road or experiences some other jarring event, it may unintentionally move the key away from the 'run' position." *Id.* ¶ 11.

In July 2014, New GM recalled under NHTSA Recall No. 14v394 certain MY 2003-2014

Cadillac CTS and MY 2004-2006 Cadillac SRX vehicles ("Cadillac CTS / SRX Key Rotation"). *Id*. ¶ 13. The ignition key for the 2003-2007 MY Cadillac CTS vehicles and 2004-2006 MY Cadillac SRX vehicles was originally designed with a slot for attaching the key ring to the key. *Id.* ¶ 15. The ignition key for the 2008-2014 MY Cadillac CTS vehicles was also originally designed with a slot, but that slot was changed to a hole in December 2010. *Id.* ¶ 16. New GM's inadvertent key rotation testing showed that "[i]f the key ring is carrying added weight and the vehicle goes off road or experiences some other jarring event, or if the driver unintentionally bumps the key ring or items attached to the key ring with their knee, the key may unintentionally move away from the 'run' position." *Id.* ¶ 14.

In July 2014, New GM recalled under NHTSA Recall No. 14v400 MY 2000-2005 Chevrolet Impala and Monte Carlo, MY 1997-2005 Chevrolet Malibu, MY 1999-2004 Oldsmobile Alero, MY 1998-2002 Oldsmobile Intrigue, MY 1999-2005 Pontiac Grand Am, and MY 2004-2008 Pontiac Grand Prix vehicles ("Malibu Key Rotation"). *Id*. ¶ 17. The ignition key for these vehicles was originally designed with a slot for attaching the key ring to the key. *Id.* ¶ 19. New GM's inadvertent key rotation testing showed that "[i]f the key ring is carrying added weight and the vehicle goes off road or experiences some other jarring event, it may unintentionally move the key away from the 'run' position." *Id.* ¶ 18.

### 3.   Recall No. 14v346 ("Camaro Knee-Key Rotation")

In June 2014, New GM recalled MY 2010-2014 Chevrolet Camaros. *Id*. ¶ 20. New GM determined there "is a risk, under certain conditions, that some drivers may bump the ignition key with their knee and unintentionally move the key away from the 'run' position." *Id.* ¶ 21.

### 4.   Recall No. 14v118 ("SIAB Wiring Harness")

In March 2014, New GM recalled MY 2008-2013 Buick Enclave, 2009-2013 Chevrolet Traverse, 2008-2013 GMC Acadia, and 2008-2010 Saturn Outlook vehicles. *Id*. ¶ 22. In these

vehicles, "[c]orrosion and/or loose crimps in the driver and passenger seat mounted side impact airbag (SIAB) wiring harness connectors can cause an increase in resistance." *Id.* ¶ 23. The airbag sensing system would interpret the increase in resistance as a fault, illuminating the airbag light on the dashboard and sending a "service air bag" message to the driver. *Id.* "Over time, the resistance may reach a level where the SIABs, front center side airbag, if equipped, and pretensioners will not deploy in a crash." *Id.*

### 5. Recall No. 14v153 ("EPS Assist")

In March 2014, New GM recalled the following vehicles if they were equipped with electric power steering: all MY 2004-2005 and certain MY 2006, 2008-2009 Chevrolet Malibu, all MY 2004-05 and certain MY 2006 Chevrolet Malibu Maxx, certain MY 2009-2010 Chevrolet HHR (non-turbo), certain MY 2010 Chevrolet Cobalt, certain MY 2008-2009 Saturn Aura, all MY 2004-2007 Saturn Ion, and all MY 2005 and certain MY 2006, 2008-2009 Pontiac G6 vehicles. *Id.* ¶ 24. These "vehicles equipped with electric power steering (EPS) may experience a sudden loss of power steering assist . . . ." *Id.* ¶ 25. The cause of EPS assist loss varied among models. *Id.* ¶¶ 26-27. EPS assist loss in Delta platform vehicles (*e.g.,* the Cobalt, HHR, and Ion) was caused by oil contamination or intrusion within the electric power steering motor case. *Id.* ¶ 26. The cause of the EPS assist loss in Epsilon platform vehicles—*e.g.*, the Pontiac G6, Saturn Aura, and Malibu/Malibu Maxx—was supplier manufacturing issues concerning the torque sensor and power steering motor controller unit. *Id.* ¶ 27.

### B. The Court's Prior Rulings Narrowed Plaintiffs' Claims And Alleged Damages.

Named plaintiffs allege economic loss based on the "benefit-of-the-bargain defect theory," which "compensates a plaintiff for the fact that he or she overpaid, at the time of sale, for a defective vehicle." *TACC MTD Opinion*, 2016 WL 3920353, at *7, 10; *see also*, *e.g.*, 5ACC ¶¶ 17, 861, 1596, 1623, 1643, 1658. Plaintiffs also allege that they "incurred damages in at least the

form of lost time required to repair their vehicles." *E.g.*, 5ACC ¶¶ 1602, 4300, 6545.

The Court has now granted summary judgment against plaintiffs' benefit-of-the-bargain damages. *BotB SJ Opinion*, 2019 WL 3564968, at *1, 13, 17. Thus, the only remaining damages claims to be decided are for "lost time."

Plaintiffs' claims also were the subject of New GM's motions to dismiss, with the Court rejecting many of the claims. At this stage of the litigation, for the states of California, Missouri, and Texas, the following plaintiff claims remain pending:

- **Consumer Protection:** Consumers Legal Remedies Act ("CLRA") and Unfair Competition Law ("UCL") for California plaintiffs; Missouri Merchandising Practices Act ("MMPA") for Missouri plaintiffs; and Deceptive Trade Practices Consumer Protection Act ("DTPA") for Texas plaintiffs who allege a manifest defect.

- **Fraudulent Concealment:** California and Missouri plaintiffs.

- **Breach of Implied Warranty of Merchantability / Magnuson-Moss Warranty Act ("MMWA"):** Under the Song-Beverly Consumer Warranty Act ("SBA") for California plaintiffs; and under the Uniform Commercial Code for Missouri and Texas plaintiffs who allege a manifest defect.[1]

- **Unjust Enrichment:** California and Missouri plaintiffs who did not purchase a vehicle subject to the manufacturer's warranty.

- **Successor Liability:** Missouri plaintiffs who purchased a Delta Ignition Switch vehicle on or before July 9, 2009 allege successor liability versions of the previous claims, seeking to hold New GM liable for Old GM's conduct.[2]

- **Fraud By Concealment of the Right to File A Claim Against Old GM in Bankruptcy ("Bankruptcy Claim Fraud"):** California, Missouri, and Texas plaintiffs who owned a Delta Ignition Switch vehicle between July 10, 2009 and November 30, 2009.

---

[1] The arguments in this memorandum against each named plaintiff's state law implied warranty claim apply equally to that named plaintiff's MMWA claim. *E.g.*, *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 247 (2d Cir. 1986); *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1011 (D.C. Cir. 1986).

[2] Because the successor liability claims are the same as the claims pled directly against New GM, New GM's summary judgment arguments apply equally to the successor liability claims.

*See TACC MTD Opinion*, 2016 WL 3920353, at \*19-24 (California claims); *id.* at \*32-35 (Missouri claims); *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 445-55 (S.D.N.Y. 2017) ("*FACC MTD Opinion*") (Texas claims); *In re Gen. Motors LLC Ignition Switch Litig.*, 2017 WL 6509256, at \*5-6 (S.D.N.Y. Dec. 19, 2017) (Missouri successor liability); Docket No. 5618 at 28-29 (Bankruptcy Claim Fraud counts).

The Court has dismissed categories of plaintiffs and alleged damages. Other than successor liability claims, the "claims of all Plaintiffs who bought their vehicles prior to entry of the Sale Order on [July 2009] must be dismissed." *FACC MTD Opinion*, 257 F. Supp. 3d at 400-03. Plaintiffs who sold, traded in, or returned their vehicles before the recalls "could not have realized any 'diminished value' because they did not own the defective vehicles when the recalls were announced." *FACC MTD Opinion*, 257 F. Supp. 3d at 403; *see also In re Gen. Motors LLC Ignition Switch Litig.*, 2017 WL 3443623, at \*2 (S.D.N.Y. Aug. 9, 2017) (on reconsideration, stating that some claims might not require proof of damages, and that "Plaintiffs do not articulate a coherent theory of how a plaintiff who bought a vehicle with a concealed defect and sold the same vehicle before the defect was revealed can logically, if not legally, prove that he or she suffered damages."). The Court also dismissed the successor liability claims of California and Texas plaintiffs. *In re Gen. Motors LLC Ignition Switch Litig.*, 2017 WL 3382071, at \*19 (S.D.N.Y. Aug. 3, 2017) (California); *In re Gen. Motors LLC Ignition Switch Litig.*, 2018 WL 1989572, at \*3 (S.D.N.Y. Apr. 25, 2018) (Texas). Finally, the Court dismissed all Texas plaintiffs' fraudulent concealment and unjust enrichment claims. *FACC MTD Opinion*, 257 F. Supp. 3d at 453-55.

### C. The Named Plaintiffs At Issue.

The number of economic loss named plaintiffs has fallen substantially over the course of this litigation. A total of 273 plaintiffs have joined at least one of the various consolidated

complaints, but only 213 plaintiffs were named in the 5ACC, with 22 included "solely for the purpose of preserving their claims on appeal." *E.g.*, 5ACC ¶¶ 64, 249. Fifty plaintiffs from the three bellwether states have joined at least one consolidated complaint, but 21 (42%) have dropped out or been dismissed.

Of the remaining 29 named plaintiffs, only 16 plaintiffs (32% of the total) are asserting the full range of claims against New GM. These 16 plaintiffs, described in Exhibit 2, are:

- **California:** Chimen Basseri, Kellie Cereceres, Santiago Orosco, David Padilla, and Michelle Thomas

- **Missouri:** Brad Akers, Deloris Hamilton, Cynthia Hawkins, Ronald Robinson, Mario Stefano, and Christopher Tinen

- **Texas:** Gareebah Al-ghamdi, Dawn Bacon, Dawn Fuller, Michael Graciano, Lisa McClellan

Two additional plaintiffs—Kenneth Robinson and Patrice Witherspoon—are from Missouri, the only bellwether state where the Court has not rejected successor liability claims. These two plaintiffs can allege only successor liability, as they purchased their vehicles before July 10, 2009 and thus do not have direct claims against New GM. *FACC MTD Opinion*, 257 F. Supp. 3d at 400-03. Exhibit 3 describes these two successor liability plaintiffs.

The remaining 11 named plaintiffs are from California and Texas, purchased Delta Ignition Switch vehicles before July 10, 2009 and can bring only Bankruptcy Claim Fraud counts against New GM. *See* 5ACC ¶ 959 (defining Bankruptcy Claim Fraud class as "All persons who owned or leased a Delta Ignition Switch Vehicle between July 10, 2009, and November 30, 2009."); *FACC MTD Opinion*, 257 F. Supp. 3d at. 401-03 & n.5. Missouri plaintiffs Akers, K. Robinson, and Witherspoon also bring Bankruptcy Claim Fraud counts. These California and Texas Bankruptcy-Claim-Fraud plaintiffs, described in Exhibit 4, are:

- **California:** Patricia Barker, Michael & Sylvia Benton, Kimberly Brown, Crystal Hardin, Javier Malaga, Winifred Mattos, Esperanza Ramirez, and William Rukeyser

- **Texas:** Shenyesa Henry and Lisa Simmons

Because these 11 plaintiffs are limited to their Bankruptcy Claim Fraud count, unless otherwise specified, they are not included in the discussion of "plaintiffs" in the argument sections until Section III.G, which addresses their count.

## ARGUMENT

## I.    PLAINTIFFS HAVE NO LEGALLY RECOVERABLE DAMAGES.

"Rule 56(c) mandates the entry of summary judgment … against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  As described in Section I.D, damages are an essential element of each of plaintiff's claims.  Because plaintiffs cannot offer sufficient proof of damages for multiple, independent reasons, summary judgment should be granted against their claims.  *Small Bus. Bodyguard Inc. v. House of Moxie, Inc.*, 230 F. Supp. 3d 290, 303 (S.D.N.Y. 2017) ("On a motion for summary judgment, [plaintiff] must offer actual evidence that it suffered damages, not mere speculation.  In other words, a summary judgment motion is 'put up or shut up' time for litigants.  [Defendant] is, therefore, entitled to summary judgment . . . ."); *Valley Juice Ltd., Inc. v. Evian Waters of France, Inc.*, 213 F.3d 627 (2d Cir. 2000); *Sellify Inc. v. Amazon.com, Inc.*, 2010 WL 4455830, at *5 (S.D.N.Y. 2010); *Burns v. Bank of Am.*, 655 F. Supp. 2d 240, 250 (S.D.N.Y. 2008).

### A.    Named Plaintiffs Have No Legally Cognizable Benefit-Of-The-Bargain Damages.

The Court on August 6, 2019, granted summary judgment against plaintiffs' benefit-of-the-bargain damages claims.  *BotB SJ Opinion*, 2019 WL 3564968, at *1, 13, 17.

### B.    Various Plaintiffs' Claims Also Fail Because They Cannot Show A Manifest Defect.

Plaintiffs cannot recover for any Texas claims, or for Missouri implied warranty claims,

without a manifest defect.  *FACC MTD Opinion*, 257 F. Supp. 3d at 450-51, 462; *TACC MTD Opinion*, 2016 WL 3920353, at \*35.  The Court dismissed the implied warranty claims of Missouri plaintiffs Cynthia Hawkins and Ronald Robinson for lack of a manifest defect.  *TACC MTD Opinion*, 2016 WL 3920353, at \*35, 42 (Exhibit A).  Summary judgment should be awarded against additional claims because (1) new plaintiffs that do not allege manifestation have joined the 5ACC; (2) plaintiffs who alleged a manifest defect have no evidence to support their contention; or (3) the alleged manifestation is not of a defect at issue in this litigation.

For the ignition switch-related recalls, named plaintiffs allege that the ignition switch may inadvertently rotate out of the "on" or "run" position, causing the vehicle to lose power and disabling the airbags.  *E.g.*, 5ACC ¶ 10.  Importantly, a vehicle simply stalling cannot show manifestation of an ignition switch-related defect.  As plaintiff's putative expert Stevick concedes, "moving stalls are something that can happen in all vehicles," and occur for a "variety of reasons," such as "running out of gas," "[b]ad spark plugs," a "[b]ad ignition cable," or a "[c]logged EGR valve."  SUF ¶ 226.  Accordingly, plaintiffs must have evidence that the ignition switch in their vehicles inadvertently rotated and caused a loss of power.

Of the Texas plaintiffs, Dawn Fuller does not claim that her 2008 Impala experienced a moving stall, loss of power steering, or any other manifestation caused by the defects at issue.  SUF ¶ 185.  Other Texas plaintiffs have no evidence that the defects at issue manifested:

- Gareebah Al-ghamdi alleges that she experienced moving stalls in her 2004 Impala, but admits that during the first stall the ignition switch was in the "on" position and she does not know the position for the other stalls.  SUF ¶ 173.

- Lisa McClellan's vehicle was recalled only for EPS Assist, not a key rotation recall.  SUF ¶¶ 197-98.  She does not allege loss of power steering assist.  *Id.* ¶ 202.  The only times she had issues with her steering was when the vehicle shut off, but not only was her vehicle not subject to a key rotation recall, she also does not know the position of the ignition for any of those occasions.  *Id.* ¶ 202.

- Michael Graciano does not claim that he experienced or witnessed any incidents with his 2007 Cobalt, but instead that his then-fiancee's daughter told him that she lost power steering and the brakes did not work. SUF ¶ 191. Such hearsay cannot defeat summary judgment. *See Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 924 (2d Cir. 1985). Moreover, Graciano testified that the daughter does not recall details about the incidents, and thus he has no evidence that the ignition switch rotated. SUF ¶ 191.

