UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE:<br><br>GENERAL MOTORS LLC IGNITION SWITCH LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | No. 14-MD-2543 (JMF) |

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RECONSIDERATION OF THE COURT'S AUGUST 6, 2019 SUMMARY JUDGMENT OPINION AND ORDER, OR, IN THE ALTERNATIVE, MOTION FOR <u>CERTIFICATION OF ORDER FOR INTERLOCUTORY APPEAL</u>**

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT........................................................................................................................2

    A.    Controlling Ninth Circuit law compels reconsideration of the ruling that a belated repair, if successful, moots the California Plaintiffs' benefit-of-the-bargain claims. ...................................................................................................2

    B.    Because *all* of the Texas Plaintiffs experienced malfunctions, the Court should reconsider its holding that an adequate repair moots their damages claim....................................................................................................................4

    C.    The Court should apply the standard method for determining but-for supply when consumers bring product defect cases. ...............................................5

    D.    If the Court declines to reconsider, interlocutory appeal is appropriate. .................9

III. CONCLUSION...................................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*In re Adelphia Commc'ns Corp.*,
    652 F. App'x 19 (2d Cir. 2016) ............................................................................................. 3

*Apple, Inc. v. Samsung Elecs. Co.*,
    2014 WL 976898 (N.D. Cal. Mar. 6, 2014) ........................................................................... 6

*In re Arris Cable Modem Consumer Litig.*,
    327 F.R.D. 334 (N.D. Cal. 2018) ........................................................................................... 6

*Arthur Andersen & Co. v. Perry Equip. Corp.*,
    945 S.W.2d 812 (Tex. 1997) .................................................................................................. 5

*In re Barclays Liquidity Cross & High Frequency Trading Litig.*,
    2019 WL 3202745 (S.D.N.Y. Jul. 16, 2019) ....................................................................... 10

*Chowning v. Kohl's Dep't Stores, Inc.*,
    733 F. App'x 404 (9th Cir. 2018) .......................................................................................... 4

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) ................................................................................................................. 9

*Crimi v. Comm'r of Internal Revenue*,
    T.C. Memo. 2013-51 (U.S. Tax Ct. Feb. 14, 2013) ............................................................... 8

*Evinger v. McDaniel Title Co.*,
    726 S.W.2d 468 (Mo. Ct. App. 1987) .................................................................................... 7

*Factors, Etc., Inc. v. Pro Arts, Inc.*,
    652 F.2d 278 (2d Cir. 1981) ......................................................................................... 1, 3, 4

*Garland v. Herrin*,
    724 F.2d 16 (2d Cir. 1983) ..................................................................................................... 8

*In re Gen. Motors LLC Ignition Siwtch Litig.*,
    2019 WL 3564698 (S.D.N.Y. Aug. 6, 2019) ......................................................................... 4

*Kwikset Corp. v. Superior Court of Orange Cty.*,
    246 P.3d 877 (Cal. 2011) ....................................................................................................... 4

*In re Lenovo Adware Litig.*,
    2016 WL 6277245 (N.D. Cal. Oct. 27, 2016) ....................................................................... 3

*Mays v. Pierce*,
    203 S.W.3d 564 (Tex. Ct. App. 2006) ................................................................................... 5

*Nguyen v. Nissan N. Am., Inc.*,
    932 F.3d 811 (9th Cir. 2019) ........................................................................................1, 3, 8

*In re NJOY, Inc. Consumer Class Action Litig.*,
    120 F. Supp. 3d 1050 (C.D. Cal. 2015) ....................................................................................6

*Orr Chevrolet, Inc. v. Courtney*,
    488 S.W.2d 883 (Tex. Ct. App. 1972) .....................................................................................5

*Phillips v. City of New York*,
    775 F.3d 538 (2d Cir. 2015)......................................................................................................2

*Pulaski & Middleman, LLC v. Google, Inc.*,
    802 F.3d 979 (9th Cir. 2015) .........................................................................................1, 2, 4, 8

