**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: ) | |
| ) | No. 14-MD-2543 (JMF) |
| GENERAL MOTORS LLC ) | No. 14-MC-2543 (JMF) |
| IGNITION SWITCH LITIGATION ) | |
| ) | Hon. Jesse M. Furman |
| *This Document Relates To All Actions* ) | |
| ) | |

**DEFENDANT GENERAL MOTORS LLC'S REPLY**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AGAINST**
**THE BELLWETHER ECONOMIC LOSS PLAINTIFFS**

Richard C. Godfrey, P.C.
Andrew B. Bloomer, P.C.
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL  60654-3406
Phone:  312-862-2000
Fax:  312-862-2200
richard.godfrey@kirkland.com
andrew.bloomer@kirkland.com

*Attorneys for Defendant General Motors LLC*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................... 1

I.     PLAINTIFFS' OPPOSITION CONFIRMS THAT NO PLAINTIFF HAS ANY
LEGALLY RECOVERABLE DAMAGES. ................................................... 2

     A.     Plaintiffs Have No Legally Cognizable Benefit-Of-The-Bargain Damages. ......... 2

     B.     Plaintiffs Cannot Prove A Manifest Defect For Texas And Missouri
Claims. ................................................................................................. 3

     C.     Plaintiffs Do Not—And Cannot—Distinguish Case Law Holding That
"Lost Personal Time" Is Not Legally Recoverable Damage. ................................ 6

II.     THERE IS NO ISSUE OF MATERIAL FACT AS TO WHETHER OR NOT
PLAINTIFFS WITH SERVICE PART VEHICLES HAD A FAULTY SWITCH. .......... 7

III.     PLAINTIFFS' OPPOSITION DEMONSTRATES THAT MANY OF THEM
CANNOT ESTABLISH NEW GM'S POTENTIAL LIABILITY. ................................... 8

     A.     Various Plaintiffs Cannot Show Reliance........................................................... 8

     B.     Plaintiffs Concede They Cannot Prove Actionable Misrepresentations.............. 12

     C.     Plaintiffs' Implied Warranty Claims Are Barred In Whole Or In Part................ 12

          1.     New GM's Warranty Limitations Are Not Unconscionable. ................... 12

          2.     Statutory Limitations Periods Cannot Be Tolled By Fraudulent
Concealment. .......................................................................... 13

          3.     Plaintiffs' Substantial Use Of Their Vehicles Independently
Precludes Their Implied Warranty Claims. ............................................. 14

     D.     The Court Should Reject Plaintiffs' Belated Request To Reconsider And
Reverse Its Unjust Enrichment Rulings................................................................ 14

     E.     Summary Judgment Should Be Granted Against Claims Of Old GM Or
Used Vehicle Purchasers.................................................................................... 16

          1.     New GM Had No Duty To Disclose To Old GM Vehicle
Purchasers. .......................................................................... 16

          2.     California And Texas Do Not Recognize An Asset Purchaser's
Duty To Warn. .......................................................................... 18

## TABLE OF CONTENTS (CONT'D)

**Page**

       3.     Plaintiffs Concede That Used Car Purchasers Do Not Have Implied Warranty Claims.......................................................................... 19

       4.     Used Vehicle Purchasers Have No Unjust Enrichment Claims............... 19

   F.     Texas Plaintiffs Cannot Prove Unconscionability Under The Texas DTPA........ 19

   G.    Summary Judgment Should Be Granted Against Plaintiffs' Bankruptcy-Claim-Fraud Counts............................................................................................ 20

IV.    PLAINTIFFS HAVE NO EVIDENCE ESTABLISHING A THREAT OF FUTURE HARM FOR WHICH A LEGAL REMEDY IS INADEQUATE. .................. 22

CONCLUSION................................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affordable Communities of Mo. v. Fed. Nat'l Mortg. Ass'n*,
  714 F.3d 1069 (8th Cir. 2013) ................................................... 15

*Aguilar v. Gen. Motors LLC*,
  2013 WL 5670888 (E.D. Cal. Oct. 16, 2013) .......................... 14

*Am. Honda Motor Co. v. Superior Court*,
  199 Cal. App. 4th 1367 (2011) ................................................. 14

*Am. Hous. Res., Inc. v. Slaughter*,
  597 S.W.2d 13 (Tex. Civ. App. 1980) ...................................... 24

*Am. Suzuki Motor Corp., v. Superior Court*,
  44 Cal. Rptr. 2d 526 (Cal. App. Ct. 1995) .............................. 14

*Andrade v. Arby's Rest. Group, Inc.*,
  225 F. Supp. 3d 1115 (N.D. Cal. 2016) ................................... 22

*Aust v. Platte Cty.*,
  477 S.W.3d 738 (Mo. Ct. App. 2015) ....................................... 22

*B. Mahler Interests, L.P. v. DMAC Constr., Inc.*,
  503 S.W.3d 43 (Tex. App. 2016) .............................................. 13

*Badahman v. Catering St. Louis*,
  395 S.W.3d 29 (Mo. 2013) ....................................................... 23

*Bd. of Trustees of S. Cal. IBEW-NECA Defined Contribution Plan*
  *v. Bank of N.Y. Mellon Corp.*,
  287 F.R.D. 216 (S.D.N.Y. 2012) ................................................ 1

*Blake v. Career Educ. Corp.*,
  2009 WL 140742 (E.D. Mo. Jan. 20, 2009) .............................. 23

*BMG Direct Mktg., Inc. v. Peake*,
  178 S.W.3d 763 (Tex. 2005) ..................................................... 15

*Bowles v. Mars, Inc.*,
  2015 WL 3629717 (S.D. Tex. June 10, 2015) .......................... 11

*Burtt v. Ford Motor Co.*,
  2008 WL 373659 (W.D. Va. Feb. 11, 2008) ............................. 13

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Butler v. Porsche Cars N. Am., Inc.*,
   2017 WL 1398316 (N.D. Cal. Apr. 19, 2017) ...................................................................... 10

*Cameron v. Terrell & Garrett, Inc.*,
   618 S.W.2d 535 (Tex. 1981) ........................................................................................... 18

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) .................................................................................................... 4, 5

*Cholakyan v. Mercedes-Benz USA, LLC*,
   796 F. Supp. 2d 1220 (C.D. Cal. 2011) .......................................................................... 14

*Conway v. CitiMortgage, Inc.*,
   438 S.W.3d 410 (Mo. 2014) ........................................................................................... 18

*Dancin Dev., L.L.C. v. NRT Mo., Inc.*,
   291 S.W.3d 739 (Mo. Ct. App. 2009) .............................................................................. 11

*Daniel v. Ford Motor Co.*,
   806 F.3d 1217 (9th Cir. 2015) ....................................................................................... 10

*Darne v. Ford Motor Co.*,
   2015 WL 9259455 (N.D. Ill. Dec. 18, 2015) ..................................................................... 12

*David McDavid Pontiac, Inc. v. Nix*,
   681 S.W.2d 831 (Tex. App. 1984) .................................................................................. 23

*Dragoslavic v. Ace Hardware Corp.*,
   274 F. Supp. 3d 578 (E.D. Tex. 2017) ............................................................................ 23

*Espejo v. Santander Consumer USA, Inc.*,
   2016 WL 6037625 (N.D. Ill. Oct. 14, 2016) ...................................................................... 1

*Faltermeier v. FCA US LLC*,
   2016 WL 4771100 (W.D. Mo. Sept. 13, 2016) .................................................................. 18

*Feitelberg v. Credit Suisse First Boston, LLC*,
   134 Cal. App. 4th 997 (2005) ........................................................................................ 22

*Fine v. ConAgra Foods, Inc.*,
   2010 WL 3632469 (C.D. Cal Aug. 26, 2010) ..................................................................... 9

*Fisher v. Honda N. Am., Inc.*,
   2014 WL 2808188 (C.D. Cal. June 12, 2014) .................................................................... 12

*Flenniken v. Longview Bank & Trust Co.*,
   661 S.W.2d 705 (Tex. 1983) ........................................................................................... 18

**TABLE OF AUTHORITIES (CONT'D)**

**Page(s)**

*Fortune Production Co. v. Conoco, Inc.*,
　52 S.W.3d 671 (Tex. 2000) ..................................................................................... 15

*Freidman v. Gen. Motors Corp.*,
　2009 WL 1515031 (S.D.N.Y. May 29, 2009) .......................................................... 13

*Gen. Motors Corp. v. Brewer*,
　966 S.W.2d 56 (Tex. 1998) ..................................................................................... 14

*Gibbons v. J. Nuckolls, Inc.*,
　216 S.W.3d 667 (Mo. 2007) .................................................................................... 18

*Gieseke v. First Horizon Home Loan Corp.*,
　2007 WL 437792 (D. Kan. Feb. 6, 2007) ................................................................. 1

*Gutierrez v. Wells Fargo Bank, NA*,
　589 F. App'x 824 (9th Cir. 2014) ............................................................................ 23

*H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*,
　879 F.2d 1005 (2d Cir. 1989) .................................................................................. 21

