UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

IN RE:

GENERAL MOTORS LLC IGNITION SWITCH
LITIGATION

*This Document Relates To:*
*Clem v. General Motors LLC, 18-CV-8713*

-----------------------------------------------------------------------x

14-MD-2543 (JMF)

MEMORANDUM OPINION
AND ORDER

JESSE M. FURMAN, United States District Judge:

**[Regarding New GM's Motion for Summary Judgment]**

The present case — brought by Plaintiff Desarey Clem, individually and on behalf of her husband and decedent, Paul Clem — is part of multidistrict litigation ("MDL") proceedings, general familiarity with which is assumed, relating to alleged defects in the ignition switches and other features of certain General Motors vehicles. Ms. Clem, who filed her lawsuit when she was represented by counsel but now proceeds *pro se*, alleges that a 2005 Chevrolet Malibu that collided with and killed her husband suffered from defects that caused the accident. *See* ECF No. 1 ("Compl."), ¶¶ 1, 15, 21, 84.[1] Defendant General Motors LLC ("New GM"), the successor to General Motors Corporation ("Old GM"), which manufactured the 2005 Chevrolet Malibu at issue, now moves, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment. New GM argues that Ms. Clem's claims are barred by a global release of claims that Ms. Clem executed in connection with her settlement of litigation against the driver of the 2005 Chevrolet Malibu. For the reasons that follow, the Court agrees. Accordingly, New GM's motion must be and is granted, and Ms. Clem's complaint is dismissed.

---

[1] Unless otherwise noted, record citations refer to Docket No. 18-CV-8713.

**BACKGROUND**

The relevant facts, taken from the admissible materials submitted by the parties, are either undisputed or described in the light most favorable to Ms. Clem as the non-moving party. *See Costello v. City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011).

On May 8, 2006, Kathleen Burkey and Paul Clem were driving in opposite directions on Creston Road in Paso Robles, California — Ms. Burkey in a 2005 Chevrolet Malibu and Mr. Clem on a Honda CBR motorcycle. *See* ECF No. 57-1 ("Collision Rep."), at 2, 10. As Mr. Clem and Ms. Burkey approached one another, Ms. Burkey began to turn left. *Id.* at 10. The car and motorcycle then collided. *Id.* Ms. Burkey's airbags deployed, and she later told police "she had no idea what had happened until she saw [Mr. Clem] laying in front of her vehicle." *Id.* at 8. She claimed that she did not see Mr. Clem and did not know that she was turning into his motorcycle's path. *Id.* Mr. Clem was pronounced dead at the scene of the accident. *Id.* at 6.

Police investigated the accident and concluded that Ms. Burkey had committed a "[l]eft turn violation," which was "the primary collision factor." *Id.* at 11. On May 23, 2006, Ms. Clem filed suit against Ms. Burkey, seeking damages arising from the accident. *See* ECF No. 57-4, at 1. The 2005 Chevrolet Malibu was insured by GMAC Insurance ("GMAC"), *see* Collision Rep. 2, a wholly owned subsidiary of Old GM, under a policy owned by Ms. Burkey's mother, *see* ECF No. 57-5. GMAC engaged an attorney to represent Ms. Burkey in the lawsuit. ECF No. 57-6 ("Brown Decl."), ¶ 5. Ms. Clem, with the assistance of her attorney, ultimately settled her claims for $100,000. *See* ECF No. 57-3 ("Release"), at 1; ECF No. 61, at 2; Brown Decl. ¶ 6.

The settlement agreement includes a release, which provides in relevant part as follows:

> DESAREY CLEM, for and in consideration of the sum of One Hundred Thousand Dollars ($100,000.00), receipt of which is hereby acknowledged, does hereby release and forever discharge KATHLEEN BURKEY, her successors and assignees, associates, heirs, executors and administrators, and all other persons,

> firms, or corporation [sic] of and from any and every claim, demand, right or cause of action arising out of the death of PAUL MICHAEL CLEM, JR., of or in any way connected with that certain accident, including all injuries and property damage, resulting therefrom, which occurred on or about the 8th day of May, 2006 . . . .

