**HMG**

**HILLIARD MARTINEZ GONZALES LLP**
TRIAL ATTORNEYS

March 2, 2020

The Honorable Jesse M. Furman
United States District Court for the
Southern District of New York
500 Pearl Street
New York, NY 10007

    **Re:** *In re: General Motors LLC Ignition Switch Litigation*, 14-MD-2543

Honorable Judge Furman:

  Co-Lead Counsel with primary responsibility for the personal injury and wrongful death plaintiffs submits this letter pursuant to Order No. 166, § IV and requests that the Court adopt Lead Counsel's proposed order providing next steps for all remaining plaintiffs in the MDL, attached as Exhibit A.

  Lead Counsel and New GM agree that the remaining plaintiffs should participate in list-response procedures, like those contained in Order Nos. 140 and 148, on the issues of Airbag Deployment, Statutes of Limitations and Repose, and No Plausibly Pled Defect. The primary disputes are whether, following the list-response procedures on those threshold issues, (1) the parties should participate in focused mediation to resolve the remaining cases in the MDL; and (2) whether the Court should suggest remand of the cases to the appropriate district Court *or* order the parties to participate in Wave discovery. Lead Counsel's proposal is the most efficient, just, and balanced proposal for the parties and the Court, and unlike New GM's proposal, does not unnecessarily extend the life of the MDL.

  **I.** **Lead Counsel's Proposal is Efficient for the Court and the Parties and Will Allow the MDL to Wind Down**

  First, Lead Counsel proposes list-response procedures beginning forty-five days after entry of the Court's order,[1] and concluding with motion practice, *where appropriate*.[2] Second, concurrently with and continuing after list-response procedures, Lead Counsel proposes that the parties be required to engage in settlement negotiations, and to engage a private or court-appointed mediator if the parties' attempts do not result in settlement. Third, Lead Counsel proposes that, within 150 days of the Court's order, Lead Counsel and counsel for New GM (1) report on the status of any remaining cases; (2) advise the Court whether a conference with the Court, requiring the attendance of counsel for New GM and counsel for the remaining plaintiffs, would be helpful in resolving the claims; and (3) propose deadlines and procedures for the remand of any remaining cases not subject to

---

[1] Order No. 25 and 108 compliance in the most recently filed case, *Clark*, filed on January 6, 2020, is due by April 5, 2020. Lead Counsel has proposed dates for commencement of list-response procedures that will allow prior compliance with Order Nos. 25 and 108.

[2] Lead Counsel proposes that New GM be required to seek leave to file any motions relating to air bag deployment so that the Court may make a preliminary assessment of whether an issue of fact is alleged and whether a motion is appropriate and efficient.

pending motions. Lead Counsel's proposal will conclude within approximately 180 days of the Court's order. Any cases filed after March 1, 2020 would similarly be concluded in the MDL within approximately 180 days from consolidation.

Conversely, New GM's plan commences list-response procedures in June 2020, with no plan for resolution of list-response disputes, concurrent with Wave procedures that conclude with expert discovery and further next steps in January of 2021. Subsequently filed cases would be placed on a ten-month Wave track, again concluding in further next steps in the MDL and no resolution. Based on New GM's past post-Wave proposals, Wave Four would extend into at least mid-2021 with *Daubert* and summary judgment motions, and with no plan for plaintiffs who prevail in that process. Later-filed cases would remain in the MDL for at least a year after filing.

