# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

Andrew B. Bloomer, P.C.
To Call Writer Directly:
+1 312 862 2482
andrew.bloomer@kirkland.com

300 North LaSalle
Chicago, IL 60654
United States

+1 312 862 2000

www.kirkland.com

Facsimile:
+1 312 862 2200

March 2, 2020

The Honorable Jesse M. Furman
United States District Court for the
Southern District of New York
500 Pearl Street
New York, NY 10007

      *Re:*  *In re Gen. Motors LLC Ignition Switch Litig.*, 14-MD-2543

Dear Judge Furman:

  Under this Court's adept guidance, the parties have implemented "aggressive" but reasonable procedures to resolve more than 3,930 personal injury claims[1] that have been consolidated for coordinated pre-trial proceedings, including more than 1,000 claims filed *after* the first bellwether trial in January 2016. (1/8/18 Hr'g Tr. at 28:4-5; Order No. 25 ¶ 3, Docket No. 422.) In addition to 13 bellwether trials the Court scheduled, this Court's adoption of "wave" discovery and motion practice procedures has resulted in efficient and fair resolution of these claims, not to mention hundreds of state court and unfiled claims brought by various plaintiffs' counsel.[2] Indeed, all 201 Wave One and Wave Two plaintiffs' claims have been resolved, and all but three of the 119 Wave Three plaintiffs' claims have as well.[3]

  Simply put, the waves have worked exceptionally well. When the Court entered the Wave One order, there were roughly ***1,800*** claims pending in the MDL. Today there are ***60***. Putting aside the three remaining Wave Three plaintiffs and 23 plaintiffs subject to severance and amendment procedures in light of their counsel moving to withdraw,[4] there are ***34*** remaining claims. These 34 claims, more than half of which were filed since June 2019, and a third of which

---

[1] "Claim" refers to an allegedly injured person. The number of claims may differ slightly from the number of plaintiffs to the extent claims are brought in a representative capacity. The analysis herein is based on New GM's understanding of the remaining claims based on the information available to New GM, which is limited for many newer claims.

[2] *See, e.g.,* Order No. 141, Docket No. 5074 (Wave One); Order No. 151, Docket No. 5653 (Wave Two); Order No. 160, Docket No. 6511 (Wave Three).

[3] The three remaining Wave Three plaintiffs continue to progress through discovery and motion practice. One of them (*Scheffel*) just completed expert discovery and will shortly propose next steps; the other two (*Zehner*) are subject to New GM's motion for summary judgment. (*See* 2/28/20 Related Case Ltr. at 5.)

[4] In addition, the Court last week dismissed plaintiff Jennifer Clifton without prejudice for failure to comply with the Court's Order No. 137 severance and amendment procedures. (Docket No. 7773.)

## KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
March 2, 2020
Page 2

were filed in the last few months, are well-suited to targeted wave discovery and motion practice. New GM respectfully requests that the Court enter New GM's proposed order attached as Exhibit A, and reject plaintiffs' proposal, which would stem the tide of the MDL's global resolution.

### I. The Court Should Stay The Course And Enter An Order Adopting Wave Four Discovery And Motion Practice Procedures.

The Court's order establishing Wave One discovery and motion practice limited eligibility to the 100 first-filed post-Sale Production Part and Service Part plaintiffs. (*See* Order No. 141 ¶ 3 (citing Order No. 107, Docket No. 3081 (defining categories)). Because of Wave One's success, the Court urged the parties to consider implementing procedures for Wave Two "sooner than originally planned" (3/20/18 Order, Docket No. 5268), and the Court's Wave Two order allowed an additional 101 Production Part and Service Part plaintiffs to participate in targeted discovery and motion practice, all of whose claims are now resolved. (Order No. 151 ¶ 1.) In light of the continued success of the wave procedures, the Court expanded eligibility for Wave Three, resulting in the participation of all post-Sale Production Part, Service Part, and Key Rotation plaintiffs then pending the MDL. (*See* Order No. 160 ¶ 1, Docket No. 160.) To date, 317 Wave plaintiffs' claims have been resolved with relatively modest intervention by the Court. *See, e.g., In re GM LLC Ignition Switch Litig.*, 2019 WL 5449442 (S.D.N.Y. Oct. 24, 2019) (granting summary judgment against *Brands* plaintiffs). In adopting the initial wave order, the Court indicated that it would treat Wave One as a "bellwether" or "test case" to understand "whether this process makes sense" and "whether it makes sense to stay this course." (2/7/18 Hr'g Tr. at 7:14-22.) By any objective metric, the Court's wave discovery and motion practice orders provide the clear template for the parties to navigate efficiently and swiftly the remaining plaintiffs' claims to resolution, as well as any claims that may be consolidated in the MDL in the future.

