| | |
|---|---|
| IN RE:<br><br>GENERAL MOTORS LLC IGNITION SWITCH LITIGATION | No. 14-MD-2543 (JMF) |
| *This Document Relates to:*<br><br>*ALL ECONOMIC LOSS ACTIONS* | |

## SETTLEMENT AGREEMNT

# SETTLEMENT AGREEMENT

# TABLE OF CONTENTS

| __Section__ | | __Page__ |
|---|---|---|

I.        **DEFINITIONS** ................................................................................................1

II.      **SETTLEMENT BENEFITS** ....................................................................**24**

        A.      Benefits Provided to Class Members ................................................24

        B.      Settlement Claim Form Submission and Review .............................33

III.     **NOTICE TO THE CLASS**.......................................................................**34**

        A.      Components of Class Notice.............................................................34

        B.      Short Form Notice ...........................................................................35

        C.      Summary Settlement Notice and Press Releases ............................35

        D.      Settlement Website ..........................................................................36

        E.      Long Form Notice ...........................................................................36

        F.      Toll-Free Telephone Number ..........................................................38

        G.      Class Action Fairness Act Notice ....................................................38

        H.      Duties of the Class Action Settlement Administrator.......................38

        I.      Self-Identification ...........................................................................43

IV.    **REQUESTS TO BECOME OPT-OUTS** ..............................................**43**

V.     **OBJECTIONS TO SETTLEMENT** .......................................................**45**

VI.    **RELEASES, WAIVERS, AND COVENANTS NOT TO SUE.** ...................................**46**

        A.      Class Members' Release ..................................................................46

        B.      The GUC Trust's and New GM's Release of Plaintiffs' Class  Counsel, Allocation Counsel and Designated Counsel...................52

        C.      Release Between GUC Trust and New GM ....................................53

VII.   **MDL COURT JURISDICTION AND GUC TRUST ISSUES**.......................................**60**

**VIII.   ATTORNEYS' FEES AND EXPENSES AND INDIVIDUAL PLAINTIFF
AWARDS**.................................................................................................**70**

**IX.   WITHDRAWAL ORDER, PRELIMINARY APPROVAL ORDER, GUC
TRUST APPROVAL ORDER, FINAL ORDER, FINAL JUDGMENT AND
RELATED ORDERS**.............................................................................**74**

**X.   BEST EFFORTS TO EFFECTUATE THIS SETTLEMENT**...................**78**

**XI.   MODIFICATION OR TERMINATION OF THIS AGREEMENT**.........**79**

**XII.   GENERAL MATTERS AND RESERVATIONS**..........................................**85**

# TABLE OF EXHIBITS

**Exhibit 1:**      List of Economic Loss Actions in *In re: General Motors Ignition Switch Litigation*, Case No. 14-MD-2543 (JMF).

**Exhibit 2:**      Allocation Decision

**Exhibit 3:**      GUC Trust Approval Order

**Exhibit 4:**      GUC Trust Motion

**Exhibit 5:**      Long Form Notice

**Exhibit 6:**      Preliminary Approval Order

**Exhibit 7:**      Qualified Settlement Fund Trust Agreement

**Exhibit 8:**      Release Agreement

**Exhibit 9:**      Settlement Claim Form

**Exhibit 10:**     Settlement Claim Review Protocol

**Exhibit 11:**     Short Form Notice

**Exhibit 12:**     Summary Settlement Notice

**Exhibit 13:**     Withdrawal Order

**Exhibit 14:**     Declaration of the Class Action Settlement Administrator

**Exhibit 15:**     Notice Pursuant to the Class Action Fairness Act, 28 U.S.C. §1715

**Exhibit 16:**     Initial Press Release

**Exhibit 17:**     Reminder Press Release

**NOW, THEREFORE**, without any admission or concession by Plaintiffs or Plaintiffs' Class Counsel of any lack of merit to their allegations and claims, and without any admission or concession by New GM and/or the GUC Trust of any liability or wrongdoing or lack of merit in their defenses, in consideration of the mutual covenants and terms contained herein, Plaintiffs, Plaintiffs' Class Counsel, New GM, and the GUC Trust agree as follows:

## I.   DEFINITIONS

As used in this Agreement (as defined below) and its attached exhibits, which exhibits are an integral part of this Agreement and are incorporated by reference in their entirety, the following terms have the following meanings, unless this Agreement specifically provides otherwise:

1.      "AAT" means the Motors Liquidation Company Avoidance Action Trust established pursuant to the Old GM Plan and its assets, together with the AAT Administrator and the AAT Monitor.

2.      "AAT Administrator" means Wilmington Trust Company, solely in its capacity as trust administrator and trustee of the Motors Liquidation Company Avoidance Action Trust pursuant to the Fourth Amended and Restated Motors Liquidation Company Avoidance Trust Agreement.

3.      "AAT Monitor" means Arthur J. Gonzalez, solely in his capacity as trust monitor for the Motors Liquidation Company Avoidance Action Trust.

4.      "Action" or "Actions" means (a) all economic loss claims relating to the Recalls, whether asserted as class, mass, or individual actions, however denominated, that are consolidated for pretrial proceedings in the MDL Court in *In re: General Motors Ignition Switch Litigation*, Case No. 14-MD-2543 (JMF) ("MDL 2543"), including those listed in Exhibit 1 hereto and all economic loss claims relating to the Recalls filed in the past, present or future in any federal or state court or other tribunal, and (b) all economic loss claims, whether asserted as class, mass, or

individual claims, including all Late Claims Motions and all Proposed Proofs of Claims involving alleged economic loss, however denominated, filed or asserted in the Bankruptcy Case.  For purposes of clarification, Actions does not include any action in the MDL or the Bankruptcy Case to the extent the litigant is seeking recovery for personal injury and/or wrongful death but does include economic loss claims asserted by any such litigant.

5.      "Adjustment Shares" has the meaning set forth in Section 3.2(c) of the Sale Agreement.

6.      "Agreement" or "Settlement" means this Settlement Agreement and the exhibits attached hereto or incorporated herein, which are an integral part of this Agreement, including any subsequent amendments and any exhibits to such amendments.

7.      "Allocation Counsel" means the following counsel who have been appointed by Plaintiffs' Class Counsel to serve as separate counsel for and representing each Subclass for the purposes of advocating allocation of the Net Common Fund across the Subclasses:  Marc Seltzer of Susman Godfrey LLP (Subclass 1), Kevin Dean of Motley Rice LLC (Subclass 2), Matthew Weinshall of Podhurst Orseck, P.A. (Subclass 3), Steven Davis of Boies Schiller Flexner LLP (Subclass 4), and John Tangren of DiCello Levitt Gutzler (Subclass 5).  Mr. Seltzer was appointed by the MDL Court to the Executive Committee in MDL 2543 pursuant to Order No. 8 (Docket No. 249), and the other Allocation Counsel are each respectively law firm partners of individual counsel appointed by the MDL Court to the Executive Committee pursuant to Order No. 8.  Mr. Dean is a partner with Joe Rice of Motley Rice LLC; Mr. Weinshall is a partner with Peter Prieto of Podhurst Orseck, P.A.; Mr. Davis is a partner with David Boies of Boies Schiller Flexner LLP; and Mr. Tangren is a partner with Adam Levitt of DiCello Levitt Gutzler.  The Allocation

Decision, attached hereto as Exhibit 2, was decided by the Court-Appointed Economic Loss Mediator.

8.      "Attorneys' Fees and Expenses" means such funds as may be awarded by the MDL Court and that shall not, under any circumstances, exceed Thirty Four Million Five Hundred Thousand U.S. Dollars ($34,500,000.00) to compensate any and all attorneys who represent any Person asserting economic loss claims pertaining to the Actions, as described in Section VIII of this Agreement.

9.      "Bankruptcy Case" means the chapter 11 case pending in the Bankruptcy Court captioned *In re Motors Liquidation Company, et al., f/k/a General Motors Corp., et al.*, Case No. 09-50026 (MG).

10.      "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York.

11.      "Claims Estimate Order" has the meaning set forth in Section 3.2(c) of the Sale Agreement.

12.      "Class" means, for settlement purposes only, all Persons who, at any time as of or before the Recall Announcement Date of the Recall(s) applicable to the Subject Vehicle, own(ed), purchase(d), and/or lease(d) a Subject Vehicle in any of the fifty States, the District of Columbia, Puerto Rico, Guam, the U.S. Virgin Islands, and all other United States territories and/or possessions.  The Class is comprised of five Subclasses as follows (the "Subclasses"), and a Class Member who own(ed), purchase(d), and/or lease(d) more than one Subject Vehicle is included within different Subclasses listed below and shall be a member of each applicable Subclass:

a.      Subclass 1:  The Delta Ignition Switch Subclass, comprised of those Class Members who own(ed), purchase(d), and/or lease(d) a Subject Vehicle

- 3 -

subject to NHTSA Recall No. 14v047.  Proposed Subclass 1 Counsel is Marc Seltzer of Susman Godfrey LLP.

b.      Subclass 2:  The Key Rotation Subclass, comprised of those Class Members who own(ed), purchase(d), and/or lease(d) a Subject Vehicle subject to NHTSA Recall Nos. 14v355, 14v394, and 14v400.  Proposed Subclass 2 Counsel are Joe Rice and Kevin Dean of Motley Rice LLC.

c.      Subclass 3:  The Camaro Knee-Key Subclass, comprised of those Class Members who own(ed), purchase(d), and/or lease(d) a Subject Vehicle subject to NHTSA Recall No. 14v346.  Proposed Subclass 3 Counsel are Peter Prieto and Matthew Weinshall of Podhurst Orseck, P.A..

d.      Subclass 4:  The Electronic Power Steering Subclass, comprised of those Class Members who own(ed), purchase(d), and/or lease(d) a Subject Vehicle subject to NHTSA Recall No. 14v153.  Proposed Subclass 4 Counsel are David Boies and Steven Davis of Boies Schiller Flexner LLP.

e.      Subclass 5:  The Side Airbag Subclass, comprised of those Class Members who own(ed), purchase(d), and/or lease(d) a Subject Vehicle subject to NHTSA Recall No. 14v118.  Proposed Subclass 5 Counsel are Adam Levitt and John Tangren of DiCello Levitt Gutzler.

Excluded from the Class are:  (a) the MDL Court and the Bankruptcy Court and each of their personnel and the judicial officers presiding over the Actions and members of their immediate family and staffs; (b) authorized GM dealers who executed a dealer agreement with New GM or Old GM; (c) daily rental fleet purchasers, owners and lessees (including all  registrants of a Subject Vehicle identified as "rental" in the IHS Markit / Polk vehicle registration data provided by New

GM to the Class Action Settlement Administrator); (d) governmental or quasi-governmental bodies, political subdivisions, and any agency or instrumentality thereof (including all registrants of a Subject Vehicle designated as "governmental" in the IHS Markit / Polk vehicle registration data provided by New GM to the Class Action Settlement Administrator); (e) each Person who did not own, purchase, and/or lease a Subject Vehicle until after the Recall Announcement Date applicable to that Subject Vehicle; (f) all counsel (and their law firms) representing Plaintiffs in the Actions, including Plaintiffs' Class Counsel, Allocation Counsel, Designated Counsel, and members of their immediate family; (g) all Persons who released claims relating to the Actions against all of the GUC Trust, Old GM and New GM concerning a Subject Vehicle, including without limitation all Persons who signed a consumer release and received a payment from the Arizona Attorney General pursuant to the Consent Decree entered on March 8, 2018 by the Superior Court of the State of Arizona in the matter of *Arizona v. General Motors LLC*, No. CV 2014-014090 (Maricopa County, Ariz.), all Persons who signed a GM Ignition Compensation Claims Resolution Facility Release of All Claims and received payment from Claims Administrator Kenneth Feinberg, and Persons who signed and notarized a release to settle a lawsuit or unfiled claims with New GM pertaining to a motor vehicle accident involving the Subject Vehicle in which the release released claims relating to the Actions against all of the GUC Trust, Old GM and New GM concerning the Subject Vehicle; and (h) all Persons who are Opt-Outs.

13.     "Class Action Settlement Administrator" means the third-party agent who must be agreed to by New GM and Plaintiffs' Class Counsel as a condition precedent to appointment by the MDL Court, and then who shall be approved by and appointed by the MDL Court to implement the Class Notice, the Settlement Claims Process, receiving and maintaining requests of Class Members to become an Opt-Out and other aspects of settlement administration to implement the

requirements of this Agreement as set forth in a joint retention agreement and as further described below.  New GM and Plaintiffs' Class Counsel agree that Jennifer M. Keough of JND Legal Administration shall serve as Class Action Settlement Administrator, subject to approval by the MDL Court.

14.     "Class Member" means a member of the Class.

15.     "Class Members' Release" means the release, waiver, and covenant not to sue set forth in Section VI.A of this Agreement and in the Final Order and Final Judgment.

16.     "Class Notice" means the notice program described in Section III.

17.     "Common Fund" means the Qualified Settlement Fund described in Section II.A.

18.     "Court-Appointed Economic Loss Settlement Mediator" means Layn R. Phillips, both a former United States Attorney and a former United States District Judge, who the MDL Court appointed as economic loss mediator pursuant to Order No. 132 entered on September 11, 2017 (Docket No. 292).

19.     "Designated Counsel" means Brown Rudnick LLP and Stutzman, Bromberg, Esserman & Plifka.

20.     "Excess Distribution" means the distribution in the amount of Three Hundred Million U.S. Dollars ($300,000,000.00) to be paid by the GUC Trust to the Unitholders as set forth in Paragraph 144 of this Agreement.

21.     "Excess Distribution Date" means the earlier to occur of (i) the GUC Trust Approval Order Effective Date, and (ii) the date on which the GUC Trust makes the Excess Distribution.

22.      "Fairness Hearing" means the hearing to be held pursuant to Fed. R. Civ. P. 23(e) for the purposes of the MDL Court determining whether to approve this Agreement as fair, reasonable, and adequate and to approve and enter the Final Order and Final Judgment.

23.      "5ACC" means the Fifth Amended Consolidated Complaint filed in *In re: General Motors Ignition Switch*, Case No. 14-MD-2543 (JMF) on September 8, 2017.

24.      "Final Effective Date" means the latest date on which the Final Order and Final Judgment approving this Agreement becomes final.  For purposes of this Agreement:

      a.      if no appeal has been taken from the Final Order and/or Final Judgment in the MDL Court, then "Final Effective Date" means the date on which the time to appeal therefrom has expired; or

      b.      if any appeal has been taken from the Final Order and/or Final Judgment in the MDL Court, then "Final Effective Date" means the date on which all appeals therefrom, including petitions for rehearing or re-argument, petitions for rehearing *en banc* and petitions for certiorari or any other form of review, have been finally disposed of in a manner that affirms the Final Order or Final Judgment in all respects; or

      c.      if Plaintiffs' Class Counsel, New GM, and the GUC Trust all agree in writing, then the "Final Effective Date" can occur on any other agreed date.

25.      "Final Judgment" means the MDL Court's final judgment as described in Section IX of this Agreement.

26.      "Final Order" means the MDL Court's order approving the Settlement and this Agreement, as described in Section IX of this Agreement.

27.   "GUC Trust" means the Motors Liquidation Company GUC Trust established pursuant to the Old GM Plan.

28.   "GUC Trust Administrator" means Wilmington Trust Company, solely in its capacity as GUC Trust Administrator and Trustee of the GUC Trust pursuant to the GUC Trust Agreement.

29.   "GUC Trust Agreement" means that certain Second Amended and Restated Motors Liquidation Company GUC Trust Agreement, dated as of July 30, 2015, as such agreement may be amended, restated, or supplemented from time to time, and including all exhibits, schedules and addenda thereto.

30.   "GUC Trust Approval Order" means the order to be entered by the Bankruptcy Court approving the GUC Trust Motion, as described in Paragraph 141 of this Agreement, which is to be substantially in the form attached hereto as Exhibit 3.

31.   "GUC Trust Approval Order Effective Date" shall be the date on which the GUC Trust Approval Order becomes a final order.  For purposes of this Agreement, the GUC Trust Approval Order shall be considered a final order at such time that:

  a.   if no appeal has been taken from the GUC Trust Approval Order, "GUC Trust Approval Order Effective Date" means the date on which the time to appeal therefrom has expired;

  b.   if any appeal has been taken from the GUC Trust Approval Order, "GUC Trust Approval Order Effective Date" means the date on which all appeals therefrom, including petitions for rehearing or re-argument, petitions for rehearing *en banc* and petitions for certiorari or any other form of review,

have been finally disposed of in a manner that affirms the GUC Trust

Approval Order in all respects; or

c.   any other date if agreed upon in writing by all of Plaintiffs' Class Counsel,

New GM and the GUC Trust.

32.   "GUC Trust Counsel" means McDermott Will & Emery LLP.

33.   "GUC Trust Excess Distribution Motion" means the motion filed in the Bankruptcy

Court by the GUC Trust dated July 8, 2019 [ECF No. 14552], seeking Bankruptcy Court approval

to distribute Three Hundred Twenty Million Eight Hundred and Eighty Thousand Six Hundred

and Thirty Nine U.S. Dollars ($320,880,639.00) to the GUC Trust's existing Unitholders.

34.   "GUC Trust Monitor" means FTI Consulting, Inc., solely in its capacity as trust

monitor of the GUC Trust pursuant to GUC Trust Agreement.

35.   "GUC Trust Motion" means a motion, in a form agreed to by the GUC Trust, New

GM, and Plaintiffs' Class Counsel, and which is to be substantially in the form attached hereto as

Exhibit 4, filed by the GUC Trust in the Bankruptcy Case seeking, *inter alia*, an order of the

Bankruptcy Court, pursuant to Bankruptcy Code sections 105(a), 363, and 1142 and Bankruptcy

Rule 9019, (i) approving the GUC Trust Administrator's Actions, (ii) approving the Settlement

Agreement and the Release Agreement, and (iii) authorizing the reallocation of GUC Trust Assets,

including, without limitation, findings by the Bankruptcy Court that (a) the GUC Trust's

execution, delivery and performance of the Settlement Agreement and the Release Agreement are

approved, (b) the Excess Distribution by the GUC Trust to the Unitholders is authorized, (c) the

GUC Trust's granting of the releases and covenants not to sue incorporated in the Settlement

Agreement and in the Release Agreement (the "GUC Trust Release" and the "New GM Release")

are approved, and (d) the reallocation of Fifty Million U.S. Dollars ($50,000,000.00) in "GUC

Trust Assets" (as the term is defined in the GUC Trust Agreement) to fund the GUC Trust's payment of (1) Two Million U.S. Dollars ($2,000,000.00) in Settlement Implementation Expenses (as defined in Paragraph 80) if and only if the Bankruptcy Court enters the GUC Trust Approval Order and the MDL Court enters the Withdrawal Order and the Preliminary Approval Order and (2) Forty-Eight Million U.S. Dollars ($48,000,000.00) into the Common Fund within 30 days of the Final Effective Date.

36.    "GUC Trust Released Parties" or "GUC Trust Released Party" means the GUC Trust, the GUC Trust Administrator, the GUC Trust Monitor, and any and all of each of their past, present, and future officers, directors, agents, employees, servants, associates, spouses, representatives, subsidiaries, affiliated companies, parent companies, joint-ventures and joint-venturers, partnerships and partners, members, stockholders, shareholders, bondholders, Unitholders, beneficiaries, trustees, insurers, reinsurers, divisions, agents, attorneys, administrators, advisors, predecessors, successors, heirs, and assigns.  The Parties expressly acknowledge that each of the foregoing is included as a GUC Trust Released Party even though not identified by name herein.  The terms "GUC Trust Released Parties" or "GUC Trust Released Party" do not include the AAT, or any Person entitled to distribution from the AAT (solely in their capacity as an AAT beneficiary).

