UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------x
IN RE:

GENERAL MOTORS LLC IGNITION SWITCH LITIGATION

This Document Relates To:
*Rothermel v. General Motors, LLC, 17-CV-9353*
-------------------------------------------------------------------------------x

14-MD-2543 (JMF)

<u>MEMORANDUM OPINION AND
ORDER</u>

JESSE M. FURMAN, United States District Judge:

The present case — brought by Plaintiff Jordon Rothermel — is part of multidistrict

litigation ("MDL") proceedings, general familiarity with which is assumed, relating to alleged

defects in the ignition switches and other features of certain General Motors vehicles.

Rothermel, who allegedly suffered injuries after a one-vehicle crash in April 2016, settled with

General Motors LLC ("New GM") and dismissed his claims with prejudice. *See* ECF No. 4-2

("Compl."), ¶ 8; ECF No. 62.[1]  One of his attorneys — James Zonas — now seeks to reopen the

case in order to enforce an attorney's lien. *See* ECF Nos. 63, 64.  As the discussion that follows

makes clear, neither Zonas nor the other lawyer involved in Rothermel's case deserve high praise

for his handling of this matter.  Nevertheless, Zonas's motion to reopen and motion to enforce a

charging lien are granted.  For the reasons set forth below, however, the lien is limited to work

performed before August 11, 2017, when the evidence shows that Zonas was fired by Rothermel.

## BACKGROUND

The relevant facts are as follows.  Shortly after his accident, Rothermel retained James

Zonas, on a contingency basis, to represent him in an action against the driver of the vehicle in

the accident.  *See* ECF No. 69-1 ("Rothermel Aff."), ¶ 4.  With Zonas's aid, Rothermel settled

---

[1]      Unless otherwise noted, ECF citations are to 17-CV-9353 (JMF).

his claims with the relevant insurers.  *Id.* ¶ 5.  Zonas was paid his share of Rothermel's recovery, and he also withheld a portion of the recovery in order to pay experts, as he and Rothermel had learned that Rothermel may have a viable claim against New GM on the basis of the alleged ignition switch defect.  *Id.*  Zonas did, in fact, retain experts to examine the vehicle, and they prepared reports in or around May 2016.  *Id.* ¶ 6.  On August 9, 2017, Rothermel decided to retain another attorney, T. Patton Youngblood.  *Id.* ¶ 10; ECF No. 69-2 ("Youngblood Aff."), ¶ 5; ECF No. 72 ("Reply"), Ex. D ("Zonas Aff."), ¶¶ 4-5.  That much, at least, is not disputed. The parties do, however, dispute whether Zonas continued to represent Rothermel after that date. Rothermel and Youngblood insist that Rothermel terminated Zonas's representation on August 11, 2017.  *See* Rothermel Aff. ¶ 8; Youngblood Aff. ¶ 6.  Zonas, by contrast, claims that he represented Rothermel cooperatively with Youngblood.  *See* Zonas Aff. ¶ 4.

On October 12, 2017, Youngblood and Zonas spoke by telephone, and Youngblood made clear that he was "representing [Rothermel] in his claim against GM."  Youngblood Aff. Ex. A. In an email that Youngblood sent to Zonas after their phone call, Youngblood asked Zonas to forward various documents from Zonas's case file.  *See* Youngblood Aff. Ex. A.  Nevertheless, on the same date, Zonas filed, on Rothermel's behalf, the instant action against New GM in Florida state court.  *See* Compl.; Rothermel Aff. ¶ 10.  Neither Rothermel nor Youngblood can explain how they first became aware of the lawsuit, but they must have known of it by October 25, 2017, when Youngblood "ha[d] a phone conversation with an attorney for GM." Youngblood Aff. ¶ 12.  Rothermel claims he was surprised when he learned that Zonas had filed claims on his behalf.  *See* Rothermel Aff. ¶¶ 10-11.  On November 8, 2017, New GM removed Rothermel's claims to the Middle District of Florida, and on November 29, 2017, they were transferred to this Court and consolidated in the MDL.  *See* ECF No. 9.

