UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------x

IN RE:

GENERAL MOTORS LLC IGNITION SWITCH LITIGATION

-------------------------------------------------------------------------------x

14-MD-2543 (JMF)
14-MC-2543 (JMF)

OPINION AND ORDER

JESSE M. FURMAN, United States District Judge:

**[Regarding Common Benefit Assessments on State Cases and Unfiled Matters]**

As this Court has previously explained, complex aggregate litigation often raises a classic free-rider problem. A subset of plaintiffs' lawyers do the lion's share of the work, but that work accrues to the benefit of all plaintiffs. If those other plaintiffs were not required to pay any costs of that work, "high-quality legal work would be under-incentivized and, ultimately, under-produced." *In re Gen. Motors LLC Ignition Switch Litig.*, Nos. 14-MD-2543 (JMF), 14-MC-2543 (JMF), 2019 WL 5865112, at *1 (S.D.N.Y. Nov. 8, 2019). To solve this problem, courts frequently invoke what is known as the "common-benefit doctrine" and impose assessments on the recoveries of those who benefit from the work done for the benefit of all; those assessments are deposited into a "common-benefit fund," and counsel that did the work for the common benefit are then paid from the fund. *See id.* In this multidistrict litigation ("MDL") — arising from alleged defects in the ignition switches and other features of certain General Motors vehicles and general familiarity with which is assumed — the Court did just that. In Order No. 42, the Court created a common-benefit fund (the "Fund") and prescribed the terms of the Fund — most notably for present purposes, identifying the categories of plaintiffs and claimants whose recoveries from Defendant General Motors LLC ("New GM") would be subject to the required assessments.

For almost half a decade, there were no disputes or controversies relating to the Fund. Late last year, however, the Court was confronted with a dispute between the court-appointed lead counsel for plaintiffs ("Lead Counsel") and one plaintiff's law firm over whether recoveries obtained by the law firm's clients with cases pending in state courts or not filed in any court were subject to assessment.  Relying on the fact that the Court had been called upon to play a role in the settlement of those claims, the Court ruled in Lead Counsel's favor without having to resolve the questions at the heart of the dispute: whether, as a general matter, Order No. 42 requires an assessment for recoveries in cases filed by MDL lawyers in state court or unfiled claims and, if so, whether such assessments exceed the Court's authority.  Shortly thereafter, the Court was confronted with two new motions presenting those questions anew — from the plaintiffs' law firms Bailey Cowan Heckaman PLLC ("BCH") and The Potts Law Firm ("Potts" and, together with BCH, the "Firms").  Like the first law firm, the Firms represent some clients in the MDL and an even larger number of clients who are not in the MDL — either with cases pending in state courts or unfiled claims.  Last year, they reached global settlements with New GM resolving all of these claims.  Like the first law firm, they now seek a ruling that recoveries arising out of their state-court cases and unfiled claims are not subject to assessment — on the grounds that Order No. 42 does not require such assessments and that, to the extent that the Order does, it exceeds the Court's jurisdiction and authority.  *See* ECF Nos. 7368, 7398.

For the reasons that follow, the Court agrees in part and disagrees in part.  *First*, the Court holds that Order No. 42, by its terms, requires assessments for recoveries arising out of (1) the Firms' unfiled claims and (2) any state-court cases in which work product generated within the MDL for the common benefit of all plaintiffs was "used," but does *not* require assessments for recoveries in the Firms' state-court cases generally.  As the Court will explain, drawing this

distinction between unfiled claims and state-court cases makes good sense. For one thing, imposing assessments with respect to state-court cases (absent use) risks intruding on the prerogatives of the state courts presiding over those cases; for unfiled claims, there is no such risk. And while there is a mechanism to solve the free-rider problem in state-court cases — namely, the state courts — there is no such mechanism for unfiled claims. *Second*, resolving a complicated question that has divided other courts (and on which the Supreme Court and Second Circuit have not yet ruled), the Court holds that it has both jurisdiction and inherent authority to do what Order No. 42 does: order New GM to hold back assessments in connection with its settlements with MDL counsel's clients who have not filed claims in any court. Accordingly, and for the reasons stated below, the Firms' motions are granted in part and denied in part.

**BACKGROUND**

In February 2014, New GM announced the recall of certain General Motors vehicles that had been manufactured with a defective ignition switch that moved too easily from the "run" position to the "accessory" and "off" positions, causing moving stalls and disabling critical safety systems. In the months that followed, New GM recalled millions of other vehicles, some for reasons relating to the ignition switch and some for other reasons. Not surprisingly, litigation followed, in both state and federal courts. The federal cases were ultimately consolidated in this Court by the Judicial Panel on Multidistrict Litigation. The Court later appointed Steve W. Berman, Elizabeth J. Cabraser, and Robert C. Hilliard as Lead Counsel and also appointed ten other attorneys to serve as a plaintiffs' Executive Committee. *See* ECF No. 249.

**A.  The Common Benefit Fund Order (Order No. 42)**

On March 26, 2015, the Court issued Order No. 42 and established the Common Benefit Fund to help ensure that parties for whose benefit legal work is performed in this MDL share the

costs and expenses associated with that work.  *See* ECF No. 743 ("Order No. 42"), at 1.

Pursuant to that Order, New GM is required to withhold three percent of any settlement or

judgment in a "Common Benefit Action" and to deposit that amount into the Fund.  *See id.* ¶¶ 4,

36-38; *see also id.* ¶ 32 ("All plaintiffs in Common Benefit Actions . . . who agree to settle,

compromise, or dismiss a Common Benefit Action . . . or who recover a judgment for monetary

damages or other monetary relief . . . are subject to an assessment . . . .").  Common Benefit

Actions are defined to include, as relevant here:

> (1) "all cases . . . pending [at the time Order No. 42 was issued], as well as . . . any cases later filed in, transferred to, or removed to this Court and included as part of the MDL";
>
> (2) "all Related Actions in which plaintiffs and their counsel voluntarily execute the Participation Agreement," an agreement attached as an exhibit to Order No. 42;
>
> (3) "all Coordinated Actions" in which the presiding court "enters an order endorsing [Order No. 42] and either (i) deeming plaintiffs and their counsel in the Coordinated Action to have signed the Participation Agreement . . . or (ii) requiring plaintiffs and their Counsel in the Coordinated Action to sign the Participation Agreement"; and
>
> (4) "all unfiled and tolled actions of clients of Participating Counsel that would be Related Actions if filed."

*Id.* ¶ 11.  "Related Actions," in turn, are defined as "actions . . . that involve the same subject

matter" as this MDL (not including shareholder derivative suits and securities class actions),

whether filed in state or federal courts.  *Id.* ¶ 1; *see also* ECF No. 315 ("Order No. 15"), at 1 &

n.1.  "Coordinated Actions" are Related Actions in which the presiding court adopted and

entered MDL Order No. 15, the "Joint Coordination Order."  Order No. 42, ¶ 1.  And

"Participating Counsel" include, among others, all attorneys representing plaintiffs in Common

Benefit Actions.  *Id.* ¶¶ 4, 15; *see* ECF No. 304 ("Order No. 13"), at 7.

Order No. 42 also specifies that certain "actions and matters" are *not* Common Benefit

Actions, including, as relevant here:

(1) "Related Actions in which plaintiffs and their counsel have not . . . voluntarily signed" the Participation Agreement or "been ordered or deemed by the court where the Related Action is pending to have signed the Participation Agreement"; and

(2) "Filed and unfiled actions that are not Related Actions."

