# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE:<br><br>GENERAL MOTORS LLC IGNITION SWITCH LITIGATION | No. 14-MD-2543 (JMF)<br>No. 14-MC-2543 (JMF) |
| This Document Relates to:<br><br>*ALL ACTIONS* | |

**DESIGNATED BANKRUPTCY COUNSEL/PARTICIPATING COUNSEL GOODWIN PROCTER LLP'S:  (1) RESPONSE TO OPPOSITION OF PLAINTIFFS/INTERIM CLASS COUNSEL AND DEFENDANT GENERAL MOTORS LLC TO GOODWIN'S LIMITED OBJECTION TO SETTLEMENT AGREEMENT; (2) LIMITED OBJECTION TO JOINT MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT; (3) LIMITED OBJECTION TO PROPOSED ORDER RE PAYMENT OF ATTORNEYS' FEES AND EXPENSES, <u>AND PROPOSED FINAL JUDGMENT; AND (4) RESERVATION OF RIGHTS</u>**

## TABLE OF CONTENTS

**Page**

I.      BACKGROUND ................................................................................................................. 2

II.     RESPONSE AND OBJECTION ...................................................................................... 3

III.    OBJECTION ................................................................................................................... 16

IV.     RESERVATION OF RIGHTS ...................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Becker v. Warner Communications, Inc. (In re Warner Communications Securities Litigation)*,
798 F.2d 35 (2d Cir. 1986)................................................................................11

*In re Cendant Corp. Securities Litigation.*,
404 F.3d 173 (3d Cir. 2005).............................................................................15

*Evans v. Jeff D.*,
475 U.S. 717, *reh'g denied*, 476 U.S. 1179 (1986) ....................................12, 13, 14

*Flanagan, Lieberman, Hoffman & Swaim v. Ohio Public Employees Retirement System*,
814 F.3d 652 (2d Cir. 2016).............................................................................15

*Gerber v. MTC Elec. Techs. Co.*,
329 F.3d 297 (2d Cir. 2003).............................................................................14

*Madison Square Garden Boxing, Inc. v. Shavers*,
562 F.2d 141 (2d Cir. 1977).............................................................................14

*Montesa v. Schwartz*,
836 F.3d 176 (2d Cir. 2016)...............................................................................4

*In re PNC Fin. Servs. Grp., Inc.*,
440 F. Supp. 2d 421 (W.D. Pa. 2006)..............................................................14

*Victor v. Argent Classic Convertible Arbitrage Fund L.P.*,
623 F.3d 82 (2d Cir. 2010)...............................................................................15

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
914 F.3d 623 (9th Cir.), *cert. denied*, 140 S. Ct. 305 (2019)...............................4, 5

*Zupnick v. Fogel*,
989 F.2d 93 (2d Cir. 1993)..................................................................................5

**Rules and Statutes**

Civil Rights Attorneys' Fees Awards Act of 1976 ..........................................12, 13, 14

Fed. R. Civ. P. 23(h) .........................................................................5, 8, 12, 14

Goodwin Procter LLP ("**Goodwin**") hereby responds to the *Notice of Joint Motion and Joint Motion for Final Approval of the Class Settlement and Plan of Allocation, and Certification of the Settlement Class*, filed as Doc. No. 8240 in Case No. 14-MD-2543 (MDL) and Doc. No. 409 in Case No. 14-MC-2543 (JMF) (the "**Joint Motion for Final Approval of Settlement**"), *Plaintiffs' Memorandum in Support of the Parties' Joint Motion for Final Approval of the Proposed Class Settlement and the Plan of Allocation, and Certification of the Settlement Class*, filed as Doc. No. 8241 in Case No. 14-MD-2543 (JMF) and Doc. No. 410 in Case No. 14-MC-2543 (JMF) (the "**EL Memorandum of Law**"), and *Defendant General Motors LLC's Memorandum in Support of Joint Motion for Final Approval of Class Settlement and Certification of Class for Purposes of Settlement*, filed as Doc. No. 8245 in Case No. 14-MD-2543 (JMF) and Doc. No. 417 in Case No. 14-MC-2543 (JMF) (the "**New GM Memorandum of Law**"), reasserts its limited objection to the Settlement Agreement, including the *[Proposed] Order Approving Class Counsel's Rule 23(H) Motion for Approval of Award of Attorneys' Fees and Expenses and Service Awards to Lead Plaintiffs*, filed as Doc. No. 8247 in Case No. 14-MD-2543 (JMF) and Doc. No. 415 in Case No. 14-MC-2543 (JMF) (the "**Proposed Order re Payment of Attorneys' Fees and Expenses**") and the *[Proposed] Final Order and Final Judgment Granting Final Approval of the Economic Loss Class Action Settlement, Confirming Certification of the Economic Loss Settlement Class, and Dismissing All Actions with Prejudice*, filed as Doc. No. 8249 in Case No. 14-MD-2543(JMF) and Doc. No. 416 in Case No. 14-MC-2543 (the "**Proposed Final Judgment**"), and respectfully represents as follows:[1]

