UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------x

IN RE:

GENERAL MOTORS LLC IGNITION SWITCH LITIGATION

This Document Relates To:
*Rothermel v. General Motors LLC, 17-CV-9353*
---------------------------------------------------------------------------x

14-MD-2543 (JMF)

OPINION AND ORDER

JESSE M. FURMAN, United States District Judge:

 The present case — brought by Plaintiff Jordon Rothermel — is part of multidistrict litigation ("MDL") proceedings against General Motors LLC ("New GM"), general familiarity with which is assumed, relating to alleged defects in the ignition switches and other features of certain General Motors vehicles.  In 2020, Rothermel settled with New GM and dismissed his claims with prejudice.  *See* ECF No. 62.[1]  James Zonas, who had previously represented Rothermel, then moved to reopen the case and to enforce an attorney's lien.  *See* ECF Nos. 63, 64.  In an earlier Memorandum Opinion and Order, the Court granted those motions and directed Zonas to file an accounting of his fees and expenses.  *See Rothermel v. Gen. Motors LLC* (*In re Gen. Motors LLC Ignition Switch Litig.*), Nos. 14-MD-2543 (JMF) et al., 2020 WL 3640006 (S.D.N.Y. July 6, 2020) (ECF No. 86).  He now seeks $17,270.00 in fees and $4,646.97 in expenses.  *See* 14-MD-2543, ECF No. 8078 ("Motion"), at 4.  For various reasons, however, the Court concludes that his request is largely devoid of merit: It includes hours and expenses for which he has already been compensated and work that he either did not perform or performed unreasonably; and it overlooks his multiple violations of his ethical responsibilities to Rothermel.  Given these reasons, the Court would be on firm ground awarding Zonas nothing.  Exercising its broad discretion, however, the Court awards him $3,052.50.

---

[1] Unless otherwise noted, citations are to the docket in 17-CV-9353 (JMF).

## BACKGROUND

Rothermel alleges that he suffered injuries in connection with a single-vehicle accident in April 2016. *See* ECF No. 4-2 ("Compl."), ¶ 8. Shortly after his accident, Rothermel retained Zonas, on a contingency basis, to represent him in an action against the driver of the vehicle. *See Rothermel*, 2020 WL 3640006, at *1. With Zonas's aid, Rothermel settled his claims with the driver. *Id.* Zonas was paid his share of Rothermel's recovery, and he also withheld a portion of the recovery in order to pay experts, as he and Rothermel had learned that Rothermel might also have a viable claim against New GM on the basis of the alleged ignition switch defect. *Id.*; ECF No. 90-1 ("Jordon Rothermel Aff."), ¶ 9; ECF No. 90-2 ("Chris Rothermel Aff."), ¶ 14. Zonas did, in fact, retain experts to examine the vehicle, and they prepared reports in or around May 2016. *Rothermel*, 2020 WL 3640006, at *1. Months passed with few updates on the case. In August 2017, Rothermel discharged Zonas and retained a new attorney, T. Patton Youngblood. *Id.* at *1, 3.

After taking over the case, Youngblood made repeated requests to Zonas for information and documents about the case. Zonas did not respond and neglected to advise Youngblood that he had retained a medical expert. ECF No. 90 ("Opp'n"), ¶¶ 5, 12; *see also* ECF Nos. 90-3, 90-5, 90-7. On October 12, 2017, Youngblood and Zonas spoke by telephone, and Youngblood made clear that he was "representing Rothermel in his claim against GM." *Rothermel*, 2020 WL 3640006, at *1 (cleaned up). In an email that Youngblood sent to Zonas after their telephone call, Youngblood asked Zonas to forward various documents from Zonas's case file. *Id.* On the same date, and despite his termination, Zonas filed, on Rothermel's behalf, the instant action against New GM in Florida state court. *See* Compl. Neither Rothermel nor Youngblood can explain when or how they first became aware of the lawsuit, but they must have known of it by October 25, 2017, when Youngblood "had a phone conversation with an attorney for GM." *Rothermel*, 2020 WL 3640006, at *1 (cleaned up). Rothermel claims he was surprised when he learned that Zonas had filed claims on his behalf. *Id.* On November 8, 2017, New GM removed Rothermel's claims to federal court

2

and, on November 29, 2017, they were transferred to this Court and consolidated in the MDL. *See* ECF Nos. 1, 9.

