UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------x
IN RE:

GENERAL MOTORS LLC IGNITION SWITCH LITIGATION

*This Document Relates To:*
*Anderson v. GM Motors & Shareholders, 21-CV-1006*
---------------------------------------------------------------------------x

14-MD-2543 (JMF)

OPINION AND ORDER

JESSE M. FURMAN, United States District Judge:

      This case, between Plaintiff Larry Anderson, proceeding *pro se*, and Defendant General Motors LLC ("New GM"), is one of many arising out of the recall of General Motors vehicles that had been manufactured with a defective ignition switch. On April 13, 2021, the parties appeared by telephone before the Honorable James L. Cott, United States Magistrate Judge, and reached a settlement, the material terms of which they confirmed on the record. To date, however, Anderson has refused to sign a settlement agreement that New GM drafted to memorialize the terms of the parties' oral agreement (the "Draft Settlement Agreement"). Accordingly, New GM now moves for an order enforcing the settlement, compelling Anderson to hand sign and notarize the Draft Settlement Agreement, and permitting it to move for dismissal of the case with prejudice thereafter. *See* ECF No. 58-1. For the reasons stated below, the Court grants New GM's motion, subject to New GM making certain changes to the Draft Settlement Agreement to conform to the terms of the parties' oral agreement.

## BACKGROUND

      Anderson, the owner of a 2005 Chevrolet Cobalt, filed this lawsuit on February 4, 2021, alleging violations of various federal laws and seeking damages of $128,287, comprised of $3,000 to buy another used car, $125,000 for emotional distress, and $287 as reimbursement for money he spent to have a new ignition switch installed in the car. ECF No. 2, at 3-4, 6, 14-15.[1] On March 4, 2021, the

---

[1]     All docket references are to 21-CV-1006 (JMF).

Court referred the case to Magistrate Judge Cott for settlement purposes.  *See* ECF No. 10.  On April 13, 2021, the parties appeared before Magistrate Judge Cott by telephone and reached a settlement.  At the conclusion of the conference, Magistrate Judge Cott went on the record and confirmed with Anderson and Wendy Bloom, counsel for New GM, the fact of the settlement as follows:

> THE COURT: We've had a Settlement Conference today, and my understanding from my conversations with the parties is that we have reached the settlement.  There are a number of terms that I'm going to review on the record that will constitute the material terms of the settlement.  My expectation is that GM is going to provide a Settlement Agreement and a Release that includes all of these terms in writing for Mr. Anderson's review and signature.  But, in an abundance of caution, we're putting these terms on the record today so that there is a binding agreement on the basis of these terms.  Is that understood, Mr. Anderson?
>
> ANDERSON: Yes, understood, your Honor.
>
> THE COURT: All right, and Ms. Bloom, is that understood, as well?
>
> BLOOM: Yes, your Honor.

ECF No. 39 ("Tr."), at 3.

Magistrate Judge Cott then proceeded to summarize "the material terms of the Settlement Agreement and Release," which, he said, would "need to be hand-signed and notarized by Mr. Anderson."  *Id.* at 3-6.  Most relevant for present purposes, Magistrate Judge Cott explained that, in exchange for certain compensation from New GM,

> New GM will require that Mr. Anderson dismiss his lawsuit with prejudice . . . .  And New GM will also require a release of all released claims against the released parties by the releasing parties, as those terms will be defined in the Settlement Agreement.  And that essentially means, Mr. Anderson, that you and anyone affiliated with you will be releasing GM for the claims that you brought in the lawsuit.