For the Missouri plaintiffs, Deloris Hamilton admits that her 2000 Alero never experienced an inadvertent ignition rotation or other potential manifestation. SUF ¶ 122. Other Missouri plaintiffs likewise admit they have no evidence that a defect manifested:

- Mario Stefano claims that his Camaro lost power once, but does not claim his knee hit the key or that the ignition rotated. SUF ¶ 150. Instead, he believes there was a faulty battery in the vehicle's fob which was later replaced, a condition separate from and unrelated to the claimed defects at issue in the 5ACC. *Id.*

- Brad Akers alleges a single incident in which his 2009 HHR lost engine power. SUF ¶ 115. Akers admits that he does not know whether his key rotated when his vehicle lost power, and thus has no evidence that his vehicle manifested the defect at issue. *Id.*

- Patrice Witherspoon claims her 2006 Ion shut off on multiple occasions, but each time the ignition key was in the "run" position, establishing that these shut offs were not related to the recall condition. SUF ¶ 165.

- Kenneth Robinson claims that his 2008 Pontiac G5 shut down multiple times, but does not recall the ignition switch's position on any of those occasions. SUF ¶ 134.

Accordingly, summary judgment should be granted against all claims of Al-ghamdi, Fuller, McClellan, and Graciano, and against the implied warranty claims of Akers, Hamilton, K. Robinson, Stefano, and Witherspoon for lack of a manifest defect.

### C. Plaintiffs Cannot Recover Lost Time Damages.

#### 1. Lost Time Damages Require Proof Of Lost Earnings, Which No Plaintiff (With One Exception) Provides.

The "overwhelming majority of states adhere to the view that lost-time damages are the equivalent of lost earnings or income." *In re Gen. Motors LLC Ignition Switch Litig,*, 339 F. Supp. 3d 262, 307 (S.D.N.Y. 2018). California, Missouri, and Texas follow this rule.

Lost time is not cognizable under the California's consumer protection laws, including the CLRA and UCL. *E.g.*, *Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*, 2016 WL 6523428, at *11 (S.D. Cal. Nov. 3, 2016) (time spent responding to credit card charges could not "demonstrate that Plaintiff has suffered a loss of money or property" for a UCL claim); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 966 (S.D. Cal. 2012) ("Plaintiffs' allegations that the heightened risk of identity theft, time and money spent on mitigation of that risk . . . do not suffice as injury under the UCL, FAL, and/or the CLRA."); *Butler v. Adoption Media, LLC*, 486 F. Supp. 2d 1022, 1062 (C.D. Cal. 2007).

California also rejects lost time damages for fraud and other claims. *E.g.*, *Lueras v. BAC Home Loans Servicing, LP*, 163 Cal. Rptr. 3d 804, 829 (Cal. Ct. App. 2013) (holding for fraud that "[t]ime and effort spent assembling materials for an application to modify a loan is the sort of nominal damage subject to the maxim de minimis non curat lex—i.e., the law does not concern itself with trifles").[3] This rule is consistent with California law holding that fraud plaintiffs can recover only for pecuniary losses. *E.g.*, *R. D. Reeder Lathing Co. v. Cypress Ins. Co.*, 84 Cal. Rptr. 98, 100 (Cal. Ct. App. 1970).

Similarly, Missouri holds that lost time is not recoverable under the MMPA. *Ford v. St. Louis Metro. Towing, L.C.*, 2010 WL 618491, at *13 (E.D. Mo. Feb. 18, 2010) (dismissing plaintiffs' claims for "loss of time" damages); *Amburgy v. Express Scripts, Inc.*, 671 F. Supp. 2d

---

[3] *See also Badame v. J.P. Morgan Chase Bank, N.A.*, 641 F. App'x 707, 710 (9th Cir. 2016) ("Furthermore, Plaintiffs' contention that they are entitled to damages for the loss of time and energy they spent through the loan modification process also fails because the time and effort spent assembling materials for an application to modify a loan is the sort of nominal damage subject to the maxim de minimis non curat lex-i.e., the law does not concern itself with trifles."); *Gerard v. Wells Fargo Bank, N.A.*, 2015 WL 12791416, at *10 (C.D. Cal. 2015) ("Any damages associated with the time and effort spent assembling materials for an application to modify a loan are insufficient to support an intentional misrepresentation claim under California law.").

1046, 1057 (E.D. Mo. 2009) ("A claim of damages for time expended is not sufficiently definite or certain to support a monetary award for an 'ascertainable loss' under the MMPA.").[4]  The MMPA's ascertainable loss "requirement is not satisfied where plaintiff claims speculative, non-pecuniary harm or where he alleges no out-of-pocket costs." *Pleasant v. Noble Fin. Corp.*, 54 F. Supp. 3d 1071, 1079 (W.D. Mo. 2014) (internal quotation marks omitted); *see also Kuhns v. Scotttrade, Inc.*, 868 F.3d 711, 719 (8th Cir. 2017) (under the MMPA, damages are limited to "ascertainable pecuniary loss[es]."); Mo. Ann. Stat. § 407.025(1) (plaintiff must prove an "ascertainable loss of money or property" to recover under consumer protection law).  Claims for lost "free time" are neither pecuniary nor an out-of-pocket loss, and thus not recoverable.

Missouri follows the same rule for other claims.  *E.g.*, *Messina v. Prather*, 42 S.W.3d 753, 764 (Mo. Ct. App. 2001) ("A personal injury plaintiff may prove a resulting loss of time, and a consequent loss of personal earnings or wages as an item of special damages and may recover for loss of future earnings due to impairment of the plaintiff's earning capacity.").  Common law fraud requires proof of pecuniary loss, same as the MMPA.  *E.g.*, *Harris v. Penninger*, 613 S.W.2d 211, 214 (Mo. Ct. App. 1981); *Walsh v. Ingersoll-Rand Co.*, 656 F.2d 367, 371 (8th Cir. 1981) (applying Missouri law).  Indeed, "[l]oss of 'time' and loss of 'earnings' for that time mean the same thing." *Ganz v. Metro. St. R. Co.*, 220 S.W. 490, 496 (Mo. 1920).[5]

---

[4]  *See also Walsh v. Al West Chrysler, Inc.*, 211 S.W. 3d 673, 675 (Mo. Ct. App. 2007) (rejecting claim for "lost or wasted time" damages under the MMPA as insufficiently definite or certain); *Schoenlein v. Routt Homes, Inc.*, 260 S.W.3d 852, 855 (Mo. Ct. App. 2008) (reversing, in an MMPA case arising out of the defendant's failure to provide a warranty, a damages award that was based on evidence of telephone calls made by the plaintiffs to the defendant and evidence of "the significant time [the plaintiffs] spent attempting to obtain the warranty").

[5]  *See also Scholl v. Grayson*, 127 S.W. 415, 417 (Mo. Ct. App. 1910) ("loss of time is averred, which is the same, in legal effect, as averring loss of earnings"); *Lesser v. St. Louis & S. Ry. Co.*, 85 Mo. App. 331 (Mo. App. Ct. 1900) ("loss of time or of earnings (which is the same thing)").

For Texas, lost "free time" is not recoverable under the DTPA, which is limited to "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50(a); *see Valley Nissan, Inc. v. Davila*, 133 S.W.3d 702, 713 (Tex. App. 2003) (holding that "damages based on loss of time" are not within scope of Texas consumer protection law). This exclusion of lost "free time" is a general principle of Texas law. *E.g.*, *Vista Chevrolet, Inc. v. Barron*, 698 S.W.2d 435, 441 (Tex. App. 1985) (holding that "damages for loss of time in and of itself are not recoverable" and "that loss of time means loss of earnings").[6] Texas holds that time spent on vehicle repairs cannot be recovered without proof of lost earnings. *Bossier Chrysler Dodge II, Inc. v. Rauschenberg*, 201 S.W. 3d 787, 810 (Tex. App. 2006) (holding that plaintiff could not recover time spent visiting a repair shop on Saturday, when he did not work and thus did not lose any compensation), *rev'd in part on other grounds*, 238 S.W. 3d 376 (Tex. 2007).

With the exception of Brad Akers, the other named plaintiffs have no evidence of lost income from having the recall repairs performed. Indeed, plaintiffs Santiago Orosco, Deloris Hamilton, Kenneth Robinson, Gareebah Al-ghamdi, Dawn Bacon, and Lisa McClellan[7] did not have the recall repairs performed when they owned their vehicles, SUF ¶¶ 48, 123, 135, 174, 180,

---

[6] *See also Combined Am. Ins. Co. v. Morgan*, 214 S.W.2d 145, 148 (Tex. Civ. App. 1948) ("Loss of time as used in connection with damages recoverable for personal injuries means loss of earnings."); *Atchison, Topeka & Santa Fe Ry. Co. v. Acosta*, 435 S.W.2d 539 (Tex. Civ. App. 1968) (rejecting alleged lost time damages where there "is no testimony that he hired someone to do the work he had previously done, or that his net profits had been reduced").

[7] The *FACC MTD Opinion* notes that McClellan alleged "out-of-pocket expenses and lost time," but she has no evidence to support any such damages. *FACC MTD Opinion*, 257 F. Supp. 3d at 403. McClellan admitted the defect did not cause her to lose income, and thus she cannot recover for "lost time." SUF ¶¶ 204. McClellan also claimed that after she returned the car to the dealership, an amount of $4,716 was left owing on her credit report, but at deposition admitted that "I'm not even sure where I got the $4,716," that she did not know where the number came from, and that she did not have a credit report listing that any debt was owed to the dealership. *Id*. Similarly, McClellan alleges she spent $1,500 at different shops to correct problems with the vehicle and $200 in rental charges, but admitted she does not have any receipts or documentation to prove these alleged amounts. *Id*.

203, and thus even under plaintiffs' theory have no claim for lost time. Similarly, Kellie Cereceres' vehicle was remedied during a standard maintenance visit, and thus she did not spend additional time having her vehicle repaired pursuant to the recall. SUF ¶ 40. Summary judgment should be awarded against the lost time claims of all plaintiffs except Akers.

### 2. No Plaintiffs Have Relevant Expert Testimony To Support Their Lost Time Claims.

Even if named plaintiffs' lost-time claims were not barred as a matter of law, they are barred for lack of evidence. Most plaintiffs who obtained recall repairs depend on the opinion of Ernest Manuel, who was retained by Lead Counsel to estimate "the monetary value of time lost to Class Members who obtained recall repairs." SUF ¶ 224. His analysis suffers from numerous deficiencies, and New GM has re-filed its *Daubert* motion detailing why Manuel's opinion is inadmissible.

But even if Manuel's opinion were admissible, it could not establish any plaintiff's claim for lost-time damages because Manuel admittedly ███████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████ *Id.* ¶ 225. Accordingly, plaintiffs who provided no individual evidence of their alleged damages (that is, all named plaintiffs besides Akers) cannot rely on Manuel's opinion to establish lost income from the time they spent having their vehicles repaired, and their "lost-time" damages claim should be rejected as a matter of fact as well as law.

### D. Plaintiffs Cannot Recover On Their Claims Without Damages.

Under the laws of the three bellwether states, plaintiffs have no claims unless they have damages. While the Court previously suggested that "some claims in some states" might not "require a plaintiff to allege damages in order to survive a motion," *In re Gen. Motors LLC Ignition Switch Litig.*, 2017 WL 3443623, at *2-3 (S.D.N.Y. Aug. 8, 2017), that possible exception is not

available to any of the named plaintiffs:

- **California UCL:** "To satisfy the narrower standing requirements imposed by [the amended UCL], a party must now (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury* … ." *TACC MTD Opinion*, 2016 WL 3920353, at \*19 (emphasis in original) (quoting *Kwikset Corp. v. Super. Ct.*, 246 P.3d 877, 885 (Cal. 2011).)

- **California CLRA:** "Notably, the language of the CLRA is even broader than that of the UCL: It provides a remedy to '[a]ny consumer who suffers ***any damage*** as a result' of an unfair trade practice …" *TACC MTD Opinion*, 2016 WL 3920353, at \*21 (emphasis in original) (quoting Cal. Civ. Code § 1780(a)).

- **California Fraudulent Concealment:** "Under California law, a plaintiff bringing a claim for fraudulent concealment must allege … (5) resulting damage." *TACC MTD Opinion*, 2016 WL 3920353, at \*22.

- **California Song-Beverly Act:** "Any buyer of consumer goods ***who is damaged*** by a failure to comply with any obligation under this chapter or under an implied or express warranty or service contract may bring an action for the recovery of damages and other legal and equitable relief." Cal. Civ. Code § 1794(a) (emphasis added).

- **California Restitution:** "The elements of unjust enrichment are receipt of a benefit and unjust retention of the benefit ***at the expense of another***." *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1070 (9th Cir. 2014) (emphasis added), *abrogated on other grounds by Microsoft Corp v. Baker*, 137 S. Ct. 1702 (2017). This Court relied on *Berger* in finding that California would recognize an action for unjust enrichment or restitution. *TACC MTD Opinion*, 2016 WL 3920353, at \*23.

- **Texas DTPA:** The DTPA's "clear language provides a cause of action only to consumers who have sustained damages." *Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 823-24 (Tex. 2012); *see also FACC MTD Opinion*, 257 F. Supp. 3d at 448-49 ("'To prove a violation of the Act, a plaintiffs must show that … (3) these acts constituted a producing cause of the consumer's damages.'") (quoting *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995).)

- **Texas Implied Warranty:** "The statutory elements of the Everetts' breach of implied warranty of merchantability are … (3) that the alleged defect proximately caused the injuries for which the Everetts seek damages." *Everett v. TK-Taito, L.L.C.*, 178 S.W.3d 844, 853 (Tex. App. 2005).

- **Missouri Merchandising Practices Act:** "To pursue a claim under the MMPA, a plaintiff must show: … (2) an ascertainable loss of money or property … ." *TACC MTD Opinion*, 2016 WL 3920353, at \*33.

- **Missouri Fraudulent Concealment:** Fraud elements include "the hearer's consequent and proximately caused injury" and plaintiffs can use the benefit-of-the-bargain measure to calculate "damages." *Heberer v. Shell Oil Co.*, 744 S.W.2d 441, 443 (Mo. 1988).

- **Missouri Implied Warranty:** "A plaintiff bringing a breach of implied claim in Missouri must show … injury and damages to the plaintiff or his property." *TACC MTD Opinion* at *35.

- **Missouri Unjust Enrichment:** "The right to restitution for unjust enrichment presupposes: … (2) that the enrichment was at the expense of the plaintiff . . . ." *S & J, Inc. v. McLoud & Co., L.L.C.*, 108 S.W.3d 765, 768 (Mo. Ct. App. 2003) (internal citations omitted).

Summary judgment should be entered in New GM's favor and awarded against each named plaintiff's claims for lack of any legally recoverable damages.

## II. PLAINTIFFS WHOSE VEHICLES ARE SUBJECT TO SERVICE PARTS VEHICLE RECALL HAVE NO CLAIMS.

The MY 2008-2010 Pontiac Solstice and G5, MY 2008-2010 Saturn Sky, MY 2008-2010 Chevrolet Cobalt, and MY 2008-2011 Chevrolet HHR vehicles covered under Recall No. 14v047—the Service Parts Vehicles—were not defective as manufactured with the '190 switch. *See* Background.A.1. Instead, New GM recalled those vehicles because some of them might have been repaired with the earlier, faulty '423 switch. But unless the switch in a Service Parts Vehicle had been replaced with a '423 switch, they are not defective.

Consistent with these facts, the Court previously held that Service Parts Vehicles are automobiles that "were not manufactured with the faulty ignition switch, but which could have been repaired at some point using the faulty ignition switch. Accordingly, if they [Service Parts Vehicle plaintiffs] are ultimately to succeed on their claims with respect to the ignition switch, they will have to show that their cars in fact contained that defect." *TACC MTD Opinion*, 2016 WL 3920353, at *20 n.15.

None of the named plaintiffs with Service Parts Vehicles has any proof that his or her ignition switch was replaced prior to the recalls, let alone replaced with the defective '423 switch.