*Redwood City Elementary Sch. Dist. v. Gregoire*,
    276 P.2d 78 (Cal. Ct. App. 1954) .............................................................................................7

*Saavedra v. Eli Lilly & Co.*,
    2014 WL 7338930 (C.D. Cal. Dec. 18, 2014) .........................................................................6

*Sanchez-Knutson v. Ford Motor Co.*,
    181 F. Supp. 3d 988 (S.D. Fla. 2016) .......................................................................................6

*In re Tobacco Cases II*,
    240 Cal. App. 4th 779 (Cal. Ct. App. 2015) .............................................................................4

*In re Toyota Motors Corp. Hybrid Mktg. Sales Practices & Prods Liab. Litig.*,
    915 F. Supp. 2d 1151 (C.D. Cal. 2013) ....................................................................................5

*U.S. Bank Nat'l Ass'n v. Bank of Am., N.A.*,
    916 F.3d 143 (2d Cir. 2019).......................................................................................................3

*Vista Chevrolet Inc. v. Lewis*,
    704 S.W.2d 363 (Tex. Ct. App. 1985) .....................................................................................7

*Zakaria v. Gerber Prod. Co.*,
    755 F. App'x 623 (9th Cir. 2018) ..........................................................................................6, 7

*Zakaria v. Gerber Prod. Co.*,
    2017 WL 9512587 (C.D. Cal. Aug. 9, 2017) ...........................................................................7

**STATUTES**

U.S.C. § 1292(b) ................................................................................................................................9

**OTHER AUTHORITIES**

Cal. Rules of Court, Rule 8.548 ........................................................................................................4

## I.    INTRODUCTION

GM's opposition does not effectively undermine Plaintiffs' request that the Court reconsider its holdings, or, in the alternative, certify those landscape-altering rulings for interlocutory review in order to expedite the ultimate resolution of this long-pending action.

Contrary to GM's misrepresentation of Plaintiffs' claims, Plaintiffs do not seek a total refund.  Rather, as controlling law provides, Plaintiffs seek the amount of overpayment at sale due to GM's misconduct, with the value of the recall factored in.  Under these facts, as GM tacitly recognizes, *if* the Court follows Ninth Circuit precedent (as it must), it should reconsider the holding that the California Plaintiffs have no benefit-of-the-bargain damages unless they prove that GM's belated recalls were ineffective.[1]  Because the Court explicitly declined to follow Ninth Circuit precedent for the first time, Plaintiffs have not "waived" their request that the Court reverse that holding pursuant to *Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811 (9th Cir. 2019) and *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979 (9th Cir. 2015).  The Court should also reconsider the same holding with respect to the Texas Plaintiffs based on Texas law.

Consumers in defective product cases are entitled to present damages calculations that use historical supply in determining the delta between the but-for market price and the actual market price.  GM wisely has retreated from seriously arguing that the case law holds otherwise.  Basic economics in fact mandates the use of historical supply: damages should not decrease (or vanish) simply because a company hid the existence of defects so grave that few would have bought the product had they known the truth.  This is not a feel-good policy statement untethered to law,

---

[1] As discussed below, the only possible exception to the rule that California law precedents are binding would require this Court to find "with conviction" that the Ninth Circuit has "disregarded clear signals emanating from the state's highest court." *Factors, Etc., Inc. v. Pro Arts, Inc.*, 652 F.2d 278, 283 (2d Cir. 1981).  Even GM does not go so far in criticizing Ninth Circuit jurisprudence.

because preventing that illogical and manifestly unjust outcome is *exactly* what applicable laws require.