*Haas Automation, Inc. v. Denny*,
　2014 WL 2966989 (C.D. Cal. July 1, 2014) ............................................................ 22

*Henry Schein, Inc. v. Stromboe*,
　102 S.W.3d 675 (Tex. 2002) ................................................................................... 11

*Hess v. Chase Manhattan Bank, USA, N.A.*,
　220 S.W.3d 758 (Mo. 2007) .............................................................................. 10, 11

*Hindsman v. Gen. Motors LLC*,
　2018 WL 2463113 (N.D. Cal. June 1, 2018) ........................................................... 10

*Hoffman v. 162 N. Wolfe LLC*,
　175 Cal. Rptr. 3d 820 (Cal. Ct. App. 2014) ............................................................ 16

*Home Sav. Ass'n v. Guerra*,
　733 S.W.2d 134 (Tex. 1987) ................................................................................... 17

*Hope v. Nissan N. Am, Inc.*,
　353 S.W.3d 68 (Mo. Ct. App. 2011) ......................................................................... 5

*Hornberger v. Gen. Motors Corp.*,
　929 F. Supp. 884 (E.D. Pa. 1996) ........................................................................... 13

*Howard v. GC Servs., Inc.*,
　2015 WL 5163328 (Cal. App. Ct. Sept. 3, 2015) ...................................................... 9

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Howard v. Turnbull,*
   316 S.W.3d 431 (Mo. Ct. App. 2010) ................................................................. 15

*Hunt v. Estate of Hunt,*
   348 S.W.3d 103 (Mo. Ct. App. 2011) ................................................................. 15

*In re Asacol Anitrust Litig.,*
   907 F.3d 42 (1st Cir. 2018) ................................................................................... 7

*In re Duramax Diesel Litig.,*
   298 F. Supp. 3d. 1037 (E.D. Mich. 2018) .......................................................... 12

*In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.,*
   966 F. Supp. 1525 (E.D. Mo. 1997) ................................................................... 14

*In re Gen. Motors LLC Ignition Switch Litig.,*
   2016 WL 874778 (S.D.N.Y. Mar. 3, 2016) ....................................................... 18

*In re Gen. Motors LLC Ignition Switch Litig.,*
   2017 WL 2664199 (S.D.N.Y. June 20, 2017) ...................................................... 8

*In re Gen. Motors LLC Ignition Switch Litig.,*
   2017 WL 3443623 (S.D.N.Y. Aug. 9, 2017) ..................................................... 21

*In re Gen. Motors LLC Ignition Switch Litig.,*
   257 F. Supp. 3d 372 (S.D.N.Y. 2017) ...................................................... 14, 15, 21

*In re Gen. Motors LLC Ignition Switch Litig.,*
   2016 WL 3920353 (S.D.N.Y. July 15, 2016) ........................................... 5, 7, 15, 16

*In re Gen. Motors LLC Ignition Switch Litig.,*
   2019 WL 3564698 (S.D.N.Y. Aug. 6, 2019) .................................................. 2, 21

*In re General Motors LLC Ignition Switch Litig.,*
   2017 WL 6729295 (S.D.N.Y. Dec. 28, 2017) ...................................................... 8

*In re Vioxx Class Cases,*
   180 Cal. App. 4th 116 (Cal. App. Ct. 2009) ........................................................ 9

*Johnson v. Harley-Davidson Motor Co. Grp. LLC,*
   285 F.R.D. 573 (E.D. Cal. 2012) ......................................................................... 9

*Keegan v. Am. Honda Motor Co.,*
   838 F. Supp. 2d 929 (C.D. Cal. 2012) ............................................................... 14

*Kovich v. Paseo Del Mar Homeowners' Ass'n,*
   48 Cal. Rptr. 2d 758 (Cal. App. Ct. 1996) ........................................................ 17

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*LiMandri v. Judkins*,
   60 Cal. Rptr. 2d 539 (Cal. Ct. App. 1997) ....................................................................... 16, 17

*Long Beach Drug Co. v. United Drug Co.*,
   13 Cal. 2d 158 (1939)................................................................................................................. 24

*Lowe v. Hill*,
   430 S.W.3d 346 (Mo. Ct. App. 2014) ..................................................................................... 15

*Luv N' Care, Ltd. v. Royal King Infant Prod. Co.*,
   2016 WL 3617776 (E.D. Tex. July 6, 2016)............................................................................ 23

*Majdipour v. Jaguar Land Rover N. Am., LLC*,
   2013 WL 5574626 (D.N.J. Oct. 9, 2013) ................................................................................ 12

*Marshall v. Kusch*,
   84 S.W.3d 781 (Tex. App. 2002) ............................................................................................. 17

*May v. AC & S, Inc.*,
   812 F. Supp. 934 (E.D. Mo. 1993) .......................................................................................... 13

*McCabe v. Daimler AG*,
   948 F. Supp. 2d 1347 (N.D. Ga. 2013) ................................................................................... 12

*McLaughlin v. Northstar Drillings Techs., Inc.*,
   138 S.W.3d 24 (Tex. App. 2004) ............................................................................................. 11

*McLeod v. Gyr*,
   439 S.W.3d 639 (Tex. App. 2014) ........................................................................................... 18

*Meta-Film Associates, Inc. v. MCA, Inc.*,
   586 F. Supp. 1346 (C.D. Cal. 1984)......................................................................................... 23

*Mitchell v. Gen. Motors LLC*,
   2014 WL 1319519 (W.D. Ky. Mar. 31, 2014)........................................................................ 12

*Myre v. Meletio*,
   307 S.W.3d 839 (Tex. App. 2010) ........................................................................................... 17

*Nelson v. Nissan N. Am.*,
   894 F. Supp. 2d 558 (D.N.J. 2012) .......................................................................................... 12

*Newton v. City of New York*,
   640 F. Supp. 2d 426 (S.D.N.Y. 2009) .................................................................................. 8, 11

*Nunes v. Toshiba Am. Info. Sys., Inc.*,
   2016 WL 5920345 (C.D. Cal. June 23, 2016).......................................................................... 9

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Owen v. Gen. Motors Corp.*,
533 F.3d 913 (8th Cir. 2008) ..................................................................... 13

*Perez v. Volkswagen Group of Am., Inc.*,
2013 WL 1661434 (W.D. Ark. Apr. 17, 2013) ........................................... 12

*Phillips v. Ford Motor Co.*,
2016 WL 7428810 (N.D. Cal. Dec. 22, 2016) .............................................. 9

*Reynante v. Toyota Motor Sales USA, Inc.*,
2018 WL 329569 (Cal. App. Ct. Jan. 9, 2018) ............................................. 9

*Rogozienski v. Allen*,
2007 WL 867773 (Cal. Ct. App. Mar. 23, 2007) ........................................ 17

*Rupp v. Summerfield,*
326 P.2d 912 (Cal. App. Ct. 1958) ............................................................... 6

*Rylott-Rooney v. Alitalia-Linee Aeree Italiane SpA*,
2009 WL 37817 (S.D.N.Y. Jan. 6, 2009) ................................................ 8, 11

*Safaie v. Jacuzzi Whirlpool Bath, Inc.*,
2008 WL 4868653 (Cal. App. Ct. Nov. 12, 2008) ....................................... 9

*Scott v. Blue Springs Ford Sales, Inc.*,
215 S.W.3d 145 (Mo. Ct. App. 2006) ........................................................ 23

*Seifi v. Mercedes-Benz USA, LLC*,
2013 WL 5568449 (N.D. Cal. Oct. 9, 2013) .............................................. 12

*Sharpe v. Gen. Motors Corp.*,
401 S.E.2d 328 (Ga. Ct. App. 1981) .......................................................... 12

*Smith v. City of St. Louis*,
409 S.W.3d 404 (Mo. Ct. App. 2013) ........................................................ 22

*Smith v. Ford Motor Co.*,
462 F. App'x 660 (9th Cir. 2011) ............................................................... 12

*Smith v. Ford Motor Co.*,
749 F. Supp. 2d 980 (N.D. Cal. 2010) ....................................................... 12

*State Farm Lloyds v. Nicolau,*
951 S.W.2d 444 (Tex. 1997) ...................................................................... 20

*Steele v. Goddard*,
2013 WL 3013671 (Tex. App. June 13, 2013) ........................................... 17

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Suddreth v. Mercedes–Benz, LLC,*
    2011 WL 5240965 (D.N.J. Oct. 31, 2011) ............................................................ 12

*Tershakovec v. Ford Motor Co.,*
    2018 WL 3405245 (S.D. Fla. July 12, 2018) ........................................................ 5

*United Coin Meter Co. v. Johnson-Campbell Lumber Co.,*
    493 S.W.2d 882 (Tex. Civ. App. 1973) ................................................................ 24

*Webb v. Carter's Inc.,*
    272 F.R.D. 489 (C.D. Cal. 2011) .......................................................................... 9

**Statutes**

Cal. Bus. & Prof. Code § 17203 ................................................................................. 22

Mo. Stat. § 400.2-725(4) ............................................................................................ 13

Mo. Stat. § 516.280 ..................................................................................................... 13

Mo. Stat. § 516.300 ..................................................................................................... 13