Release at 1. The release goes on to state that, "AS A FURTHER CONSIDERATION AND INDUCEMENT FOR THIS COMPROMISE SETTLEMENT AND PAYMENT, IT IS EXPRESSLY WARRANTED AND AGREED: (1) That this is a full and final release of any and all claims arising out of said accident . . . ." *Id.* Finally, to the extent relevant here, the release explicitly waives "all rights and benefits which the undersigned now has or in the future may have under and by virtue of the terms of section 1542 of the Civil Code of the State of California," which relates to unknown claims. *Id.*

In November 2014, Ms. Clem saw a news report about defective body control modules, which ultimately led her to a recall notice relating to the body control modules in 2005 Chevrolet Malibus. *See* ECF No. 70 ("Clem Decl."), ¶ 2. On August 25, 2016, Ms. Clem filed this suit against New GM, alleging that the accident and her husband's death were caused by a defect in the 2005 Chevrolet Malibu. *See Dunlap v. General Motors LLC*, No. 17-CV-1050, ECF No. 1. Her counsel later withdrew, *see* 14-MD-2543, ECF Nos. 5599, 5714, and Ms. Clem filed an amended and severed complaint on September 18, 2018, *see* ECF No. 1.

## LEGAL STANDARDS

Summary judgment is appropriate where the admissible evidence and the pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam). A dispute over an issue of material fact qualifies as genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35

(2d Cir. 2008). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *accord PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).

In ruling on a motion for summary judgment, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). To defeat a motion for summary judgment, however, the non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted). Affidavits submitted in support of, or opposition to, summary judgment must be based on personal knowledge, must "set forth such facts as would be admissible in evidence," and must show "that the affiant is competent to testify to the matters stated therein." *Patterson v. Cty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) (quoting Fed. R. Civ. P. 56(e)).

Finally, it is well established that courts must give "special solicitude" to *pro se* litigants in connection with motions for summary judgment. *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). Thus, a *pro se* party's papers opposing summary judgment are to be read liberally and interpreted to "raise the strongest arguments that they suggest." *See, e.g.*, *Clinton v. Oppenheimer & Co.*, 824 F. Supp. 2d 476, 481 (S.D.N.Y. 2011). This special solicitude is not unlimited, however, and does not "relieve" a plaintiff of her "duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation marks omitted). Nor is the "duty to liberally construe a plaintiff's [opposition] . . . the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (quoting 2 Moore's Federal Practice § 12.34[1][b], at 12-61) (internal quotation marks omitted).

## DISCUSSION

Under California law, which applies to Ms. Clem's claims, "release agreements are governed by the same principles applicable to any other contractual agreement." *Zepher v. Kaiser Found. Hosp.*, 687 F. App'x 636, 638 (9th Cir. 2017) (mem.). Accordingly, if the terms of a release agreement are unambiguous, "the objective intent . . . evidenced by the words of the contract . . . controls interpretation." *Berman v. Bromberg*, 65 Cal. Rptr. 2d 777, 783 (Ct. App. 1997) (internal quotation marks omitted). Further, if a release agreement reflects an intention to benefit a third party, the third-party beneficiary may enforce the terms of the contract. *See* Cal. Civ. Code § 1559; *Cline v. Homuth*, 185 Cal. Rptr. 3d 470, 475 (Ct. App. 2015).

Applying these principles here, the Court is compelled to conclude that Ms. Clem released her claims against New GM. The agreement she signed released and forever discharged Ms. Burkey and "*all other persons, firms, or corporation*[*s*]" from "any and every" claim arising

from the May 2006 incident. Release at 1 (emphasis added). The only reasonable interpretation of that broad language is that it released every person and entity — including New GM — from any and all claims arising from Mr. Clem's death. *See Gen. Motors Corp. v. Superior Court*, 15 Cal. Rptr. 2d 622, 624, 626-27 (Ct. App. 1993) (finding nearly the same language, releasing the tortfeasor and "any and all other persons, firms and corporations," to be clear and unambiguous, and holding that "the plain language of the release discharges General Motors as well as the rest of the world from liability arising from the specified automobile accident"); *Rodriguez v. Oto*, 151 Cal. Rptr. 3d 667, 672, 674 (Ct. App. 2013) (finding a release extending to "all other persons, firms, corporations, associations or partnerships" to be unambiguous); *see also Cline*, 185 Cal. Rptr. 3d at 472, 479 (finding that a clause releasing "the driver and his parents and any other person, corporation, association, or partnership responsible in any manner or degree for the accident" extended to the "world" (internal quotation marks omitted)).