Although Wave discovery and New GM's go-to next step of *Daubert* and summary judgment motions may have been an efficient way of proceeding *in the past*, it is not an efficient way of proceeding *now*. The Court first ordered Wave discovery in February 2018. *See* Order No. 141. At that time, there were 1759 claims pending in the MDL. *See Related Case Update*, ECF No. 5144. Wave Two was ordered in June 2018, when there were 1144 claims pending. *See* Order No. 151; *Related Case Update*, ECF No. 5622. Wave Three was ordered in February 2019 when there were 548 claims pending. *See* Order No. 161; *Related Case Update*, ECF No. 6449. There are now only twenty-eight remaining cases (involving thirty-four claims and twenty-seven accidents) that are subject to Lead Counsel's and New GM's primary proposals.[3] Those twenty-eight cases are subject to the laws of eighteen different states; and, of those, eleven cases are subject to the law of a state that applies to no other case.[4] Naturally, these cases involve different vehicles and nuanced factual circumstances. New GM's goal with each case is to use unequal bargaining power created by Waves to force settlement, followed by unilateral *Daubert* and summary judgment attacks on plaintiffs' claims if settlement is not successful—in other words, the Court will potentially be faced with twenty-eight sets of *Daubert* and dispositive motions to be decided under eighteen different states' laws. In addition to the recognized efficiencies of

---

[3] A chart of these cases is attached as Exhibit B. An additional twenty-four cases are subject to withdrawal procedures, and are addressed in § II.A. of Exhibit A.

[4] *Gordon v. General Motors LLC, No.* 1:19-cv-08587 (Alabama); *Hodges v. General Motors LLC*, No. 1:16-cv-02270 (California); *Tenley v. General Motors LLC*, No. 1:15-cv-07445 (Colorado); *Poole v. General Motors LLC,* No. 1:19-cv-11900 (Florida); *Vaughn v. General Motors LLC*, No. 1:20-cv-00096, *King v. General Motors LLC*, No. 1:19-cv-07197, *Hayes v. General Motors LLC*, No. 1:18-cv-07957 (Georgia); *Conner v. General Motors LLC*, No. 1:19-cv-07190, *Webb v. General Motors LLC*, No. 1:16-cv-05525 (Illinois); *Reinsch v. General Motors LLC*, No. 1:16-cv-06833 (Indiana); *Clark v. General Motors LLC*, No. 1:20-cv-0101 and *Clark v. General Motors LLC*, No. 1:20-cv-00104 (Louisiana, same accident); *Andino v. General Motors LLC*, No. 1:19-cv-06352 (Massachusetts); *Dukes v. General Motors LLC*, No. 1:19-cv-11922 (Maryland); *Gentry v. General Motors LLC*, No. 1:19-cv-08580 and *Pillars v. General Motors LLC*, No. 1:15-cv-06289 (Michigan); *Jordan v. General Motors LLC*, No. 1:17-cv-02231 and *Mallory v. General Motors LLC*, No. 1:19-cv-09476 (Mississippi); *Taylor v. General Motors LLC*, No. 1:17-cv-06155 (North Carolina); *Donato v. General Motors LLC*, No. 1:19-cv-09472 (New York); *Hancock v. General Motors LLC*, No. 1:18-cv-01019 and *Lawson v. General Motors LLC*, No. 1:20-cv-00092 (Ohio); *Hemingway v. General Motors LLC*, No. 1:19-cv-06528, *McDonough v. General Motors LLC*, No. 1:20-cv-00094, and *Worthy v. General Motors LLC*, No. 1:19-cv-11898 (South Carolina); *Garcia v. General Motors LLC*, No. 1:17-cv-05970 and *Brown v. General Motors LLC*, No. 1:19-cv-09471 (Texas); and *Vest v. General Motors LLC*, No. 1:14-cv-07475 (West Virginia).

having transferor courts decide individualized issues, having *this Court* decide those issues will be exceptionally inefficient where it is very unlikely that a decision in any of the remaining twenty-eight cases will inform or have an impact on any other case in the MDL.[5]

With twenty-eight cases involving different vehicles, different factual scenarios and eighteen different states' laws, there are no common issues to be decided except for airbag deployment and sufficiency of the pleadings, which Lead Counsel has included in plaintiffs' proposal. Thus, after list-response procedures, and an opportunity to mediate, plaintiffs' cases should be remanded. *See e.g.*, *In re Levaquin Prod. Liab. Litig.*, 2014 WL 11395078, at *2 (D. Minn. Nov. 21, 2014) (noting the plaintiffs' expressed desire to move forward with their cases, the JMPL ordered remand of dozens of *Levaquin* cases finding that the cases would "no longer benefit from centralized proceedings; all common discovery and other coordinated pretrial proceedings are complete, and the remaining case-specific issues are best left to the transferor courts to decide"); *see also id*. (noting that, upon remand, "[t]hese cases will require case-specific depositions of the plaintiff, treating physician(s), case-specific expert designations, and pretrial motions, all of which can be addressed by the transferor courts").