As such, New GM respectfully requests that the Court now expand the wave eligibility requirements to include all 34 remaining personal injury plaintiffs pending in the MDL that have not participated in a previous wave, are not eligible to participate in a settlement, and are not subject to Order No. 137 severance and amendment procedures. These claims consist of two Production Part, three Service Part, and 13 Key Rotation plaintiffs alleging ignition switch and/or key rotation defects, two Category B (air bag deployment) plaintiffs, two pre-Sale air bag deployment plaintiffs, and 14 pre-Sale[5] plaintiffs subject to the same recalls at issue in the Production Part, Service Part, and Key Rotation Recalls.[6] (*See* Order No. 107 ¶ 3 (identifying relevant recalls for each category).)

---

[5] As set forth in its proposed order, "[b]y including in Wave Four plaintiffs whose accidents occurred prior to July 10, 2009, New GM is not waiving any defenses relating to the July 9, 2009 Bankruptcy Court Sale Order and Injunction." (Ex. A n. 1.) Rather, New GM is expressly preserving its defenses relating to the Order and Injunction.

[6] Two pre-Sale plaintiffs' air bags deployed, and one of them alleges an electronic power steering defect that was the

KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
March 2, 2020
Page 3

As with prior waves, many of the potential Wave Four plaintiffs are represented by the same firm. Here, the Kirkendall Dwyer LLP law firm represents 14 of the newest-filed remaining plaintiffs, and each of those claims shares a common deficiency: they are barred by the applicable statute of limitations and/or statute of repose, as are the claims of at least one other remaining plaintiff. Lead Counsel and New GM agree that these claims, as well as the air bag deployment claims, should be subject to the statute of limitations/repose and air bag deployment notice procedures first set forth in Order No. 140 and later incorporated into Wave Three. (*See* Docket No. 4967 §§ III(B)-(D); Order No. 160 ¶¶ 10-12.) Additionally, Lead Counsel and New GM also agree that to the extent any such plaintiffs seek to press their claims, New GM should file one consolidated motion addressing the claims subject to the statute of limitations/repose and one consolidated motion addressing the air bag deployment plaintiffs' claims.[7] To make this briefing more efficient, New GM has proposed to slightly expand the scope of the targeted Wave Four discovery to incorporate the question of when and how plaintiffs first discovered (or with the exercise of reasonable diligence should have discovered) they had a potential claim relating to the accident and when the subject vehicle was first purchased or sold.

Such "methods to cull meritless cases" in this MDL have resulted in the dismissal of hundreds of statute of limitations and air bag deployment cases, and together with targeted Wave Four discovery, will help the Court and the parties to "separate the wheat from the chaff… [t]hat is to say, to identify cases that really have no business going forward or no business being in the MDL, and more generally to advance cases toward resolution." *MDL Standards & Best Practices*, Duke Law Ctr. for Judicial Studies (Sept. 11, 2014) Best Practice 7(D)(i) at 89; 2/7/2018 Hr'g Tr. at 4:20-5:5; *see also In re WorldCom, Inc. Sec. Litig.*, 2005 WL 2403856, at *3 (S.D.N.Y. Sept. 30, 2005) (pretrial proceedings under 28 U.S.C. § 1407(a) "encompass motions to dismiss and other dispositive pretrial motions" "whether based on federal or state law") (citing cases).

This is particularly true here, where these 34 plaintiffs were not included in prior waves because: 1) they had been dismissed by the Court at the time the prior wave orders were entered for failure to comply with their discovery obligations (*e.g.,* four Hancock plaintiffs and Webb); 2) they were involved in pre-Sale accidents not eligible to participate in prior waves; or 3) they did not file their claims until many months after Wave Three began (19 of the 34 claims).[8]

---

subject of Phase One Discovery. (Order No. 20 ¶ 1, Docket No. 383 (including Recall No. 14-V-153 in Phase One).)

[7] The parties' only disagreement with respect to the Order No. 140 procedures appears to be its timing and sequencing. Lead Counsel propose that New GM be forced to file deployment and limitations notices within 45 days, whereas New GM requests to file such notices after it has the benefit of receiving fact sheet and settlement documentation from newly filed plaintiffs, which is particularly important in determining issues relating to air bag deployment.

[8] Moreover, New GM still does not have basic information on certain older potential Wave Four claims. For example, more than a year ago New GM asked plaintiff Thomas Hayes' counsel for a legible copy of the police report for the subject incident and the VIN for the subject vehicle. Neither plaintiff nor his counsel has provided either.