37.    "Late Claims Motions" means, collectively, those motions filed in the Bankruptcy Case by or on behalf of Plaintiffs and Class Members seeking authority to file late proofs of claim, including, without limitation, the motions set forth at Bankruptcy Court docket ECF Nos. 13806, 13811, 13818, and 14280.

38.     "Letter Regarding Adjustment Shares" means that certain letter regarding the Adjustment Shares dated September 23, 2011 by, among others, New GM, Old GM and the GUC Trust.

39.     "Long Form Notice" means the Long Form Notice substantially in the form attached hereto as Exhibit 5.

40.     "MDL Court" means the United States District Court for the Southern District of New York.

41.     "Net Common Fund" means the funds remaining in the Common Fund after subtracting payments for all Settlement Implementation Expenses (as defined in Paragraph 80 below), as well as, if there is a Final Effective Date, after subtracting payments for any Plaintiff Incentive Awards (as defined in Paragraph 81 below).

42.     "New GM" means General Motors LLC.

43.     "New GM's Counsel" means Kirkland & Ellis LLP.

44.     "New GM Released Parties" or "New GM Released Party" means:

a.     General Motors Company, General Motors LLC, General Motors Holdings LLC, Vehicle Acquisition Holdings, LLC, and NGMCO, Inc.;

b.     Any and all Persons, including dealerships, involved in the design, manufacture, assembly, testing, sale, repair, marketing, advertising, inspection, maintenance, recall, or distribution of a Subject Vehicle;

c.     Any and all suppliers of materials, components, and/or services used in the manufacture of a Subject Vehicle; and

d.     Any and all past, present, and future officers, directors, agents, employees, servants, associates, spouses, representatives, subsidiaries, affiliated

companies, parent companies, joint-ventures and joint-venturers, partnerships and partners, members, stockholders, shareholders, bondholders, Unitholders, beneficiaries, trustees, insurers, reinsurers, dealers, suppliers, vendors, advertisers, service providers, distributors and sub-distributors, divisions, agents, attorneys, administrators, advisors, predecessors, successors, heirs, and assigns of any person, company, or entity identified in subparagraphs a.-c. of this Paragraph.

e.      The Parties expressly acknowledge that each of the foregoing is included as a New GM Released Party even though not identified by name herein.

45.      "Old GM" means Motors Liquidation Company f/k/a General Motors Corporation.

46.      "Old GM Bankruptcy Estates" means the Debtors' (as defined in the Old GM Plan) estates created upon the commencement of the Bankruptcy Case, including, without limitation, all property, rights, defenses and claims included therein.

47.      "Old GM Plan" means the *Debtors' Second Amended Joint Chapter 11 Plan*, dated March 18, 2011, and as confirmed by the Bankruptcy Court on March 29, 2011.

48.      "Opt-Outs" means all Persons within the definition of the Class who have submitted timely requests for exclusion in conformity with the procedural and substantive requirements of this Agreement, and all applicable orders of the MDL Court prior to the Opt-Out Deadline, and who thereafter do not revoke such request for exclusion prior to entry of the Final Judgment.

49.      "Opt-Out Deadline" means the date the MDL Court orders as the deadline for Persons to request becoming an Opt-Out, which date the Parties shall propose will be 175 days after the date on which the MDL Court enters the Preliminary Approval Order.

50.     "Participating Unitholders" means certain unaffiliated holders in excess of 65% of the beneficial units of the GUC Trust, as of the date of this Agreement, represented by Akin Gump Strauss Hauer & Feld LLP.

51.     "Parties" means Plaintiffs, New GM, and the GUC Trust, collectively, as each of those terms is defined in this Agreement.

52.     "Person" or "Persons" means an individual, corporation, business, company, firm, partnership, association, proprietorship, trust, governmental or quasi-governmental body or political subdivision or any agency or instrumentality thereof, or any other entity or organization.

53.     "Plaintiffs" means Valeria Glenn, Gerald Smith, Marion Smoke, Camille Burns, Joe Glover, Nettleton Auto Sales, Inc., Grace Belford, Barbara Hill, Ray Wieters, Patricia Barker, Chimen Basseri, Michael Benton, Sylvia Benton, Kimberly Brown, Kellie Cereceres, Crystal Hardin, Yvonne James-Bivins, Javier Malaga, Winifred Mattos, Santiago Orosco, David Padilla, Esperanza Ramirez, William Rukeyeser, Michelle Thomas, Trina Bruche, John Marvin Brutche, Jr., Margaret Lesnansky, Yvonne Elaine Rodriguez, Annet Tivin, Nathan Terry, Wandell Littles Beazer, Stacey Bowens, Robert Deleo, Celeste Deleo, Michael Pesce, Lisa Teicher, Tracey Perillo, LaTonia Tucker, Joni Ferden-Precht, Debra Forbes, Kim Genovese, Rhonda Haskins, Maria E. Santiago, Harvey Sobelman, Verlena Walker, Neysa Williams, Rochelle Bankhead, Carla Cartwright, Dale Dowdy, Jennifer Dunn, Towana Ferguson, Jenny Mathis, Billy Mosley, Clifford Turner, Barry Wilborn, Dennis Walther, Patricia Backus, Susan Benner, Debra Cole, Charlene Kapraun, Keith Nathan, Patrick Painter, Cliff Redmon, Lane Blackwell, Jr., Martha Cesco, Heather Holleman, Valerie Mortz Rogers, Cheryl Reed, Karen Rodman, Heidi Wood, Alphonso Wright, James Dooley, Lyle Wirtles, Carl Bosch, Evelyn Bosch, Phyllis Hartzell, Philip Zivnuska, Elizabeth Stewart, Dawn Talbot, Frances Ann Fagans, Lori Green, Raymond Naquin, Lisa West,

Debra Quinn, Harry Albert, Marc Koppleman, Madelaine Koppelman, Melody Lombardo, Jerrod Pinkett, Robert Wyman, Debra Companion, Colin Elliott, Richard Leger, Susan Viens, Brittany Vining, Sheree Anderson, Marquetta Chestnut, Diana Cnossen, Rafael Lanis, Sophia Marks, David Price, Brian Semrau, Jacqueline Smith, Bryan Wallace, Franklin Wloch, Anna Allshouse, David Cleland, Janelle Davis, William Hill, Christine Leonzal, Cynthia Shatek, Jennifer Sullivan, Larry Haynes, Frances Howard, Elizabeth D. Johnson, Ashley Murray, Youloundra Smith, Linda Wright, Brad Akers, Deloris Hamilton, Cynthia Hawkins, Kenneth Robinson, Ronald Robinson, Mario Stefano, Christopher Tinen, Patrice Witherspoon, Laurie Holzwarth, Susan Rangel, Bonnie Hensley, Sandra Horton, Wayne Wittenberg, Crystal Mellen, Michael Amezquita, Heather Francis, Anthony Juraitis, Gene Reagan, Steven Sileo, Javier Delacruz, Lorraine De Vargas, Arteca Heckard, Bernadette Romero, Irene Torres, Renate Glyttov, Sandra Levine, Nicole Mason, Donna Quagliana, Michael Rooney, William Ross, Richelle Draper, Gwen Moore, Leland Tilson, Jolene Mulske, Lisa Axelrod, Gail Bainbridge, Tracie Edwards, Georgianna Parisi, Peggy Robinson, Bradley Siefke, Steven M. Steidle, Bonnie Taylor, William Troiano, Reggie Welch, Carleta Burton, Deneise Burton, Debra Cummings, Jerrile Gordon, Paulette Hand, Jennifer Reeder, Bruce Wright, Denise Wright, William Bernick, Shelton Glass, Janice Bagley, Raymond Berg, Shawn Doucette, Shirley Gilbert, George Mathis, Paul Pollastro, David Schumacher, Greg Theobald, Mary Dias, Garrett Mancieri, Annette Hopkins, Frances James, Cassandra Legrand, Kimberly Mayfield, Edith Williams, Norma Lee Holmes, Catherine Senkle, Helen A. Brown, Alexis Byrd, Felisha Johnson, Sharon Newsome, Louise Tindell, Silas Walton, Gareebah Al-ghamdi, Dawn Bacon, Dawn Fuller, Michael Graciano, Shenyesa Henry, Keisha Hunter, Lisa McClellan, Lisa Simmons, Malinda Stafford, Alexis Crockett, Blair Tomlinson, Paul Jenks,

Reynaldo Spellman, Michael Garcia, Tony Hiller, Stephanie Renee Carden, Melinda Graley, Nancy Bellow, Thomas Linder, Les Rouse, and Christy Smith.

54.     "Plaintiffs' Class Counsel" means counsel for Plaintiffs in the Actions, who are: Steve W. Berman, of Hagens Berman Sobol Shapiro LLP, and Elizabeth J. Cabraser of Lieff Cabraser Heimann & Bernstein, LLP.

55.     "Preliminary Approval Order" means the order to be entered by the MDL Court preliminarily approving the Settlement as described in Section IX of this Agreement and which is to be substantially in the form attached hereto as Exhibit 6.

56.      "Proposed Proofs of Claim" mean the proposed class claims attached as exhibits to the Late Claims Motions, as well as any other proofs of claim that Plaintiffs or Class Members assert, or seek to assert, in connection with the Late Claims Motions.

57.     "Qualified Settlement Fund Administrator and Trustee" means the Person who must be agreed to by and among New GM, the GUC Trust and Plaintiffs' Class Counsel, and who shall be approved by and appointed by the MDL Court to serve as administrator and trustee to open and administer the Common Fund (and Net Common Fund) as a trust structured and operated in a manner so that it qualifies as a "qualified settlement fund" under section 468B of the Internal Revenue Code (the "Code") and Treasury Regulation § l.468B-1 ("Qualified Settlement Fund") consistent with the terms of the Qualified Settlement Fund trust agreement, attached hereto as Exhibit 7 (the "Qualified Settlement Fund Trust Agreement"), executed by New GM, the GUC Trust and Plaintiffs' Class Counsel, upon entry of the Preliminary Approval Order by the MDL Court which, among other things, shall approve establishment of the Common Fund as a Qualified Settlement Fund Trust.  New GM, the GUC Trust and Plaintiffs' Class Counsel agree that Flora

Bian of JND Legal Administration shall serve as Qualified Settlement Fund Administrator and Trustee.

58.    "Recalls" means the following seven motor vehicle recalls conducted by New GM in 2014 as described by National Highway Transportation Safety Administration ("NHTSA") recall number:  NHTSA Recall No. 14v047 (Delta Ignition Switch), NHTSA Recall No. 14v355 (Impala Key Rotation), NHTSA Recall No. 14v394 (Cadillac CTS/SRX Key Rotation), NHTSA Recall No. 14v400 (Malibu Key Rotation), NHTSA Recall No. 14v346 (Knee-to-Key Camaro), NHTSA Recall No. 14v118 (Side Airbag), and NHTSA Recall No. 14v153 (Electronic Power Steering).

59.    "Recall Announcement Date" means the last day of the month in which New GM notified NHTSA in 2014 that it was including the Subject Vehicle in one of the Recalls.  For a Subject Vehicle subject to more than one of the Recalls, the Recall Announcement Date shall be the last day of the month of such notice by New GM to NHTSA for whichever Recall came later in time.

60.    "Release Agreement" means the Release Agreement by and between New GM and the GUC Trust attached hereto as Exhibit 8, which shall become effective on the Excess Distribution Date.

61.    "Released Parties" or "Released Party" means:

a.    General Motors Company, General Motors LLC, General Motors Holdings LLC, Vehicle Acquisition Holdings, LLC, and NGMCO, Inc.;

b.    Any and all Persons, including dealerships, involved in the design, manufacture, assembly, testing, sale, repair, marketing, advertising, inspection, maintenance, recall, or distribution of a Subject Vehicle;

c.   Any and all suppliers of materials, components, and/or services used in the manufacture of a Subject Vehicle;

d.   General Motors Corporation, Motors Liquidation Company, the GUC Trust Monitor, the GUC Trust Administrator, the GUC Trust, or any other trust established by the Old GM Plan to hold or pay liabilities of Old GM; provided, however, that notwithstanding any other provision of this Agreement, (i) the AAT shall not constitute a Released Party and the Releasing Parties and New GM shall not release the AAT from any rights, claims or causes of action that the Releasing Parties or New GM have or may assert against the AAT, and (ii) the Releasing Parties and New GM shall not, and shall not be deemed to, release Old GM or the Old GM Bankruptcy Estates from any Actions or claims solely to the extent that such Actions or claims are asserted only against, or recoverable only from, the AAT, and provided that, for the avoidance of doubt, such Actions or claims may not be asserted against, or recoverable from, the GUC Trust, the assets of the GUC Trust, or any Unitholder, solely in their capacity as a Unitholder of the GUC Trust; and

e.   Any and all past, present, and future officers, directors, agents, employees, servants, associates, spouses, representatives, subsidiaries, affiliated companies, parent companies, joint-ventures and joint-venturers, partnerships and partners, members, stockholders, shareholders, bondholders, Unitholders, beneficiaries, trustees, insurers, reinsurers, dealers, suppliers, vendors, advertisers, service providers, distributors and

sub-distributors, divisions, agents, attorneys, administrators, advisors, predecessors, successors, heirs, and assigns of any person, company, or entity identified in subparagraphs a.-d. of this Paragraph.

f.      The Parties expressly acknowledge that each of the foregoing is included as a Released Party even though not identified by name herein.

62.     "Releasing Parties" or "Releasing Party" means  the Class, Plaintiffs, and each Class Member, on behalf of themselves and their heirs, beneficiaries, estates, executors, administrators, representatives, agents, counsel, insurers, reinsurers, subsidiaries, corporate parents, predecessors, successors, indemnitors, subrogees, assigns, and any legal, juridical, or natural person or entity who may claim by, through, under, or on behalf of them.

63.      "Sale Agreement" means that certain Amended and Restated Master Sale and Purchase Agreement, dated as of July 5, 2009, by and among General Motors Corporation, certain of its affiliates, and NGMCO, Inc., and approved by the Bankruptcy Court on July 5, 2009, as amended, restated, or supplemented from time to time, and including all exhibits, schedules and addenda thereto.

64.     "Settlement Claim" means the claim of a Class Member or the Class Member's representative submitted on a Settlement Claim Form as provided in this Agreement.

65.     "Settlement Claim Form" means the document, in substantially the same form as Exhibit 9 attached to this Agreement, to be completed by a Class Member in order to make a Settlement Claim pursuant to this Settlement.

66.     "Settlement Claim Period" means the time period in which Class Members may submit a Settlement Claim Form for review to the Class Action Settlement Administrator.  The Settlement Claim Period shall begin on the date the Preliminary Approval Order is entered and

end 90 days after the Final Effective Date.  The Settlement Claim Period shall be specified in the Summary Settlement Notice, Short Form Notice, Long Form Notice, and on the Settlement website.

67.     "Settlement Claim Process" means the process for submitting and reviewing Settlement Claims described in this Agreement and in the Settlement Claim Review Protocol, attached hereto as Exhibit 10.

68.     "Settlement Claimant" means a Class Member who has submitted a Settlement Claim.

69.     "Short Form Notice" means the Short Form Notice substantially in the form as attached hereto as Exhibit 11.

70.     "Subject Vehicles" means the GM vehicles subject to the Recalls as defined by the VINs provided by New GM to the Class Action Settlement Administrator and which are comprised of the following GM vehicles:

> a.     "Production Part Recall 14v047 Vehicles," which are those 2005-2007 Chevrolet Cobalt vehicles not also subject to Recall 14v153, those 2004-2007 Saturn Ion vehicles not also subject to Recall 14v153, 2006-2007 Chevrolet HHR vehicles, those 2007 Pontiac G5 vehicles not also subject to Recall 14v153, some 2005-2006 Pontiac Pursuit vehicles imported into the United States not also subject to Recall 14v153, 2007 Saturn Sky vehicles, 2003 Saturn Ion vehicles, and 2006-2007 Pontiac Solstice vehicles.  The Recall Announcement Date for the Production Part Recall 14v047 Vehicles is February 28, 2014.

b.      "Production Part Recall 14v047 Vehicles also subject to Recall 14v153," which are those 2005-2007 Chevrolet Cobalt vehicles subject to both Recalls, those 2007 Pontiac G5 vehicles subject to both Recalls, some 2004-2007 Saturn Ion vehicles, and some 2005-2006 Pontiac Pursuit vehicles imported into the United States subject to both Recalls.  The Recall Announcement Date for the Production Part Recall 14v047 Vehicles also subject to Recall 14v153 is March 31, 2014.

c.      "Service Part Recall 14v047 Vehicles," which are those 2008-2010 Chevrolet Cobalt vehicles not also subject to Recall 14v153, 2008 and 2011 Chevrolet HHR vehicles, those 2009-2010 Chevrolet HHR vehicles not also subject to Recall 14v153, those 2008-2010 Pontiac G5 vehicles imported into the United States not also subject to Recall 14v153, 2008-2010 Saturn Sky vehicles, and 2008-2010 Pontiac Solstice vehicles.  The Recall Announcement Date for these Service Part Recall 14v047 Vehicles is March 31, 2014.  Additionally, for 105 vehicles of various other makes, models and model years as identified by VINs provided by New GM for such Subject Vehicles to the Class Action Settlement Administrator, the Recall Announcement Date is August 31, 2014.

d.      "Service Part Recall 14v047 Vehicles also subject to Recall 14v153," which are those 2008-2010 Chevrolet Cobalt vehicles subject to both Recalls, those 2009-2010 Chevrolet HHR vehicles subject to both Recalls, and those 2008-2010 Pontiac G5 vehicles imported into the United States subject to

both Recalls.  The Recall Announcement Date for the Service Part Recall 14v047 Vehicles also subject to Recall 14v153 is March 31, 2014.

e.   "Recall 14v346 Vehicles," which are 2010-2014 Chevrolet Camaro vehicles.  The Recall Announcement Date for the Recall 14v346 Vehicles is June 30, 2014.

f.   "Recall 14v355 Vehicles," which are 2005-2009 Buick Lacrosse vehicles, 2000 and 2006-2013 Chevrolet Impala vehicles, 2014 Chevrolet Impala Limited vehicles, 2000-2005 Cadillac Deville vehicles, 2006-2011 Cadillac DTS vehicles, 2006-2011 Buick Lucerne vehicles, 2006-2007 Chevrolet Monte Carlo vehicles, 2005-2009 Buick Allure vehicles, 2004 Buick Regal vehicles, 2002-2009 Cadillac Commercial Chassis vehicles, and 2000-2011 Cadillac Professional Chassis vehicles.  The Recall Announcement Date for the Recall 14v355 Vehicles is June 30, 2014.

g.   "Recall 14v394 Vehicles," which are those 2003-2014 Cadillac CTS vehicles as identified by VINs provided by New GM for such Subject Vehicles to the Class Action Settlement Administrator, and those 2004-2006 Cadillac SRX as identified in the list of VINs provided by New GM for such Subject Vehicles to the Class Action Settlement Administrator, and 2004-2007 Cadillac CTS-V vehicles.  The Recall Announcement Date for the Recall 14v394 Vehicles is July 31, 2014, except that the Recall Announcement Date is August 31, 2014 for 2012-2014 Cadillac CTS vehicles and those 2011 Cadillac CTS vehicles as identified in the list of

VINs provided by New GM for such Subject Vehicles to the Class Action Settlement Administrator.

h.    "Recall 14v400 Vehicles," which are 1997-2003 Chevrolet Malibu vehicles, 2000-2005 Chevrolet Impala vehicles, 2000-2005 Chevrolet Monte Carlo vehicles, 2004-2005 Chevrolet Classic vehicles, 1999-2004 Oldsmobile Alero vehicles, 1998-2002 Oldsmobile Intrigue vehicles, 1999-2005 Pontiac Grand Am vehicles, and 2004-2008 Pontiac Grand Prix vehicles.  The Recall Announcement Date for the Recall 14v400 Vehicles is July 31, 2014.

i.    "Recall 14v118 Vehicles," which are those 2008-2009 Buick Enclave vehicles as identified in the list of VINs for such Subject Vehicles provided by New GM to the Class Action Settlement Administrator, 2010-2013 Buick Enclave vehicles, those 2009 Chevrolet Traverse vehicles as identified in the list of VINs for such Subject Vehicles provided by New GM to the Class Action Settlement Administrator, 2010-2013 Chevrolet Traverse vehicles, those 2008-2009 GMC Acadia vehicles as identified in the list of VINs for such Subject Vehicles provided by New GM to the Class Action Settlement Administrator, 2010-2013 GMC Acadia vehicles, and 2008-2010 Saturn Outlook vehicles.  The Recall Announcement Date for the Recall 14v118 Vehicles is March 31, 2014.

j.    "Recall 14v153 Only Vehicles," which are those 2004-2006 and 2008-2009 Chevrolet Malibu vehicles as identified in the list of VINs for such Subject Vehicles provided by New GM to the Class Action Settlement

Administrator, the 2004-2005 Chevrolet Malibu Maxx, some 2006 Chevrolet Malibu Maxx vehicles as identified in the list of VINs for such Subject Vehicles provided by New GM to the Class Action Settlement Administrator, 2005 Pontiac G6 vehicles, those 2006 and 2008-2009 Pontiac G6 vehicles as identified in the list of VINs for such Subject Vehicles provided by New GM to the Class Action Settlement Administrator, those 2008-2009 Saturn Aura vehicles as identified in the list of VINs for such Subject Vehicles provided by New GM to the Class Action Settlement Administrator, those 2005-2006 Pontiac G4 vehicles imported into the United States, and those 2006 Pontiac G5 Pursuit vehicles imported into the United States.  The Recall Announcement Date for the Recall 14v153 Only Vehicles is March 31, 2014.