Bewilderingly, neither Rothermel nor Youngblood ever alerted the Court to the fact that an attorney who no longer represented Rothermel had filed the claims on his behalf.  In fact, Zonas was, and continues to be, listed as attorney of record on the docket.  Indeed, since the case was transferred to this Court, neither Youngblood nor Zonas filed much of anything.  Zonas never filed a motion to withdraw, but he did file a notice of charging lien on the MDL docket on April 4, 2018, *see* 14-MD-2543, ECF No. 5324, and on Rothermel's individual docket on August 6, 2019, *see* ECF No. 53.  Youngblood filed a motion to appear *pro hac vice* on the MDL docket on June 13, 2019, *see* 14-MD-2543, ECF No. 6872, and he submitted a stipulation of dismissal with prejudice of Rothermel's claims on January 28, 2020, *see* ECF No. 62.  That is the entirety of Rothermel's filings in this matter — until the present motions.  Zonas and Youngblood communicated in the interim; the correspondence submitted to the Court mostly consists of Youngblood asking Zonas to send documents or information from his case file.  *See* Youngblood Aff. Exs. A, B, D; Reply Ex. C.  An expert also contacted Youngblood and stated that Zonas had said that Youngblood, not Zonas, was representing Rothermel.  *See* Youngblood Aff. Ex. E (email dated October 3, 2018).

Rothermel eventually settled his claims against New GM, and on January 28, 2020, he submitted a stipulation of dismissal with prejudice.  *See* ECF No. 62.  On January 30, 2020, Zonas filed motions to reopen Rothermel's case and to enforce his attorney's lien.  *See* ECF Nos. 63, 64.

## DISCUSSION

To impose a valid charging lien under Florida law — which the parties agree governs this dispute — "the attorney must show: (1) an express or implied contract between attorney and client; (2) an express or implied understanding for payment of attorney's fees out of the

recovery; (3) either an avoidance of payment or a dispute as to the amount of fees; and (4) timely notice." *Daniel Mones, P.A. v. Smith*, 486 So. 2d 559, 561 (Fla. 1986). Applying those standards here, the Court concludes that Zonas's charging lien must be enforced, but that it covers only fees incurred prior to August 11, 2017, when Rothermel fired Zonas. Of the four elements, the parties dispute only two: the period in which there was a contractual relationship between Rothermel and Zonas and whether Zonas made timely notice of his charging lien.

Starting with the latter, the Court concludes that Zonas plainly filed timely notice of his charging lien. In order to be "timely," notice of an attorney's charging lien must be filed "before the lawsuit has been reduced to judgment or dismissed pursuant to settlement." *Brown v. Vt. Mut. Ins. Co.*, 614 So. 2d 574, 580 (Fla. Dist. Ct. App. 1993). Zonas filed a notice of charging lien on both the MDL docket and Rothermel's individual docket long before January 28, 2020, when Rothermel dismissed his claims with prejudice. *See* ECF No. 62 (stipulation of dismissal dated January 28, 2020); ECF No. 53 (notice of charging lien dated August 6, 2019); 14-MD-2543, ECF No. 5324 (notice of charging lien dated April 4, 2018). Youngblood argues that Zonas did not provide adequate notice because neither he nor Rothermel ever received it. *See* ECF No. 69 ("Opp'n"), ¶ 4. But it is well established that when an attorney files a notice of charging lien, as Zonas did, the notice requirement is satisfied. *See Daniel Mones, P.A.*, 486 So. 2d at 561 ("In order to give timely notice of a charging lien an attorney should either file a notice of lien or otherwise pursue the lien in the original action.").

Youngblood inexplicably argues that he was unaware of the notice because Zonas neither filed a motion to appear *pro hac vice* nor applied for an account on the Court's Electronic Case Filing system. Opp'n ¶¶ 4, 8-10. But the notice was on the public docket; Youngblood has only himself to blame for his failure to see it. *See Friedman v. State Univ. of N.Y. at Binghamton*, No.