Order No. 42, ¶ 12. Paragraph 16 provides that "[c]ounsel who represent plaintiffs in *both* Common Benefit Actions *and* actions or matters that do not qualify as Common Benefit Actions may only . . . access and use Common Benefit Work Product for their Common Benefit Actions." *Id.* ¶ 16 (emphases added). "If Common Benefit Work Product is used in non-Common Benefit claims or actions," Paragraph 16 continues, "they shall be subject to the assessment and such other actions as deemed appropriate by the Court." *Id.* ¶ 16; *see also id.* ¶ 42 (providing that the "use" of "Common Benefit Work in actions or matters which are not Common Benefit Actions . . . will result in an assessment against such matters, and such other action as deemed appropriate by the Court"). "Common Benefit Work" includes "all work authorized by the court-appointed MDL 2543 Leadership . . . and performed for the benefit of all plaintiffs in Common Benefit Actions." *Id.* ¶ 7.

## B. Prior Litigation Regarding Order No. 42

For four and a half years, Order No. 42 and the Fund operated without incident or dispute. On September 27, 2019, however, Langdon & Emison, LLC ("L&E"), a law firm that represents some plaintiffs in the MDL, moved for a declaratory judgment stating that recoveries obtained by its clients who had not appeared in the MDL are not subject to assessments under Order No. 42. *See* ECF Nos. 7204, 7205. Lead Counsel opposed the motion. *See* ECF No. 7272. Like the parties to the present motions, L&E and Lead Counsel disagreed about "whether Order No. 42, by its terms, subjects" state-filed cases and unfiled matters to assessments and, to the extent it does, "whether the Court has jurisdiction and authority to subject such cases to assessment absent voluntary agreement or a concurrent state order." *In re Gen. Motors*, 2019

WL 5865112, at *3 (internal quotation marks omitted).  Briefing on the motion, however,

revealed that "all of the state-court and unfiled cases settled by L&E" were "included in master

settlement agreements, which [were] to be paid out of trusts approved by this Court (at L&E's

request) and administered by a Special Master who was appointed by this Court (also at L&E's

request) pursuant to Rule 53 of the Federal Rules of Civil Procedure." *Id.*  On that basis alone,

the Court concluded that the settlements at issue were subject to assessment under Order No. 42

and that ordering such assessments was well within the Court's authority.  *See id.* at *3-4.  The

Court left the questions at the heart of L&E's motion (and the present motions) — whether state-

court and unfiled claims are generally subject to assessment under Order No. 42 and, if so,

whether that exceeded the Court's authority — to "another day."  *Id.* at *3.[1]

## C.  BCH and Potts

BCH filed its first case in the MDL on March 30, 2015.  *See* ECF No. 762.  Between

March 30, 2015, and February 2018, BCH filed and maintained in the MDL a total of fourteen

complaints on behalf of hundreds of clients.  *See* ECF No. 7440 ("Opp'n"), at 6 n.4 (listing

cases).  Potts filed its first case in the MDL on September 1, 2015.  *See* ECF No. 1319.  Since

then, Potts has filed dozens of cases on behalf of hundreds of clients.  *See* Opp'n 9.  Each of the

Firms also represents plaintiffs who have sued in state court and clients who have not filed any

lawsuit at all.  *See* ECF No. 7399-1 ("Potts Decl."), ¶¶ 4-10; ECF No. 7369 ("BCH Mem."), at

---

[1]     On January 20, 2020, L&E moved for certification of the Court's opinion pursuant to
Rule 54(b) of the Federal Rules of Civil Procedure and to enter final judgment under Rule 58.
*See* ECF No. 7683.  The Court denied L&E's motion, noting that, when it resolved the present
motions, it was "likely to confront issues that were fully briefed in connection with" L&E's
motion "but not resolved in the Order" — issues which might "provide an independent and
adequate basis on which to impose a common benefit assessment on the settlements at issue in
[L&E's] motion."  *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2020
WL 815590, at *1 (S.D.N.Y. Feb. 19, 2020).  The Court concluded that certifying its opinion as
a final judgment would therefore "undermine . . . the interest in judicial efficiency."  *Id.*

1.  Both Firms have dozens of state-filed cases and unfiled matters that were never filed in, removed to, or transferred to the MDL.  *See* Potts Decl. ¶¶ 6, 8-9; BCH Mem. 1.  Nor did the state courts presiding over those state-filed cases adopt or enter the Joint Coordination Order.  Potts Decl. ¶ 7; BCH Mem. 1, 4.  And the Firms' clients asserting claims outside of the MDL did not sign or agree to the Participation Agreement.  Potts Decl. ¶¶ 6, 9; BCH Mem. 1, 4.  Finally, unlike L&E, neither BCH nor Potts has settled their non-MDL cases in a manner that calls upon this Court to do anything, such as approve a trust or appoint a Special Master.  *See* Potts Decl. ¶ 10; ECF No. 7507 ("Joint Reply"), at 2-3.

   It is undisputed that BCH and Potts both accessed Common Benefit Work Product.  Potts also asked Lead Counsel for, and Lead Counsel provided, "[i]mpeachment information on common [New GM] experts, including previous depositions," in order to prepare for expert depositions in *Mullin v. General Motors LLC*, a case pending in California state court.  Joint Reply 11.  The Firms did not file any Common Benefit Work Product in any state-filed case at issue here, but, in a separate case, BCH once filed an expert report taken nearly verbatim from the same expert's report in the MDL.  *See* Opp'n 7-8.  BCH nonetheless asserted that it "did not use common benefit work product" in that case.  *See* ECF No. 7440-3 ("Ex. B"), at 4.  Only after Lead Counsel identified the issue, and BCH and Lead Counsel had "earnest discussions," did BCH agree that an assessment should be paid in that case.  Joint Reply 9-10; *see* Ex. B at 2-3.  BCH also accessed MDL discovery materials at various times, and New GM sent various plaintiffs' counsel, including BCH, notice of certain MDL depositions, deposition transcripts, and deposition summaries.  *See* Opp'n 8; Joint Reply 10 & n.7.

   Both BCH and Potts entered into global settlements with New GM that resolved, in one fell swoop, claims asserted by their clients both within the MDL and elsewhere.  On June 23,

2017, Potts and New GM informed the Court that they had reached a global settlement in which hundreds of both MDL plaintiffs and others among Potts's clients were eligible to participate. *See* ECF No. 4132, at 1 (noting that "203 plaintiffs with claims pending" in the MDL were eligible to participate in the aggregate settlement agreement, which "potentially resolves hundreds of state court claims as well"). On March 5, 2018, BCH and New GM announced a global settlement that resolved all of the claims asserted by BCH clients relating to personal injury and wrongful death claims arising after the bankruptcy of Old GM, "the vast majority of which" were pressed in this MDL. *See* ECF No. 5174, at 1. On December 17, 2018, BCH and New GM announced that they had also settled one hundred such claims arising before the bankruptcy — only sixty-two of which were asserted here. *See* ECF No. 6359, at 1. And on June 25, 2019, Potts and New GM informed the Court of another settlement agreement, in which nearly 130 plaintiffs, including twenty not in this MDL, were eligible to participate. *See* ECF No. 6903, at 1.

On November 6, 2019, BCH moved for a declaratory judgment clarifying that settlements and judgments resolving its clients' claims asserted in state court (all of which were filed in Missouri) and outside of court are not subject to assessment. *See* ECF No. 7368. On November 14, 2019, Potts filed a similar motion with respect to all of its state-filed cases and unfiled matters. *See* ECF No. 7398.

## DISCUSSION

Two significant matters are not in dispute here. First, no one questions that the Court had authority to establish the Common Benefit Fund in the first place. Indeed, it is well established that, in complex aggregate litigation, "attorneys designated with responsibilities for actions beyond those in which they are retained may be compensated for their work not only by their

own clients, but also by those other parties on whose behalf the work is performed and on whom a benefit has been conferred." *In re Worldcom, Inc. Sec. Litig.*, No. 02-CV-3288 (DLC), 2004 WL 2549682, at *2 (S.D.N.Y. Nov. 10, 2004); *see Victor v. Argent Classic Convertible Arbitrage Fund L.P.*, 623 F.3d 82, 86 (2d Cir. 2010); *In re Zyprexa Prods. Liab. Litig.*, 594 F.3d 113, 128-30 (2d Cir. 2010) (Kaplan, J., concurring). The authority to require such compensation derives from the common-benefit doctrine, which "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The creation of a fund under judicial supervision "allows a court to prevent this inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit." *Id.* Second, all agree that Lead Counsel (and the others who performed Common Benefit Work) "performed a remarkable amount of work on behalf of plaintiffs in the Common Benefit Actions" for which they deserve to be compensated. Joint Reply 1 (quoting *In re Gen. Motors*, 2019 WL 5865112, at *2).