---

[1] Unless otherwise defined herein, capitalized terms shall have the meanings assigned to them in Goodwin's Motion for Payment and Memorandum of Law in Support of Motion for Payment (defined below).

## I.     **BACKGROUND**

1.      On April 27, 2020, this Court entered its *Order Granting Preliminary Approval of Class Settlement, Directing Notice Under Rule 23(E), and Granting Related Relief*, as Doc. 7877 in Case No. 14-MD-2543 (JMF) and Doc. No. 392 in Case No. 14-MC-2543 (JMF) (the "**Preliminary Approval Order**").  Thereafter, the Preliminary Approval Order was amended and supplemented by this Court pursuant to *its Order Supplementing Order Granting Preliminary Approval of Class Settlement, Directing Notice Under Rule 23(E), and Granting Related Relief*, entered on May 4, 2020, as Doc. No. 7892 in Case No. 14-MD-2543 (JMF) and Doc. No. 393 in Case No. 12-MC-2543(JMF) (the "**Supplemental Order**").

2.      On September 28, 2020, Goodwin filed its *Designated Bankruptcy Counsel/Participating Counsel Goodwin Procter LLP's Notice of Motion and Motion for Payment of Fees and Reimbursement of Expenses*, as Doc. No. 8156 in Case No. 14-MD-2543 (JMF) and Doc. No. 405 in Case No. 14-MC-2543 (JMF) (the "**Motion for Payment**"), and the accompanying *Designated Bankruptcy Counsel/Participating Counsel Goodwin Procter LLP's Memorandum of Law in Support of Motion for Payment of Fees and Reimbursement of Expenses*, as Doc. No. 8157 in Case No. 14-MD-2543 (JMF) and Doc. No. 406 in Case No. 14-MC-2543 (JMF) (the "**Memorandum of Law in Support of Motion for Payment**"), and *Declaration of William P. Weintraub in Support of Designated Bankruptcy Counsel/Participating Counsel Goodwin Procter LLP's Motion for Payment of Fees and Reimbursement of Expenses*, as Doc. No. 8158 in Case No. 14-MD-2543 (JMF) and Doc .No. 407 in Case No. 14-MC-2543 (JMF) (the "**Weintraub Declaration in Support of Motion for Payment**").

3.      In response to Goodwin's Motion for Payment, on October 12, 2020, the Economic Loss Plaintiffs, by and through interim class counsel, filed the *Economic Loss Plaintiffs' Memorandum in Opposition to Goodwin Procter LLP's Motion for Payment of Fees and*

*Reimbursement of Expenses*, Doc. No. 8202 in Case No. 14-MD-2543 (JMF) (the "**ELP Opposition**").

4.      Thereafter, on October 19, 2020, in response to the ELP Opposition, Goodwin filed its *Designated Bankruptcy Counsel/Participating Counsel Goodwin Procter LLP's (I) Reply to Economic Loss Plaintiffs' Memorandum in Opposition to Goodwin Procter LLP's Motion for Payment of Fees and Reimbursement of Expenses; (II) Limited Objection to Settlement Agreement; and (III) Notice of Intent to Appear at Fairness Hearing*, as Doc. No. 8207 in Case No. 14-MD-2543 (JMF)  and Doc. No. 408 in Case No. 14-MD-2543 (JMF) (the "**Goodwin Reply**").

5.      On November 9, 2020, proposed interim class counsel, acting in coordination with New GM, filed, among other things, the Joint Motion for Final Approval of Settlement, the EL Memorandum of Law, the New GM Memorandum of Law, the Proposed Order re Payment of Attorneys' Fees and Expenses, and the Proposed Final Judgment, seeking, among other relief, final approval of the Settlement Agreement.

6.      In the Joint Motion for Final Approval of Settlement, the movants, at subparagraph (e), purport to challenge Goodwin's standing to object to the Settlement and ask this Court to overrule the limited objection to the Settlement Agreement contained in the Goodwin Reply. Proposed interim class counsel and New GM also attempt to oppose Goodwin's limited objection to the Settlement Agreement in the EL Memorandum of Law and the New GM Memorandum of Law.