Bewilderingly, neither Rothermel nor Youngblood ever alerted the Court to the fact that an attorney who no longer represented Rothermel had filed the claims on his behalf. Nor did they take issue with the fact that Zonas was listed as attorney of record on the docket. In fact, following transfer of the case to this Court, neither Youngblood nor Zonas filed much of anything at all. Zonas never filed a motion to withdraw, but he did file a notice of charging lien on the MDL docket on April 4, 2018, *see* 14-MD-2543, ECF No. 5324, and on Rothermel's individual docket on August 6, 2019, *see* ECF No. 53. Youngblood filed a motion to appear *pro hac vice* on the MDL docket on June 13, 2019, *see* 14-MD-2543, ECF No. 6872, and he submitted a stipulation of dismissal with prejudice of Rothermel's claims, which the Court so-ordered on January 29, 2020, *see* ECF No. 62. The next day, Zonas filed motions to reopen the case and to enforce the charging lien. *See* ECF Nos. 63, 64.

By Memorandum Opinion and Order entered on July 6, 2020, the Court granted Zonas's motion to enforce the charging lien and granted his motion to reopen the case for the sole purpose of enforcing the lien. *See Rothermel*, 2020 WL 3640006, at *3. But the Court held that the charging lien was valid only for work performed before August 11, 2017, the date on which the Court found Zonas had been fired by Rothermel. *See id.* The Court ordered Zonas to file a detailed accounting of the hours he had spent on Rothermel's case against New GM and to propose a reasonable hourly fee. *See id.* The Court cautioned that Zonas's accounting must "*not* include time spent litigating any claims against other defendants." *Id.*

Thereafter, Zonas filed the present "Motion to Determine Reasonableness of Attorney's Fees and Expenses." He seeks attorney's fees in the amount of $17,270.00 and expenses in the amount of $4,646.97. *See* Motion 4. Rothermel opposes the motion, at least in part, arguing that it reflects work that did not actually occur, work in connection with litigation against defendants other

than New GM, hours that were not reasonably expended, and expenses for which Zonas was already reimbursed. *See* Opp'n ¶¶ 4-12.  New GM takes no position on the motion.  ECF No. 89.

## DISCUSSION

As the parties appear to agree, Florida law governs these requests.  *See* Opp'n ¶ 11; 14-MD-2543, ECF No. 8114 ("Reply"), ¶ 10; *see also Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993) (per curiam) (noting that in multidistrict litigation, the transferee court "applies the substantive state law . . . of the jurisdiction where the action was filed").  Under Florida law, the method used to calculate a reasonable attorney's fee varies depending on the kind of case involved.  *See Standard Guar. Ins. Co. v. Quanstrom*, 555 So.2d 828, 835 (Fla. 1990).  In fee-shifting cases, for example, Florida courts apply a "lodestar" method similar to the one frequently used under federal law.  *See, e.g.*, *Fla. Patient's Comp. Fund v. Rowe*, 472 So.2d 1145, 1150-52 (Fla. 1985).  But when, as here, a court assesses attorney's fees due to the attorney by his *own* client, Florida law mandates a different approach.  *See Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Poletz*, 652 So.2d 366, 368-69 (Fla. 1995).  In such cases, courts look to "the totality of the circumstances surrounding the professional relationship," taking into account "the actual value of the services to the client."  *Id.* at 369 (internal quotation marks omitted).