*Id.* at 4.  After summarizing these and other material terms of the agreement, Magistrate Judge Cott confirmed with Bloom that he had "covered all of the terms."  *Id.* at 6-7.  Magistrate Judge Cott then engaged in the following colloquy with Anderson:

> THE COURT: . . . [D]id you understand all of these terms that I've just recited on the record?

| | | |
|---|---|---|
| ANDERSON: | | I understood them all, your Honor. |
| THE COURT: | | Okay, and do you agree to all of those terms? |
| ANDERSON: | | I agree to them all, your Honor. |
| THE COURT: | | Okay, and do you agree to them such that there's a binding and enforceable agreement between the parties? |
| ANDERSON: | | Yes, I do, your Honor. |

*Id.* at 8.  Magistrate Judge Cott then confirmed the same with a representative of New GM, *see id.* at 8-9, after which he stated as follows: "All right, I think for the Court's purposes we've made a full and complete record at this time.  Does either Mr. Anderson or Ms. Bloom have anything else they want to put on the record before I close the record?"  *Id.* at 9.  Anderson and Bloom both said "[n]o."  *Id.*

New GM alerted the Court to the parties' settlement by letter on the evening of April 13, 2021.  *See* ECF No. 34.  The next day, the Court entered an order dismissing the case without prejudice to the right to reopen within sixty days if the settlement was not consummated.  *See* ECF No. 35.  Twelve days later, New GM sent Anderson the Draft Settlement Agreement.  *See* ECF No. 59 ("Def.'s Mem."), at 4.  To the extent relevant here, the Draft Settlement Agreement contains the following provisions pursuant to which Anderson would release and discharge New GM and various related entities, their officers, directors, agents, employees, and so on (defined as the "Released Parties"):

> 2.      In consideration of New GM's payment of the Gross Settlement Amount and other agreements contained herein, Plaintiff does hereby **RELEASE, ACQUIT, AND FOREVER DISCHARGE** the Released Parties of and from any and all claims, demands and causes of action owned or held by Plaintiff and/or his heirs, successors, and assigns arising from, resulting from, or in any way relating to the Subject Vehicle and the allegations in Plaintiff's above-captioned lawsuit.
>
> 3.      It is further **UNDERSTOOD AND AGREED** by Plaintiff that this Agreement is a general **RELEASE AND DISCHARGE** by Plaintiff of the Released Parties that includes, but is not limited to, any and all past, present and future claims, demands, obligations, actions, and causes of actions of any nature whatsoever against the Released Parties for any and all damages, costs and expenses, including personal injury, property damage, economic loss, emotional distress, mental pain and anguish, subrogation claims, lost wages, loss of earning capacity, loss of services, actual damages, court costs, attorneys' fees, exemplary damages, damages for breach of express or implied warranty, pre-judgment and post-judgment interest, loss of support,

3

services, consortium, companionship, society or affection, and damage to familial relations by spouses, former spouses, parents, children, other relatives or significant others of the Plaintiff, as well as claims for any other type of loss, expense, injury or damage whether for compensatory, punitive or statutory damages, and whether based upon intentional tort, negligence, strict liability, gross negligence, contract, misrepresentation, fraud, breach of warranty, statutory law, common law, or any other theory of recovery, and whether presently known or unknown, anticipated or unanticipated, existing presently, in the past, or which might ever accrue in the future, relating to, or in any way arising from, the Subject Vehicle and Plaintiff's allegations in the above-captioned lawsuit.

      4.      Further, this Agreement specifically includes, but is not limited to, a release of and discharge of the Released Parties by the Plaintiff from:

      a)      any liability arising directly or indirectly out of, or that is in any manner related to the Subject Vehicle, or any injuries and/or damages resulting directly or indirectly therefrom;

      b)      any liability arising directly or indirectly out of, or that is in any manner related to the Subject Vehicle, its component parts, or its manufacture, design, testing, assembly, distribution, operation, sale, resale, marketing, repair, servicing, maintenances or its condition at any time whatsoever;

      c)      any liability arising directly or indirectly out of, or that is in any manner related to, any representation, promises, statements, warranties (express or implied) or guarantees ever given or made by anyone with respect to the Subject Vehicle;

      d)      any liability arising directly or indirectly out of, or that is in any manner related to, the injuries and/or damages sustained in or as a result in connection with the Subject Vehicle; and

      e)      any liability arising directly or indirectly out of, or that is in any manner related to any of the matters, occurrences or transactions set forth above or which could have been set forth in any action brought by Plaintiff, including without limitation, any and all claims for damages of any type, and attorneys' fees.