SUF ¶¶ 33 (Basseri), 134 (K. Robinson), 55 (Padilla), 116 (Akers), 128 (Hawkins). As a result, none of the named plaintiffs can prove the elements of their claim as required by the Court's *TACC MTD Opinion*. Without evidence of an ignition switch repair, any allegation that a vehicle subject to the Service Parts Vehicle recall had a defective ignition switch contradicts the undisputed facts and this Court's prior opinion.

Additionally, plaintiffs have conducted no testing or analysis showing that the ignition switches in the Service Parts Vehicle recall are defective. In the *Ward* case, the plaintiffs claimed that such vehicles are defective if the ignition switch has a torque resistance from "Run" that falls below 15 N.cm. Although New GM disputes this position as applied to ignition switches in the Service Parts Vehicle recall population, plaintiffs have no evidence that any of named plaintiffs' vehicles met plaintiffs' own standard. Glen Stevick, the only plaintiffs' expert who offers an opinion on inadvertent key rotation, has admitted that he has conducted no analysis of the named plaintiffs' vehicles. SUF ¶ 226.

As a result, summary judgment should be granted against all claims of Chimen Basseri, David Padilla, Kenneth Robinson, Brad Akers, and Cynthia Hawkins the to the extent based on the Service Parts Vehicle recall.[8] See Fed. R. Civ. P. 56; *Celotex*, 477 U.S. at 322.

## III. AS A MATTER OF LAW AND UNDISPUTED FACT, VARIOUS NAMED PLAINTIFFS CANNOT ESTABLISH NEW GM'S LIABILITY.

### A. Certain Plaintiffs Cannot Show Reliance As Required For Consumer Protection And Fraudulent Concealment Claims.

Plaintiffs' consumer protection and fraudulent concealment claims (other than claims

---

[8] Padilla, Akers, and Hawkins allege claims based on both the Service Parts Vehicle recall and the EPS Assist recall. The argument in Section II bars their claims based on the Service Parts Vehicle recall.

under the MMPA) require proof of reliance.[9]  Under Texas law, "[g]enerally, to prevail on a DTPA

claim, a plaintiff must establish that: . . . the defendant engaged in false, misleading, deceptive, or

unconscionable acts upon which the plaintiff relied to his detriment."  *Moore v. Panini Am.*, 2016

WL 7163899, at *3 (Tex App. Nov. 7, 2016).[10]  Similarly, under current California law,[11] proof

of each plaintiff's reliance is required for the CLRA and UCL.  *E.g.*, *Durell v. Sharp Healthcare*,

183 Cal. App. 4th 1350, 1362-63, 1366-67 (2010) (reliance is required for UCL claims based on

fraud as well as CLRA claims); *Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1047-48 (N.D. Cal.

2014) (where "CLRA claims and UCL claims are based on alleged misrepresentations, omissions,

and fraudulent conduct . . . those claims are therefore subject to the actual reliance requirement").[12]

California and Missouri also require reliance for common law fraudulent concealment.  *See*, *e.g.*,

*Mirkin v. Wasserman*, 858 P.2d 568, 573-74 (Cal. 1993); *Triggs v. Risinger*, 772 S.W.2d 381, 384

(Mo. Ct. App. 1989).

---

[9]  Each named plaintiff had a variety of different reasons as to why they purchased their vehicles.  In this section, New GM is moving for summary judgment against the named plaintiffs where the undisputed facts—including their own testimony—show that they did not rely on safety or reliability.

[10]  *See also Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 823-24 (Tex. 2012) (under DTPA, a "consumer loses without proof that he relied to his detriment on the deceptive act"); *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675 (Tex. 2002); *Peltier Enters. v. Hilton*, 51 S.W.3d 616, 623-24 (Tex. App. 2000) (under unconscionability prong of DTPA that there "must be a showing of what the consumer could have or would have done if he had known about the information").

[11]  Before November 2, 2004, UCL claims did not require individualized proof of reliance, injury, or damages.  *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 852 (2008).  On that date, Proposition 64 changed the UCL to require plaintiffs to prove they have "suffered injury in fact" and "lost money or property as a result of such unfair competition."  *Id.*  Earlier case law that did not require reliance, as well as decisions that mistakenly continue to rely on such case law, have been superseded by Proposition 64.

[12]  *Princess Cruise Lines, Ltd. v. Superior Court*, 179 Cal. App. 4th 36, 46 (2009) (holding that "reliance is required for CLRA actions"); *Sud v. Costco Wholesale Corp.*, 229 F. Supp. 3d 1075, 1082-83 (N.D. Cal. 2017) ("Plaintiffs must allege reliance to show they have statutory standing to pursue each of their claims" under the CLRA and UCL); *Coleman-Anacieto v. Samsung Elecs. Am., Inc.*, 2016 WL 4729302, at *10-11, 17 (N.D. Cal. Sept. 12, 2016); *English v. Apple Inc.*, 2016 WL 1188200, at *12 (N.D. Cal. Jan. 5, 2016) ("Courts require a showing of reliance from named plaintiffs asserting UCL claims based on alleged misrepresentations irrespective of which of the UCL's prongs the claims are bought under.").

### 1. Various Texas Plaintiffs Cannot Prove Reliance.

Under Texas law, reliance cannot be presumed, but must be proven for each consumer. *McManus v. Fleetwood Enters., Inc.*, 320 F.3d 545, 549 (5th Cir. 2003). Reliance cannot be inferred from a consumer purchasing a product, even if it has an undisclosed problem or inflated price. *See Tex. S. Rentals, Inc. v. Gomez*, 267 S.W.3d 228, 237-38 (Tex. App. 2008); *Fidelity & Guar. Life Ins. Co. v. Pina*, 165 S.W.3d 416, 424-25 (Tex. App. 2005); *In re Clorox Consumer Litig.*, 301 F.R.D. 436, 446 (N.D. Cal. 2014); *see also Ford Motor Co. v. Ocanas*, 136 S.W.3d 447, 453 (Tex. App. 2004) (even if defendant wanted plaintiff to rely on its statements, there is no DTPA violation unless the plaintiff actually did rely). Texas courts recognize that a plaintiff might proceed with the transaction for various different reasons. *See Peltier Enters., Inc. v. Hilton*, 51 S.W.3d 616, 623 (Tex. App. 2000) (differences in loan interest rates and thus monthly payments for a vehicle may not be material to a buyer, such as if the buyer cannot acquire financing elsewhere); *Tex. S. Rentals, Inc. v. Gomez*, 267 S.W.3d 228, 238 (Tex. App. 2008) (a consumer might pay an inflated fee for a product for various reasons). A plaintiff cannot prove reliance without showing "what the consumer could have or would have done if he had known about the information." *Peltier Enters., Inc. v. Hilton*, 51 S.W.3d 616, 623-24 (Tex. App. 2000).

Texas courts regularly reject DTPA and fraud claims where a plaintiff relies on statements from sources other than the defendant in buying the product. *See Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 694 (Tex. 2002) (plaintiffs could not show reliance on defendant's statements regarding software where plaintiffs "relied on recommendations from colleagues and others"); *McLaughlin v. Northstar Drillings Techs., Inc.*, 138 S.W.3d 24 (Tex. App. 2004) (rejecting DTPA claims where the "record in this case establishes that McLaughlin did not rely on Northstar's promotional literature to hire McLaughlin, but rather on a friend's recommendation"); *Bowles v. Mars, Inc.*, 2015 WL 3629717, at *4 (S.D. Tex. June 10, 2015) (plaintiff could not show reliance

on manufacturer's label when plaintiff relied on the recommendation of the retailer that sold him the product).

Under Texas law, neither plaintiff Gareebah Al-ghamdi nor Lisa McClellan can prove reliance on New GM's alleged omission of information about vehicle defects. Al-ghamdi relied on her family in buying her 2004 Chevrolet Impala, testifying that she was influenced by her mother and cousins owning Chevrolets and being happy with those vehicles. SUF ¶ 171. Al-ghamdi's stepfather accompanied her on trips to the dealerships, test drove the Impala, and negotiated its price with the dealership. *Id*. Al-ghamdi did not mention safety as a reason for buying the vehicle and, while she said she wanted a reliable car, she relied on her stepfather to determine this, as he discussed "status of the vehicles, maintenance, and things of that sort" with the dealerships. *Id*. Indeed, despite receiving several recall notices, Al-ghamdi chose to not have the recall repair performed. *Id.* ¶ 174.

Lisa McClellan bought her used vehicle because it had low mileage, she liked the vehicle's look and liked Chevrolets in general, and that she preferred an American car over foreign competitors. *Id.* ¶ 200. McClellan did not mention safety as a reason for buying the vehicles, and mentioned reliability only in general. *Id*. The undisputed evidence establishes that Al-ghamdi and McClellan did not rely on New GM's alleged representations or omissions, and judgment should be granted against their DTPA claims.[13]

---

[13] For the plaintiffs discussed in Section III.A., plaintiffs' counsel used leading questions to have plaintiffs answer that they would not have purchased the vehicle if they had known of the alleged defects. These improper questions cannot change that when these plaintiffs were asked why they purchased each vehicle, they did not rely on safety or reliability. *See, e.g.*, Fed. R. Evid. 611(c) ("Leading question should not be used on direct examination except as necessary to develop the witness's testimony."); *Rylott-Rooney v. Alitalita-Linee Aeree Italiane SpA*, 2009 WL 37817, at *2-3 (S.D.N.Y. Jan. 6, 2009) (the "assertions in plaintiff's counsel's leading question are, however, not evidence in themselves" and were not sufficient to prevent summary judgment, especially where the witness himself did not offer such testimony); *Newton v.*

## 2. Various California Plaintiffs Likewise Cannot Show Reliance.

Under California law "to show actual reliance, whether based on an affirmative misrepresentation or a material omission, Plaintiffs must demonstrate that the misrepresentation or omission was an immediate cause of the injury-causing conduct." *Sud v. Costco Wholesale Corp.*, 229 F. Supp. 3d 1075, 1083 (N.D. Cal. 2017) (collecting and summarizing cases). Plaintiffs must "show that the misrepresentation or omission was a substantial factor in their decision making process." *Id.*; *see also Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101 (N.D. Cal. 2016). "If an omission is material, … that one would have behaved different can be presumed, or at least inferred." *Sud*, 229 F. Supp. 3d at 1083. "However, a plaintiff cannot use that presumption if the evidence establishes an actual lack of reliance." *Id.*; *see also Philips v. Ford Motor Co.*, 2016 WL 7428810, at *15-16 (N.D. Cal. Dec. 22, 2016) (presumption or inference does not apply where plaintiffs are exposed to disparate information).

To show reliance on omissions, each plaintiff must prove that (1) "had the omitted information been disclosed one would have been aware of it" and (2) he or she would have "behaved differently." *Mirkin v. Wasserman*, 858 P.2d 568, 574 (Cal. 1993); *see also Webb v. Carter's Inc.*, 272 F.R.D. 489, 502 (C.D. Cal. 2011); *Sud*, 229 F. Supp. at 1083. California courts have rejected claims where plaintiffs cannot show reliance, even where those claims were based on alleged omissions that could cause physical injury. *E.g.*, *Webb v. Carter's Inc.*, 272 F.R.D. 489, 502-03 (C.D. Cal. 2011) (disclosing that children's clothes had toxic chemical may not change consumer behavior depending on perceptions of likelihood of injury and whether disclosure conflicted with consumer's experience); *In re Vioxx Class Cases*, 180 Cal. App. 4th

---

*City of New York*, 640 F. Supp. 2d 426, 444-45 (S.D.N.Y. 2009) (striking witness's responses to plaintiffs leading questions and granting summary judgment to defendant).

116, 134 (2009) (consumers who took allegedly harmful drug could not show reliance or materiality if they would still take the drug today or if their physicians would have distrusted statements by the pharmaceutical industry); *Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 457 (S.D. Cal. 2014) (consumers would not be able to prove reliance on claim that makeup would last 24 hours based on their expectations, reasons for purchase, and consumer satisfaction).

According to plaintiffs themselves, New GM's alleged representations or omissions were not a substantial factor for various California plaintiffs. Chimen Basseri testified that she bought her car based on its appearance and because she and her fiancé liked the car:

> Q: How did you decide to buy a 2011 HHR from Valencia of Nissan of Valencia? Sorry.
>
> A. I was looking through the cars.com, you know, locally, but that's the only place that there was a 2011 white HHR, and we wanted to buy that car because we wanted to buy the car. You know, me and my fiancé, we liked the car.

SUF ¶ 30.

David Padilla relied on statements by an independent dealer's salesperson that the vehicle was a good buy and because he believed the salesperson was honest:

> Q. When you purchased the 2010 Chevy Cobalt why did you pick that car over the other two or three?
>
> A. Told me it is a good buy. He says, "It is in good shape." It wasn't. Later I found out, but he told me it was and I believed him. But he was honest. He said, "Get it in here." He says, "There is something wrong with it." . . .
>
> Q. Do you recall specifically what [the dealer's salesperson] told you about the Chevy Cobalt when you spoke with him on the day that you purchased it?
>
> A. No. I really -- I liked it and I bought it. I didn't ask no questions on it. . . .
>
> A. I didn't do no shopping for that one. I -- I purchased it when he suggested it.

*Id.* ¶ 52. That Padilla did not mention safety when asked about why he purchased the Cobalt shows that it was not a "substantial factor" in his decision-making.

Various plaintiffs also are unable to prove that they would have been aware of the allegedly

omitted information if it had been disclosed pre-purchase. Santiago Orosco and David Padilla did not view any New GM materials before purchasing their vehicles. *Id.* ¶¶ 46, 53. Their lack of exposure to New GM's alleged statements establishes that they would not have received information disclosed by New GM. *See, e.g., Webb v. Carter's Inc.*, 272 F.R.D. 489, 502 (C.D. Cal. 2011) (plaintiff could not show she would have been aware of disclosures regarding children's clothing where she did not research children's clothes before buying them); *English*, 2016 WL 1188200, at *12 (plaintiff could not show reliance on omissions where she did not read or rely on documents where disclosures would have been made); *Sud*, 229 F. Supp. 3d at 1083-84 (plaintiff could not show reliance on omitted information by arguing it should have been revealed in disclosure where plaintiffs did not read disclosure before making purchase). Basseri bought her vehicle used from a Nissan dealer. SUF ¶ 29. Dealers are unlikely to provide information about another manufacturer's vehicles and thus a buyer will not learn of supposedly omitted information. *See Butler v. Porsche Cars N. Am., Inc.*, 2017 WL 1398316, at *11 (N.D. Cal. Apr. 19, 2017) (noting that "a class member who purchased a used Class Vehicle from a third party may not have interacted with a Porsche representative *at all* prior to purchase, and indeed may not have viewed *any* material or advertisements from Porsche") (emphases in original).

Basseri, Orosco, and Padilla did not rely on New GM's alleged representations or omissions. Judgment should be granted against their consumer and common law fraud claims.

### 3. Various Missouri Plaintiffs Cannot Show Reliance.

Under Missouri law, the "test of whether a plaintiff relied upon a misrepresentation is simply whether the representation was a material factor influencing final action." *Stein v. Novus Equities Co.*, 284 S.W.3d 597, 603 (Mo. Ct. App. 2009); *Grossoeheme v. Cordell*, 904 S.W.2d 392, 397 (Mo. Ct. App. 1995).

Ronald Robinson and Mario Stefano did not rely upon New GM's alleged

misrepresentations or omissions. When asked about the reasons for his vehicle purchase, Robinson testified that he "was looking for low mileage and what I would consider a decent price." SUF ¶ 138. Robinson also relied on the opinion of his brother-in-law, who was in the auto repair business. *Id.* ¶ 140.

Stefano testified he bought his 2011 Camaro "[b]ecause it is a vehicle that my wife and I enjoy. We've always enjoyed Camaros." *Id*. ¶ 146; *see also Id*. (Stefano bought his 2011 Camaro because "it's a love my wife has for these cars that she loves Camaros. She's had them for so long, and she's driven them for many years. ... [W]e try and support each other by getting vehicles that we like."). Given the couple's shared enjoyment of Camaros, Stefano testified that he did no research before buying and that the purchase was "completely impulse." *Id*. Summary judgment should be granted against R. Robinson and Stefano's fraudulent concealment claims.