## II.   ARGUMENT

**A.   Controlling Ninth Circuit law compels reconsideration of the ruling that a belated repair, if successful, moots the California Plaintiffs' benefit-of-the-bargain claims.**

Ninth Circuit authorities such as *Nguyen* and *Pulaski* compel the conclusion that the California Plaintiffs may obtain benefit-of-the-bargain damages *even if* GM's recalls resulted in complete repairs. Evading this controlling law, GM argues that (i) Plaintiffs have "waived" the "argument" that the Court must follow the binding authority they cited (GM Br. at 3); (ii) *Pulaski* and *Nguyen* do not mean what they say (*id.* at 4-5); and (iii) the Second Circuit's rule requiring deference to those Ninth Circuit decisions does not apply here (*id.* at 6-8). Each of these arguments fails.

*First*, GM cites no case suggesting that the precedential weight of authority is subject to waiver. Courts *must* follow the rules of construction whether a party raises them or not. In GM's sole case, *Phillips v. City of New York*, 775 F.3d 538, 544 (2d Cir. 2015), the Second Circuit held that it need not consider *on appeal* evidence-based arguments that were never before the district court. *Phillips* did not involve waiver *on reconsideration* or waiver of the proper precedential weight of proffered authorities. Rule 59(e) and Local Civil Rule 6.3 plainly authorize Plaintiffs to make this argument on reconsideration. In their summary judgment briefing, Plaintiffs cited the controlling Ninth Circuit cases construing California law and certainly did not suggest that the Court need not follow them.

*Second*, GM insists that Ninth Circuit precedent (even if binding) does not compel reconsideration. GM Br. at 4-6. GM is wrong. Under *Pulaski* and *Nguyen*, the California

Plaintiffs may recover "the difference between what was paid and what a reasonable consumer would have paid at the time of purchase without the fraudulent or omitted information," notwithstanding "benefits received after purchase."  *Nguyen*, 932 F.3d at 820 (quoting *Pulaski*, 802 F.3d at 989); *accord In re Lenovo Adware Litig.*, 2016 WL 6277245, at *21 (N.D. Cal. Oct. 27, 2016) (damages model "need not account for benefits received after purchase because the focus is on the value of the service at the time of purchase") (internal citations omitted).  And the Ninth Circuit in *Nguyen* expressly allowed purchasers who "derived value" from the defective part "by selling [or] repurposing it" to seek their benefit-of-the bargain damages that arose at the point of sale.  *Nguyen*, 932 F.3d at 816, 820-21.  Post-sale mitigation in no way vitiated the buyers' claims.  Thus, the California Plaintiffs may recover benefit-of-the-bargain damages *even if* GM's belated repairs were completely effective.[2]

*Third*, GM fails to show that this case is exempt from the rule that district courts must "defer conclusively" to another Circuit Court's opinion that "addresses a question of state law from a state within that that circuit."  *U.S. Bank Nat'l Ass'n v. Bank of Am., N.A.*, 916 F.3d 143, 150 (2d Cir. 2019); *accord, e.g.*, *In re Adelphia Commc'ns Corp.*, 652 F. App'x 19 n.1 (2d Cir. 2016).  The only possible exception is "the *rare* instance when it can be said *with conviction* that the pertinent court of appeals has disregarded clear signals from the state's highest court pointing toward a different rule."  *Factors*, 652 F.2d at 283 (emphasis added).  That is not the case here.  GM's assertion that *Factors* deference only applies when a circuit court addresses "a question of first impression" (GM Br. at 7) is also incorrect.  Because the California Supreme Court has in no way

---

[2] Contrary to GM's statement, Plaintiffs have not said that the only *possible* measure of damages is "diminution in value" or "the reasonable cost of repairs."  GM Br. at 6.  While both are potential measures of damage in appropriate cases, many cases *also* recognize the validity of an *overpayment* remedy, measured as the difference in value between what the consumer thought she was getting and what she actually received.  *See, e.g.*, Plfs' SJ Opp. at 25-28 (citing cases).  The California Court of Appeals cases GM cites at 6, n.8 are not to the contrary.

-3-

ruled that even effective post-sale repairs preclude benefit-of-the-bargain damages, or issued *any* ruling on the precise issues addressed in *Pulaski* and *Nguyen*,[3] the Court is bound to follow the Ninth Circuit. And GM's contention that the *Factors* rule should be abandoned in favor of certification to the California Supreme Court ignores that the California Supreme Court does *not* accept certifications from federal district courts. *See* Cal. Rules of Court, Rule 8.548.