**Rules**

Fed. R. Civ. P. 23 ................................................................................................. 1, 2, 4

Fed. R. Civ. P. 56 ................................................................................................. 1, 2, 8

Fed. R. Evid. 611(c) .............................................................................................. 8, 11

# INTRODUCTION

A principal reason and advantage for the Court to have simultaneous briefing of summary judgment *and* class certification is that dual track briefing enables the Court to better evaluate—based upon a mature evidentiary record—whether the requirements of Rule 23 can be satisfied at all, much less at trial.  In some cases, the combined Rules 56 and 23 evaluation shows that the Rule 23 requirements can be satisfied; but in other instances, the plaintiffs' defenses and arguments against summary judgment independently establish the inherent lack of predominant commonality and plaintiffs' inability to comply with Rule 23's requirements.[1]

This case falls into that latter category.  Time after time, plaintiffs' defenses against summary judgment under Rule 56 turn on individual and uncommon questions of fact, precluding certification under Rule 23.  For example:

- Plaintiffs oppose summary judgment arguing that New GM sold millions of cars "to unsuspecting consumers who paid a price reflecting *the belief* that the cars had no known defects."  Pls. Opp. (Dkt. 7246) at 1 (emphasis added).  To drive their point home, plaintiffs claim they would have "*behaved differently*" and either "not have entered into the transaction" or "paid less" had they known the truth.  *Id.* at 39, 42, 52 (emphasis added).  Of course, those arguments contradict named plaintiffs' testimony regarding the myriad differing reasons they bought their vehicles, expert consumer survey evidence in the class certification context, and numerous decisions holdings that questions of "belief" or how someone would have "behaved" are individual, not class common.  New GM Memo. (Dkt. 7096) at 18-25.

- Plaintiffs oppose summary judgment arguing "there is a genuine issue of material fact regarding defect manifestation" based on the individual facts of the Texas and Missouri plaintiffs' vehicles—confirming the need to examine each putative class member's experience with his or her particular vehicle to determine whether a defect manifested.  Pls.

---

[1]  *See*, *e.g.*, *Bd. of Trustees of S. Cal. IBEW-NECA Defined Contribution Plan v. Bank of N.Y. Mellon Corp.*, 287 F.R.D. 216, 226-28 (S.D.N.Y. 2012) (denying certification where plaintiffs relied on differences among putative class members in opposing summary judgment); *Espejo v. Santander Consumer USA, Inc.*, 2016 WL 6037625, at *7, 10 (N.D. Ill. Oct. 14, 2016) ("Plaintiffs' argument in opposition to ... motions for summary judgment amply demonstrate … how such [individual] questions would predominate (indeed, consume) the litigation"); *Gieseke v. First Horizon Home Loan Corp.*, 2007 WL 437792, at *1 (D. Kan. Feb. 6, 2007) ("Plaintiffs' own words in response to defendants' summary judgment motion best explain the problem with certifying the claims as a class action.").

Opp. at 22-23.  Plaintiffs' summary judgment arguments confirm the lack of predominant commonality under Rule 23.

- Plaintiffs argue "there are genuine issues of material fact regarding the value of Plaintiffs' lost time" based upon differing individual facts, such as time value for plaintiffs ranging from $600 to "two hours of work at an hourly rate of $25." Pls. Opp. at 26-27 & n.17. By contrast, their so-called lost time expert, Dr. Manuel, calculates damages formulaically and uniformly for all putative class members, ignoring the individual facts upon which plaintiffs rely. Confirming the individual, non-class nature of the necessary factual inquiry, plaintiffs "concede that, to the extent other Plaintiffs have not presented evidence demonstrating resulting financial loss, they may not recover for lost time under Missouri law." *Id*. at 26.

These examples reflect only some of the many instances in plaintiffs' summary judgment opposition brief in which—in an attempt to survive summary judgment—plaintiffs argue individual, plaintiff-specific facts, confirming why no classes can possibly be certified here under Rule 23.

Even as to the specific, differing plaintiff facts argued, plaintiffs cannot avoid summary judgment under Rule 56.  Plaintiffs' summary judgment arguments defeat the proposed classes and separately warrant summary judgment against their individual claims on the merits.

# I.   PLAINTIFFS' OPPOSITION CONFIRMS THAT NO PLAINTIFF HAS ANY LEGALLY RECOVERABLE DAMAGES.

## A.   Plaintiffs Have No Legally Cognizable Benefit-Of-The-Bargain Damages.

Plaintiffs acknowledge that the Court's August 6, 2019 Opinion rejected and granted summary judgment against plaintiffs' claims for benefit-of-the-bargain damages.  Pls. Opp. at 1, 20; *see also In re Gen. Motors LLC Ignition Switch Litig.*, 2019 WL 3564698, at *1, 13, 17 (S.D.N.Y. Aug. 6, 2019) ("*BotB SJ Opinion*").[2]  Based on that August 6 Opinion, when it renewed its summary judgment motion, New GM omitted its arguments regarding the efficacy of

---

[2]  Citation abbreviations are "SUF" for New GM's Statement of Undisputed Material Facts; "PSUF" for Plaintiffs' Statement of Undisputed Material Facts; "Pls. SUF Resp." for Plaintiffs' Response to the SUF; "SUF Reply" for New GM's Reply to its SUF; and "PSUF Resp." for New GM's Response to the PSUF. All record and legal citations omit internal quotation marks, citations, footnotes, brackets, and other modifications unless otherwise indicated.

the recall repair remedies because such arguments were no longer relevant to the renewed motion. Nonetheless, plaintiffs' opposition includes more than a dozen pages of allegations and arguments that the recall repairs were not effective. *E.g.*, Pls. Opp. at 3-16. All the arguments New GM makes in this renewed motion (such as that plaintiff have no damages, certain plaintiffs cannot prove manifestation, New GM did not owe a duty to certain plaintiffs, etc.) defeat plaintiffs' claims regardless of the efficacy of the recall repairs. For example, plaintiffs assert that the recall repairs are relevant to their request for injunctive relief, *id.* at 1, 20, but New GM does not rely on the recall repairs in moving for summary judgment against plaintiffs' claim for injunctive relief. Nor does plaintiffs' own opposition rely on their allegations that the recall repairs were ineffective in opposing New GM's arguments seeking summary judgment on their injunctive relief claim; indeed, plaintiffs' injunctive relief argument does not even mention New GM's recall repairs. Pls. Opp. at 53-58. Accordingly, allegations and arguments about whether New GM's recall repairs were effective are simply irrelevant to New GM's refiled summary judgment motion. New GM, however, reserves the right to cite facts and make arguments regarding the recall repairs in any future motions or briefs where the efficacy of the recall repair remedies is relevant.

### B. Plaintiffs Cannot Prove A Manifest Defect For Texas And Missouri Claims.

Plaintiffs admit Texas law requires defect manifestation for all claims at issue, but argue the evidence shows manifestation for individual plaintiffs. Pls. Opp. at 22-23. The undisputed facts demonstrate that plaintiffs are wrong for at least Texas plaintiffs Fuller, Al-ghamdi, and McClellan.

The ignition defect plaintiffs allege is that the vehicle may inadvertently rotate out of the "on" or "run" position into the "accessory" or "off" position, causing the vehicle to lose power and disabling the airbags. New GM Memo. at 10. But Fuller, whom plaintiffs claim

experienced defect manifestation, stated in her sworn Plaintiff Fact Sheet and testified at deposition that her vehicle did not experience a moving stall, loss of power steering assist, or failure of the airbags to deploy.  SUF ¶ 185.  Fuller claims instead that she had difficulty turning the key, and plaintiffs have no evidence that such difficulty is related to any defect at issue; indeed, their claim is that the key turns too easily.  Pls. Opp. at 22.

Plaintiff Al-ghamdi, claims to have had moving stalls, but plaintiffs' own technical expert admits that stalls occur for many different reasons.  SUF ¶ 226.  Al-ghamdi has no evidence that her ignition switch rotated, and admitted that in the first incident the switch was in the "on" position and not in the "accessory" or "off" position, establishing that it did not rotate as is required to prove manifestation.  SUF ¶ 173.  Plaintiffs claim "it is possible" that her switch rotated (Pls. Opp. at 23), but summary judgment cannot be defeated by speculative possibilities.  New GM Memo. at 9.  As Al-ghamdi has no evidence of rotation and thus no evidence of defect manifestation, New GM is entitled to summary judgment on her claims.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Like Al-ghamdi, McClellan lacks evidence of manifestation of the recall condition.  McClellan's vehicle was included in the EPS Assist recall, SUF ¶¶ 197-98, for which the alleged defect is that a vehicle may experience "sudden loss of power steering assist," not that the vehicle stalls.  New GM Memo. at 5.  McClellan's allegations that her vehicle stalled does not establish a loss of EPS assist while operating her vehicle.[3]

---

[3]  For Graciano, New GM explained that he relied on inadmissible hearsay in his attempt to show a manifest defect.  New GM Memo. at 11.  Plaintiffs do not dispute that Graciano's testimony is hearsay, but instead submit a declaration from a non-plaintiff claiming that the vehicle stalled with the ignition switch rotating.  Pls. Opp. at 23; PSUF ¶¶ 511-12.  Graciano has no evidence that he ever experienced the alleged defect.  That he must now rely on the testimony of a third party simply confirms why plaintiffs cannot satisfy Rule 23, as determining whether each plaintiff and putative class member can prove manifestation is an individual fact issue predominating over any alleged common ones.