Wisely, Ms. Clem does not dispute that the plain language of the release encompasses her claims against New GM. Instead, she contends that the release is unenforceable by New GM for three reasons. First, she suggests that her release was fraudulently induced because Old GM concealed the 2005 Chevrolet Malibu's alleged defects. *See* ECF No. 60 ("Opp'n"), at 2 ("The defendants' fraud ran concurrent with the signing of the contract between myself and Kathleen Burkey, as evidence shows that General Motors knew about the defects since 2005 . . . ."). Under California law, a plaintiff makes out a claim for fraud in the inducement if she proves: (1) a misrepresentation or concealment; (2) scienter or knowledge of its falsity; (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damage. *See McColgan v. Mutual of Omaha Ins. Co.*, 4 F. Supp. 3d 1228, 1233 (E.D. Cal. 2014) (citing cases). Ms. Clem cannot satisfy these elements, as she cites no evidence that, in 2006, Old GM was aware of any defect in 2005

6

Chevrolet Malibu capable of causing or manifesting in a moving stall, which is what Ms. Clem alleges Ms. Burkey experienced. The only evidence upon which Ms. Clem relies to establish Old GM's knowledge is a set of "Technical Service Bulletins" distributed by Old GM to its dealers regarding defects, *see* Opp'n 4, ECF No. 61, at 7-25, but, as New GM notes, the bulletins either did not relate to 2005 Chevrolet Malibus or did not suggest that vehicle stalls were a symptom of a reported defect. *See* ECF No. 61, at 7-25; ECF No. 63 ("Reply"), at 5-6. In any event, Ms. Clem cites no evidence that Old GM concealed its knowledge of defects in the 2005 Chevrolet Malibu with an intent to induce Ms. Clem (or those in her position) to rely on that representation.

Next, Ms. Clem argues that she was fraudulently induced to sign the release because Ms. Burkey's attorney, Neil H. Brown, did not notify Ms. Clem that Ms. Burkey was insured by a subsidiary of Old GM and that the release was intended to protect Old GM. *See* Opp'n 3 ("Mr. Brown did not include [GMAC and General Motors in the release] to conceal the connection between the insurance company and the manufacturer, so that no other party involved would have pause over the implications of who they actually were, that being the manufacturer of the vehicle."). But the release in no way conceals that it protects the vehicle's manufacturer. Indeed, as already explained, it discharges claims against *all* "persons, firms, or corporation[s]" in rather plain language. Release at 1. And it is not particularly surprising that a global release redounds to the manufacturer's benefit, given that some accidents are caused by vehicular defects, as car-accident plaintiffs and their attorneys would surely know. Ms. Clem provides no reason why a global release would be more likely to give a plaintiff "pause" if there is a parent-subsidiary relationship between the manufacturer and the insurer, Opp'n 3, and the Court can conceive of only one: Insurers owned by a manufacturer may be more likely to seek a global

release if they are aware of a manufacturing defect than they otherwise would be. In other words, the global release might raise the plaintiff's suspicions regarding a manufacturing defect. But Ms. Clem cites no evidence that, at the time the release was drafted and signed, Mr. Brown, or even General Motors, was aware of a defect that could cause a moving stall.