### II.     Lead Counsel's Proposal is Just for All Parties

New GM's unliteral and lengthy proposal is particularly unjust for victims who died or were injured more than a decade ago or were consolidated in the MDL as far back as 2014. *See, e.g., Vest v. General Motors LLC*, No. 1:14-cv-07475, ECF No. 1-8 ¶¶ (involving the 2006 death of twenty-six-year-old Keisha Vest and her unborn child in a defective 2005 Chevrolet Cobalt, filed in West Virginia state court on July 2, 2014, ECF No. 1-8, and consolidated in the MDL on September 16, 2014, ECF No. 7). Keisha Vest's husband and then-three-year-old son have waited nearly fourteen years for resolution. At least five cases (nearly 25%) assert wrongful death claims, including for the death of ten-year-old Caitlin Conner, twenty-six-year-old Kenya Robinson who was burned alive in her defective vehicle, twenty-two-year-old Zac Reinsch, and, after seven years in a coma, forty-six-year-old Kathleen Pillars.

For these plaintiffs and others, New GM's proposal offers no path to trial of their cases. Instead, it flips civil litigation on its head by allowing a unilateral and complete assault by a defendant, one that admittedly caused unprecedented numbers of deaths and injuries and covered it up, against its victims. New GM's proposed order imposes a *de facto* stay upon plaintiffs. It allows New GM to serve interrogatories, but its victims can serve none; allows New GM to attack causation, but prohibits its victims from pursuing claims and damages; and requires victims to produce expert reports and experts for depositions while New GM produces no expert reports or experts for deposition. New

---

[5] Lead Counsel recognizes that its own proposal calls for the Court to decide statute of limitations and repose issues, which will call for the application of numerous state laws. Lead Counsel included motions in the list-response procedures because a later proposal would prolong resolution of claims in the MDL, and Lead Counsel recognizes that a motion possibility is necessary to make the list-response procedure meaningful to the parties. If the Court so desires, Lead Counsel fully supports resolution of statute of limitations and repose issues upon remand.

GM's recent actions and its modified Wave Four plan further increase the inequities in the Wave process. For example, in support of its summary judgment motion in the Wave Three *Zehner* case, New GM attached an expert affidavit that Zehner's counsel saw for the first time upon filing, for which no expert name or report was disclosed, and no opportunity was given to depose.[6] Now, in Wave Four, New GM proposes adding unilateral written and deposition discovery on the issues of the statute of limitations and repose. Reversing the usual course of litigation inherently harms plaintiffs by holding them against the ropes while New GM gets to keep punching. While New GM touts the success of the Wave program in producing settlements, there can be little doubt that, even in the most meritorious cases, the unilateral Wave program shifts the parties' bargaining power in favor of New GM.

Lead Counsel's office has spoken with counsel for every remaining plaintiff subject to this proposal. Many expressed that they have been unsuccessful in getting New GM to discuss settlement.[7] Most, if not all counsel, have a solid understanding of the strengths and weaknesses of their claims and have expressed a willingness to receive continued support from Lead Counsel in assessing those strengths and weaknesses. They all seek *access* to negotiations, to enter into those negotiations on a *level playing field*, and to simply have a *path to trial* (as opposed to a *de facto* stay with no end-point).

Lead Counsel's proposal (1) allows New GM to test the cases for threshold issues such as airbag deployment, failure to state a claim, and statutes of limitation and repose; *then*, (2) requires the parties to engage in meaningful settlement negotiations; and, concludes by, (3) providing plaintiffs a path to trial through remand. The Court should adopt Lead Counsel's proposal because it balances New GM's need to separate the "wheat from the chaff" with plaintiffs' need for equal bargaining power in mediation and a path to trial, and provides for a much more efficient and timely end to this MDL.