**KIRKLAND & ELLIS LLP**

The Honorable Jesse M. Furman
March 2, 2020
Page 4

**II.   The Court Should Adopt Wave Discovery And Motion Practice Procedures For Personal Injury Plaintiffs Who May Be Consolidated In The MDL In The Future.**

To our knowledge, February 2020 was the *first* month without the filing of a new suit alleging ignition switch and/or unintended key rotation defects since NHTSA Recall No. 14-V-047 was announced more than *six years* ago. Since the entry of the Wave One order, more than 285 new plaintiffs have filed claims that have been consolidated in this MDL, and New GM cannot predict the number of additional cases that may be filed in the future. But each of these newly filed plaintiffs has benefited from the incredible amount of work that has taken place in this MDL. By way of example only, each of these plaintiffs have access to the MDL 2543 Document Depository holding more than 4.7 million documents (totaling more than 23.4 million pages, exclusive of natives) produced by New GM in response to more than 1,750 document requests propounded by Lead Counsel, as well as transcripts from the 777 depositions (including 102 depositions of GM witnesses) the parties have conducted to date, in addition to vast troves of common benefit work developed by Lead Counsel and their experts over the past six years.

New GM's proposed Wave Four order provides efficient, fair, and expedited procedures for any plaintiffs who are in the future consolidated into the MDL or who file amended complaints in accordance with the severance and amendment procedures in Order No. 137. Under New GM's proposal, each of these plaintiffs would participate in targeted discovery (and potential motion practice) to push their cases towards resolution within ten months of consolidation into the MDL (or for those plaintiffs who have filed amended complaints pursuant to Order No. 137 procedures, within ten months of filing their severed and amended complaint). To achieve this efficiency, New GM has proposed that the Court accelerate the timeline for plaintiffs in Wave Four (both those who would be subject to these procedures now, as well as any who may be subject to them in the future) to produce plaintiff fact sheet documents and settlement related materials pursuant to Order Nos. 25 and 108. Although aggressive, New GM's fast-tracked schedule still provides sufficient time and procedural safeguards for the potential Wave Four plaintiffs (which include plaintiffs proceeding pro se) to comply with the Court's orders and provide New GM the materials necessary to assess plaintiffs' claims not just for the Order No. 140-style culling procedures but also for attempting to settle plaintiffs' claims, as New GM has done with thousands of MDL plaintiffs.

**III.   New GM's Proposal Is Much More Efficient, Fair, and Likely To Result In Global Resolution Of The MDL Than Lead Counsel's Dressed-Up Remand Proposal.**

Notwithstanding the unabated success of the Court's wave discovery and motion practice procedures, Lead Counsel propose to abandon the wave procedures altogether and substitute in their place a settlement window, followed by the submission of proposed deadlines and procedures for remand, which will no doubt require significant intervention from the Court in resolving unnecessary remand-related disputes. But there is no need to rock the boat here. The Court's wave discovery procedures have worked swimmingly. Indeed, as the Honorable Jack B. Weinstein

# KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
March 2, 2020
Page 5

explained in the *Zyprexa* MDL, and as this Court tacitly recognized in entering the prior wave orders, "continued supervision of the litigation in this [MDL] court" through case specific discovery and motion practice "will assist in the efficient resolution of the remaining MDL claims." *In re Zyprexa Prod. Liab. Litig.* 2008 WL 2511791, at *2 (E.D.N.Y. June 19, 2008). In contrast, "[r]emanding cases now will unnecessarily burden the transferor courts. They would have to familiarize themselves with the factual and legal issues of this MDL. Re-litigation of discovery issues and inconsistent rulings would likely result. Settlement discussions between the parties may be hampered" and "[p]ayment to plaintiffs" "may be delayed." *Id.* These same considerations militate against plaintiffs' premature remand plan for any claims that do not result in a settlement without the benefit of wave discovery and motion practice procedures.[9] New GM's proposed Wave Four order provides the much more efficient, fair, and aggressive path to global resolution of the MDL, and will facilitate settlement much more efficiently than plaintiffs' settlement window and remand proposal. One need look no further than the remarkable success of the wave procedures (317 Wave plaintiffs' claims resolved against the backdrop of New GM's extraordinary efforts resolving more than 97% of the MDL docket since the start of the Wave One procedures, and more than 98.5% of all personal injury claims consolidated since the inception of the MDL), to conclude the Court should stay the course and adopt New GM's Wave Four proposal.

\*   \*   \*

For the foregoing reasons, New GM respectfully requests that the Court enter the proposed Wave Four Discovery and Motion Practice Order attached hereto as Exhibit A. We would be happy to address any questions the Court may have regarding New GM's proposal.

Respectfully submitted,

/s/ Richard C. Godfrey, P.C.
/s/ Andrew B. Bloomer, P.C.
/s/ Wendy L. Bloom
/s/ R. Allan Pixton

*Counsel for Defendant General Motors LLC*

cc:   MDL Counsel of Record

---

[9] *See, e.g.*, Pretrial Order No. 193, *In re Ethicon, Inc. Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:12-MD-002327, Aug. 19, 2015, *avail. at* http://www.wvsd.uscourts.gov/MDL/ethicon/orders.html (ordering "waves" of intense discovery and dispositive motion practice in the MDL before a case would be deemed "trial ready" and remanded); *In re Diet Drugs Prods. Liab. Litig.*, 1999 WL 673066, at *2 (E.D. Pa. Aug. 26, 1999) (similar).