71.    "Summary Settlement Notice" means the publication notice which is to be substantially in the form as attached hereto as Exhibit 12.

72.    "Unitholders" means any former, current, or future holder of Units (as defined in the GUC Trust Agreement) issued by the GUC Trust.

73.    "Vehicle Identification Number" or "VIN" means the definition of the term "VIN" as set forth in the Code of Federal Regulations which is as follows:  the "series of Arabic numbers and Roman letters that is assigned to a motor vehicle for identification purposes." 49 C.F.R. § 565.12(r) (2020).

74.    "Withdrawal Order" means the order to be entered by the MDL Court partially withdrawing the reference as described in Paragraph 140 of this Agreement, and, which is to be substantially in the form attached hereto as Exhibit 13.

75.     Other capitalized terms used in this Agreement but not defined in this Section I shall have the meanings ascribed to them elsewhere in this Agreement.

76.     The terms "he or she," "his or her," and "their" include "it" or "its" where applicable.

## II.     SETTLEMENT BENEFITS

**A.     <u>Benefits Provided to Class Members</u>**

77.     In consideration for the dismissal of the Actions with prejudice, as provided for and agreed to in this Agreement, and for the full and complete Class Members' Release, the GUC Trust Approval Order, the Final Order and Final Judgment and other terms and conditions provided below, New GM and the GUC Trust agree to provide the value to the Class set forth in this Section II.

78.     **Establishing the Common Fund as a Qualified Settlement Fund –** The Parties shall move the MDL Court to establish and create, as part of the Preliminary Approval Order, the Common Fund as a Qualified Settlement Fund.  All payments to be made by New GM and the GUC Trust pursuant to this Section II.A shall be made by wire transfer into the Common Fund, which shall be as warranted, established and controlled consistent with and pursuant to the Qualified Settlement Fund Trust Agreement attached hereto as Exhibit 7.   The Qualified Settlement Fund Administrator and Trustee shall invest the payments in short-term United States Agency or Treasury Securities (or a mutual fund invested solely in such instruments), or in a fully United States Government-insured account, and shall collect and reinvest any and all interest accrued thereon.   All (i) taxes on the income of the Common Fund and (ii) expenses and costs incurred to pay the taxes owed by the Common Fund (including, without limitation, expenses of tax attorneys and accountants) (collectively, "Taxes") shall be timely paid out of the Common Fund without prior order of the MDL Court.   The Parties agree that the Qualified Settlement Fund

Administrator and Trustee shall be responsible for filing tax returns for the Common Fund and for paying from the Common Fund any Taxes owed with respect to the Common Fund. The Parties all agree that such Taxes shall be Settlement Implementation Expenses as defined in Paragraph 80 below.

79.     **The Qualified Settlement Fund Administrator and Trustee –** The Qualified Settlement Fund Trust Agreement shall be executed by the Qualified Settlement Fund Administrator and Trustee, Plaintiffs' Class Counsel, New GM and the GUC Trust and shall, among other things, (i) establish a maximum amount to be paid to the Qualified Settlement Fund Administrator and Trustee in costs, fees and expenses in the period before the Final Effective Date and then in the period after the Final Effective Date through to the end of implementation of the Settlement and a time table for such payments, (ii) provide that all costs, fees, and expenses owed to the Qualified Settlement Fund Administrator and Trustee and all taxes owed by the Common Fund shall be paid exclusively out the Common Fund and shall be Settlement Implementation Expenses as that term is defined in Paragraph 80, (iii) set forth further detail regarding the duties and responsibilities of the Qualified Settlement Fund Administrator and Trustee, and (iv) require that the Qualified Settlement Fund Administrator and Trustee perform all duties consistent with the terms of this Settlement. The Qualified Settlement Fund Administrator and Trustee shall provide data and reports, the time frame and content of which are to be specified by each of Plaintiffs' Class Counsel, New GM, New GM's Counsel, the GUC Trust and the GUC Trust's Counsel sufficient to allow each of them to verify and audit that the Qualified Settlement Fund Administrator and Trustee is performing their duties consistent with the terms of the Qualified Settlement Fund Trust Agreement attached hereto as Exhibit 7 and the terms of this Settlement. If the Qualified Settlement Fund Administrator and Trustee makes a material misrepresentation to,

or conceals material information from, Plaintiffs' Class Counsel, the GUC Trust, the GUC Trust's

Counsel, New GM or New GM's Counsel, engages in any fraudulent conduct, fails to comply with

the terms of the Settlement Agreement and/or the Qualified Settlement Fund Trust Agreement,

and/or fails to perform adequately on behalf of the Class, New GM and/or the GUC Trust, then a

Party shall have the right to demand that the Qualified Settlement Fund Administrator and Trustee

immediately be replaced in addition to any other appropriate relief, which may include, but not be

limited to, terminating the Qualified Settlement Fund Trust Agreement, ceasing future payments

to the Qualified Settlement Fund Administrator and Trustee and/or seeking reimbursement of fees

already paid to the Qualified Settlement Fund Administrator and Trustee.   Under such

circumstances, the other Parties shall not unreasonably withhold consent to remove the Qualified

Settlement Fund Administrator and Trustee, but this event shall occur only after the Parties have

attempted to resolve any disputes regarding the retention or dismissal of the Qualified Settlement

Fund Administrator and Trustee in good faith, and, if they are unable to do so, after the matter has

been referred to the MDL Court for resolution.   New GM and the GUC Trust, as well as their

respective counsel, shall have no liability to each other, the Class, Plaintiffs' Class Counsel,

Proposed Subclass 1 Counsel, Proposed Subclass 2 Counsel, Proposed Subclass 3 Counsel,

Proposed Subclass 4 Counsel, Proposed Subclass 5 Counsel, Allocation Counsel, Designated

Counsel, the Class Action Settlement Administrator or the Qualified Settlement Fund

Administrator and Trustee for any actions, errors, or omissions of the Qualified Settlement Fund

Administrator and Trustee.   Plaintiffs' Class Counsel, Proposed Subclass 1, Counsel, Proposed

Subclass 2 Counsel, Proposed Subclass 3 Counsel, Proposed Subclass 4 Counsel, Proposed

Subclass 5 Counsel, and Designated Counsel shall have no liability to each other, New GM, the

GUC Trust, the Class Action Settlement Administrator or the Qualified Settlement Fund

Administrator and Trustee for any actions, errors, or omissions of the Qualified Settlement Fund Administrator and Trustee.

80.     **Payments for Settlement Implementation Expenses into and from the Common Fund** – All costs of Class Notice and of other costs of Settlement administration, including, but not limited to, purchase of vehicle registration data from a third party aggregator for use in implementation of the Settlement, costs for mailings by the Class Action Settlement Administrator staff, the fee for the Class Action Settlement Administrator and its staff, the fee for the Qualified Settlement Fund Administrator and Trustee, and the fee for the Court-Appointed Economic Loss Settlement Mediator and his staff to conduct the Allocation Counsel mediation and prepare the Allocation Decision (collectively, the "Settlement Implementation Expenses") shall be paid from the Common Fund.  All Settlement Implementation Expenses incurred prior to the Final Effective Date must be agreed to in writing by all of Plaintiffs' Class Counsel, New GM and the GUC Trust.   All Settlement Implementation Expenses incurred on or after the Final Effective Date must be agreed to in writing by Plaintiffs' Class Counsel and New GM.

    a.     If and only if the Bankruptcy Court enters the GUC Trust Approval Order and the MDL Court enters the Withdrawal Order and the Preliminary Approval Order, within 30 days of the later of the last of the foregoing Orders to be entered and the Excess Distribution Date, New GM agrees to deposit Eight Million Eight Hundred Thousand U.S. Dollars ($8,800,000.00) into the Common Fund and the GUC Trust agrees to deposit Two Million U.S. Dollars ($2,000,000.00) into the Common Fund, and these shall be the total amounts that New GM and the GUC Trust respectively deposit into the Common Fund unless and until there is a Final

Effective Date.  Unless and until there is a Final Effective Date, these funds shall be used by the Qualified Settlement Fund Administrator and Trustee only to pay for Settlement Implementation Expenses with any remainder, including interest, disbursed pro rata from the Net Common Fund to New GM and the GUC Trust in the event this Agreement is terminated.  Upon the Final Effective Date, any portion of these funds remaining after payment of all Settlement Implementation Expenses shall be disbursed by the Qualified Settlement Fund Administrator and Trustee and Class Action Settlement Administrator to Class Members pursuant to the Settlement Claim Review Protocol and Allocation Decision and shall become non-reversionary to New GM and the GUC Trust.  If there is no Final Effective Date, the total amount paid by New GM in consideration of this Settlement shall not under any circumstances exceed Eight Million Eight Hundred Thousand U.S. Dollars ($8,800,000.00), and the total amount paid by the GUC Trust shall not under any circumstances exceed Two Million U.S. Dollars ($2,000,000.00).

b.  Plaintiffs' Class Counsel agree that they shall pay into the Common Fund all costs for Settlement Implementation Expenses in excess of Ten Million Eight Hundred Thousand U.S. Dollars ($10,800,000.00) that are incurred and due to be paid prior to the Final Effective Date, and Plaintiffs' Class Counsel shall be reimbursed for such payments from the Common Fund by the Qualified Settlement Fund Administrator and Trustee if and only if there

is a Final Effective Date such that the GUC Trust and New GM make the
additional Cash Payments specified in Paragraph 81 below.

81.     **Payments by The GUC Trust and New GM Into the Common Fund After the
Final Effective Date, and Settlement Payments from the Net Common Fund to Settlement
Claimants** – Within 30 days of the Final Effective Date, New GM shall, subject to the terms and
conditions herein, deposit into the Common Fund the sum of Sixty One Million Two Hundred
Thousand U.S. Dollars ($61,200,000.00), and the GUC Trust, subject to the terms and conditions
herein, shall deposit into the Common Fund the sum of Forty Eight Million U.S. Dollars
($48,000,000.00).  These deposits, which shall be in addition to the deposits made by New GM
and the GUC Trust pursuant to Paragraph 80 above, shall be non-reversionary to New GM and the
GUC Trust.

a       If the AAT makes a payment to resolve claims asserted by Plaintiffs, the
Class and/or New GM against, or recoverable from, the AAT (such payment
by the AAT, the "AAT Contribution Amount"), New GM, Plaintiffs' Class
Counsel and Plaintiffs agree that, in consideration for New GM's payments
to the Common Fund, fifty percent (50%) of any AAT Contribution Amount
shall be paid, or otherwise credited, to New GM.  If the AAT Contribution
Amount is paid before the date on which New GM has deposited Sixty One
Million Two Hundred Thousand U.S. Dollars ($61,200,000.00) into the
Common Fund pursuant to this Paragraph 81, then (i) the entire AAT
Contribution Amount shall be deposited into the Common Fund, and shall
be non-reversionary to the AAT, and (ii) New GM's obligation to deposit
Sixty One Million Two Hundred Thousand U.S. Dollars ($61,200,000.00)

into the Common Fund shall be reduced in an amount equal to fifty percent (50%) of the AAT Contribution Amount.  If the AAT Contribution Amount is paid on or after the date on which New GM has deposited Sixty One Million Two Hundred Thousand U.S. Dollars ($61,200,000.00) into the Common Fund pursuant to this Paragraph 80, then fifty percent (50%) of any AAT Contribution Amount shall be paid directly to New GM.

b       New GM and the GUC Trust have no obligation under this Settlement to deposit into the Common Fund, and shall not deposit into the Common Fund, any payments of any kind other than the cash payment amounts expressly referenced in Paragraph 80 and this Paragraph 81.  If the Final Order and Final Judgment approving this Agreement do not become final for any reason, New GM and the GUC Trust shall not make any payment of any amount into the Common Fund other than their respective cash payments identified in Paragraph 80.  If there is a Final Effective Date, New GM and the GUC Trust shall make their respective cash payments identified in this Paragraph 81, and the total amount paid by New GM into the Common Fund, including payment for Settlement Implementation Expenses, any individual incentive/service awards to Plaintiffs awarded by the MDL Court in addition to the settlement payment amounts they receive for their Settlement Claims and which Plaintiffs' Class Counsel will propose be in the amount of Two Thousand U.S. Dollars ($2,000.00) for each Plaintiff who was deposed and One Thousand U.S. Dollars ($1,000.00) for all other Plaintiffs (such amounts, the "Plaintiff Incentive Awards"), and

for Net Common Fund allocations to Settlement Claimants, shall not under any circumstances exceed Seventy Million U.S. Dollars ($70,000,000.00), and the total amount paid by the GUC Trust into the Common Fund, including payment for Settlement Implementation Expenses, any Plaintiff Incentive Awards, and for Net Common Fund allocations to Settlement Claimants, shall not under any circumstances exceed Fifty Million U.S. Dollars ($50,000,000.00).  Thus, the maximum amount to be paid by New GM in consideration of this Settlement, which is to be paid only if there is a Final Effective Date and all other terms and conditions of this Settlement are satisfied, shall be Seventy Million U.S. Dollars ($70,000,000.00) into the Common Fund and Thirty Four Million Five Hundred Thousand U.S. Dollars ($34,500,000.00) for Attorneys' Fees and Expenses (as described in Section VIII below), and the maximum amount to be paid by the GUC Trust in consideration of this Settlement, which is to be paid only if there is a Final Effective Date and all other terms and conditions of this Settlement are satisfied, shall be Fifty Million U.S. Dollars ($50,000,000.00) into the Common Fund.

c      After advocacy by Allocation Counsel, the Court-Appointed Economic Loss Mediator has issued his Allocation Decision for allocating the Net Common Fund among the Subclasses.  The Allocation Decision is attached hereto as Exhibit 2.  If eligible, a Settlement Claimant will receive a settlement payment pursuant to the Settlement Claim Review Protocol and the Allocation Decision to be disbursed from the Net Common Fund by the

Qualified Settlement Fund Administrator and Trustee after the amount is finally determined by the Class Action Settlement Fund Administrator.

82.      **Condition to Settlement Payment for Those Who Have Not Received Repairs under a Recall** – No Class Member who is a current owner, purchaser or lessee of a Subject Vehicle shall receive a settlement payment of any kind under this Settlement unless and until the applicable Recall repair(s) have been performed on the Class Member's Subject Vehicle by an authorized GM dealer.  New GM maintains data identifying the VIN for each Subject Vehicle for which applicable Recall repair(s) have not been performed, and New GM's data shall be determinative of whether the applicable Recall repair(s) have been performed for each Subject Vehicle.  A Settlement Claimant who is informed by the Class Action Settlement Administrator that such Person is listed in vehicle registration data as the current owner, purchaser or lessee of a Subject Vehicle for which applicable Recall repair(s) have not been performed, may receive a settlement payment prior to and regardless of performance of the Recall repair(s) if New GM agrees that the Settlement Claimant has provided to the Class Action Settlement Administrator sufficient documentation to establish that such Settlement Claimant is no longer in the possession, custody, or control of the Subject Vehicle (with such documentation due no later than 30 days after the Class Action Settlement Administrator issues a notice of the open Recall repair(s) to such Settlement Claimant).  Sufficient documentation shall include a declaration signed under penalty of perjury when other documentation is no longer available with sufficient detail regarding the facts as to how and when the Subject Vehicle left such Settlement Claimant's possession, custody or control and attestation by such Person that documentation of the transfer of the vehicle from such Person's possession, custody or control is no longer available.  For each Subject Vehicle identified by New GM as not having the applicable Recall repair(s) yet performed, a Settlement

Claimant who is the current owner, purchaser or lessee of a Subject Vehicle must submit no later than 30 days after the Class Action Settlement Administrator issues a notice of the open Recall repair(s) to such Person the documentation or a declaration acceptable to the Class Action Settlement Administrator (and to New GM who shall retain a right to audit) as sufficient to establish that the Recall repair(s) were performed on the Subject Vehicle by an authorized New GM dealer in order to be eligible to receive a settlement payment from the Common Fund.  New GM shall coordinate with the Class Action Settlement Administrator on the above-stated steps for all Subject Vehicles, including for Subject Vehicles manufactured and sold before the formation of New GM.  The GUC Trust shall not be required to perform the above stated steps for any Subject Vehicle for which a Settlement Claim is asserted, irrespective of whether the Subject Vehicle was sold before or after the formation of New GM.

**B.**   <u>**Settlement Claim Form Submission and Review**</u>

83.      In order to become a Settlement Claimant eligible for a settlement payment pursuant to Section II.A, Class Members must submit a timely Settlement Claim pursuant to the Settlement Claim Process during the Settlement Claim Period, and the Class Action Settlement Administrator shall review and evaluate the Settlement Claim.  A Settlement Claim submitted after the Settlement Claim Period concludes will be rejected by the Class Action Settlement Administrator as untimely, and cannot qualify for a settlement payment.  The Class Action Settlement Administrator shall receive, evaluate and administer Settlement Claims pursuant to the terms of the Settlement Claim Review Protocol, which is attached hereto as Exhibit 10.