4

3:06-CV-0399, 2006 WL 2882980, at *3 (N.D.N.Y. Oct. 5, 2006) ("[A]ttorneys have a duty to be aware of entries on the docket of their client's cases and are on constructive notice of such entries."). Meanwhile, the argument that the notice was improper because Youngblood "never appeared in the lower court action," Opp'n ¶ 14 — which the Court understands to mean Rothermel's member case — fails three times over. First, there is no excuse for Youngblood's failure to appear in this case, which was brought by his client and remained open until it was voluntarily dismissed. Second, Youngblood drafted a stipulation of dismissal with prejudice bearing Rothermel's individual case number, *see* ECF No. 62, and appearing in a case "*after* an earlier docket entry does not excuse a failure to review prior entries." *Star Asia Int'l, Inc. v. Old Dominion Footwear, Inc.*, No. 18-CV-4741 (JMF), 2019 WL 2371632, at *2 (S.D.N.Y. June 5, 2019). Finally, it is irrelevant, because Zonas also filed a notice of charging lien in the MDL, in which Youngblood appeared. *See* 14-MD-2543, ECF No. 5324.

With respect to the other matter in dispute — the period in which there was a contractual relationship between Rothermel and Zonas — the Court concludes that the charging lien is valid only with respect to work performed before August 11, 2017. A preponderance of the evidence demonstrates that Rothermel fired Zonas on that date — which raises serious ethical questions about Zonas's decision to file this case on Rothermel's behalf on October 12, 2017, and to make no effort to remove his name from the list of counsel of record even through today. Although Zonas asserts that he "assisted in all steps of the proceedings," Reply ¶ 1, and was asked to do work "throughout the case," *id.* ¶ 4, the record indicates otherwise. Much of the evidence is from before August 11, 2017, at which point the parties agree that Zonas represented Rothermel. *See* Reply Ex. A. The remainder generally reflects that, after August 11, 2017, Zonas provided Youngblood with information from his case file when requested, which is consistent with the

role of former counsel.  *See, e.g.*, Youngblood Aff. Exs. A, B, D; Reply Ex. C.  In fact, the evidence suggests that Zonas acknowledged to others that he had been fired.  *See* Youngblood Aff. Ex. E.  And, of course, Zonas presumably would not have filed notices of charging liens if he were still representing Rothermel in the matter.

The fact that neither Rothermel nor Youngblood complained when Zonas filed the complaint on Rothermel's behalf is the sole point in Zonas's favor, but — in light of the fact that Youngblood failed to exercise due diligence in his representation on other fronts as well — it is far weaker than the evidence suggesting that Rothermel terminated the attorney-client relationship.  At bottom, although there is little or no documentary evidence that Rothermel fired Zonas on August 11, 2017, rather than some other date, Zonas offers no alternative and therefore fails to meet his burden as to any date thereafter.  And the Court easily dismisses Zonas's argument that Rothermel never fired him because "[t]here is no written cancellation of the contingent fee agreement . . . as required."  Reply ¶ 6.  Although a writing is required to cancel the agreement and avoid paying fees for work performed altogether, the contract does not require "the client [to] *terminate*[] th[e] agreement" in writing.  Reply Ex. A (emphasis added).

To the contrary, the contract provides that, if the contract is terminated, Rothermel must pay Zonas, as relevant here, "a reasonable hourly fee for services rendered to the date of termination."  *Id.*  Moreover, Florida law allows an attorney to enforce a charging lien only with respect to work performed pursuant to "an express or implied contract," which — as discussed — terminated here on August 11, 2017.  *Daniel Mones, P.A.*, 486 So. 2d at 561.  Therefore, both by the terms of the contract and by virtue of Florida law, Zonas's charging lien is limited to a reasonable hourly fee for services rendered prior to August 11, 2017.

## CONCLUSION

For the foregoing reasons, Zonas's motion to enforce his charging lien is GRANTED as limited to work performed before August 11, 2017, and his motion to reopen Rothermel's case is GRANTED for the sole purpose of enforcing the lien. Within **twenty-one days of the date of this Memorandum Opinion & Order**, Zonas shall file a detailed accounting of the hours spent preparing Rothermel's case against New GM. Such accounting shall *not* include time spent litigating any claims against other defendants. By the **same date**, Zonas shall file a motion proposing a reasonable hourly fee. Any opposition shall be filed **within two weeks of Zonas's accounting**. No reply shall be filed absent leave of Court.

The Clerk of Court is directed to reopen 17-CV-9353 and to terminate 17-CV-9353, ECF Nos. 63, 64, and 72 and 14-MD-2543, ECF No. 7764.

SO ORDERED.

Dated: July 6, 2020
      New York, New York

                                JESSE M. FURMAN
                            United States District Judge