The sole dispute is whether the Firms are required to pay assessments — that is, make contributions to the Common Benefit Fund — with respect to the settlements of cases that they litigated in state court and the settlements of claims never filed in any court. The Firms argue that Order No. 42 does not require assessments with respect to such settlements. *See* BCH Mem. 3-5; Potts Mem. 2-6. And to the extent that Order No. 42 does require assessments with respect to such settlements, they contend that the Order exceeds the Court's authority. *See* BCH Mem. 5-9; Potts Mem. 6-9.[2] The Court will address each argument in turn.

---

[2]     In its opening brief, BCH offered a third argument: that imposing assessments for the settlements of its state-court and unfiled claims violates the Texas Disciplinary Rules of Professional Conduct. *See* BCH Mem. 9-10. BCH does not press the point in its reply, however,

### A.  Application of Order No. 42 to the Settled Claims

The Firms' first argument is that Order No. 42 does not require an assessment with respect to their state cases and unfiled claims.  As a general matter, the Court agrees as to their state cases.  For starters, Paragraph 16 of Order No. 42 recognizes that an action or matter is not a "Common Benefit Action" merely because the claims at issue are related and plaintiff's counsel has also appeared in this MDL, as it expressly contemplates that counsel may "represent plaintiffs in both Common Benefit Actions and actions or matters that do not qualify as Common Benefit Actions."  Order No. 42, ¶ 16.  And Paragraphs 11 and 12 draw a distinction between Related Actions in which the plaintiffs and their counsel sign the Participation Agreement (or are deemed by a presiding court to have signed it) and those in which they do not.  Under Paragraph 11, the former qualify as Common Benefit Actions; under Paragraph 12, the latter do not.  It follows that the Firms' cases filed in state court are not Related Actions because the plaintiffs in those cases did not sign the Participation Agreement (and the courts presiding over those cases

_____

and thus it is deemed abandoned.  *See, e.g.*, *AIG Glob. Sec. Lending Corp. v. Banc of Am. Sec. LLC*, 646 F. Supp. 2d 385, 411 (S.D.N.Y. 2009) ("The defendant appears to abandon this argument by failing to defend the argument in its reply memorandum."); *Fu Da Int'l Ltd. v. Kohl's Dep't Stores, Inc.*, No. 08-CV-5164 (HB), 2009 WL 151727, at *3 (S.D.N.Y. Jan. 21, 2009) (noting that "in its reply, [the defendant] appear[ed] to abandon" certain arguments, as its "reply focuse[d] solely on" other arguments).  On top of that, the argument is without merit.  The Texas Disciplinary Rules of Professional Conduct are obviously not binding on this Court.  *See Hoover Slovaceck LLP v. Walton*, 206 S.W.3d 557, 561 n.6 (Tex. 2006) (noting that the rules are merely "persuasive authority outside the context of disciplinary proceedings"); Tex. Disciplinary R. Prof'l Conduct, pmbl. ¶ 15 ("[N]othing in the rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such a duty.").  Moreover, to the extent that "BCH's Missouri state-court clients . . . never consented in writing" to a fee-sharing arrangement between BCH and Lead Counsel, BCH Mem. 10, the failure to obtain such approval is BCH's problem, not the Court's.  Finally, given the value of the Common Benefit Work Product and the fact that BCH conducted "minimal substantive legal work" relating entirely to a "procedural fight," *id.* at 9, it is far from clear that the division of fees resulting from assessments would be out of "proportion [with] the professional services performed by each lawyer."  Tex. Disciplinary R. Prof'l Conduct 1.4(f)(1)(i).

did not deem the plaintiffs to have signed it).  As long as Common Benefit Work Product was not used in those cases, therefore, Order No. 42 does not call for an assessment with respect to them.  *See id.* ("If Common Benefit Work Product is used in non-Common Benefit claims or actions, they shall be subject to the assessment . . . .").

Conversely, the plain terms of Order No. 42 do require an assessment with respect to the settlements of the Firms' unfiled claims.  Indeed, Paragraph 11 of the Order explicitly defines "Common Benefit Actions" to include "all unfiled and tolled actions of clients of Participating Counsel that would be Related Actions if filed."  *Id.* ¶ 11.  The Firms cannot — and do not — dispute that they are "Participating Counsel," as they "represent[] plaintiffs in Common Benefit Actions" (i.e., their clients with cases filed in the MDL).  *Id.* ¶ 15.  And the unfiled claims would plainly "be Related Actions if filed" because, as all agree, they "involve the same subject matter" as the claims asserted in the MDL (i.e., personal injury and wrongful death claims relating to the ignition switch defect).  *Id.* ¶¶ 1, 11; *see also* Order No. 15, at 1.  It follows that they are "Common Benefit Actions" as defined by Paragraph 11 of Order No. 42, and therefore that they are subject to assessment.  *See* Order No. 42, ¶¶ 4, 11, 32.  Notably, even though Lead Counsel argues for an assessment on the unfiled claims for precisely the foregoing reasons, *see* Opp'n 13-14, the Firms do not even address the argument or these provisions of Order No. 42, *see* Potts Mem. 3-6 (failing to mention the relevant provision in Paragraph 11); BCH Mem. 3-5 (same); Joint Reply (same).

Notably, there are good reasons in applying the common-benefit doctrine to distinguish cases filed in state court from claims not filed in any court.  If a case is pending in state court,

*that* court can solve the free-rider problem by imposing an assessment on any recovery.[3]  And regardless of whether a federal court would have authority to do so as well — an issue upon which the Court need not, and does not, opine — "[p]rinciples of comity and respect for the state courts' supervision of their own dockets and the attorneys before them" will often counsel against doing so.  *In re Zyprexa Prods. Liab. Litig.*, 467 F. Supp. 2d 256, 268 (E.D.N.Y. 2006) (Weinstein, J.); *see also In re Showa Denko K.K. L-Tryptophan Prods. Liab. Litig.-II*, 953 F.2d 162, 166 (4th Cir. 1992) (observing that imposing assessments on cases in state court "has the very real potential of interfering with discovery proceedings in state court, raising questions of conflict with the policy of comity between federal and state courts underlying *Younger v. Harris*, 401 U.S. 37, 43-44 (1971)").[4]  By contrast, there are no such sensitivities with respect to unfiled claims.  And, by definition, there is no other court in a position to (or likely to) solve the free-rider problem with respect to such claims.  Moreover, taxing the unfiled claims of Participating Counsel preempts an extreme version of the free-rider problem: the lawyer who files only one case in the MDL to gain access to common benefit work and then leverages the knowledge gained from that work to settle dozens or hundreds of unfiled claims.

---

[3]      Of course, that is likely true only if the issue is brought to the state court's attention, which neither the plaintiff's lawyer (who may well be seeking to free-ride on the common benefit work) nor the defendant has an incentive to do.  Presumably, the lawyers doing common benefit work — here, Lead Counsel — could take steps to raise the issue in state court.  Alternatively, a federal court could perhaps require the defendant — over whom it has jurisdiction — to do so.

[4]      Imposing an assessment on the recovery in a state-court case could do more than intrude on the state court's supervision of its own docket.  Where the recovery is pursuant to a judgment entered in state court, it could subject the defendant to conflicting orders: the state-court judgment requiring payment of damages in full and the federal-court order mandating a hold-back of a portion of the damages for the common-benefit fund.  Federal courts should hesitate before creating that sort of conflict with their state counterparts.