## II.      RESPONSE AND OBJECTION

7.      The EL Memorandum of Law states nothing about Goodwin's standing other than to make the unremarkable observation that Goodwin is not a member of any Class (true), and cite to the Settlement Agreement to note that, by its terms, the agreement purports to channel all common benefit claims to the $34.5 Million set aside for the payment of common benefit

attorneys' fees and expenses and bar fee payments from the $121 Million Common Fund that will be established for the payment of Class claims (also true).  However, this latter statement is precisely what grants Goodwin standing to oppose the efforts of the contract parties to affect the rights of a non-contract party such as Goodwin.  By seeking to block Goodwin's independent right to payment, the Settlement Agreement is contrary to applicable law and to this Court's own orders -- in particular Order No. 42.  Not surprisingly, the EL Memorandum of Law cites no case law at all to support the efforts to avoid paying Goodwin for its work or deny Goodwin's standing to object.  The EL Memorandum of Law merely cites to the provisions of the private contract that purport to wall out Goodwin. Regardless of whether this Court overrules Goodwin's objection, Goodwin undeniably has standing to object to the portion of the Settlement Agreement (and the corresponding provisions of the Proposed Order re Payment of Attorneys' Fees and Expenses and the Proposed Final Judgment) that directly affect Goodwin's rights.  Indeed, this is the essence of prudential standing.

8.      As a general matter, there are three well-recognized prudential standing doctrines: (1) the prohibition against litigating generalized grievances, (2) the prohibition against litigating the rights of a third party, and (3) the requirement that the plaintiff's interest falls within the zone of interests that the statute was designed to protect. *See Montesa v. Schwartz*, 836 F.3d 176, 195 (2d Cir. 2016).  Under this construct, there can be no serious argument that Goodwin does not have prudential standing to raise its limited objections to the efforts of the Settling Parties under the Settlement Agreement to use the Proposed Order re Payment of Attorneys' Fee and Expenses and the Proposed Final Judgment to limit Goodwin's rights (as a Participating Counsel and as Designated Bankruptcy Counsel) to payment for its common benefit work in the Bankruptcy Court and related appeals. *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab.*

*Litig.*, 914 F.3d 623, 640-41 (9th Cir.), *cert. denied*, 140 S. Ct. 305 (2019) ("Appellants have the most compelling case for standing because they suffered an injury (deprivation of attorneys' fees) that was caused by the conduct complained of (the Fee Order) and would be redressed by judicial relief.") (citations omitted); *cf. Zupnick v. Fogel*, 989 F.2d 93, 98 (2d Cir. 1993) (although non-settling defendant usually lacks standing to object to a settlement, there is a "recognized exception to this general rule which permits a non-settling defendant to object where it can demonstrate that it will sustain some formal legal prejudice as a result of the settlement.") (citation and internal quotation marks omitted).  Although the fees at issue sought in *Volkswagen* were ultimately denied because it was determined that counsel's work had not benefitted the class, Goodwin strongly believes its work did benefit the Economic Loss Classes in this case and that it is entitled to be heard on that underlying issue rather than being summarily barred from the courthouse.

9.      Moreover, nothing in Federal Rule of Civil Procedure 23(h) limits Goodwin in the manner sought here. Whatever limits are to be imposed on Goodwin, those limits can only be imposed by this Court in a manner that is consistent with relevant case law.  For the contract parties to contend that Goodwin cannot raise this issue now, is to attempt to resolve the issue by private fiat, because after the Proposed Order re Payment of Attorneys' Fees and Expenses and the Proposed Final Judgment are entered by this Court, it will be too late for Goodwin to raise its objections.

10.      In addition, as previously argued by Goodwin in its Motion For Payment, Goodwin's Engagement Letter with all three Co-Leads expressly provides that Goodwin is entitled to be paid from any common fund created from cases asserting Economic Loss Claims or Personal Injury and Wrongful Death Claims:

With respect to Goodwin Procter's role as Designated Counsel for plaintiffs in the Pre-Sale Accident Cases, Lead Counsel hereby agree and confirm as follows:

1. Lead Counsel hereby retain Goodwin Procter to work on behalf of GM ignition switch plaintiffs in the Pre-Sale Accident Cases to research, brief, and argue the "Threshold Issues" identified by Bankruptcy Judge Gerber in connection with the Motion to Enforce, and to handle any appeals with respect thereto. Lead Counsel herby agree that Goodwin Procter's work on the Threshold Issues in connection with the Motion to Enforce is common benefit work for which Goodwin Procter will be entitled to seek **and Lead Counsel shall support payment of Goodwin Procter's attorneys' fees and costs from any common benefit/attorneys' fees fund (the "Common Benefit Fund") created, awarded or made available for payment of common benefit work in, by, or in connection with the MDL proceeding**.