More specifically, a court in such a case may consider "the time reasonably devoted to the representation and a reasonable hourly rate," as under the lodestar method.  *Id.*; *see Lackey v. Bridgestone/Firestone, Inc.*, 855 So.2d 1186, 1189 (Fla. Dist. Ct. App. 2003) ("[A] trial court *must* consider the amount of time the attorneys devoted to the representation and a reasonable hourly rate as factors in computing an award, *as well as* the totality of the circumstances surrounding the client/lawyer relationship in awarding fees." (emphases added)).  In doing so, the court may also look to Florida's professional conduct rules.  *See Searcy*, 652 So.2d at 369.  In addition, however, a court is to consider any factors relevant to the professional relationship, including "the fee agreement itself, the reason the attorney was discharged, actions taken by the attorney or client

4

before or after discharge, and the benefit actually conferred on the client." *Id.*; *see also Frank J. Pepper, Inc. v. Vining*, 783 So.2d 1160, 1163 (Fla. Dist. Ct. App. 2001) (per curiam). The goal of the inquiry is "to ensure that the award is fair to both the attorney and client." *Searcy*, 652 So.2d at 369. "The determination as to which factors are relevant in a given case, the weight to be given each factor and the ultimate determination as to the amount to be awarded are matters within the sound discretion of the trial court." *Id.*; *see Hallowes v. Bedard*, 877 So.2d 953, 957 (Fla. Dist. Ct. App. 2004); *Murphy ex rel. Murphy v. Centlivre*, 850 So.2d 600, 602 (Fla. Dist. Ct. App. 2003).

Applying these standards here, the Court concludes that Zonas should be awarded only a small fraction of what he seeks because he has already been reimbursed for his expenses, because he seeks fees for work that was not reasonably done (or done at all) or for which he has already received payment, and because he did little to aid his client's cause.

## A. Expenses

The Court begins with the request for expenses, as it can be swiftly rejected. Rothermel and his father both swear under oath that they already paid for the claimed expenses from the funds received in connection with the settlement of Rothermel's claims against the driver. *See* Jordon Rothermel Aff. ¶ 9; Chris Rothermel Aff. ¶ 14. Specifically, they assert that Zonas advised that he was withholding $4,836.00 from the check he provided to them. Jordon Rothermel Aff. ¶ 9; Chris Rothermel Aff. ¶ 14; *see Rothermel*, 2020 WL 3640006, at *1 ("Zonas was paid his share of Rothermel's recovery [from the settlement of his claims against the driver], *and he also withheld a portion of the recovery in order to pay experts . . . .*" (emphasis added)).[2] Zonas provides no

---

[2] It is not clear on the existing record why there is an approximately $200 discrepancy between Zonas's claimed expenses and the amount that he deducted from the settlement funds. The discrepancy could perhaps have been explained if Zonas had provided Rothermel with a statement detailing the expert fees, as required by Florida law. *See* RULES REGULATING THE FLORIDA BAR 4-1.5(f)(1) ("On conclusion of a contingent fee matter, the lawyer must provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the

evidence to the contrary.  That is enough to reject Zonas's request, but two of the expenses for which he seeks reimbursement raise even more significant concerns.  First, Zonas seeks reimbursement for a medical expert despite having never forwarded any of the relevant information to Youngblood; in fact, Youngblood did not even know of this expert's existence until seeing her name on Zonas's accounting.  Opp'n ¶ 12.  That raises doubts about whether Zonas incurred the expense; and to the extent he did, it undermines any claim that Rothermel benefited from it.  Second, and even more troubling, Zonas is effectively seeking to *triple-bill* for the expert expenses incurred for ORC International: Although he already received reimbursement for those expenses from the first settlement, he apparently hasn't even paid them himself; instead, he has instructed ORC International to collect its fee from Youngblood.  *Id.* ¶¶ 13, 15.  The bottom line is that Zonas is not entitled to any additional reimbursement for expenses.