      5.      It is further **UNDERSTOOD AND AGREED** by the Plaintiff that he will not file, commence, join, or attempt to join as a third-party defendant under any other theory of liability, or participate in or provide any assistance with respect to any legal proceeding against New GM or any of the other Released Parties or any other person or entity arising from, resulting from, or in any way relating to the Subject Vehicle and the allegations in Plaintiff's above-captioned lawsuit.

      6.      Plaintiff expressly waives and assumes the risk of any and all claims for damages that exist as of this date but which Plaintiff does not know or suspect to exist, whether through ignorance, oversight, error, negligence, incomplete medical or scientific knowledge, uncertain or incomplete prognosis, or otherwise, and which, if known, would materially affect Plaintiff's decision to enter into this Agreement.

> Plaintiff agrees that this Agreement shall be and remain effective in all respects, notwithstanding such different, additional, and/or contrary information or facts, or any nondisclosure of any information or facts by New GM or any of the other Released Parties, and the subsequent discovery thereof, as to which Plaintiff expressly assumes the risk.
>
> 7. Plaintiff further agrees that he will accept payment of the consideration described herein in exchange for a full and complete compromise, release and discharge of matters involving disputed issues of law and fact. Plaintiff understands and agrees if the law or facts with respect to which this Agreement is executed are hereafter found to be other than, or different from, Plaintiff's understanding of the law and facts, Plaintiff expressly accepts and assumes the risk of such differences in law or fact and agrees this Agreement shall be and is to remain effective notwithstanding any such differences.
>
> 8. As part of the consideration for the Gross Settlement Amount to be paid by New GM to the Plaintiff as set forth below Plaintiff voluntarily assumes any and all risks that, as a result of the Subject Vehicle, Plaintiff may in the future suffer some further damage now unknown to them, and Plaintiff forever releases Released Parties from all claims having to do with any such future damages and the risk and expense thereof.  Released Parties shall under no circumstances be liable for any further payment or damages to Plaintiff or any other persons, entities, associations or corporations; and Plaintiff shall indemnify and hold harmless Released Parties from any such damages, verdict, judgment, or award in an amount up to but not to exceed the Gross Settlement Amount; and any judgment, verdict or award shall be reduced up to the Gross Settlement Amount to the extent, but only to the extent, necessary to eliminate any obligation on the part of Released Parties to make any further payment to any party.

ECF No. 59-4 ("Draft Settlement Agreement"), at 3-5.

It soon became clear that Anderson did not intend to sign the Draft Settlement Agreement. *See, e.g.*, ECF Nos. 49-1, 49-2.  On June 14, 2021, New GM moved to reopen the case and sought leave to file a motion to enforce the settlement.  *See* ECF No. 58.  Two days later, the Court granted both requests and set a briefing schedule for New GM's motion to enforce.  *See* ECF No. 60.  Anderson has since filed multiple submissions relating to New GM's motion.  *See* ECF Nos. 63, 67, 70.  The Court placed several of his submissions and New GM's original motion papers temporarily under seal because they appear to contain confidential settlement-related information.  *See* ECF Nos. 59, 65, 67.

## DISCUSSION

It is well established that "[a] district court has the power to enforce summarily, on motion, a settlement agreement reached in a case that was pending before it."  *Mtgs & Exp'tns Inc. v. Tandy*

5

*Corp.*, 490 F.2d 714, 717 (2d Cir. 1974) (citations omitted). Indeed, "[s]uch power is especially clear where the settlement is reported to the court during the course of a trial or other significant courtroom proceedings." *Omega Eng'g, Inc. v. Omega, S.A.,* 432 F.3d 437, 444 (2d Cir. 2005) (cleaned up). In such instances, it does not matter if a party develops a case of settler's remorse "between the time of the agreement . . . and the time it is reduced to writing." *Elliot v. City of New York,* 11-CV-7291 (RWS), 2012 WL 3854892, at *2 (S.D.N.Y. Sept. 5, 2012) (cleaned up); *see, e.g.*, *Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007) ("When a party makes a deliberate, strategic choice to settle, a court cannot relieve him of that . . . choice simply because his assessment of the consequences was incorrect."); *Omega Eng'g.,* 432 F.3d at 445 ("It is an elementary principle of contract law that a party's subsequent change of heart will not unmake a bargain already made."). If the party entered into a binding agreement to settle, he "cannot avoid the settlement by refusing to sign the papers that would memorialize the terms of the agreement that were reported to the court." *U.S. Fire Ins. Co. v. Pierson & Smith, Inc.,* 06-CV-382 (CM) (LMS), 2007 WL 4403545, at *3 (S.D.N.Y. Dec. 17, 2007).