## B.    Plaintiffs Have Not Pled Any Actionable Misrepresentations.[14]

### 1.    Alleged Statements That A Plaintiff Never Saw Or Heard Cannot Have Caused Plaintiff Harm.

In California,[15] Texas,[16] and Missouri,[17] if a plaintiff never saw or heard a statement, that representation cannot have caused plaintiff any harm, nor can plaintiff have relied on it.  Each plaintiff's misrepresentation claims can be based only on alleged statements he or she actually saw or heard.  Santiago Orosco, David Padilla, Deloris Hamilton, Cynthia Hawkins, Kenneth Robinson, Mario Stefano, Gareebah Al-ghamdi, Dawn Fuller, Michael Graciano, and Lisa McClellan testified that they did not see or did not rely on New GM advertisements or materials before buying their vehicles.  SUF ¶¶ 46 (Orosco), 53 (Padilla), 121 (Hamilton), 127 (Hawkins), 133 (K. Robinson), 148 (Stefano), 172 (Al-ghamdi), 184 (Fuller), 190 (Graciano), 201 (McClellan).  Therefore, they have no valid claims for misrepresentation.

Other plaintiffs vaguely recalled having seen what they believed were advertisements, but

---

[14]  Plaintiffs plead misrepresentations only in their consumer fraud counts.  *E.g.*, 5ACC ¶¶ 1585, 1592, 1594, 1614, 1620, 1622.  The arguments in this section apply equally to any other claims to the extent that plaintiffs base those claims on alleged misrepresentations.

[15]  *E.g.*, *Durrell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363 (2010) (plaintiff could not show reliance for UCL claim where he did not read agreement at issue); *Resnick v. Hyundai Motor Am., Inc.*, 2016 WL 9455016, at *15 (C.D. Cal. Nov. 14, 2016) ("Plaintiffs have failed to establish that they were aware of the alleged misrepresentations at the time they purchased their vehicles.  Thus, they have failed to sufficiently plead reliance."); *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1220 (N.D. Cal. 2014); *In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1018 (N.D. Cal. 2013); *In re LinkedIn User Privacy Litig.*, 932 F. Supp. 2d 1089, 1093 (N.D. Cal. 2013); *Ehret v. Uber Tech., Inc.*, 148 F. Supp. 3d 884, 901 (N.D. Cal. 2015).

[16]  *E.g.*, *Solano v. Landamerica Commonwealth Title of Fort Worth, Inc.*, 2008 WL 5115294, at *9-10 (Tex. App. Dec. 4, 2008) (plaintiff could not show reliance without evidence he saw incorrect description in document); *Chapman v. Pacificare of Tex., Inc.*, 2005 WL 1155108, at *6 (S.D. Tex. Apr. 18, 2005); *Deburro v. Apple, Inc.*, 2013 WL 5917665, at *1 (W.D. Tex. Oct. 31, 2013).

[17]  *E.g.*, *Williams v. HSBC Bank USA, N.A.*, 467 S.W.3d 836, 845 (Mo. Ct. App. 2015) (there can be no reliance "where the plaintiff took the action which caused the damage before hearing the alleged misrepresentation").

cannot recall what these said. Chimen Basseri and Kellie Cereceres claim to have seen New GM advertisements, but do not remember any content and do not know whether they saw any of the statements the 5ACC alleges are inaccurate. *Id.* ¶¶ 31, 37. Brad Akers believes he may have seen one advertisement about his vehicle, but was not sure if it was an advertisement or article, or if it was written by New GM or someone else. *Id.* ¶ 114. Because none of these plaintiffs remember the content of any representations, they cannot have a misrepresentation claim.

Christopher Tinen claims to have seen advertising with general themes of dependability and performance, but did not identify whether that advertising was Old GM or New GM, could not recall if these advertisements were about the vehicle he purchased, and could not recall whether he relied on any such themes or statements. *Id.* ¶ 156. As he cannot testify whether these alleged statements caused him to purchase the vehicle, he has no misrepresentation claims.

Moreover, three of the named plaintiffs who cannot recall or did not rely on the content of advertisements they saw testified that the representations in those advertisements were not false or misleading. Basseri and Cereceres admitted that they were not claiming that any of the New GM advertisements were false or misleading. *Id.* ¶¶ 31, 37. Tinen could not identify any representations he believed were untrue. *Id.* ¶ 156. These plaintiffs have no basis for a misrepresentation claim.

## 2. New GM Cannot Be Liable For The Statements Of Third Parties, Including Independent Dealers.

Plaintiffs cannot maintain misrepresentation claims based on statements made by dealership representatives. Dealerships are separate entities from, and not agents of, New GM. The "relationship between automobile manufacturers and their dealers has been examined by a host of courts throughout the country, all of which have agreed that dealers are not 'agents' of manufacturers." *Williams v. Yamaha Motor Corp., U.S.A.*, 2015 WL 13626022, at *6 & n.9 (C.D.

Cal. Jan. 7, 2015) (collecting cases); *State ex rel. Bunting v. Koehr*, 865 S.W.2d 351, 354 (Mo. 1993) ("The relationship between the dealers and [manufacturer] for the sale of [manufacturer's] products is, therefore, that of buyer and seller, not agent and principal."); *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 290 (5th Cir. 2004).[18] New GM's Dealer Sales and Service Agreements expressly confirm that dealers are not New GM's agents. SUF ¶¶ 227-29.

Santiago Orosco, David Padilla, Michelle Thomas, Brad Akers, Deloris Hamilton, Cynthia Hawkins, Kenneth Robinson, Christopher Tinen, Patrice Witherspoon, Michael Graciano all claim to have relied on statements made by dealership employees, not New GM. SUF ¶¶ 45 (Orosco), 52 (Padilla), 60 (Thomas), 114 (Akers), 120 (Hamilton), 127 (Hawkins), 133 (K. Robinson), 157 (Tinen), 163 (Witherspoon), 190 (Graciano). Such statements cannot be the basis for liability against New GM.

---

[18] *See also Bushendorf v. Freightliners Corp.*, 13 F.3d .1024, 1026 (7th Cir. 1993) (An "automobile dealer or other similar type of dealer, who like [defendant dealer] merely buys goods from manufacturers or other suppliers for resale to the consuming public, is not his supplier's agent."); *Matthews v. Ford Motor Co.*, 479 F.2d 399, 403 & n.l3 (4th Cir. 1973) (noting that authorized dealer was not an agent of automobile manufacturer); *Capital Ford Truck Sales, Inc. v. Ford Motor Co.*, 819 F. Supp. 1555, 1580 (N.D. Ga. 1992); *Ortega v. Gen. Motors Corp.*, 392 So.2d 40, 43 (Fla. Dist. Ct. App. 1980); *Arnson v. Gen. Motors Corp.*, 377 F. Supp. 209, 213 (N.D. Ohio 1974).

### 3. The Alleged Misrepresentations Are Non-actionable Puffery.

California,[19] Texas,[20] and Missouri[21] hold that puffery is not actionable under statutory or common law fraud. "Ultimately, the difference between a statement of fact and mere puffery rests in the specificity or generality of the claim." *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008) (California law). "The common theme that seems to run through cases considering puffery in a variety of contexts is that consumer reliance will be induced by specific rather than general assertions." *Id.* (internal citations omitted). "Thus, a statement that is quantifiable, that makes a claim as to the 'specific or absolute characteristics of a product,' may be an actionable statement of fact while a general, subjective claim about a product is non-actionable puffery." *Id.*

"[C]ourts have repeatedly held that general statements about a brand's quality, or a product's safety, are too vague or lacking in factual content to be actionable." *TACC MTD Opinion*, 2016 WL 3920353 at *10. Consistent with the Court's ruling, California, Texas, and Missouri hold that general statements concerning safety or reliability are inactionable puffery.

---

[19] *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1353 (2d Dist. 2003) (holding that statements such as "crystal clear" and CD quality" were not factual representations and thus could not be the basis of liability under the UCL or CLRA); *Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 998 (N.D. Cal. 2007); *Atari Corp. v. The 3DO Co.*, 1994 WL 723601, at *2-3 (N.D. Cal. May 16, 1994); *Grassi v. Int'l Comfort Prods., LLC*, 2015 WL 4879410, at *6 (E.D. Cal. Aug. 14, 2015).

[20] *Autohaus, Inc. v. Aguilar*, 794 S.W.2d 459, 462 (Tex. App. 1990) ("[W]e hold that if the statements alleged to be misrepresentations are, in fact, only puffing or opinion, they cannot be actionable representations under the DTPA."); *id.* at 463 ("The Texas courts have routinely discussed puffing and opinion in breach of warranty and fraud cases."); *id.* at 464 (holding that representations that car "was the best engineered car in the world" and "probably would not have mechanical difficulties" were inactionable puffery); *McNeely v. Salado Crossing Holding, L.P.*, 2017 WL 2561551, at *3 (Tex. App. June 14, 2017); *Diais v. Land Rover Dallas, L.P.*, 2016 WL 1298392, at *4 (Tex. App. Apr. 4, 2016).

[21] *Williams v. United Techs. Corp.*, 2015 WL 7738370, at *8 (W.D. Mo. Nov. 30, 2015) ("Defendants' claims that its products were 'reliable' and 'built to last,' constitute non-actionable puffery" under the MMPA); *Wright v. Bath & Body Works Direct, Inc.*, 2012 WL 12088132, at *2 (W.D. Mo. Oct. 17, 2012); *Cortinas v. Behr Process Corp.*, 2017 WL 2418012, at *2 (E.D. Mo. June 5, 2017).

The California Supreme Court has recognized that if "defendants' assertion of safety is merely a statement of opinion—mere 'puffing'—they cannot be held liable for its falsity." *Hauter v. Zogarts*, 14 Cal. 3d 104, 111 (1975);[22] *see also Sims v. Kia Motors Am., Inc.*, 2014 WL 12558249, at *1, 7 (C.D. Cal. Mar. 31, 2014) (advertisements where "safety and quality were consistent themes" including that the vehicles "are engineered to help ensure everyone's well-being" were puffery under the UCL and FAL) (internal citation omitted); *Azoulai v. BMW of N. Am., LLC*, 2017 WL 1354781, at *1, 8 (N.D. Cal. Apr. 13, 2017) (representation that vehicle soft close door system operated "safely" was puffery despite door crushing plaintiff's fingers: "Contrary to what Plaintiffs contend, there is nothing 'specific and measurable' about the word 'safely.'"); *Cirulli v. Hyundai Motor Co.*, 2009 WL 5788762, at *3 (C.D. Cal. June 12, 2009).

In Texas, statements that an airplane's engine was "'good, safe and reliable' … amount to mere opinion or puffing." *Bill & Joe Deane Bradford Invs., Inc. v. Cutter Aviation San Antonio, Inc.*, 2005 WL 3161083, at *2 (Tex. App. Nov. 23, 2005); *Chandler v. Gener Messer Ford, Inc.*, 81 S.W.3d 493, 501 (Tex. App. 2002) (dealership salesman's statement that one car would be "safer" than another was "'sales talk' or 'puffing' which are not actionable under the DTPA"); *Dunlap v. Gayle*, 2013 WL 1500377, at *4 (Tex. App. Apr. 11, 2013); *Greater Houston Transp. Co. v. Uber Techs., Inc.*, 155 F. Supp. 3d 670 (S.D. Tex. Dec. 2015).

Missouri has explained that allegations that "GM has through its national advertisements, press releases and promotions created a false impression that the ABS system is 'safe and reliable'" were "statements of puffery." *In re Gen. Motors Anti-Lock Brake Prods. Liab. Litig.*, 966 F. Supp.

---

[22] After holding that puffing about safety was not actionable, *Hauter* ultimately concluded that the statements at issue in that case were sufficiently specific and measurable to be factual. Specifically, *Hauter* concerned a golfing training device where the defendant represented that "Completely Safe Ball Will Not Hit Player," when, in fact, the plaintiff was struck in the head by the golf ball. *Id.* at 109, 112.

1525, 1534 (E.D. Mo. 1997), *aff'd*, *Briehl v. Gen. Motors Corp.*, 172 F.3d 623 (8th Cir. 1999); *Williams v. United Techs. Corp.*, 2015 WL 7738370, at *8 (W.D. Mo. Nov. 30, 2015) ("Defendants' claims that its products were 'reliable' and 'built to last,' constitute non-actionable puffery" under the MMPA).[23]  Beyond the bellwether states, decisions across the nation hold that automotive companies' general statements of safety or reliability are not actionable.[24]

The handful of plaintiffs in the three bellwether states who claim to have seen New GM statements and recalled their content cite only puffery.  Ronald Robinson claims he saw advertising about the vehicle's "quality."  SUF ¶ 139.  Patrice Witherspoon does not claim the advertisements made any statements, but rather depicted vehicles being hit with a baseball bat or shopping cart, which she asserts gave the impression of safety.  *Id*. ¶ 163.  Dawn Bacon claims she saw an advertisement describing a vehicle as being "first in its class in safety."  *Id*. ¶ 178.  Michelle Thomas alleges that she saw advertisements talking generally about "safety" and "reliability," though she does not recall what the advertisements specifically said about any vehicle.  *Id*. ¶ 60. These general references are classic puffery; summary judgment should be granted against these plaintiffs' misrepresentation claims.

---

[23]  In denying New GM's motion to dismiss plaintiffs' Wisconsin consumer fraud, the Court found that some of plaintiffs' statements were actionable, but that conclusion does not apply here.  *FACC MTD Opinion*, 257 F. Supp. at 457-58.  The Court's prior opinion dealt with the particularities of Wisconsin law, while California, Texas, and Missouri law all make clear that general statements regarding safety are puffery.  Moreover, the prior opinion concerned a motion to dismiss where the complaints alleged, and the Court was required to assume, that each plaintiff viewed a range of statements.  By contrast, on summary judgment each plaintiff must produce evidence of each specific representation of which he or she relies. The evidence shows that the New GM representations plaintiffs heard or saw, if any, are not actionable.

[24]  *E.g.*, *In re Ford Motor Co. Sec. Litig., Class Action*, 381 F.3d 563, 570 (6th Cir. 2004); *Zaccagnino v. Nissan N. Am., Inc.*, 2015 WL 3929620, *4 (S.D.N.Y. June 17, 2015); *Mitchell v. Gen. Motors LLC*, 2014 WL 1319519, at *8 (W.D. Ky. Mar. 31, 2014); *Sabol v. Ford Motor Co.*, 2015 WL 4378504, *5 (E.D. Pa. July 16, 2015); *Daigle v. Ford Motor Co.*, 2012 WL 3113854, *9 (D. Minn. July 31, 2012); *In re Ford Motor Co. E-350 Van Prods. Liab. Litig. (No. II)*, 2010 WL 2813788, at *8-9 (D.N.J. July 9, 2010); *Hoffman v. A. B. Chance Co*., 339 F. Supp. 1385, 1388 (M.D. Pa. 1972).

**C.    Plaintiffs' Implied Warranty Claims Are Barred In Whole Or In Part.[25]**

**1.    New GM Warranties Exclude Lost Time and Other Consequential Damages.**

Texas and Missouri allow a manufacturer to limit the remedy for breach of implied warranty to repair and replacement of nonconforming parts, and also to exclude all consequential damages.    Both states' UCC provisions on implied warranties state that "the agreement may provide for remedies in addition to or in substitution for those provided in this article and may limit or alter the measure of damages recoverable under this article, as by limiting the buyer's remedies to … repair and replacement of nonconforming goods or parts."  Mo. Rev. Stat. § 400.2-719(1)(a); Tex. Bus. & Com. Code § 2.719(a)(1).   "Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable.    Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not."  Mo. Rev. Stat. § 400.2-719(3); Tex. Bus. & Com. Code § 2.719(c).