GM misleadingly suggests that the Ninth Circuit's holdings in *Pulaski* and *Nguyen* were "superseded by a later pronouncement from state legislative or judicial sources." GM Br. at 7-8 (citing *In re Tobacco Cases II*, 240 Cal. App. 4th 779, 802 (Cal. Ct. App. 2015)). But *Tobacco pre-dates* the Ninth Circuit's decision in *Nguyen*, and does not supersede the key holding that post-sale conduct cannot eliminate overpayment damages. *Tobacco* simply holds that plaintiffs must prove a "price/value differential" in order to obtain restitution under the UCL,[4] which Plaintiffs *do* via a conjoint analysis that measures precisely that.

**B.    Because *all* of the Texas Plaintiffs experienced malfunctions, the Court should reconsider its holding that an adequate repair moots their damages claim.**

The Court's holding that belated repairs moot or eliminate Plaintiffs' benefit-of-the-bargain damages is inconsistent with the purpose of Texas law, which is to make wronged parties whole. *See Order*, 2019 WL 3564698, at *8. This is especially so given that all remaining Texas Plaintiffs suffered malfunctions. GM wrongly asserts that Plaintiffs "waived" the argument that

---

[3] GM contends the Ninth Circuit overlooked *Kwikset Corp. v. Superior Court of Orange Cty.*, 246 P.3d 877 (Cal. 2011), even though *Kwikset* interpreted and extensively discussed *Pulaski*. And, although *Kwikset* involved statutory standing (as opposed to ultimate entitlement to restitution), *Pulaski* is not *inconsistent* with *Kwikset* such that the Court here could find "with conviction" that *Pulaski* "disregarded" *Kwikset*. *See Factors*, 652 F.2d at 283.

[4] In *Tobacco*, unlike here, the plaintiffs sought the *full value* of the product they purchased (or recission), and *that* was the "restitution" remedy the California courts found improper. *Id.* The same is true in GM's other case, *Chowning v. Kohl's Dep't Stores, Inc.*, 733 F. App'x 404, 406 (9th Cir. 2018), where the plaintiff "admits that she received some value from the articles of clothing and, thus, rescission is not available;" instead, the appropriate calculation for restitution was the price paid for the articles less the value of the articles received.

even an effective recall does not eliminate benefit-of-the-bargain damages when there is a defect manifestation.  To the contrary, the Texas Plaintiffs argued that "[w]hatever the efficacy of the recall repairs, they were too late to save Plaintiffs from the ill-effects of the defects."  Dkt. No, 6059 at 32.  Nor are Plaintiffs now introducing a "new theory of damages."  Plaintiffs *still* seek the difference in value between dangerously defective cars they unwittingly purchased and what they thought they were purchasing—cars without known safety defects.

GM also argues that Texas invariably "limits" Plaintiff to the "lesser of" benefit-of-the-bargain damages *or* repair costs.  Not so.  Such a rule is inconsistent with the "make-whole" purposes of Texas damages law, and damages under the Texas DTPA can include both benefit-of-the-bargain damages *and* out-of-pocket expenses (including repair costs).  *Mays v. Pierce*, 203 S.W.3d 564, 579-80 (Tex. Ct. App. 2006).  While *Orr Chevrolet, Inc. v. Courtney*, 488 S.W.2d 883, 886 (Tex. Ct. App. 1972), held that a consumer bringing an express warranty claim can recover the lesser of current diminished value or cost of repair, it is unclear whether the opinion concerns benefit-of-the-bargain damages *at all*.  In any event, GM's reading of *Orr* is inconsistent with superseding Texas Supreme Court precedent holding that, in cases of deceit, a plaintiff may recover the greater of out-of-pocket or benefit-of-the-bargain damages.  *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 817 (Tex. 1997).[5]