Regarding Missouri, plaintiffs argue—based on a single Florida federal district court decision—that this Court should reverse its prior holding that Missouri law requires a manifest defect for implied warranty. Pls. Opp. at 21-22. That argument is without merit. This Court properly relied on the Missouri appeals court decision in *Hope v. Nissan N. Am, Inc.*, 353 S.W.3d 68, 87 (Mo. Ct. App. 2011), as well as Missouri federal district court cases holding that manifestation is required for breach of implied warranty claims. *In re Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 3920353, *35 (S.D.N.Y. July 15, 2016) ("*TACC MTD Op.*"). The Florida case—*Tershakovec v. Ford Motor Co.*, 2018 WL 3405245, at *8 (S.D. Fla. July 12, 2018)—cannot overcome Missouri case law, especially as *Tershakovec* does not cite any Missouri authorities suggesting that a manifest defect is not required. *Tershakovec* faults *Hope* for not relying on Missouri law, but a state appellate court can rely on authorities from other jurisdictions to establish its state's law, which is what *Hope* did.

The record evidence establishes that four Missouri plaintiffs—Stefano, Akers, Witherspoon, and K. Robinson—cannot prove a manifested defect. Plaintiffs argue that the vehicles of these four plaintiffs lost power or shut off, but a vehicle may lose power for many different reasons unrelated to any defect. *E.g.*, SUF ¶ 226. The question is whether the power loss was caused by inadvertent ignition switch rotation to the "accessory" or "off" position. None of these four plaintiffs has any proof of rotation or that the recall condition manifested in their vehicles. Witherspoon testified that her key remained in the "run" position for each shutoff and thus did not rotate, while Stefano claims his single power loss was caused by a faulty battery in the vehicle's key fob. New GM Memo. at 11. As they lack evidence necessary to prove manifestation, summary judgment should be granted against each of these plaintiff's implied warranty claims. *Celotex*, 477 U.S. at 322-23.

**C.      Plaintiffs Do Not—And Cannot—Distinguish Case Law Holding That "Lost Personal Time" Is Not Legally Recoverable Damage.**

Plaintiffs concede that Missouri requires lost income to recover for "lost time," but argue the rule is otherwise for California and Texas.  Pls. Opp. at 24-27.  This is untrue.  Numerous recent cases from California and Texas—involving both consumer protection and common law fraud claims—hold that lost time is not recoverable without lost income.  New GM Memo. at 11-14.  Plaintiffs make no effort to distinguish these cases.  Pls. Opp. at 24-27.  Nor do they explain why California and Texas would have a different rule from "the overwhelming majority of states [that] adhere to the view that lost-time damages are the equivalent of lost earnings or income."  Opinion re Order No. 131 Issues, Dkt. 6028, at 59.

Plaintiffs cite distinguishable or inapplicable case law.  The sixty-year-old decision in *Rupp v. Summerfield* involved a plaintiff being "held in custody approximately six weeks" because of the defendant's malicious prosecution.  326 P.2d 912, 914 (Cal. App. Ct. 1958).  *Rupp* did not involve time spent repairing any product, and is not relevant here where plaintiffs do not bring any malicious prosecution claims and were not incarcerated.

Plaintiffs' other citations ignore this Court's holding that "'loss of time' appears to be something of a term of art" with a "broadly recognized and well-established meaning" excluding lost personal time.  Opinion re Order No. 131 Issues, Dkt. 6028, at 59.  Nothing in the cases plaintiffs cite suggests that the courts in those decisions departed from this established meaning or otherwise allow for "lost personal time."  *Id.*

Moreover, several plaintiffs did not have their vehicles repaired and thus concede they have no lost time damages.  Pls. Opp. at 24 n.16; *see also* New GM Memo. at 14-15.  Nor do Thomas or Fuller have lost-time damages under plaintiffs' own theory.  Pls. Opp. at 26, 27 n.17.  To create a purported common issue, the 5ACC alleges that plaintiffs "incurred damages in at

6

least the form of lost time *required to repair their vehicles*," not that plaintiffs lost income from not being able to drive their vehicles for some other reason.   5ACC ¶¶ 1602, 6545 (emphasis added).   Thomas and Fuller, in contrast, only claim to have lost income because of issues with their vehicles, not that this time was "lost" because their vehicles were being repaired pursuant to the recalls (or otherwise).  PSUF ¶¶ 411, 505.

Finally, even if proof of lost income was not required, plaintiffs have no evidence to support their lost time claims because they rely on Dr. Manuel, who did not address any named plaintiff's facts or claims.  New GM Memo. at 15.  Instead, Manuel's damages methodology relies on averages and unsubstantiated assumptions (Pls. Opp. at 19), and plaintiffs have no authority holding that a person can recover lost time based on averages of earnings, travel distance, and time spent at a dealership.  *See In re Asacol Antitrust Litig.,* 907 F.3d 42, 54-56 (1st Cir. 2018).

## II.   THERE IS NO ISSUE OF MATERIAL FACT AS TO WHETHER OR NOT PLAINTIFFS WITH SERVICE PART VEHICLES HAD A FAULTY SWITCH.

Plaintiffs have no evidence of the ignition switch torque for the six plaintiffs (Basseri, K. Robinson, Padilla, Akers, Hawkins, and Rukeyser) with Service Parts Vehicles.  Pls. Opp. at 27-28.   Plaintiffs also ignore this Court's holding that Service Parts Vehicles "were not manufactured with the faulty ignition switch, but … could have been repaired at some point using the faulty ignition switch.  Accordingly, if [Service Parts Vehicle plaintiffs] are ultimately to succeed on their claims with respect to the ignition switch, they will have to show that their cars in fact contained *that defect*."  *TACC MTD Op.*, 2016 WL 3920353, at *20 n.15 (emphasis added).

Plaintiffs argue, *first*, that they need not show the Service Parts Vehicles had "that defect" at all because there are allegedly "other" defects.  Plaintiffs principally rely on the *Ward*

summary judgment decision, Pls. Opp. at 28-29, but in that case the "core factual dispute" was whether the ignition switch in Ward's vehicle had sufficient resistive torque to withstand the accelerations in Ward's accident. *In re Gen. Motors LLC Ignition Switch Litig.*, 2017 WL 2664199, at *3, 6 (S.D.N.Y. June 20, 2017). Here, plaintiffs have no evidence of the ignition switch torque for any of their vehicles, much less that the torque was below specification.

*Second*, plaintiffs do not dispute that, regardless of the *Ward* decision, they must have admissible expert evidence supporting a defect theory. As discussed previously, plaintiffs' experts' opinions on this issue are irrelevant. New GM Memo. at 18. Without the requisite expert evidence, New GM is entitled to summary judgment. *See In re General Motors LLC Ignition Switch Litig.*, 2017 WL 6729295, at *1, 11 (S.D.N.Y. Dec. 28, 2017). Plaintiffs could have had an expert examine their vehicles and opine about whether the switch in each is defective, but they chose not to do so, dooming their claims under Rule 56.

## III. PLAINTIFFS' OPPOSITION DEMONSTRATES THAT MANY OF THEM CANNOT ESTABLISH NEW GM'S POTENTIAL LIABILITY.

### A. Various Plaintiffs Cannot Show Reliance.

Several plaintiffs did not mention safety when asked open-ended questions about why they purchased their vehicles. New GM Memo. at 21-25. Plaintiffs argue that safety was important to them, Pls. Opp. at 40, but this is based largely on saying "yes" in response to plaintiffs' counsels' leading questions, and cannot prevent summary judgment. *E.g.*, PSUF Response ¶¶ 266-67, 324, 387, 461, 489, 524; Fed. R. Evid. 611(c); *Rylott-Rooney v. Alitalia-Linee Aeree Italiane SpA*, 2009 WL 37817, at *2-3 (S.D.N.Y. Jan. 6, 2009) (the "assertions in plaintiff's counsel's leading question are, however, not evidence in themselves" and were not sufficient to prevent summary judgment, especially where the witness himself did not offer such testimony); *Newton v. City of New York*, 640 F. Supp. 2d 426, 444-45 (S.D.N.Y. 2009) (striking

witness's responses to plaintiffs leading questions and granting summary judgment to defendant); *see also* New GM Memo. at 21 n.13.   Under governing case law, such plaintiffs cannot show reliance.  New GM Memo. at 18-25.