In any event, Ms. Clem cites, and the Court is aware of, no authority that imposed upon Ms. Burkey or her counsel, Mr. Brown, an obligation to volunteer that Ms. Burkey's insurer was owned by Old GM or that the interests of Old GM (let alone its successor, New GM) were considered by Ms. Burkey's counsel. Claims for fraud "grounded solely on omissions . . . depend[] on allegations that would establish some duty of disclosure on the part of defendant." *Goodman v. Kennedy*, 556 P.2d 737, 745 (Cal. 1976). California law imposes such a duty under four circumstances, none of which are present here. Ms. Clem certainly did not have a "confidential relationship" with Ms. Burkey's attorney. *Id.* Nor does Ms. Clem allege, let alone show, that Mr. Brown "active[ly] conceal[ed]" that Ms. Burkey's insurer was owned by General Motors. *Id.* Nor is there any evidence that Ms. Burkey or her attorney made any statement "likely to mislead for want of the disclosure" that GMAC was owned by Old GM. *Goodman*, 556 P.2d at 347. "The only other basis for a duty of disclosure is one which may exist when one party to a transaction has sole knowledge or access to material facts and knows that such facts are not known to or reasonably discoverable by the other party." *Id.* For reasons already described, the Court is skeptical that the relationship between Ms. Burkey's insurer and Old GM was material information and, even if it was, the Court doubts that Mr. Brown "knew the materiality" of that information. *Id.* More importantly, Ms. Clem was, in fact, informed that Ms. Burkey was insured by GMAC and that GMAC was involved as a "third party pay[or]." ECF No. 61, at 2 (noting that "GMAC Insurance" was mentioned "on a document submitted under a

Discovery Request," along with their "address and the name National General Insurance Company"). And Ms. Clem could certainly have "reasonably discover[ed]" that Old GM owned GMAC Insurance, which was a matter of public knowledge. *Goodman*, 556 P.2d at 745; *see, e.g.*, Gen. Motors Corp., Annual Report (Form 10-K) I-1 (Mar. 28, 2006) ("GM's finance and insurance operations are principally those of General Motors Acceptance Corporation (GMAC), a wholly owned subsidiary of GM.").

Finally, Ms. Clem suggests that allowing New GM to claim the benefit of the general release would be unconscionable and against public policy. *See* Opp'n 3. California courts, however, have rejected this precise argument in nearly identical circumstances. *See Gen. Motors Corp.*, 15 Cal. Rptr. 2d at 627-28. "[T]here is nothing in the record to indicate that" Ms. Clem and Ms. Burkey "were in anything other than . . . equal bargaining positions." *Id.* at 628. Thus, the principle that public policy prohibits "a contract term which exempts a seller of a product from liability for harm to a user or consumer . . . is not applicable to the release contract at issue." *Id.* Put differently, Ms. Clem does not carry her "heavy burden" to show that permitting New GM to invoke and enforce the global release would be "in violation of the settled public policy of [California], or injurious to the morals of its people." *Brisbane Lodging, L.P. v. Webcor Builders, Inc.*, 157 Cal. Rptr. 3d 467, 474 (Ct. App. 2013). Indeed, California courts' willingness to allow vehicle manufacturers to benefit from releases contained within contracts between those involved in car accidents is powerful evidence to the contrary. *See, e.g., Gen. Motors Corp.*, 15 Cal. Rptr. 2d at 627-28. In short, the Court cannot conclude that enforcement of the global release would be unconscionable or against California public policy.

## CONCLUSION

In sum, the Court is compelled to conclude that New GM is entitled to summary judgment on the ground that Ms. Clem previously released her claims. Accordingly, the Court need not and does not consider New GM's alternative ground for summary judgment, namely that Ms. Clem's claims are barred by California's statute of limitations.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed (1) to terminate 14-MD-2543, ECF No. 7302 and 18-CV-8713, ECF No. 54; (2) to enter judgment in New GM's favor; (3) to terminate Ms. Clem as a party in 14-MD-2543; (4) to close 18-CV-8713; and (5) to mail a copy of this Memorandum Opinion and Order to Ms. Clem. Out of an abundance of caution, **within two days of this Memorandum Opinion and Order**, New GM shall also serve a copy on Ms. Clem and file proof of such service on the docket.

SO ORDERED.

Dated: February 26, 2020
New York, New York

JESSE M. FURMAN
United States District Judge