### III.  Alternatively, the Court Should Reserve Decision on Remand Versus Waves or Allow for Bilateral Wave Discovery

In the alternative, Lead Counsel requests that the Court reserve decision on whether to suggest the cases for remand or place them in Waves, and conclude Lead Counsel's proposed list-response and mediation procedures with next steps, rather than remand or Wave discovery. First, reserving decision on these issues accomplishes the goals of allowing New GM to test the cases on threshold issues while allowing plaintiffs to enter negotiations without impaired bargaining power. Second, it is currently unknown whether the list-response procedures will result in any non-Ignition Switch claims. Adopting New GM's proposal would force cases alleging defects other than ignition switch defects into

---

[6] *See* Affidavit of Dustin Edmunds, ECF No. 7700-6, submitted in support of New GM's Motion for Summary Judgment in the *Zehner* case; New GM's Rule 56.1 Statement of Undisputed Material Facts, ECF No. 7698 at ¶¶ 7, 12-17; New GM's Memorandum in Support of Motion for Summary Judgment, ECF No. 7697 at 4-5 (interpreting the SDM data from the subject crash).

[7] Lead Counsel recognizes the significant efforts of counsel for New GM toward settlement, and that counsel has recently been engaged in several, large aggregate settlements. Lead Counsel does not discount New GM's or its counsel's efforts, but notes that the remaining plaintiffs, particularly those filed between 2014 and 2018, are and have been ready to engage in meaningful settlement negotiations with New GM.

Wave discovery. For the reasons set forth in Lead Counsel's letter brief dated February 22, 2019, any such cases should be remanded. *See* ECF No. 6505. *See also* 3/22/18 MDL Status Conf. Tr. at 33:9-33:18 ("[C]omplaints that alleged a defect that was totally unrelated to the ignition switch should not come here because, despite some of your efforts at some times, I am not the federal judge for all General Motors cases."); 3/1/19 MDL Status Conf. Tr. at 27:8-13 ("I think the inclination that I shared in my endorsement on the agenda letter, suffice it to say, I would probably have the same inclination with respect to non ignition switch claims that remain after that 60-day period, which is to say my gut at the moment is that those should probably be remanded sooner rather than later if they're not resolved.").

Finally, if the Court orders Wave discovery, Lead Counsel requests that the Court allow for bilateral fact and expert discovery rather than the unilateral discovery New GM has proposed. Lead Counsel proposes that plaintiffs be permitted to serve case-specific interrogatories on and obtain case-specific documents from New GM, and that the Court require New GM to submit expert reports and experts for deposition. Requiring plaintiffs to proceed with their experts, when no case-specific discovery of New GM has been conducted, risks an artificial limitation on the experts' reports. And, *de facto* "staying" all discovery of New GM and its experts, while allowing New GM many months of discovery of plaintiffs and their experts, will extend the time-to-trial for plaintiffs who prevail in Waves (who may have the most meritorious claims). Requiring bilateral discovery is necessary for fully formed experts and reports, provides more balanced bargaining power in negotiations, and will reduce time-to-trial over two-track discovery.

## IV. Conclusion

For the foregoing reasons, Lead Counsel respectfully requests that the Court order Lead Counsel's proposed procedures for remaining cases, attached as Exhibit A. In the alternative, Lead Counsel requests that the Court reserve decision regarding whether to order remand or Wave discovery; or, if the Court orders Wave discovery, that the Court order the parties to propose bilateral fact and expert discovery within fourteen days of the Court's order.

Dated: March 2, 2020                     Respectfully Submitted,

/s/ Robert C. Hilliard
HILLIARD MARTINEZ GONZALES LLP
Robert C. Hilliard
*bobh@hmglawfirm.com*
Lauren Akers
*lakers@hmglawfirm.com*
719 S Shoreline Blvd.
Corpus Christi, TX 78401
Telephone: (361) 882-1612
Facsimile: (361) 882-3015
*Co-Lead Counsel for MDL plaintiffs with primary responsibility for wrongful death and personal injury cases*