84.      The Settlement Claim Form shall be in substantially the same form as Exhibit 9 attached to this Agreement.  The Settlement Claim Form will be available on the Settlement website.  The Settlement Claim Form shall advise the Class Member that the Class Action Settlement Administrator has the right to request verification of eligibility, including verification

of the purchase, ownership, lease or resale of Subject Vehicles.  If the Settlement Claimant does not timely comply and/or is unable to timely produce documents to substantiate and/or verify the information on the Settlement Claim Form or the Settlement Claim is otherwise not approved for any reason set forth in the Settlement Claim Review Protocol, the Settlement Claim shall be disqualified.  The decision of the Class Action Settlement Administrator whether a Settlement Claimant is eligible to receive a settlement payment pursuant to the Settlement Claim Review Protocol and the Allocation Decision, and the amount of the settlement payment to be paid to a Settlement Claimant, shall be final and binding on the Settlement Claimant and all Parties; there shall be no right of appeal to the MDL Court or to any other court for Settlement Claimants or for any other Person of any such decision by the Class Action Settlement Administrator.

   85. The Class Action Settlement Administrator shall not begin to review and evaluate Settlement Claims for eligibility until after the occurrence of the Final Effective Date, and no Settlement Claims shall be paid unless and until New GM and the GUC Trust make the payments into the Common Fund referenced in Paragraph 81.  Settlement Claims approved by the Class Action Settlement Administrator shall be paid from the Net Common Fund by the Qualified Settlement Fund Administrator and Trustee in accordance with the final determinations made by the Class Action Settlement Administrator pursuant to the Settlement Claim Review Protocol and the Allocation Decision and in accordance with the terms of this Settlement and the Qualified Settlement Fund Trust Agreement.  The Class Action Settlement Administrator shall use their best efforts to complete the Settlement Claim Process within 180 days of the Final Effective Date.

### III. NOTICE TO THE CLASS

#### A. <u>Components of Class Notice</u>

   86. Class Notice will be accomplished through a combination of the Short Form Notice, Summary Settlement Notice, notice through the Settlement website, Long Form Notice, and other

applicable notice, each of which is described below, as specified in the Preliminary Approval Order, the Declaration of the Class Action Settlement Administrator (attached hereto as Exhibit 14), and this Agreement and in order to comply with all applicable laws, including but not limited to, Fed. R. Civ. P. 23, the Due Process Clause of the United States Constitution, and any other applicable statute, law or rule.

**B.     Short Form Notice**

87.     If and only if the Bankruptcy Court enters the GUC Trust Approval Order, the MDL Court enters the Withdrawal Order and the Preliminary Approval Order, and the Excess Distribution Date has occurred, as soon thereafter as practicable, the Class Action Settlement Administrator shall send the Short Form Notice, substantially in the form attached hereto as Exhibit 11, by U.S. Mail, proper postage prepaid, to the Class Members as identified by vehicle registration data to be purchased by the Class Action Settlement Administrator and after utilizing a service for updating addresses.  The Short Form Notice shall inform potential Class Members how to obtain the Long Form Notice via the Settlement website, via regular mail or via a toll-free telephone number, pursuant to Sections III.B, III.D, III.E and III.F, below.  In addition, the Class Action Settlement Administrator shall: (a) re-mail promptly any Short Form Notices returned by the United States Postal Service with a forwarding address; and (b) by itself or using one or more address research firms, as soon as practicable following receipt of any returned Short Form Notices that do not include a forwarding address, research such returned mail for better addresses and promptly mail copies of the applicable notice to any better addresses so found.

**C.     Summary Settlement Notice and Press Releases**

88.     If and only if the Bankruptcy Court enters the GUC Trust Approval Order, the MDL Court enters the Withdrawal Order and the Preliminary Approval Order, and the Excess Distribution Date has occurred, as soon thereafter as practicable, the Class Action Settlement

Administrator shall (i) cause the publication of the Summary Settlement Notice in substantially the form agreed upon by the Parties and attached hereto as Exhibit 12, and (ii) cause the dissemination of an Initial Press Release as described in the Declaration of the Class Action Settlement Administrator in substantially the form agreed upon by the Parties and attached hereto as Exhibit 16 and of a Reminder Press Release in substantially the form agreed upon by the Parties and attached hereto as Exhibit 17 shortly before the Settlement Claim Period deadline.

D.      **Settlement Website**

89.      If and only if the Bankruptcy Court enters the GUC Trust Approval Order, the MDL Court enters the Withdrawal Order and the Preliminary Approval Order, and the Excess Distribution Date has occurred, as soon thereafter as practicable, the Class Action Settlement Administrator shall establish a Settlement website that will inform Class Members of the terms of this Agreement, their rights, dates and deadlines and related information the content of which shall be subject to the written approval of the Parties. The Parties shall agree upon the website domain name, and the website shall include, in .pdf format, content agreed upon by the Parties and/or required by the MDL Court.

E.      **Long Form Notice**

90.      **Contents of Long Form Notice** – The Long Form Notice shall be in a form substantially similar to the document attached to this Agreement as Exhibit 5 and shall advise Class Members of the following:

        a.      General Terms:  The Long Form Notice shall contain a plain and concise description of the nature of the Actions, the history of the litigation of the claims, the preliminary certification of the Class (including its Subclasses) for settlement purposes, and the proposed Settlement, including information on the identity of Class Members, how the proposed Settlement would

provide benefits to the Class and Class Members, what claims are released under the proposed Settlement and other relevant terms and conditions, including that upon the Final Effective Date the payments by New GM and the GUC Trust into the Common Fund specified in Paragraphs 80 and 81 above shall be non-reversionary and shall be disbursed from the Net Common Fund pursuant to the Settlement Claim Review Protocol and the Allocation Decision after deductions for all Settlement Implementation Expenses and any Plaintiff Incentive Awards.

b.   Opt-Out Rights:  The Long Form Notice shall inform Class Members that they have the right to become an Opt-Out.  The Long Form Notice shall provide the deadlines and procedures for exercising this right.

c.   Objection to Settlement:   The Long Form Notice shall inform Class Members of their right to object to the proposed Settlement and appear at the Fairness Hearing in support of that objection.  The Long Form Notice shall provide the deadlines and procedures for exercising this right.

d.   Attorneys' Fees and Expenses:  The Long Form Notice shall inform Class Members about the amounts being sought by Plaintiffs' Class Counsel as Attorneys' Fees and Expenses which shall not exceed Thirty Four Million Five Hundred Thousand U.S. Dollars ($34,500,000.00) (such amount, the "Maximum Attorneys' Fees and Expenses Amount"), and shall explain that New GM will pay the Attorneys' Fees and Expenses awarded by the MDL Court up to the Maximum Attorneys' Fees and Expenses Amount but that

in no event shall New GM pay any Attorneys' Fees and Expenses in excess of the Maximum Attorneys' Fees and Expenses Amount.

91.     **Settlement Claim Form** – The Long Form Notice and Settlement website shall include the Settlement Claim Form, which shall be in a form substantially similar to the document attached to this Agreement as Exhibit 9, and which shall inform the Class Member that he, she or it must fully complete and timely return the Settlement Claim Form within the Settlement Claim Period to be eligible to obtain a payment pursuant to this Agreement.

92.     **Dissemination of Long Form Notice** – The Long Form Notice shall be available on the Settlement website.  The Class Action Settlement Administrator shall send via first-class mail the Long Form Notice to those Persons who request it in writing or through the toll-free telephone number.

**F.     Toll-Free Telephone Number**

93.     The Class Action Settlement Administrator shall establish a dedicated toll-free telephone number with an interactive voice recording that will provide Settlement-related information to Class Members, and the ability to request and receive the Long Form Notice and the Settlement Claim Form be sent by mail.

**G.     Class Action Fairness Act Notice**

94.     New GM shall send to each appropriate State and Federal official on behalf of itself and the GUC Trust the materials specified in 28 U.S.C. §1715 and otherwise comply with its terms. The identities of such officials and the content of the submission, which is mutually agreeable to New GM and the GUC Trust, shall be substantially in the form attached hereto as Exhibit 15.

**H.     Duties of the Class Action Settlement Administrator**

95.     Plaintiffs' Class Counsel, the GUC Trust and New GM shall execute a joint retention agreement with the Class Action Settlement Administrator which shall, among other

things, (i) establish a maximum amount to be paid to the Class Action Settlement Administrator in costs, fees and expenses in the period before the Final Effective Date and then in the period after the Final Effective Date through to the end of implementation of the Settlement and a time table for such payments, (ii) provide that all costs, fees, and expenses owed to the Class Action Settlement Administrator shall be paid exclusively out of the Common Fund and shall be Settlement Implementation Expenses as that term is defined in Paragraph 80, (iii) set forth further detail regarding the duties and responsibilities of the Class Action Settlement Administrator, and (iv) require that the Class Action Settlement Administrator perform all duties consistent with the terms of this Settlement.

96.     The Class Action Settlement Administrator shall be responsible for, without limitation, the following duties prior to the Final Effective Date:  (a) providing the completed Declaration of the Class Action Settlement Administrator in support of the Preliminary Approval Order attached hereto as Exhibit 14; (b) printing, mailing or arranging for the mailing of the Short Form Notice; (c) processing returned mail not delivered to Class Members; (d) attempting to obtain updated address information for any Short Form Notice returned without a forwarding address; (e) making any additional mailings required under the terms of this Agreement; (f) arranging for for publication of the Summary Settlement Notice and dissemination of the Initial Press Release and Reminder Press Release as described in the Declaration of the Class Action Settlement Administrator; (g) responding to requests for the Long Form Notice; (h) receiving and maintaining on behalf of the MDL Court any Class Member correspondence regarding requests to become an Opt-Out; (i) forwarding written inquiries to Plaintiffs' Class Counsel, New GM or the GUC Trust, or their designees; (j) establishing a post-office box for the receipt of any correspondence; (k) responding to requests from Plaintiffs' Class Counsel, New GM's Counsel,

and the GUC Trust's Counsel; (l) establishing a website and toll-free telephone number with message capabilities to which Class Members may refer for information about the Actions and the Settlement and staff to respond as appropriate to messages; (m) providing the Parties with copies of requests by Persons seeking to become an Opt-Out on a weekly basis, categorized by Subject Vehicle; (n) notifying the Parties of the total number of requests to become an Opt-Out on a weekly basis; (o) otherwise consulting on Class Notice and implementing and/or assisting with the dissemination of the notice of the Settlement as requested by the Parties; and (p) all other tasks agreed to in writing by the Parties and the Class Action Settlement Administrator.

97.    Also prior to the Final Effective Date, the Class Action Settlement Administrator shall be responsible for, without limitation, initiating the Settlement Claim Process pursuant to the Settlement Claim Review Protocol and related administrative activities by posting the Settlement Claim Form on the website and accepting but not processing or evaluating Settlement Claim Forms.

98.    The Class Action Settlement Administrator and the Parties shall promptly after receipt of any requests to become an Opt-Out, objections, and/or related correspondence provide copies of such requests and/or related correspondence to each other.

99.    Not later than 30 days before the date of the Fairness Hearing, the Class Action Settlement Administrator shall file with the MDL Court, under seal, a list of those Persons who seek to become Opt-Outs, as well as a Declaration outlining the scope, method, and results of the Class Notice program.

100.    After the Final Effective Date, the Class Action Settlement Administrator shall be responsible for, without limitation, evaluating each Settlement Claim Form filed to determine if the Person filing the Settlement Claim Form is a Class Member and eligible for a settlement

payment pursuant to the terms of this Settlement, the Settlement Claim Review Protocol and the Allocation Decision, and coordinating with the Qualified Settlement Fund Administrator and Trustee to ensure that all Settlement Claims approved for payment by the Class Action Settlement Administrator shall be paid out of the Net Common Fund consistent with the terms of this Settlement, the Settlement Claim Review Protocol and the Allocation Decision.  This work shall include (a) implementing the Settlement Claim Review Protocol attached as Exhibit 10; (b) checking VINs supplied on Settlement Claim Forms against those supplied by New GM to verify that a Settlement Claimant's vehicle is a Subject Vehicle; (c) checking the Settlement Claim Forms against the vehicle registration data to verify that the Settlement Claimant was the owner or lessee of the Subject Vehicle on or before the Recall Announcement Date; (d) checking the "rental" and "governmental" flags in the IHS Markit / Polk vehicle registration data provided by New GM to the Class Action Settlement Administrator and other pertinent data and documents to ensure the Person submitting the Settlement Claim Form is not excluded from the Class; (e) following up with Persons who submit Settlement Claim Forms as necessary to obtain additional information and documentation that may be required to verify Class Membership and eligibility for a settlement payment pursuant to the Settlement Claim Review Protocol and the Allocation Decision; (f) ensuring that no Class Member who is a current owner or lessee receives a settlement payment of any kind unless and until the applicable Recall repair(s) have been performed on the Class Member's Subject Vehicle by an authorized GM dealer pursuant to the process set forth in Paragraph 82; and (g) fulfilling any escheatment obligations that may arise.

101.    The Class Action Settlement Administrator shall provide data and reports, the time frame and content of which are to be specified by each of Plaintiffs' Class Counsel, New GM, New GM's Counsel, the GUC Trust and the GUC Trust's Counsel sufficient to allow each of them

to verify and audit that the Class Action Settlement Administrator is performing his or her duties consistent with the terms of this Settlement and the joint retention agreement.

102.    If the Class Action Settlement Administrator makes a material misrepresentation to, or conceals material information from, Plaintiffs' Class Counsel, New GM, New GM's Counsel, the GUC Trust or the GUC Trust's Counsel, engages in any fraudulent conduct, fails to comply with the terms of the Settlement Agreement and/or the joint retention agreement, and/or fails to perform adequately on behalf of the Class, New GM and/or the GUC Trust, then a Party shall have the right to demand that the Class Action Settlement Administrator immediately be replaced in addition to any other appropriate relief, which may include, but not be limited to, terminating the Class Action Settlement Administrator, ceasing future payments to the Class Action Settlement Administrator and/or seeking reimbursement of fees already paid to the Class Action Settlement Administrator.   Under such circumstances, the other Parties shall not unreasonably withhold consent to remove the Class Action Settlement Administrator, but this event shall occur only after the Parties have attempted to resolve any disputes regarding the retention or dismissal of the Class Action Settlement Administrator in good faith, and, if they are unable to do so, after the matter has been referred to the MDL Court for resolution.  New GM and the GUC Trust, as well as their respective counsel, shall have no liability to each other, the Class, Plaintiffs' Class Counsel, Proposed Subclass 1 Counsel, Proposed Subclass 2 Counsel, Proposed Subclass 3 Counsel, Proposed Subclass 4 Counsel, Proposed Subclass 5 Counsel, Allocation Counsel, Designated Counsel, the Class Action Settlement Administrator or the Qualified Settlement Fund Administrator and Trustee for any actions, errors, or omissions of the Class Action Settlement Administrator.   Plaintiffs' Class Counsel, Proposed Subclass 1 Counsel, Proposed Subclass 2 Counsel, Proposed Subclass 3 Counsel, Proposed Subclass 4 Counsel,

Proposed Subclass 5 Counsel, Allocation Counsel and Designated Counsel shall have no liability

to each other, New GM, the GUC Trust, the Class Action Settlement Administrator or the Qualified

Settlement Fund Administrator and Trustee for any actions, errors, or omissions of the Class

Action Settlement Administrator.

## I.      Self-Identification

103.     Because current owners, purchasers and lessees are required to have the Recall

repair performed on their Subject Vehicle prior to receiving any settlement payment under the

Settlement, and because the vehicle registration records to be provided by third party data

aggregator(s) may not be fully accurate in all respects and may not identify every Class Member

eligible to receive a payment under the Agreement, Class Members must complete and file a

Settlement Claim Form (using the Settlement Claim Form attached as Exhibit 9) and provide

necessary documentation identified in the Settlement Claim Form by the established deadline

indicating that they wish to and are eligible to receive a payment pursuant to Section II.A.

## IV.      REQUESTS TO BECOME OPT-OUTS

104.     Any potential Class Member who wishes to become an Opt-Out must mail a

written, hand-signed request to become an Opt-Out to the Class Action Settlement Administrator

at the address provided in the Long Form Notice, postmarked by the Opt-Out Deadline specifying

that such Person wants to become an Opt-Out, the dates of ownership or lease of the Subject

Vehicle, the make, model, model year, and VIN of the Subject Vehicle, the Person's current

address, the Person's address at the time of ownership or lease of the Subject Vehicle, and

otherwise complying with the terms stated in the Long Form Notice and Preliminary Approval

Order.  The Class Action Settlement Administrator shall provide to Plaintiffs' Class Counsel, New

GM's Counsel, and the GUC Trust's counsel a weekly list of the Opt-Outs categorized by Subject

Vehicle.  A list reflecting all requests to become an Opt-Out shall be filed with the MDL Court by

the Class Action Settlement Administrator no later than 30 days before the Fairness Hearing.  If a potential Class Member files a request to become an Opt-Out, such Person may not file an objection to the Settlement under Section V.  Potential Class Members who exercise the right to opt-out must do so for all claims that the Potential Class Member possesses against the GUC Trust, Old GM, or New GM.

105.    Any potential Class Member who has submitted a timely and valid request to become an Opt-Out may revoke such request by filing written notice of such revocation with the Court at any time prior to entry of the Final Judgment.

106.    Any potential Class Member who does not file a timely written request to become an Opt-Out as provided in Section IV shall be bound by all subsequent proceedings, orders and judgments, including, but not limited to, the Class Members' Release as set forth in Section VI.A below, the Final Order and the Final Judgment, even if such Class Member has litigation pending or subsequently initiates or attempts to initiate litigation against any Released Party relating to the claims and transactions released under this Settlement.

107.    The Parties have agreed to a confidential number of Opt-Outs, and will provide this number to the MDL Court in a document to be kept under seal by the MDL Court pursuant to the Parties' joint request until the Final Effective Date.  If the number of Opt-Outs is greater than the number agreed to by the Parties, then New GM and the GUC Trust shall independently have the absolute unilateral right (but not the obligation) to terminate the Settlement.  The number agreed to by the Parties shall be confidential and known only to New GM, Plaintiffs' Class Counsel and the GUC Trust, and the Parties shall file a document identifying this agreed-upon number under seal with the MDL Court.  If either New GM or the GUC Trust decides to terminate the Settlement

pursuant to this provision, such Party must notify Plaintiffs' Class Counsel of such termination no later than 5 days before the Fairness Hearing.

## V.    OBJECTIONS TO SETTLEMENT

108.    Any Class Member who has not filed a timely written request to become an Opt-Out and who wishes to object to the fairness, reasonableness, or adequacy of this Settlement, to the award of Attorneys' Fees and Expenses, or the Plaintiff Incentive Awards, must deliver to Plaintiffs' Class Counsel, New GM's Counsel, and the GUC Trust's Counsel, each as identified in the Class Notice, and file with the MDL Court, on a date ordered by the MDL Court, a written statement of the Class Member's objections.  Any such objection shall include the specific reason(s) for the objection, including any legal support the Class Member wishes to bring to the MDL Court's attention, any evidence or other information the Class Member wishes to introduce in support of the objection, and a statement of whether the Class Member intends to appear and argue at the Fairness Hearing.  Class Members may do so either on their own or through an attorney retained at their own expense.  The objection must include proof that the Person is a Class Member, including, the Person's dates of ownership or lease of the Subject Vehicle, the make, model, model year and the VINs of the Subject Vehicle(s) to which the objection applies, the Person's current address, and the Person's address at the time of ownership or lease of the Subject Vehicle.

109.    Any Class Member who files and serves a written objection, as described in this Section V, may appear at the Fairness Hearing, either in person or through personal counsel hired at the Class Member's expense, to speak in support of such objection.  Class Members or their attorneys who intend to make an appearance at the Fairness Hearing must deliver a notice of intention to appear to Plaintiffs' Class Counsel, New GM's Counsel, and the GUC Trust's Counsel, each as identified in the Class Notice, and file said notice with the MDL Court on a date ordered by the MDL Court.