The Firms' counterarguments are unpersuasive.  To the extent that they look to the language of Order No. 42 at all, they rest on the fact that Paragraph 16 expressly contemplates that Participating Counsel can have both "Common Benefit Actions and actions or matters that do not qualify as Common Benefit Actions."  Order No. 42, ¶ 16; *see* BCH Mem. 4; Potts Mem. 4-5.  But their point loses its force in light of the Court's conclusion that cases filed in state court are (absent other conditions being met) "actions or matters that do not qualify as Common Benefit Actions."  That is, it does not follow that unfiled claims must *also* fall within that category.  Separately, Potts suggests that where a lawyer has hundreds of unfiled claims, it would be absurd to tax all of them merely because she has "a single case in the MDL."  Potts Mem. 4-5. But that argument is rooted in policy and first principles, not in the language of Order No. 42. And in any event, it is not absurd.  Potts's hypothetical is, in fact, the extreme version of the free-rider problem, and there would be good reason to impose assessments to prevent it.[5]  Finally, the Firms contend that assessments should not be imposed on their unfiled claims because their "clients deserved to know, certainly while settlements were being negotiated, whether their cases were assessable."  Joint Reply 7.  The Court certainly agrees with the premise, *see In re Gen. Motors*, 2019 WL 5865112, at *5 (noting that "counsel and parties negotiating settlements should understand whether those settlements will be subjected to a common benefit fund

---

[5]     The extreme version of the free-rider problem assumes a lawyer proceeding in bad faith. But even in the absence of bad faith, there is a strong argument for taxing the unfiled claims of a lawyer who gains access to common benefit work product by filing a single claim in the MDL. After all, it is difficult to determine whether an attorney has used common benefit work product, and access to common benefit work product may benefit a lawyer (and, by extension, her clients) even if it is never put to concrete use, let alone filed, in another action.  *See In re Gen. Motors*, 2019 WL 5865112, at *4 ("Even plaintiffs and claimants who have not used or accessed Common Benefit Work Product benefit from it."); *see also In re Diet Drugs (Phentermine/ Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*, 582 F.3d 524, 548 (3d Cir. 2009) ("The mere availability of the discovery . . . substantially influence[s] [the defendant's] evaluation of *every* plaintiff's case." (internal quotation marks and brackets omitted)).

assessment under Order No. 42"), but the Firms' conclusion does not follow from it.  If the Firms' clients did not know that their prospective settlements would be assessable, that is on the Firms — not the Court.  As discussed above, the language of Order No. 42 is clear.[6]

    That does not resolve how Order No. 42 applies to the Firms' state-court and unfiled claims, however, because Lead Counsel separately argues that the state-filed cases at issue here are subject to assessment pursuant to Paragraph 16 of Order No. 42, which provides that "[i]f Common Benefit Work Product is used in non-Common Benefit claims or actions, they shall be subject to the assessment."  Order No. 42, ¶ 16; *see* Opp'n 14-16.  That argument requires the Court to decide what constitutes "use" within the meaning of Paragraph 16.  The ordinary meaning of the word "use" (which is not defined in Order No. 42) is "to put into action or service; avail oneself of*."*  MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1301 (10th ed. 1997); *see also Use*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "use" as "[t]o employ for the accomplishment of a purpose; to avail oneself of")*.  In the context of Paragraph 16, that demands some active engagement with Common Benefit Work Product.  Thus, it does not suffice to argue, as Lead Counsel does, that the Firms *benefited* from Common Benefit Work Product or that they saw it and could not thereafter "unsee" it.  *See* Opp'n 14-16.  (Indeed, if merely seeing or benefitting from Common Benefit Work Product constituted "use," Paragraph 16 would be rendered meaningless — because *all* cases brought by Participating Counsel would be subject to assessment.)  Nor, in the Court's view, is it enough to show that "wide-spanning general liability theories" crafted by Lead Counsel "permeate the Firms' [state-court] dockets."

---

[6]    In any event, given the small size of the assessment (three percent of any recovery) relative to the "typical contingent fee percentage for plaintiffs' attorneys [i.e.,] thirty-three to forty percent," it is "highly unlikely" that the assessment would exceed the fees owed by the Firms' client in any given case.  Jack Downing, Note, *A Blatant Inequity: Contributions to the Common Benefit Fund in Multidistrict Litigation*, 81 MO. L. REV. 831, 846 (2016).

Opp'n 15.  Although that comes closer to "use," pointing to general similarities between the liability theories, without more, is too abstract.

In light of these principles, the Court concludes that Lead Counsel fails to show that BCH "used" Common Benefit Work Product in any of the state-filed cases at issue here.  Although the evidence demonstrates that BCH accessed Common Benefit Work Product, *see* Opp'n 8, there is no evidence that such access was related to any state-filed case, as opposed to the cases filed by BCH in the MDL.  Lead Counsel argues that certain MDL depositions were "cross-noticed" in *Reeves v. General Motors, LLC*, a case filed by BCH in Missouri state court.  *See* Opp'n 8-9.  But the evidence suggests only that notice of the depositions and transcripts and summaries were *sent* to BCH.  Lead Counsel points to no evidence that BCH itself asked for those materials, attended depositions, or reviewed the transcripts or summaries in connection with its litigation of *Reeves*.  Nor is there evidence that the depositions were deemed part of the discovery in that case.  *See* Opp'n, Exs. G, H, J, K, L, M; *see also* ECF No. 7507-6 (collection of deposition notices).  Were the Court to impose an assessment on the strength of this evidence alone, Lead Counsel could effectively impose assessments unilaterally.  All that Lead Counsel would have to do is send deposition transcripts to Participating Counsel whose clients assert claims in state court.  That result is inconsistent with the letter and spirit of Order No. 42.[7]

---

[7]     In *Shumate v. General Motors LLC*, a Missouri state-court case not at issue here, BCH claimed that it had not used Common Benefit Work Product, but Lead Counsel's own investigation revealed that it had.  Specifically, BCH filed a general liability expert report that was nearly identical to the same expert's report in the MDL, which relied, in turn, on MDL depositions and documents produced in the course of the MDL.  *See* Ex. B at 4; Opp'n 7; Joint Reply 9-10 (not disputing Lead Counsel's representation).  Despite that, BCH initially resisted paying the assessment.  *See* Ex. B at 4; Opp'n 7; Joint Reply 9-10.  That episode certainly undermines BCH's credibility, but it does not alter the Court's conclusion that, on this record, Lead Counsel fails to show that BCH actually "used" Common Benefit Work Product in any of the state-filed cases at issue here.

By contrast, there is conclusive evidence that Potts used Common Benefit Work Product in at least one of the state-filed cases at issue here.  In March 2017, Potts sent Lead Counsel several e-mails requesting certain New GM experts' MDL deposition testimony in advance of depositions in *Mullin v. General Motors LLC*, a consolidated case brought by Potts in California state court.  *See* Opp'n, Exs. N, O; Joint Reply 11.  Potts concedes that "[t]hese materials were provided for impeachment of expert depositions," but tries to minimize the implications of that concession by asserting that "[i]mpeachment information on common defense experts, including previous depositions or trial testimony, is routinely shared among plaintiffs' firms against common joint defendants."  Joint Reply 11.  That may be so, but Order No. 42 requires assessments on cases in which Participating Counsel uses Common Benefit Work Product, and there is no carve-out for materials that are "routinely shared."  In the alternative, Potts argues that using Common Benefit Work Product "to prepare for impeachment" of an expert witness is "*de minimis*."  *Id.* at 12.  But even if Potts were correct that its usage of the Common Benefit Work Product was *de minimis* — the Court has its doubts — Paragraph 16 turns on *any* "use[]," however minor.  It is difficult enough for Lead Counsel to police whether Participating Counsel privately used Common Benefit Work Product in non-Common Benefit claims or actions.  Order No. 42 does not impose on Lead Counsel the additional burden of measuring the extent to which such material was used.