* * *

4. In addition, in recognition of the fact that the issues that will be handled by Goodwin Procter in the Bankruptcy Court in connection with the Pre-Sale Accident Cases are more challenging than the issues that will be handled by other Designated Counsel in the Bankruptcy Court, **Lead Counsel agree and confirm that** (i) payment of Goodwin Procter's fees and reimbursement of its expenses from the Common Benefit Fund will not be dependent upon Goodwin Procter's success on the legal issues that are assigned to it by Lead Counsel and/or are required by the Bankruptcy Court to be addressed by Goodwin Procter as Designated Counsel in connection with the Pre-Sale Accident Cases; and (ii) **Lead Counsel will not oppose payment to Goodwin Procter from the Common Benefit Fund (even if there are no payments allocable to Pre-Sale Accident Cases** and, if requested by Goodwin Procter, will indicate support in the MDL Proceeding for such payment, notwithstanding Goodwin Procter's **lack of success on such issues, so long as the fees and expenses incurred by Goodwin Procter were intended for the common benefit at the time incurred**.

Emphasis added.

11.     The clear import of the Engagement Letter is to protect Goodwin from precisely what the two Co-Leads (qua interim class counsel) are attempting to do with the Joint Motion for Final Approval of the Settlement, the Proposed Final Judgment, and the Proposed Order re Payment of Attorneys' Fees and Expenses.

12.     The three Co-Leads (two of whom are interim class counsel) signed Goodwin's Engagement Letter in October 2014, at least five (5) months <u>before</u> Order No. 42 was entered. Thus, the Engagement Letter was based on the then existing record.  In March of 2016, Order No. 42 put compensation for the holders of common benefit work for the holders of Economic Loss Claims onto a slightly different fee path than common benefit work for the holders of Personal Injury and Wrongful Death Claims.  Although nothing in Order No. 42 prevents Goodwin from being compensated for common benefit work as a Participating Counsel and as Designated Bankruptcy Counsel from either the $34.5 Million attorneys' fees fund or the $121 Million Common Fund to the extent such work benefitted persons with Economic Loss Claims, the point here is that at the time it was engaged in 2014, Goodwin had foreseen a situation where the only source of payment for its work might be from settlements or judgments in cases asserting only Economic Loss Claims.  The downside scenario that Goodwin was guarding against was that Goodwin would fulfill its role and do the work all three Co-Leads asked of it, but there would be little or no recoveries for persons holding Personal Injury and Wrongful Death Claims and no successor liability recoveries for persons injured or killed in crashes occurring before the 363 Sale of Old GM's assets to New GM.  To protect itself, Goodwin required, and all three Co-Leads agreed to the language highlighted above.  That agreement is not so easily discarded. A full copy of Goodwin's Engagement Letter is attached as **<u>Exhibit A</u>** to the *Declaration of William P. Weintraub in Support of Designated Bankruptcy Counsel/Participating Counsel Goodwin Procter*

*LLP's:  (1) Response to Opposition of Plaintiffs/Interim Class Counsel and Defendant General Motors LLC to Goodwin's Limited Objection to Settlement Agreement; (2) Limited Objection to Joint Motion for Final Approval of Settlement Agreement; (3) Limited Objection to Proposed Order re Payment of Attorneys' Fees and Expenses, and Proposed Final Judgment; and (4) Reservation of Rights* (the "**Declaration of William P. Weintraub**"), filed concurrently herewith.

13.     Of equal import, Paragraph 33 of Order No. 42 (which addresses Rule 23(h) fee claims) also provides standing to Goodwin.  Paragraph 33 provides that "….plaintiffs' counsel in any Common Benefit Action who have performed work that benefitted the plaintiff class may submit such time and expenses, kept in accordance with Orders No. 8 and 13, and seek an award of attorneys' fees and expenses."  Goodwin has done that in its Motion for Payment.  For the reasons stated in its Motion for Payment and its Memorandum of Law in Support of Motion for Payment, Goodwin believes it is among such counsel and undeniably can make the claims it is making now - - both to the $34.5 Million Fund for attorneys' fees and expenses <u>and</u> to the Common Fund of $121 Million set up under the Settlement Agreement.