## B.  Attorney's Fees

Zonas's request for attorney's fees requires a bit more discussion, but it too is troubling in a variety of ways.  Zonas seeks to recover for 46.6 attorney hours and 12.0 law clerk hours.  *See* Motion 6; Motion, Ex. A ("Accounting").  But there is reason to doubt that he actually devoted many of those hours to representation of Rothermel and, to the extent he did, many were unreasonable.  Moreover, contrary to the Court's prior Order, Zonas's accounting includes many hours attributable to litigation against defendants other than New GM.[3]

---

remittance to the client and the method of its determination.").  But he did not.  *See* Opp'n ¶ 11; Jordon Rothermel Aff. ¶ 9; Chris Rothermel Aff. ¶ 9.

[3]     The Court assumes without deciding that Zonas's proposed hourly rates — $350 for him and $80 for his law clerk — are reasonable.  *See* Accounting.  (Rothermel and Youngblood do "not take issue with" Zonas's proposed hourly rates.  Opp'n ¶ 3.  New GM takes no position on the matter.  *See* ECF No. 89.)

**1.  The Reasonableness of Zonas's Claimed Hours**

First, as Rothermel argues, some of the work Zonas alleges did not — indeed, could not have — happened.  Opp'n ¶¶ 6-7.  For instance, Zonas claims 5.2 hours relating to the negotiation and review of settlement offers with New GM.  Accounting 1-2.  Rothermel objects that these hours could not have happened because the purported offers did not exist.  Opp'n ¶¶ 6, 8-9.  Rothermel avers that he heard of only one offer from New GM when, in July 2017, Zonas mentioned it in passing.  *See* Jordon Rothermel Aff. ¶¶ 5-6; *see also* Chris Rothermel Aff. ¶¶ 10-12.  But he never saw this (or any other offer) in writing, and he and Zonas had no other discussions of settlement offers or demand letters.  Jordon Rothermel Aff. ¶¶ 5-6.  Rothermel also presents emails from various firms representing New GM, all of which state that no offers were made by New GM to Zonas at all.  *See* ECF Nos. 90-4, 90-6.  Finally, he presents an April 2019 email from Youngblood to Zonas asking for details about the one alleged offer that had been communicated to Rothermel and claims that Zonas never responded to this email.  *See* Opp'n ¶ 8; ECF No. 90-5.  Zonas offers no contradictory evidence.

Given this record, the Court finds that Zonas did not actually expend the hours that he claims on Rothermel's case.  If Zonas spent so much time "[r]eview[ing]" New GM's purported offers and "[p]repar[ing]" his own counteroffers, as he claims, Accounting 1, one would assume he could submit documentary proof; but he has not, *see* Jordon Rothermel Aff. ¶ 6 (affirming that he was not aware of any counteroffers made by Zonas to New GM); *accord* Chris Rothermel Aff. ¶ 12.  At best, Zonas violated his ethical duty to "promptly inform" Rothermel about the "substance" of all settlement offers.  *See* Rules Regulating the Florida Bar 4-1.4 cmt. ("[A] lawyer who receives from opposing counsel an offer of settlement in a civil controversy . . . must promptly inform the client of its substance . . . .").  If so, then the hours that Zonas claims were not reasonably expended.  *See, e.g.*, *Afrazeh v. Miami Elevator Co. of Am.*, 769 So.2d 399, 403 (Fla. Dist. Ct. App. 2000) (per curiam) (noting that "the trial court may consider whether [an attorney] committed any

violations of the Rules Regulating the Florida Bar in entering any order" calculating fees); *cf.*
*Spence, Payne, Masington & Grossman, P.A. v. Philip M. Gerson, P.A.*, 483 So.2d 775, 778 (Fla.
Dist. Ct. App. 1986) (refusing to award attorney's fees in quantum meruit where an attorney had
violated Florida's solicitation statute because to award fees in such a situation "would be to
condemn unlawful conduct on the law side of the court and approve the same unlawful conduct on
the equity side of the court"); *Jackson v. Griffith*, 421 So.2d 677, 677-78 (Fla. Dist. Ct. App. 1982)
("Certainly, an attorney displaying conduct sufficient to void an agreement in law should not be
allowed to profit from his blatantly unprofessional conduct in equity.").