The Second Circuit has identified four factors that a court should consider in determining whether parties "intended to be bound in the absence of a document executed by both sides":

> (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

*Winston v. Mediafare Ent. Corp.*, 777 F.2d 78, 80 (2d Cir. 1985). These factors — known as the *Winston* factors — "may be shown by oral testimony or by correspondence or other preliminary or partially complete writings." *Id.* at 81 (internal quotation marks omitted). No single factor is dispositive. *See Ciaramella v. Reader's Dig. Ass'n, Inc.*, 131 F.3d 320, 323 (2d Cir. 1997). Ultimately, the factors must be considered in light of the entire context of the case, mindful that the parties' objective intent ultimately controls. *See Winston*, 777 F.2d at 81; *see also, e.g.*, *Klos v. Polski*

*Linie Lotnicze*, 133 F.3d 164, 168 (2d Cir. 1997) (noting that it is the parties' "objective intent . . . that controls" because a court cannot divine their "secret or subjective intent").

Applying these standards here, the Court concludes that New GM is entitled to an order enforcing the settlement notwithstanding Anderson's apparent change of heart. The first and third *Winston* factors strongly support that conclusion, as Magistrate Judge Cott recited all of the "material terms" of the parties' agreement on the record, verified that both sides agreed to these terms, and confirmed that the agreement as stated was "binding and enforceable." Tr. 3-9; *see, e.g.*, *Acun v. Merrill Lynch, Pierce, Fenner & Smith*, No. 18-CV-7217 (GBD) (SN), 2020 WL 995887, at *3 (S.D.N.Y. Mar. 2, 2020); *Doe v. Kogut*, No. 15-CV-7726 (SN), 2017 WL 1287144, at *5, *7 (S.D.N.Y. April 6, 2017). Although there was a clear understanding that the agreement would be memorialized in writing, "[t]he parties neither impliedly nor expressly reserved the right not to be bound" by the oral agreement "until after the settlement was memorialized." *Doe*, 2017 WL 1287144, at *5. So too, the fourth *Winston* factor favors enforcement because "an open-court oral agreement such as the one in this case is essentially analogous to an actual writing." *Bluelink Mktg. LLC v. Carney*, No. 16-CV-7151 (JLC), 2017 WL 4083602, at *8 (S.D.N.Y. Sept. 15, 2017); *see, e.g.*, *Powell*, 497 F.3d at 130-31 (finding that "[t]he in-court announcement here functioned in a manner akin to that of a memorializing writing" for purposes of the fourth *Winston* factor). At most, therefore, only the second *Winston* factor — "whether one party has partially performed, and that performance has been accepted by the party disclaiming the existence of an agreement," *Ciaramella*, 131 F.3d at 325 — even arguably weighs against enforcement, and it does not do so heavily (if at all), as the parties' report of the settlement to the Court, New GM's drafting of the Draft Settlement Agreement, and the (temporary) halt of the litigation arguably adds up to partial performance. *See, e.g.*, *U.S. v. U.S. Currency in the Sum of Six Hundred Sixty Thousand, Two Hundred Dollars, More or Less*, 423 F. Supp. 2d 14, 29 (E.D.N.Y. 2006) (finding partial performance where counsel, "as instructed by this Court and agreed to by the parties," drafted a stipulation and mailed it to the other parties "for their

execution"). At a minimum, "three of the four *Winston* factors strongly weigh in favor of enforcement. Most important to the Court's analysis, the record shows the parties' intent at the settlement conference to enter a binding oral settlement agreement." *Doe*, 2017 WL 1287144, at *9. Thus, the Court finds that the parties entered into an enforceable settlement agreement as set forth on the record. *See id.*