All of New GM's (and Old GM's) express warranties for the named plaintiffs' vehicles limit implied warranties in accord with these UCC provisions.  SUF ¶ 220.  Those warranties provide in bold, conspicuous language that **"Performance of repairs and needed adjustments is the exclusive remedy under this written warranty or any implied warranty.  GM shall not be liable for incidental or consequential damages, such as, but not limited to, lost wages or vehicle rental expenses, resulting from breach of this written warranty or any implied**

---

[25]  If Texas plaintiffs' implied warranty claims are barred, their DTPA claims also are barred to the extent they are based on implied warranty.  *See BaySystems N. Am. LLC v. Rosebud-Lott Indep. Sch. Dist.*, 2011 WL 6989898, at *3-4 (Tex. App. Dec. 21, 2011).

**warranty."** *Id.* Texas[26] and Missouri[27] courts have enforced similar warranties limiting remedies to repair and replacement where plaintiffs sought economic losses and manufacturers agreed to repair the product.

Therefore, for implied warranty, Texas and Missouri plaintiffs are limited to "repair and replacement of nonconforming goods or parts," which New GM has already provided through the 2014 recalls. Plaintiffs' alleged economic loss damages are barred by the warranties' terms. No Texas or Missouri plaintiff[28] can obtain lost time or other consequential damages under an implied warranty theory and, therefore, summary judgment should be granted against such claims.

### 2. Various Plaintiffs' Implied Warranty Claims Are Barred By The Statutory Limitations Period.

Both Texas and Missouri apply a four-year statute of limitations to implied warranty claims. Mo. Rev. Stat. § 400.2-725(1); Tex. Bus. & Com. Code § 2.725(1). The "cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach" and a "breach of warranty occurs when tender of delivery is made . . . ." Mo. Rev. Stat. §

---

[26] *Henderson v. Ford Motor Co.*, 547 S.W.2d 663, 669 (Tex. App. 1977) (explaining that warranty satisfied its purpose where a "limited warranty to repair defects within the limitation prescribed without expense to the purchaser was given in lieu of any implied warranty of merchantability or fitness"); *Emmons v. Durable Mobile Homes, Inc.*, 521 S.W.2d 153, 154 (Tex. App. 1974) (holding that warranty limiting remedy to replacement of parts in a mobile home was reasonable, conscionable, and conspicuous, despite plaintiff's assertions that home was unfit for its intended purpose); *Mostek Corp. v. Chemetron Corp.*, 642 S.W.2d 20, 25 (Tex. App. 1982).

[27] *Russo v. Hilltop Lincoln-Mercury, Inc.*, 479 S.W.2d 211, 213 (Mo. Ct. App. 1972) (enforcing warranty's limitation of remedies to replacement or repair of defective parts to exclude plaintiff's damages for renting an alternative vehicle and for interest paid on car loan).

[28] These limitations on damages apply regardless of whether a plaintiff bought a vehicle new or used. *E.g.*, *Welwood v. Cypress Creek Estates, Inc.*, 205 S.W.3d 722, 729 (Tex. App. 2006) ("Other cases indicate that disclaimers may apply to subsequent purchasers."); *Heritage Res., Inc. v. Caterpillar Fin. Servs. Corp.*, 774 N.W.2d 332, 345 (Mich. Ct. App. 2009); *Theos & Sons, Inc. v. Mack Trucks, Inc.*, 1999 WL 38393 (Mass. App. Ct. 1999); *LeCates v. Hertrich Pontiac Buick Co.*, 515 A.2d 163, 166 (Del. Super. Ct. 1986); *Gen. Motors Corp. v. Halco Instruments, Inc.*, 185 S.E.2d 619, 622 (Ga. Ct. App. 1971).

400.2-725(2); Tex. Bus. & Com. Code § 2.725(2). Thus, the limitations period for implied warranty claims begins to run whether the vehicle is delivered to the plaintiff, and cannot be extended by any discovery period.[29]

In general, Texas and Missouri plaintiffs' implied warranty claims are time-barred if they purchased their vehicles before March 14, 2010. While filing a class action can, in certain circumstances, toll the limitations periods for absent class members, *see Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974), the first nationwide class action relating to the Delta Ignition Switch was filed on March 14, 2014. *See Brandt v. Gen. Motors, LLC*, Case No. 2:14-cv-00079, Docket No. 1, Original Class Action Complaint (S.D. Tex. Mar. 14, 2014). If a plaintiff purchased a vehicle before March 14, 2010, the four-year limitations period expired before that plaintiff could benefit from class action tolling.

Named plaintiffs Brad Akers, Kenneth Robinson, Christopher Tinen, Patrice Witherspoon, and Gareebah Al-ghamdi all purchased their vehicles before March 14, 2010. SUF ¶ 112 (Akers bought his 2009 HHR in 2009), ¶ 132 (K. Robinson purchased his 2008 Pontiac G5 on September 7, 2008), ¶ 154 (Tinen purchased his 2010 Acadia on February 22, 2010), ¶ 162 (Witherspoon purchased her 2006 Ion in 2005), ¶ 170 (Al-ghamdi purchased her 2004 Impala on September 7, 2009). Each of their implied warranty claims is time-barred.

### 3. Various Plaintiffs' Implied Warranty Claims Are Barred By The Time And Mileage Limits In The Vehicles' Warranties.

Texas and Missouri have adopted UCC § 2-316 permitting the "Exclusion or Modification

---

[29] *Buffington v. Lewis*, 834 S.W.2d 601, 603 (Tex. App. 1992) ("actions based on breach of warranty are not subject to the discovery rule" and "a warranty action accrues when delivery occurs and must be brought within four years after accrual"); *Muss v. Mercedes-Benz of N. Am.*, 734 S.W.2d 155, 158 (Tex. App. 1987) (claim of plaintiff alleging latent defects in his vehicle accrued on the date of delivery); *Safeway Stores, Inc. v. Certainteed Corp.*, 710 S.W.2d 544, 546-48 (Tex. 1986); *Schneider v. G. Guilliams, Inc.*, 976 S.W.2d 522, 529 (Mo. Ct. App. 1998); *May v. AC & S, Inc.*, 812 F. Supp. 934, 944-45 (E.D. Mo. 1993).

of Warranties." Mo. Rev. Stat. § 400.2-316; Tex. Bus. & Com. Code § 2.316. To "exclude or modify the implied warranty of merchantability of any part of it the language must mention merchantability and in case of a writing must be conspicuous." Mo. Rev. Stat. § 400.2-316(2); Tex. Bus. & Com. Code § 2.316(b). The warranties here contain such conspicuous language, stating in bolded text that, "**Any implied warranty of merchantability or fitness for a particular purpose applicable to this vehicle is limited in duration to the duration of this written warranty.**" SUF ¶ 220. In accord with the UCC, courts across the country have enforced similar limitations of implied warranties for vehicles and other products.[30]

Nearly all the written warranties of the vehicles at issue provide that "[c]overage is for the first 3 years or 36,000 miles, whichever comes first." *Id.* ¶ 221.[31] The sole exception is Dawn Bacon's Cadillac CTS, which states that "[c]overage is for the first 4 years or 50,000 miles, whichever comes first." *Id.* ¶ 222. As the first class action relating to the Delta Ignition Switch was filed on March 14, 2014, plaintiffs' implied warranty claims are barred if they purchased their vehicles before March 14, 2011 (or in Bacon's case, 2010), or if the vehicle had more than 36,000 miles (or in Bacon's case, 50,000 miles) before March 14, 2014.

---

[30] *Deburro v. Apple, Inc.*, 2013 WL 5917665, at *7 (W.D. Tex. 2013) (enforcing one-year limit on implied warranties); *Brisson v. Ford Motor Co.*, 349 F. App'x 433, 434-35 (11th Cir. 2009) ("We also agree with the district court's ruling that plaintiffs' failure to allege that they experienced a defect within the warranty period of the three years or 36,000 miles is fatal. … Ford limited the implied warranty to the period of the express warranty, as expressly permitted by the MMWA, and plaintiffs failed to allege that a defect manifested itself or a breach occurred within that period."); *Meserole v. Sony Corp. of Am., Inc.*, 2009 WL 1403933, at *9 (S.D.N.Y. May 19, 2009) (enforcing disclaimer that stated that any implied warranty of merchantability or fitness for a particular purpose was limited to the duration of an express warranty); *Stevenson v. Mazda Motor of Am., Inc.*, 2015 WL 3487756, at *12 (D.N.J. June 2, 2015) (collecting cases).

[31] In the *Cockram* summary judgment decision, the Court suggested that the 5-year powertrain warranty might cover the ignition system. *In re Gen. Motors LLC Ignition Switch Litig.*, 202 F. Supp. 3d 362, 370 (S.D.N.Y. 2016). The warranties define what is included in powertrain coverage—which is various parts of the engine, transmission, transaxle, transfer case, and drive systems (subject to various exclusions)—and do not include the ignition system as part of the powertrain. SUF ¶ 223. Accordingly, the ignition switch is subject to the bumper-to-bumper warranty.

The vehicles of Brad Akers, Deloris Hamilton, Kenneth Robinson, Christopher Tinen, Patrice Witherspoon, Gareebah Al-ghamdi, Dawn Bacon, Dawn Fuller, Michael Graciano, and Lisa McClellan each was either more than three years old or had more than 36,000 miles in March 2014.[32] These plaintiffs' implied warranty claims are barred.

### 4. Numerous Plaintiffs' Substantial Use Of Their Vehicles Precludes Their Implied Warranty Claims.

For California plaintiffs to recover under the Song-Beverly Act, or Texas or Missouri plaintiffs to recover under the UCC, for breach of implied warranty, they must prove that their vehicles were not merchantable. Courts "have consistently held that an automobile that was driven for years without problems was merchantable and fit for its ordinary use at the time of sale." *Szymczak v. Nissan N. Am., Inc.*, 2011 WL 7095432, at *11 (S.D.N.Y. Dec. 16, 2011); *see also Skeen v. BMW of N. Am., LLC*, 2014 WL 283628, at *16 (D.N.J. Jan. 24, 2014) ("A claim for breach of implied warranty must ordinarily arise shortly after purchase—there will typically be no claim for breach of implied warranty where plaintiffs have driven their cars without problems for years."). This rule applies where plaintiffs allege that the vehicle has a latent, safety-related defect. In *Am. Suzuki Motor Corp. v. Superior Court*, plaintiffs alleged that the Suzuki Samurai had "an unacceptable risk of a deadly roll-over accident." 44 Cal. Rptr. 2d 526, 528 (Cal. App. Ct. 1995). But because "the vast majority of the Samurais sold to the putative class did what they were

---

[32] *See* SUF ¶ 117 (Akers' vehicle was originally bought in 2009; it also had 133,781 miles when repairs were conducted in mid-2014), ¶ 118 (Hamilton's vehicle was originally bought in 2000 or 2001), ¶ 130 (Hawkins' 2010 Cobalt had approximately 52,000 miles when she purchased it in July 2013), ¶ 132 (K. Robinson's 2008 Pontiac G5 was originally sold on September 7, 2008), ¶¶ 137, 143 (R. Robinson's 2010 Impala was bought used in June 2011; it had 25,000 miles at that time and over 77,000 when the recall was conducted), ¶ 154 (Tinen bought his 2010 Acadia on February 22, 2010), ¶ 162 (Witherspoon purchased her 2006 Ion in 2005), ¶¶ 169, 175 (Al-ghamdi purchased a used 2004 Impala; it had 80,000 miles in September 2009), ¶¶ 176, 181 (Bacon purchased a used 2006 Cadillac CTS; it had approximately 160,000 miles in January 2013), ¶ 187 (Fuller bought a 2008 Impala; it had over 79,000 miles in December 2011), ¶ 193 (Graciano's vehicle is a 2007 Cobalt; it had 43,991 miles in October 2011), ¶ 205 (McClellan's vehicle is a 2005 Malibu Maxx, which had approximately 60,000 to 70,000 miles in November 2010).

supposed to do for as long as they were supposed to do it, we conclude that these vehicles remained fit for their ordinary purpose." *Id.* at 531 (internal citations and quotations omitted). California courts have rejected Song-Beverly Act claims where "Plaintiffs' car operated for four years without apparent problem, easily satisfying any implied warranty that might attach as a matter of law." *Larsen v. Nissan N. Am.*, 2009 WL 1766797, at *6 (Cal. Ct. App. June 23, 2009); *see also Avedisian v. Mercedes-Benz USA, LLC*, 43 F. Supp. 3d 1071, 1079 (C.D. Cal. 2014) (vehicle was merchantable where plaintiff drove it for approximately 4.5 years and over 65,000 miles, despite peeling chrome cutting plaintiffs' hands).[33]

Courts nationwide have reached similar conclusions, rejecting implied warranty claims where vehicles operated for years or tens of thousands of miles without incident. *See*, *e.g.*, *Ford Motor Co. v. Fairley*, 398 So.2d 216, 219 (Miss. 1981) ("As to the breach of any implied warranty of merchantability, the car had been driven over two years and 26,649 miles before Fairley experienced any difficulty with it. Such service as a matter of law negates a breach of an implied warranty of merchantability of this car."); *Tellinghuisen v. Chrysler Group, LLC*, 84 U.C.C. Rep. Serv. 2d 564 (Minn. Ct. App. 2014) (vehicle was merchantable when plaintiff "drove the car for nearly 31,000 miles over the course of more than a year before the alleged defect first manifested itself"); *Suddreth v. Mercedes-Benz, LLC*, 2011 WL 5240965, at *4 (D.N.J. Oct. 31, 2011) ("It is simply not plausible that a motor vehicle could be classified as not merchantable when it has been used for its intended purpose for 4 years and 50,000 miles").[34]

---

[33] Contrast these cases with *Isip v. Mecedes-Benz USA*, 65 Cal. Rptr. 3d 695, 696 (Cal. App. Ct. 2007), where a new vehicle began exhibiting numerous problems in its first year after being driven only 3,900 miles and *Mexia v. Rinker Boat Co., Inc.*, 95 Cal. Rptr. 3d 285, 288 (Cal. App. Ct. 2009), where a boat exhibited defects after only 27 months of use.

[34] *See also Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614 (M.D.N.C. 2006) (vehicle merchantable despite ball joints needing to be replaced five years after vehicles original sale); *Lee v. Gen. Motors Corp.*, 950 F.Supp. 170, 174 (S.D. Miss. 1996) (no merchantability claim where vehicles had been

Court also reject implied warranty claims where owners continue to drive their vehicles even after learning of alleged defects. *See, e.g.*, *Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 588 (7th Cir. 2001) ("Although Priebe maintains that he 'lost faith' in the Acura and believed it was 'dangerous to drive,' his actions belie these vague claims. Priebe continued to drive the car; indeed, at the time of trial, Priebe had driven the Acura more than 30,000 miles. Priebe's claim for breach of warranty fails."); *Glass v. BMW of N. Am., LLC*, 2011 WL 6887721, at *15 (D.N.J. Dec. 29, 2011); *Adams v. Am. Suzuki Motor Corp.*, 2011 WL 1304766, at *1, 5 (N.J. Super. Ct. App. Div. 2011).

Many named plaintiffs drove their vehicles for years and tens of thousands of miles without incident:

- Chimen Basseri bought her used 2011 HHR in March 2013 and had driven it over 13,000 miles prior to its recall repair. SUF ¶¶ 29, 34. She had driven another 13,000 miles by November 2017, operating her vehicle for over four years. *Id.* ¶ 34. She has never experienced a shut off, loss of power steering, or other similar incident. *Id.* ¶ 32.

- Kellie Cereceres bought a new 2012 Traverse that had over 32,000 miles when the recall repair was performed. *Id.* ¶ 41. She continues to drive the vehicle, which had over 80,000 miles in December 2017. *Id.* She claims that on a single occasion the airbag light briefly illuminated before turning off again, but she did not take her vehicle to be serviced afterwards and has no evidence that this illumination was related to any defect. *Id.* ¶ 39.