C.  **The Court should apply the standard method for determining but-for supply when consumers bring product defect cases.**

It is clear that, in consumer defective product cases, benefit-of-the-bargain damages are measured by calculating the difference between the but-for market price and the actual market

---

[5] GM contends that the plaintiff in *In re Toyota Motors Corp. Hybrid Mktg. Sales Practices & Prods Liab. Litig.*, 915 F. Supp. 2d 1151 (C.D. Cal. 2013), could not recover damages even though he proved defect manifestation.  GM Br. at 12.  But the court found that the plaintiff "had no problem with the braking performance of his vehicle" and drove "without incident."  *In re Toyota Motors Corp.*, 915 F. Supp. 2d at 1159.

price. *See, e.g.*, *In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334, 370-73 (N.D. Cal. 2018); *Sanchez-Knutson v. Ford Motor Co.*, 181 F. Supp. 3d 988, 995 (S.D. Fla. 2016). Plaintiffs in such cases are entitled to present the jury with damages calculations based on the actual number of products that defendants sold. The primary case to the contrary, *Saavedra v. Eli Lilly & Co.*, 2014 WL 7338930, at *5 (C.D. Cal. Dec. 18, 2014), did so in the context of a very different market not subject to the same market forces as cars—prescription drugs, where numerous factors (including diverse market players such as health plan sponsors, third-party payers, pharmacy benefit managers, retail pharmacy chains, and drug manufacturers) attenuate the relationship between price and consumer demand. And, as Plaintiffs explained in their opening brief, the *Saavedra* Court also made a number of serious errors.

In addition to being contrary to well-settled law, GM's argument that damages cannot be calculated by holding supply fixed is wrong as a matter of economics. Using fixed, historical supply permits the measurement of the diminution in value consumers experience at the time of purchase that are based on a defendant's actual conduct, rather than on entirely unrelated factors. And it defies common sense (and also economic principles) to allow a tortfeasor to escape liability and full damages for its wrongful conduct by claiming that it would have sold fewer defective products if it had known in advance that it would get caught. Until now, GM has relied on a small set of cases[6] to support its entitlement to such a windfall. GM fails to respond to Plaintiffs' showing that *none* of those cases squarely reject, or offer any rationale to reject, the use of historical supply in calculating damages. *Compare* Plfs' Br. at 12-15 *with* GM Br. at 16 n.22

---

[6] *See Apple, Inc. v. Samsung Elecs. Co.*, 2014 WL 976898 (N.D. Cal. Mar. 6, 2014) (patent); *Saavedra v. Eli Lilly & Co.*, 2014 WL 7338930 (C.D. Cal. Dec. 18, 2014) (pharmaceutical); *Zakaria v. Gerber Prod. Co.*, 755 F. App'x 623 (9th Cir. 2018) (*see* n.4 *infra*); *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050 (C.D. Cal. 2015) (no conclusion on use of historic supply).

(listing cases in footnote). Instead, GM repeatedly recites that a market is where supply and demand intersect (just as Plaintiffs measured); misstates Plaintiffs' policy arguments (ignoring that the policies are expressly embedded into the applicable laws); and offers its own policy arguments that quibble with the *amount*, not the *fact*, of damages. As to GM's specific arguments:

*First*, GM makes general points about how private valuation is not the same as a market price, and that a market is based on supply and demand.[7] GM Br. at 13-16. On the former issue, GM's cases (only one of which even mentions a conjoint analysis) stand only for the unremarkable proposition that plaintiffs must offer proof of decline in value beyond their own say-so.[8] As to supply, again, Boedeker's market simulation measured the differences between the demand curves for the *actual* world with *undisclosed* defects and the *but-for* world with *disclosed* defects. He then multiplied these differences by the quantity of defective cars actually sold, *i.e.*, the supply. Boedeker's confirmation that he used historical supply, rather than delving into GM's willingness to sell in a but-for world in which GM never deceived anyone, demonstrates only that he ran his model according to proper economics and best practices. GM cites no cases involving conjoint analysis or consumer class actions, and certainly none holding that historical supply is inconsistent