Unable to overcome the record evidence and case law, plaintiffs argue that for California residents Basseri and Padilla reliance can be "presumed, or at least inferred" if the omissions are material.  Pls. Opp. at 39.  No such inference applies here because where a plaintiff alleges omissions concerning safety California courts refuse to infer reliance where plaintiffs were not exposed to uniform misrepresentations or had varying reasons for making a purchase.  *E.g.*, *Phillips v. Ford Motor Co.*, 2016 WL 7428810, at *15-16 (N.D. Cal. Dec. 22, 2016).  For example, *In re Vioxx Class Cases* rejected an inference of reliance and materiality where a drug caused an increased risk of death because some plaintiffs might still use the drug if it were available, patients received information from different sources, and each consumer had his or her own preferences and characteristics.[4]  180 Cal. App. 4th 116, 122-23, 133-34 (Cal. App. Ct. 2009).  California courts also have held that reliance on third party statements defeats claims. *E.g.*, *Howard v. GC Servs., Inc.*, 2015 WL 5163328, at *9-10 (Cal. App. Ct. Sept. 3, 2015); *Nunes v. Toshiba Am. Info. Sys., Inc.*, 2016 WL 5920345, at *8 (C.D. Cal. June 23, 2016).  Here, named plaintiffs had widely varying reasons for their purchases besides safety, such as relying on third party recommendations, liking a vehicle's look, or wanting an American car, among

---

[4]  *See also Johnson v. Harley-Davidson Motor Co. Grp. LLC*, 285 F.R.D. 573, 576, 581 (E.D. Cal. 2012) (denying certification of class alleging UCL and CLRA claims based on motorcycle engine heat presenting an unreasonable risk of burns to users where "there are numerous individualized issues as to whether the reasonable consumer purchasing one of Defendants' motorcycles would find the excessive heat material"); *Webb v. Carter's Inc.*, 272 F.R.D. 489, 502-03 (C.D. Cal. 2011) (denying certification of UCL and CLRA allegations that defendant made toxic clothing that injured children because "a consumer's response to a warning will vary based on many factors"); *Fine v. ConAgra Foods, Inc.*, 2010 WL 3632469, at *1, 3-4 (C.D. Cal Aug. 26, 2010); *Reynante v. Toyota Motor Sales USA, Inc.*, 2018 WL 329569, at *5 (Cal. App. Ct. Jan. 9, 2018); *Safaie v. Jacuzzi Whirlpool Bath, Inc.*, 2008 WL 4868653, at *8-9 (Cal. App. Ct. Nov. 12, 2008).

others.    New GM Memo. at 21-25.    Nor did plaintiffs directly receive any uniform misrepresentations.  New GM Memo. at 26-28.  Under these admitted facts, reliance must be proven, not inferred, and plaintiffs such as Basseri and Padilla lack evidence showing they relied on New GM's omissions.

Independently, Basseri, Orosco, and Padilla cannot show they would have been aware of any information disclosed by New GM.  New GM Memo. at 23-24.  Relying on *Daniel v. Ford Motor Co.*, plaintiffs claim that if the recall conditions had been disclosed, New GM-affiliated dealers would have provided the information to plaintiffs.  806 F.3d 1217, 1226-27 (9th Cir. 2015); Pls. Opp. at 40.  But this is speculation—particularly where these plaintiffs did not view New GM materials before purchase.  Moreover, Basseri bought her vehicle used from a Nissan dealer, and following the *Daniel* decision, California district courts have dismissed claims for lack of awareness where vehicles were purchased from dealers not affiliated with the manufacturer.  *Hindsman v. Gen. Motors LLC*, 2018 WL 2463113, at *13 (N.D. Cal. June 1, 2018); *Butler v. Porsche Cars N. Am., Inc.*, 2017 WL 1398316, at *11 (N.D. Cal. Apr. 19, 2017). Plaintiffs' alternative claim that disclosure would have generated sufficient publicity to notify all plaintiffs is equally speculative, especially given the undisputed facts that these three plaintiffs ignored information from New GM.  Indeed, the evidence here demonstrates that other named plaintiffs did not even know that Old GM had filed for bankruptcy in 2009, an event that received pervasive nationwide coverage.  New GM Memo. at 55.

For the fraudulent omissions claims of R. Robinson and Stefano, plaintiffs confuse two separate requirements under Missouri fraud law: whether a plaintiff has a "right to rely" and whether that plaintiff can prove "reliance" on the alleged statements or omissions.  Pls. Opp. at 41-42.  Plaintiffs' primary authority of *Hess v. Chase Manhattan Bank, USA, N.A.*, states that to

recover for fraud a Missouri plaintiff must prove both "the hearer's reliance on the representation being true; [and] … the hearer's right to rely thereon."   220 S.W.3d 758, 765 (Mo. 2007); *see also Dancin Dev., L.L.C. v. NRT Mo., Inc.*, 291 S.W.3d 739, 743-44 (Mo. Ct. App. 2009) (fraud elements include "(5) the hearer's reliance on the truth of the representation; (6) the hearer's right to rely thereon").   Nothing in *Hess* suggests that "reliance" need not be proven for an allegedly material omission.   *Id.*   Instead, as plaintiffs' own quote shows, *Hess* concerns the "right to rely," Pls. Opp. at 42, which addresses whether a plaintiff can rely on certain statements as a matter of law, such as opinions or predictions.   *E.g.*, *Dancin*, 291 S.W.3d at 744.   By contrast, New GM's argument concerns the separate and independent element of "reliance," which is whether plaintiffs can show in fact they relied on the defendant's statement or omission. The record evidence shows that R. Robinson and Stefano did not rely on New GM's omissions or misrepresentations, but instead relied on other factors such as their shared, long-term enjoyment of Camaros.  New GM Memo. at 24-25.

The testimony of Texas plaintiffs Al-ghamdi and McClellan shows they relied on other factors and not on representations or omissions from New GM.   New GM Memo. at 21. Plaintiffs argue that they testified they would not have purchased their vehicles if the recall conditions had been disclosed, but this was in response to plaintiffs' counsel's leading questions and is inadmissible on summary judgment.   Fed. R. Evid. 611(c); *Rylott-Rooney*, 2009 WL 37817, at *2-3; *Newton*, 640 F. Supp. 2d 426, 444-45 (S.D.N.Y. 2009).   Moreover, Al-ghamdi expressly relied on the recommendations of her family and step-father, and Texas courts regularly reject DTPA and fraud claims where plaintiffs relied on statements by someone other than the defendant.  *See Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 694 (Tex. 2002); *McLaughlin v. Northstar Drillings Techs., Inc.*, 138 S.W.3d 24 (Tex. App. 2004); *Bowles v.*

*Mars, Inc.*, 2015 WL 3629717, at *4 (S.D. Tex. June 10, 2015); New GM Memo. at 20-21.

**B.      Plaintiffs Concede They Cannot Prove Actionable Misrepresentations.**

Plaintiffs fail to respond to New GM's arguments regarding affirmative misrepresentations, and thus any misrepresentation claims should be dismissed as a matter of law.  New GM Memo. at 26-31; Pls. Opp. at 43-44.[5]

**C.      Plaintiffs' Implied Warranty Claims Are Barred In Whole Or In Part.**

**1.      New GM's Warranty Limitations Are Not Unconscionable.**

Texas and Missouri courts consistently enforce limitations in the written warranties against implied warranty claims.  New GM Memo. at 32-33, 34-35.  Unable to deny settled law, plaintiffs argue these limitations are unconscionable because of New GM's concealment of latent defects.  Courts across the country have rejected their argument.[6]  Vehicle warranty limitations

---

[5]  Plaintiffs' reliance on a non-controlling opinion in *In re Duramax Diesel Litig.,* 298 F. Supp. 3d. 1037 (E.D. Mich. 2018), is misplaced.  The *Duramax* court confirmed that puffery cannot sustain affirmative misrepresentation claims, which plaintiffs have now disavowed.  *Id.* at 1084.  Moreover, to the extent *Duramax* could be read to use puffery to support a finding that omissions are material, any such holding would be legally erroneous and should not be relied on by this Court because puffery is immaterial as a matter of law.  New GM Memo. at 29-31.  Plaintiffs cite no other federal district or appellate court, in the Second Circuit or elsewhere, that has considered puffery in determining materiality.

[6]  *E.g.*, *Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 993-94 (N.D. Cal. 2010) (granting Ford summary judgment and rejecting plaintiffs' argument that "Ford's warranty, as applied to the ignition lock, is unconscionable because the warranty is presented in the form of a nonnegotiable contract and contains a durational limitation that Ford enforces with respect to a known, latent defect"), *aff'd*, 462 F. App'x 660, 663-64 (9th Cir. 2011) (no procedural unconscionability because plaintiff "was presented with a meaningful choice, not just the option of purchasing a different vehicle from a different manufacturer, but also the option of purchasing a different warranty with an extended durational limit from Ford."); *Darne v. Ford Motor Co.*, 2015 WL 9259455, at *8 (N.D. Ill. Dec. 18, 2015) (vehicle warranty was not substantively unconscionable despite allegations that "Ford knew that the 6.4L Engine was defective and would fail repeatedly beyond the warranty repair period"); *Fisher v. Honda N. Am., Inc.*, 2014 WL 2808188, at *9-10 (C.D. Cal. June 12, 2014); *Mitchell v. Gen. Motors LLC*, 2014 WL 1319519, at *17 (W.D. Ky. Mar. 31, 2014); *Majdipour v. Jaguar Land Rover N. Am., LLC*, 2013 WL 5574626, at *20 (D.N.J. Oct. 9, 2013); *Nelson v. Nissan N. Am.*, 894 F. Supp. 2d 558, 566 (D.N.J. 2012); *McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1358 (N.D. Ga. 2013); *Seifi v. Mercedes-Benz USA, LLC*, 2013 WL 5568449, at *5 (N.D. Cal. Oct. 9, 2013); *Suddreth v. Mercedes–Benz, LLC*, 2011 WL 5240965, at *4 (D.N.J. Oct. 31, 2011);  *see also Perez v. Volkswagen Group of Am., Inc.*, 2013 WL 1661434, at *5 (W.D. Ark. Apr. 17, 2013) (collecting cases holding that 3-year / 36,000 mile and similar vehicle warranties are not unconscionable); *Sharpe v. Gen. Motors Corp.*, 401 S.E.2d 328, 331 (Ga. Ct. App. 1981) ("The terms

are not procedurally unconscionable because buyers have the option of purchasing from a different manufacturer or buying an extended warranty.  Nor are such warranties substantively unconscionable because, as these courts explain, warranties inform buyers of the possibility of a defect and allow for repairs.