110.     Any Class Member who fails to comply with the provisions of this Section V shall waive and forfeit any and all rights such Class Member may have to appear separately and/or to object to the Settlement, and shall be bound by all the terms of this Agreement and by all proceedings, orders and judgments, including, but not limited to, the Class Members' Release, the Final Order, and the Final Judgment.

111.     Any Class Member who objects to the Settlement shall be entitled to all of the benefits of the Settlement if this Agreement and the terms contained herein are approved, as long as the objecting Class Member complies with all requirements of this Agreement applicable to Class Members, including the timely submission of Settlement Claim Forms and other requirements herein.

## VI.     RELEASES, WAIVERS, AND COVENANTS NOT TO SUE.

112.     The Parties agree to the following releases, waivers, and covenants not to sue.

### A.     Class Members' Release

113.     In consideration for the Settlement, effective automatically upon the Final Effective Date, the Releasing Parties fully, finally and forever release, relinquish, acquit, waive, discharge with prejudice, covenant not to sue, and hold harmless the Released Parties from any and all claims, demands, suits, arbitrations, mediations, petitions, liabilities, causes of action, rights, and damages of any kind and/or type (including, but not limited to, compensatory, benefit-of-the-bargain, diminished value, lost time, lost earnings, out-of-pocket, injunctive or other equitable relief, exemplary, punitive, penalties, liens, expert and/or attorneys' fees or by multipliers), whether past, present, or future, mature or not yet mature, existing now or arising in the future, whether or not concealed or hidden, developed or undeveloped, foreseen or unforeseen, known or unknown, suspected or unsuspected, contingent or non-contingent, derivative or direct, asserted or un-asserted, liquidated or un-liquidated, whether or not such claims were or could have been raised

or asserted in the Actions, whether based on federal, state or local law, statute, ordinance, regulation, code, contract, common law, consumer fraud, unfair business practices, fraudulent concealment, unjust enrichment, gross negligence, recklessness, willful misconduct, violation of the federal Racketeer Influenced and Corrupt Organizations Act or any similar state law, or any other source or theory, which any of the Releasing Parties had, now has or have, or hereafter can, shall or may have, or could assert directly or indirectly in any forum against the Released Parties, in each case arising out of, due to, resulting from, connected with, or involving or relating in any way to, directly or indirectly, the subject matter of the Actions, the Recalls, or that are, or could have been, defined, alleged or described in the 5ACC, the Late Claims Motions, or in the Proposed Proofs of Claims, including, but not limited to, those relating to the design, manufacturing, advertising, testing, marketing, functionality, servicing, sale, lease or resale of the Subject Vehicles, provided, however, that notwithstanding any other provision of this Agreement, the Class Members' Release does not include, and the Releasing Parties expressly preserve, any and all Actions or claims they had, have, or may in the future assert, against (i) the AAT, and (ii) Old GM and the Old GM Bankruptcy Estates solely to the extent that any Actions or claims asserted against Old GM and/or the Old GM Bankruptcy Estates seek a recovery or distribution only from the AAT and no other entity, and provided that, for the avoidance of doubt, no Releasing Party shall be entitled to assert an Action or claim against the GUC Trust, the assets of the GUC Trust, or any Unitholder, solely in their capacity as a Unitholder of the GUC Trust, and the Releasing Parties expressly waive any and all rights to recover from, or receive a distribution from, the GUC Trust.

114.   Notwithstanding the foregoing, Releasing Parties are not releasing claims for personal injury, wrongful death or actual physical property damage arising from an accident involving a Subject Vehicle.

115.   The Class, Plaintiffs, and Class Members expressly agree that the Class Members' Release, the Final Order, and the Final Judgment is, will be, and may be raised as a complete defense to, and shall preclude any action or proceeding encompassed by, this Class Members' Release without regard to whether any Plaintiff or Class Member submits a Settlement Claim, has a Settlement Claim rejected by the Class Action Settlement Administrator, or receives any payment pursuant to this Settlement.

116.   The Releasing Parties shall not now or hereafter institute, maintain, prosecute, assert, and/or cooperate in the institution, commencement, filing, or prosecution of any suit, action, and/or proceeding, against the Released Parties, either directly or indirectly, on their own behalf, on behalf of a class or on behalf of any other Person with respect to the claims, causes of action and/or any other matters released through the Class Members' Release.

117.   If a Releasing Party commences, files, initiates, or institutes any new legal action or other proceeding against a Released Party for any claims, causes of action, and/or any other matters released through the Class Members' Release in any federal or state court, arbitral tribunal, or administrative or other forum, (1) such legal action or proceeding shall be dismissed with prejudice at the cost of the respective Releasing Party and respective Class Member, and (2) the Released Party shall be entitled to recover any and all reasonable related costs and expenses (including attorneys' fees) from that respective Releasing Party and respective Class Member arising as a result of that Releasing Party's breach of their obligations under the Agreement and

the Class Members' Release, <u>provided that</u>, the Released Party provides written notice to the Releasing Party and Class Member of their alleged breach and an opportunity to cure the breach.

118.    In connection with this Agreement, the Class, Plaintiffs, and Class Members acknowledge that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those that they now know or believe to be true concerning the subject matter of the Actions and/or the Class Members' Release herein.  Nevertheless, the intention of Plaintiffs' Class Counsel and Plaintiffs in entering into this Agreement on behalf of the Releasing Parties is that the Releasing Parties shall fully, finally and forever settle, release, discharge with prejudice, covenant not to sue, and hold harmless the Released Parties from any and all claims, demands, suits, arbitrations, mediations, petitions, liabilities, causes of action, rights and damages of any kind and/or type relating thereto which exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action or proceeding), with respect to the subject matter of the Actions, the Recalls, or that are, or could have been, defined, alleged or described in the 5ACC, the Late Claims Motions, or in the Proposed Proofs of Claims, as more fully described in Paragraph 113, except as stated in Paragraph 114.

119.    The Releasing Parties expressly waive, relinquish, release with prejudice, and covenant not to exercise, and shall be deemed to have waived, relinquished, released with prejudice, and covenanted not to exercise, any and all rights and/or claims that they may have under any law, codal law, statute, regulation, adjudication, quasi-adjudication, decision, administrative decision, common law principle, or any other theory or source, that would otherwise limit the effect of the Class Members' Release, including but not limited to any law that might limit a release to those claims or matters actually known or suspected to exist at the time of execution of the release.  Without limiting the foregoing sentence, Plaintiffs and Class Members

expressly understand and acknowledge that all Releasing Parties will be deemed by the Final Order

and Final Judgment to acknowledge, waive, relinquish, release with prejudice, and covenant not

to exercise the benefits of Section 1542 of the Civil Code of the State of California, which provides

that:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

The Releasing Parties expressly waive, relinquish, release with prejudice, and covenant not to

exercise any and all rights and benefits that they may have under, or that may be conferred upon

them by, the provisions of Section 1542 of the California Civil Code, or any other law of any state,

jurisdiction, or territory that is similar, comparable or equivalent to Section 1542.

120.    Plaintiffs and the Class Members represent and warrant that they are the sole and

exclusive owners of all claims that they personally are releasing under this Agreement.  Plaintiffs

further acknowledge that they have not assigned, pledged, or in any manner whatsoever, sold,

transferred, assigned, subrogated, or encumbered, whether through insurance, indemnification, or

otherwise, any right, title, interest or claim arising out of or in any way whatsoever pertaining to

the Actions or the claims, causes of action, and/or any other matters released through the Class

Members' Release, including without limitation, any claim for benefits, proceeds or value under

the Actions, and that Plaintiffs are not aware of any insurers, indemnitors, subrogees, or anyone

other than themselves claiming any interest, in whole or in part, in the Actions or the claims, causes

of action, and/or any other matters released through the Class Members' Release or in any benefits,

proceeds or values under the Actions.  Class Members submitting a Settlement Claim Form shall

represent and warrant therein that they are the sole and exclusive owner of all claims that they

personally are releasing under the Settlement and that they have not assigned, pledged, or in any manner whatsoever, sold, transferred, assigned, subrogated, or encumbered, whether through insurance, indemnification, or otherwise, any right, title, interest or claim arising out of or in any way whatsoever pertaining to the Actions or the claims, causes of action, and/or any other matters released through the Class Members' Release, including without limitation, any claim for benefits, proceeds or value under the Actions, and that such Class Member(s) are not aware of anyone other than themselves claiming any interest, in whole or in part, in the Actions or the claims, causes of action, and/or any other matters released through the Class Members' Release or in any benefits, proceeds or values under the Actions.

121.    Without in any way limiting its scope, and, except to the extent otherwise specified in this Agreement, the Class Members' Release includes by example and without limitation, a release of Released Parties by the Releasing Parties from any and all claims for attorneys' fees, costs, expert fees, or consultant fees, interest, or litigation fees, costs or any other fees, costs, and/or disbursements incurred by any attorneys, Plaintiffs' Class Counsel, Allocation Counsel, Designated Counsel, Plaintiffs, or Class Members who claim to have assisted in conferring the benefits under this Settlement upon the Class.

122.    Any and all benefits paid and/or provided by New GM and the GUC Trust pursuant to this Agreement are in full, complete, and total satisfaction of all claims demands, suits, arbitrations, mediations, petitions, liabilities, causes of action, rights, and damages described in Paragraph 113, except and subject to the proviso at the end of Paragraph 113 with respect to any claims the Releasing Parties may have against, or that are recoverable from, the AAT.  Such benefits are sufficient and adequate consideration for each and every term of the Class Members'

Release, and the Class Members' Release shall be irrevocably binding upon the Class, all Plaintiffs, Releasing Parties, and each and every Class Members who does not opt out of the Class.

123.    The Class Members' Release shall be effective with respect to all Releasing Parties, including Class Members who do not opt out, regardless of whether the Class Member submits a Settlement Claim, has a Settlement Claim rejected by the Class Action Settlement Administrator, or receives any payment under this Agreement.

124.    Plaintiffs' Class Counsel acknowledge that they have conducted sufficient independent investigation and discovery to enter into this Agreement and that they execute this Agreement with authorization from Plaintiffs freely, voluntarily, and without being pressured or influenced by, or relying upon any statements, representations, promises, or inducements made by the Released Parties or any person or entity representing the Released Parties, other than as expressly set forth in this Agreement.

125.    Nothing in the Class Members' Release shall preclude any action to enforce the terms of the Agreement, including participation in any of the processes detailed herein, or claims arising out of, based upon, relating to, concerning, or in connection with the interpretation or enforcement of the terms of the Settlement.  Nothing in the Final Order and Final Judgment shall bar any action by any of the Parties to enforce or effectuate the terms of this Agreement, the Final Order, and the Final Judgment.

126.    Plaintiffs, by and through Plaintiffs' Class Counsel, and Plaintiffs' Class Counsel hereby agree and acknowledge that the provisions of this Class Members' Release together constitute an essential and material term of the Agreement.  The Final Order and Final Judgment will include this Class Members' Release and reflect the terms set forth in this Section VI.A.

        **B.**        **The GUC Trust's and New GM's Release of Plaintiffs' Class Counsel, Allocation Counsel and Designated Counsel**

127.     In consideration for the Settlement, effective automatically upon the Final Effective

Date, New GM and the GUC Trust and their respective past or present officers, directors, trustees,

employees, agents, attorneys, predecessors, successors, affiliates, subsidiaries, divisions, and

assigns shall be deemed to have, and by operation of the Final Approval Order shall have, released

Plaintiffs' Class Counsel, Allocation Counsel, Designated Counsel, and each current and former

Plaintiff from any and all causes of action that were or could have been asserted pertaining solely

to the conduct in filing, prosecuting and litigating, or in settling, the Actions.

### C.     Release Between GUC Trust and New GM[1]

128.     Effective automatically as of the Excess Distribution Date, and regardless of

whether this Settlement Agreement receives preliminary approval or final approval by the MDL

Court or whether there is a Final Effective Date, the GUC Trust, on behalf of itself, as well as, to

the fullest extent permitted under the Old GM Plan and applicable law, the Old GM Bankruptcy

Estates (but excluding, for the avoidance of doubt, the Motors Liquidation Company Avoidance

Action Trust, the MLC Asbestos PI Trust, and the Environmental Response Trust), and each of

their past, present, and future Unitholders, administrators, monitors, representatives, agents,

counsel, trustees, insurers, reinsurers, subsidiaries, corporate parents, predecessors, successors,

indemnitors, subrogees, assigns, and any natural, legal or juridical person or entity asserting any

claim on behalf of or in respect of the GUC Trust (collectively, the "GUC Trust Releasing

Parties"), fully, finally and forever releases, relinquishes, acquits, waives, discharges with

prejudice, covenants not to sue, and holds harmless the New GM Released Parties, from any and

all claims, demands, suits, arbitrations, mediations, petitions, liabilities, causes of action, rights,

and damages of any nature whatsoever (including, but not limited to, compensatory, benefit-of-

---

[1]  The release provisions contained in this Section VI.C (*i.e.*, Paragraphs 128-138) are also set forth in the Release Agreement, attached hereto as Exhibit 8, and which shall become effective on the Excess Distribution Date.

the-bargain, diminished value, lost time, lost earnings, out-of-pocket, injunctive or other equitable relief, exemplary, punitive, penalties, liens, expert and/or attorneys' fees or by multipliers), whether past, present, or future, mature or not yet mature, existing now or arising in the future, whether or not concealed or hidden, developed or undeveloped, foreseen or unforeseen, known or unknown, suspected or unsuspected, contingent or non-contingent, derivative or direct, asserted or un-asserted, liquidated or unliquidated, whether or not such claims were or could have been raised or asserted, and whether based on federal, state or local law, statute, ordinance, regulation, code, contract, common law, consumer fraud, unfair business practices, fraudulent concealment, unjust enrichment, gross negligence, recklessness, willful misconduct, violation of the federal Racketeer Influenced and Corrupt Organizations Act or any similar state law, or any other source or theory, which any of the GUC Trust Releasing Parties had, now has or have, or hereafter can, shall or may have, or could assert directly or indirectly in any forum against the New GM Released Parties, in each case arising out of, due to, resulting from, connected with, or involving or relating in any way to, directly or indirectly, the subject matter of the Actions, the Recalls, the Subject Vehicles, the Bankruptcy Case, the Sale Agreement, the Adjustment Shares, the Letter Regarding Adjustment Shares, the Old GM Plan, or the GUC Trust Agreement (the "GUC Trust Release"). For the avoidance of doubt, the GUC Trust Release includes, but is not limited to, any and all claims that would directly or indirectly require New GM to issue any Adjustment Shares, regardless of (i) the aggregate amount of allowed general unsecured claims, whether estimated or otherwise determined, asserted or allowed in any Court, including the Bankruptcy Court, and (ii) any provision to the contrary in the Sale Agreement, the Letter Regarding Adjustment Shares, the GUC Trust Agreement, the Old GM Plan, or any other agreement.

129.    Effective automatically as of the Excess Distribution Date, and regardless of whether this Settlement Agreement receives preliminary approval or final approval by the MDL Court or whether there is a Final Effective Date, New GM, on behalf of itself, as well as its past, present, and future representatives, agents, counsel, trustees, insurers, reinsurers, subsidiaries, corporate parents, predecessors, successors, indemnitors, subrogees, assigns, and any natural, legal or juridical person or entity asserting any claim on behalf of New GM (collectively, the "New GM Releasing Parties"), fully, finally and forever releases, relinquishes, acquits, waives, discharges with prejudice, covenants not to sue, and holds harmless the GUC Trust Released Parties, from any and all claims, demands, suits, arbitrations, mediations, petitions, liabilities, causes of action, rights, and damages of any nature whatsoever (including, but not limited to, compensatory, benefit-of-the-bargain, diminished value, lost time, lost earnings, out-of-pocket, injunctive or other equitable relief, exemplary, punitive, penalties, liens, expert and/or attorneys' fees or by multipliers), whether past, present, or future, mature or not yet mature, existing now or arising in the future, whether or not concealed or hidden, developed or undeveloped, foreseen or unforeseen, known or unknown, suspected or unsuspected, contingent or non-contingent, derivative or direct, asserted or un-asserted, liquidated or unliquidated, whether or not such claims were or could have been raised or asserted, and whether based on federal, state or local law, statute, ordinance, regulation, code, contract, common law, consumer fraud, unfair business practices, fraudulent concealment, unjust enrichment, gross negligence, recklessness, willful misconduct, violation of the federal Racketeer Influenced and Corrupt Organizations Act or any similar state law, or any other source or theory, which any of the New GM Releasing Parties had, now has or have, or hereafter can, shall or may have, or could assert directly or indirectly in any forum against the GUC Trust Released Parties, in each case arising out of, due to, resulting from, connected with, or

- 55 -

involving or relating in any way to, directly or indirectly, the subject matter of the Actions, the Recalls, the Subject Vehicles, the Bankruptcy Case, the Sale Agreement, the Adjustment Shares, the Letter Regarding Adjustment Shares, the Old GM Plan, or the GUC Trust Agreement (the "New GM Release") provided, however, that notwithstanding any other provision of this Agreement, the New GM Release does not include, and New GM expressly preserves, any and all Actions or claims it had, has, or may in the future assert, against (i) the AAT, and (ii) Old GM and the Old GM Bankruptcy Estates solely to the extent that any Actions or claims asserted against Old GM seek a recovery or distribution only from the AAT and no other entity, and provided that, for the avoidance of doubt, New GM shall not be entitled to assert an Action or claim against the GUC Trust, the assets of the GUC Trust, or any Unitholder, solely in their capacity as a Unitholder of the GUC Trust, and New GM expressly waives any and all rights to recover from, or receive a distribution from, the GUC Trust.  For the avoidance of doubt, the New GM Release includes, but is not limited to, any and all claims for reimbursement, contribution, indemnity, or subrogation arising from New GM's settlement of personal injury and wrongful death claims asserted in the Bankruptcy Case.

130.    The GUC Trust Releasing Parties and the New GM Releasing Parties expressly agree that the GUC Trust Release, the New GM Release, and the GUC Trust Approval Order are, shall be, and may be raised as a complete defense to, and shall preclude any action or proceeding encompassed by, the GUC Trust Release or the New GM Release.

131.    The GUC Trust Releasing Parties shall not now or hereafter institute, maintain, prosecute, assert, and/or cooperate in the institution, commencement, filing, or prosecution of any suit, action, and/or proceeding, against the New GM Released Parties, either directly or indirectly, on their own behalf, on behalf of a class or on behalf of any other person or entity with respect to

the claims, causes of action and/or any other matters released through this Agreement.  The New GM Releasing Parties shall not now or hereafter institute, maintain, prosecute, assert, and/or cooperate in the institution, commencement, filing, or prosecution of any suit, action, and/or proceeding, against the GUC Trust Released Parties, either directly or indirectly, on their own behalf, on behalf of a class or on behalf of any other person or entity with respect to the claims, causes of action and/or any other matters released through this Agreement.

132.    If a GUC Trust Releasing Party commences, files, initiates, or institutes any new legal action or other proceeding against a New GM Released Party for any claim released in the GUC Trust Release in any federal or state court, arbitral tribunal, or administrative or other forum, (1) such legal action or proceeding shall be dismissed with prejudice at the respective GUC Trust Releasing Party's cost, and (2) the respective New GM Released Party shall be entitled to recover any and all reasonable related costs and expenses (including attorneys' fees) from that respective GUC Trust Releasing Party arising as a result of that GUC Trust Releasing Party's breach of their obligations under the Agreement and the GUC Trust Release, provided that, the New GM Released Party provides written notice to the GUC Trust Releasing Party of their alleged breach and an opportunity to cure the breach.  If a New GM Releasing Party commences, files, initiates, or institutes any new legal action or other proceeding against a GUC Trust Released Party for any claim released in the New GM Release in any federal or state court, arbitral tribunal, or administrative or other forum, (1) such legal action or proceeding shall be dismissed with prejudice at the respective New GM Releasing Party's cost, and (2) the respective GUC Trust Released Party shall be entitled to recover any and all reasonable related costs and expenses (including attorneys' fees) from that respective New GM Releasing Party arising as a result of that New GM Releasing Party's breach of their obligations under the Agreement and the New GM Release, provided that,

the GUC Trust Released Party provides written notice to the New GM Releasing Party of their alleged breach and an opportunity to cure the breach.