Potts protests that imposing assessments on the cases consolidated in *Mullin* would "unjustly enrich" Lead Counsel.  *Id.*  As the Court has explained repeatedly, however, the work performed by Lead Counsel has undoubtedly been of tremendous value to those who asserted related claims against New GM, regardless of forum.  *See In re Gen. Motors*, 2019 WL 5865112, at *2 (describing work performed by Lead Counsel); *id.* at *4 ("Even plaintiffs and claimants

who have not used or accessed Common Benefit Work Product benefit from it.  At a minimum, it is indisputable that New GM's and [Participating Counsel's] experience litigating claims in the MDL enables more efficient valuation of claims outside the MDL.  [Participating Counsel's] clients certainly benefit[] from such efficiencies."  (citation omitted)); *see also* Opp'n 3-5 (describing Common Benefit Work that redounded to the benefit of claimants in all fora).  Indeed, "[t]he benefit created by common labor and compensated by joint assessments is sometimes intangible and difficult to quantify in individual cases."  *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657, 2012 WL 1448135, at *4 (E.D. La. Apr. 25, 2012).  For these reasons, neither common benefit orders in general nor Order No. 42 in particular requires a "case-by-case review for whether any particular claimant has actually benefitted from common benefit work."  *Id.*  In any event, whether Lead Counsel would be "unjustly enrich[ed]" has no bearing on whether an assessment is required by Order No. 42.

In sum, by its terms, Order No. 42 requires assessments on the settlements of the Firms' unfiled claims and the settlements in *Mullin v. General Motors LLC*.  On the present record, Lead Counsel fails to show that the settlements of the other cases at issue are subject to assessment under Order No. 42.  But the Court is not inclined to leave it there.  As discussed above, at various points, both BCH and Potts have asserted that they did not use Common Benefit Work Product in their state-filed cases and unfiled matters, and Lead Counsel has, through its own investigation, discovered otherwise.  Perhaps that was due to a misunderstanding of Order No. 42 — even though, as discussed above, the terms of the Order are fairly clear (and even though, when confronted by Lead Counsel, the Firms' initial reaction was to resist paying assessments).  Or perhaps it was due to something less excusable.  Either way, the Court concludes that the Firms should be required to take additional, affirmative steps to confirm that

they did not use Common Benefit Work Product within the meaning of Paragraph 16 in any of their other state-court cases.  Specifically, **no later than thirty days after the date of this Opinion and Order**, each Firm shall file a sworn affidavit identifying the related state-court cases still in dispute and, with respect to each, either confirming that it did not use Common Benefit Work Product or conceding that it did.[8]  The Court cautions the Firms: If either one represents in its affidavit that it did not use Common Benefit Work Product in a particular case and, at some later date, the Court finds otherwise, the Court will not only impose the assessment as to that case, but will also impose appropriate sanctions.

## B.  The Court's Authority to Impose Assessments

That does not end the matter because the Firms independently argue that the Court lacks jurisdiction to impose an assessment on unfiled cases.  BCH Mem. 5-9; Potts Mem. 6-9.  To be clear, the Firms do not appear to dispute that, if they actually used Common Benefit Work Product in a state-court or unfiled case, the Court has authority to subject any recovery in the latter to an assessment.  That is for good reason, as the courts that have addressed the issue appear to be unanimous in upholding assessments in such circumstances.  *See, e.g.*, *In re Prempro Prods. Liab. Litig.*, No. 4:03-CV-1507 (BRW), 2014 WL 12758478, at *2 (E.D. Ark. Nov. 25, 2014) ("[I]n cases where lawyers used . . . common benefit work and obtained a . . . recovery in any state or federal forum, the recovery was subject to an assessment."  (internal

---

[8]      In its affidavit, Potts should address one case in particular.  Lead Counsel alleges that, on December 16, 2016, Potts informed Lead Counsel that it had reviewed the MDL deposition of a General Motors employee and concluded that it would not need to depose her because the MDL deposition was sufficient.  *See* Opp'n 10; *id.*, Ex. Q.  If true, then Potts "used" that witness's MDL deposition; at a minimum, it forwent deposing a witness (and undertaking related expenses) because of the work performed in the MDL.  Potts, however, does not address the point, and neither Potts nor Lead Counsel identifies the case.  If it is a state-court case other than *Mullin*, then that case is also subject to assessment under Order No. 42.

quotation marks and brackets omitted)); *In re Fosamax Prods. Liab. Litig.*, No. 06-MD-1789

(JFK), ECF No. 1012, at 6-7 (S.D.N.Y. Apr. 28, 2011) (providing that "any plaintiff's counsel

with cases not in the MDL who utilizes any aspect of the MDL common benefit work product

. . . shall be subject to" an assessment, part of which was to be "subtracted from the client

portion" of recoveries); *In re Phenylpropanolamine Prods. Liab. Litig.*, MDL No. 1407 (BJR),

2009 U.S. Dist. LEXIS 126729, at *3 (W.D. Wa. Sept. 18, 2009) (noting that, "for state cases in

which counsel wished to avail themselves of common benefit product, there was a three percent

holdback").  Instead, the Firms argue that the Court lacks jurisdiction to mandate that New GM

hold back funds from settlements with the Firms' clients who never filed a lawsuit and did not

use the Common Benefit Work Product within the meaning of Paragraph 16 of Order No. 42.

*See* Joint Reply 6-7 (distinguishing cases in which counsel used MDL work product).  Neither

the Supreme Court nor the Second Circuit has addressed the authority of a federal court to

impose assessments on unfiled claims, and other courts are divided on the question.  *See*

Downing, *supra*, at 836-49.

     *In re Genetically Modified Rice Litigation.*, 764 F.3d 864 (8th Cir. 2014), is the leading

case on the Firms' side of the ledger.[9]  In that case, the district court "reluctantly" concluded that

it lacked jurisdiction to require the defendants "to hold back and contribute a portion of any

settlements or judgments" in state-court cases.  *In re Genetically Modified Rice Litig.*, No. 4:06-

MD-1811 (CDP), 2010 WL 716190, at *4-5 (E.D. Mo. Feb. 24, 2010), *aff'd* 764 F.3d 864.  On

appeal, the Eighth Circuit affirmed.  "Although district courts have discretion in orchestrating

and conducting multi-district litigation," the court reasoned, "[t]he authority for consolidating

---

[9]    Strictly speaking, *Genetically Modified Rice* addressed only the question of assessments on state-court cases, not on unfiled claims, but its reasoning applies equally to the latter.

cases on the order of the judicial panel on multi-district litigation . . . is merely procedural and does not expand the jurisdiction of the district court to which the cases are transferred.'"  764 F.3d at 873 (quoting *Showa Denko*, 953 F.2d at 165).  "Thus," the Court continued, "the district court does not have the power to order parties in cases not before it to contribute to the Fund." *Id.* at 874 (citing *Showa Denko*, 953 F.2d at 166; *Hartland v. Alaska Airlines*, 544 F.2d 992, 1001 (9th Cir. 1976)).  The Eighth Circuit acknowledged the lead plaintiffs' counsel's argument "that the assessments need not be levied on the state-court plaintiffs themselves, but rather may be withheld by [the defendant] (a party before the district court) or paid by the plaintiffs' counsel (some of whom represent clients in the MDL)."  *Id.*  But the Court declared the distinction immaterial: "[S]tate-court cases, related or not, are not before the district court.  The state-court plaintiffs at issue neither agreed to be part of the federal MDL nor participated in the MDL Settlement Agreement.  Even if the state plaintiffs' *attorneys* participated in the MDL, the district court overseeing the MDL does not have authority over separate disputes between state-court *plaintiffs* and [the defendant]."  *Id.*; *accord In re Syngenta AG MIR 162 Corn Litig.*, No. 14-MD-2591 (JWL), 2015 WL 2165341, at *2-4 (D. Kan. May 8, 2015).