14.     Moreover, Paragraph 33 of Order No. 42 goes on to state that: "In evaluating and allocating any Court-awarded class action attorneys' fees and costs among applicant counsel, Co-Lead Counsel shall apply the same class benefit criteria to <u>all</u> applicant counsel's work, without offset or deduction from their submissions of time and expenses <u>except as may be ordered by the Court under this paragraph</u>." (Emphasis added).   The gravamen of this language is that, notwithstanding the efforts to disenfranchise Goodwin and shut the courthouse door, this Court is the final arbiter on these fees issues - -  which includes any decision to limit the recourse of counsel seeking to assert a common benefit fee claim to the $34.5 Million fund set aside for attorneys' fees and expenses and bar it from the $121 Million Common Fund.  Based on this language, Goodwin

respectfully submits it was granted standing by this Court's order to address matters that affect its rights to payment.  And the potential effects here are material given the existence of $80 Million of fee claims being confined to $24.5 Million of funds.[2]

15.     It is also worth noting that the Settlement Agreement itself contemplates that counsel such as Goodwin would have recourse to this Court, and thus standing to be heard, in the event it has concerns over the manner in which fee determinations are being made. Specifically, Paragraph 162 of the Settlement Agreement provides that:

> The Attorneys' Fees and Expenses paid by New GM as provided for in this Agreement shall be allocated by Plaintiffs' Class Counsel among other plaintiffs' counsel who seek a portion of the Attorneys' Fees and Expenses in a manner that Plaintiffs' Class Counsel in good faith believes reflects the contributions of such plaintiffs' counsel to the prosecution and settlement of the claims against New GM, the AAT, and the GUC Trust in the Actions.  **The allocation among plaintiffs' counsel shall be approved by the MDL Court, and Plaintiffs' Class Counsel shall distribute the Attorneys' Fees and Expenses as directed by the MDL Court.**  Neither New GM, the GUC Trust, the AAT, nor any of the Released Parties shall have any responsibility, obligation or liability of any kind whatsoever with respect to how the Attorneys' Fees and Expenses are allocated and distributed; **such allocation and distribution is the sole province of Plaintiffs' Class Counsel to recommend, and the MDL Court to decide.**

Emphasis added.  Implicit in the method of allocation of fees by Class Counsel is whether the limitations imposed under the Settlement Agreement designed by such counsel are permissible or fair to parties excluded from the settlement discussions, such as Goodwin.  As stated above, Goodwin is compelled to raise this objection now, or it risks losing the ability to do so.

16.     It also rings hollow for interim class counsel to suggest in the EL Memorandum of Law that re-noticing must occur in the event Goodwin's objection is sustained.  As long ago as

---

[2] Of the approximately $34.5 Million set aside for the payment of attorneys' fees and expenses, approximately $24.5 Million has be earmarked for fees and approximately $10 Million has been earmarked for expenses.

December of 2016, Mr. Berman told Goodwin to bring the disagreement over whether Goodwin could be compensated from class action proceeds to the Court and he should be charged with knowledge of his own statements and the likely consequences of his actions. *See* Declaration of William P. Weintraub at **Exhibit B**. Even more notably, Goodwin specifically wrote to interim class counsel on September 29, 2020, and requested that Mr. Berman and Ms. Cabraser post Goodwin's Motion for Payment and related pleadings, filed on September 28, 2020, on the notice website established for this Settlement. *Id*. at **Exhibit C**. And, it appears that interim class counsel failed or refused to do so. *Id.* at Paragraph 7.

17.     In any event, the "re-noticing" issue is a red herring. Goodwin's ability to be paid from the $121 Million Common Fund changes nothing because nothing in the notices sent to putative class members informs those members of the dollar amount of the eventual distributions to be made under the Settlement Agreement or the timing thereof. And the requirement that in order to be eligible to be paid each claimant must demonstrate proof of repair to vehicles purchased a decade ago or longer will impede, complicate, or possibly destroy the right of an indeterminate number of potential claimants to be paid at all. When viewed in the context of the relatively small amount of fees at issue for Goodwin ($1.5 Million), the overall effect on any individual claimant is less than de minimis. Interim class counsel has presented no evidence whatsoever that putative class members have developed any expectations of recovery that would be affected by Goodwin's claims.

18.     With respect to the New GM Memorandum of Law, New GM is correct that Goodwin is not asking New GM (or the GUC Trust or the AAT, for that matter), to pay any more than the Settlement Agreement requires. Goodwin is not seeking additional payments from New GM for itself or for anyone else. As a matter of standing, therefore, because the outcome of

Goodwin's request has no effect on the cost of the Settlement to New GM, it is New GM that lacks standing to challenge Goodwin's fee request or to raise illusory issues on behalf of others.