Zonas also claims that he spent 9.6 hours inspecting the vehicle, reviewing the vehicle's
recall notice, and meeting with Rothermel at Zonas's office.  *See* Accounting 1-3; *see also* Reply ¶
4.  But Chris Rothermel affirms that he was present for the vehicle inspection and that Zonas was
not.  *See* Chris Rothermel Aff. ¶ 5.  Similarly, while Zonas claims 1.5 hours for a meeting he
allegedly had with Rothermel, Rothermel says no such meeting occurred.  *Compare* Accounting 1,
*with* Jordon Rothermel Aff. ¶¶ 4, 7.  And finally, Zonas claims 3.6 hours for reviewing the vehicle
"recall notice and application."  Accounting 3.  Chris Rothermel, however, explains that he
informed Zonas of the recall after doing his own research on the issue, which took only about ten to
fifteen minutes.  *See* Chris Rothermel Aff. ¶ 7.  Chris Rothermel also notes that he was never told
about any "application" and is not sure what application there could have been as "there was no
longer anything to repair — the vehicle was a total loss."  *Id.*  Notably, as with the alleged
settlement negotiations, Zonas does not offer any evidence on this point beyond his accounting to
counter the Rothermels' sworn statements.  Given this lack of countervailing evidence, Zonas has
not met his burden of showing that these hours were reasonably expended working on the New GM
matter.

Next, the Court declines to credit Zonas's entry for 6.5 attorney hours on November 10,
2016, which reads as follows: "Reviewed case and special damages.  Discuss these with Client.

Discussed value of case with JR, case valued at $500,000.  Must be careful about Patton Youngblood being a conflict of interes [sic]."  Accounting 1.  The reference to a conflict with Patton Youngblood, Rothermel's current counsel of record, is puzzling on its face.  But making matters (far) more puzzling, and worse, Rothermel (and, by extension, Zonas) *did not even meet Youngblood until nine months later*, in August 2017.  *See* Opp'n ¶ 6; Jordon Rothermel Aff. ¶ 8. Zonas asserts in his reply that this entry was meant to refer to *James* Patton, the driver of the vehicle, not to Patton *Youngblood*, Rothermel's current counsel.  Reply ¶ 11.  But that explanation makes little sense and the Court is not prepared to credit it.

Finally, Zonas flagrantly failed to adhere to the Court's direction in its July 6, 2020 Memorandum Opinion and Order to omit "time spent litigating any claims against" defendants other than New GM.  *Rothermel*, 2020 WL 3640006, at *3.  In particular, Zonas's accounting includes fourteen entries, totaling 10.6 hours, for activities such as sending letters to or communicating by telephone with State Farm, one of the insurers involved in the claims against the driver of the vehicle.  *See*, *e.g.*, Accounting 2 ("Telephone call with Cynthia Cook at State Farm regarding JR claim."); *id.* at 3 ("Review offer from State Farm with JR."); *see also* Opp'n ¶ 4.  Such work is not compensable in *this* case as it provided no value to Rothermel in connection with his claims against New GM.  Moreover, Zonas was already compensated for it — through the contingency fee award that he received in connection with the earlier settlement.  In other words, once again, Zonas is seeking to double-bill — to collect fees for work that has already been paid.