That said, the Court will not require Anderson to sign and notarize the Draft Settlement Agreement as written because its terms deviate in one significant way from the terms of the parties' agreement as set forth on the record. As summarized by Magistrate Judge Cott, the parties' agreement required Anderson to release "all released claims against the released parties by the releasing parties, as those terms will be defined in the Settlement Agreement." Tr. 4. Without knowing how "those terms" would be defined, however, that description was basically meaningless; indeed, were that all there was, the agreement might not have been enforceable. *See, e.g.*, *Best Brands Beverage, Inc. v. Falstaff Brewing Corp.*, 842 F.2d 578, 587 (2d Cir. 1987) ("[I]f the terms of [an] agreement are so vague and indefinite that there is no basis or standard for deciding whether the agreement had been kept or broken, or to fashion a remedy, and no means by which such terms may be made certain, then there is no enforceable contract."). Magistrate Judge Cott continued, however, explaining to Anderson that the term "essentially mean[t]" that he and "anyone affiliated with" him would be "releasing GM for the claims that [he] brought in the lawsuit." Tr. 4. That is sufficiently specific to support enforcement, but, significantly, it means that Anderson's release is limited by its terms to "the claims that [he] brought in [this] lawsuit." *Id.* By contrast, the release in the Draft Settlement Agreement is materially broader. For example, it applies to, among other things, "any and all claims, demands and causes of action owned or held by Plaintiff and/or his heirs, successors, and assigns arising from, resulting from, or in any way relating to *the Subject Vehicle and* the allegations in Plaintiff's above-captioned lawsuit." Draft Settlement Agreement 3 (emphasis added). The italicized language broadens the terms of the release beyond what the parties agreed to on the record. The Court will not require Anderson to sign an agreement containing such language.

Accordingly, although the Court grants New GM's motion to enforce the parties' oral settlement, it will not grant New GM's request for an order requiring Anderson to sign and notarize the Draft Settlement Agreement *as currently written*. Instead, **within one week of the date of this Opinion and Order**, New GM shall provide to Anderson a revised settlement agreement modified as indicated in the Appendix to this Opinion and Order so that it conforms to the parties' oral agreement. Assuming New GM does so, Anderson shall, **within four weeks of the date of this Opinion and Order**, hand sign and notarize the revised agreement and deliver it to New GM, after which New GM may move to dismiss the case with prejudice.[2] In the event that Anderson fails to sign a settlement agreement revised in accordance with this Opinion and Order by the deadline, New GM should promptly advise the Court and seek appropriate relief.

## CONCLUSION

For the foregoing reasons, the Court rules as follows:

(1) New GM's motion to enforce the parties' settlement is GRANTED;

(2) **within one week of the date of this Opinion and Order**, New GM shall provide Anderson with a revised version of settlement agreement consistent with this Opinion and Order**;**

---

[2] One of the parties' principal disagreements is whether the agreed-upon release applies to Anderson's claims for "depression" and "emotional stress." *Compare, e.g.*, ECF No. 63, at 2-5, *with* ECF No. 65 ("Def.'s Reply"), at 4-6. That is a question for another day, as it is purely academic unless and until Anderson files a new lawsuit bringing such claims. The Court notes, however, that — New GM's own assertions to the contrary notwithstanding, *see* Def.'s Reply 4 ("Mr. Anderson's Complaint did not include a claim for emotional distress . . . .") — Anderson's Complaint, liberally construed, certainly appears to include such claims. *See, e.g.*, *Allen v. Antwan Patton (Big Boi)*, No. 21-CV-3468 (LTS), 2021 WL 3540420, at *1 (S.D.N.Y. Aug. 11, 2021) ("[T]he Court is obliged to construe *pro se* pleadings liberally . . . and interpret them to raise the 'strongest [claims] that they *suggest*'" (citing *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). The Complaint's "fact" section alleges that "[t]he key in the ignition switch would turn backward to the off position by itself, causing [Anderson] stress and depression." ECF No. 2 ("Compl."), at 5. Its "injuries" section alleges that "[Anderson's] injuries [are] stress and depression from [him] almost having car accidents because of defected [sic] ignition switch put[t]ing [his] life in danger and everyone else that was in [his] car." *Id.* at 6. And the "relief" section requests, among other things, both "that [Anderson] can be paid 3,000 Dollars so that [he] can buy [himself] another use[d] car" *and* "that [he] could be paid 125,000 dollars for the GM making chevy cobolt's, that caused [him] a lot of stress." *Id.*