- Santiago Orosco bought a new 2010 Camaro in August 2009. *Id.* ¶ 43. He drove the vehicle 145,000 miles and used it for seven years before selling it in August 2016. *Id.* ¶ 49. While he claims his daughter told him she experienced a single shut off-incident in the vehicle, this is inadmissible hearsay and there is no evidence that any defect caused this single shutoff. *Id.* ¶ 47. Orosco himself never experienced an incident in the 2010 Camaro. *Id.*

- David Padilla purchased a new 2010 Cobalt in April 2010, which he drove over 20,000 miles and used for years before he gave the vehicle to his son to trade in. *Id.* ¶¶ 51, 54, 57.

driven for five years and 90,000 miles without manifesting their alleged defects); *Williams v. Kia Motors Am., Inc.*, 2005 WL 2649152, at *4 (E.D. Mich. Oct. 14, 2005); *Tague v. Autobarn Motors, Ltd.*, 914 N.E.2d 710, 722 (Ill. App. Ct. 2009); *Sharp v. Tom Wood East, Inc.*, 822 N.E.2d 173, 175 (Ind. Ct. App. 2004); *see also Suminski v. Maine Appliance Warehouse, Inc.*, 602 A.2d 1173 (Me. 1992).

While Padilla claims that sometimes he had difficulty turning the key to start the vehicle, the Cobalt did not shut off while moving. *Id.* ¶ 54.

- Michelle Thomas purchased a used 2005 Lacrosse in December 2010. *Id.* ¶ 59. She drove the vehicle approximately 100,000 miles over the course of four-and-a-half years before she claimed that the ignition switch rotated out of position. *Id.* ¶¶ 61-63.

- Brad Akers bought his 2009 HHR in 2009, continues to drive it, and had put 177,777 miles on the vehicles as of November 2016. *Id.* ¶¶ 112, 117. He claims that a single time in 2013 the vehicle lost power, but does not know the key's position and has no evidence that the power loss was caused by any defect. *Id.* ¶ 115.

- Deloris Hamilton bought a 2000 Alero in February 2012, which she drove for approximately 12,000 to 13,000 miles over a two-and-a-half year period before giving it to her daughter. *Id.* ¶¶ 119, 124. She never experienced a moving stall, loss of power steering, or other similar incident. *Id.* ¶ 122.

- Mario Stefano bought a used 2011 Camaro in May 2013, which he drove more than 25,000 miles as of November 2016 and continues to use. *Id.* ¶ 145, 151. He experienced only a single event where he lost power, and believes this was caused by a faulty battery in the key fob rather than being related to the ignition. *Id.* ¶ 150. Stefano continues to drive his Camaro and regularly displays it at cars shows. *Id.* ¶ 152.

- Patrice Witherspoon bought a new 2006 Ion in 2005, and had driven it approximately 175,000 to 180,000 miles as of May 2017. *Id.* ¶¶ 162, 166. She claims to have experienced shut offs while driving, but on each occasion the ignition was in the "run" position, and thus the incidents were not related to the recall condition. *Id.* ¶ 165.

- Dawn Fuller purchased a used 2008 Impala in December 2011, which she has driven over 95,000 miles and continues to drive of September 2017. *Id.* ¶¶ 183, 187. She had never experienced a moving stall, loss of power steering, or similar incident. *Id.* ¶ 185.

- Michael Graciano bought a used 2007 Cobalt in October 2011, which he and his family drove for almost 60,000 miles as of December 2016 and which they used regularly until April 2017. *Id.* ¶¶ 189, 193, 192. While his then-fiancee's daughter alleged she experienced incidents, such claims are inadmissible hearsay, and Graciano himself does not claim to have had problems with the vehicle. *Id.* ¶ 191.

Summary judgment should be granted against the California Song-Beverly Act or UCC breach of implied warranty made by each of these plaintiffs.

### D.    All Plaintiffs' Unjust Enrichment Claims Are Barred.

None of the named plaintiffs has a valid unjust enrichment claim. The Court already held that "the unjust enrichment claims of all the Texas Plaintiffs fall short because they have an

adequate remedy at law." *FACC MTD Opinion*, 257 F. Supp. 3d at 455.  Judgment should be entered on that ground against all Texas plaintiffs' unjust enrichment claims in the 5ACC.  All of the California and Missouri plaintiffs' unjust enrichment claims fail for the same reason, and various plaintiff's claims also fail because their vehicles were covered by warranties.

### 1.    California Law Precludes Plaintiffs' Unjust Enrichment Claims.

As with Texas, California holds that an unjust enrichment or restitution claim cannot be brought where a plaintiff has adequate legal remedies:

> Because we have found that plaintiffs' remedies at law are adequate (counts alleged under the CLRA, the UCL, and common law fraud), a claim for restitution, alleging that [the defendant] has been unjustly enriched by its fraud, is unnecessary.  This conclusion follows from the general principle of equity that equitable relief (such as restitution) will not be given when the plaintiff's remedies at law are adequate.

*Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 260 (2011); *see also Ramona Manor Convalescent Hosp. v. Care Enters.*, 177 Cal. App. 3d 1120, 1140 (1986) (explaining that there is "no action for restitution . . . in cases of wrongful dispossession of land because the remedy in tort damages is adequate").[35]  All named California plaintiffs seek damages as a legal remedy under the CLRA, fraudulent concealment, and the Song-Beverly Act, and thus their unjust enrichment claims are barred.[36]

---

[35] *See also Stanislaus Food Prods. Co. v. USS-POSCO Indus.*, 2010 WL 3521979, at *32 (E.D. Cal. Sept. 3, 2010) (dismissing unjust enrichment claim where plaintiff "alleges numerous statutory violations which protect it from the same alleged harm as contained in plaintiff's unjust enrichment claim"); *Goodrich & Pennington Mortgage Fund, Inc. v. Chase Home Fin., LLC*, 2008 WL 11338041, at *4 (S.D. Cal. Apr. 22, 2008) ("However, unjust enrichment is an equitable rather than a legal claim, and it is a basic doctrine of equity jurisprudence that courts of equity should not act when the moving party has an adequate remedy at law.") (internal quotation marks and modifications omitted); *Zapata Fonseca v. Goya Foods Inc.*, 2016 WL 4698942, at *7 (N.D. Cal. Sept. 8, 2016).

[36] Whether plaintiffs can prevail on any of these claims is irrelevant; the existence of adequate remedies at law bars any unjust enrichment claims.  *See, e.g., Tudor Dev. Group, Inc. v. U.S. Fidelity & Guar. Co.*, 968 F.2d 357, 364 (3d Cir. 1992); *Fernandes v. Havkin*, 731 F. Supp. 2d 103, 114 (D. Mass. 2010); *Season Comfort Corp. v. Ben A. Borenstein Co.*, 655 N.E.2d 1065, 1071 (Ill. App. Ct. 1995).

Independently, the Court previously held that California plaintiffs could not bring claims where "their cars were covered by warranties at the time of purchase." *TACC MTD Opinion*, 2016 WL 3920353, at *23. The Court previously dismissed David Padilla's unjust enrichment claim on this ground. *Id.* at *23, 42 (Exhibit A). Chimen Basseri, Kellie Cereceres, and Santiago Orosco also purchased vehicles covered by warranties, and summary judgment should be granted against each of their unjust enrichment claims. SUF ¶¶ 29, 36, 43.

### 2. Missouri Law Precludes Plaintiffs' Unjust Enrichment Claims.

Like Texas and California, Missouri bars the equitable remedy of unjust enrichment where an adequate remedy at law exists. *Bennett v. Crane* rejected unjust enrichment claims because of "the unmistakable barrier that an adequate remedy at law exists . . . . If equity alone were left to impose a remedy because there is no remedy at law, then we would be on safe ground, and only then." 289 S.W. 26, 28 (Mo. Ct. App. 1926). Courts follow *Bennett* in holding that Missouri does not allow recovery for unjust enrichment where a plaintiff has an adequate legal remedy. *E.g.*, *Muehlbauer v. Gen. Motors Corp.*, 2009 WL 874511, at *6 (N.D. Ill. Mar. 31, 2009); *Martin v. Ford Motor Co.*, 292 F.R.D. 252, 280 (E.D. Pa. July 2, 2013); *Thompson v. Bayer Corp.*, 2009 WL 362982, at *6 (E.D. Ark. 2009). Because all of the Missouri plaintiffs have adequate legal remedies, their unjust enrichment claims are barred.

Separately, the Court previously held that Missouri plaintiffs' claims are barred where they "allege[] the existence of an express warranty . . ., and [their] unjust enrichment claims arise out of the same allegations." *TACC MTD Opinion*, 2016 WL 3920353, at *35. Because Brad Akers, Kenneth Robinson, Mario Stefano, Christopher Tinen, and Patrice Witherspoon all received express warranties with their vehicles, summary judgment should be granted against their unjust enrichment claims. SUF ¶¶ 112 (Akers), 132 (K. Robinson), 145 (Stefano), 155 (Tinen), 162 (Witherspoon).

### E. Summary Judgment Should Be Granted Against Claims Of Plaintiffs Who Purchased Old GM Or Used Vehicles.

#### 1. New GM Had No Duty To Disclose To Old GM Vehicle Purchasers.

##### a. New GM Did Not Have A Duty Under California Law.

New GM can be liable for an omission under the UCL, CLA, or fraudulent concealment only if New GM had a duty to disclose. *TACC MTD Opinion*, 2016 WL 3920353, at *20-22. Under California law, unless the parties are in a fiduciary relationship, the "circumstances in which nondisclosure may be actionable presupposes the existence of some other relationship between the plaintiff and defendant in which a duty to disclose can arise." *LiMandri v. Judkins*, 60 Cal. Rptr. 2d 539, 543 (Cal. Ct. App. 1997). "As a matter of common sense, such a relationship can only come into being as a result of some sort of *transaction* between the parties." *Id.* (emphasis in original) (holding that because there was no transaction giving rise to a relationship, defendant could not be liable for nondisclosure).[37]

Under California law, New GM did not have a duty to disclose to Michelle Thomas, who bought a used 2005 Lacrosse in December 2010. Thomas has no argument that New GM owed her a fiduciary duty. Nor was there any transaction between Thomas and New GM that could create a relationship giving rise to a duty to disclose. Thomas bought her used Old GM vehicle from an independent dealership, and did not enter into any transaction with New GM. SUF ¶ 59.

---

[37] *See also Hoffman v. 162 North Wolfe LLC*, 175 Cal Rptr. 3d 820, 827-30 (Cal. Ct. App. 2014) (defendant could not be liable for omission in absence of "circumstances that constitute a transactional relationship between the parties" and collecting "several cases [that] have rejected fraud claims founded on nondisclosure where there was an absence of a relationship between the plaintiff and the defendant"); *Rogozienski v. Allen*, 2007 WL 867773, at *9 (Cal. Ct. App. Mar. 23, 2007) ("There was no transaction between [plaintiff] and [defendant] that established a relationship such that [defendant] had a duty to disclose the fact of the gift" that defendant made to a temporary judge presiding over plaintiff's divorce); *Fulford v. Logitech*, 2009 WL 837639, at *1 (N.D. Cal. Mar. 26, 2009) (dismissing fraud claims where plaintiff "has neither argued nor alleged that [defendant] owed him any fiduciary duty, nor has [plaintiff] argued or alleged that he entered into any transaction with [defendant]" but instead purchased plaintiff's product from a friend).

Without any transactional relationship, New GM had no duty to disclose information to Thomas and her omission claims fail.

### b. New GM Did Not Have A Duty Under Texas Law.

The lack of any transaction between New GM and plaintiffs who purchased Old GM vehicles similarly dooms Texas plaintiffs' omission-based claims under the Texas DTPA. Such claims require a duty to disclose.[38] Like California, Texas holds that a duty to disclose arises only if the parties transact. For example, in *Steele v. Goddard*, a jury found Robert, an advisor to a home seller, liable under the DTPA for failing to disclose that the home had termites. 2013 WL 3013671, at *3-4 (Tex. App. June 13, 2013). The Texas appellate court reversed, holding that "with respect to section 17.46(b)(24), the nondisclosure portion of the DTPA, we fail to see how Robert had any duty to disclose any information to the Goddards considering he was not the seller of the house." *Id.* at *7; *see also Marshall v. Kusch*, 84 S.W.3d 781, 786 (Tex. App. 2002) ("Marshall sold the ranch to Gilmore-Barclay. Any duty to disclose he had was to Gilmore-Barclay. Marshall was not the seller nor was he involved in the sales transaction with Kusch. Accordingly, Marshall had no duty to disclose anything to Kusch."); *Myre v. Meletio*, 307 S.W.3d 839, 844 (Tex. App. 2010) ("As for 8 of the 9 Homeowners, Myre not only had no relationship with them, he had no contact at all. Therefore, there is no basis for the imposition of a duty to disclose as between Myre and these 8 Homeowners. Because there is no duty to disclose, Myre cannot be liable for fraud.").

---

[38] *E.g.*, *Terry v. Mercedes-Benz, USA, LLC*, 2007 WL 2045231, at *5 (Tex. App. 2007) ("Because we conclude as a matter of law that appellees had no duty to disclose the information regarding the bumper, the trial court did not err in granting the no-evidence summary judgment on appellants' common-law fraud, DTPA nondiscloure, and civil theft claims."); *Wilson v. John Daugherty Realtors, Inc.*, 981 S.W.2d 723, 726 (Tex. App. 1998) (affirming summary judgment for defendant because it did not have "a duty to tell [plaintiff] about the [defective] water heater").

This rule bars the omissions-based DTPA claims of the Texas plaintiffs, each of whom purchased used Old GM vehicles. Gareebah Al-ghamdi bought a used 2004 Impala from an Auto Expo used car lot; Dawn Bacon bought a used 2006 Cadillac CTS from her former stepfather; Dawn Fuller bought a used 2008 Impala from a Kia dealership; Michael Graciano bought a used 2007 Cobalt from a Chrysler dealership; and Lisa McClellan bought a used 2005 Malibu Maxx from La Fiesta Auto Sales. SUF ¶¶ 170 (Al-ghamdi), 177 (Bacon), 183 (Fuller), 189 (Graciano), 199 (McClellan). None of these plaintiffs engaged in any transaction with New GM, and thus New GM had no duty to disclose information to them.

### c. New GM Did Not Have A Duty Under Missouri Law.

Like California and Texas, Missouri fraudulent concealment and MMPA claims based on omissions require a duty to disclose. *See DePeralta v. Dlorah, Inc.*, 2012 WL 4092191, at *7 (W.D. Mo. Sept. 17, 2012) (MMPA omission claims); *TACC MTD Opinion*, 2016 WL 3920353, at *34 (fraudulent concealment). And similar to those two states, Missouri law also holds that only parties to a transaction have a duty to disclose. *E.g.*, *Bohac v. Walsh*, 223 S.W.3d 858, 865 (Mo. Ct. App. 2007) (explaining that "one party to a business transaction has a duty to disclose" under certain circumstances); *see also* Mo. Rev. Stat. § 407.020 (under MMPA, only omissions made "in connection with the sale or advertisement of any merchandise" are actionable).

Deloris Hamilton bought a used 2000 Oldsmobile Alero from 94 Auto in 2012. SUF ¶ 119. As she did not engage in any transaction with New GM, summary judgment should be granted against her omissions claims.

### 2. California And Texas Do Not Recognize An Asset Purchaser's Duty to Warn.

As described in Section III.E.1, there can be a duty to disclose under the bellwether states only if the parties engaged in a transaction giving rise to a relationship, which does not exist

between New GM and purchasers of Old GM vehicles. Independently, the claims of California and Texas Old GM vehicle purchasers also fail because neither state imposes a duty at all on asset purchasers such as New GM to warn consumers who purchased products of the asset seller.