---

[7] Misleadingly ascribing the *Court's* conclusion to Plaintiffs themselves, GM contends that Plaintiffs changed their position. Not so. As Plaintiffs noted in the sentence before the one GM cited, "*it was appropriate for Boedeker to use fixed supply in approximating the but-for market price.*" (Emphasis added.) Plaintiffs then asked the Court to reconsider *its* holding that "the absence of a but-for market price is fatal to Plaintiffs' claims." *Id*.

[8] GM's cases are inapposite. In *Vista Chevrolet Inc. v. Lewis*, 704 S.W.2d 363 (Tex. Ct. App. 1985), and *Evinger v. McDaniel Title Co.*, 726 S.W.2d 468 (Mo. Ct. App. 1987), the plaintiffs did not seek to prove a decline in value through evidence beyond their own contention. *Redwood City Elementary Sch. Dist. v. Gregoire*, 276 P.2d 78 (Cal. Ct. App. 1954), addressed whether the appellant's son could opine on market value despite the availability of expert testimony. And as Plaintiffs explained in their opening brief, *Zakaria v. Gerber Prod. Co.* expressly distinguished cases, like this one, in which an expert uses real-world prices and real-world supply. 2017 WL 9512587, at *19-20 (C.D. Cal. Aug. 9, 2017).

with the determination of a market price. GM Br. at n.20. Instead, GM cites cases that together show a variety of methods for capturing "value."[9]

*Second*, GM's position demands that it *benefit* from sales of a fixed numbers of cars accomplished through fraud. GM Br. at 16-18. Because safety is so important to consumers, GM says that it might not have been able to sell *any* cars had it not lied; thus, in GM's rabbit-hole world posing as economic argument, GM should pay no damages. GM Br. at 18. Again, GM references, but does not analyze, a small number of cases that Plaintiffs have shown to be inapposite.

GM concedes that damages must be construed broadly under applicable law, acknowledging *Nguyen*, 932 F.3d 811, and *Pulaski*, 802 F.3d 979, and that the amount need not be shown with certainty. Yet GM argues with the amount, not existence, of damages by saying that the large size of the estimated damages means they were not calculated properly. This argument veers into a classic jury territory—expert outcomes are generally not appropriate for attack under *Daubert* or via summary judgment. It also ignores (i) Plaintiffs' alternative specification through Dr. Gans (which results in a more conservative figure) and (ii) the aggregate nature of Boedeker's damages calculation (which belies GM's hypothetical example of a windfall to one particular plaintiff, given that the final allocation method has not yet been established). GM Br. at 6-7.

*Third*, GM dismisses Plaintiffs' economic policy arguments, citing *Garland v. Herrin*, 724 F.2d 16 (2d Cir. 1983). GM Br. at 19. But while the *Garland* court noted that a federal court should not *alter* state law based on policy argument, here the applicable laws themselves *mandate*

---

[9] GM also cites one case for the purported definition of "market value" and another for the definition of "fair market value." Those are two separate concepts, illustrating that even market value itself is not determined in a monolithic fashion. *See*, *e.g.*, *Crimi v. Comm'r of Internal Revenue*, T.C. Memo. 2013-51, at *36 n.27 (U.S. Tax Ct. Feb. 14, 2013) ("We have observed repeatedly that although market value adopts selective elements of fair market value, the two are not identical.").

broad and flexible damages.  *See* Plfs' Br. at 7-8.  As Plaintiffs have shown, the damages analysis must calculate damages for the vehicles GM sold (rather than the lower number a hypothetical GM might have sold to different people).  GM contends that the buyers are also "hypothetical" in the conjoint analysis, but that is a necessary and established feature of this established method.  In any event, the survey population in the conjoint analysis was representative of those who had the option to buy or lease a GM car.[10]  GM also repeats its general point that a market assumes sales and purchases free from compulsion, which says nothing about using historically fixed supply.[11]

*Fourth*, GM attempts to deflect the point that its advocated approach runs afoul of *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), by noting that *Comcast* is a Rule 23 opinion.  But this is a Rule 23 case, and the substantive rule that damages be tethered to liability does not change in a class action.  The price difference between what GM represented the vehicles to be and what they were is the measurement of benefit-of-the-bargain damages.  Accordingly, Plaintiffs respectfully submit that the Court should reconsider and conclude that a jury properly could base damages on a model that uses historic supply.