### 2. Statutory Limitations Periods Cannot Be Tolled By Fraudulent Concealment.

Plaintiffs' argument that fraudulent concealment tolls the implied warranty limitation periods for Missouri and Texas is wrong.  Under Missouri law, fraudulent concealment does not apply to implied warranty claims, as explained in *May v. AC & S, Inc.*, which tolled the limitations period for tort claims—but not implied warranty claims—based on fraudulent concealment.  812 F. Supp. 934, 946-47 (E.D. Mo. 1993).  Missouri's fraudulent concealment tolling flows from Mo. Stat. § 516.280.  *Id.* at 946.  Mo. Stat. § 516.300 provides that § 516.280 "shall not extend to any action which is or shall be otherwise limited by any statute."  Implied warranty claims are governed by the UCC, which has its own limitations period.  Therefore, § 516.280 does not apply to implied warranty claims.  While Missouri's UCC provision, Mo. Stat. § 400.2-725(4), states that the UCC does not "alter the law on tolling of the statute of limitations," here the law on fraudulent concealment tolling does not apply by its own terms.  Plaintiffs rely on dicta from *Owen v. Gen. Motors Corp.*, which did not consider § 516.300 and affirmed dismissal of implied warranty claims.  533 F.3d 913, 920 & n.5 (8th Cir. 2008).

In Texas, fraudulent concealment tolling based on omissions requires that the defendant have a duty to disclose.  *E.g.*, *B. Mahler Interests, L.P. v. DMAC Constr., Inc.*, 503 S.W.3d 43,

---

of appellee's warranty expressly excluded a recovery of consequential damages (other than for injury to the person) as a remedy for its breach and this exclusion is not unconscionable."); *Burtt v. Ford Motor Co.*, 2008 WL 373659, at *4-5 (W.D. Va. Feb. 11, 2008); *Hornberger v. Gen. Motors Corp.*, 929 F. Supp. 884, 892 (E.D. Pa. 1996); *see also Freidman v. Gen. Motors Corp.*, 2009 WL 1515031, at *3 (S.D.N.Y. May 29, 2009).

58 (Tex. App. 2016).  This Court already held that New GM does not have such a duty under Texas law, defeating plaintiffs' tolling argument.  *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 453-54 (S.D.N.Y. 2017) *("FACC MTD Op.")*.

### 3. Plaintiffs' Substantial Use Of Their Vehicles Independently Precludes Their Implied Warranty Claims.

Numerous cases hold that vehicles, including those with alleged latent safety defects, are merchantable where they are operated for years or tens of thousands of miles without incident. *E.g.*, *Am. Suzuki Motor Corp., v. Superior Court*, 44 Cal. Rptr. 2d 526, 528, 531 (Cal. App. Ct. 1995); *Am. Honda Motor Co. v. Superior Court*, 199 Cal. App. 4th 1367, 1369, 1377 (2011); New GM Memo. at 36-39.  Plaintiffs make no effort to distinguish this case law.  Pls. Opp. at 46-47.  And plaintiffs' cited cases support New GM's position.  For example, *Keegan v. Am. Honda Motor Co.* explains that a "vehicle that operates for some time after purchase may still be deemed 'unfit for ordinary purposes' *if* its components are so defective that the vehicle *becomes inoperable within an unacceptably short period of time*."  838 F. Supp. 2d 929, 948 (C.D. Cal. 2012) (emphasis added).[7]  In this case, many plaintiffs drove their vehicles for lengthy periods and tens or even hundreds of thousands of miles without incident.  New GM Memo. at 38-39.

### D. The Court Should Reject Plaintiffs' Belated Request To Reconsider And Reverse Its Unjust Enrichment Rulings.

Plaintiffs' unjust enrichment arguments are *de facto* and improper attempts to have the

---

[7]  *See also Aguilar v. Gen. Motors LLC*, 2013 WL 5670888, at *7 (E.D. Cal. Oct. 16, 2013) (denying dismissal of implied warranty claim where plaintiff's "vehicle experienced general instability in the steering column and vibrations in the steering wheel, along with noises, *within one year of purchasing his vehicle*") (emphasis added); *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1224 (C.D. Cal. 2011) (water flooded vehicle's interior 16 months after purchase and again 18 months after purchase); *Gen. Motors Corp. v. Brewer*, 966 S.W.2d 56, 57 (Tex. 1998) (ordering judgment against plaintiffs' implied warranty claims); *In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*, 966 F. Supp. 1525, 1533 (E.D. Mo. 1997) (dismissing implied warranty claims based on defective braking system where plaintiffs "have not alleged brake failure or that they have stopped driving their vehicles because of the defects").

Court reverse its prior rulings and avoid the law of this case. For Texas, this Court relied on Texas Supreme Court precedent to hold that "the unjust enrichment claims of all the Texas Plaintiffs falls short because they have an adequate remedy at law." *FACC MTD Op.*, 257 F. Supp. 3d at 455 (citing cases including *BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 770 (Tex. 2005)); *see also Fortune Production Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000). Plaintiffs vaguely claim that "exceptions apply" to this rule, but do not identify any exception or explain how one applies. Pls. Opp. at 48.

For Missouri, plaintiffs do not distinguish or respond to the authorities holding that unjust enrichment is barred by an adequate legal remedy. New GM Memo. at 41; Pls. Opp. at 48. Separately, this Court previously held that a plaintiff's "claim must be dismissed because she alleges the existence of an express warranty, and her unjust enrichment claims arise out of the same allegations." *TACC MTD Op.*, at 2016 WL 3920353, at *35. The Court's holdings are well-supported by Missouri case law: "If the plaintiff has entered into an express contract for the very subject matter for which he seeks recovery, unjust enrichment does not apply, for the plaintiff's rights are limited to the express terms of the contract.'" *Howard v. Turnbull*, 316 S.W.3d 431, 436 (Mo. Ct. App. 2010).[8]  At most, plaintiffs' cases state only that a party can allege unjust enrichment as an alternative theory in the event the evidence shows there was no contract. Pls. Opp. at 48. But this case is no longer at the pleading stage, there is no dispute that the named plaintiffs at issue received a warranty, and plaintiffs have not produced any evidence that the warranties are invalid or unenforceable.

For California, New GM cited state appellate court cases holding that unjust enrichment

---

[8]  *Hunt v. Estate of Hunt*, 348 S.W.3d 103, 111 (Mo. Ct. App. 2011); *Affordable Communities of Mo. v. Fed. Nat'l Mortg. Ass'n*, 714 F.3d 1069, 1077 (8th Cir. 2013); *see also Lowe v. Hill*, 430 S.W.3d 346, 349-50 (Mo. Ct. App. 2014) (unjust enrichment is an "implied contract claim[]" that can "arise only where there is no express contract").

or restitution is not available where there is an adequate remedy at law (New GM Memo. at 40-41), and this Court previously held that such claims are not permitted "when there is a valid, express contract between the parties," *TACC MTD Op.*, 2016 WL 3920353, at *23.  Plaintiffs cannot, and do not even attempt to, distinguish this adverse authority.  Pls. Opp. at 48.  Instead, plaintiffs rely on two district court decisions (*id.*), but both fail to consider on-point California state case law, and neither attempts to distinguish the numerous California cases holding that an adequate legal remedy bars unjust enrichment or restitution claims.

### E.  Summary Judgment Should Be Granted Against Claims Of Old GM Or Used Vehicle Purchasers.

#### 1.  New GM Had No Duty To Disclose To Old GM Vehicle Purchasers.

Several plaintiffs purchased used Old GM vehicles that were not manufactured, distributed, or sold by New GM.  New GM did not engage in any transaction regarding these vehicles, which were built and originally sold before New GM existed.  Without any such transaction, there is no duty to disclose under state law regarding these vehicles.