133.    In connection with this Agreement, the GUC Trust Releasing Parties and New GM Releasing Parties acknowledge that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those that they now know or believe to be true concerning the subject matter of the Bankruptcy Case, the Actions, and/or the GUC Trust Release or the New GM Release.  Nevertheless, it is the intention of the GUC Trust and New GM in executing this Agreement on behalf of the GUC Trust Releasing Parties and the New GM Releasing Parties, respectively, to fully, finally and forever settle, release, discharge with prejudice, covenant not to sue, and hold harmless all such matters, and all claims relating thereto which exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action or proceeding) with respect to the Actions, the Recalls, the Subject Vehicles, the Bankruptcy Case, the Sale Agreement, the Adjustment Shares, the Letter Regarding Adjustment Shares, the Old GM Plan, or the GUC Trust Agreement.

134.    The GUC Trust Releasing Parties and the New GM Releasing Parties expressly waive, relinquish, release with prejudice, and covenant not to exercise, and shall be deemed to have waived, relinquished, released with prejudice, and covenanted not to exercise, any and all rights and/or claims that they may have under any law, codal law, statute, regulation, adjudication, quasi-adjudication, decision, administrative decision, common law principle, or any other theory or source, that would otherwise limit the effect of the GUC Trust Release or the New GM Release, including but not limited to any law that might limit a release to those claims or matters actually known or suspected to exist at the time of execution of the release.  Without limiting the foregoing sentence, the GUC Trust Releasing Parties and the New GM Releasing Parties expressly

understand and acknowledge that they will be deemed by the GUC Trust Approval Order to acknowledge, waive, relinquish, release with prejudice, and covenant not to exercise the benefits of Section 1542 of the Civil Code of the State of California, which provides that:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

The GUC Trust Releasing Parties and the New GM Releasing Parties expressly waive, relinquish, release with prejudice, and covenant not to exercise any and all rights and benefits that they may have under, or that may be conferred upon them by, the provisions of Section 1542 of the California Civil Code, or any other law of any state, jurisdiction, or territory that is similar, comparable or equivalent to Section 1542.

135.    The GUC Trust and New GM represent and warrant on behalf of the GUC Trust Releasing Parties and New GM Releasing Parties, respectively, that such parties are the sole and exclusive owners of all claims that they personally are releasing under this Agreement.  The GUC Trust and New GM further acknowledge on behalf of the GUC Trust Releasing Parties and New GM Releasing Parties, respectively, that such parties have not assigned, pledged, or in any manner whatsoever, sold, transferred, assigned, subrogated, or encumbered any right, title, interest or claim arising out of or in any way whatsoever, whether through insurance, indemnification, or otherwise, pertaining to the Actions, the Subject Vehicles, the Bankruptcy Case, the Sale Agreement, the Adjustment Shares, the Letter Regarding Adjustment Shares, the Old GM Plan, or the GUC Trust Agreement, including without limitation, any claim for benefits, proceeds or value, and that the GUC Trust and New GM are not aware of any insurers, indemnitors, subrogees, or anyone other

than themselves claiming any such interest, in whole or in part, or in any benefits, proceeds or values.

136.    Without in any way limiting its scope, and, except to the extent otherwise specified in this Agreement, the GUC Trust Release and the New GM Release each includes, by example and without limitation, any and all claims for attorneys' fees, costs, expert fees, or consultant fees, interest, or litigation fees, costs or any other fees, costs, and/or disbursements incurred by any attorneys of any GUC Trust Releasing Party or any New GM Releasing Party.

137.    The GUC Trust and New GM acknowledge that they each have conducted sufficient independent investigation and discovery to enter into this Agreement and that they each execute this Agreement freely, voluntarily, and without being pressured or influenced by, or relying on any statements, representations, promises, or inducements, other than as set forth in this Agreement.

138.    The GUC Trust Release and the New GM Release each shall be effective as of the Excess Distribution Date, and each shall remain binding, effective and enforceable regardless of the entry of the Final Order, entry of the Final Judgment, the termination of this Agreement, or the occurrence of the Final Effective Date.

## VII.    MDL COURT JURISDICTION AND GUC TRUST ISSUES

139.    **One Settlement Approved by the MDL Court** – There shall be only one Settlement in which Releasing Parties release all released claims against New GM, Old GM, the GUC Trust, and the other Released Parties, including a release of all economic loss claims filed, or that could have been filed, in MDL 2543 and in the Bankruptcy Case.  Notwithstanding any other provision of this Agreement, the Settlement shall not effect a release of claims against Old GM or the Old GM Bankruptcy Estates to the extent, and only to the extent, that such claims are asserted against, or are recoverable from, the AAT.

140.     **Entry of Withdrawal Order, Exclusive MDL Court Jurisdiction, and Ongoing Bankruptcy Court Jurisdiction** — The Parties shall jointly request, in connection with seeking entry of the Preliminary Approval Order, entry of the Withdrawal Order by the MDL Court.  Entry of the Withdrawal Order shall be a condition precedent to entry of the Preliminary Approval Order and entry of the Final Order.  The MDL Court, as will be set forth in the Final Order and the Final Judgment, and consistent with the Withdrawal Order, shall have and retain continuing, sole and exclusive jurisdiction over the Parties, the Class, Class Members for purposes of administering and enforcing this Settlement, including (a) all issues relating to the scope, application and/or operation of the Class Members' Release, including jurisdiction over each Class Member, (b) over the administration and enforcement of this Agreement and distribution of its benefits to Class Members, and (c) any dispute arising as to the action or election of any Party under Section XI, Paragraph 195, or any other provision regarding the enforceability or illegality of any provisions of this Agreement; provided, however, that the Bankruptcy Court shall have and retain jurisdiction over the GUC Trust Motion, the GUC Trust Approval Order and the GUC Trust Excess Distribution Motion, and all other matters pending in the Bankruptcy Case for which the reference has not been withdrawn to the MDL Court, including, without limitation, matters relating to (i) personal injury or wrongful death claims in the Bankruptcy Case relating to the Subject Vehicles, (ii) claims and Actions asserted against the AAT, Old GM or the Old GM Bankruptcy Estates to the extent such claims or Actions are recoverable solely against the AAT or its assets, and/or (iii) individual claims or motions, if any, in the Bankruptcy Case filed by a Person who would have been a Class Member who becomes an Opt-Out.  Any disputes or controversies arising out of or related to the administration or enforcement of the Agreement and the Class Members' Release shall be made by motion to the MDL Court.  In addition, the Parties, the Class, and each Class

Member are deemed to have submitted irrevocably to the exclusive jurisdiction of the MDL Court for any suit, action, proceeding or dispute arising out of or relating to this Agreement.  The terms of the Agreement shall be incorporated into the Final Order and the Final Judgment of the MDL Court dismissing with prejudice all matters covered by the Class Members' Release, which shall allow that Final Order and Final Judgment to serve as an enforceable injunction by the MDL Court for purposes of the MDL Court's continuing jurisdiction related to this Agreement.

141.   **GUC Trust Motion and GUC Trust Approval Order** – The GUC Trust shall file the GUC Trust Motion in the Bankruptcy Court before, or in conjunction with, the Parties' request for entry of the Preliminary Approval Order.  Entry of the GUC Trust Approval Order shall be a condition precedent to entry of the Preliminary Approval Order.  Occurrence of the GUC Trust Approval Order Effective Date shall be a condition precedent to the entry of the Final Order, unless waived in writing by both New GM and the GUC Trust.  All relief provided pursuant to the GUC Trust Approval Order concerning the Excess Distribution, the GUC Trust Release, the New GM Release and the Release Agreement shall be effective as of the Excess Distribution Date, and shall remain binding, effective, and enforceable regardless of whether the Preliminary Approval Order is entered, the Final Order is entered, the Final Judgment is entered, the Final Effective Date occurs, or the Settlement or this Agreement is thereafter terminated.  The provisions of the GUC Trust Approval Order concerning the GUC Trust Release, the New GM Release, the Excess Distribution and the Release Agreement are non-severable and mutually dependent, and no provision of the GUC Trust Approval Order shall be withdrawn, rescinded, reversed, vacated, or modified without the written consent of New GM and the GUC Trust.

142.   **Preserved Actions Concerning the AAT**

a.     Notwithstanding any other provision of this Agreement to the contrary, the Parties acknowledge that the Releasing Parties and New GM desire to preserve their claims and Actions, if any, against or recoverable from the AAT.  As a consequence, and notwithstanding the withdrawal of the Late Claims Motions as set forth in Paragraph 142(b) or the settlement of the Proposed Proofs of Claims as against the GUC Trust as set forth in Paragraph 143, the Proposed Proofs of Claims shall be unaffected as against the AAT, Old GM and the Old GM Bankruptcy Estates solely to the extent such Proposed Proofs of Claim are asserted only against or recoverable only from, if at all, the AAT, and provided for the avoidance of doubt such Proposed Proofs of Claim may not be asserted against, or recoverable from, the GUC Trust, the assets of the GUC Trust, or any Unitholder, solely in their capacity as a Unitholder of the GUC Trust.  The Parties contemplate and agree that the AAT shall have standing to, or otherwise may, assert any and all objections and defenses to the allowance and estimation of the Proposed Proofs of Claims.  Likewise, the Releasing Parties and New GM reserve their rights to contest or object to any provisions of the Plan, GUC Trust Agreement, or trust agreement governing the AAT that may impair their rights to recovery from the AAT.

b.     Effective immediately upon the Final Effective Date, and pursuant to that certain *Order Disallowing Certain Late Filed Claims* entered on February 8, 2012 in the Bankruptcy Case [ECF No. 11394], (i) the GUC Trust consents (and otherwise does not object) to the filing of the Proposed Proofs

of Claim on behalf of the Class in the Bankruptcy Case, and (ii) the Late Claims Motions shall be deemed withdrawn as moot solely with respect to the Class; provided, however, that notwithstanding the GUC Trust's consent to the filing of the Proposed Proofs of Claims on behalf of the Class, (1) the Proposed Proofs of Claims shall solely be recoverable, if at all, from the AAT and shall not be recoverable, directly or indirectly, from the GUC Trust or its assets, including directly or indirectly, from the Adjustment Shares and (2) the GUC Trust does not consent to the late filing of claims by any Person who is an Opt-Out and, notwithstanding any other provision of this Agreement, the GUC Trust preserves any and all defenses to any claim asserted by an Opt-Out, including, without limitation, to the timeliness of any such claim.

c.  If the Class or New GM asserts an Action on or after the Final Effective Date against (i) the AAT or (ii) Old GM or the Old GM Bankruptcy Estates solely to the extent necessary to preserve an Action recoverable from the AAT and provided that such Action shall not assert any claim against the GUC Trust or seek any recovery or distribution, directly or indirectly, from the GUC Trust or the property of the GUC Trust, the GUC Trust (1) waives any objection it may have to the AAT objecting to, settling, allowing, requesting an estimation of, or otherwise resolving any Action, whether on a class or individual basis, for which the claimant has released the GUC Trust, and (2) agrees that it will not take any position in the Bankruptcy Court or other court of competent jurisdiction that would impair any rights

of the Class or New GM to recover from the AAT; provided, however, that no such Action shall entitle the Class or New GM to assert claims against the GUC Trust, any Unitholder, solely in their capacity as a Unitholder of the GUC Trust, or to receive any distribution from the GUC Trust.

d. Although the Parties believe that no Barred Claims (as defined below) exist, for the avoidance of doubt and protection of the GUC Trust Released Parties, the New GM Released Parties, and Plaintiffs, the Final Order and the Final Judgment shall contain provisions barring any party in interest in the Bankruptcy Case, any party in interest in the MDL, or any other Person from asserting or attempting to assert claims against or impose liability on any of the GUC Trust Released Parties, the New GM Released Parties and/or Plaintiffs for any matter arising out of, in connection with, or related to the Agreement, the Actions and/or the Proposed Proofs of Claims ("Barred Claims").

143. **Resolution of Actions Against GUC Trust in the Bankruptcy Case** – Pursuant to the Final Order and the Final Judgment, on the Final Effective Date, all Actions pending in the Bankruptcy Case, solely to the extent such Actions seek a recovery from the GUC Trust shall be deemed automatically and conclusively settled pursuant to the terms of this Agreement and the GUC Trust shall not have, nor incur, directly or indirectly, any further liability, cost or expense in connection with the Actions, Proposed Proofs of Claims and/or any effort of New GM, Plaintiffs or any Class Member to recover against the AAT.  On the Final Effective Date, solely to allow the Plaintiffs and New GM to proceed against the AAT, the Proposed Proofs of Claims shall be filed pursuant to Paragraph 142(b) hereof, and shall be recorded as Disputed General Unsecured Claims

on any register of claims maintained in the Bankruptcy Case or any GUC Trust Report (as defined in the GUC Trust Agreement) prepared by the GUC Trust Administrator after the Final Effective Date; provided, however, that notwithstanding any provision to the contrary in this Agreement, (i) the Proposed Proofs of Claims or any Actions asserted thereby, shall not entitle the Class, or any Releasing Party, Plaintiff or Class Member, to any recovery or distributions, directly or indirectly, from the GUC Trust, the property of the GUC Trust, or any Unitholder (in their capacity as such), (ii) the Class, Plaintiffs, and Releasing Parties expressly waive any and all rights to recovery from, or to receive a distribution from, directly or indirectly, the GUC Trust, the property of the GUC Trust, or any Unitholder (in their capacity as such), (iii) the GUC Trust shall not have any obligation to defend, object to, or otherwise respond to the Proposed Proofs of Claims, the Actions asserted thereby, or any motion related to claims or Actions against, or recoverable from, the AAT, (iv) the Parties agree that the GUC Trust shall have no obligation to reserve for the Proposed Proofs of Claims, provided that such agreement shall not affect in any way the GUC Trust's obligations under this Agreement to fund the Common Fund, (v) any claims register or GUC Trust Report (as defined in the GUC Trust Agreement) that includes Proposed Proofs of Claims shall reflect that the Class, Plaintiffs, and Releasing Parties have expressly waived any and all rights to recovery from the GUC Trust pursuant to this Agreement, (vi) the Parties agree that, as regards the Proposed Proofs of Claims, no provisions of the GUC Trust Agreement relating to the Disputed General Unsecured Claims with respect to the Proposed Proofs of Claims shall apply to the GUC Trust after the Final Effective Date has occurred and the GUC Trust has recorded the proposed Proofs of Claims on the claims register, and (vii) the Parties agree that neither (a) the inclusion of the Proposed Proofs of Claims on any claims register or GUC Trust Report (as defined in the GUC Trust Agreement), or (b) the prosecution of the Proposed Proofs of Claims solely with respect to

the AAT shall prohibit the GUC Trust from terminating, dissolving or winding-up.  In the event the Actions are resolved against the AAT prior to the Final Effective Date, this Paragraph 143 shall be of no force and effect, and the GUC Trust shall not be obligated to record the Proposed Proofs of Claims on its claims register.

144.   **Excess Distribution** – Immediately upon the Excess Distribution Date, the GUC Trust shall be authorized to make the Excess Distribution as set forth in the GUC Trust Excess Distribution Motion in the reduced aggregate amount of Three Hundred Million U.S. Dollars ($300,000,000.00), pursuant to the terms of the GUC Trust Agreement; provided, that, such Excess Distribution will not be made to any Plaintiffs or Class Members except to the extent that any Plaintiff or Class Member is the registered or beneficial holders of GUC Trust Units as of the applicable record date of such Excess Distribution.

145.   **Further Distributions by the GUC Trust** – Upon entry of the Final Order by the MDL Court, the GUC Trust may make one or more additional distributions of GUC Trust Assets, which distributions shall not be opposed by Plaintiffs, Plaintiffs' Class Counsel, Designated Counsel, any Class Member, or New GM, provided, that, notwithstanding any such distribution, the GUC Trust must reserve Forty-Eight Million U.S. Dollars ($48,000,000.00) (assuming it has already advanced Two Million U.S Dollars ($2,000,000.00) pursuant to Paragraph 80) to satisfy its obligations under this Agreement to fund the Common Fund.

146.   **Covenant by the GUC Trust Not to Seek a Claims Estimate Order or the Issuance of Adjustment Shares**[2] – The GUC Trust covenants, represents, and agrees that, effective immediately and automatically upon the Excess Distribution Date, it will not seek, at any

---

[2]   The provisions contained in this Paragraph 146, as well as those provisions contained in Paragraphs 147 and 148 in this Section VII are also set forth in the Release Agreement, attached hereto as Exhibit 8, and which shall become effective on the Excess Distribution Date.

time, a Claims Estimate Order in the Bankruptcy Court, or in any other court of competent jurisdiction, or otherwise seek any order that would, whether directly or indirectly, require New GM to issue any Adjustment Shares, regardless of (i) the aggregate amount of allowed general unsecured claims, whether estimated or otherwise determined, asserted or allowed in any court, including the Bankruptcy Court, and (ii) any provision to the contrary in the Sale Agreement, the GUC Trust Agreement, the Letter Regarding Adjustment Shares, the Old GM Plan or any other agreement.  Notwithstanding this provision, or any other provision of this Agreement, nothing herein shall adversely affect the rights of the Releasing Parties to pursue the Proposed Proofs of Claims against Old GM or the Old GM Bankruptcy Estates, provided that the Releasing Parties may only recover on account of such Proposed Proofs of Claims from the AAT, and, provided further, that nothing contained herein shall prevent the Releasing Parties from requesting that the Bankruptcy Court estimate the allowed amount of claims by the Releasing Parties that are recoverable solely from the AAT pursuant to Section 502(c) of the Bankruptcy Code.

147.     **Remaining GUC Trust Matters in the Bankruptcy Court** – Effective immediately and automatically upon the Excess Distribution Date, the GUC Trust shall be solely responsible for resolving any claims filed or otherwise asserted against the GUC Trust in the Bankruptcy Case, including but not limited to (i) any personal injury or wrongful death claims that are currently pending in the Bankruptcy Case or that may be filed in the future against the GUC Trust, (ii) any claims that are not released pursuant to the Agreement, including but not limited to any claims based on vehicles not covered by this Agreement or (iii) any claims asserted by Class Members that become Opt-Outs and thereafter attempt to pursue individual claims against the GUC Trust.  For the avoidance of doubt, (a) the GUC Trust shall not be liable for claims asserted against New GM, and (b) in the event a Person asserts, initiates or continues a claim against the

GUC Trust and New GM, the GUC Trust will be responsible for resolving the claim against the GUC Trust and New GM will be responsible for resolving the claim against New GM.