By contrast, in *In re Avandia Marketing, Sales Practices & Products Liability Litigation*, 617 F. App'x 136 (3d Cir. 2015), the Third Circuit upheld the imposition of assessments on recoveries by claimants represented by counsel in the MDL even though they themselves were not in the MDL.[10]  In *Avandia*, a law firm entered into a written "Participation Agreement" with the MDL's plaintiffs' steering committee, pursuant to which it "agreed to pay seven percent of

---

[10]     Like in *Genetically Modified Rice*, the claimants at issue in *Avandia* had filed lawsuits in state courts.  Nevertheless, the Third Circuit's conclusion that the district court had jurisdiction and authority to impose assessments on their recoveries is instructive.  If anything, its reasoning would apply with more force to unfiled claims because, as discussed above, imposing assessments on such claims does not risk intruding on the prerogatives of state courts.

the recovery on its clients' claims arising from the use of Avandia" into a common benefit fund "in exchange for the use of the Steering Committee's litigation work product." *Id.* at 138.  The district court subsequently incorporated the agreement by reference into a common benefit fund order, which mandated an assessment on "all Avandia claims, regardless of whether those claims are subject to the jurisdiction of the MDL, tolled, unfiled, or filed in another jurisdiction if, among other things, the attorney signed on to the Participation Agreement . . . ." *Id.* at 138-39 (internal quotation marks and brackets omitted); *see also id.* at 142-43.  The law firm represented clients before the MDL in only about twenty-five cases but represented clients with Avandia claims "in thousands of cases" pending in California state court. *Id.* at 139.  When the firm reached a global settlement, the firm argued that its state-court cases should not be subject to assessment. *See id.*  The district court disagreed, reasoning both that the firm had "used MDL work product" in its state-court cases and "that the Attorney Participation Agreement covered all claims for which [the firm] served as counsel at the time of resolution." *Id.* at 140.

On appeal, the Third Circuit affirmed.  Notably, it did so not on the ground that the firm had used MDL work product (an argument it did not even address), but on the ground that the firm was bound by the district court's order.  "A district court that supervises a multidistrict litigation," the Court explained, "has — and is expected to exercise — the ability to craft a plaintiffs' leadership organization to assist with case management.  Included in that ability is the power to fashion some way of compensating the attorneys who provide class-wide services." *Id.* at 141 (internal quotation marks and citation omitted).  The district court, the Circuit continued, "permitted the Steering Committee to, essentially, trade work product for a share in the recovery in cases *not* before the MDL." *Id.* at 141.  Because the district court incorporated the Steering Committee's agreement with the firm at issue into its own order, and the breach of an agreement

incorporated into a court order is a violation of the order itself, the district court "had jurisdiction to determine whether [the law firm] breached [its] agreement and, if so, to remedy that breach." *Id.* at 142 (citing *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 381 (1994)).  The Circuit dismissed the idea that, by incorporating the Participation Agreement into its order, the district court had "impermissibly expanded its jurisdiction by unilaterally bringing non-parties before it," explaining that the law firm, "having signed that agreement, cannot contend that it is not a party properly before the District Court."  *Id.* at 142 n.3.  And it rejected the argument that this was "finding subject-matter jurisdiction by agreement of the parties": "The agreement itself is not the source of the District Court's authority.  Rather, the District Court's authority over this dispute arose from its responsibilities to appoint and supervise a coordinating committee of counsel.  The agreement was simply incorporated into an order the District Court was empowered to issue."  *Id.* at 143; *accord In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mex., on April 20, 2010*, MDL No. 2179 (CB), 2011 WL 6817982, at *5-6 (E.D. La. Dec. 28, 2011), *amended by* MDL No. 2179 (CB), 2012 WL 161194 (E.D. La. Jan. 18, 2012); *In re Latex Gloves Prods. Liab. Litig.*, MDL No. 1148 (EVL), 2003 U.S. Dist. LEXIS 18118, at *2-5 & n.2 (E.D. Pa. Sept. 5, 2003).

The question is a confounding and close one, but in the Court's view, the Third Circuit has the better of the argument.  For starters, it seems wrong to say that where, as here, a court's order directs a party or counsel before it to act that the court lacks *subject-matter jurisdiction*. To be sure, a district court's jurisdiction — whether in multidistrict litigation or otherwise — is generally "limited to cases and controversies between persons who are properly parties to the cases [before it], and any attempt without service of process to reach others who are unrelated is beyond the court's power."  *Showa Denko*, 953 F.2d at 165-66.  *But see In re Baldwin–United*

*Corp.*, 770 F.2d 328, 338 (2d Cir. 1985) (noting that a court has "authority" under the All-Writs Act "to enjoin and bind non-parties to an action when needed to preserve the Court's ability to reach or enforce its decision in a case over which it has proper jurisdiction").  That was the problem in *Showa Denko* and *Hartland*: In each case, the district court sought to impose a direct tax on complete strangers to the litigation pending before the court.  *See Showa Denko*, 953 F.2d at 164; *Hartland*, 544 F.2d at 996-97.  But significantly, that was *not* the situation in *Genetically Modified Rice*, where the lead counsel's proposal was to do what this Court did in Order No. 42: require the defendant — that is, a *party in the case or controversy pending before the court* — to hold back a portion of any award to the client of *counsel appearing before the court*.  That may or may not be a proper *exercise* of the court's power, but the issue is not "jurisdictional in the sense of addressing the power of the courts to entertain cases concerned with a certain subject." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 714 (2004).  The Eighth Circuit's conclusion to the contrary is pure *ipse dixit*.

There are other reasons to conclude that the question is not one of jurisdiction — or at least not one of subject-matter jurisdiction.  It is well established, for instance, that "no action of the parties can confer subject-matter jurisdiction upon a federal court," meaning that "the consent of the parties is irrelevant" and "principles of estoppel do not apply."  *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).  Yet courts have held, and the Firms do not dispute, that a federal court has the power to impose an assessment for state-court cases and unfiled claims where counsel consents to it in exchange for access to common benefit work product.  *See, e.g.*, *In re Avandia*, 617 F. App'x at 141-44 (affirming a district court order "permitt[ing] the Steering Committee to, essentially, trade work product for a share in the recovery in cases *not* before the MDL"); *In re Latex Gloves* 2003 U.S. Dist. LEXIS 18118, at *1

(denying counsel's motion for access to MDL work product because counsel had not agreed to pay assessments on all clients' recoveries).  That would be impermissible if the issue were one of subject-matter jurisdiction.[11]  So too, as discussed above, courts have held, and the Firms do not dispute, that where counsel who accessed common benefit work product in a case pending before a federal court proceeds to use it in connection with a state-court case or an unfiled claim, the federal court has authority to impose an assessment.  That is effectively a form of estoppel. Moreover, the plaintiffs or claimants in those state-court and unfiled cases are no more parties "before the court" than are the plaintiffs and claimants in cases where counsel does not use common benefit work product.  *Showa Denko*, 953 F.2d at 166.

In fact, it is commonly accepted that a federal court has the power to regulate the conduct of counsel appearing before it, even where such regulation affects non-parties to the case itself. Take protective orders.  Pursuant to such orders, counsel is usually prohibited, on pain of sanctions, from using or disclosing information or documents publicly or in other litigation.  *See, e.g.*, *Wolters Kluwer Fin. Servs. Inc. v. Scivantage*, No. 07-CV-2352 (HB), 2007 WL 1498114, at *7 (S.D.N.Y. May 23, 2007) (collecting cases in which courts have found protective orders prohibiting use of protected material in other litigation proceedings "to be valid and enforceable, and have indeed imposed sanctions for a party's use of protected documents in other litigation");

---

[11]     In that limited sense, the Court is not entirely persuaded by the Third Circuit's rejection of the argument in *Avandia* that it was "finding subject-matter jurisdiction by agreement of the parties."  617 F. App'x at 143.  The Circuit relied on *Kokkonen*, which held that where a district court has subject-matter jurisdiction over a suit, it may incorporate the parties' agreement settling that suit into its order of dismissal and later exercise ancillary jurisdiction over a claim that the settlement agreement was breached.  *See* 511 U.S. at 381-82.  That is a far cry from saying that a district court can extend its jurisdiction to encompass parties and claims not before the court merely by incorporating into an order an agreement between parties that are properly before the court.  The key point is that the issue is not one of jurisdiction, but rather how far the district court's authority over the parties before the court extends.