19.     Nor is Goodwin challenging the reasonableness of the Settlement as it relates to the dollar amount of payments being made in exchange for the releases under the Settlement Agreement.  As an initial matter, the wisdom of the surrender of the claims of the Classes for the amounts being paid by New GM and the GUC Trust is the province of the parties that decided to settle and their respective clients.  To be clear, Goodwin's objection goes only to the source for payment of its common benefit fee claims and it does not seek to extract more from the settling parties than they have already agreed to impart.  Goodwin's complaint is with the impermissible limitation on its right to assert claims that is imposed by the terms of the privately negotiated agreement.

20.     As with interim class counsel's "re-noticing" objection, the re-noticing issue raised by New GM is a red herring for the reasons discussed above.

21.     Lastly, New GM's Memorandum of Law cites only two cases in apparent response to Goodwin.  Both cases are wholly inapplicable to the facts and circumstances of this case.

22.     *Becker v. Warner Communications, Inc. (In re Warner Communications Securities Litigation)*, 798 F.2d 35 (2d Cir. 1986), does not address attorneys' fees awards at all, but rather addresses the question of whether the overall settlement payment could be challenged as unreasonable by deconstructing the various sources of payment and the amount contributed by each.  ("His complaint is that most of the settlement funds come from the corporation or insurance carriers rather than from the individual defendants."  *Id.* at 37.)  The Second Circuit said, no. ("If the total compensation to class members is fair, reasonable, and adequate, the court is not required to supervise how the defendants apportion liability for that compensation among themselves." *Id.*)

Goodwin is not challenging the amounts paid by New GM, the GUC Trust, or the AAT.  Nor is Goodwin seeking to compel these parties to pay a single cent more than is required under the Settlement Agreement. Instead, Goodwin objects to the efforts of interim class counsel to use the private agreement made under the Settlement Agreement to wall Goodwin off from the Common Fund of roughly $121 Million without its consent.

23.     *Evans v. Jeff D.*, 475 U.S. 717, *reh'g denied*, 476 U.S. 1179 (1986), is equally inapposite.  As a threshold matter, *Evans* is not a Federal Rule 23(h) fee case.  The specialized question posed in *Evans* was whether the allegedly coerced agreement of plaintiffs' counsel (acting for *in forma pauperis* parties) to **waive its right to statutory attorneys' fees** under The Civil Rights Attorneys' Fees Awards Act of 1976 (the "**Fee Awards Act**") in a **civil rights action** as a condition to the settlement impermissibly put counsel in an ethical box by forcing it to choose between its statutory right to attorneys' fees and its duties to its clients.  Specifically, the terms of the settlement in *Evans* required plaintiff's counsel to waive its statutory right to fees under the Fee Awards Act.  Even though plaintiff's counsel had in fact agreed to the fee waiver in the settlement agreement, when the settlement was presented to the district court for approval, counsel flagged the ethical issue for the district court and took the position that the waiver was impermissible because the "forced" waiver violated the Fee Awards Act.  According to plaintiff's counsel, the settling defendants' insistence upon the waiver as a condition to settling the lawsuit rendered the settlement incapable of being approved.  The district court disagreed and approved the settlement as appropriate and not violative of the Fee Awards Act.  The Ninth Circuit reversed and the governmental parties that had required the fee waiver appealed to the Supreme Court.

24.     The Supreme Court rejected the contention that the requirement plaintiffs waive their statutory attorneys' fees was a matter of ethics and instead viewed the case as a matter of

statutory interpretation -- the relevant statute being the Fee Awards Act. Distilled to its essence, the issue in *Evans* was whether the Fee Awards Act requires a district court to reject **any** settlement **in a civil rights case** that contains a mandatory fee waiver provision. ("The question we must decide, therefore, is whether the District Court has a duty to reject the proposed settlement because it included a waiver of statutorily authorized attorneys' fees. . . . That duty, whether it takes the form of a general prophylactic rule or arises out of the special circumstances of this case, derives ultimately from the Fees Act rather than from the strictures of professional ethics." 475 U.S. at 727; "The defect, if any, in the negotiated fee waiver must be traced not to the rules of ethics but to the Fees Act." *Id.* at 728; "The question this case presents, then, is whether the Fees Act requires a district court to disapprove a stipulation seeking to settle a civil rights class action under Rule 23 when the offered relief equals or exceeds the probable outcome at trial but is expressly conditioned on waiver of statutory eligibility for attorneys' fees." *Id.* at 729.)