## 2. Other Relevant Circumstances

For these reasons, the Court declines to credit twenty-two of Zonas's time entries, totaling 31.9 attorney hours.  That leaves 14.7 attorney hours and 12.0 law clerk hours, which — assuming Zonas's proposed rates were reasonable — would yield a lodestar of $6,105.00.  As Zonas emphasizes, however, the determination of reasonable rates and reasonable hours is only the starting point under Florida law in cases such as this.  *See* Reply 4-5.  Ultimately, the Court "must consider

9

'the totality of the circumstances surrounding the professional relationship' in computing the reasonable value of the services rendered." *Morgan & Morgan P.A. v. Guardianship of McKean*, 60 So.3d 575, 577 (Fla. Dist. Ct. App. 2011) (quoting *Rosenberg v. Levin*, 409 So.2d 1016, 1022 (Fla. 1982)).  The problem for Zonas is that considering the totality of other relevant circumstances does not strengthen his claim to fees; it weakens his claim considerably.

First, Zonas's behavior both before and after his discharge by Rothermel counsels against a fee award.  *See Searcy*, 652 So.2d at 369 (noting the relevance of "actions taken by the attorney or client before or after discharge" in the quantum meruit fee calculation).  Before discharge, Zonas failed to provide written statements of the breakdown of the settlement with the driver (which, among other things, would have enabled Rothermel to evaluate whether and to what extent Zonas is seeking to double-collect here) and he failed to keep his client abreast of developments in the case; indeed, he appeared to take few actions to advance Rothermel's case.  *See* Jordon Rothermel Aff. ¶¶ 5-6; Chris Rothermel Aff. ¶¶ 10-12.  Rothermel discharged Zonas based on the months that passed between any updates on the case and based on Zonas's pressure to settle for an amount that he felt was far too low.  *See* Jordon Rothermel Aff. ¶ 7; Chris Rothermel Aff. ¶¶ 12-13; *Searcy*, 652 So.2d at 369 (noting the relevance of "the reason the attorney was discharged" in the quantum meruit fee calculation).  Even more disturbingly, Zonas filed this lawsuit against New GM *after* Rothermel had discharged him — and making matters worse, neglected to even tell Rothermel about the filing. *Rothermel*, 2020 WL 3640006, at *1-3.  This is in direct violation of Florida's rules of professional conduct.  *See* RULES REGULATING THE FLORIDA BAR 4-1.6 ("[A] lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if . . . the lawyer is discharged."); *see also Afrazeh*, 769 So.2d at 402-03 (considering violations of the Rules Regulating the Florida Bar in calculating a fee award).

Second, the record does not support Zonas's assertions that he "did essentially all the work" and that his efforts were "significant and crucial to the settlement" with New GM.  Reply 5.  Indeed,

10

the evidence suggests that whatever work Zonas did put into the matter was largely withheld from Youngblood and played no direct role in the settlement with New GM.  For example, when Youngblood was preparing responses to discovery requests, he emailed Zonas asking for Rothermel's medical bills.  *See* ECF No. 90-3; Opp'n ¶ 5.  Zonas replied that he "may have to go[ ]to storage" but never ultimately provided any medical bills.  *See* ECF No. 90-3; Opp'n ¶ 5. Similarly, as noted above, at least one expert report commissioned by Zonas was withheld from Youngblood.  *See* Opp'n ¶ 12; ECF Nos. 90-7, 90-8.  In fact, Youngblood was not even aware of the existence of relevant expert until seeing her name on Zonas's accounting.  Opp'n ¶ 12.  And as noted, although Zonas claims to have spent significant time negotiating settlement offers with New GM, these offers either never actually occurred or were never adequately communicated to Rothermel or Youngblood.  These actions hindered, rather than helped, Rothermel's cause.  *See, e.g.*, *Searcy*, 652 So.2d at 369 n.5 ("[T]he trial court's finding that [the original attorneys] refused to give the [client's] file to the successor firm may affect the value of the services rendered to the client.");  *see also, e.g.*, *Law Offices of Theodore Goldberg v. Fazio, Dawson, DiSalvo, Cannon, Abers & Podrecca*, 659 So.2d 1200, 1201 (Fla. Dist. Ct. App. 1995) ("[I]n fixing the *quantum meruit* amount, the trial court should consider that some aspects of [counsel's] handling of the case may have actually disadvantaged the clients.").