9

> (3) **within four weeks of the date of this Opinion and Order**, Anderson shall hand sign and notarize the revised agreement and deliver it to New GM, after which New GM may move to dismiss this case with prejudice. In the event that Anderson fails to sign a properly revised settlement agreement by that deadline, New GM should promptly advise the Court and seek appropriate relief.

Additionally, **within two days of the date of this Opinion and Order**, New GM shall serve a copy of this Opinion and Order on Anderson and file proof of such service on the docket.

One housekeeping matter remains. As noted above, several of the parties' submissions were temporarily sealed on the ground that they contain confidential settlement-related information. Citing cases for the proposition that "the confidentiality of settlement agreements and settlement discussions must be protected through sealing," New GM requests that these documents remain under seal because "confidential settlement terms and confidential settlement discussions are disclosed and interwoven throughout" them. Def.'s Mem. 8-9. The cases cited by New GM are distinguishable, however, as they merely involved settlement-related documents, not — as this case does — *motion papers* with respect to the enforcement of a settlement, to which a "heavy presumption of public access" attaches. *See, e.g.*, *Chigirinskiy v. Panchenkova*, 319 F. Supp. 3d 718, 737-38 (S.D.N.Y. 2018). Thus, there is no basis to keep them sealed in their entirety. New GM asks, in the alternative, that the papers "be kept under seal until the Court issues its decision, at which time the parties may submit further briefing regarding, among other things, exhibits that are not judicial documents and therefore should not be made publicly available." Def.'s Mem. 10. Given the weight of the presumption here, it is unlikely that the parties will be able to justify more than, perhaps, minimal redactions. *See, e.g.*, *Chigirinskiy*, 319 F. Supp. 3d at 737-40. Nevertheless, if only out of an abundance of caution, New GM's alternative request is granted. Thus, if either party believes that the papers currently under seal should remain under seal, in whole or in part, it shall, **within two weeks of the date of this Opinion and Order**, file a letter brief to that effect and, if and as appropriate, propose redactions to those papers in accordance with the procedures set forth in the Court's Individual Rules and Practices for Civil Cases.

This deadline supersedes the deadline for proposed redactions established by the Court's August 11, 2021 Order with respect to Anderson's filing at ECF No. 67.  *See* ECF No. 68.

    SO ORDERED.

Dated: August 17, 2021
       New York, New York

                                           JESSE M. FURMAN
                                         United States District Judge

# APPENDIX

[Deletions indicated by ~~strikethrough text~~; additions indicated by **<u>bolded and underlined text</u>**.]

2. In consideration of New GM's payment of the Gross Settlement Amount and other agreements contained herein, Plaintiff does hereby **RELEASE, ACQUIT, AND FOREVER DISCHARGE** the Released Parties of and from any and all claims, demands and causes of action owned or held by Plaintiff and/or his heirs, successors, and assigns arising from, resulting from, or in any way relating to ~~the Subject Vehicle and~~ the allegations in Plaintiff's above-captioned lawsuit.

3. It is further **UNDERSTOOD AND AGREED** by Plaintiff that this Agreement is a general **RELEASE AND DISCHARGE** by Plaintiff of the Released Parties that includes, but is not limited to, any and all past, present and future claims, demands, obligations, actions, and causes of actions of any nature whatsoever against the Released Parties for any and all damages, costs and expenses, including personal injury, property damage, economic loss, emotional distress, mental pain and anguish, subrogation claims, lost wages, loss of earning capacity, loss of services, actual damages, court costs, attorneys' fees, exemplary damages, damages for breach of express or implied warranty, pre-judgment and post-judgment interest, loss of support, services, consortium, companionship, society or affection, and damage to familial relations by spouses, former spouses, parents, children, other relatives or significant others of the Plaintiff, as well as claims for any other type of loss, expense, injury or damage whether for compensatory, punitive or statutory damages, and whether based upon intentional tort, negligence, strict liability, gross negligence, contract, misrepresentation, fraud, breach of warranty, statutory law, common law, or any other theory of recovery, and whether presently known or unknown, anticipated or unanticipated, existing presently, in the past, or which might ever accrue in the future, relating to, or in any way arising from, ~~the Subject Vehicle and~~ Plaintiff's allegations in the above-captioned lawsuit.