### a. California Does Not Recognize An Asset Purchaser's Duty To Warn.

California courts have repeatedly declined to hold that an asset purchaser has a duty to warn the asset seller's customers of defects. *E.g.*, *Burroughs v. Precision Airmotive Corp.*, 93 Cal. Rptr. 2d 124, 136 (Cal. App. Ct. 2000) ("California has not adopted an independent duty to warn theory of liability."); *Chularee v. Cookson Co.*, 2014 WL 726778, at *7 (Cal. App. Ct. Feb. 26, 2014) ("California has not adopted an independent duty of a successor to warn of defects in products manufactured by a predecessor."); *Garcia v. Asphalt Equip. & Serv. Co.*, 2005 WL 488569, at *5 (Cal. App. Ct. Mar. 3, 2005) ("Although some other jurisdictions have recognized such an independent duty to warn, California has not adopted it. We decline the opportunity to do so here.") (citations omitted). Notably, all these cases were decided after *Gee v. Tenneco, Inc.*, which in dicta suggested that California might recognize such a duty but which held that none existed on that case's facts. 615 F.2d 857, 865-66 (9th Cir. 1980). That multiple California appellate cases have refused to adopt an asset purchaser's duty to warn confirms that *Gee's* dicta incorrectly predicted California law. Finally, even if California were to recognize such a duty, *LiMandri* and its progeny hold that an asset purchaser would not have any duty to disclose in the absence of a transaction with the particular customer of the asset seller. *See* Section III.E.1.a.

Therefore, New GM did not have a duty to disclose to Michelle Thomas, who bought a used Old GM 2005 Lacrosse in December 2010, and summary judgment should be granted against her omissions-based consumer protection and fraudulent concealment claims.

### b.    Texas Does Not Recognize An Asset Purchaser's Duty To Warn.

Texas does not recognize post-sale duty claims against an asset purchaser like New GM that did not manufacture the vehicle. *Jones v. SIG Arms, Inc.*, 2001 WL 1617187, at *3-4 (Tex. App. Dec. 19, 2001) (granting summary judgment on "post sale duty to warn" claims against alleged successor corporation where the defendant "was not even in existence at the time the [product] was manufactured and distributed" and thus "did not manufacture, design, market, sell or distribute the [product]").   Under Texas law, a non-manufacturer "owe[s] no duty" at all to consumers of a product "it did not design, manufacture or sell," and cannot be liable because it "was not involved in the production, marketing or distribution" of the allegedly defective product. *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 615-16 (Tex. 1996); *see also Gaulding v. Celotex Corp.*, 772 S.W.2d 66, 68 (Tex. 1989) ("A fundamental principle of traditional products liability law is that the plaintiff must prove that the defendants supplied the product which caused the injury."); *Olivas v. Am. Home Prods. Corp.*, 2002 WL 32620351, at *3 (W.D. Tex. Oct. 18, 2002) (plaintiffs are "barred from asserting a claim of negligence and strict liability against a defendant who did not supply the injury-producing product") (citing *Barajas*, 927 S.W.2d at 616); *Block v. Wyeth, Inc*., 2003 WL 203067, at *1-2 (N.D. Tex. Jan. 28, 2003) (conducting "a brief Texas two-step analysis: (1) because [the defendant] did not design, manufacture, or sell the product, it owed no legal duty to plaintiff; and (2) because it owed no legal duty, plaintiff's tort claim fail[s].").

As Texas does not impose any duty to warn on an asset purchaser like New GM that was not involved in designing, manufacturing, or selling Old GM vehicles, summary judgment should be granted against the omissions-based DTPA claims of the Texas plaintiffs, each of whom is basing claims on an Old GM vehicle. *See* Section III.E.1.b.

### 3. Used Old GM Purchasers Cannot Bring Implied Warranty Claims Against New GM, Which Was Not A "Seller" Of The Vehicles.

New GM cannot be liable for breach of implied warranty for Old GM vehicles because it was not the "seller" of those automobiles. Under the Missouri and Texas UCC, an implied warranty applies only to "the seller." Mo. Rev. Stat. § 400.2-314(1); Tex. Bus. & Com. Code § 2.314(1). Similarly, the Song-Beverly Act provides that goods "shall be accompanied by the manufacturer's and the retail seller's implied warranty." Cal. Civ. Code § 1792. As case law confirms, "[i]mplied warranties are given only by the actual sellers of products, not by others who have played some other role in the distribution of the product." *Arceneaux v. Lykes Bros. S.S. Co., Inc.*, 890 S.W.2d 191 n. 2 (Tex. App. 1994); *Allgood v. R.J. Reynolds Tobacco Co.*, 80 F.3d 168, 170-71 (5th Cir. 196) ("Even where a party has promoted a product, and made promises regarding that product, if the party is not the actual seller a claim for breach of warranty will not lie. Plaintiffs have provided no evidence of manufacture or sale on the part of" defendants, and thus summary judgment was properly granted to them.).

New GM did not sell, manufacture, or distribute Old GM vehicles. As New GM was not the "seller" or "manufacturer" of Old GM vehicles, the implied warranty claims of all plaintiffs who purchased Old GM vehicles are barred. Indeed, such claims are not "Independent Claims" and thus are precluded under the Sale Order. Independent claims "against New GM must [be] 'based solely on New GM's own, independent, post-Closing acts or conduct.'" *In re Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 874778, at *4 (S.D.N.Y. Mar. 3, 2016). Any implied warranty for an Old GM vehicle is based on Old GM selling and manufacturing the vehicle and thus is not based solely on New GM's conduct.

Summary judgment should be awarded against the implied warranty claims of Old GM vehicle purchasers Orosco Santiago, Michelle Thomas, Brad Akers, Deloris Hamilton, Gareebah

Al-ghamdi, Dawn Bacon, Dawn Fuller, Michael Graciano, and Lisa McClellan.

### 4. The California Song-Beverly Act Does Not Apply To The Purchase Of Any Used Vehicle.

The Song-Beverly Act does not impose an implied warranty of merchantability on a manufacturer for the sale of used goods. The Act provides that "every sale of consumer goods … shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable." Cal. Civ. Code § 1792. "Consumer goods" are defined as "any *new* product or part that is used, bought, or leased for use primarily for personal, family, or household purposes." Cal. Civ. Code. § 1791(a) (emphasis added). Thus, "unless new consumer goods were bought, the Act does not protect a consumer." *Dagher v. Ford Motor Co.*, 238 Cal. App. 4th 905, 918 (2015). Summary judgment should be granted against the Song-Beverly Act claims of Chimen Basseri and Michelle Thomas, who purchased used vehicles.

### 5. Used Vehicle Purchasers Cannot Recover On Their Unjust Enrichment Claims Because They Did Not Provide Any Benefit To New GM.

Unjust enrichment under California and Missouri law requires that the suing plaintiff have benefitted the defendant. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015); *Hoffmeister v. Kranawetter*, 407 S.W.3d 59, 61 (Mo. Ct. App. 2013). Used vehicle purchasers have not provided any benefit to New GM. Instead, any price they paid went to the seller, and New GM did not receive any direct or indirect benefit from the purchase of a used vehicle. The Court previously declined to dismiss such claims "because it may be proved at a later stage that purchasing a used New GM car conferred a sufficient benefit on New GM," but plaintiffs have no such proof. *TACC MTD Opinion*, 2016 WL 3920353, at *35. Other courts have rejected unjust enrichment claims brought by used vehicle purchasers for lack of any benefit to the manufacturer. *E.g.*, *Daigle v. Ford Motor Co.*, 2012 WL 3113854, at *5 (D. Minn. July 31, 2012) (if "the Class

Vehicle had been purchased used, no benefit would have been conferred to Ford"); *In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, 2011 WL 601279, at *6 (D.N.J. Feb. 16, 2011) (entering summary judgment against plaintiff where "[p]laintiffs have not presented evidence or explained how [a plaintiff's] purchase of a used vehicle conferred a benefit upon Ford.").[39] This Court should reach the same conclusion and grant summary judgment against the unjust enrichment claims of used car purchasers Chimen Basseri, Michelle Thomas, Deloris Hamilton, Cynthia Hawkins, Ronald Robinson, and Mario Stefano.

### F. Texas Plaintiffs Cannot Prove Unconscionability Under the Texas DTPA.

#### 1. New GM's Mitigation By Recalling And Repairing The Vehicles Precludes DTPA Unconscionability Claims.

Acts cannot be unconscionable under the Texas DTPA if a defendant mitigates the acts' harm. As this Court has previously held, to "prove an unconscionable action or course of action [under the Texas DTPA], a plaintiff must show that the defendant took advantage of his lack of knowledge and the resulting unfairness was glaringly noticeable, flagrant, complete ***and unmitigated***." *FACC MTD Opinion*, 257 F. Supp. 3d at 449 (emphasis added).

*State Farm Lloyds v. Nicolau* illustrates how mitigation defeats a DTPA claim based on unconscionability. 951 S.W.2d 444 (Tex. 1997). In *Nicolau*, a water leak damaged the plaintiff's home. 951 S.W.2d 444, 446-47 (Tex. 1997). The plaintiff filed a claim with the defendant home insurer for $102,200. *Id.* at 447. The insurer denied the claim and offered to pay only $1,820.05 for expenses incurred in locating and repairing the leak. *Id.* at 447. Plaintiff prevailed at trial on

---

[39]  *See also Schmidt v. Ford Motor Co.*, 972 F. Supp. 2d 712, 721-22 (E.D. Pa. 2013) (rejecting unjust enrichment claims where plaintiffs "fail to show any way in which their money transferred from their own pockets to Defendant's"); *Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 551-52 (D. Md. 2011) ("Ford points out that these three Plaintiffs [who purchased used vehicles] have not provided any evidence that suggests Ford received a benefit when they bought their vehicles.").

DTPA unconscionability and other claims. *Id.* at 447-48. On appeal the Texas Supreme Court found that "there is some evidence that State Farm denied the claim without a reasonable basis or without attempting to objectively determine whether its liability had become reasonably clear." *Id.* at 448. Nevertheless, the Texas Supreme Court reversed the DTPA unconscionability jury verdict, relying on the fact that "[a]lthough State Farm refused to pay the Nicolaus' claim for foundation repairs, it did pay for the plumbing repairs and investigative costs after the leak was discovered." *Id.* at 451.

New GM did not just mitigate plaintiffs' claimed injuries here; it paid to eliminate them at no cost to plaintiffs. New GM's affirmative conduct to address the defects is far greater than the insurer's in *Nicolau*, and that decision's rejection of the DTPA unconscionability claim applies all the more. In *Nicolau*, the insurer offered to pay less than 2% of the plaintiff's cost to repair his house, and refused to pay for the foundation repairs until found liable after a jury verdict, yet the Texas Supreme Court still held that the insurer's actions were not unconscionable. By contrast, here New GM announced recalls before litigation began that paid 100% of the costs of repairs. New GM's conduct cannot be unconscionable under Texas DTPA law, and all the Texas plaintiffs' unconscionability DTPA claims should be rejected.

## 2. Various Plaintiffs Cannot Show The Lack Of Sophistication Required To Assert A DTPA Unconscionability Claims.

The DTPA's unconscionability prong requires proof that the defendant took "advantage of the [plaintiff's] lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code § 17.45(5); *see also Peltier Enters., Inc. v. Hilton*, 51 S.W.3d 616, 623 (Tex. App. 2000). Texas courts reject unconscionability DTPA claims where the plaintiff is sophisticated. For example, in *Diais v. Land Rover Dallas, L.P.*, the plaintiff bought a vehicle with a defective engine that would cause the vehicle not to move, make knocking noises,

and not accelerate over 30 miles per hour.  2016 WL 1298392, at *1-2 (Tex. App. Apr. 4, 2016).

When the dealership would not refund his purchase price, the plaintiff sued alleging DTPA

unconscionability.  *Id.* at *2.  The Texas appellate court rejected this claim based on plaintiff being

a "sophisticated businessman" who had negotiated and purchased several new cars in the past and

had talked with family members in the car business about the vehicle.  *Id.* at *5.  "[T]here is no

evidence supporting Diais's claim that he lacked knowledge, ability, or experience to which Land

Rover took advantage of to a grossly unfair degree."  *Id.* at *5; *see also Peltier*, 51 S.W.3d at 624

(in case involving claims based on dealerships charging buyers higher interest rates for loans than

what the dealership pays, holding that a "plaintiff with knowledge about indirect lending or with

years of experience in the car-selling business would not be able to show that Peltier did anything

that was 'unconscionable.'").

        As in *Diais*, plaintiffs Michael Graciano and Gareebah Al-ghamdi cannot show the lack of

sophistication necessary for an unconscionability claim.  Graciano took courses in automotive

maintenance, performs automotive work on his own vehicle, and can work on "[a]nything from

brakes to power steering pump, alternatives to serpentine valve, heater core, radiator, head gasket."

SUF ¶ 194.  He owned several vehicles before buying his 2007 Cobalt, including a MY 05 Jeep

Cherokee, a MY 62 Chevy Impala Super Sport, a MY 07 Ford Expedition, a Mazda MX-6, and "a

couple Chevy trucks."  *Id*. ¶ 195.  He also understood that vehicles could be recalled for defects

and that this was not a rare occurrence.  *Id*. ¶ 196.

        When Al-ghamdi shopped for her 2004 Impala, she had her stepfather with her who "is

very knowledgeable on vehicles, and he can fix anything."  *Id*. ¶ 171.  Her stepfather test drove

the Impala and negotiated its price.  *Id*.  Thus, similar to Diais, Al-ghamdi relied on relatives with

knowledge about vehicles in making her purchase.  Moreover, Al-ghamdi understood—and

believes it is common knowledge—that vehicles can be recalled for defects. *Id.*¶ 174. Accordingly, summary judgment should be awarded against the DTPA unconscionability claims of Graciano and Al-ghamdi.

### G. Multiple Grounds Bar Plaintiffs' Bankruptcy-Claim-Fraud Counts.

Plaintiffs' attempts to avoid the Sale Order and successor liability restrictions by alleging New GM had a duty to disclose to allow them to file bankruptcy claims against Old GM is both unprecedented and meritless. New GM has not located any case law holding that a non-debtor such as New GM has any duty to disclose information that a potential creditor might use to file a claim against a separate company such as Old GM. Moreover, the authorities and legal principles previously described bar the Bankruptcy-Claim-Fraud counts.

### 1. New GM Had No Duty To Purchasers Of Old GM Vehicles.

New GM had no duty to Old GM purchasers for three separate reasons, each of which is sufficient to defeat the Bankruptcy-Claim-Fraud plaintiffs' counts. *First*, plaintiffs' fraudulent concealment requires a duty to disclose under the law of each bellwether state. *See* Section III.E; *TACC MTD Opinion*, 2016 WL 3920353, at *20-22, 34 (California and Missouri law); *Terry v. Mercedes-Benz, USA, LLC*, 2007 WL 2045231, at *5 (Tex. App. 2007). That duty to disclose can arise only where the plaintiff and defendant have engaged in a transaction. *See* Section III.E; *LiMandri v. Judkins*, 60 Cal. Rptr. 2d 539, 543 (Cal. Ct. App. 1997); *Marshall v. Kusch*, 84 S.W.3d 781, 786 (Tex. App. 2002); *Bohac v. Walsh*, 223 S.W.3d 858, 865 (Mo. Ct. App. 2007).

New GM did not engage in any transaction with the Bankruptcy-Claim-Fraud plaintiffs, and thus did not have a duty to disclose as required for a fraudulent omissions claim. Each of the Bankruptcy-Claim-Fraud plaintiffs had purchased vehicles manufactured by Old GM before New

GM existed.[40]  New GM did not sell those Old GM vehicles either to the plaintiffs or dealers, did not manufacture those vehicles, and was in no other way involved in the transactions by which the Bankruptcy-Claim-Fraud plaintiffs bought their Old GM vehicles.  Without a transaction, New GM had no duty to disclose to those plaintiffs.

*Second*, Texas requires proof not only of a transaction, but a *direct* transaction between the parties.  The Court has held that fraudulent concealment claims under Texas law require "proof of a transaction between the parties of some sort (even arm's length) before a duty to disclose will arise" and dismissed all Texas fraudulent concealment claims because "none of the Texas Plaintiffs interacted with New GM directly."  *FACC MTD Opinion*, 257 F. Supp. at 453-54.  That same rationale applies to the Texas Bankruptcy-Claim-Fraud plaintiffs, who likewise had no transaction with New GM, much less a direct transaction or interaction, and thus cannot bring any fraudulent concealment counts, including those based on bankruptcy claims.