**D.    If the Court declines to reconsider, interlocutory appeal is appropriate.**

Interlocutory review under U.S.C. § 1292(b) is warranted as an alternative to reconsideration.  *First*, GM does not dispute that whether recalls restore the benefit-of-the-bargain presents a controlling legal question.  GM, in fact, begins its opposition asserting (falsely) that Plaintiffs' motion is "contrary to well-settled Bellwether state law" (GM Br. at 1)—and then

---

[10] The survey population consisted of those who purchased or leased at least one new or used vehicle in the last ten years and who did not work in the automobile industry.

[11] GM also purports to respond (GM Br. at n.30) to Plaintiffs' analogy to steel purchasers by saying that multiple entities may sell GM cars.  This misses the point that, under the Order's reasoning, two groups of consumers who suffered identical injuries caused by two different companies are compensated differently based on exogenous factors such as one company having more efficient operating plants or another having a more diversified portfolio.

-9-

spends much of its brief on interpretive principles of how federal courts determine state law.  GM argues that the *other* issue Plaintiffs raised—the proper determination of supply—presents questions of fact.  *Id.*  While the weighing of expert evidence typically belongs to a fact finder, here the Court erred by holding that, no matter what the facts, use of historical supply was categorically inappropriate in determining a but-for market price.

*Second*, GM argues that there are no substantial differences among the courts, citing *In re Barclays Liquidity Cross & High Frequency Trading Litig.*, 2019 WL 3202745 (S.D.N.Y. Jul. 16, 2019).  However, in *Barclays*, there were no substantial differences within the Second Circuit because the Second Circuit had ruled on, or at least provided a framework for determining, the applicable issues there.  But here, the Second Circuit has not determined whether conjoint analysis is an appropriate tool for measuring damages in economic-injury product defect cases.

*Third*, general arguments *against* interlocutory appeal relate largely, and soundly, to the problems with piecemeal litigation.  Here, however, absent reconsideration or clarification from the Second Circuit, the parties will remain on a choppy and piecemeal course.  With the parties now disputing how to move forward with the dozens of other jurisdictions, appeal will streamline the resolution of this matter.

## III.   CONCLUSION

Plaintiffs respectfully request that the Court reconsider and reverse its Order or, alternatively, certify its rulings for interlocutory appeal given their manifest importance to continued proceedings.

-10-
010440-11/1197844 V3

DATED:  October 18, 2019       HAGENS BERMAN SOBOL SHAPIRO LLP


By: */s/ Steve W. Berman*
       Steve W. Berman
Sean R. Matt
Andrew M. Volk
1301 Second Avenue, Suite 2000
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:   (206) 623-0594
steve@hbsslaw.com
sean@hbsslaw.com
andrew@hbsslaw.com


DATED:  October 18, 2019       LIEFF CABRASER HEIMANN & BERNSTEIN, LLP


By: */s/ Elizabeth J. Cabraser*
       Elizabeth J. Cabraser
Rachel Geman
275 Battery St., 29th Floor
San Francisco, CA 94111
Telephone:  (415) 956-1000
Facsimile:   (415) 956-1008
ecabraser@lchb.com
rgeman@lchb.com

*Co-Lead Counsel with Primary Focus on Economic Loss Cases*

-12-

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on October 18, 2019, which will send notification of such filing to the e-mail addresses registered.

 /s/ Elizabeth J. Cabraser
Elizabeth J. Cabraser