Under California law, plaintiffs cannot dispute that New GM can only be liable under the UCL, CLRA, or for fraudulent concealment if New GM had a duty to disclose, and that multiple California state appellate courts have held there is no duty to disclose under California law without a transaction to which the defendant was a party.  New GM Memo. at 42 & n.37.  Plaintiffs argue that New GM had knowledge of the concealment, but this was equally true in the California cases rejecting a duty to disclose for lack of a transaction.  *E.g.*, *LiMandri v. Judkins*, 60 Cal. Rptr. 2d 539, 543 (Cal. Ct. App. 1997) (plaintiffs alleged defendant had superior knowledge of liens); *Hoffman v. 162 N. Wolfe LLC*, 175 Cal. Rptr. 3d 820, 823 (Cal. Ct. App. 2014) (plaintiffs alleged defendant knew it had interest in property).  Plaintiffs argue that New GM had disclosure and recall obligations under the federal Safety Act, but cite no California case

law holding this can create a duty to disclose under state law.  Pls. Opp. at 31; *compare Kovich v. Paseo Del Mar Homeowners' Ass'n*, 48 Cal. Rptr. 2d 758, 759 (Cal. App. Ct. 1996) (homeowners association had no duty to disclose construction defects to prospective buyer); *Rogozienski v. Allen*, 2007 WL 867773, at *9 (Cal. Ct. App. Mar. 23, 2007) (attorney who gave gift to temporary judge presiding over divorce proceedings was not required to disclose gift to opposing party despite ongoing relationship in litigation).  Finally, plaintiffs rely on two federal district court decisions and one California appellate court decision. Pls. Opp. at 31.  But none of those cases distinguish *LiMandri* and its progeny, which are binding regarding whether there is a duty to disclose.  *Id.*  Moreover, the plaintiffs' cited cases each involved products manufactured, distributed, and sold by the defendant, unlike in this case.  *Id.*

Plaintiffs' arguments regarding Texas law fail for similar reasons, and their attempts to distinguish New GM's case law are unavailing.  In *Steele v. Goddard*, the Texas appellate court rejected the claims against defendant based on multiple independent holdings, including that under the DTPA the defendant did not have "any duty to disclose any information to the [plaintiffs] considering he was not the seller of the house."  2013 WL 3013671, at *7 (Tex. App. June 13, 2013).  While reversing a verdict under the DTPA on an alternate ground, *Marshall v. Kusch* held there was no duty to disclose—which is equally required for omissions under the DTPA and fraudulent concealment (New GM Memo. at 43 n.38)—based on the defendant having no involvement in the sale to the plaintiff.  84 S.W.3d 781, 786 (Tex. App. 2002); *see also Myre v. Meletio*, 307 S.W.3d 839, 844 (Tex. App. 2010) (rejecting fraud claims based on defendant having no duty to disclose because he had no transaction with plaintiffs).  By contrast, in the cases plaintiffs cite, the defendant was directly involved in the transaction.[9]

---

[9]  *E.g.*, *Home Sav. Ass'n v. Guerra*, 733 S.W.2d 134, 136 (Tex. 1987) (rejecting DTPA claims against assignee of finance contract for defective home repairs:  "To hold a creditor liable in a consumer credit

Finally, plaintiffs cannot show that Missouri would follow a different rule from California and Texas.  Plaintiffs' cases are again inapposite because either the defendant engaged in a transaction or the case does not involve a duty to disclose at all.[10]   In short, all three bellwether states require the defendant to engage in a transaction to create a duty to disclose, an essential element of plaintiffs' omissions-based consumer protection and fraud claims that is absent for Old GM vehicle purchasers here.

## 2. California And Texas Do Not Recognize An Asset Purchaser's Duty To Warn.

Plaintiffs do not address New GM's arguments on duty to warn, which provide an independent basis for rejecting California and Texas plaintiffs' claims.  Pls. Opp. at 30 n.20; New GM Memo. at 44-46.  Plaintiffs note that in certain personal injury cases the Court has found a duty to warn, Pls. Opp. at 35, but ignore that the Court has rejected any duty for other states.  *See In re Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 874778, at *6 (S.D.N.Y. Mar. 3, 2016) (rejecting duty to warn for Louisiana).  Like Louisiana, both California and Texas reject an asset purchaser's duty to warn, and plaintiffs do not argue otherwise.  Moreover, the

---

transaction, the creditor must be shown to have some connection either with the actual sales transaction or with a deceptive act related to financing the transaction."); *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 537 (Tex. 1981) (home buyers could sue seller's real estate agent, who participated in transaction); *Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705, 707 (Tex. 1983) (finding bank that foreclosed on home liable under the DTPA because "[f]rom the [plaintiffs'] perspective, there was only one transaction: the purchase of a house," which defendant bank participated in by extending a loan, and then foreclosing on plaintiffs' house); *McLeod v. Gyr*, 439 S.W.3d 639, 649-50 (Tex. App. 2014) (plaintiff paid defendant attorney for legal services that were not adequately provided).

[10]  *E.g.*, *Conway v. CitiMortgage, Inc.*, 438 S.W.3d 410, 415 (Mo. 2014) (claims against the assignee of a mortgage and a mortgage servicer who bought the loan in a transaction, and stating that a loan uniquely "creates a long-term relationship in which the borrower and the lender continue to perform various duties, such as making and collecting payments over an extended period of time," unlike the purchase of a vehicle or other good); *Gibbons v. J. Nuckolls, Inc.*, 216 S.W.3d 667, 668 (Mo. 2007) (suit against automobile wholesaler who sold the vehicle to a retailer, unlike New GM who did not engage in any transaction with Old GM vehicles); *Faltermeier v. FCA US LLC*, 2016 WL 4771100, at *2, 6 (W.D. Mo. Sept. 13, 2016) (case involving affirmative misrepresentations, which do not require a duty to disclose, unlike the omissions alleged by plaintiffs here, which do).

lack of a duty to warn in these states further demonstrates that New GM has no duty to disclose under state law for Old GM vehicles that it did not manufacture, distribute, or sell.

### 3. Plaintiffs Concede That Used Car Purchasers Do Not Have Implied Warranty Claims.

Plaintiffs admit that purchasers of Old GM vehicles have no implied warranty claims. Pls. Opp. at 30 n.19; *see also id.* at 2 (defining "Used-Car Purchasers"). Moreover, the Song-Beverly Act does not apply to any used vehicle purchases, regardless of who built the vehicle, and plaintiffs do not claim otherwise. New GM Memo. at 48. Summary judgment should therefore be granted against all implied warranty claims of Old GM vehicle purchasers, and used New GM vehicle purchasers (*e.g.*, Basseri). New GM Memo. at 47-48.

### 4. Used Vehicle Purchasers Have No Unjust Enrichment Claims.

Unjust enrichment requires that a plaintiff confer a benefit on the defendant, and several courts have rejected unjust enrichment claims by used vehicle purchasers because they cannot satisfy this requirement. New GM Memo. at 48-49. Plaintiffs do not identify a single legal authority supporting their claim for used vehicle purchasers. Pls. Opp. at 38-39. Nor do plaintiffs proffer evidence of any benefit they provided New GM. Alleged cost-of-repair savings and reputation were not benefits plaintiffs provided to New GM. Nor does having their vehicles serviced at New GM-affiliated dealers (who are independent and retain the money they receive), buying unspecified parts (which could be built by others), or "maintaining a relationship" provide a benefit that plaintiffs conferred to New GM. *Id.* Plaintiffs' vague, conclusory, and legally unsupported statements cannot save used vehicle purchasers' unjust enrichment claims.

### F. Texas Plaintiffs Cannot Prove Unconscionability Under The Texas DTPA.

Plaintiffs fail to show that New GM's conduct was unmitigated as required for a DTPA unconscionability claim. New GM Memo. at 49-52. This is outcome determinative, as plaintiffs

cannot avoid the Texas Supreme Court's decision in *State Farm Lloyds v. Nicolau* reversing a verdict where the defendant mitigated. 951 S.W.2d 444 (Tex. 1997). Plaintiffs contend that New GM's recalls are partial, but New GM has done far more than the *Nicolau* defendant, which paid less than 2% of the amount plaintiff sought. *Id.* at 446-47, 451. Plaintiffs also claim that offering repairs after-the-fact is insufficient, but the *Nicolau* defendant likewise mitigated only after the plaintiffs had incurred over $100,000 in damages—indeed, mitigation typically occurs after an alleged injury. *Id.* Nor do plaintiffs cite any case law where the defendant mitigated or remediated yet a court upheld a DTPA unconscionability claim. Pls. Opp. at 48-49.

New GM also explained how case law and evidence demonstrate that Al-ghamdi and Graciano cannot show the lack of sophistication necessary for a DTPA unconscionability claim. New GM Memo. at 51-52. Plaintiffs have no response to this argument, and thus summary judgment should be granted against the DTPA claims of these two plaintiffs.

### G. Summary Judgment Should Be Granted Against Plaintiffs' Bankruptcy-Claim-Fraud Counts.

Plaintiffs admit that Texas plaintiffs are not pursuing this count (Pls. Opp. at 50 n.37), and thus summary judgment should be granted against both pre-July 2009 Texas purchasers, Henry and Simmons.