148.    **Covenants To Seek Future Releases** – The GUC Trust and New GM covenant, represent, and agree that, effective upon the Excess Distribution Date:

      a.     If the GUC Trust settles, compromises, consents to, or otherwise voluntarily resolves any claim asserted by any Person against the GUC Trust or the Old GM Bankruptcy Estates (a "GUC Trust Claim Settlement"), the GUC Trust shall, in connection with the GUC Trust Claim Settlement, use good faith efforts to obtain from such person or entity a complete waiver and release of all claims that person or entity may have against the New GM Released Parties that are related to the claims being released in the GUC Trust Claim Settlement.

      b.     If New GM settles, compromises, consents to, or otherwise voluntarily resolves any claim asserted by any Person against New GM in the MDL Court (a "New GM Claim Settlement"), New GM shall, in connection with the New GM Claim Settlement, use good faith efforts to obtain from such person or entity a complete waiver and release of all claims that person or entity may have against the GUC Trust Released Parties that are related to the claims being released in the New GM Claim Settlement.

      c.     For purposes of this Paragraph 146, New GM and the GUC Trust agree that "good faith efforts" (i) do require that each party, after agreeing to the economic terms of a GUC Trust Claim Settlement or New GM Claim Settlement, request from the counterparty a release of the New GM

Released Parties or GUC Trust Released Parties, as applicable, but (ii) do not require any party to agree to different economic terms of a GUC Trust Claim Settlement or New GM Claim Settlement if necessary to obtain the release of the New GM Released Parties or GUC Trust Released Parties, as applicable.

## VIII.   ATTORNEYS' FEES AND EXPENSES AND INDIVIDUAL PLAINTIFF AWARDS

149.   After agreeing to the principal terms set forth in this Agreement, Plaintiffs' Class Counsel and New GM's Counsel negotiated, under the supervision and direction of the Court-Appointed Economic Loss Mediator, the amount of Attorneys' Fees and Expenses that, following application to the MDL Court and subject to MDL Court approval, would be paid as the entire award of fees and costs to Plaintiffs' counsel.  The attorneys' fees and expenses negotiations were conducted through the Court-Appointed Economic Loss Mediator, with neither Plaintiffs' Class Counsel nor New GM's counsel having any direct negotiations between or among themselves.  As a result of those negotiations, Plaintiffs' Class Counsel agree to make on behalf of all counsel seeking Attorneys' Fees and Expenses, and New GM agrees not to oppose, an application for an award of Attorneys' Fees and Expenses in the Actions in the amount of Thirty Four Million Five Hundred Thousand U.S. Dollars ($34,500,000.00) (such amount, as defined in Paragraph 90.d, the "Maximum Attorneys' Fees and Expenses Amount").  This award by the MDL Court of Attorneys' Fees and Expenses, which shall not exceed the Maximum Attorneys' Fees and Expenses Amount, shall be the sole compensation paid by New GM for all attorneys who represent any Person asserting economic loss claims pertaining to the Actions.  In no event and under no circumstances shall New GM pay any amount in Attorneys' Fees and Expenses greater than the Maximum Attorneys' Fees and Expenses Amount.  If the MDL Court awards less than Thirty Four Million

Five Hundred Thousand U.S. Dollars ($34,500,000.00), then New GM shall pay only the lesser amount awarded by the MDL Court. If the Final Order and Final Judgment approving this Agreement do not become final for any reason, New GM shall not pay any amount in Attorneys' Fees and Expenses. For the avoidance of doubt, the GUC Trust has not agreed to pay, and shall not pay, any amount in Attorneys' Fees and Expenses.

150.   The Class, Plaintiffs, Plaintiffs' Class Counsel and Plaintiffs' counsel agree and covenant that, regardless of any orders, judgments, decisions, awards, or any other basis, they shall not claim, seek, attempt to recover, accept, execute on, or collect on any Attorneys' Fees and Expenses in excess of the Maximum Attorneys' Fees and Expenses Amount.

151.   Not later than 30 days after the later of the Final Effective Date or the expiration of any appeal period or the resolution of any and all appeals relating to the Attorneys' Fees and Expenses award, New GM shall pay to Plaintiffs' Class Counsel the entire amount in Attorneys' Fees and Expenses awarded by the MDL Court (as may be modified on appeal), but which amount shall not exceed the Maximum Attorneys' Fees and Expenses Amount. The Attorneys' Fees and Expenses awarded by the MDL Court and payable to Plaintiffs' Class Counsel shall not be paid from the payments into the Common Fund by New GM and the GUC Trust provided for in Paragraphs 80 and 81 above. For the avoidance of doubt, the GUC Trust shall have no responsibility to make any payment to Plaintiffs' Class Counsel, Allocation Counsel, Designated Counsel or any other counsel arguing that it has conferred a benefit upon Plaintiffs, the Class, or any Class Member. New GM shall have no responsibility to make any payment to Plaintiffs' Class Counsel, Allocation Counsel, Designated Counsel or any other counsel arguing that it has conferred a benefit upon Plaintiffs, the Class, or any Class Member other than the amount in

Attorneys' Fees and Expenses awarded by the MDL Court, which amount shall not exceed Thirty Four Million Five Hundred Thousand U.S. Dollars ($34,500,000.00).

152.    The Attorneys' Fees and Expenses paid by New GM as provided for in this Agreement shall be allocated by Plaintiffs' Class Counsel among other plaintiffs' counsel who seek a portion of the Attorneys' Fees and Expenses in a manner that Plaintiffs' Class Counsel in good faith believes reflects the contributions of such plaintiffs' counsel to the prosecution and settlement of the claims against New GM and the GUC Trust in the Actions.  The allocation among plaintiffs' counsel shall be approved by the MDL Court, and Plaintiffs' Class Counsel shall distribute the Attorneys' Fees and Expenses as directed by the MDL Court.  Neither New GM, the GUC Trust, nor any of the Released Parties shall have any responsibility, obligation or liability of any kind whatsoever with respect to how the Attorneys' Fees and Expenses are allocated and distributed; such allocation and distribution is the sole province of Plaintiffs' Class Counsel to recommend, and the MDL Court to decide.

153.    The proceedings for the MDL Court to determine the amount of Attorneys' Fees and Expenses to award to plaintiffs' counsel and the MDL Court's award of any Attorneys' Fees and Expenses are to be considered by the MDL Court separately from the MDL Court's consideration of the fairness, reasonableness, and adequacy of the Settlement.  The Attorneys' Fees and Expenses awarded shall be set forth in a fee and expense award separate from the Final Order and the Final Judgment so that any appeal of one shall not constitute an appeal of the other. Any order or proceedings relating to the Attorneys' Fees and Expenses application, or any appeal from any order related thereto, or reversal or modification thereof, will not operate to terminate or cancel this Agreement, or affect or delay the Final Effective Date, except that in no event and under no circumstances shall New GM pay any amount in Attorneys' Fees and Expenses greater

than the Maximum Attorneys' Fees and Expenses Amount and in no event and under no circumstances shall New GM pay any amount in Attorneys' Fees and Expenses unless and until there is a Final Effective Date.

154.    Plaintiffs' Class Counsel may petition the MDL Court for Plaintiff Incentive Awards for some or all Plaintiffs for their time in connection with the Actions and/or in connection with seeking preliminary approval of the Settlement pursuant to Federal Rule of Civil Procedure 23.  The purpose of such Plaintiff Incentive Awards shall be to compensate such Plaintiffs for efforts undertaken by them on behalf of the Class.  Neither New GM nor the GUC Trust shall have any responsibility to make any payment to Plaintiffs for any such Plaintiff Incentive Awards. Rather, any such Plaintiff Incentive Awards made to Plaintiffs must be awarded by the MDL Court and shall be paid by the Qualified Settlement Fund Administrator and Trustee out of the Common Fund from the payments by New GM and the GUC Trust to be made pursuant to Paragraph 81, as approved and directed by the MDL Court, within the later of 30 days of the Final Effective Date or the expiration of any appeal period or the resolution of any and all appeals relating to the Plaintiff Incentive Awards.

155.    New GM shall not be liable for, or obligated to pay, any fees, expenses, costs, or disbursements to any person or entity, either directly or indirectly, in connection with the Actions or the Agreement, other than as set forth in Section II.A and this Section VIII.

156.    The GUC Trust shall not be liable for, or obligated to pay, any fees, expenses, costs, or disbursements to any person or entity, either directly or indirectly, in connection with the Actions or the Agreement, other than as set forth in Section II.A.

## IX.   WITHDRAWAL ORDER, PRELIMINARY APPROVAL ORDER, GUC TRUST APPROVAL ORDER, FINAL ORDER, FINAL JUDGMENT AND RELATED ORDERS

157.   The Parties shall seek and undertake all reasonable, good faith efforts, subject to the conditions precedent set forth in this Agreement, to obtain (i) from the MDL Court, the Withdrawal Order, the Preliminary Approval Order, the Final Order and the Final Judgment and (ii) from the Bankruptcy Court, the GUC Trust Approval Order.

158.   The Parties shall file a notice of a joint hearing before the MDL Court, solely with respect to the Withdrawal Order and the Preliminary Approval Order, and the Bankruptcy Court, solely with respect to the GUC Trust Approval Order, with such joint hearing to be held no earlier than 21 days after the Parties' file motions in support of the Withdrawal Order, the Preliminary Approval Order and the GUC Trust Approval Order.  Notice of the joint hearing shall be provided pursuant to Bankruptcy Rule 2002 and given to, among other parties, creditors of Old GM, beneficiaries of the GUC Trust, the United States trustee, and any other entity as the Bankruptcy Court may direct.

159.   The Parties shall seek and undertake all reasonable good faith efforts to obtain from the MDL Court, subject to the conditions precedent set forth herein, a Preliminary Approval Order in a form substantially similar to Exhibit 6.  The Preliminary Approval Order shall, among other things:

> a.   Preliminarily certify a nationwide settlement-only Class, with the Subclasses, approve Plaintiffs as class representatives and appoint Plaintiffs' Class Counsel as counsel for the settlement-only Class, pursuant to Fed. R. Civ. P. 23;
>
> b.   Preliminarily approve the Settlement;

c.      Require the dissemination of the Class Notice and the taking of all necessary and appropriate steps to accomplish this task;

d.      Determine that the Class Notice complies with all legal requirements, including, but not limited to, the Due Process Clause of the United States Constitution;

e.      Schedule a date and time for a Fairness Hearing to determine whether the Settlement should be finally approved by the MDL Court;

f.      Require Class Members who wish to exclude themselves to submit an appropriate and timely hand-signed written request to become an Opt-Out as directed in this Agreement and Long Form Notice, and that a failure to do so shall bind those Class Members who remain in the Class;

g.      Require Class Members who wish to object to this Agreement to submit a written statement as directed in this Agreement and Long Form Notice, and so indicate if they shall appear in person at the Fairness Hearing;

h.      Require attorneys representing Class Members, at the Class Members' expense, to file a notice of appearance as directed in this Agreement and Long Form Notice;

i.      Identify the Plaintiff Incentive Awards, if any, that will be paid from the Common Fund to some or all Plaintiffs if there is a Final Effective Date;

j.      Issue a preliminary injunction of any and all challenges or other litigation by any Person, including Plaintiffs, all potential Class Members, and any parties in the Bankruptcy Case arising out of, in connection with, or related

to the Agreement other than the litigation in the MDL Court concerning final approval of this Settlement;

k.      Issue a stay of all Actions and a preliminary injunction enjoining potential Class Members, pending the MDL Court's determination of whether the Settlement should be given final approval, from litigating, pursuing, making, or proceeding with any economic loss claims arising out of, in connection with, or related to the Recalls or any vehicle subject to the Recalls;

l.      Establish the Common Fund as a Qualified Settlement Fund Trust;

m.      Appoint the Class Action Settlement Administrator;

n.      Authorize the Parties to take all necessary and appropriate steps to establish the means necessary to implement the Agreement; and

o.      Issue any and all other related orders to effectuate the preliminary approval of the Agreement.

160.    At or subsequent to the Fairness Hearing, the Parties shall seek and undertake all reasonable good faith efforts to obtain from the MDL Court a Final Judgment and a Final Order in substantially similar form and content to the proposed Final Order and the proposed Final Judgment to which the Parties shall agree in writing and jointly submit to the MDL Court.  The Final Order and the Final Judgment shall, among other things:

a.      Find that the MDL Court has personal jurisdiction over all Plaintiffs, the Class and all Class Members, that the MDL Court has subject matter jurisdiction over the claims asserted in the 5ACC and the Actions, and that venue is proper;

b.      Finally approve the Agreement and Settlement, pursuant to Fed. R. Civ. P. 23;

c.      Finally certify the Class for settlement purposes only;

d.      Find that the Class Notice and the notice dissemination methodology complied with all laws, including, but not limited to, the Due Process Clause of the United States Constitution;

e.      Subject to Paragraphs 141 and 142 of this Agreement, dismiss the Actions, including the Actions listed on Exhibit 1 with prejudice and without costs (except as provided for herein as to costs);

f.      Incorporate the Class Members' Release set forth in the Agreement and make the Class Members' Release effective as of the date of the Final Order and Final Judgment;

g.      Issue a permanent injunction, including permanently enjoining any and all claims, demands, suits, arbitrations, mediations, petitions, liabilities, causes of actions, rights, and damages of any kind and/or type included in the Class Members' Release;

h.      Authorize the Parties to implement the terms of the Agreement;

i.      Expressly incorporate the terms of this Agreement and expressly provide that the MDL Court retains continuing and exclusive jurisdiction over the Parties, the Class Members, this Agreement, the Actions pending before the MDL Court, and the Final Order and the Final Judgment (i) to administer and enforce the Agreement, (ii) for all matters relating to the Settlement and

the Actions pending before the MDL Court, and (iii) for any other necessary purpose; and

j.    Issue related Orders to effectuate the final approval of the Agreement and its implementation.

## X.    BEST EFFORTS TO EFFECTUATE THIS SETTLEMENT

161.    The Parties each agree to recommend approval of this Agreement and the Settlement by the MDL Court and, as applicable, by the Bankruptcy Court. They agree to undertake their best efforts, including all steps and efforts contemplated by this Agreement and any other steps and efforts that may reasonably be necessary and appropriate or merely appropriate to obtain the MDL Court's approval of this Settlement, and to the extent applicable, the Bankruptcy Court's approval of this Settlement, and to carry out the terms of this Agreement, provided that this will not limit any express rights to terminate this Settlement that any Party may have.

162.    The Parties agree that the MDL Court's authority to enforce this Agreement includes, but is not limited to, awarding monetary and/or injunctive relief and discretion to impose specific performance, sanctions or penalties including imposition of any sanction up to and including contempt of court, pursuant to 28 U.S.C. § 636(e) against any Party that breaches or defaults on its obligations under this Agreement. The Parties agree that the terms of this Agreement satisfy the requirements for injunctive relief and specific performance.

163.    In the event that any Party to this Agreement finds it necessary to bring an action or proceeding against another Party to this Agreement as a result of a breach or default hereunder or to enforce the terms and conditions hereof, the prevailing party in such action or proceedings shall be paid all its reasonable attorneys' fees, costs and necessary disbursements incurred in connection with such action.

## XI.    MODIFICATION OR TERMINATION OF THIS AGREEMENT

164.    The terms and provisions of this Agreement may be amended, modified, or expanded by written agreement of the Parties and, if necessary, approval of (i) the MDL Court and (ii) if the GUC Trust Approval Order has been entered and the amendment or modification materially affects relief provided in the GUC Trust Approval Order, the Bankruptcy Court; provided, however, that after entry of the Final Order and Final Judgment, the Parties may by written agreement effect such amendments, modifications, or expansions of this Agreement and its implementing documents (including all exhibits hereto) without further notice to the Class or approval by the MDL Court or the Bankruptcy Court if such changes are consistent with the MDL Court's Final Order and Final Judgment and do not limit the rights of Class Members under this Agreement.  The Parties agree that, in the event Plaintiffs' Class Counsel and New GM reach an agreement to resolve the Actions with respect to the AAT, this Agreement may be amended and modified to include AAT as a party, subject to approval by the MDL Court.

165.    This Agreement shall terminate at the discretion of either New GM, the GUC Trust or the Plaintiffs, through Plaintiffs' Class Counsel, if:  (1) the Bankruptcy Court does not enter the GUC Trust Approval Order by June 1, 2020; (2) the GUC Trust Approval Order is stayed pending an appeal and such stay is not lifted by July 1, 2020; (3) the MDL Court does not enter the Preliminary Approval Order by June 1, 2020; (4) the Bankruptcy Court declines to enter the GUC Trust Approval Order in substantially the form attached as Exhibit  3, or the GUC Trust Approval Order is withdrawn, rescinded, reversed, vacated, or modified (in a manner such that the order is not substantially in the form attached hereto as Exhibit 3); (5) the MDL Court declines to enter the Preliminary Approval Order in substantially the form attached hereto as Exhibit 6, or the Preliminary Approval Order is withdrawn, rescinded, reversed, vacated, or modified (in a manner

such that the order is not substantially in the form attached hereto as Exhibit 6); (6) the MDL Court does not enter the Final Judgment and the Final Order in substantially the form agreed to by the Parties in writing and submitted by them to the MDL Court as the proposed Final Judgment and the proposed Final Order; and/or (7) the Final Judgment and Final Order are withdrawn, rescinded, reversed, vacated, or modified on appeal (in a manner such the Final Judgment and/or the Final Order are not substantially the form agreed to the Parties in writing and submitted by them to the MDL Court as the proposed Final Judgment and the proposed Final Order).  Additionally, this Agreement shall terminate at the discretion of New GM if there is an MDL Court award (or an award as modified on appeal) of Attorneys' Fees and Expenses greater than the Maximum Attorneys' Fees and Expenses Amount (as defined above in Paragraph 90.d).  However, notwithstanding any provision to the contrary in this Agreement, no Party may terminate this Agreement solely because (1) the Bankruptcy Court refuses to enter the GUC Trust Approval Order and/or the MDL Court refuses to enter the Preliminary Approval Order, the Final Judgment and/or the Final Order in substantially similar form(s) and content to the proposed order(s) attached to this Agreement (or, for the Final Judgment and the Final Order, in substantially similar form(s) and content to proposed order(s) to be jointly submitted by the Parties to the MDL Court) solely because of provisions in any such order(s) regarding (i) the preservation of claims against, or recoverable from, the AAT in the Bankruptcy Case, or (ii) the amount or payment of any Plaintiff Incentive Awards to any Plaintiffs, or (2) the GUC Trust Approval Order has been modified by the Bankruptcy Court and/or the Preliminary Approval Order, the Final Judgment and/or the Final Order have been modified from the form(s) and content of the respective proposed order(s) attached to this Agreement (or, for the Final Judgment and the Final Order, from the form(s) and content to the proposed order(s) to be jointly submitted by the Parties to the MDL Court) solely to

amend, revise or delete provisions regarding (i) the preservation of claims against, or recoverable from, the AAT in the Bankruptcy Case, or (ii) the amount or payment of any Plaintiff Incentive Awards to any Plaintiffs, or (3) the Bankruptcy Court conditions its entry of the GUC Trust Approval Order and/or the MDL Court conditions its entry of the Preliminary Approval Order, the Final Judgment or the Final Order upon the Parties making modifications to this Agreement that relate solely to (i) the preservation of claims against, or recoverable from, the AAT in the Bankruptcy Case, or (ii) the amount or payment of any Plaintiff Incentive Awards to any Plaintiffs,. The terminating party must exercise the option to withdraw from and terminate this Agreement, as provided in this Section XI, by a signed writing served on the other Parties no later than 20 days after receiving notice of the event prompting the termination.  Upon termination of this Agreement, the Parties will be returned to their positions *status quo ante*; provided, however, that if this Agreement is terminated after the Excess Distribution Date, the relief provided in the GUC Trust Approval Order concerning the Excess Distribution, the GUC Trust Release, the New GM Release and the Release Agreement shall remain binding, effective, and enforceable notwithstanding such termination.