*In re Biovail Corp. Sec. Litig.*, 247 F.R.D. 69, 70-71 (S.D.N.Y. 2007) (holding that, by filing a separate action, the defendant violated a protective order prohibiting use of "[d]ocuments, testimony or information obtained through discovery" except for "the prosecution or defense of this Action" (emphasis omitted)); *Poliquin v. Garden Way, Inc.*, 154 F.R.D. 29, 30-33 (D. Me. 1994) (granting motion for sanctions where an attorney provided his co-counsel in a separate case against the defendant with deposition transcripts subject to the protective order).  Such orders affect more than those before the court — most obviously, other clients of counsel privy to the information.[12]  And yet there is no debating courts' authority to issue and enforce such orders.  *See, e.g.*, *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35 (1984) ("[W]e have no question as to the court's jurisdiction to do this under the inherent equitable powers of courts of law over their own process, to prevent abuses, oppression, and injustices." (internal quotation marks omitted)); *Hunt v. Enzo Biochem, Inc.*, 904 F. Supp. 2d 337, 343 (S.D.N.Y. 2012) ("It is well-established that courts have inherent equitable powers to grant confidentiality orders.").

Thus, the relevant question is not one of jurisdiction — or at least subject-matter jurisdiction.  The Court is not exercising jurisdiction over cases or parties not before it; it is exercising jurisdiction over the MDL.  Pursuant to that jurisdiction, the Court has authority to regulate the conduct of the MDL parties and MDL counsel, even where such regulation affects the interests of others.[13]  Instead, the relevant question is whether Order No. 42 is within the

---

[12]    One might argue that counsel's other clients are not affected because the combination of discovery and a protective order covering the documents produced leaves those clients in the same position.  But Order No. 42 does not have a dramatic impact on the status quo either.  Indeed, because the Firms' clients' claims are more valuable as a result of the Common Benefit Work Product to which the Firms have had access, the combination of Common Benefit Work Product and Order No. 42 approximates the status quo.

[13]    Were the assessments imposed in a different manner, the point would be even clearer.  Imagine, for example, that instead of requiring New GM to "hold back" a portion of any settlement outside of the MDL, the Court had required New GM to pay a surtax — i.e., a

scope of the Court's authority.  Admittedly, there is no statute or rule authorizing the Court to

create a common benefit fund.  *Cf.* Fed. R. Civ. P. 23(h) ("In a certified class action, the court

may award reasonable attorney's fees . . . .").  But it is well established that federal courts also

possess certain inherent powers, "governed not by rule or statute but by the control necessarily

vested in courts to manage their own affairs so as to achieve the orderly and expeditious

disposition of cases," *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962), and "to protect

their proceedings and judgments," *Degen v. United States*, 517 U.S. 820, 823 (1996).  "[T]he

outer boundaries of a district court's inherent powers" have never been "precisely delineated,"

but courts have articulated certain limiting principles.  *Dietz v. Bouldin*, 136 S. Ct. 1885, 1891

(2016).  "First, the exercise of an inherent power must be a 'reasonable response to the problems

and needs' confronting the court's fair administration of justice."  *Id.* at 1892 (quoting *Degen*,

517 U.S. at 823-24).  Second, it "cannot be contrary to any express grant of or limitation on the

district court's power contained in a rule or statute."  *Id.*  And finally, federal courts may not

enforce their orders — particularly those regulating conduct outside of the courtroom — against

"the entire universe of potential violators."  *Eli Lilly & Co. v. Gottstein*, 617 F.3d 186, 195 (2d

Cir. 2010) (affirming injunction of a third-party attorney who had aided and abetted a witness's

violation of a protective order from disseminating confidential documents).

---

percentage on top of the settlement amount, with all of the settlement amount going to the
claimant (and her lawyer).  Or imagine that the Court limited assessments to recoveries within
the MDL, but — to combat free-riding — increased the size of the assessment where counsel
represented a larger proportion of clients with related claims outside of the MDL.  Structuring
the assessments in either of these ways might or might not be a reasonable exercise of the
Court's authority.  But in each case, there would be no question that the Court had "jurisdiction"
to act — even though the assessments would be no less related to disputes between New GM and
claimants outside of the MDL than the hold-backs with respect to unfiled claims mandated by
Order No. 42 and even though, as a matter of economic reality, there would be little or no
difference between those approaches and the approach of Order No. 42.  Whether the Court has
"jurisdiction" should not turn on the form the assessments take.

Order No. 42 falls within those limits.  It is beyond dispute that the Court may "establish fee structures designed to compensate committee members for their work on behalf of all plaintiffs involved in consolidated litigation."  *Smiley v. Sincoff*, 958 F.2d 498, 501 (2d Cir. 1992); *see, e.g.*, *In re Air Crash Disaster at Fla. Everglades on December 29, 1972*, 549 F.2d 1006, 1016 (5th Cir. 1977) (holding that "the district court had the power to direct that the [plaintiffs'] Committee and its counsel be compensated and that requiring the payment come from other attorneys was permissible").  Indeed, the Court's "power to assure that [Lead Counsel] receive[s] reasonable compensation for their work" is "[a] necessary corollary to appointment of lead and liaison counsel and appropriate management committees."  *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 644, 653 (E.D. Pa. 2003).  Assessments ensure that Lead Counsel is appropriately "compensated for their work not only by their own clients, but also by those other parties on whose behalf the work is performed and on whom a benefit has been conferred."  *In re Worldcom, Inc. Sec. Litig.*, No. 02-CV-3288 (DLC), 2004 WL 2549682, at *2 (S.D.N.Y. Nov. 10, 2004).  And the expectation of such payments is critical to incentivize counsel to do such work in the first place.  *See Zyprexa Prods. Liab. Litig.*, 594 F.3d at 130 (Kaplan, J., concurring) ("The desirability — indeed, the compelling need — to have pretrial proceedings managed or at least coordinated by lead counsel . . . demands the existence of a source of compensation for their efforts on behalf of all."); *see also* 5 WILLIAM B. RUBENSTEIN ET AL., NEWBERG ON CLASS ACTIONS § 15:113 (5th ed. 2020).  Imposing assessments in such cases is thus "a reasonable response to the problems and needs confronting the court's fair administration of justice."  *Dietz*, 136 S. Ct. at 1892 (internal quotation marks omitted).  And while it may not be authorized by any rule or statute, nor is it "contrary to any express grant of, or limitation on, the district court's power contained in a rule or statute."  *Id.*

For these reasons, "[i]t is well-settled that an MDL court's authority to . . . order contributions to compensate leadership counsel derives from its 'managerial' power over the consolidated litigation, and, to some extent, from its inherent equitable power." *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, MDL No. 09-2047, 2018 WL 2095729, at *6 (E.D. La. May 7, 2018) (internal quotation marks and alteration omitted).  And there are good reasons to conclude that these powers are broad enough to authorize assessments on recoveries arising from the Firms' clients' unfiled claims.  These clients are not "total strangers to the litigation." *Avandia*, 617 F. App'x at 141.  Instead, by virtue of their relationship to counsel and counsel's relationship to the MDL, they belong to a subset of "the entire universe" that benefited directly from the Common Benefit Work Product. *Eli Lilly & Co.*, 617 F.3d at 195.  That is true even if the Firms did not "use" Common Benefit Work Product in asserting their claims.  For one thing, when assessing the settlement value of these claims, New GM knew that the Firms would not need to expend time and money crafting legal theories and investigating facts if they were forced to file a lawsuit.  That work had already been done by Lead Counsel, and the Firms could instantly use it.[14]  Moreover, because the Firms could not "unsee" Common Benefit Work Product, they were be able to take advantage of it even without "using" it *per se*.  Thus, when the Firms negotiated with New GM on behalf of unfiled claimants, they had more leverage due to the work performed by Lead Counsel.  And in any event, without assessments on these sets of recoveries, Participating Counsel would be incentivized to hold the vast majority of their clients' claims back and benefit from Lead Counsel's work without paying the concomitant costs.  In the end, Lead Counsel would be undercompensated, and the incentives to perform work for the

---

[14]     In that sense, the assessments on unfiled claims are akin to an option.  They are the price that MDL counsel has to pay for the right to use Common Benefit Work in connection with a potential future lawsuit — and to have that leverage over New GM in their negotiations.

common benefit in this and future MDLs would be insufficient.  The assessments required by Order No. 42 are therefore a permissible exercise of the Court's inherent authority.