25.    The Supreme Court went on to hold in *Evans* that neither the Fee Awards Act nor Congress's intent in passing the Act barred the waiver that was in fact given by Plaintiffs' counsel in that case.  ("For the reasons set out below, we are not persuaded that Congress has commanded that all such settlements must be rejected by the District Court." *Id.* at 729; "We conclude, therefore, that it is not necessary to construe the Fees Act as embodying a general rule prohibiting settlements conditioned on the waiver of fees in order to be faithful to the purposes of that Act." *Id.* at 737-38.) The Court ultimately held that the district court did not abuse its discretion in approving the settlement because waiver **agreed to by counsel for the plaintiffs** was part of an overall reasonable settlement.

26.    This case is distinguishable from *Evans*. This is not a civil rights case and does not involve an interpretation of the Fee Awards Act. Nor is this case a fee waiver case in which counsel

has waived the right to fees.  The question here is whether Goodwin's fee request can be confined to a particular fund (the $34.5 Million fee and expense fund), and walled off from the $121 Million Common Fund, <u>without</u> <u>its</u> <u>consent</u>.  In fact, if Goodwin's position is sustained, unlike the fee award at issue in *Evans*, no additional payments would be required or sought from New GM, the GUC Trust, or the AAT.  The Settlement here would not become more expensive for the defendants, which is the opposite of the concern of the settling government parties in *Evans*, who would have been required to make larger payments.  The ethical and/or policy conundrums and/or statutory interpretations of the Fee Awards Act raised by the parties in *Evans* are decidedly not at issue in this case. Unlike the lawyer in *Evans*, Goodwin has not agreed to anything  -- under "coercion" or otherwise. Goodwin does not raise ethical issues in defense of its pursuit of its common benefit claims, Goodwin does not allege that it (as distinct from anyone else) involuntarily or begrudgingly agreed to the Settlement Agreement as counsel did in *Evans*, Goodwin does not allege anything as to the motivations of interim class counsel, New GM, or the other settling parties, and Goodwin does not allege it was compelled to surrender its rights.  To the contrary, as already stated, Goodwin's issue is whether other parties can contractually curtail Goodwin's independent rights under its Engagement Letter, Order No. 42, or under Federal Rule 23(h), using a private agreement (the Settlement Agreement) to which Goodwin was not a party.

27.     As a non-party to the Settlement Agreement, Goodwin is not bound to its terms. *Madison Square Garden Boxing, Inc. v. Shavers*, 562 F.2d 141, 143-44 (2d Cir. 1977) ("A judgment entered by consent and stipulation is binding upon the consenting parties only."); *see also Gerber v. MTC Elec. Techs. Co.*, 329 F.3d 297, 306 (2d Cir. 2003) (bar order in settlement agreement could not extinguish claims and related damages that are independent from the claims being settled); *see also In re PNC Fin. Servs. Grp., Inc.*, 440 F. Supp. 2d 421, 451 (W.D. Pa. 2006)

("No court has expressly held that truly independent claims may be extinguished by a bar order in order to achieve settlement in complex securities litigation.").  Moreover, the Second Circuit has recognized that, when non-class counsel has conferred a substantial benefit on the class (as is the case here), an allocation of fees to non-class counsel is appropriate.  *See Victor v. Argent Classic Convertible Arbitrage Fund L.P.*, 623 F.3d 82 (2d Cir. 2010) (affirming allocation by lead counsel to non-class counsel of attorney's fees in lodestar amount with no multiplier).[3]

28.     As argued extensively in its Memorandum of Law in Support of Motion for Payment, Goodwin fulfilled a unique role in the MDL.  Goodwin served as a Participating Counsel and as Designated Bankruptcy Counsel engaged to address highly contentious and very sophisticated bankruptcy issues that were <u>common</u> to <u>both</u> persons asserting personal injury claims and persons asserting economic loss claims.  These issues were decided from a <u>common</u> set of facts obtained from the Valukas Report - - and <u>not</u> from  any of the extensive discovery taken in the MDL.  *See Agreed and Disputed Stipulation of Fact Pursuant to the Court's Scheduling Order, dated July 11, 2014*, filed on August 8, 2014 as Doc. No. 12826, together with Exhibits A, B, C, and D attached thereto, filed concurrently therewith on August 8, 2014, as Doc. Nos 12826-1, 12826-2, 12826-3, and 12826-4, respectively.  Goodwin had no clients other than the Co-Leads in this endeavor.  There is no "other" source of payment for Goodwin.  <u>Both</u> personal injury claimants