In light of these considerations, the Court would be on firm ground reducing Zonas's fee award to zero.  *See, e.g.*, *Spence*, 483 So.2d at 778 (refusing to grant quantum meruit recovery for an attorney where the attorney had violated Florida's solicitation statute); *Jackson*, 421 So.2d at 677-78 (denying a quantum meruit award on the ground that an attorney "should not be allowed to profit from his blatantly unprofessional conduct" where the conduct would be sufficient to void an agreement in law)*; see also Heller v. Emanuel* (*In re Emanuel*), 450 B.R. 1, 7 (S.D.N.Y. 2011) (upholding a fee calculation of zero dollars when the attorney "failed to prove that he had conferred a benefit" on, and instead harmed, the client "by failing to turn over his files, which made the task

11

of successor counsel more difficult"), *aff'd,* 460 F. App'x 48 (2d Cir. 2012) (summary order); *Murphy*, 850 So.2d at 602-03 (admonishing a lower court for granting an excessive award by focusing too much on the "results obtained" by the client and not enough on other considerations like the attorney's inadequate cooperation and failure to inform the client about settlement offers). Nevertheless, as an exercise of its broad discretion, and in view of the fact that Zonas undoubtedly provided some benefit to Rothermel — by providing some relevant documents and information and, most notably, by locating and retaining the experts whose reports Zonas did provide to Youngblood, *see* Opp'n ¶ 5 — the Court will grant Zonas half of the lodestar figure above, or $3,052.50.

## CONCLUSION

For the foregoing reasons, the Court awards Zonas $3,052.50 in attorney's fees and zero in expenses.  The Court acknowledges that that is a significant reduction from what Zonas sought.  But given the totality of the circumstances, Zonas should consider himself lucky to get anything. Moreover, contrary to Zonas's contentions, *see* Reply 3-5, the fact that Youngblood's representation of Rothermel also fell short does not call for a different result.  To be sure, Youngblood's representation left much to be desired: He filed little on Rothermel's behalf, never took issue with the fact that Zonas was listed as attorney of record despite having been fired, and was generally poorly informed about the proceedings.  But the Court will not reward one subpar lawyer merely because his client replaces him with another subpar lawyer.

One final housekeeping matter remains.  When Zonas initially filed his motion on July 1, 2020, he included documentation that appeared to contain confidential settlement information.  *See* 14-MD-2543, ECF No. 8049.  Accordingly, the Court directed the Clerk of Court to restrict viewing access for the docket entry to counsel for New GM and Rothermel and directed the parties to confer and file proposed redactions on both 14-MD-2543 and 17-CV-9353.  ECF No. 87.  On July 31, 2020, Zonas filed a redacted copy of his motion (albeit only on 14-MD-2543, notwithstanding the Court's instruction) and did so under restricted viewing access (notwithstanding the redactions of

confidential information).  That same day, New GM filed its proposed redactions, ECF No. 88-1,

noting that "counsel for New GM sent its proposed redactions to current and former counsel for

Jordon Rothermel in an attempt to confer regarding the needed redactions, but received no

response."  ECF No. 88, at 1.  In any event, the redactions included in Zonas's filing at 14-MD-

2543, ECF No. 8078 conform to those proposed by New GM at ECF No. 88-1.  In light of the

Second Circuit's recognition of the interest in preserving the confidentiality of settlement-related

communications, *see*, *e.g.*, *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 143 (2d Cir. 2004), the

Court approves the proposed limited redactions on a permanent basis.  Accordingly, 14-MD-2543,

ECF No. 8078 (which contains redactions of the confidential information) should be unsealed.

The Clerk of Court is directed to remove viewing restrictions on 14-MD-2543, ECF No.

8078; to terminate 14-MD-2543, ECF No. 8049 and 14-MD-2543, ECF No. 8078; and to close 17-

CV-9353.

SO ORDERED.

Dated: April 13, 2021
       New York, New York

_____
JESSE M. FURMAN
United States District Judge