4. ~~Further, this Agreement specifically includes, but is not limited to, a release of and discharge of the Released Parties by the Plaintiff from:~~

   a) ~~any liability arising directly or indirectly out of, or that is in any manner related to the Subject Vehicle, or any injuries and/or damages resulting directly or indirectly therefrom;~~

   b) ~~any liability arising directly or indirectly out of, or that is in any manner related to the Subject Vehicle, its component parts, or its manufacture, design, testing, assembly, distribution, operation, sale, resale, marketing, repair, servicing, maintenances or its condition at any time whatsoever;~~

   c) ~~any liability arising directly or indirectly out of, or that is in any manner related to, any representation, promises, statements, warranties (express or implied) or guarantees ever given or made by anyone with respect to the Subject Vehicle;~~

~~d)   any liability arising directly or indirectly out of, or that is in any manner related to, the injuries and/or damages sustained in or as a result in connection with the Subject Vehicle; and~~

~~e)   any liability arising directly or indirectly out of, or that is in any manner related to any of the matters, occurrences or transactions set forth above or which could have been set forth in any action brought by Plaintiff, including without limitation, any and all claims for damages of any type, and attorneys' fees.~~

5.   It is further **UNDERSTOOD AND AGREED** by the Plaintiff that he will not file, commence, join, or attempt to join as a third-party defendant under any other theory of liability, or participate in or provide any assistance with respect to any legal proceeding against New GM or any of the other Released Parties or any other person or entity arising from, resulting from, or in any way relating to ~~the Subject Vehicle and~~ the allegations in Plaintiff's above-captioned lawsuit.

6.   ~~Plaintiff expressly waives and assumes the risk of any and all claims for damages that exist as of this date but which Plaintiff does not know or suspect to exist, whether through ignorance, oversight, error, negligence, incomplete medical or scientific knowledge, uncertain or incomplete prognosis, or otherwise, and which, if known, would materially affect Plaintiff's decision to enter into this Agreement.~~ Plaintiff agrees that this Agreement shall be and remain effective in all respects, notwithstanding such different, additional, and/or contrary information or facts, or any nondisclosure of any information or facts by New GM or any of the other Released Parties, and the subsequent discovery thereof, as to which Plaintiff expressly assumes the risk.

7.   Plaintiff further agrees that he will accept payment of the consideration described herein in exchange for ~~a~~**the** full and complete compromise, release and discharge of matters **described herein** involving disputed issues of law and fact. Plaintiff understands and agrees if the law or facts with respect to which this Agreement is executed are hereafter found to be other than, or different from, Plaintiff's understanding of the law and facts, Plaintiff expressly accepts and assumes the risk of such differences in law or fact and agrees this Agreement shall be and is to remain effective notwithstanding any such differences.

8.   ~~As part of the consideration for the Gross Settlement Amount to be paid by New GM to the Plaintiff as set forth below Plaintiff voluntarily assumes any and all risks that, as a result of the Subject Vehicle, Plaintiff may in the future suffer some further damage now unknown to them, and Plaintiff forever releases Released Parties from all claims having to do with any such future damages and the risk and expense thereof~~. Released Parties shall under no circumstances be liable for any further payment or damages to Plaintiff or any other persons, entities, associations or corporations; and Plaintiff shall indemnify and hold harmless Released Parties from any such damages, verdict, judgment, or award in an amount up to but not to exceed the Gross Settlement Amount; and any judgment, verdict or award shall be reduced up to the Gross Settlement Amount to the extent, but only to the extent, necessary to

eliminate any obligation on the part of Released Parties to make any further payment to any party.

iii