*Third*, a plaintiff can recover on a fraudulent concealment claim from an asset purchaser such as New GM (rather than the original manufacturer Old GM) only if the asset purchaser also had a duty to warn, in addition to a duty to disclose.  *See* Section III.E.2.  Neither California nor Texas recognizes an asset purchaser's duty to warn.  *See* Section III.E.2; *Burroughs v. Precision Airmotive Corp.*, 93 Cal. Rptr. 2d 124, 136 (Cal. App. Ct. 2000); *Jones v. SIG Arms, Inc.*, 2001 WL 1617187, at *3-4 (Tex. App. Dec. 19, 2001).  Thus, the California and Texas Bankruptcy-Claim-Fraud plaintiffs' count is barred as a matter of law.

---

[40]  Brad Akers alleges that he is a Bankruptcy-Claim-Fraud plaintiff even though he purchased his vehicle in November 2009, after the July 10, 2009 Sale Date.  5ACC ¶ 163; SUF ¶ 112.  Accordingly, as explained in Section III.G.2, Akers would not have been able to file a claim in Old GM's bankruptcy.

### 2. The Bankruptcy-Claim-Fraud Plaintiffs' Count Fails For Additional Reasons.

Independently, judgment should be granted against the Bankruptcy-Claim-Fraud plaintiffs for reasons other than lack of duty. *First*, "Plaintiffs who purchased cars from Old GM suffered an injury before New GM even existed and cannot now recover from New GM for those injuries." *FACC MTD Opinion*, 257 F. Supp. at 401. This holding applies equally to the Bankruptcy-Claim-Fraud plaintiffs, who all purchased Old GM vehicles before New GM existed. SUF ¶¶ 66 (Barker), 72 (Benton), 77 (Brown), 83 (Hardin), 89 (Malaga), 94 (Mattos), 100 (Ramirez), 106 (Rukeyser), 207 (Henry), 211 (Simmons).

Bankruptcy law confirms that New GM could not have caused these plaintiffs' injuries. "A claim exists only if before the filing of the bankruptcy petition, the relationship between the debtor and the creditor contained all of the elements necessary to give rise to a legal obligation— 'a right to payment'—under the relevant non-bankruptcy law." *In re Chateaugay Corp.*, 53 F.3d 478, 497 (2d Cir. 1995); *see also In re Motors Liquidation Co.*, 829 F.3d 135, 156 (2d Cir. 2016) ("A claim is (1) a right to payment (2) that arose before the filing of the petition."). As fraud requires injury and damages, plaintiffs could only have had a bankruptcy claim for fraud if they were injured and damaged *before* Old GM filed its Chapter 11 petition, which was before New GM purchased any of Old GM's assets. New GM could not have caused the supposed economic losses forming the basis of plaintiffs' Bankruptcy-Claim-Fraud counts.

*Second*, fraud claims require damages. *See* Section I.D. The Bankruptcy-Claim-Fraud plaintiffs' damages are based on the same benefit-of-the-bargain theory other plaintiffs use. *TACC MTD Opinion*, 2016 WL 3920353, at *7, 10. The Court has granted summary judgment against plaintiffs' benefit-of-the-bargain damages claims, *BotB SJ Opinion*, 2019 WL 3564968, at *1, 13, 17, and that same holding applies to the Bankruptcy-Claim-Fraud plaintiffs. Nor can plaintiffs

recover "lost time" for recall repairs, as the recalls occurred after the time for filing a claim.

*Third*, fraud claims—including the Bankruptcy-Claim-Fraud counts—require proof of reliance and causation, which various plaintiffs cannot show. *See* Section III.A. Patricia Barker and Esperanza Ramirez were not even aware that Old GM had filed for Chapter 11 in 2009, and thus would not have known to file claims in Old GM's bankruptcy even if the defects had been disclosed. SUF ¶¶ 70, 104. Kim Brown and Winifred Mattos did not see or rely on any advertisements or materials related to their vehicles before purchasing them, and thus have no evidence that they would have learned of the defects even if they had been disclosed. SUF ¶¶ 78, 95; *see* Section III.A.2. Michael and Sylvia Benton and Javier Malaga purchased from used car dealers unaffiliated with Old GM or New GM, who likely would not have disclosed information from the manufacturer. SUF ¶¶ 72, 89; *see* Section III.A.2.

*Fourth*, without a meritorious underlying claim, the Bankruptcy-Claim-Fraud plaintiffs would not not have been able to recover on any bankruptcy claim against Old GM.[41] *See* 11 U.S.C. § 502(b)(1) (bankruptcy claims are not allowed if "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law …"); *Travelers Cas. & Sur. Co. of Am. v. Pacific Gas & Elec. Co.*, 549 U.S. 443, 450 (Section 502(b)(1) "is most naturally understood to provide that, with limited exceptions, any defense to a claim that is available outside of the bankruptcy context is also available in bankruptcy.").

This rule bars the claims of the two Texas Bankruptcy-Claim-Fraud plaintiffs for lack of a manifest defect. Plaintiff Lisa Simmons does not allege a manifest defect as required to state any counts under Texas law. SUF ¶ 213. Similarly, while Shenyesa Henry alleged that her key got

---

[41] Missouri Bankruptcy-Fraud-Claim plaintiffs Akers, K. Robinson, and Witherspoon also would not have been able to recover on a bankruptcy claim against Old GM because their underlying counts fail for the reasons discussed throughout this brief.

stuck in the ignition and that one time her steering and brakes locked up, she is not aware of any incidents of inadvertent key rotation, a prerequisite for any bankruptcy claim against Old GM. *Id.* ¶ 208; *see also* Section I.B. As they could not recover on a bankruptcy claim against Old GM, summary judgment should be granted against their fraudulent concealment claims for lack of injury. *FACC MTD Opinion*, 257 F. Supp. 3d at 452 (Texas fraudulent concealment claims require injury).

The lack of meritorious underlying claims also bars the Bankruptcy-Claim-Fraud count of Service Parts Vehicle owner William Rukeyser. As explained in Section II, the Service Parts Vehicles are not defective unless repaired with an older switch, and Rukeyser does not claim that his switch was replaced and thus cannot recover. SUF ¶ 107.

## IV. PLAINTIFFS CANNOT OBTAIN INJUNCTIVE RELIEF.

Plaintiffs allege that this Court should oversee New GM's implementation of the 2014 recalls at issue, covering millions of vehicles. 5ACC ¶¶ 1077, 1094. Plaintiffs further ask the Court to establish and administer a fund to pay claims for vehicle owners' out-of-pocket expenses and, more generally, to "monitor New GM's efforts to improve its safety processes." *Id.* ¶ 1688. Plaintiffs cannot prove the factual or bases legal prerequisites for such an extraordinary injunction.

To obtain a permanent injunction, a "'plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.'" *Samms v. Abrams*, 198 F. Supp. 3d 311, 315 (S.D.N.Y. 2016) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). Moreover, "imminent and irreparable harm is essential for a claim for a permanent injunction." *See Fort v. Am. Fed'n of State, County and Mun. Emps.,* 375 Fed. App'x 109, 112 (2d Cir. 2010); *see also Roach v.*

56

*Morse*, 440 F.3d 53, 56 (2d Cir. 2006).[42]

**A.      Plaintiffs' Have Not Alleged And Cannot Establish Irreparable Harm.**

A "showing of irreparable harm is required for the imposition of any injunctive relief, preliminary or permanent." *See Ford v. Reynolds*, 316 F.3d 351, 355 (2d Cir. 2003) (internal quotation marks omitted).  To establish irreparable harm, the injury alleged "must be one requiring a remedy of more than mere money damages." *Id.*; *see also N.Y. State Nat. Org. for Women v. Terry*, 886 F.2d 1339, 1362 (2d Cir. 1989).  The claimed irreparable harm must also be real and immediate, not speculative.  *Trudeau v. Bockstein*, 2008 WL 541158, at *6 (N.D.N.Y. Feb. 25, 2008) ("[i]njunctive relief is inappropriate 'where there is no showing of any real or immediate threat that the plaintiff will be wronged again.'") (*quoting City of Los Angeles v. Lyons,* 461 U.S. 95, 111 (1983)); *see also Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1021-22 (9th Cir. 2004).

Here, no plaintiff has even alleged that he or she will suffer irreparable future harm absent an injunction or that there is no adequate legal remedy.  Nor do plaintiffs provide evidence to establish that they will suffer real and immediate irreparable harm absent an injunction.  Plaintiffs' failure to move for injunctive relief in the four years since the recalls were announced, but instead to pursue damages claims, precludes any argument that an injunction is necessary to prevent irreparable harm.  *Cf. Fed. Exp. Corp. v. Fed. Espresso, Inc.*, 201 F.3d 168, 178 (2d Cir. 2000)

---

[42]  Plaintiffs must meet the traditional requirements for equitable relief even when Congress has explicitly authorized equitable remedies, such as under the Magnuson-Moss Warranty Act.  A "major departure from the long tradition of equity practice should not be lightly implied," *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320 (1982), and unless Congress clearly intended such a departure, the ordinary requirements for injunctive relief apply.  *See eBay Inc*, 547 U.S. at 391-92 (lower court erred by applying a presumption that an injunction would issue if plaintiffs met the requirements of a statute); *see also Sadat v. Am. Motors Corp.*, 470 N.E.2d 997, 1002 (Ill. 1984) ("[W]hile we conclude that the plain language of the Magnuson-Moss Warranty Act extends the full range of equitable remedies to private litigants in appropriate situations, we do not find that the Act's general grant of equitable relief evinces congressional intent to dispense with the traditional equitable pleading requirements.").

("The seeming lack of urgency on the part of a plaintiff who has been denied interim relief tends to confirm the view that irreparable harm was not imminent."); *Contech Casting, LLC v. ZF Steering Sys., LLC*, 931 F. Supp. 2d 809, 821 (E.D. Mich. 2013) (The "glaring failure of Plaintiff to pursue other reasonable alternatives to avoid the harm it claims is imminent fundamentally undermines its contention of irreparable injury."); *Frank v. DaimlerChrysler Corp.*, 292 A.D.2d 118, 127 (N.Y. App. Div. 1st Dept. 2002) (in case without allegations of manifest defect, NHTSA remedy was preferable; plaintiffs' lawsuit would benefit no one except "the lawyers handling the case and perhaps the few consumers directly involved in the litigation." ).

### B.     The Extraordinary Relief Plaintiffs Request Is Not In The Public Interest.

The public interest factor is of great importance in a case of this magnitude involving millions of New GM vehicle owners.  No federal court has ever granted such broad injunctive or equitable relief over automobile recalls, *see, e.g., Chin v. Chrysler Corp.*, 182 F.R.D. 448, 464 n.6 (D.N.J. 1998), and for good reason.  Such an extraordinary remedy—requiring the court to manage and supervise a recall and a defendant's future business conduct—is contrary to the public interest and unavailable where, as here, plaintiffs cannot establish a non-speculative risk of future irreparable harm.  *See Salazar v. Buono*, 559 U.S. 700, 714 (2010) ("Equitable relief is not granted as a matter of course, . . . and a court should be particularly cautious when contemplating relief that implicates public interests"); *Detroit Newsp. Publishers Ass'n v. Detroit Typographical Union No. 18, Intern. Typographical Union*, 471 F.2d 872, 876 (6th Cir. 1972) ("The right must be clear, the injury impending or threatened, so as to be averted only by the protecting preventive process of injunction: but that will not be awarded in doubtful cases, or new ones, not coming within well-established principles.").

In addition, given that New GM's recall obligations arise from the Safety Act's regulatory framework, no public interest is served by ignoring Congressional mandates and inviting

conflicting judicial decisions. *Cf. Frank*, 292 A.D.2d at 128 (holding that, where there was no manifest defect, "the remedy which will not only best promote consumer safety, but will also address the parties' concerns regarding the possible consequences of a rear-end collision if the purported defect is not remedied, is to petition the NHTSA for a defect investigation."); *O'Keefe v. Mercedes-Benz USA, LLC*, 2002 WL 377122, at *4 (E.D. Pa. Jan. 31, 2002) (holding that, given reporting required by NHTSA, "there is no public interest in ordering the corrective notice ... without a showing that the recipients of the notice will be harmed irreparably without it."); *Silvas v. Gen. Motors, LLC*, 2014 WL 1572590, at *3 (S.D. Tex. Apr. 17, 2014) (rejecting request for "park-it-now" injunction where NHTSA "has proceeded substantially into the recall process": "The Court is of the opinion that NHTSA is far better equipped than this Court to address the broad and complex issues of automotive safety and the regulation of automotive companies in connection with a nationwide recall."). Plaintiffs cannot explain how the public would benefit from their requested injunction, or why this case is different from all previous vehicle recall cases that reject the injunctive relief plaintiffs seek.

### C.     The Requested Future Relief Is Overbroad And Impermissibly Reaches Conduct Unrelated To The Alleged Violations.

Finally, New GM cannot be held responsible for unknown potential violations in connection with possible future, unrelated recalls, defects, or advertising. *N.L.R.B. v. Express Pub. Co.*, 312 U.S. 426, 435-36 (1941) ("[T]he mere fact that a court has found that a defendant has committed an act in violation of a statute does not justify an injunction broadly to obey the statute and thus subject the defendant to contempt proceedings if he shall at any time in the future commit some new violation unlike and unrelated to that with which he was originally charged."); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1226 (C.D. Cal. 2007) ("[A] district court should only include injunctive terms that have a common sense relationship to the

needs of the specific case, and the conduct for which a defendant has been held liable.").

Any injunction regarding, for example, New GM's "response to problems," 5ACC Prayer for Relief ¶ B, would contravene to Fed. R. Civ. P. 65(d)(1), which requires that "every order granting [an] injunction shall be specific in terms and shall describe in reasonable detail the act or acts sought to be restrained." *See Sanders v. Air Line Pilots Ass'n Int'l.*, 473 F.2d 244 (2d Cir. 1972); *see also Chicago Bd. of Educ.* v. *Substance, Inc.*, 354 F.3d 624, 631-32 (7th Cir. 2003) (Posner, J.) (noting court's "independent duty" under Rule 65(d)(1) to scrutinize and limit scope of injunctions).

Rule 65(d)(1) proscribes unduly broad injunctions. As the Second Circuit has observed, an injunction like the one plaintiff requests is plainly impermissible:

> [The injunction] would be "so broad as to place the entire conduct of [defendant's] business under the jeopardy of punishment for contempt for violating" the injunction . . . [Even if] the proposed injunction [would not] 'invariably paralyze' [defendant] . . ., we do see a danger that [defendant] would be exposed to contempt prosecution for the performance of acts not properly within the scope of the injunction. . . . Any number of normal business actions, not even remotely concerned with the Grandfathers' seniority rights and having only a limited and tangential effect thereon, might be in violation of the order.

*See Sanders v. Air Line Pilots Ass'n, Int'l*, 473 F.2d 244, 248 (2d Cir. 1972). Plaintiffs have not even alleged the traditional equitable requirements, much less "the specific acts sought to be restrained."

In short, plaintiffs cannot establish any risk of future irreparable harm, that an injunction would serve the public interest, or that the substantial money damages they seek (in addition to the recall repairs provided by New GM) are inadequate to remedy any claimed harm. Accordingly, plaintiffs' claims for injunctive relief should be rejected.

## CONCLUSION

The undisputed evidence establishes that the bellwether named plaintiffs cannot, as a matter of law and undisputed fact, prove the fundamental prerequisites of their claims, such as

damages, defect, causation, or reliance.  Accordingly, summary judgement should be granted against each plaintiff's claims.

Respectfully submitted,

Dated:  September 5, 2019          */s/ Richard C. Godfrey, P.C.*

Richard C. Godfrey, P.C.
Andrew B. Bloomer, P.C.
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL  60654-3406
Phone:  312-862-2000
Fax:  312-862-2200
richard.godfrey@kirkland.com
andrew.bloomer@kirkland.com

*Attorneys for Defendant General Motors LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2019, I electronically filed the foregoing using the

CM/ECF system which will serve notification of such filing to the email of all counsel of record

in this action.

By: /s/ *Andrew B. Bloomer, P.C.*

Andrew B. Bloomer, P.C.