For the remaining claims brought by California and Missouri plaintiffs, New GM did not manufacture, distribute, or otherwise engage in any transaction with such Old GM purchasers regarding their Old GM vehicles between July 2009 and November 2009. New GM thus had no duty to disclose or warn such Old GM purchasers, and cannot be liable for omissions to them. Plaintiffs rely on their prior arguments on this issue (Pls. Opp. at 51), and thus New GM does as well. *See* Section III.E; New GM Memo. at 42-46, 52-53. Notably, most of plaintiffs' cases regarding a duty to disclose concern consumer protection statutes (Pls. Opp. at 30-35), and do

not apply to or provide support for their arguments here, which are based on common law fraudulent concealment.  Plaintiffs do not cite a single California or Missouri case holding that New GM had a duty to disclose for vehicles or other products in which it never transacted, and this Court should not create one.  *See H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1025 (2d Cir. 1989) (rejecting novel claim under New York law that was not "grounded in any New York case" because "it is not the role of a federal court ruling in diversity to undertake such an expansion of New York law").

Nor do plaintiffs have any damages.  The Bankruptcy-Claim-Fraud plaintiffs are pre-July 10, 2009 purchasers seeking to recover discounted benefit-of-the-bargain damages from New GM, which is barred by this Court's prior orders.  Opinion re Order No. 131 Issues, Dkt. 6028, at 11; *In re Gen. Motors LLC Ignition Switch Litig.,* 2017 WL 3443623, at *2 (S.D.N.Y. Aug. 9, 2017); *FACC MTD Op.*, 257 F. Supp. 3d at 401-02.

Independently, plaintiffs have no evidence that any of the Bankruptcy-Claim-Fraud plaintiffs have any injury or damages, as this Court has rejected plaintiffs' claims for benefit-of-the-bargain damages.  *BotB SJ Opinion*, 2019 WL 3564698, at *1, 13, 17.

Nor can several plaintiffs show reliance or causation as required for a fraudulent concealment claim.  Plaintiffs argue that reliance can be inferred if the omissions are material, Pls. Opp. at 52, but this is legally incorrect as discussed in Section III.A., and regardless, does not apply here.  Several plaintiffs either would not have received any disclosures from New GM or would not have known to file bankruptcy claims with Old GM (because they did not know the company had filed for bankruptcy).  New GM Memo. at 55.  Plaintiffs who would not have received information that New GM disclosed, or who did not know that Old GM had filed for bankruptcy, would not have filed a claim regardless of whether they considered such information

"material."  Finally, the claims of Service Parts Vehicle owner William Rukeyser are barred for the reasons described in Section II.

## IV.    PLAINTIFFS HAVE NO EVIDENCE ESTABLISHING A THREAT OF FUTURE HARM FOR WHICH A LEGAL REMEDY IS INADEQUATE.

Even though more than four years have passed since the recalls (and almost as much time since suits were filed), plaintiffs claim injunctive relief under state consumer protection statutes, but limit their discussion to the California UCL.  Under the UCL, in addition to meeting the elements of the cause of action, "'plaintiff must prove ... the grounds for equitable relief, such as, inadequacy of the remedy at law.'"  Pls. Opp. at 53-54, *citing Haas Automation, Inc. v. Denny*, 2014 WL 2966989, at *10 (C.D. Cal. July 1, 2014).  Plaintiffs have not established the equitable grounds for an injunction, including an inadequate legal remedy, and so fail both the state and federal standards.  New GM Memo. at 57-58.[11]

Plaintiffs claim there is a risk New GM will continue to conceal safety defects (Pls. Opp. at 54), but do not explain how this risk could materialize for these plaintiffs given New GM's public recalls, repair remedies, and the presence of a federally required monitor (which recently ended).  Nor do plaintiffs offer any evidence that New GM is likely to commit any such alleged violations in the future.  Therefore, injunctive relief is unavailable.  *See Andrade v. Arby's Rest. Group, Inc.*, 225 F. Supp. 3d 1115, 1135 (N.D. Cal. 2016) ("[T]o obtain injunctive relief under § 17203, a showing of threatened future harm or continuing violation is required; no past events may be enjoined."); *Feitelberg v. Credit Suisse First Boston, LLC*, 134 Cal. App. 4th 997, 1012 (2005) ("[T]he injunctive remedy should not be exercised in the absence of any evidence that the

---

[11]  *See also Smith v. City of St. Louis*, 409 S.W.3d 404, 413-14 (Mo. Ct. App. 2013) ("An injunction is an equitable remedy.  … Plaintiffs are not entitled to seek and receive equitable relief unless the facts pleaded in the petition show they lack an adequate remedy at law."); *Aust v. Platte Cty.*, 477 S.W.3d 738, 744 (Mo. Ct. App. 2015).

acts are likely to be repeated in the future.").

Plaintiffs' reliance on MDL personal injury cases alleging post-recall accidents is equally dubious.  Pls. Opp. at 55-56.  Accidents that allegedly occurred *after* the recalls and after disclosure of the recall conditions have nothing to do with the alleged continued concealment. The consumer protection statutes authorize injunctive relief to prevent future *statutory violations*; they may not be used to address unproven harm from unknown causes in other cases.[12]  Nor is the purported speculative risk of future personal injury stemming from unknown causes relevant to the balance of hardship between the parties.  Pls. Opp. at 56-57.

Plaintiffs do not assert personal injury claims, which proceed on a different track in this MDL.  Instead, the harm plaintiffs claim from New GM's past alleged statutory violation is an *economic* one and, according to plaintiffs' purported damages experts, is based upon historical risks of vehicle malfunctions that never occurred where such risks have since been eliminated or mitigated for such vehicles by the recalls.  The entire focus of plaintiffs' damages model and claims are historical and they have proffered no evidence of future, much less, irreparable harm.

Finally, plaintiffs do not dispute that no federal court has granted such broad injunctive or equitable relief over automobile recalls.  New GM Memo. at 58-59.[13]  Such relief is contrary to

---

[12]  *See Gutierrez v. Wells Fargo Bank, NA*, 589 F. App'x 824, 828 (9th Cir. 2014) (defendant bank's violation of statute by its statements regarding the posting of debit card transactions did not support an injunction barring misleading statements in connection with the posting of checks and ACH transactions); *Meta-Film Associates, Inc. v. MCA, Inc.*, 586 F. Supp. 1346, 1363 (C.D. Cal. 1984) ("plaintiff [is] limited to injunctive relief barring future acts of unfair competition."); *Scott v. Blue Springs Ford Sales, Inc.*, 215 S.W.3d 145, 162 (Mo. Ct. App. 2006), *overruled on other grounds by Badahman v. Catering St. Louis*, 395 S.W.3d 29 (Mo. 2013) ("[I]ndividual plaintiffs [] are not empowered to seek injunctive relief to protect the public from unlawful acts[.]"); *Blake v. Career Educ. Corp.*, 2009 WL 140742, at *4 (E.D. Mo. Jan. 20, 2009); *David McDavid Pontiac, Inc. v. Nix*, 681 S.W.2d 831, 839 (Tex. App. 1984); *Dragoslavic v. Ace Hardware Corp.*, 274 F. Supp. 3d 578, 583 (E.D. Tex. 2017); *Luv N' Care, Ltd. v. Royal King Infant Prod. Co.*, 2016 WL 3617776, at *10 (E.D. Tex. July 6, 2016).

[13]  Plaintiffs describe programs voluntarily adopted as part of class action settlement agreements, Pls. Opp. at 57, which provide no support for the mandatory injunctions they seek.

the public interest and the limits on equitable relief.[14]

## CONCLUSION

Plaintiffs have no relevant evidence of injury or damages, cannot prove New GM's liability under different states' laws, and rely on unprecedented theories that would improperly expand the scope of automotive manufacturers' liabilities for vehicles subject to safety recalls. Accordingly, summary judgment should be entered in New GM's favor against plaintiffs' claims.

Respectfully submitted,

Dated:  October 18, 2019                     */s/ Richard C. Godfrey, P.C.*

Richard C. Godfrey, P.C.
Andrew B. Bloomer, P.C.
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL  60654-3406
Phone:  312-862-2000
Fax:  312-862-2200
richard.godfrey@kirkland.com
andrew.bloomer@kirkland.com

*Attorneys for Defendant General Motors LLC*

---

[14]  *See*, *e.g.*, *Long Beach Drug Co. v. United Drug Co*., 13 Cal. 2d 158, 171 (1939) (courts "will not decree specific performance when the duty to be performed is a continuous one, extending possibly over a long period of time and which, in order that the performance may be made effectual, will necessarily require constant personal supervision and the oversight of it by the court."); *United Coin Meter Co. v. Johnson-Campbell Lumber Co.*, 493 S.W.2d 882, 888 (Tex. Civ. App. 1973) (court will "not decree a party to perform a continuous series of acts extending through a long period of time, requiring constant supervision by the court"); *Am. Hous. Res., Inc. v. Slaughter*, 597 S.W.2d 13, 15 (Tex. Civ. App. 1980).

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 18, 2019, I electronically filed the foregoing using the CM/ECF system which will serve notification of such filing to the email of all counsel of record in this action.

By: /s/ *Andrew B. Bloomer, P.C.*

Andrew B. Bloomer, P.C.