166.    In the event that, at any time after entry of the Final Order, the Class Members' Release or any portion or provision thereof, shall for any reason be held in whole or in part to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision, or portion thereof, if New GM, in its sole discretion, or the GUC Trust, in its sole discretion, both elect in writing to proceed as if such invalid, illegal, or unenforceable provision, or portion thereof, had never been included in this Agreement. Alternatively, in these circumstances, New GM or the GUC Trust may elect in writing that the entire Agreement be rendered null and void consistent with the terms described in this Section XI;

provided, however, that if this Agreement is rendered null and void pursuant to this Paragraph 166 after entry of the Final Order, the relief provided in the GUC Trust Approval Order concerning the Excess Distribution, the GUC Trust Release, the New GM Release and the Release Agreement shall remain binding, effective, and enforceable notwithstanding such termination or any other provision of this Agreement.

167.    If an option to terminate this Agreement arises under this Section XI, (a) neither New GM, the GUC Trust, nor Plaintiffs are required for any reason or under any circumstance to exercise that option and (b) any exercise of that option by any Party shall be in good faith.

168.    If, but only if, this Agreement is terminated pursuant to this Section XI, then, subject to the proviso at the end of this Paragraph 168:

a.    This Agreement shall be null and void and shall have no force or effect, and no Party to this Agreement shall be bound by any of its terms, except for the terms of Section XI herein;

b.    The Parties will petition the MDL Court to have any stay orders entered pursuant to this Agreement lifted;

c.    All of its provisions, and all negotiations, statements, and proceedings relating to it shall be without prejudice to the rights of New GM, the GUC Trust, Plaintiffs or any Class Member, all of whom shall be restored to their respective legal positions existing immediately before the execution of this Agreement, except that the Parties shall cooperate in requesting that the MDL Court set a new scheduling order such that no Party's substantive or procedural rights are prejudiced by the settlement negotiations and proceedings;

d.      The Released Parties expressly and affirmatively reserve all defenses, arguments, and motions as to all claims that have been or might later be asserted in the Actions, including, without limitation, the argument that the Actions may not be litigated as a class action and any and all defenses to the Late Claims Motions in the Bankruptcy Case;

e.      Plaintiffs and all other Class Members, on behalf of themselves and their heirs, assigns, executors, administrators, predecessors, and successors, expressly and affirmatively reserve and do not waive all motions as to, and arguments in support of, all claims, causes of actions or remedies that have been or might later be asserted in the Actions including, without limitation, any argument concerning class certification, and treble or other damages;

f.      New GM, the GUC Trust, and the other Released Parties expressly and affirmatively reserve and do not waive all motions and positions as to, and arguments in support of, all defenses to the causes of action or remedies that have been sought or might be later asserted in the Actions, including without limitation, any argument or position opposing class certification, liability or damages;

g.      Neither this Agreement, the fact of its having been made, nor the negotiations leading to it, nor any discovery or action taken by a Party or Class Member pursuant to this Agreement shall be admissible or entered into evidence for any purpose whatsoever;

h.      The Parties agree they will jointly seek and include in the proposed Final Order a ruling that, in the event the Settlement is terminated pursuant to

Section XI of the Agreement, all order(s) and/or judgment(s) entered relating to this Settlement shall be deemed vacated and without any force or effect (including, if applicable, but not limited to the Preliminary Approval Order, the Final Order and the Final Judgment), except that the Excess Distribution, the GUC Trust Release, the New GM Release and the Release Agreement as set forth in the GUC Trust Approval Order shall remain binding, effective and enforceable;

i.      All Settlement Implementation Expenses incurred in connection with the Settlement up to the date of termination will be paid from funds paid into the Common Fund pursuant to the terms and conditions set forth in Paragraphs 80 and 81 above with any remainder of the funds paid into the Common Fund by New GM and the GUC Trust remitted to them pro rata by the Qualified Settlement Fund Administrator and Trustee pursuant to the terms of Paragraph 81 above; and

j.      The Parties will petition promptly the MDL Court to refer back to the Bankruptcy Court all matters for which the reference had been withdrawn to the MDL Court, and upon the reference to the Bankruptcy Court being reinstated, promptly shall request a scheduling order in the Bankruptcy Court regarding the Late Claims Motions;

provided, however, that if this Agreement is terminated for any reason after the Excess Distribution Date, the relief provided in the GUC Trust Approval Order concerning the Excess Distribution, the GUC Trust Release, the New GM Release and the Release Agreement shall remain binding,

effective, and enforceable notwithstanding such termination or any other provision of this Agreement.

## XII.   GENERAL MATTERS AND RESERVATIONS

169.   New GM has denied and continues to deny each and all of the claims and contentions alleged in the Actions, and has denied and continues to deny that it has committed any violation of law or engaged in any wrongful act that was alleged, or that could have been alleged, in the Actions.  New GM believes that it has valid and complete defenses to the claims asserted against it in the Actions and denies that it committed any violations of law, engaged in any unlawful act or conduct, or that there is any basis for liability for any of the claims that have been, are, or might have been alleged in the Actions.  New GM further believes that no class could be certified or maintained for litigation or for trial.  Nonetheless, New GM has concluded that it is desirable that the Actions be fully and finally settled upon the terms and conditions set forth in this Agreement, as do the GUC Trust and Plaintiffs.  The GUC Trust has denied and continues to deny each and all of the claims and contentions alleged in the Late Claims Motions and any Proposed Proofs of Claim filed concerning the Subject Vehicles, and has denied and continues to deny that it or Old GM has committed any violation of law or engaged in any wrongful act that was alleged, or that could have been alleged, in the Late Claims Motions or the Proposed Proofs of Claim.  The GUC Trust believes that it has valid and complete defenses to the claims asserted against it in the Late Claims Motions and the Proposed Proofs of Claim and denies that it or Old GM committed any violations of law, engaged in any unlawful act or conduct, or that there is any basis for liability for any of the claims that have been, are, or might have been alleged in the Late Claims Motions and the Proposed Proofs of Claim.  The GUC Trust further believes that no class could be certified or maintained for litigation or for trial.  Nonetheless, the GUC Trust has concluded that it is desirable that the Late Claims Motions and the Proposed Proofs of Claim be fully and finally

settled as against the GUC Trust (but not with respect to the AAT) upon the terms and conditions set forth in this Agreement, as do the New GM and Plaintiffs.

170.    If the Final Effective Date does not occur, or if the Settlement is terminated pursuant to Section XI above, then the Settlement Agreement, and the certification of the Class (and Subclasses) provided for herein, will be vacated and the Actions shall proceed as though the Class (and Subclasses) had never been certified, without prejudice to any Party's position on the issue of class certification or any other issue.  Certification of the Class (and Subclasses) is also without prejudice to any position asserted by any Party in any other proceeding, case or action, as to which all their rights are specifically preserved.

171.    This Settlement Agreement, including but not limited to its exhibits, whether or not it shall become final, and any and all negotiations, documents and discussions associated with it, is not and shall not be deemed or construed to be an admission, adjudication or evidence of any violation of any statute or law or of any liability or wrongdoing by the Released Parties or of the truth of any of the claims or allegations alleged in the Actions, the Late Claims Motions or the Proposed Proofs of Claim, or the incurrence of any damage, loss or injury by any Person.  In the event that the Settlement does not become final or is terminated in accordance with the terms hereof, then this Agreement, including its exhibits, and any and all negotiations, documents and discussions associated with it and the releases set forth herein, shall be without prejudice to the rights of any Party and shall not be offered or received in evidence in any proceeding.  Further, this Agreement, the Final Order and the Final Judgment are not and shall not be deemed or construed to be an admission, adjudication or evidence of any lack of merit of any of the claims or defenses asserted in the Actions, the Late Claims Motion or the Proposed Proofs of Claim.  The Parties agree that this Agreement, including its exhibits, the Final Order and the Final Judgment,

whether or not it shall become final, and any and all negotiations, documents and discussions associated with it, (a) shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by any Released Party, or of the truth of any of the claims or defenses, or the incurrence of any damage, loss or injury by any Person, or of any lack of merit of any of the claims asserted in the Actions, the Late Claims Motions or the Proposed Proofs of Claim, or that any class could be certified or maintained for litigation or trial, and (b) shall not be discoverable or used directly or indirectly, in any way, whether in the Actions, the MDL Court, or in the Bankruptcy Court or any other action or proceeding of any nature, whether by the Class or Opt Outs, except if warranted by existing law in connection with a dispute under this Agreement or an action in which this Agreement is asserted as a defense.  Nor shall this Agreement serve as precedent in any manner, because the Agreement is based on the specific facts of this matter and is for settlement purposes only.

172.    The occurrence of the Final Effective Date shall be contingent upon each of the following:

a.    Entry by the Bankruptcy Court of the GUC Trust Approval Order;

b.    The occurrence of the GUC Trust Approval Order Effective Date, unless such condition is waived in writing by the GUC Trust and New GM;

c.    Entry by the MDL Court of the Withdrawal Order and the Preliminary Approval Order;

d.    Entry by the MDL Court of the Final Order and the Final Judgment approving the Settlement, from which the time to appeal has expired or which has remained unmodified after any appeal(s) have fully concluded; and

e.      Any other conditions stated in this Agreement.

173.    The Parties and their counsel agree to keep the existence and contents of this Agreement confidential until the date on which the Motion for Preliminary Approval is filed; provided, however, that this Section shall not prevent New GM and the GUC Trust from disclosing such information, prior to the date on which the Motion for Preliminary Approval is filed, to state and federal agencies, independent accountants, actuaries, advisors, financial analysts, insurers or attorneys or if required by law or regulation.  Nor shall the Parties and their counsel be prevented from disclosing such information to persons or entities (such as experts, courts, co-counsel, and/or administrators) to whom the Parties agree in writing disclosure must be made in order to effectuate the terms and conditions of this Agreement.

174.    New GM's execution of this Agreement shall not be construed to release – and New GM expressly does not intend to release – any claim New GM may have or make against any insurer for any cost or expense incurred in connection with this Settlement, including, without limitation, for attorneys' fees and costs.

175.    The GUC Trust's execution of this Agreement shall not be construed to release – and the GUC Trust expressly does not intend to release – any claim the GUC Trust may have or make against any insurer for any cost or expense incurred in connection with this Settlement, including, without limitation, for attorneys' fees and costs.

176.    Plaintiffs' Class Counsel represent that: (1) they are authorized by the Plaintiffs to enter into this Agreement with respect to the claims in these Actions; and (2) they are seeking to protect the interests of the Class.

177.    Plaintiffs' Class Counsel further represent that the Plaintiffs: (1) have agreed to serve as representatives of the Class and Subclasses proposed to be certified herein; (2) are willing,

able, and ready to perform all of the duties and obligations of representatives of the Class, including, but not limited to, being involved in discovery and fact finding; (3) have authorized Plaintiffs' Class Counsel to execute this Agreement on their behalf; and (4) shall remain and serve as representatives of the Class and Subclasses until the terms of this Agreement are effectuated, this Agreement is terminated in accordance with its terms, or the MDL Court at any time determines that said Plaintiffs cannot represent the Class.

178. The Parties acknowledge and agree that no opinion concerning the tax consequences of the proposed Settlement to Class Members is given or will be given by the Parties, nor are any representations or warranties in this regard made by virtue of this Agreement. Each Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Class Member.

179. New GM represents and warrants that the individual executing this Agreement is authorized to enter into this Agreement on its behalf.

180. The GUC Trust represents and warrants that the individual executing this Agreement is authorized to enter into this Agreement on its behalf, and that the GUC Trust has obtained all necessary approvals and consents required under the GUC Trust Agreement to enter into this Agreement, including the consent of the GUC Trust Monitor. The GUC Trust further represents and warrants that its entry into this Agreement is supported by the Participating Unitholders.

181. This Agreement, complete with its exhibits, sets forth the sole and entire agreement among the Parties with respect to its subject matter, and it may not be altered, amended, or modified except by written instrument executed by Plaintiffs' Class Counsel, New GM's Counsel

on behalf of New GM, and GUC Trust Counsel on behalf of the GUC Trust. The Parties expressly acknowledge that no other agreements, arrangements, or understandings not expressed in this Agreement exist among or between them, and that in deciding to enter into this Agreement, they rely solely upon their judgment and knowledge. This Agreement supersedes any prior agreements, understandings, or undertakings (written or oral) by and between the Parties regarding the subject matter of this Agreement.

182.    This Agreement and any amendments thereto shall be governed by and interpreted according to the law of the State of New York notwithstanding its conflicts of law provisions.

183.    Any disagreement and/or action to enforce this Agreement shall be commenced and maintained only in the MDL Court.

184.    Whenever this Agreement requires or contemplates that one of the Parties shall or may give notice to the other, notice shall be provided by e-mail and/or next-day (excluding Saturdays, Sundays and Federal Holidays) express delivery service as follows:

a.    If to New GM, then to:

Richard C. Godfrey & Wendy Bloom
Kirkland & Ellis LLP
300 North LaSalle
Chicago, Illinois 60654
Tel. 312-862-2391 and 312-862-2343

b.    If to Plaintiffs, then to:

Steve W. Berman                                        Elizabeth J. Cabraser
Hagens Berman Sobol Shapiro LLP        Lieff Cabraser Heimann & Bernstein, LLP
1301 Second Ave.                          and    Embarcadero Center West
Suite 2000                                              275 Battery Street, 29th Floor
Seattle, WA 98101                                 San Francisco, CA 94111
Tel. 206-623-7292                                 Tel. 415-956-1000

      c.      If to the GUC Trust, then to:

> Kristin Going
> McDermott Will & Emery LLP
> 340 Madison Avenue
> New York, New York 10173-1922
> Tel. 212-547-5429

185.    All time periods set forth herein shall be computed in calendar days unless otherwise expressly provided.  In computing any period of time prescribed or allowed by this Agreement or by order of the MDL Court, the day of the act, event, or default from which the designated period of time begins to run shall not be included.  The last day of the period so computed shall be included, unless it is a Saturday, a Sunday or a Federal Holiday, or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the office of the clerk of the court inaccessible, in which event the period shall run until the end of the next day that is not one of the aforementioned days.  As used in this Section XI "Federal Holiday" includes New Year's Day, Birthday of Martin Luther King, Jr., Presidents' Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day, Patriot's Day, Thanksgiving Day, Christmas Day, and any other day appointed as a holiday by the President, the Congress of the United States or the Chief Judge or the Clerk of the United States District Court for the Southern District of New York.

186.    The Parties reserve the right, subject to the MDL Court's approval, to agree in writing to any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement.

187.    The Class, Plaintiffs, Plaintiffs' Class Counsel, New GM, New GM's Counsel, the GUC Trust, and GUC Trust Counsel shall not be deemed to be the drafter of this Agreement or of any particular provision, nor shall they argue that any particular provision should be construed

against its drafter.  All Parties agree that this Agreement was drafted by counsel for the Parties during extensive arm's-length negotiations.  No parol or other evidence may be offered to explain, construe, contradict, or clarify its terms, the intent of the Parties or their counsel, or the circumstances under which this Agreement was made or executed.

188.     The Parties expressly acknowledge and agree that this Agreement and its exhibits, along with all related drafts, motions, pleadings, conversations, negotiations, and correspondence, constitute an offer of compromise and a compromise within the meaning of Federal Rule of Evidence 408 and any equivalent rule of evidence in any state.  In no event shall this Agreement, any of its provisions or any negotiations, statements or court proceedings relating to its provisions in any way be construed as, offered as, received as, used as, or deemed to be evidence of any kind in the Actions, any other action, or in any judicial, administrative, regulatory or other proceeding, except in a proceeding to enforce this Agreement or the rights of the Parties or their counsel. Without limiting the foregoing, neither this Agreement nor any related negotiations, statements, or court proceedings shall be construed as, offered as, received as, used as or deemed to be evidence or an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including, but not limited to, the Released Parties, Plaintiffs, or the Class or as a waiver by the Released Parties, Plaintiffs or the Class of any applicable privileges, claims or defenses.

189.     Plaintiffs expressly affirm that the allegations contained in the 5ACC were made in good faith, but consider it desirable for the Actions to be settled and dismissed because of the substantial benefits that the proposed Settlement will provide to Class Members.

190.    The Parties, their successors and assigns, and their counsel undertake to implement the terms of this Agreement in good faith, and to use good faith in resolving any disputes that may arise in the implementation of the terms of this Agreement.

191.    The waiver by one Party of any breach of this Agreement by another Party shall not be deemed a waiver of any prior or subsequent breach of this Agreement.

192.    If one Party to this Agreement considers another Party to be in breach of its obligations under this Agreement, that Party must provide the breaching Party with written notice of the alleged breach and provide a reasonable opportunity to cure the breach before taking any action to enforce any rights under this Agreement.

193.    The Parties, their successors and assigns, and their counsel agree to cooperate fully with one another in seeking MDL Court approval of this Agreement and Bankruptcy Court approval of the GUC Trust Motion, and to use their best efforts to effect the prompt consummation of this Agreement and the proposed Settlement.

194.    This Agreement may be signed electronically or by hand and may be signed in counterparts, each of which shall constitute a duplicate of the original.

195.    In the event any one or more of the provisions contained in this Agreement (besides the Class Members' Release, which is addressed in Paragraph 166) shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision if New GM, the GUC Trust and Plaintiffs' Class Counsel, on behalf of Plaintiffs and Class Members, mutually agree in writing to proceed as if such invalid, illegal, or unenforceable provision had never been included in this Agreement; provided, however, that invalidity, illegality or unenforceability of any provision of this Agreement shall not affect or limit the enforceability of any provision of the GUC Trust Approval Order which shall remain in

full force and effect beginning on and continuing after the Excess Distribution Date.   Any agreement to proceed without regard to an invalid, illegal, or unenforceable provision shall be reviewed and approved by the MDL Court before it becomes effective.

-- THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK --

This Settlement Agreement is agreed to on the date indicated below.

APPROVED AND AGREED TO BY PLAINTIFFS' CLASS COUNSEL
AS AUTHORIZED BY PLAINTIFFS

BY_____          DATE: March 27, 2020
    STEVE W. BERMAN
    HAGENS BERMAN SOBOL SHAPIRO LLP

This Settlement Agreement is agreed to on the date indicated below.

APPROVED AND AGREED TO BY PLAINTIFFS' CLASS COUNSEL
AS AUTHORIZED BY PLAINTIFFS

BY_____          DATE: March 27, 2020
   ELIZABETH J. CABRASER
   LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

This Settlement Agreement is agreed to on the date indicated below.


APPROVED AND AGREED TO BY GENERAL
MOTORS LLC


BY_____
      CRAIG GLIDDEN
      EXECUTIVE VICE PRESIDENT AND GENERAL COUNSEL,
      GENERAL MOTORS LLC


DATE: March _27_, 2020

This Settlement Agreement is agreed to on the date indicated below.

APPROVED AND AGREED TO AS TO FORM

BY NEW GM'S COUNSEL


BY _____          DATE: March 27, 2020
     RICHARD C. GODFREY
     KIRKLAND & ELLIS LLP

This Settlement Agreement is agreed to on the date indicated below.

APPROVED AND AGREED TO BY WILMINGTON
TRUST COMPANY, AS TRUST ADMINISTRATOR
AND TRUSTEE OF THE GUC TRUST

BY_____     DATE: March 27, 2020
    DAVID A. VANASKEY, JR.
    VICE PRESIDENT

This Settlement Agreement is agreed to on the date indicated below.

WILMINGTON TRUST NATIONAL ASSOCIATION
APPROVED AND AGREED TO AS TO FORM
BY GUC TRUST COUNSEL

BY *Kristin K. Going*                    DATE: March 27, 2020
    KRISTIN K. GOING
    MCDERMOTT WILL & EMERY LLP

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on March 27, 2020, which will send notification of such filing to the e-mail addresses registered.

*/s/ Steve W. Berman*
Steve W. Berman