Perhaps unwittingly, BCH itself vividly demonstrates how the Firms' non-MDL clients benefited from Lead Counsel's efforts even without "using" Common Benefit Work Product.  To justify the assertion that it was not "free riding," BCH emphasizes that its state-court cases were settled "in the very early phases of litigation" and that "minimal substantive legal work was required.  The only activity in the litigation involved a procedural fight [regarding personal jurisdiction] that BCH briefed without Lead Counsel's involvement whatsoever . . . ."  BCH Mem. 9 (citation omitted).  Elsewhere, it proudly emphasizes that "[n]o discovery was requested, propounded, or reviewed by BCH for these cases.  Moreover, no depositions were conducted, no experts were retained, and no additional activity occurred in the [Firm's] state-court litigation." *Id.* at 3.  To cite that record as proof that the Firm's non-MDL clients did not benefit from the work of Lead Counsel, however, is naïve in the extreme.  *Cf. Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2575 (2019) (noting that courts are "not required to exhibit a naiveté from which ordinary citizens are free" (internal quotation marks omitted)).  Put simply, BCH was able to settle its cases despite doing "*minimal* substantive legal work," BCH Mem. 9 (emphasis added), precisely because Lead Counsel and others in the MDL did a *massive* amount of substantive legal work on their behalf.  Pejoratives aside, to allow BCH's non-MDL clients to benefit from that work without contribution would be the very definition of a free ride.  *See Free Ride*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("A benefit obtained without paying a fair price or obtained at another's expense without contribution.").

In any event, the assessments on the settlements in the Firms' unfiled cases are permissible for another reason: because, like the law firm in *Avandia*, the Firms entered into an

agreement with Lead Counsel, incorporated by reference into a court order, in which they expressly authorized New GM to hold back a portion of recoveries in their "Common Benefit Actions" in exchange for access to Common Benefit Work Product.  *See* Order No. 42 Ex. A ("Participation Agreement"), ¶¶ 1, 4.  Notably, the Participation Agreement expressly provides that it is made between Lead Counsel and a firm "on behalf of, and with authorization from, the plaintiff clients of the firm . . . who are plaintiffs in a Common Benefit Action as that term is defined" in Order No. 42.  Participation Agreement at 1; *see id.* ¶ 9 ("This Agreement shall apply to each and every client who is a plaintiff in a Common Benefit Action in which Participating Law Firm has a right or claim to a fee recovery . . . ."); *see also* Order No. 42, ¶ 18 (providing that "[t]he Participation Agreement, . . . incorporated herein, is an agreement among (1) the MDL 2543 Leadership and (2) plaintiffs and their counsel in Common Benefit Actions as defined in [Paragraph 11]").[15]  And as noted above, Order No. 42 defines Common Benefit Actions to include "all unfiled . . . actions of clients of Participating Counsel that would be Related Actions if filed."  Order No. 42, ¶ 11.  By its terms, therefore, the Participation Agreement was binding on both the Firms and their clients with unfiled claims.  *See also S.E.C. v. McNulty*, 137 F.3d 732, 739 (2d Cir. 1998) ("Normally, the conduct of an attorney is imputed to his client, for allowing a party to evade 'the consequences of the acts or omissions of []his

---

[15]     In some, but not all, instances, the Participation Agreement appears to limit the universe of a firm's clients who are bound by the agreement to those "listed on Exhibit 1."  *E.g.*, Participation Agreement ¶ 1.  The record is silent with respect to whether the Firms listed any of their non-MDL clients on Exhibit 1.  But the Firms do not dispute that they themselves are bound by the Agreement (if not by signature, then by their course of conduct and implicit consent), and they do not press — and thus have waived — any argument that their failure to list a client on Exhibit 1 to the Agreement means that a recovery by that client is not subject to assessment. Among other things, the Participation Agreement required the Firms to provide "a full and complete list" of their clients in a Common Benefit Action and to keep that list up-to-date.  *Id.* ¶¶ 6-7; *see id.* ¶ 9 ("Participating Law Firm affirms that all such clients are listed on Exhibit 1 and agrees to supplement Exhibit 1 for any such new clients.").

freely selected agent' 'would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent.'" (quoting *Link*, 370 U.S. at 633-34).  And, like the district court in *Avandia*, the Court has jurisdiction and authority "to adjudicate whether [the Firms have] breached the Attorney Participation Agreement and thereby violated" Order No. 42.  617 F. App'x at 143-44 (footnote omitted).[16]

In short, although the Firms' arguments are not without some force, the Court concludes that it had both jurisdiction and authority to mandate assessments on the settlements of their unfiled claims.  It follows that the Court may, and will, enforce Order No. 42 as written.

## CONCLUSION

For the foregoing reasons, the Firms' motions are GRANTED in part and DENIED in part.  In particular, the Court concludes that Order No. 42 applies to the Firms' clients' related unfiled claims and to state-court cases in which the Firms used Common Benefit Work Product, but it does not apply to state-court cases in which the Firms did not use Common Benefit Work Product.  Further, the Court concludes that Order No. 42 is a permissible exercise of its inherent authority over this litigation and the parties and counsel appearing before it.

---

[16]     In any event, as noted above, *see supra* note 6, it is "highly unlikely" that the three-percent assessment on any recovery in the Firms' unfiled cases will exceed the attorney's fees owed by the client.  Downing, *supra*, at 846.  Arguably, therefore, Order No. 42 does "not affect parties not before the MDL court" at all.  *Id.*  To the extent that the assessment would exceed the fees owed, of course, the Court could cure any jurisdictional or legal problem with Order No. 42 by capping the assessment at the level of the Firms' fee.  *Cf. Syngenta*, 2015 WL 2165341, at *3 (holding that the court would lack jurisdiction to impose assessments in cases not before the court, even if they were imposed "on attorneys and not their clients," in part because "the assessment only of the attorney's share . . . could exceed the attorney's own fees paid by his client").  But no one has made that suggestion here.  Moreover, whether the Firms would have to cover the assessments themselves is "a question governed by the representation agreement[s] between [the Firms] and [their] clients."  *Avandia*, 617 F. App'x at 143 n.5.

Additionally, the Firms are ORDERED to review their files relating to each of their related state-court matters, including those not at issue here, to determine whether they used Common Benefit Work Product within the meaning of Order No. 42.  No later than **three weeks from the date of this Opinion and Order**, each Firm must file an affidavit that (1) identifies its related state-court cases and (2) with respect to each, either confirms that the Firm did not use Common Benefit Work Product or concedes that it did.  If the Court later concludes that a Firm incorrectly represented in its affidavit that it did not use Common Benefit Work Product, the Court will impose the assessment, plus appropriate sanctions.

Finally, pursuant to Order No. 77, if Lead Counsel, the Firms, or New GM believe that sealed or redacted materials related to this motion should remain sealed or redacted, they shall file a letter brief regarding the propriety of doing so no later than **one week from the date of this Opinion and Order**.  *See* ECF No. 1349, at 4.

The Clerk of Court is directed to terminate ECF Nos. 7368 and 7398.

SO ORDERED.

Dated: August 7, 2020
     New York, New York

                                       JESSE M. FURMAN
                                 United States District Judge