---

[3] A Second Circuit case decided subsequent to *Victor* -- *Flanagan, Lieberman, Hoffman & Swaim v. Ohio Public Employees Retirement System*, 814 F.3d 652 (2d Cir. 2016) -- held that for non-lead counsel work completed after the appointment of lead plaintiff and lead counsel, where the fee to non-lead counsel is one part of a capped percentage of a common fund should be subject to the standard set forth by the Third Circuit in *In re Cendant Corp. Securities Litigation.*, 404 F.3d 173, 190 (3d Cir. 2005) (lead plaintiff's decision to not award fees to non-lead counsel for its work post-appointment is entitled to a presumption of correctness that can be rebutted.)  To the extent the *Cendant* standard is even applicable here because of the unique "Participating Counsel/Designated Bankruptcy Counsel" regime in place in this case, as well as the terms of Goodwin's Engagement Letter and Order No. 42, the *Flanagan* decision noted the Second Circuit was <u>not</u> determining whether the deference/rebuttable presumption applies where class representatives and class counsel argue that other counsel is not entitled to fees that, if paid, would diminish class members' recovery.  *Flanagan*, 814 F.3d at 658.  At a minimum, Goodwin must be given the opportunity to rebut any such presumption rather than being preemptively blocked from doing so.

and economic loss claimants benefitted from Goodwin's highly successful work on violations of due process, the ability to sell "free and clear" of successor liability, late claims, and independent claims.  As is evident from even a cursory review of the findings this Court is being asked to make under Paragraph 4(b) of the Proposed Order re Payment of Attorneys' Fees and Expenses, much of the success of these cases did not come from the activities of interim class counsel in the District Court.  Rather, much of the recovery here was derived from Goodwin's work as Designated Bankruptcy Counsel in the Bankruptcy Court on the Four Threshold Issues and the ground-breaking Second Circuit Opinion.

### III.     OBJECTION

29.     For the reasons stated, Goodwin objects to the entry of the Proposed Order re Payment of Attorneys' Fees and Expenses and the Proposed Judgment to the extent either or both purport to bar Goodwin from seeking payment from the $121 Million Common Fund.  At a minimum, Goodwin objects to Footnote 4 of the Proposed Final Judgment and Paragraph 5 of the Proposed Order re Payment of Attorneys' Fees and Expenses, as well as to any effort to bind Goodwin to the terms of the Settlement Agreement that bars its payment from the $121 Million Common Fund.

### IV.     RESERVATION OF RIGHTS

30.     As previously stated by Goodwin in its Memorandum of Law in Support of Motion for Payment and the Goodwin Reply, with respect to Goodwin's request for payment from the $34.5 Million set aside under the Settlement Agreement for the payment of attorneys' fees and expenses, Goodwin is not trying to jump the line and be paid ahead of other claimants from that fund.  Goodwin will wait its turn and it hopes and expects that, despite any past efforts of interim class counsel to avoid making payments to Goodwin, Goodwin will get a "fair shake" in whatever review process is undertaken by Class Counsel to determine rights to payment for common benefit

work.  Nevertheless, Goodwin understands and expects that the final arbiter of any fee award and the propriety of any payments will be this Court.  Goodwin reserves the right to seek appropriate recourse in this Court and reserves all rights if funds are dissipated before Goodwin has an opportunity to be heard in this Court with respect to any proposed payments from the $34.5 Million fund.

31.     Lastly, for the avoidance of doubt, Goodwin is not abandoning or waiving, and expressly reserves its right to payment from the Common Benefit Order Fund established under Order No. 42 and the other orders of this Court.

Dated:  November 23, 2020

**GOODWIN PROCTER LLP**

By:  */s/ William P. Weintraub*
William P. Weintraub
The New York Times Building
620 Eighth Avenue
New York, New York 10018
212-813-8800
wweintraub@goodwinlaw.com

*Attorneys for Goodwin Procter LLP*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 23, 2020, I electronically filed the foregoing along with the accompanying Declaration of William P. Weintraub, with exhibits A through C, using the CM/ECF system which will serve notification of such filing to the email of all counsel of record in this action, and also served the following via e-mail and overnight courier service:

*Motors Liquidation Company Avoidance Action Trust*
Eric B. Fisher
Binder & Schwartz LLP
366 Madison Avenue, Sixth Floor
New York, NY 10017
efisher@binderschwartz.com

By: */s/ William P. Weintraub*
William P. Weintraub